**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

| | |
|---|---|
| U.S. PHILIPS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | )     Civil Action No. 06-251-GMS |
| v. | ) |
| | ) |
| | ) |
| EASTMAN KODAK COMPANY, | ) |
| | ) |
| Defendant. | ) |

_____ )

**DEFENDANT EASTMAN KODAK COMPANY'S**
**ANSWER AND COUNTERCLAIMS; DEMAND FOR JURY TRIAL**

Defendant Eastman Kodak Company ("Kodak") files this Answer and Counterclaims to the Complaint for Patent Infringement of Plaintiff U.S. Philips Corporation ("Philips").  Kodak hereby responds to each numbered paragraph in Philips' Complaint as follows:

**Nature of the Action**

1.      Kodak admits that Philips' Complaint alleges patent infringement, but denies the allegations of paragraph 1.

**Subject Matter Jurisdiction**

2.      Kodak admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**Parties**

3.      Kodak lacks sufficient information and belief to admit or deny the allegations of paragraph 3.

4.      Kodak admits that it is a corporation organized and existing under the laws of New Jersey and having an office and principal place of business at 343 State Street, Rochester, New York 14650.

## Factual Background

5.      Kodak lacks sufficient information and belief to admit or deny the allegations of paragraph 5.  Kodak understands that "JPEG" or Joint Photographic Experts Group refers to the collaborative efforts of at least two international standard-setting organizations, the International Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards Organization ("ISO"), each of which had a subcommittee dedicated to developing a world wide standard for still image compression and decompression:  CCITT Study Group VIII and ISO Working Group 8, which later became Working Group 10.  Kodak is informed and believes that CCITT and ISO each published identical versions of what is commonly known as the JPEG Standard:  CCITT Recommendation T.81, published on September 21, 1992; and ISO International Standard 10918-1, published on February 15, 1994.  Kodak denies all remaining allegations of paragraph 5 to the extent they are inconsistent with the above.

6.      Kodak admits that certain specific procedures for the encoding of images are set forth in the JPEG Standard, CCITT Recommendation T.81 and ISO International Standard 10918-1. Kodak denies all remaining allegations of paragraph 6 to the extent they are inconsistent with the above.

7.      Kodak denies the allegations of paragraph 7.

8.      Kodak denies the allegations of paragraph 8.

9.      Kodak denies the allegations of  paragraph 9.

## Personal Jurisdiction and Venue

10.     Kodak denies the allegations of paragraph 10.

11.     Kodak denies the allegations of paragraph 11.

12.     Kodak denies the allegations of paragraph 12.

13.     Kodak admits it is subject to jurisdiction in this judicial district but denies the remaining allegations of paragraph 13.

14.     Kodak admits it is subject to jurisdiction in this judicial district but denies the remaining allegations of paragraph 14.

15.     Kodak admits it resides in this district for purposes of 28 U.S.C. §§ 1391(c) and 1400(b).

16.     Kodak admits that venue for this civil action in this judicial district is proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## The Patent-in-Suit

17.     Kodak admits that United States Patent No. 4,901,075 ("the '075 patent") purportedly issued on February 13, 1990 to Peter Vogel and that a copy of the patent , titled "Method and Apparatus for Bit Rate Reduction," is attached as Exhibit A to the Complaint.  Kodak denies that the '075 patent was duly and legally issued.

18.     Kodak lacks sufficient information and belief to admit or deny the allegations of paragraph 18 and on that basis denies.

## Claim for Infringement Against Kodak

19.     Kodak admits it had knowledge of the '075 patent before the filing of this lawsuit.

20.     Kodak denies the allegations of paragraph 20.

21.     Kodak denies the allegations of paragraph 21.

22.     Kodak denies the allegations of paragraph 22.

23.     Kodak denies the allegations of paragraph 23.

24.     Kodak denies the allegations of paragraph 24.

25.     Kodak denies the allegations of paragraph 25.

## Prayer for Relief

26.     Kodak denies that Philips is entitled to any of the relief by way of its Complaint.

## EASTMAN KODAK COMPANY'S DEFENSES

### First Defense  (Failure to State a Claim)

27.     Philips fails to state any claim upon which relief may be granted.

### Second Defense (Noninfringement)

28.     Kodak does not infringe, nor has it ever infringed, any valid claim of the '075 patent, either directly or indirectly, literally or under the doctrine of equivalents.

### Third Defense (Invalidity)

29.     Each claim of the '075 patent is invalid or void for failure to comply with one or more provisions of the Patent Laws of the United States of America, Title 35, United States Code, including but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

### Fourth Defense (Equitable Estoppel)

30.     Philips' claims for relief are barred, in whole or in part, by the doctrine of equitable estoppel.

### Fifth Defense (Laches)

31.     Philips' claims for relief are barred, in whole or in part, by the doctrine of laches.

**Sixth Defense (Patent Exhaustion, License & Release)**

32.      On information and belief, Philips' claims for relief are barred, in whole or in part, by the doctrine of patent exhaustion on account of one or more licenses, implied licenses, releases or other agreements related to the '075 patent.

**Seventh Defense (Waiver/Estoppel)**

33.      Philips' claims for relief are barred, in whole or in part, by the doctrine of waiver and/or estoppel.

**Eighth Defense (Unclean Hands)**

34.      Philips' claims for relief are barred, in whole or in part, by the doctrine of unclean hands.

**Ninth Defense (Prosecution History Estoppel)**

35.      On information and belief, Philips' claims for relief are barred, in whole or in part, by the doctrine of prosecution history estoppel and Philips is estopped from asserting a construction of any valid claim to cover or include any Kodak products or services on account of actions/inactions taken by Philips, its designees, the named inventor, prosecution attorneys and/or others substantively involved in the prosecution of the application that became the '075 patent, including but not limited to the amendment, cancellation or abandonment of claims, as well as admissions or other statements made to the Patent Office during the prosecution of the patent or related patents.

**Tenth Defense (Lack of Standing)**

36.      On information and belief, Philips lacks standing to assert the '075 patent.

**Eleventh Defense (Patent Marking)**

37.      Philips' claims for relief are barred, in whole or in part, by failure to comply with the marking and notice requirements of 35 U.S.C. § 287.

<u>**Twelfth Defense (Limitation on Damages)**</u>

38.    Any recovery by Philips for alleged infringement of the '075 patent is limited, at the very least, under 35 U.S.C. § 286 to any alleged infringement committed no more than six years prior to the filing of the Complaint.

<u>**Thirteenth Defense (Reservation of Defenses)**</u>

39.    Kodak presently lacks sufficient knowledge or information upon which to form a belief as to whether it may have additional, yet unstated defenses.  As such, Kodak reserves the right to assert additional defenses in the event that investigation and/or discovery reveal that additional defenses are appropriate.

<u>**EASTMAN KODAK COMPANY'S COUNTERCLAIMS**</u>

Defendant/Counterclaimant Eastman Kodak Company ("Kodak") alleges the following counterclaims against Plaintiff/Counterclaim Defendant U.S. Philips Corporation ("Philips"):

<u>**Nature of Counterclaims**</u>

1.    Kodak's counterclaims against Philips seek, among other relief, the following:

    a.    a declaratory judgment that United States Patent No. 4,901,075 ("the '075 patent") is not infringed, in whole or in part;

    b.    a declaratory judgment that the '075 patent is invalid, in whole or in part;

    c.    a declaratory judgment that Philips is estopped from enforcing the '075 patent on account of the doctrines of equitable estoppel and implied license; and

    d.    damages and declaratory relief under Delaware statutory and common law for Philips' deceptive trade practices, fraud and negligent misrepresentation.

2.    This action arises out of efforts by Philips to enforce an invalid and non-infringed patent now alleged to cover the JPEG Standard, even though Philips (by and through its related

corporate subsidiaries, including those referenced below in paragraph 10) participated in the adoption of the JPEG Standard and failed to disclose the '075 patent, as well as the patent applications to which '075 patent claims priority, during the development and approval of the JPEG Standard.

3.      The JPEG Standard is the result of several years of worldwide collaboration by multiple companies, countries and standard-setting organizations.  The work was largely done by the Joint Photographic Experts Group ("the JPEG committee") that consisted of representatives from at least two international standard-setting organizations—the International Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards Organization ("ISO").  Each organization had a subcommittee dedicated to developing a worldwide standard for still-image compression and decompression:  CCITT Study Group VIII and ISO Working Group 8, which later became Working Group 10.

4.      The JPEG Standard is published in two separate but identical standards:  (i) CCITT Recommendation T.81, published on or about September 21, 1992; and (ii) ISO International Standard 10918-1, published on or about February 15, 1994.  The JPEG Standard provides compatibility for compression, decompression, transmission and storage of digital still images and allows users to store and share digital still images among and between products from various manufacturers worldwide.

5.      Products that incorporate the JPEG Standard include a wide variety of hardware devices and software applications such as personal computers, personal digital assistants, digital cameras, digital camcorders, cellular telephones, internet browsers, document or photo viewers, editing software, printers, scanners, fax machines and the like.  The most common representation of the

JPEG Standard is the well-known ".jpg" file extension used by computers and related devices to store photographs and other digital still images.

6.    Since the adoption of the JPEG Standard in the early 1990s, hundreds of companies throughout the United States and the world have embraced the JPEG Standard and developed products compliant with the standard.  Private consumers and businesses have also become dependent on the JPEG Standard.

7.    Philips now seeks to cash in on this dependency by claiming that the '075 patent covers technology essential to the JPEG Standard.  By pursuing these claims, Philips has been and is attempting to unlawfully subvert the JPEG Standard to extract unwarranted compensation for its invalid and non-infringed patent.

8.    This is not the only lawsuit Philips and its related entities have filed alleging claims against the JPEG Standard.  Philips currently is pursuing at least 11 patent lawsuits related to the JPEG Standard, the '075 patent or its foreign counterparts.  Philips has filed these lawsuits against Kodak, Konica-Minolta and LG Electronics in the United States, Germany, France, Korea and the Netherlands.  Philips is accusing Kodak of infringement in this Court and in Dusseldorf, Germany.

### The Parties

9.    Kodak is a corporation organized and existing under the laws of New Jersey and having an office and principal place of business at 343 State Street, Rochester, New York 14650.

10.    On information and belief, U.S. Philips is a corporation organized and existing under the laws of Delaware, with a place of business at 1251 Avenue of the Americas, New York, New York 10020.  U.S. Philips Corporation is a subsidiary of global parent corporation Royal Philips Electronics.  Other subsidiaries of Royal Philips Electronics relevant to these counterclaims

include Philips Kommunikations Industrie AG (Germany), Philips Research Laboratories (United Kingdom), Philips Data Systems, Philips International B.V. (Netherlands), Philips Telecommuicatie Industrie (Netherlands) and Philips Consumer Electronics B.V. (Netherlands). For at least the purpose of these Counterclaims, the conduct of the recited persons employed by Royal Philips Electronics and/or its subsidiaries are attributable to U.S. Philips because such persons had actual or apparent authority to act on behalf of U.S. Philips and Royal Philips Electronics as agents or otherwise.

## Jurisdiction and Venue

11.     This action arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, the United States patent laws, and the laws of Delaware.  An actual, substantial and continuing justiciable controversy exists between Kodak and Philips that requires a declaration of rights by this Court.

12.     The Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331, 1337 and 1338.  The Court has supplemental jurisdiction over Kodak's state law claims under 28 U.S.C. § 1367.

13.     The Court has personal jurisdiction over Philips by virtue of, among other things, Philips' consent by filing its Complaint for Patent Infringement in this judicial district.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## Summary of Philips' Standard-Setting Conduct

**A.     Philips Deceived the International Standard-Setting Community During its Participation in the Development and Approval of the JPEG Standard**

15.     The '075 patent issued to Philips in February 1990.  Before, during and after the issuance of '075 patent, Philips (by and through its related corporate subsidiaries, including those referenced in paragraph 10) was a member of at least three standard-setting organizations

involved in the development and adoption of the JPEG Standard, including the International

Telegraph and Telephone Consultative Committee ("CCITT"), the International Standards

Organization ("ISO") and the British Standards Institution ("BSI"). Philips also was an active

participant in the particular subcommittees or working groups within these organizations that

were dedicated to the development and adoption of the JPEG Standard, including at least CCITT

Study Group VIII, ISO Working Group 8, BSI's IST/37 subcommittee, and the JPEG committee

formed as a collaboration between CCITT Study Group VIII and ISO Working Group 8.

16.     As a result of its participation in the development and approval of the JPEG Standard,

Philips had a legal duty to disclose the '075 patent and its foreign counterparts to the various

standard-setting bodies, working groups, study groups and members developing the JPEG

Standard.

17.     Philips did not disclose the '075 patent, its foreign counterparts or the applications to

which the '075 patent claims priority to CCITT Study Group VIII, ISO Working Group 8, BSI's

IST/37 subcommittee, or to the JPEG committee during the development and approval of the

JPEG Standard, despite (i) repeated requests from these committees to disclose patents relevant

to the JPEG Standard, and (ii) Philips having voted on multiple occasions to approve the JPEG

Standard.

18.     By failing to disclose patent rights that it now (incorrectly) claims are relevant to the

JPEG Standard, Philips violated its legal duties and engaged in deceptive trade practices.

19.     Kodak also participated in the development and adoption of the JPEG Standard. Like

other similarly situated companies, Kodak reasonably relied to its material, economic and

evidentiary detriment on Philips' misleading silence and affirmative misrepresentations during

its participation in the JPEG approval process by reasonably believing the JPEG Standard was not encumbered by undeclared Philips patents, such as the '075 patent.

> **1.    1984-85:  Philips Became a Member of Various Standard-Setting Groups Dedicated to the Development of the JPEG Standard**

20.    Efforts to develop the JPEG Standard began in or about September 1982 when ISO Working Group 8 was established and assigned the task of identifying picture coding mechanisms and encoding principles for graphic and photographic images.  Soon thereafter, a subgroup of ISO Working Group 8, known as the "Photographic Experts Group" (or "PEG"), began analyzing options for standardizing a compression technique for still images.  PEG became JPEG (the "Joint Photographic Experts Group") when ISO Working Group 8 began to collaborate with a subgroup from a different standard-setting body, CCITT Study Group VIII.

21.    At least as early as April 1984, Philips was a contributing member of ISO Working Group 8.  Philips continued to participate in and attend meetings of ISO Working Group 8 through at least the early 1990s.

22.    At least as early as June 1985, Philips was a member of CCITT Study Group VIII. Philips continued to participate in and attend meetings of CCITT Study Group VIII through at least the early 1990s.  Philips was also an active member of CCITT Study Group XV at least as early as July 1985.  CCITT Study Group XV developed Recommendation H.261, a precursor to the video compression standard known universally as "MPEG."  CCITT Study Group XV coordinated its efforts with JPEG, and Philips continued to participate in CCITT Study Group XV meetings through at least the early 1990s.

2.    **1986-87:  Philips Became an Active Participant in Developing the JPEG Standard and Filed Patent Applications without Disclosing them to CCITT or ISO in the Context of the Developing JPEG Standard.**

23.    As early as Summer 1986, Philips had established itself as a leader in the development and adoption of the JPEG Standard.  ISO Working Group 8 even recognized the work of Philips in or around June 1986 by sending a letter to Philips representative Loek Zeckendorf (Philips Data Systems) thanking him for his "contribution" to the committee's "Draft Proposals for Identifying Picture, Coding Methods and Encoding Principles for Picture Coding."

24.    On September 13, 1986, Philips filed German patent application no. 3,631,252, the first of three German applications to which the '075 patent claims priority.

25.    On November 11, 1986, PEG became JPEG when experts from ISO Working Group 8 and CCITT Study Group VIII held their first combined meeting in New Jersey.  The meeting, like subsequent JPEG meetings, was held under the auspices of ISO Working Group 8.  The initial years of JPEG were dedicated to reaching agreement on the requirements of a still image coding system.  It was also announced that CCITT Study Group XV—the CCITT video compression study group in which Philips participated—would be informed of JPEG's work.

26.    Since as early as December 1983, CCITT policy required study group members to disclose known patents concerning any subject matter under study.  To the extent such patents existed, CCITT requirements stated that patent holders were required to make the patent available to members and to grant licenses on a non-discriminatory basis and for reasonable fees, as follows:

> These rules stipulate that Study Group members should inform the meeting if they know of any patent concerning a subject under study. If such a patent exists, the patent holder is required to make the patent available to members. The minimum requirements are, to grant licenses on a non-discriminatory basis and for reasonable fees. Such a statement by the patent holder is usually published as a meeting document. Members of the Study Group are then free to negotiate a license agreement with the patent holder until the next Plenary Assembly when the draft Recommendation concerned is submitted by the Study Group for approval by the Plenary.

27.    On November 8, 1986, Philips filed German patent application no. 3,638,12, the second of three German applications to which the '075 patent claims priority.

28.    In or around November 1986, Philips (Philips Kommunikations Industrie AG) made a technical disclosure to CCITT Study Group XV in connection with development of the MPEG Standard. Notably, Philips did not make the same disclosure to CCITT Study Group VIII or the JPEG committee in connection with development of the JPEG Standard.

29.    In or around March 1987, Philips received a document authored by the ISO JPEG chairman titled "Information To Be Given On Photographic Compression Techniques." This document set forth the following ISO Working Group 8 patent policy:

> **Intellectual Property (Patents)**
>
> Before a photographic technique can be considered for standardisation the proposer must state if the technique is the subject of any patents. The ISO directive states that a proposal for an international standard may include a patent if the following procedure is complied with –
>
> 1    member bodies putting forward proposals must draw the committees attention to any patents that are applicable
>
> 2    the patent holder must state that he is willing to negotiate licenses throughout the world on reasonable terms and conditions.
>
> The relevant section of the ISO directive giving the precise details of the conditions is attached.

30.    In March 1987, Philips representative Simon Turner (Philips Research Laboratories) attended a JPEG meeting in Darmstadt. At the meeting, the participants discussed twelve

different compression techniques that were being considered for the JPEG Standard. One of those proposals, ESPRIT's Adaptive Discrete Cosine Transform ("ADCT") proposal, ultimately was chosen for the JPEG Standard.

31.     On May 23, 1987, Philips filed the third German patent application (no. 3,717,399) to which the '075 patent claims priority.

32.     In or around June 1987, at a JPEG meeting in Copenhagen, the JPEG committee considered ten compression techniques (out of an original twelve proposals) and chose three finalists for the JPEG Standard: (1) Adaptive Discrete Cosine Transform ("ADCT"), proposed by ESPRIT; (2) Adaptive Binary Arithmetic Coding ("ABAC"), proposed by IBM; and (3) Generalized Block Truncated Coding ("GBTC"), proposed by the Japanese national body. ADCT eventually won the competition and became the baseline for the JPEG Standard.

33.     Had Philips made its purported patent interests known during the development of the JPEG Standard, the JPEG committee could have replaced (or at least had the opportunity to replace) the ADCT technology with any one of these other acceptable and available alternatives.

34.     On September 11, 1987, Philips filed United States Patent Application No. 96,177, which issued as the '075 patent on February 13, 1990.

In or around November 1987, ISO Working Group 8 sent a memorandum to CCITT Study Group XV requesting to establish a "formal liaison" between the two groups. At the time, Philips was an active participant in both committees—the former being dedicated to what became JPEG (still image compression) and the latter to what became MPEG (video compression). The November 1987 memorandum, which appears to have been distributed to CCITT Study Group XV members in January 1988, explained "JPEG is currently aiming at a single coding algorithm for still images to be agreed end of January 1988, and as far as JPEG

knows, SGXV is also aiming at a recommendation on a unified algorithm for videoconferencing services…." The memorandum identified the JPEG ADCT coding technique as a finalist and noted several "commonalities" between the ADCT technique and the technique being considered by CCITT Study Group XV—the technique that had led Philips to make its November 1986 technical disclosure to CCITT Study Group XV.

35.    On information and belief, Philips received this memorandum in connection with its participation in JPEG, ISO Working Group 8 or CCITT Study Groups VIII and XV. As such, Philips was either aware or should have been aware of the relationship between the U.S. patent application that became the '075 patent (and the three German applications to which the '075 patent claims priority), its participation in the development of the JPEG Standard, and its November 1986 technical disclosure to CCITT Study Group XV concerning the H.261 standard (the precursor to MPEG). Despite this, Philips never disclosed neither the U.S. patent application that became the '075 patent nor its corresponding foreign applications to the CCITT, ISO or JPEG committees in the context of the JPEG Standard.

### 3.    1988-90:  Philips Continued to Participate in Developing the JPEG Standard and Failed to Disclose the '075 Patent Despite Several Reminders

36.    In or around January 1988, the JPEG committee evaluated the three finalists for the JPEG Baseline System—ADCT, ABAC and GBTC. Although the committee concluded there was technically "no big difference" among the three candidates, ADCT received the highest marks on subjective testing and the committee made ADCT the "first candidate" for the standard.

37.    Philips representative Norman Richards (Philips Research Laboratories) attended the January 1988 JPEG meeting and, on information and belief, participated in the committee's decision to choose ADCT as the compression technique for the JPEG Standard. Despite Mr.

Richards' participation in this decision, he did not disclose the patent interests Philips now claims are relevant to the JPEG Standard.

38.     In February 1988, Philips representatives Rothgordt and Wenzel (both of Philips Kommunikations Industrie AG) attended a CCITT Study Group VIII meeting where the work of that group from 1985 through 1988 was summarized, including a report on Study Group VIII's participation in the development of the JPEG Standard. At the meeting, the chairman referenced the cooperation between ISO and CCITT and asked for disclosure of "any patents relevant to any T-series Recommendation." Despite this request, the Philips representatives did not disclose the patent interests Philips now claims are relevant to the JPEG Standard.

39.     In May 1988, Philips representative Gerald Weth (Philips Kommunikations Industrie AG) attended a JPEG meeting in Ottowa, Canada that included a presentation of the draft functional specification of the JPEG Standard. Kodak representative Ibrahim Sezan also attended this meeting. At this meeting, the committee Chairman distributed a memo titled "Patent Policy on the JPEG Standard." It included a list of patents previously disclosed to the CCITT Study Group XV (the committee working on the precursor to the MPEG video compression standard) and stated:

> We would like to make great efforts to find out relevant patents, and if one or more such patents will be found, we would like to ask patent holders to declare to be obedient to the patent policy of ISO and CCITT. However, complete survey cannot be done before standardization, thus I would like to suggest [sic] following. To ask each national member body to adopt our patent policy. The holders of patents which are relevant to the standard should first clarify the existence of patents, then should declare in ISO/CCITT meeting that they are obedient to the policy even if they are aware of the fact after the standardization.

Despite attending this meeting, the Philips representative did not disclose Philips' the patent interests Philips now claims are relevant to the JPEG Standard.

40.      In or around September 1988, Philips disclosed to CCITT Study Group XV (the subcommittee working on the precursor to the MPEG video compression standard) the three German patent applications to which the '075 patent claims priority.  On information and belief, Philips did not disclose these applications to JPEG, CCITT Study Group VIII, or ISO Working Group 8 despite its participation in these committees.

41.      In or around February 1989, the JPEG committee published to the ISO Working Group 8 and CCITT Study Group VIII committees a call for any patents that might apply to any proposed parts of the JPEG Standard.  On information and belief, Philips received this call for patents in connection with its participation in JPEG, ISO Working Group 8 and/or CCITT Study Group VIII, but did not disclose the patent interests Philips now claims are relevant to the JPEG Standard.  In response to JPEG's call for patents, Kodak's Michael Nier responded for Kodak and indicated that Kodak had no relevant patents.

42.      In July 1989, Philips representatives Morris (Philips Research Laboratories) and Eisema (Philips Consumer Electronics B.V.) attended an ISO Working Group 8 Plenary meeting in Stockholm.  Kodak representatives Michael Nier and David Dellert also attended this meeting.  The meeting included two separate progress reports on the development of the JPEG Standard.

43.      In or around October 1989, Philips made patent statements to CCITT Study Group XV (MPEG) stating it was willing to grant licenses to Philips' relevant patents on reasonable and non-discriminatory terms.  Philips sent similar statements to the CCITT committee on MPEG again in December 1989.  But Philips did not send similar patent statements to the various JPEG committees in which it was participating.  On information and belief, Philips' statements to CCITT Study Group XV demonstrates that Philips understood the CCITT patent disclosure

policy and Philips' obligations as a participant to abide by the licensing obligations outlined in that policy.

44.     On February 13, 1990, the '075 patent issued.

45.     In or around July 1990, Philips representatives Schylander (Philips International B.V.) and Morris (Philips Research Laboratories) attended an ISO Working Group 8 Plenary meeting in Porto, Portugal where the JPEG committee reported that final drafting of the JPEG Committee Draft (commonly called a "CD") would be finished by the end of October 1990.  Kodak representative Michael Nier also attended this meeting.  The Philips representatives did not disclose the purported patent interests Philips now claims are relevant to the JPEG Standard, including the newly-issued '075 patent.

### 4.     1991-92:  Philips Voted on Multiple Occasions to Approve the JPEG Standard

46.     During 1991, as the JPEG committee moved closer to recommending the elevation of the JPEG Committee Draft to the level of a Draft International Standard (or DIS), several JPEG members continued to express concern about identifying patents that might be relevant to the JPEG Standard.  In response to this concern, the JPEG chairman issued a memorandum to the JPEG committee on August 4, 1991, requesting that all JPEG participants disclose relevant patents:

> All patents which you believe, with reasonable likelihood, MUST be used in EVERY implementation (whether encoder or decoder) of any one or more of the 29 defined coding processes specified at the start of Annexes F through J of CD 10918-1.

The JPEG Chairman also asked the JPEG members to identify all patents "that you know of, whether held by you, by another member of your company or organization, by any individual, company, or organization anywhere in the world."  Several JPEG members including Kodak

responded to this call for patents.  On information and belief, Philips received this request but

failed to disclose to the JPEG committee the purported patent interests Philips now claims are

relevant to the JPEG standard, including the '075 patent..

47.    On or about August 19, 1991, the JPEG Chairman sent another memorandum to the

JPEG committee attaching a draft of a new annex, Annex L, to be added to JPEG Standard.  The

memorandum explained that "it has been widely requested that…all known patents which are

believed to be required for implementation of any specified coding process, be listed in [the

JPEG Standard]."  On information and belief, Philips also received this request and again failed

to disclose the '075 patent.  As a result, the '075 patent is not listed in Annex L.

48.    In August 1991, Philips representatives Schylander (Philips International B.V.) and

Morris (Philips Research Laboratories) attended a joint JPEG-MPEG meeting in Santa Clara,

California.  During this meeting, the JPEG committee approved and adopted the introductory

language of Annex L as a part of the JPEG Standard.  Despite its attendance at the August 1991

meeting, the Philips representatives did not disclose the purported patent interests that Philips

now claims are relevant to the JPEG Standard, including the '075 patent.

49.    In October 1991, Philips representative Mr. Wenzel (Philips Kommunikations Industrie

AG) attended a CCITT Study Group VIII meeting in Geneva.  Kodak representative Michael

Nier also attended this meeting.  On information and belief, the Philips representative voted at

this meeting to approve the draft of the JPEG Standard that later issued as CCITT

Recommendation T.81, but did not disclose the purported patent interests Philips now claims are

relevant to the JPEG Standard, including the '075 patent.  On information and belief, Philips'

representative Mr. Wenzel (Philips Kommunikations Industrie AG) continued to participate in

Study Group VIII meetings through final approval of the CCITT Recommendation T.81 on September 21, 1992.

50.    By June 1992, Philips had also established itself as an active member in a third standard-setting organization, the British Standards Institution ("BSI").  BSI is the the national standards body of the United Kingdom that works with government, businesses and consumers to represent United Kingdom interests and facilitate the production of British, European and international standards.  During the early 1990s, Philips chaired IST/37, the BSI subcommittee responsible for standards for coding picture, audio, multimedia and hypermedia information, and also represented the United Kingdom in the work of the international committee ISO/IEC JTC1/SC29 that oversaw the development of CCITT and ISO standards for JPEG.

51.    On or about June 11, 1992, Philips' Dr. John Morris (Philips Research Laboratories) chaired the fourth meeting of IST/37.  During the meeting, the European membership considered the draft of the JPEG Standard (commonly referred to as a "DIS" or "draft international standard") and voted to "approve DIS 10918-1 without comments."  On information and belief, the Philips representative voted to approve DIS 10918-1, but again did not disclose Philips' purported patent interests that it now claims are relevant to the JPEG Standard, including the '075 patent.

52.    On or about February 15, 1994, the ISO formally approved ISO International Standard 10918-1.  On information and belief, Philips voted for final approval of IS 10918-1, but again did not disclose the purported patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

**B.     Other Companies Participating in the Development and Adoption of the JPEG Standard Disclosed Patents and Willingness to License on Fair and Reasonable Terms**

53.     Both IBM and AT&T disclosed patents relevant to the JPEG Standard during the development and adoption of the JPEG Standard and separately offered to license patents "required" or "essential" to the standard for $5,000.

54.     In October 1991, as the JPEG Standard was being approved by CCITT Study Group VIII and the JPEG Committee, IBM offered a one-time fee of $5,000 for patents that would be "necessarily infringed" by complying with the JPEG Standard and $10,000 for rights to additional IBM patents believed to be "useful in the efficient implementation" of the JPEG Standard.

55.     In June 1994, AT&T offered to license its patents related to the JPEG Standard to the extent AT&T's patents were "essential to the implementation" of the JPEG Standard. Specifically, AT&T offered to license two AT&T patents "essential to the standard" for a one-time royalty of $5,000 and to license a group of seven other patents related to the standard for an "additional one time fee of $10,000."

56.     On information and belief, had Philips disclosed the patent interests it now claims are relevant to the JPEG Standard, during the development and adoption of the standard, a fair and reasonable license for the '075 patent would have been no more than a one-time fee of $5,000.

**C.     Summary**

57.     On information and belief, the facts alleged above demonstrate that:

> a.     Philips participated in the development of the JPEG Standard through its participation in at least CCITT Study Group VIII, ISO Working Group 8, BSI subcommittee IST/37 and the JPEG committee;

b. Philips voted on multiple times to approve the JPEG Standard as a member of CCITT Study Group VIII, ISO Working Group 8 and BSI subcommittee IST/37;

c. Philips was aware of its duty as a member of these committees to disclose its patent interests—including the '075 patent, its foreign counterparts, and the applications to which the '075 patent claims priority—that might be relevant to the JPEG Standard;

d. Philips failed to disclose the '075 patent, its foreign counterparts, and the applications to which the '075 patent claims priority to at least CCITT Study Group VIII, ISO Working Group 8, BSI subcommittee IST/37 and the JPEG committee during its participation in the development and approval of the JPEG Standard;

e. Kodak also participated in the development and adoption of the JPEG Standard and reasonably relied on Philips' silence and/or misrepresentations to conclude that Philips did not possess patent interests relevant to the JPEG Standard; and

f. The fair and reasonable license for a patent essential or required by the JPEG Standard is no more than a one-time fee of $5,000.

58.    On information and belief, Philips was aware of the developing JPEG Standard and it contents no later than July 1990 when it attended the ISO Working Group 8 meeting in Porto, Portugal.  At that meeting—attended by Philips' representatives Schylander (Philips International B.V.) and Morris (Philips Research Laboratories), as well as Kodak representative Michael Nier —a report was given on JPEG Committee Draft 10918.

59.    On information and belief, Philips also was aware, no later than 1990, that the JPEG Standard was being implemented in the market.

60.    Further, by no later than 1992, Philips knew or should have known about the use of the JPEG Standard in a variety of different types of software, including browsers, illustration programs and web design programs.

61.    Notwithstanding Philips' knowledge as alleged above, on information and belief, Philips did not attempt to enforce the '075 patent against any implementer of the JPEG Standard until Spring 2006 when it filed multiple lawsuits against Kodak, Konica-Minolta and LG Electronics.

62.    In the intervening years of Philips' delay, the JPEG Standard became deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images. Since the adoption of the JPEG Standard, Kodak has made significant investments in the products and services that implement of the baseline JPEG Standard.

## FIRST COUNTERCLAIM

### Declaratory Judgment – Noninfringement of the '075 Patent

63.    Kodak incorporates by reference the allegations in paragraphs 1 through 62 above.

64.    Kodak's first counterclaim is an action for declaratory judgment of noninfringement of any valid claim of the '075 patent.

65.    Philips has alleged, and continues to allege, that it is the current owner of all right, interest and title in and to the '075 patent.

66.    Philips has alleged, and continues to allege, that Kodak has been and still is infringing one or more claims of the '075 patent.

67.    Philips has alleged, and continues to allege, that it is entitled to an award of actual damages on account of Kodak's alleged infringement of the '075 patent.

68.    Philips has alleged, and continues to allege, that in addition to its request for an award of actual damages Philips is entitled to a permanent injunction against Kodak.

23

69.    Philips has alleged, and continues to allege, that Kodak's allegedly infringing activities constitute willful infringement and, therefore, entitle Philips to recover treble damages under 35 U.S.C. § 284.

70.    Philips has alleged, and continues to allege, that this case is an exceptional case justifying an award of attorneys' fees and costs to Philips under 35 U.S.C. § 285.

71.    Kodak denies the allegations made by Philips as listed in paragraphs 65-70.

72.    Kodak does not infringe and has never infringed any valid claim of the '075 patent, either literally or under the doctrine of equivalents, nor is Kodak actively inducing or contributing to the infringement of the '075 patent.  Therefore, Kodak is not liable for any damages purportedly arising from Philips' accusation of infringement.

73.    Kodak desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above.  Such a determination and the resulting declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the '075 patent.

## SECOND COUNTERCLAIM

### Declaratory Judgment – Invalidity of the '075 Patent

74.    Kodak incorporates by reference the allegations in paragraphs 1 through 62 above.

75.    Kodak's second counterclaim is an action for declaratory judgment of invalidity of the claims of the '075 patent.

76.    Philips has alleged, and continues to allege, that it is the current owner of all right, interest and title in and to the '075 patent.

77.    Philips has alleged, and continues to allege, that Kodak has been and still is infringing one or more claims of the '075 patent.

78.     Kodak denies the allegations made by Philips as listed in paragraphs 76-77.

79.     The '075 patent, and each claim thereof, is invalid for failure to comply with the conditions and requirements of patentability set forth in Title 35 of the United States Code, particularly 35 U.S.C. § 101 *et seq.*

80.     The '075 patent, and each claim thereof, is invalid for failure to comply with the provisions of 35 U.S.C. § 102.

81.     The '075 patent, and each claim thereof, is invalid for failure to comply with the provisions of 35 U.S.C. § 103.

82.     The '075 patent, and each claim thereof, is invalid for failure to comply with the provisions of 35 U.S.C. § 112.

83.     Kodak desires and requests a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in above.  Such a determination and declaration are necessary and appropriate at this time so the parties may ascertain their respective rights and duties regarding the '075 patent.

### THIRD COUNTERCLAIM

### Declaratory Judgment – Unenforceability Based on Equitable Estoppel

84.     Kodak incorporates by reference the allegations in paragraphs 1 through 62 above.

85.     Kodak's third counterclaim is an action for declaratory judgment of unenforceability of the claims of the '075 patent due to the doctrine of equitable estoppel on account of the silence and misrepresentations of Philips (by and through its related corporate subsidiaries and including those in Paragraph 10) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from

1984 to 1994, as well as Philips' continued silence thereafter during the years Kodak incorporated the JPEG Standard into its products and services.

86.    Philips has alleged, and continues to allege, that it is the current owner of all right, interest and title in and to the '075 patent.

87.    Philips has alleged, and continues to allege, that Kodak has been and still is infringing one or more claims of the '075 patent.

88.    Kodak denies the allegations made by Philips as listed in paragraphs 86-87.

89.    As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips (by and through its related corporate subsidiaries) had a duty to disclose its patent interests relevant to the JPEG Standard.

90.    On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

91.    Kodak also participated in the development and adoption of the JPEG Standard and reasonably relied to its economic and evidentiary prejudice on Philips' silence and misrepresentations about the irrelevance of the '075 patent to the JPEG Standard as both (i) a participant in CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG in the development of the JPEG Standard, and (ii) a party supporting approval of the JPEG Standard.

92.    Also, Kodak invested in products and services that incorporate the baseline JPEG Standard in reasonable reliance on Philips' same silence and misrepresentations

93.    On information and belief, if Philips had disclosed the purported relevance of the '075 patent to the JPEG Standard, the various committee who worked to develop and approve the JPEG Standard could have adopted (or would have had the opportunity to adopt) any one of a number of available and technically feasible alternatives—including IBM's proposed ABAC technique that IBM openly disclosed to the JPEG committee along with an offer the license for a one-time fee of $5,000 for patents that would be "necessarily infringed" by JPEG and $10,000 for additional patents that IBM believed would be useful in the efficient implementation of JPEG.

94.    Accordingly, there exists an actual judicial controversy between Kodak and Philips concerning whether Philips' claims for relief are barred by equitable estoppel.

95.    Kodak desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the '075 patent.

## FOURTH COUNTERCLAIM

### Declaratory Judgment – Unenforceability based on Implied License

96.    Kodak incorporates by reference the allegations in paragraphs 1 through 62 and paragraphs 89-93 above.

97.    Kodak's fourth counterclaim is an action for declaratory judgment of unenforceability of the claims of the '075 patent due to the doctrine of implied license on account of the silence and misrepresentations of Philips (by and through its related subsidiaries) about the existence and

relevance of the '075 patent, its foreign counterparts and the foreign application to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter during the years Kodak incorporated the JPEG Standard into its products and services.

98.    Philips has alleged, and continues to allege, that it is the current owner of all right, interest and title in and to the '075 patent.

99.    Philips has alleged, and continues to allege, that Kodak has been and still is infringing one or more claims of the '075 patent.

100.    Kodak denies the allegations made by Philips as listed in paragraphs 97-99.

101.    As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the JPEG Standard.

102.    On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interest Philips now claims are relevant to the JPEG Standard, including the '075 patent.

103.    Kodak also participated in the development and adoption of the JPEG Standard and reasonably relied to its economic and evidentiary prejudice on Philips' silence and misrepresentations about the irrelevance of the '075 patent to the JPEG Standard as both (i) a participant in CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and

JPEG in the development of the JPEG Standard, and (ii) a party supporting approval of the JPEG Standard.

104.    Kodak also invested in products and services that incorporate the baseline JPEG Standard in reasonable reliance on Philips' same silence and misrepresentations.

105.    On information and belief, if Philips had disclosed the purported relevance of the '075 patent to the JPEG Standard, the various committee who worked to develop and approve the JPEG Standard could have adopted (or would have had the opportunity to adopt) any one of a number of available and technically feasible alternatives—including IBM's proposed ABAC technique that IBM openly disclosed to the JPEG committee along with an offer the license for a one-time fee of $5,000 for patents that would be "necessarily infringed" by JPEG and $10,000 for additional patents that IBM believed would be useful in the efficient implementation of JPEG.

106.    Accordingly, there exists an actual judicial controversy between Kodak and Philips concerning whether Philips' claims for relief are barred by the doctrine of implied license as alleged above.

107.    Kodak desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the '075 patent.

## FIFTH COUNTERCLAIM

### Deceptive Trade Practices – 6 Del. C. § 2532 et seq.

108.    Kodak incorporates by reference the allegations in paragraphs 1 through 62 and paragraphs 89-93 above.

109.    Kodak's fifth counterclaim is an action for deceptive trade practices because, in the course of its business, Philips caused a likelihood of confusion or misunderstanding as to the validity and enforceability of the '075 patent, in violation of 6 Del. C. § 2532, on account of the silence and misrepresentations of Philips (by and through its related corporate subsidiaries) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign application to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter during the years Kodak incorporated the JPEG Standard into its products and services.

110.    Philips also has engaged in deceptive trade practices because, in the course of its business, Philips disparaged Kodak's goods, services, and businesses by falsely and misleadingly alleging that Kodak's products infringe the '075 patent and that consumers will not be able to continue using Kodak's products that incorporate the JPEG Standard, in violation of 6 Del. C. § 2532.

111.    Further, Philips has engaged in deceptive trade practices because, in the course of its business, Philips has engaged in other conduct that creates a likelihood of confusion or misunderstanding, including but not limited to engaging in baseless patent litigation designed only to force Kodak into taking a license to the invalid and unenforceable '075 patent (which Kodak does not infringe) in violation of 6 Del. C. § 2532.

112.    On information and belief, Philips has acted in bad faith while engaging in these deceptive trade practices.

113.    Kodak has been harmed or can reasonably expect to be harmed by Philips' deceptive trade practices.  This harm will continue or can reasonably be expected to continue as long as

Philips continues to falsely assert that the '075 patent is infringed by Kodak's use of the JPEG Standard.

## SIXTH COUNTERCLAIM

### Fraud

114.    Kodak incorporates by reference the allegations in paragraphs 1 through 62 and paragraphs 89-93 above.

115.    Kodak's sixth counterclaim is an action for fraud on account of the silence and misrepresentations of Philips (by and through its related corporate subsidiaries) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its participation in the development and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter during the years Kodak incorporated the JPEG Standard into its products and services.

116.    As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the JPEG Standard.

117.    On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent..

118.    Despite its duty to disclose relevant patents, its knowledge of the proposed JPEG Standard and repeated requests to identify relevant patents to the standard-setting bodies, Philips intentionally failed to disclose the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent, its foreign counterparts, or the foreign applications to which the '075 patent claims priority.

119.    Kodak also participated in the development and adoption of the JPEG Standard and reasonably relied to its economic and evidentiary prejudice on Philips' silence and misrepresentations about the irrelevance of the '075 patent to the JPEG Standard as both (i) a participant in CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, and (ii) a party supporting approval of the JPEG Standard.

120.    Kodak also invested in products and services that incorporate the baseline JPEG Standard in reasonable reliance on Philips' same silence and misrepresentations.

121.    As a result of Philips' fraudulent and intentional failure to disclose the '075 patent and subsequent attempts to assert the patent, Kodak has incurred damages and will continue to be damaged in the future.

## SEVENTH COUNTERCLAIM

### Negligent Misrepresentation

122.    Kodak incorporates by reference the allegations in paragraphs 1 through 62 and paragraphs 89-93 above.

123.    Kodak's seventh counterclaim is an action for negligent misrepresentation on account of the silence and misrepresentations of Philips (by and through its related corporate subsidiaries) about the existence and relevance of the '075 patent, its foreign counterparts, and the foreign applications to which the '075 patent claims priority to the JPEG Standard during its

participation in the development and approval of the JPEG Standard from 1984 to 1994, as well as Philips' continued silence thereafter during the years Kodak incorporated the JPEG Standard into its products.

124.    As a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG—the various committees responsible for the development and approval of the JPEG Standard—Philips had a duty to disclose its patent interests relevant to the JPEG Standard.

125.    On information and belief, as a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, Philips (i) knew the technical details of the proposed JPEG Standard, (ii) was aware of the patent disclosure policies of each organization that required it to disclose patents relevant to the JPEG Standard, and (iii) voted multiple times to approve the JPEG Standard without disclosing the patent interests Philips now claims are relevant to the JPEG Standard, including the '075 patent.

126.    Despite its duty to disclose relevant patents, its knowledge of the proposed JPEG Standard and repeated requests to identify relevant patents to the standard-setting bodies, Philips failed to exercise reasonable care in both (i) reviewing its patents and comparing them to the proposed JPEG Standard, and (ii) failing to accurately communicate information regarding its patents to the JPEG committee.

127.    Kodak also participated in the development and adoption of the JPEG Standard and reasonably relied to its economic and evidentiary prejudice on Philips' silence and misrepresentations about the irrelevance of the '075 patent to the JPEG Standard as both (i) a participant in CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG, and (ii) a party supporting approval of the JPEG Standard.

128.    Kodak also invested in products and services that incorporate the baseline JPEG Standard in reasonable reliance on Philips' same silence and misrepresentations.

129.    As a result of Philips' negligent misrepresentation regarding the patent interests it now claims are relevant to the JPEG Standard, including the '075 patent, Kodak has incurred damages and will continue to be damaged in the future.

## PRAYER FOR RELIEF

WHEREFORE, Kodak prays for the following relief:

i)      A judgment declaring that Kodak has not infringed and does not infringe, in any manner or in any way, any valid claim of the '075 patent;

ii)     A judgment declaring that each claim of the '075 patent is invalid;

iii)    A judgment that Philips is barred from enforcing the '075 patent based on the equitable doctrine of estoppel;

iv)     A judgment that Kodak has an implied license for use of the '075 patent;

v)      A judgment that Philips has engaged in deceptive trade practices in violation of 6 Del. C. § 2532 et seq.;

vi)     A permanent injunction, treble damages and attorneys' fees under 6 Del. C. § 2533;

vii)    A permanent injunction prohibiting Philips' deceptive trade practices;

viii)   A judgment that Philips has engaged in fraud;

ix)     A judgment that Philips has engaged in negligent misrepresentation;

x)      A permanent injunction prohibiting further or future enforcement of the '075 patent;

xi)     An award of damages adequate to compensate Kodak for the harm caused to it as a result of Philips' unlawful conduct;

xii)    A judgment deeming this to be an "exceptional" case within the meaning of 35 U.S.C. § 285, entitling Kodak to an award of reasonable attorneys' fees, expenses and costs in this action; and

xiii)   Such other and further equitable or legal relief as the Court or a jury deems proper, including the disgorgement by Philips of all sums that it has obtained pursuant to the scheme described herein.

### JURY TRIAL DEMANDED

Kodak demands a trial by jury as to all issues and causes of action so triable herein, pursuant to Federal Rule of Civil Procedure 38.

Dated: October 17, 2006                    Respectfully Submitted,


/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
e-mail: fdigiovanni@cblh.com

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
Bruce H. Watrous, Jr.
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700

Attorneys for Defendant/Counterclaimant
Eastman Kodak Company

35

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on October 17, 2006, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Steven J. Balick
> John G. Day
> Tiffany Geyer Lydon
> 222 Delaware Avenue, 17th Floor
> P.O. Box 1150
> Wilmington, DE 19899

I further certify that on October 17, 2006, I caused a copy of the foregoing document to

be served by hand delivery and e-mail on the above-listed counsel of record, and by e-mail on

the following counsel of record:

> Thomas W. Winland
> Steven M. Anzalone
> Frank A. DeCosta, III
> Finnegan Henderson Farabow Garrett and Dunner LLP
> 901 New York Avenue, NW
> Washington, DC 20001

> /s/ Francis DiGiovanni
> Francis DiGiovanni (#3189)
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE  19899
> Phone (302) 658-9141