# EXHIBIT 6



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER** LLP

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

JOYCE CRAIG-RIENT
202.408.6013
joyce.craig-rient@finnegan.com

March 2, 2007

T. Jesse Hindman, Esq.                              **Via Electronic Mail**
DLA Piper                                   **Confirmation by U.S. Mail**
401 B Street
Suite 1700
San Diego, California 92101-4297

Re:    Status of Discovery and Depositions
       U.S. Philips v. Eastman Kodak, Civil Action No. 06-251-GMS

Dear Jesse:

I am writing to memorialize the substance of our telephone conversations regarding discovery and depositions in the above-referenced matter.

1.    <u>Discovery</u>

The parties agree to extend the due date for responses to written discovery requests from March 5, 2007, until April 6, 2007. This includes the responses to requests for documents and things under Rule 34 relating specifically to Dr. John Morris, Norman Richards, Simon Turner, C. Brandis, U. Rothgordt, Gerald Weth, and Karl-Heinz Wenzel .

2.    <u>Depositions</u>

The parties agree to postpone the 30(b)(6) deposition of U.S. Philips noticed by Kodak for March 28, 2007, until approximately 30 days from the date responses to written discovery requests are served as outlined above.

At the present time, the status of the deposition situation is as follows:

John Morris is currently employed by Philips. Philips will make Mr. Morris available in the United Kingdom at a time that is mutually convenient and agreeable to the parties within approximately 30 days from the date responses to written discovery requests are served.

Simon Turner and Norman Richards are retired employees of Philips. As such, Philips will make every effort to make them available in the United Kingdom at a time

Washington, DC ▪ Atlanta, GA ▪ Cambridge, MA ▪ Palo Alto, CA ▪ Reston, VA ▪ Brussels ▪ Taipei ▪ Tokyo

T. Jesse Hindman, Esq.
March 2, 2007
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that is mutually agreeable and within approximately 30 days from the date responses to written discovery requests are served. Philips is unable at this time to represent that Messrs. Turner and Richards will be available without service of process as they are not within Philips' control.

C. Brandis, U. Rothgordt, Gerald Weth, and Karl-Heinz Wenzel are not within the control of Philips. As such, Kodak would have to independently effect service of process on these individuals to ensure their attendance at any deposition.

Sincerely,

Joyce Craig-Rient

Joyce Craig-Rient

JCR/bat

1295345_2.DOC

# EXHIBIT 7

International Telegraph and Telephone
Consultative Committee
(CCITT)

COM VIII-R 13-E
March 1988
Original: English

Period 1985-1988

Questions: 1-30/VIII

## STUDY GROUP VIII - REPORT R 13

SOURCE: STUDY GROUP VIII

TITLE:    REPORT OF FINAL MEETING OF STUDY GROUP VIII IN THE STUDY
          PERIOD 1985-1988 (GENEVA, 8 TO 19 FEBRUARY 1988)

Note by the CCITT Secretariat: The Report of the meeting of Study Group VIII
which was held in Geneva from 8-19 February 1988 is not to be published before
the IXth Plenary Assembly. Its purpose is to summarize to the decision made and to
retain the material useful for the next Study Period and interim work (Annexes
to Questions, etc.). The Report refers to, but does not duplicate, the contents
of the Report of Study Group VIII to the IXth Plenary Assembly which is composed
of four parts in separate documents:

PART I      -  General Report - Published in AP IX-18/COM VIII-R 14

PART II     -  Proposals for new T-Series Recommendations

               Published in :
               AP IX-19/COM VIII-R 15.I     -  Recommendations T.62bis - T.400
               AP IX-20/COM VIII-R 15.II    -  Recommendations T.411 and T.412
               AP IX-21/COM VIII-R 15.III   -  Recommendations T.414 - T.418
               AP IX-22/COM VIII-R 15.IV    -  Recommendations T.431 - T.433
               AP IX-23/COM VIII-R 15.V     -  Recommendations T.441 - T.564

PART III    -  Proposals for revised Recommendations

               Published in :
               AP IX-24/COM VIII-R 16.I     -  Recommendations T.O to T.101 and T.390
               AP IX-25/COM VIII-R 16.II    -  Recommendation T.101, Annex 'A'

PART IV     -  AP IX-26/COM VIII-R 17       -  Proposed Study Programme of Study
                                               Group VIII for the 1989-1992 Study
                                               Period



(3123)

● For reasons of economy, this document is printed in a limited number of copies. Participants are therefore kindly asked to bring ●
their copies to the meeting since no others can be made available.

- 2 -
COM VIII-R 13-E

CONTENTS

Introduction

1.      Report of the First Session (8 February 1988)

1.1     Opening of the meeting
1.2     Adoption of the agenda
1.3     Report of the Chairmen's meeting (1-3 September 1987)
1.4     Report of the Study Group "S" (14-16 December 1987)
1.5     Guidelines from the last Plenary Assembly concerning the titles of
        Recommendations
1.6     Approval of the last Working Party Reports
1.7     Nomination of Special Rapporteurs for French and Spanish editions of
        Recommendations
1.8     Liaison from ISO - General information
1.9     Presentation of contributions on general matters

2.      Report of the Final Plenary Session (19 February 1988)

2.1     General
2.2     Approval of Reports
2.2.1   Approval of Reports on Question 2/VIII
2.2.2   Approval of Reports on Question 20/VIII
2.2.3   Approval of Reports on Working Party VIII/1
2.2.4   Approval of Reports on Working Party VIII/2
2.3     Approval of revised Recommendations
2.4     Approval of new Recommendations
2.5     Approval of replies to the Questions
2.6     Approval of new Questions
2.7     Appointments of Interim Rapporteurs
2.8     Liaison matters with International Organizations or Study Groups

3.      Other business

4.      Closing

Annex 1 - List of participants
Annex 2 - Agenda
Annex 3 - Patent Policy
Annex 4 - Extract of the report from the Special Rapporteur on ISDN
Annex 5 - List of documents

(3123)

- 3 -
COM VIII-R 13-E

Introduction

      According to Collective letter-No. 199, the final meeting of
Study Group VIII in the Study Period 1985-1988 was held in Geneva from
8 to 19 February 1988. The meeting was chaired by Mr. W. Staudinger, assisted by
the five Vice-Chairmen, Mr. Marti (France), M. Macchioni (Italy), Mr. Pugh
(United Kingdom), Mr. Sivakov (USSR) and Mr. Teramura (Japan).

      The list of participants is in Annex 1 to this Report.

1.      Report of the First Session (8 February 1988)

1.1      Opening of the meeting

      The Chairman welcomed the delegates and gave the necessary information
in order that the meeting be efficient and conclude the work of Study Group VIII
in this Study Period. He introduced the working documents, with the assistance
of the Secretariat, especially TDs: 1, 2, 30, 31, 34, 35, 44, 50, 51, 52.

1.2      The agenda, as approved, is in Annex 2.

1.3      Report of the Chairmen's meeting (1-3 September 1987)

      The agreed guidelines were presented. In particular the presentation of
Reports to the Plenary Assembly, replies to the Questions, presentation of new
Questions. The annexes to the Question will stay in this report and be part of
Contribution No. 1 of the relevant Study Group in the next Study Period. Only
draft Recommendations but not Contributions are annexed to Questions.

1.3.1      Reservations if any are to be indicated in written form by the
delegations and will appear in COM VIII-R 14.

1.3.2      The CCITT Patent Policy is summarized in TD 30 (Annex 3).

1.3.3      The next meeting of the Chairmen is planned for 5-7 July 1988 and will
mainly deal with proposals to Commission "B" of the Plenary Assembly
concerning the allocation of Questions.

1.4      Report of Study Group "S" (14-16 December 1987)

      The Chairman gave a brief summary of work of Study Group "S".

1.4.1      Most changes concern Study Group "A" (Services) and "B" (Networks). The
respective mandate of Study Group "G" (VII) and "H" (VIII) should not vary too
much in the next study period. However, to permit a correct allocation of
Questions by the IXth Plenary Assembly, the proposed texts should be modular and
indicate other Study Groups of external organizations concerned with the
Question (see AP IX-1/COM "S"-R 3).

1.4.2      The liaisons will be described in an amended version of
Resolution No.1.

      -   Liaisons at Special Rapporteur's level with endorsement by the
         Study Group Chairman.

      -   Official liaisons from Study Groups to other Study Groups or
         external organizations.

- 4 -
COM VIII-R 13-E

Mr. Harold FOLTS (USA has been officially appointed liaison coordinator from ISO/JTC 1 to CCITT and should receive copy of the liaison statements to JTC 1.

1.5    Title of Recommendations

The titles should be written in full and the abbreviations in brackets.

1.6    Nomination of rapporteurs for French and Spanish texts of the Blue Book

In a letter to the Chairmen of large Study Groups, Mr. Th. Irmer proposes that experts from Administrations be volunteer to help in translation and revision. The French Delegation asked for precise dates: this subject will be addressed again in the presence of Mr. Th. Irmer (see point 3.3).

1.7    Liaison from ISO - General information

The Chairman recalled the general principles of the existing good cooperation with ISO and IEC.

Mr. Friemelt made a presentation on JTC 1 and Resolution 28 from ISO.

Mr. Campbell-Grant indicated the good alignment of ISO and CCITT texts and the aim to work on one single common document in the future. The Chairman addressed his best wishes to Mr. Zeckendorf, who could not attend due to serious illness.

1.8    Approval of Reports (COM VIII-R 10, R 11, R 12)

1.8.1    COM VIII-R 10 - Approved.

1.8.2    COM VIII-R 11 - Approved.

1.8.3    COM VIII-R 12 - Approved.

1.9    Presentation of documents on general matters

The United Kingdom proposed a new Question on "Scope of CCITT terminal Recommendations" (COM VIII-180).

This subject was suggested to be studied mainly in WP VIII/1.

Note - Further discussion in WP VIII/1 led to the conclusion that this fundamental subject is a matter to be discussed at the Plenary Assembly. The United Kingdom was therefore invited to raise this matter at the Plenary Assembly.

2.    Report of the Final Plenary Session (18 February 1988)

2.1    General

There was a general presentation of the results, final discussion on draft Recommendations, answers to Questions and proposed new Questions as well as proposed Liaison Statements. The approved Draft replies to the Questions are not contained in this Report. They are incorporated in the General Report of SG VIII to the Plenary Assembly.

(3123)

- 5 -
COM VIII-R 13-E

The proposed new Study Questions (without Annexes) as approved by the Study Group are published in COM VIII-R 17. The Study Questions approved by the Plenary Assembly are published (including the Annexes) in Contribution No. 1 of the New Study Period.

It was agreed to prepare the following note for the T.40C-Series.

Note -  The terminology on Document Architecture has evolved during the elaboration of Recommendations during the study-period 1985-1988.

In order to prevent the readers from misinterpretations, Document Architecture Transfer and Manipulation (DATAM) is the general name for the T.400 Series.

Document Transfer and Manipulation (DTAM) is relevant to the T.430 Series.

2.2    Approval of Reports

2.2.1    On Question 2/VIII a revision of Recommendation T.0 was approved. This is contained in COM VIII-R 16.

2.2.2    On Question 20/VIII draft Recommendation T.isdn was approved. The discussion is recorded in Annex 4.

        T.isdn is T.90.

2.2.3    Working Party VIII/1 - All proposals for revised and new Recommendations were approved, except Annex A of T.101.

        It was noted (refer to Q.17/VIII) that NTT Japan holds a number of patents on "Zone Coding" and that NTT agrees on the Patent Policy Principles of CCITT.

        After further discussion in the Plenary session, Annex "A" of T.101 was finally modified and then accepted by all delegations without any reservation.

2.2.4    Working Party VIII/2 - All proposals for revised or new Recommendations presented by Working Party VIII/2 were approved.

2.3    Approval of revised Recommendations

        The revisions according to the list in TD 35(Rev.) are approved and published in AP IX-24 and 25/COM VIII-R 16.I and 16.II for approbation by the IXth Plenary Assembly.

2.3.1    Reservation and comments

        Editorial changes have been indicated and directly given to the Secretariat.

        No reservation from any delegation.

(3123)

- 6 -
COM VIII-R 13-E

2.4       Approval of new Recommendations

        The texts on new Recommendations according to the list of TD 35(Rev.)
are approved and are proposed for approbation by the IXth Plenary Assembly in
Document AP IX-19 to 23/COM VIII-R 15.I to 15.V.

2.4.1     Reservations and comments

        Editorial changes have been indicated and directly given to the
Secretariat.

        No reservation from any delegation.

2.5       Approval of replies to the Questions

        The draft replies to the Questions were approved. They are summarized
in AP-18   /COM VIII-R 14.

2.6       Approval of new Questions

        Seven new Questions were approved.

        Seven Questions were cancelled.

        Twenty-three Questions were rewritten or slightly amended.

        The proposed Study Programme of Study Group VIII for the 1988-Study
Period is published in AP IX -26/COM VIII-R 17.

        Annexes to the Questions will be part of Contribution No. 1 of the next
Study Period.

2.7       Appointments of Interim Rapporteurs

|  |  |
|---|---|
| NIC | - Mr. Sebestyen |
| Telematic Interworking | - Mr. Kadoch |
| Question 5/VIII | - There will be a joint meeting with experts from SG XVII .. Interested delegates should contact the Chairman of SG XVIII (Mr. Kern). |
| DATAM | - Mr. Silbiger |
| Mixed Mode | - Mr. Hunter |
| Transport | - Mr. Hoever |
| Teleconferencing | - An Interim Rapporteur for joint activities in SG I, VIII, XVII, XV, XVIII will be nominated by SG I |
| ISDN | - Mr. Matsumoto |
| Facsimile | - Mr. Pugh |

2.8       Liaison matters

        Seventeen liaison statements to ISO and to other CCITT Study Groups
were endorsed.

(3123)

- 7 -
COM VIII-R 13-E

3.      Other business

3.1     Patent

        The Chairman asked if there were any Patents relevant to any T-series
Recommendation which had not yet been communicated to the CCITT Secretariat.
This was not the case.

3.2     The first part of this report was adopted.

3.3     Mrs. Mahy (France) and Mr. Gallego (Spain) are potential volunteers for
editing texts of the Blue Book.

4.      Closing

        The Chairman said that Study Group VIII can be proud of the excellent
results achieved during the 1984-1988 Study Period and addressed his
appreciation to the Vice-Chairmen, the Rapporteurs, the Delegates and the
Secreteriat.

        He also extended the gratitude of the Study Group to the interpreters
and the staff responsible for rooms and equipment for providing excellent
working conditions.

- 8 -
COM VIII-R 13-E

ANNEXE 1              ANNEX 1              ANEXO 1

LISTE DES PARTICIPANTS    LIST OF PARTICIPANTS    LISTA DE PARTICIPANTES

Président    :
Chairman     :  M. W. STAUDINGER (R.F. d'Allemagne)
Presidente   :                  (F.R. of Germany)
                                (R.F. de Alemania)

Vice-Présidents   :  MM. A. MACCHIONI) (Italie - Italy - Italia)
Vice-Chairmen     :   B. MARTI (France - Francia)
Vice-Presidentes  :   A. PUGH (Royaume-Uni - United Kingdom -
                        Reino Unido)
                      V.T. SIVAKOV (U.R.S.S. - U.S.S.R. - U.R.S.S.)
                      H. TERAMURA (Japon - Japan - Japón)

Allemagne (R.F.d') -        MM. P. DELFS
Germany (F.R. of) -            T. DILLMANN
Alemania (R.F. de) -          M. FIRLL
                              H. HERTLEIN
                              W. HOEVER
                              J. JACOBS
                              K. KARTMANN
                              F. MÜLLER
                              K. NÉMETH
                              J. OTTO
                              P. SCHNEIDER
                              H. SCHULZ
                              M. SCHUMANN
                              W. SEVENICH

Australie - Australia        A. CABRERA

Autriche - Austria           K. SAMBOR

    Radio-Austria            A. HABLICK

(3123)

- 9 -
COM VIII-R 13-E

| | |
|---|---|
| Belgique - Belgium - Belgica | MM. J. LERUSE |
| | A. MATON |
| | G. OLEMANS |
| Brésil - Brazil - Brasilia | J. BRAGA |
| | C. KLEMZ |
| Canada | Y. LUM |
| CNCP Telecom. | A. DUBRAWSKI |
| | T.G. MOORE |
| | J. DE WIELE |
| Telecom Canada | S.J. CROSSMAN |
| | B. HEBRAWI |
| Teleglobe Canada | M. KADOCH |
| Chine - China | S. CHEN (Ms) |
| | M. LU (Ms) |
| Corée (Rep.de) - | K. CHO |
| Korea (Rep. of) - | J. HAHM |
| Corea (Rep. de) | C. LEE |
| Danemark - Denmark - Dinamarca | E. FRYDENLUND |
| | H. PETERSEN |
| | T. RASMUSSEN |
| | P. TAEKKER |
| Espagne - Spain - Espana | |
| CTNE | E. GALLEGO |
| | A. JIMENEZ |
| Etats-Unis d'Amérique - | G. FERENO |
| United States of America - | D. DAVIS |
| Estados Unidos de América - | C. BODSON |
| | F. NIELSEN |
| | E. GAVENMAN |
| | R. GRANT |
| | R. HOLLEMAN |
| | St. PERSCHAU |
| | H. SILBIGER |
| | R. SMITH |
| | St. URBAN |
| AT&T | G. MASCARICH (Ms) |
| | D. STANWYCK |
| Pacific Bell | P. TONELLI |
| Finlande - Finland - Finlandia | H. SAARINEN |

(3123)

- 10 -
COM VIII-R 13-E

| | | |
|---|---|---|
| France - Francia | MM. | M. CHARON |
| | | Y. CHAUVEL |
| | | P. HENRY |
| | | H. LAYEC |
| | | A. Le ROUX |
| | | Y. LUNDECHAMP |
| | | C. MAHY (Ms) |
| | | P. MAURICE |
| | | R. MOTSCH |
| | | B. REVILLET |
| | | L. SOULOUMIAC |
| | | T. STEPHANT |
| Grèce - Greece - Grecia | | A. LATSIS |
| | | G. THEODOROU |
| Hongrie - Hungary - Hùngara | | J. BERKES |
| Italie - Italy - Italia | | B. MINIERI |
| | | G. RINALDO |
| Italcable | | S. CARONI |
| SIP | | F. CIVITA |
| | | C. GENTILE |
| | | St. MARIANI |
| | | D. MAROCCO |
| Japon - Japan - Japón | | K. ABE |
| | | H. CHONO |
| | | S. INADA |
| KDD | | A. IHARA |
| | | M. KATO |
| | | K. NAKAO |
| | | S. SATO |
| | | H. WADA |
| | | Y. YAMAZAKI |
| NTT | | K. HISHIYAMA |
| | | M. MATSUMOTO |
| | | T. OIWA |
| | | A. TERADA |
| | | N. SONEHARA |
| | | M. SUGIMOTO |
| | | R. SUZUKI |
| Norvège - Norway - Noruega | | P. HEGGELUND |
| | | P. HOGNES |
| | | M. PEDERSEN |
| | | R. TREVLAND |

(3123)

- 11 -
COM VIII-R 13-E

| | |
|---|---|
| Pays-Bas – Netherlands – Paises Bajos | MM. L. DIJKSTRA |
| | D. MEESTER |
| | W. MEIJER |
| | J. SCHENKELAARS |
| | A. VEENSTRA |
| Royaume-Uni – United Kingdom – Reino Unido | P. SCOTT |
| | L. DAVIS |
| British Telecom | N. ARNOLD |
| | A. BARRETT |
| | A. BENCE |
| | Ch. DAWKINS |
| | I. HIRST |
| | R. HUNTER |
| Cable & Wireless | J. SLAYTOR |
| Singapour (Rep.de) – Singapore (Rep. of) – Singapur (Rep. de) – | L.K. LIEW |
| Suède – Sweden – Suecia | B. ALLONEN |
| | L. LARSSON |
| Suisse – Switzerland – Suiza | K. BOHREN |
| | A. ROMANENS |
| | R. STADLER |
| | H. STEINGER |
| | R. TISSOT |
| | P.A. WENGER |
| Thaïlande – Thailand – Thailandia | Y. KESSIRI |
| | M. SAIKAEW |
| URSS – USSR | V. KOROL |

(3123)

- 12 -
COM VIII-R 13-E


ORGANISMES SCIENTIFIQUES OU INDUSTRIELS
SCIENTIFIC OR INDUSTRIAL ORGANISATIONS
ORGANISMOS CIENTIFICOS O INDUSTRIALES


Allemagne (R.F. d') –
Germany (F.R. of) –
Alemania (R.F. de) –

  Hoechst AG        MM. E. VAN LANTSCHOOT

  Nixdorf Computer AG      H.P. SIGL

  Philips Kommunikations Industrie AG  U. ROTHGORDT
                K.-H- WENZEL

  Siemens AG         H. FIEDLER
                O. POPP
                I. SEBESTYEN
                M. TANTOW

  Standard Elektrik Lorenz AG   H. HAMPEL
                K. PASSOW
                H. WOZNY

Canada – Canadā

  Bell-Northern Research     J. COSTA

Etats-Unis d'Amérique –
United States of America –
Estados Unidos de América –

  IBM Corp.        C.F. TOUCHTON

  Wang Laboratories Inc.     J. FENN

Finlande – Finland – Finlandia

  Research Institute of the Helsinki  A. MAANAVILJA
   Telephone Co.

France – Francia

  Bull SA         J. HENRY

  IBM Europe        H. WEISZ

  SAGEM         P. CHARBONNIER
                P. HOEL
                J.P. GIOVANNANGELI

Italie – Italy – Italia

  Ing. C. Olivetti & Co.     A. GIOVAGNETTI


(3123)

- 13 -
COM VIII-R 13-E

Japon - Japan - Japón

    Canon Inc.                           MM. T. TAKEDA

    Fujitsu Ltd.                            Y. INOUE

    Hitachi Ltd.                            S. HIRANO

    IBM Japan                              Y. WATANABE

    MGCS Inc.                              T. SUZUKI
                                        T. YAMAMOTO

    Mitsubishi Electric Corp.          S. KINO

    NEC Corp.                              Y. KIKUMOTO

    OKI Electric Industry Co., Ltd.   K. YAMADA

    Ricoh Co. Ltd.                        M. SUGIE

    Toshiba Corp.                       Ch. MOTEGI

Royaume-Uni - United Kingdom -
Reino Unido

    Hewlett-Packard Ltd.            S. PANCHEN (Ms)

    Rank Xerox Ltd.                  J. IMAMZADE


ORGANISATIONS INTERNATIONALES
INTERNATIONAL ORGANISATIONS
ORGANIZACIONES INTERNACIONALES


C.E.I.                            M. SABEV (Ms)

ECMA                        MM. I. CAMPBELL-GRANT
                                 P. KAIJSER
                                 J. SCHWARZ

ISO                              J. FRIEMELT
                                 O. THOMSEN


UIT/SECRETARIAT DU CCITT
ITU/CCITT SECRETARIAT
UIT/SECRETARIA DEL CCITT


    UIT - ITU                       T. RUTKOWSKI

    CCITT                          J. LEPESQUEUR, Conseiller supérieur
                                        Senior Counsellor
                                        Consejero superior

(3123)

- 14 -
COM VIII-R 13-E

ANNEX 2

Agenda for the Plenary meetings of
CCITT Study Group VIII, 8 and 19 February 1988

| Day | Item | Subject |
|-----|------|---------|
| 08.02. | 1 | Opening of the meeting |
| | 2 | Adoption of the Agenda |
| | 3 | Report about the Chairmen's meeting (1-3 September 1987), discussion about the agreed guideliness: |

- Composition of the Report to the PA
  * Replies to the Questions
  * New Recommendations
  * Revised Recommendations
  * New Study Questions

- Annexes in the Report to the PA and in COM VIII-1

- Report of the Final Meeting

- Procedure for reservations

- Patent Policy

| Day | Item | Subject |
|-----|------|---------|
| | 4 | Report about SG S (14-16 December 1987) |
| | 5 | Guidelines from the last PA concerning the title of Recommendations |
| | 6 | Nomination of special Rapporteurs for editing French and Spanish |
| | 7 | Liaisons from ISO |
| | 8 | Approval of the last WP Reports |
| 19.02 | 9 | Approval of the Report on Q.2/VIII<br>Approval of the Report on Q.20/VIII |
| | 10 | Approval of Reports of WP 1 and WP 2, approval of revisions, new Recommendations, Study Questions |
| | 11 | Approval of additional new Study Questions |
| | 12 | Appointment of Interim Rapporteurs |
| | 13 | Liaison matters with external organizations |
| | 14 | Any other business |
| | 15 | Closing |

(3123)

- 15 -
COM VIII-R 13-E

ANNEX 3

Statement on CCITT Patent Policy

Over the years, the CCITT has developed a "code of practice" regarding patents or any other rights covering, to a varying extent, the subject matter of CCITT Recommendations. The rules of this "code of practice" are rather simple and straightforward - Recommendations are being drawn up by telecommunications but not patent experts, who may not be very familiar with the complex international legal situation of trade rights, patents, etc.

CCITT Recommendations are international standards. Their objective is to ensure compatibility of international telecommunications on a world-wide basis. To meet this objective, which is in the common interest of all those participating in international telecommunications (network providers, suppliers, users) it must be ensured that CCITT Recommendations, their application, use, etc. are accessible to all exclusive (monopolistic) commercial abuse by a single holder of a patent embedded in a CCITT Recommendation being avoided. To meet this requirement in general is the sole objective of the CCITT code of practice, the detailled arrangements being left to the parties involved, as these arrangements might differ from case to case.

This code of practice may be summarized as follows (it should be noted that ISO operates in a very similar way):

1.      The CCITT cannot give authoritative or comprehensive information about evidence, validity or scope of patents or similar rights, but it is desirable that the fullest available information should be disclosed. Therefore, the CCITT member organization putting forward a proposal of this type should draw the CCITT's attention to any known patent and similar rights on a world-wide basis or any known pending applications, although CCITT is not in a position to guarantee the validity of any such information.

2.      If a CCITT Recommendation is issued and such information as referred to in § 1) has been disclosed, three different cases may arise:

2.1      The patent holder waives his rights; hence the CCITT Recommendation is accessible to everybody subject to no particular conditions, no royalties are due, etc.

2.2      The patent holder is not prepared to waive his rights but would be willing to negociate licenses under patent or similar rights on a non-discriminatory basis with applicants throughout the world on reasonable terms and conditions (to be performed outside the CCITT).

2.3      The patent holder is not willing to comply with the provisions of § 2.1 or § 2.2; in such case no CCITT Recommendation can be established.

3.      Whatever case applies (2.1, 2.2 or 2.3) the patent holder has to provide a written statement to be filed at the CCITT Secretariat. These statements must not include additional provisions, conditions or any other exclusion clauses in excess of what is provided for each case in §§ 2.1, 2.2 and 2.3.

# EXHIBIT 8

C C I T T                                                                 Document No. 2-E

Meeting of Chairmen of Study Groups

Geneva, 6-9 December 1983                                    Original : English


Question: 1.1.1

TITLE   : CCITT PATENT POLICY

---

The question of how to deal with patented subjects in CCITT first came up in the early 1970's.  In view of the experience of other standardization organisations (e.g. IEC, ISO) and the desirability to apply the same rules for all organisations, it was decided to adopt in principle the IEC/ISO rules for CCITT work.

These rules stipulate that Study Group members should inform the meeting if they know of any patent concerning a subject under study.  If such a patent exists, the patent holder is required to make the patent available to members.  The minimum requirements are, to grant licenses on a non-discriminatory basis and for reasonable fees.  Such a statement by the patent holder is usually published as a meeting document.  Members of the Study Group are then free to negotiate a license agreement with the patent holder until the next  Plenary Assembly when the draft Recommendation concerned is submitted by the Study Group for approval by the Plenary.

If any such license negotiations fail, the Administration concerned may request the Study Group Chairman to withdraw this draft Recommendation from the Plenary Assembly.

These rules, although not printed in the CCITT Book, have worked satisfactorily over the years and the CCITT secretariat is not aware of a single case where the rules did not resolve the problem.  *Paul Hilge UK/Codex*

The advice of the CCITT Study Group Chairmen is sought as to whether the present procedure can be continued or whether they have encountered difficulties in their Study Groups.

*UK: reservation*

# EXHIBIT 9

JPEG
JOINT PHOTOGRAPHIC EXPERTS GROUP
ISO/IEC  JTC1/SC2/WG10
CCITT SGVIII

JPEG-718
4 Aug 1991

SOURCE: Convenor   (G.K.Wallace, Digital Equipment)

TITLE:  Request for Patent Statements or Re-statements

Dear WG10 Participant,

As described in section 4.1 of JPEG-717 ("Proposed procedures for idenitfying patents in WG10), I hereby request that you identify the following:

All patents which you believe, with reasonable likelihood, MUST be used in EVERY implementation (whether encoder or decoder) of any one or more of the 29 defined coding processes specified at the start of Annexes F through J of CD 10918-1.

Please include all such patents that you know of, whether they are held by you, by another member of your company or organization, or by any individual, company, or organization anywhere in the world.

(This is not a request to do a patent search – only to identify any patents you currently know of, which meet the criteria above.)

Please bring a letter with you to the August WG10 meeting in Santa Clara, answering the above request.  If you know of no such patents, except those which have already been brought to JPEG's attention, please state that in your letter.

If you do know of any patents which meet the above critieria, and have not yet been brought to JPEG's attention, please include the patent numbers, titles, and patent-holder's names in your letter. If possible, please also attach a copy of the patents themselves.

# EXHIBIT 10

ISO

INTERNATIONAL ORGANIZATION FOR STANDARDIZATION
ORGANISATION INTERNATIONAL DE NORMALISATION

ISO/JTC97/SC2/WG8

CODED REPRESENTATION OF PICTURE
AND AUDIO INFORMATION

ISO JTC97/SC2/WG8 N 741
May 9, 1988

SOURCE: Gregory Wallace

TITLE: Patent Issues: ADCT and ISO in General

## 1. Patent Search and Generic Infringement Issues

I am working with a prominent Boston law firm, specializing in
patent law, to determine whether there might be any US, European,
or Japanese patents which could possibly be infringed by implemen-
tations of the ADCT proposal.

We have performed an initial patent search, searching the patent
databases back to the early 1970's for patents containing text
strings like Discrete Cosine Transform, Cosine Transform, DCT,
etc. We've also searched on the basis of individual and company
names known to be in the business of image coding.

There are two basic ways by which an image codec implementation
could infringe an existing patent. One is if a specific component
within the codec were claimed within a patent. The other, of
course, is if the entire image codec, viewed as a system, were too
similar to an image codec system claimed within a patent.

## 2. Patents Found to Date: ADCT Looks Safe

Regarding system similarity, I have found patents on image codec
systems that use the DCT and IDCT, but all that I have found to
date have been for motion image coding, and are not at all like
the system of the ADCT's proposal. They do not claim the DCT or
IDCT as unique components; they claim their entire system as
unique. Regarding component similarity, the major components of
the ADCT proposal are DCT, quantizer, Huffman coder, etc. I have
not found any patents which claim any of these components as
unique.

The Discrete Cosine Transform itself, as a mathematical operator,
is very unlikely to be claimed in any patent, any more than the
Fourier Transform would be. Various Cosine Transforms have been
discussed in the technical literature for over 20 years, longer
than the the 17-year life of a patent in the U.S.

EXHIBIT 33

It is possible, though, that there may be specific algorithms for computing the DCT, and particularly, specific hardware implementations of an algorithm, that will be patented. To date, JPEG has not talked of specifying any particular algorithms for computing the DCT. If JPEG does specify any, it may be desirable to avoid any which are patented.

## 3. What if Someone Does Claim a Patent on the ADCT?

Though I and the law firm I'm working with are trying to do a thorough determination of whether any part of the ADCT will likely infringe some patent, it is impossible to PROVE that no one ever will come forward and claim to hold a patent which covers all or part of the ADCT. But, this situation would hold no matter which proposal JPEG had selected for refinement.

I have learned that ISO will NOT take a position on whether a patent legitimately does or does not cover an ISO standard. This is a legal issue, which can be decided only by a court, and only within a particular country.

If a party comes forward during the standards-development process, and claims to hold a patent covering a proposed standard, ISO takes a pragmatic approach. ISO asks the party to write a letter, stating it will grant an unrestricted worldwide license on fair and reasonable terms.

I talked to an expert on patents and ISO standards, who said he had never heard of a case where such a party was unwilling to write such a letter. Doing so is virtually always in that party's own interest. Furthermore, I have learned that ISO will NOT give any interpretation of what "fair and reasonable terms" are. So, by writing such a letter, the party is not agreeing in advance to any particular fee (for example, a fee it feels may be too low).

To repeat, ISO does NOT make any judgment about whether any patent-holder has a legitimate claim on a standard. Just because ISO has accepted a letter about licensing does not mean ISO recognizes the claim as valid. It is up to every prospective implementor of the standard to make its own decision about such a claim. The implementor may choose to ignore the claim, to pay the fee whether it feels the claim is not valid or not, to negotiate for a lower fee, to challenge the patent-holder in court, etc.

## 4. Conclusion

My conclusion is that the only difference between our present patent situation with the ADCT, and the patent situation with the other JPEG proposals considered at Copenhagen in January, is that to date, no party has claimed a patent covering the ADCT. For the other proposals, there would also be no guarantee that some party would not come forward in the future and claim to have a patent on some part of that proposal.

The ADCT patent search and examination I've initiated will complete within the next two months. At that time, I'll issue a final report to JPEG. As of this writing, I've not found any patent which appears to cover the ADCT.

# EXHIBIT 11

JPEG
JOINT PHOTOGRAPHIC EXPERTS GROUP
ISO/IEC   JTC1/SC2/WG8
CCITT    SGVIII

JPEG-11.2-R1
February 24, 1989

Source:    JPEG Chairman (Gregory Wallace, Digital Equipment Corporation)
Title:     Recommendations from Livingston N.J. JPEG Meeting

Recommendation 1:    Structure Of Standard

JPEG recommends that the Still-Frame Continuous-Tone Image Compression standard
be structured as follows:

A.  BASELINE SYSTEM: Every system is required to have the following capability, in
order to guarantee image communication between any two systems:

Function: Sequential Build-up, Non-Reversible Compression.
Entropy coding: Huffman.

Other Requirements:

-  Store default Huffman Tables, Quantization Matrices. (Encoder and Decoder).

-  Receive custom Tables and Matrices. (Decoder).

-  Handle Resynchronization Codes. (Decoder).

B.  EXTENDED SYSTEM: In addition to the Baseline System capability, an extended
system may select any of the following capabilities as options:

-  Extended Huffman Coding
-  Arithmetic Coding
-  "Front-End" A.C. Prediction
-  Bit-Slice
-  Spectral Selection
-  Hierarchical
-  Reversible (Difference Image)
-  Resynchronization Codes

C.  INDEPENDENT FUNCTION: This function is a simple algorithm for Reversible
encoding and decoding. The algorithm is identical to the one used to encode the D.C.
terms in the Extended System. It can be used independently of the Extended or Baseline
Systems.

EXHIBIT 41

Recommendation 2:    JPEG's Release of Technical Specification

At this time, the JPEG Editing Committee is preparing a detailed draft technical speci-fication according to the recommended structure above. The first draft of this specifica-tion to be released by JPEG will be available by July 1, 1989.

Recommendation 3:    Thanks To Dr. LeGall and Bellcore

JPEG expresses its sincere appreciation to its hosts, Dr. Didier LeGall and Bellcore, for their kind hospitality and excellent facilities, for the Livingston JPEG meeting.

Recommendation 4:    Thanks to Kodak and Crossfield

JPEG Expresses Great Thanks To:

- Mr. Michael Nier and Kodak
- Mr. Graham Webb and Crossfield

For their kind and professional assistance in testing the JPEG algorithm for High-Resolution Printing Applications.

Recommendation 5:    Patent Restatements Due by June 5, 1989

All Proposers of any Part of the JPEG algorithm being considered for Standardization, must attempt to identify any Patents which Proposer believes would apply to his/her proposed Part of the JPEG algorithm. (This does not include Patents which, in the Proposer's opinion, are only related, but do not apply, to the Part he/she is proposing). If any such Patents are identified, the Proposer must obtain from the Patent Holder(s) a Statement of whether they will follow the ISO requirements. All of this information must be sent to JPEG Chairman by June 5, 1989.