UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>EASTMAN KODAK COMPANY,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>CIVIL ACTION NO. 06-00251 GMS |

DEFENDANT EASTMAN KODAK COMPANY'S REQUEST FOR
INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970
ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL
MATTERS

The United States District Court for the District of Delaware presents its compliments to the judicial authorities of Baden-Württemberg, Germany and requests assistance in obtaining evidence to be used in civil proceedings before this Court.

This request is made pursuant to, and in conformity with, Chapter I of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters* ("the Hague Convention"), to which both the United States and the Republic of Germany are parties, the Regulation on Judicial Assistance in Civil Matters (ZRHO) and Rules 28 and 30 of the United States Federal Rules of Civil Procedure.

Specifically, this Court requests assistance in compelling testimony and documents from a witness located in Baden-Württemberg, in relation to the above-named action. The Court asserts that the evidence sought is directly relevant to the issues in dispute and is not discovery within the meaning of Article 23 of the Hague Evidence

1

Convention, that is, testimony or documents merely intended to lead to relevant evidence for trial.  This Request fully complies with German reservations under the Hague Evidence Convention.  Trial in this action is scheduled to commence on April 28, 2008.

The particulars of this Hague Evidence Request are as follows:

| | | |
|---|---|---|
| *1.* | ***Sender*** | Hon. Gregory M. Sleet<br>United States District Judge<br>United States District Court for the<br>District of Delaware<br>844 N. King Street, Room 4324<br>Wilmington, DE 19801<br>U.S.A.<br><br>***(CIV NO. 06-00251 GMS)*** |
| *2.* | ***Central Authority of the Requested State:*** | CENTRAL AUTHORITY FOR BADEN-WÜRTTEMBERG<br>Freiburg Amtsgericht<br>Holzmarkt # 2<br>79098 Freiburg<br>GERMANY |
| *3.* | ***Person to whom the executed request is to be returned:*** | ***Defendant's German Legal Representative:***<br><br>Johannes Heselberger<br>BARDEHLE PAGENBERG DOST<br>ALTENBURG GEISSLER<br>Galileiplatz 1<br>81679 München<br>Germany<br>Tel: +49-89-92805581<br>Fax: +49-89-92805444<br>heselberger@bardehle.de<br><br>***on behalf of:***<br><br>Hon. Gregory M. Sleet<br>United States District Judge<br>United States District Court for the<br>District of Delaware<br>844 N. King Street, Room 4324<br>Wilmington, DE 19801<br>U.S.A. |

**4.** *In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request:*

**5.** **Requesting judicial authority:**   Hon. Gregory M. Sleet
United States District Judge
United States District Court for the
District of Delaware
844 N. King Street, Room 4324
Wilmington, DE 19801
U.S.A.

   **To the competent authority of:**   The Federal Republic of Germany

**6.** *Names and addresses of the parties and their representatives:*

   **a.**   **Plaintiff**   **U.S. PHILIPS CORPORATION**, a Delaware
corporation with offices in New York

   ***Plaintiff's U.S. Legal Representatives:***

   Steven J. Balick, Esq.
Tiffany Geyer Lydon, Esq.
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
U.S.A.
Tel: +1.302.654.1888
Fax: +1.302.654.2067
Email: sbalick@ashby-geddes.com
Email: jday@ashby-geddes.com
Email: tlydon@ashby-geddes.com

   *and*

   Thomas Winland, Esq.
Steven M. Anzalone, Esq.
Frank A. De Costa, III, Esq.
Houtan K. Esfahani, Esq.
Joyce Craig-Rient, Esq.
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
U.S.A.
Tel: +1.202.408.4000

3

Fax: +1.202.408.4400
Email: thomas.winland@finnegan.com
Email: steven.anzalone@finnegan.com
Email: frank.decosta@finnegan.com
Email: houtan.esfahani@finnegan.com
Email: joyce.craig-rient@finnegan.com

**b.**    ***Defendant***

**EASTMAN KODAK COMPANY**, a New Jersey corporation with offices in New York

***Defendant's U.S. Legal Representatives:***

Francis DiGiovanni, Esq.
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1001 N. Orange Street
Wilmington, DE 19899
U.S.A.
Tel: +1.302.658.9141
Fax: +1.302. 658.5614
Email: fdigiovanni@cblh.com

***and***

John Allcock, Esq.
Sean C. Cunningham, Esq.
Timothy Lohse, Esq.
John D. Kinton, Esq.
Jesse Hindman, Esq.
Nikki Wyll, Esq.
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101
U.S.A.
Tel: +1.619.699.2700
Fax: +1.619.699.2701
Email: John.Allock@dlapiper.com
Email: Sean.Cunningham@dlapiper.com
Email: Timothy.Lohse@dlapiper.com
Email: John.Kinton@dlapiper.com
Email: Jesse.Hindman@dlapiper.com
Email: Nikki.Wyll@dlapiper.com

***Defendant's German Legal Representatives:***

Johannes Heselberger

4

Peter Hess
Tilman Mueller-Stoy
Alexander Wunsch
BARDEHLE PAGENBERG DOST
ALTENBURG GEISSLER
Galileiplatz 1
81679 München
Germany
Tel: +49-89-92805581
Fax: +49-89-92805444
heselberger@bardehle.de
hess@bardehle.de
mueller-stoy@bardehle.de
wunsch@bardehle.de

**6.**      *Nature and purpose of the proceedings and summary of the facts:*

## PARTIES

Plaintiff/Counterdefendant U.S. Philips Corporation ("Philips") is a corporation organized and existing under the laws of Delaware, with a place of business in New York, New York.  U.S. Philips is a subsidiary of global parent Royal Philips Electronics, one of the world's largest publicly-traded electronics companies.

Defendant/Counterclaimant Eastman Kodak Company ("Kodak") is a corporation organized and existing under the laws of New Jersey, with a place of business in Rochester, New York.  Kodak is a public company, providing a wide range of products, equipment and services in the areas of photographic film, digital photography, health imaging, and printing.

## ALLEGATIONS IN THE COMPLAINT

Plaintiff Philips initiated a civil lawsuit in the United States District Court for the District of Delaware against Defendant Kodak on April 18, 2006, pursuant to the Patent Laws of the United States, 25 U.S.C. § 1 *et seq*.  Philips alleges that Kodak has infringed,

and continues to infringe, United States Patent Number 4,901,075 ("the '075 patent") (*Annex D*; Exhibit 1) through Kodak's manufacture and sale of products that comply with the Joint Photographic Experts Group ("JPEG") standard for digital still image compression and decompression (the "JPEG standard").

Philips seeks a judgment that Kodak has infringed the '075 patent and that the infringement was deliberate and willful; that Kodak be permanently enjoined from making, using, selling or importing within the United States all JPEG compliant image encoding hardware and software products and services, including products made by such products and services; for damages; reasonable attorneys fees, and such other relief as the Court deems proper.

## DEFENDANT KODAK'S DEFENSES AND COUNTERCLAIMS

In its Answer and Counterclaims, Kodak denies that its products infringe the '075 patent and asserts that the '075 patent is invalid and unenforceable. Furthermore, Kodak asserts that Philips' claims fail due to Philips' participation, through its related corporate entities and representatives, in development and adoption of the JPEG standard.

Kodak asserts that the JPEG standard is the result of almost a decade of worldwide collaboration by representatives of numerous companies, countries and standards-setting organizations. The Joint Photographic Experts Group ("the JPEG committee") was a collaborative effort that consisted of representatives from at least two international standards-setting organizations—the International Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards Organization ("ISO"). The CCITT and ISO each had a subcommittee dedicated to developing a worldwide standard for still-image compression and decompression: CCITT Study

Group VIII and ISO Working Group 8.

Kodak asserts that Philips was a member and active participant in both ISO and CCITT JPEG related subcommittees as well as the JPEG committee itself. Kodak also asserts that Philips was a member of CCITT Study Group XV, which developed Recommendation H.261, a precursor to the MPEG standard. MPEG, short for "Motion Picture Experts Group," is a CCITT-ISO standards effort similar to JPEG, which standardized the compression of video and audio rather than still images. The JPEG committee coordinated its efforts and initiated a "formal liaison" with CCITT Study Group XV. In addition, Kodak asserts that Philips was an active participant in a third standards setting body involved with JPEG standardization, the British Standards Institute's ("BSI") subcommittee IST/37.

Kodak asserts that Philips, by and through its related entities and representatives in the Philips group of companies, was a member of CCITT Study Groups VIII and XV, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG. Kodak further asserts that Philips:

(i)     knew the technical details of the proposed JPEG standard;

(ii)    was aware of the patent disclosure policies of each organization that required it to disclose patents and patent applications relevant to the JPEG standard;

(iii)   failed to disclose its patents including the '075 patent and related patent applications it now claims are necessary to implement the JPEG standard; and

(iv)    voted on several occasions to approve the JPEG standard.

Kodak also asserts that despite specific requests by committee leaders for patent disclosure and patent disclosures by other standards-setting committee members, Philips

never disclosed that it had patents or patent applications that might be relevant to the JPEG standard. Kodak asserts that it also participated in the development and adoption of the JPEG standard and that it, along with other JPEG standardization participants, reasonably relied on Philips' silence and/or misrepresentations to conclude that Philips did not possess patents or patent applications relevant to the JPEG standard.

Kodak further asserts that Philips waited an unreasonably long period of time to assert its patent. Kodak asserts that it began making and publicly marketing, advertising and selling its products which incorporated the JPEG standard in the early 1990s. Despite Kodak's widespread public marketing and sale of JPEG standard enabled products, Philips did not inform Kodak of its purported belief that Kodak infringed its patent rights until a communication dated October 1, 2002. Philips did not file suit until April 18, 2006. Kodak asserts that in the intervening years of Philips' delay, the JPEG standard became deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images, and Kodak has made significant investments in developing and marketing products and services that implement that standard. Kodak asserts that as a result of Philips' conduct, Kodak has incurred damages and will continue to be damaged in the future.

Based on the above facts, Kodak asserts defenses and counterclaims based on waiver and equitable estoppel, laches, implied license, unclean hands, fraud, negligent misrepresentation, and deceptive trade practices under Delaware state law. Kodak seeks a judgment: that Kodak has not infringed the '075 patent; that the claims of the '075 patent are invalid; that Philips is barred from enforcing the '075 patent based on equitable estoppel; that Kodak has an implied license for the '075 patent; that Philips has engaged

in deceptive trade practices, fraud and negligent misrepresentation; for a permanent injunction prohibiting Philips' deceptive trade practices and further enforcement of the '075 patent; damages; attorneys' fees and such other relief as the Court or jury deems proper.

## STAGE OF THE PROCEEDINGS

Philips commenced this action on April 18, 2006 when it filed its Complaint. Kodak filed its Answer and Counterclaims on October 17, 2006. Philips filed its answer to those counterclaims on November 6, 2006. Responses to written interrogatories and requests for production of documents have been served by the parties. Trial is scheduled to commence on April 28, 2008.

## THE WITNESS

The witness from whom testimony and documents are sought is Dr. Joachim Speidel, a German citizen, resident of Baden-Württemberg and a former employee of Philips Kommunikations Industrie AG ("PKI"). PKI was part of the Philips group of companies and an organizational member of CCITT Study Groups VIII and XV, and the JPEG committee. Numerous representatives of PKI attended CCITT Study Groups VIII and XV, and JPEG meetings during development and ultimate adoption of the JPEG standard. In addition, Peter Vogel, the named inventor of the '075 patent, was a PKI employee. Dr. Joachim Speidel was employed by PKI during the relevant time period and represented Philips before CCITT Study Group XV.

## RELEVANCE OF THE EVIDENCE SOUGHT

Kodak asserts that Dr. Joachim Speidel, former employee and CCITT Study Group XV representative of PKI, has information essential to Kodak's defenses and

counterclaims. Specifically, Kodak asserts that the evidence it has collected shows that Dr. Joachim Speidel attended numerous CCITT Study Group XV meetings on behalf and as a representative of PKI, and is identified as a "core member" of Study Group XV. (*Annex C*, Exhibit 6, Document # 317R, p. 10.) Kodak further asserts that CCITT Study Group XV and Dr. Joachim Speidel coordinated efforts with the JPEG committee and were aware of JPEG's potential implementation of "two dimensional variable word-length coding," the technique that Philips claims infringes its patent. (*Annex C*, Exhibit 6, Document # 317R, p. 37.)

Of particular importance, Kodak claims that PKI demonstrated its knowledge and understanding of CCITT patent disclosure policies when Dr. Joachim Speidel, on behalf of PKI, disclosed to CCITT Study Group XV the three German patent applications to which the '075 patent claims priority. (*Annex C*; Exhibit 7, Document # 395R, p. 15 & Exhibit 8, Document #383.) Kodak further asserts that Dr. Joachim Speidel demonstrated PKI's knowledge of CCITT licensing policy when he submitted a licensing statement to CCITT Study Group XV agreeing to license Philips' applicable patents on reasonable and non-discriminatory terms. (*Annex C*; Exhibit 9.)

Kodak asserts that the facts surrounding Dr. Joachim Speidel's participation in CCITT Study Group XV will establish: (1) Philips' knowledge of the technical specifications of the JPEG standard; (2) Philips' knowledge of CCITT patent disclosure policies; (3) Philips' knowledge of CCITT member licensing obligations, and (4) Philips' failure to properly disclose the '075 patent to the JPEG related committees.

Finally, Kodak asserts that Dr. Joachim Speidel co-authored an article disclosing the subject matter of the '075 patent with Peter Vogel, the '075 patent named inventor

and PKI employee. (*Annex C*; Exhibit 10.) Therefore, Kodak asserts that Dr. Joachim Speidel has relevant information surrounding the invention and scope of the '075 patent.

The District Court asserts that the facts surrounding Dr. Joachim Speidel's participation in CCITT Study Group XV are essential to Kodak's ability to fully set forth its claims and defenses at trial. Justice cannot be completely served without Dr. Joachim Speidel's testimony.

**8.    *Evidence to be obtained or other judicial act to be performed:***

The District Court seeks both oral testimony and document production from the witness. The District Court further requests that the documents produced by the witness be made available for inspection and copying by the parties at least two weeks prior to the oral examination so that counsel may have an opportunity to supplement the questions to be put to the witness based on information disclosed in the documents.

For the reasons set forth above, the District Court believes that the witness will be able to provide evidence directly relevant to the main issues between the parties, without which the ends of justice cannot be properly met. The District Court believes that this evidence is not available from any other source.

Questions to be put to Dr. Joachim Speidel are listed as *Annex A.* Documents sought for production are listed as *Annex B.* Documents supporting this Request and for use during the witness examination are attached as *Annex C.*

| | | |
|---|---|---|
| **9.** | ***Identities and addresses of persons to be examined:*** | Dr. Joachim Speidel<br>Institute of Telecommunications<br>University of Stuttgart<br>Pfaffenwaldring 47 (ETI 2)<br>70569 Stuttgart<br>Tel: +49 (0) 711 685 68017 |
| **10.** | ***Questions to be put to the persons*** | Please see attached list (*Annex A*) |

11

*to be examined or statement of the
subject matter about which they
are to be examined:*

11. ***Documents or other property to be
inspected:***   Please see attached list (*Annex B*)

12. ***Any requirement that the evidence
be given on oath or affirmation
and any specific form to be used:***   The witness should be examined under oath
or affirmation, or in the alternative, should
be instructed of the consequences for the
giving of untruthful and false answers
under the laws of Germany.

13. ***Special methods or procedure to be followed:***

The District Court requests:

(1)    that the parties' representatives or their designees, interpreters, and a

U.S. verbatim court reporter and a German stenographer be permitted

to attend and participate in the examination;

(2)    that the parties' legal representatives or their designees be permitted to

submit additional questions to the witness following responses to the

questions attached hereto in *Annex A*;

(3)    that the interpreters be permitted to assist with the witness

examination, at Kodak's expense;

(4)    that a U.S. court reporter be permitted to record verbatim the witness

examination at Kodak's expense; and

(5)    that the German court ensure that any documents produced are

authenticated in accordance with its normal practice and procedures.

The District Court additionally requests that the confidentiality of any evidence

produced as a result of this Request be maintained pursuant to the laws of Germany.

Finally, in conformity with Article 7 of the Hague Evidence Convention, the U.S. District

Court requests that the Defendant's designee in the United States, Legal Language Services (an international litigation support firm), be advised of the date and location of the German hearing to execute this Request. Legal Language Services may also be contacted if the German authorities require clarification with respect to any aspect of this Request.

| | |
|---|---|
| **14.** *Request for notification of the times and place for the execution of the Request and identity of the person to be notified:* | It is requested that testimony be taken at such place, date or time as ordered by the German Court or as otherwise agreed to by the witness and the respective representatives of the Parties. |

When the time and place for execution of this request is ordered by the German Court, it is requested that you provide notice thereof to:

*Defendant's U.S. designee:*

Cara LaForge
LEGAL LANGUAGE SERVICES
8014 State Line Road, Suite 110
Leawood, KS 66208
Tel: +1.913.341.3167
Fax: +1.913.341.3168
Email: claforge@legallanguage.com

*Defendant's German designee:*

Peter Hess
Bardehle Pagenberg Dost Altenburg Geissler
Galileiplatz 1,
81679 München
Germany
Tel: +49-89-92805571
Fax: +49-89-92805444
hess@bardehle.de

Johannes Heselberger

Bardehle Pagenberg Dost Altenburg
Geissler
Galileiplatz 1,
81679 Munchen
Germany
Tel: +49-89-92805581
Fax: +49-89-92805444
heselberger@bardehle.de

| | | |
|---|---|---|
| 15. | *Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:* | None. |
| 16. | *Specification of privilege or duty to refuse to give evidence under the laws of the State of origin:* | The witness may refuse to answer any question propounded pursuant to Section 13 above if such answer (1) would subject the witness to a real and appreciable danger of criminal liability in the United States, or (2) would disclose a confidential communication between the witness and his attorney. |
| 17. | *The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:* | Defendant Eastman Kodak Company |

*c/o Defendant's legal representative: in the U.S.:*

John Allcock, Esq.
Sean C. Cunningham, Esq.
Timothy Lohse, Esq.
John D. Kinton, Esq.
Nikki Wyll, Esq.
Jesse Hindman, Esq.
DLA PIPER US LLP
401 B. Street, Suite 1700
San Diego, CA 92101
U.S.A.
Tel: +1.619.699.2700
Fax: +1.619.699.2701
Email: John.Allock@dlapiper.com
Email: Sean.Cunningham@dlapiper.com
Email: Timothy.Lohse@dlapiper.com
Email: John.Kinton@dlapiper.com
Email: Nikki.Wyll@dlapiper.com
Email: Jesse.Hindman@dlapiper.com

18.    *Date of Request:*                    _____

19.    *Signature and seal of the Requesting*
       *Authority:*                          _____
                                             Hon. Gregory M. Sleet
                                             United States District Judge
                                             United States District Court for the
                                             District of Delaware
                                             844 N. King Street, Room 4324
                                             Wilmington, DE 19801
                                             U.S.A.


*Annex A*:  Questions to be put to Dr. Joachim Speidel (in English and in German)
*Annex B*:  Documents Sought for Production (in English and in German)
*Annex C*:  Documents to be Used During Witness Examination\Documents Supporting
this Request (in English and German)

*ANNEX A*
*Questions to be put to Dr. Joachim Speidel*

**Background Statement regarding questions to be put to the witness:**

Kodak asserts that the JPEG standard is the result of almost a decade of worldwide collaboration by representatives of numerous companies, countries and standards-setting organizations. The work was largely done by the JPEG committee that consisted of representatives from at least two international standards-setting organizations—the International Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards Organization ("ISO"). Each organization had a subcommittee dedicated to developing a worldwide standard for still-image compression and decompression: CCITT Study Group VIII and ISO Working Group 8. Kodak asserts that Philips was a member and participant in these two subcommittees as well as the JPEG committee itself, formed as a collaboration between them.

Kodak also asserts that Philips was a member and participant in CCITT Study Group XV, which developed Recommendation H.261, a precursor to the MPEG standard. MPEG, short for "Motion Picture Experts Group," is a CCITT-ISO standards effort similar to JPEG, which standardized the compression of video and audio rather than still images. The JPEG committee coordinated its efforts and initiated a liaison with CCITT Study Group XV.

Kodak asserts that Philips, by and through its related entities in the Philips group of companies, was a member of CCITT Study Groups VIII and XV, ISO Working Group 8 and the JPEG committee, and that Philips:

(i)    knew the technical details of the proposed JPEG standard;

(ii)    was aware of the patent disclosure policies of each organization that required

16

it to disclose patents and patent applications relevant to the JPEG standard;

(iii)    failed to disclose its patents including the '075 patent and related patent

applications it now claims are necessary to implement the JPEG standard; and

(iv)    voted on several occasions to approve the JPEG standard.

Kodak also asserts that despite specific requests by committee leaders for patent disclosures and patent disclosures by other standards-setting committee members, Philips never disclosed that it had patents or patent applications that might be relevant to the standard adopted by JPEG.

Kodak asserts that JPEG and the related standards setting committees sought to adopt an "open" standard that would be free from patent infringement claims and would be widely available for industries, companies, and consumers worldwide to use. Kodak asserts that had Philips disclosed the '075 patent during the JPEG standardization process and made the royalty demands it now makes, JPEG and the related standards setting committees would have chosen one of the available alternative compression techniques for standardization.

Kodak asserts that since its adoption, the JPEG standard has become deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images, and Kodak has made significant investments in the products and services that implement that standard. Based on these facts, Kodak asserts defenses and counterclaims of waiver and equitable estoppel, laches, implied license, unclean hands, fraud, negligent misrepresentation, and deceptive trade practices under Delaware state law.

The witness from whom testimony and documents are sought is Dr. Joachim

Speidel, a German citizen, resident of Baden-Württemberg and a former employee of Philips Kommunikations Industrie AG ("PKI").  PKI was part of the Philips group of companies and an organizational member of CCITT Study Groups VIII and XV and the JPEG committee.  Numerous representatives of PKI attended CCITT Study Groups VIII and XV, and JPEG committee meetings during development and ultimate adoption of the JPEG standard.  In addition, Peter Vogel, the named inventor of the '075 patent, was a PKI employee.

Kodak asserts that the evidence it has collected shows that Dr. Joachim Speidel attended numerous CCITT Study Group XV meetings on behalf and as a representative of PKI, and in fact, is identified as a "core member" of Study Group XV.  Kodak further asserts that CCITT Study Group XV and Dr. Joachim Speidel coordinated efforts with the JPEG committee and were aware of JPEG's potential implementation of "two dimensional variable word-length coding," the technique that Philips claims infringes its patent.

Of particular importance, Kodak claims that Philips demonstrated its knowledge and understanding of CCITT patent disclosure policies when Dr. Joachim Speidel, on behalf of PKI, disclosed to CCITT Study Group XV three German patent applications to which the '075 patent claims priority.  Kodak further asserts that Dr. Joachim Speidel demonstrated PKI's knowledge of CCITT licensing policy when he submitted a licensing statement to CCITT Study Group XV agreeing to license Philips' MPEG applicable patents on reasonable and non-discriminatory terms.

Kodak asserts that the facts surrounding Dr. Joachim Speidel's participation in CCITT Study Group XV will establish: (1) Philips' knowledge of the technical

specifications of the JPEG standard; (2) Philips' knowledge of CCITT patent disclosure policies; (3) Philip's knowledge of CCITT member licensing obligations, and (4) Philips' failure to properly disclose the '075 patent to the JPEG related committees.

Finally, Kodak asserts that Dr. Joachim Speidel co-authored an article disclosing the subject matter of the '075 patent with the '075 patent named inventor, Peter Vogel, also a PKI employee. Therefore, Kodak asserts that Dr. Joachim Speidel has relevant information surrounding the technology and invention of the '075 patent.

### *Questions to establish background and foundational information regarding witness:*

1. Please state your full name.

2. Please state your home address.

3. Please state your date of birth.

4. Please state your current employer.

5. Please state your current employer's address.

6. Have you ever been employed by Philips Kommunikations Industrie AG ("PKI")?

7. During what time period were you employed by PKI?

8. What positions or titles have you held at PKI?

9. Please state your job responsibilities for each position or title held at PKI.

10. In what group or department within PKI did you hold each position?

11. During what time period did you hold each position?

12. During your employment at PKI, what was the address(es) of your residence?

13. What was your work address at PKI?

14.    Have you ever been employed by any other Philips related entity?

15.    During what time period were you employed by that Philips entity?

***Questions to establish knowledge of the '075 patent inventor and the '075***

***patent (and related patents):***

16.    Please review the article titled " Improved Hybrid Coders with 2D-Signal
       Processing for Moving Pictures." (show witness *Annex C*; Exhibit 10)  Are
       you familiar with this article?

17.    Did you author this article?

18.    What parts of the article did you author?

19.    What parts of the article did Peter Vogel author?

20.    Please describe the process you and Mr. Vogel used in writing the article.

21.    Who developed the coding scheme described in the article?

22.    Who played the biggest role in developing the coding scheme described in the
       article?

23.    Please describe in detail your contribution to the article.

24.    Please describe in detail Peter Vogel's contribution to the article.

25.    Is the coding scheme discussed in the article applicable to still images?

26.    Is the coding scheme discussed in the article applicable to moving pictures?

27.    Did you work with Peter Vogel at PKI?

28.    Did you work with Peter Vogel in the same group or department at PKI?

29.    During what time period did you work with Peter Vogel?

30.    Did you ever work on any specific projects with Peter Vogel?

31.    What projects did you work on with Peter Vogel?

32.    Did you ever work on image compression at PKI?

33.    Did you ever work with Peter Vogel on image compression?

34.    What work with Peter Vogel did you do relating to image compression?

35.    When did you work with Peter Vogel on image compression?

36.    Did your work on image compression ever result in any patents?

37.    What patents resulted from your work on image compression?

38.    Was your work on image compression related to the JPEG standard?

39.    How was your work on image compression related to the JPEG standard?

40.    Was your work with Peter Vogel on image compression related to the JPEG standard?

41.    How was your work with Peter Vogel on image compression related to the JPEG standard?

42.    Are you familiar with United States Patent Number 4,901,075 ("the '075 patent") which lists Peter Vogel as its named inventor?  (show witness *Annex C*; Exhibit 1, the '075 patent)

43.    Were you involved in the research and development of the technology that became the '075 patent?

44.    In what way were you involved in the research and development of the technology that became the '075 patent?

45.    Do you consider yourself an inventor of the '075 patent?

46.    Why do you consider yourself an inventor of the '075 patent?

47.    Do you believe that the '075 patent relates to the JPEG standard?

48.    When did you first come to the belief that the '075 patent relates to the JPEG standard?

49.    In what way does the '075 patent relate to the JPEG standard?

50.    Do you believe that the '075 patent is necessary to implement the JPEG standard?

51.    In what way is the '075 patent necessary to implement the JPEG standard?

52.    Do you believe that the '075 patent relates to the MPEG standard?

53.    When did you first come to the belief that the '075 patent relates to the MPEG standard?

54.    In what way does the '075 patent relate to the MPEG standard?

55.    Do you believe that the '075 patent is necessary to implement the MPEG standard?

56.    In what way is the '075 patent necessary to implement the MPEG standard?

57.    Are you familiar with European Patent 0 260 748 B1 ("EP '748") which lists Peter Vogel as its named inventor?  (show witness *Annex C*; Exhibit 2, EP '748)

58.    Were you involved in the research and development of the technology that became EP '748?

59.    In what way were you involved in the research and development of the technology that became EP '748?

60.    Do you consider yourself an inventor of EP '748?

61.    Why do you consider yourself an inventor of EP '748?

62.    Do you believe that EP '748 relates to the JPEG standard?

63.     When did you first come to the belief that EP '748 relates to the JPEG

        standard?

64.     In what way does EP '748 relate to the JPEG standard?

65.     Do you believe that EP '748 is necessary to implement the JPEG standard?

66.     In what way is EP '748 necessary to implement the JPEG standard?

67.     Do you believe that EP '748 relates to the MPEG standard?

68.     When did you first come to the belief that EP '748 relates to the MPEG

        standard?

69.     In what way does EP '748 relate to the MPEG standard?

70.     Do you believe that EP '748 is necessary to implement the MPEG standard?

71.     In what way is EP '748 necessary to implement the MPEG standard?

72.     Are you familiar with German patent application no. 3,631,252, to which EP

        '748 and the '075 patent claim priority?  (show witness *Annex C*; Exhibit 3,

        German patent application no. 3,631,252 (English and German translations

        included))

73.     Were you involved in the research and development of the technology that

        became German patent application no. 3,631,252?

74.     In what way were you involved in the research and development of the

        technology that became German patent application no. 3,631,252?

75.     Do you consider yourself an inventor of German patent application no.

        3,631,252?

76.     Why do you consider yourself an inventor of German patent application no.

        3,631,252?

77.  Do you believe that German patent application no. 3,631,252 relates to the JPEG standard?

78.  When did you first come to the belief that German patent application no. 3,631,252 relates to the JPEG standard?

79.  In what way does German patent application no. 3,631,252 relate to the JPEG standard?

80.  Do you believe German patent application no. 3,631,252 is necessary to implement the JPEG standard?

81.  In what way is German patent application no. 3,631,252 necessary to implement the JPEG standard?

82.  Do you believe that German patent application no. 3,631,252 relates to the MPEG standard?

83.  When did you first come to the belief that German patent application no. 3,631,252 relates to the MPEG standard?

84.  In what way does German patent application no. 3,631,252 relate to the MPEG standard?

85.  Do you believe German patent application no. 3,631,252 is necessary to implement the MPEG standard?

86.  In what way is German patent application no. 3,631,252 necessary to implement the MPEG standard?

87.  Are you familiar with German patent application no. 3,638,127, to which EP '748 and the '075 patent claim priority?  (show witness *Annex C*; Exhibit 4,

German patent application no. 3,638,127 (English and German translations included))

88.   Were you involved in the research and development of the technology that became German patent application, no. 3,638,127?

89.   In what way were you involved in the research and development of the technology that became German patent application no. 3,638,127?

90.   Do you consider yourself an inventor of German patent application no. 3,638,127?

91.   Why do you consider yourself an inventor of German patent application no. 3,638,127?

92.   Do you believe that German patent application no. 3,638,127 relates to the JPEG standard?

93.   When did you first come to the belief that German patent application no. 3,638,127 relates to the JPEG standard?

94.   In what way does German patent application no. 3,638,127 relate to the JPEG standard?

95.   Do you believe German patent application no. 3,638,127 is necessary to implement the JPEG standard?

96.   In what way is German patent application no. 3,638,127 necessary to implement the JPEG standard?

97.   Do you believe that German patent application no. 3,638,127 relates to the MPEG standard?

98.     When did you first come to the belief that German patent application no. 3,638,127 relates to the MPEG standard?

99.     In what way does German patent application no. 3,638,127 relate to the MPEG standard?

100.    Do you believe German patent application no. 3,638,127 is necessary to implement the MPEG standard?

101.    In what way is German patent application no. 3,638,127 necessary to implement the MPEG standard?

102.    Are you familiar with German patent application no. 3,717,399, to which EP '748 and the '075 patent claim priority?  (show witness *Annex C*; Exhibit 5, German patent application no. 3,717,399 (English and German translations included))

103.    Were you involved in the research and development of the technology that became German patent application, no. 3,717,399?

104.    In what way were you involved in the research and development of the technology that became German patent application no. 3,717,399?

105.    Do you consider yourself an inventor of German patent application no. 3,717,399?

106.    Why do you consider yourself an inventor of German patent application no. 3,717,399?

107.    Do you believe that German patent application no. 3,717,399 relates to the JPEG standard?

108. When did you first come to the belief that German patent application no. 3,717,399 relates to the JPEG standard?

109. In what way does German patent application no. 3,717,399 relate to the JPEG standard?

110. Do you believe German patent application no. 3,717,399 is necessary to implement the JPEG standard?

111. In what way is German patent application no. 3,717,399 necessary to implement the JPEG standard?

112. Do you believe that German patent application no. 3,717,399 relates to the MPEG standard?

113. When did you first come to the belief that German patent application no. 3,717,399 relates to the MPEG standard?

114. In what way does German patent application no. 3,717,399 relate to the MPEG standard?

115. Do you believe German patent application no. 3,717,399 is necessary to implement the MPEG standard?

116. In what way is German patent application no. 3,717,399 necessary to implement the MPEG standard?

***Questions to establish participation in CCITT Study Group XV as a representative of PKI:***

117. Please review the document designated Document # 317R titled "Report of Eleventh Meeting in Tokyo (January 26-29, 1988)." Did you attend the

January 1988 CCITT Study Group XV meeting in Tokyo?  (show witness *Annex C*; Exhibit 6, Document #317R, p. 10)

118.    Is your name on the list of attendees, page 10 of the January 1988 CCITT Study Group XV meeting  report (*Annex C*; Exhibit 6)?

119.    On the list of attendees - page 10 of the January 1988 CCITT Study Group XV meeting report (*Annex C*; Exhibit 6), PKI is listed as the company you are associated with.  Did you attend the January 1988 CCITT Study Group XV meeting in Tokyo as a representative and on behalf of Philips\PKI?

120.    Please review the document designated Document # 395R titled "Report of Thirteenth Meeting in Paris (September 19-22, 1988)."  Did you attend the September 1988 CCITT Study Group XV meeting in Paris?  (show witness *Annex C*; Exhibit 7, Document #395R, p. 9)

121.    Is your name on the list of attendees, page 9 of the September 1988 CCITT Study Group XV meeting report (*Annex C*; Exhibit 7)?

122.    On the list of attendees - page 9 of the September 1988 CCITT Study Group XV meeting report (*Annex C*; Exhibit 7), PKI is listed as the company you are associated with.  Did you attend the September 1988 CCITT Study Group XV meeting in Paris as a representative and on behalf of Philips\PKI?

123.    On the lists of attendees for both the Tokyo and Paris meeting reports, you are listed under the heading "Core Members."  What did it mean to be a core member?

124.    How did you become a "core member?"

125. During your employment at PKI, did you ever attend any other CCITT Study Group XV meetings?

126. What CCITT Study Group XV meetings did you attend?

127. What were the dates of the CCITT Study Group XV meetings you attended?

128. Where were the locations of the CCITT Study Group XV meetings you attended?

129. Did PKI pay for your travel to the CCITT Study Group XV meetings you attended?

130. Did PKI pay for your hotel accommodations in connection with the CCITT Study Group XV meetings you attended?

131. Did PKI pay for your meals in connection with the CCITT Study Group XV meetings you attended?

132. Did PKI pay the CCITT membership dues in connection with your attendance of CCITT Study Group XV meetings?

133. What other employees of PKI attended CCITT Study Group XV meetings?

134. Did you attend CCITT Study Group XV meetings as a representative and on behalf of PKI?

*Questions to establish that Philips disclosed patents and made licensing statements to CCITT Study Group XV:*

135. On page 8 of the September 1988 CCITT Study Group XV meeting report from Paris, please review the heading titled "8.3.2 Patent Applications (#368, #371, #383, #388)." Did you disclose any patent applications on behalf of

PKI to CCITT Study Group XV?  (show witness *Annex C*; Exhibit 7,
Document #395R, p. 8)

136.   Please review CCITT Study Group XV Document No 383.  (show witness
       *Annex C*; Exhibit 8, Document #383)  Did you disclose the patent applications
       listed on CCITT Study Group XV Document No. 383 to CCITT Study Group
       XV?

137.   Are the Peter Vogel patent applications listed as number 3 of CCITT Study
       Group XV document no. 383?  (show witness Annex C; Exhibits 3-5)

138.   You disclosed the patent applications to which the '075 patent claims priority
       to CCITT Study Group XV, correct?  (show witness *Annex C*; Exhibit 1)

139.   Why did PKI disclose the Vogel Applications (*Annex C*; Exhibits 3-5) to
       CCITT Study Group XV?

140.   Did CCITT patent disclosure obligations require PKI to disclose the Vogel
       Applications (*Annex C*; Exhibits 3-5) to Study Group XV?

141.   What was your understanding of CCITT Study Group XV patent disclosure
       obligations?

142.   Why did PKI disclose the Vogel Applications to CCITT Study Group XV but
       not to JPEG, CCITT Study Group VIII or ISO Working Group VIII?

143.   Was it your understanding that the Vogel Applications applied to video
       (moving picture) compression or the MPEG standard and not still image
       compression or the JPEG standard?

144.   Do you recognize CCITT Study Group XV Document No. 170?  (show
       witness *Annex C*; Exhibit  12)

145.   What is CCITT Study Group XV Document No. 170?

146.   Did you submit CCITT Study Group XV Document No. 170 to Study Group
       XV?

147.   Does CCITT Study Group XV Document No. 170 disclose the subject matter
       of the Vogel patent applications (*Annex C*; Exhibits 3-5), the '075 patent
       (*Annex C*; Exhibit 1) or EP '748 (*Annex C*; Exhibit 2)?

   *Questions to establish witness's knowledge of JPEG standard through*

*attendance at CCITT Study Group XV meetings:*

148.   What was your understanding regarding the purpose of CCITT Study Group
       XV?

149.   Please review Annex 7 to Document # 317R.  (show witness *Annex C*; Exhibit
       6, p. 37)  Have you ever seen that document before?

150.   Are you aware of what Annex 7 to Document # 317R refers to?

151.   Annex 7 to Document #317R is a copy of a communication from CCITT
       Study Group XV to ISO WG8 regarding a liason between the two committees,
       correct?

152.   Did CCITT Study Group XV form a liason with ISO WG8?

153.   Why did CCITT Study Group XV form a liason with ISO WG8?

154.   Were you involved in the liason with ISO WG8 on behalf of CCITT Study
       Group XV?

155.   Please describe how you were involved in the liason with ISO WG8 on behalf
       of CCITT Study Group XV.

156.    Paragraph 4 of Annex 7 to Document #317R indicates that "two-dimensional variable word-length coding" could be a common technique between video and still image coding standardization efforts.  (show witness *Annex C*; Exhibit 6, p. 37)  Does two-dimensional variable word-length coding relate to the subject matter of the '075 patent (*Annex C*; Exhibit 1), EP '748 (*Annex C*; Exhibit 2), or any of the Peter Vogel patent applications discussed earlier (*Annex C*; Exhibits 3-5)?

157.    In what way does two-dimensional variable word-length coding relate to the subject matter of the '075 patent (*Annex C*; Exhibit 1), EP '748 (*Annex C*; Exhibit 2), or any of the Peter Vogel patent applications discussed earlier (*Annex C*; Exhibits 3-5)?

158.    Were you aware that two-dimensional variable word-length coding was a technique that was under consideration for still image standardization within the JPEG committee?

159.    When did you become aware that two-dimensional variable word-length coding was being considered for the JPEG standard?

160.    How did you become aware that two-dimensional variable word-length coding was being considered for the JPEG standard?

161.    At any of the CCITT Study Group XV meetings you attended, was still image compression ever discussed?

162.    What regarding still image compression was discussed at the CCITT Study Group XV meetings you attended?

163. Were the technical specifications of the JPEG standard ever presented or discussed during the CCITT Study Group XV meetings you attended?

164. Who discussed the technical specifications of the JPEG standard during the CCITT Study Group XV meetings you attended?

165. What exactly about the technical specifications of the JPEG standard was discussed?

***Questions to establish witness's knowledge of CCITT Patent Policies:***

166. Have you ever seen the document designated Document No. 2-E titled "CCITT Patent Policy?" (show witness *Annex C*; Exhibit 11)

167. When did you see the document designated Document No. 2-E titled "CCITT Patent Policy?" (*Annex C*; Exhibit 11)

168. Are you aware that CCITT Study Group XV and Study Group VIII share the same patent disclosure policy?

169. What CCITT patent policies were you aware of when you attended CCITT Study Group XV meetings?

170. How did you become aware of those CCITT patent policies?

171. When you attended the CCITT Study Group XV meetings, were you aware that the CCITT preferred to adopt standards that were free from patent claims?

172. When you attended CCITT Study Group XV meetings, were you aware of any patent disclosure policies applicable to CCITT members?

173. What patent disclosure policies applicable to CCITT members were you aware of?

174.    When you attended the CCITT Study Group XV, were you aware that CCITT patent policy provided that its members should disclose patents that were applicable to any technique under consideration for standardization?

175.    When you attended CCITT Study Group XV meetings, were you aware that CCITT patent policy encouraged members to provide royalty free licenses to standard applicable patents on a non-discriminatory basis?

176.    When you attended CCITT Study Group XV meetings were you aware that CCITT patent policy required its members to license standard applicable patents on reasonable and nondiscriminatory terms?

*ANNEX B*
*Documents Sought for Production*

The District Court requests that Dr. Joachim Speidel produce the following documents in his possession, custody, or control and that they be made available for inspection and copying at least two weeks prior to Mr. Speidel's oral examination:

1. The CCITT  patent policies;

2. The requests for patent disclosure from the CCITTT Study Group XV;

3. The CCITT Study Group XV membership fee receipts.

*ANNEX C*
*Documents to be Used During Witness Examination\Documents Supporting this Request*