UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> EASTMAN KODAK COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. 06-00251 GMS |

### DEFENDANT EASTMAN KODAK COMPANY'S REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the District of Delaware presents its compliments to the judicial authorities of Bavaria, Germany and requests assistance in obtaining evidence to be used in civil proceedings before this Court.

This request is made pursuant to, and in conformity with, Chapter I of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters* ("the Hague Convention"), to which both the United States and the Republic of Germany are parties, the Regulation on Judicial Assistance in Civil Matters (ZRHO) and Rules 28 and 30 of the United States Federal Rules of Civil Procedure.

Specifically, this Court requests assistance in compelling testimony and documents from two witnesses located in Bavaria, in relation to the above-named action. The Court asserts that the evidence sought is directly relevant to the issues in dispute and is not discovery within the meaning of Article 23 of the Hague Evidence Convention, that

is, testimony or documents merely intended to lead to relevant evidence for trial. This Request fully complies with German reservations under the Hague Evidence Convention. Trial in this action is scheduled to commence on April 28, 2008.

The particulars of this Hague Evidence Request are as follows:

| | | |
|---|---|---|
| *1.* | *Sender* | Hon. Gregory M. Sleet<br>United States District Judge<br>United States District Court for the<br>District of Delaware<br>844 N. King Street, Room 4324<br>Wilmington, DE 19801<br>U.S.A.<br><br>***(CIV NO. 06-00251 GMS)*** |
| *2.* | ***Central Authority of the Requested State:*** | CENTRAL AUTHORITY FOR BAVARIA<br>Präsidentin des Oberlandesgerichts München<br>Prielmayerstrasse 5<br>80097 München<br>GERMANY |
| *3.* | ***Person to whom the executed request is to be returned:*** | ***Defendant's German Legal Representative:***<br><br>Johannes Heselberger<br>BARDEHLE PAGENBERG DOST<br>ALTENBURG GEISSLER<br>Galileiplatz 1<br>81679 München<br>Germany<br>Tel: +49-89-92805581<br>Fax: +49-89-92805444<br>heselberger@bardehle.de<br><br>***on behalf of:***<br><br>Hon. Gregory M. Sleet<br>United States District Judge<br>United States District Court for the<br>District of Delaware<br>844 N. King Street, Room 4324<br>Wilmington, DE 19801<br>U.S.A. |

4.    *In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request:*

5.    **Requesting judicial authority:**   Hon. Gregory M. Sleet
United States District Judge
United States District Court for the
District of Delaware
844 N. King Street, Room 4324
Wilmington, DE 19801
U.S.A.

**To the competent authority of:**   The Federal Republic of Germany

6.    *Names and addresses of the parties and their representatives:*

a.    *Plaintiff*   **U.S. PHILIPS CORPORATION**, a Delaware
corporation with offices in New York

***Plaintiff's U.S. Legal Representatives:***

Steven J. Balick, Esq.
Tiffany Geyer Lydon, Esq.
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
U.S.A.
Tel: +1.302.654.1888
Fax: +1.302.654.2067
Email: sbalick@ashby-geddes.com
Email: jday@ashby-geddes.com
Email: tlydon@ashby-geddes.com

*and*

Thomas Winland, Esq.
Steven M. Anzalone, Esq.
Frank A. De Costa, III, Esq.
Houtan K. Esfahani, Esq.
Joyce Craig-Rient, Esq.
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  2001
U.S.A.

Tel: +1.202.408.4000
Fax: +1.202.408.4400
Email: thomas.winland@finnegan.com
Email: steven.anzalone@finnegan.com
Email: frank.decosta@finnegan.com
Email: houtan.esfahani@finnegan.com
Email: joyce.craig-rient@finnegan.com

**b.**    ***Defendant***

**EASTMAN KODAK COMPANY**, a New Jersey corporation with offices in New York

***Defendant's U.S. Legal Representatives:***

Francis DiGiovanni, Esq.
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1001 N. Orange Street
Wilmington, DE 19899
U.S.A.
Tel: +1.302.658.9141
Fax: +1.302. 658-5614
Email: fdigiovanni@cblh.com

***and***

John Allcock, Esq.
Sean C. Cunningham, Esq.
Timothy Lohse, Esq.
John D. Kinton, Esq.
Jesse Hindman, Esq.
Nikki Wyll, Esq.
DLA PIPER US LLP
401 B. Street, Suite 1700
San Diego, CA 92101
U.S.A.
Tel: +1.619.699.2700
Fax: +1.619.699.2701
Email: John.Allock@dlapiper.com
Email: Sean.Cunningham@dlapiper.com
Email: Timothy.Lohse@dlapiper.com
Email: John.Kinton@dlapiper.com
Email: Jesse.Hindman@dlapiper.com
Email: Nikki.Wyll@dlapiper.com

***Defendant's German Legal Representatives:***

Johannes Heselberger
Peter Hess
Tilman Mueller-Stoy
Alexander Wunsch
BARDEHLE PAGENBERG DOST
ALTENBURG GEISSLER
Galileiplatz 1
81679 München
Germany
Tel: +49-89-92805581
Fax: +49-89-92805444
heselberger@bardehle.de
hess@bardehle.de
mueller-stoy@bardehle.de
wunsch@bardehle.de

6.     ***Nature and purpose of the proceedings and summary of the facts:***

## PARTIES

Plaintiff/Counterdefendant U.S. Philips Corporation ("Philips") is a corporation

organized and existing under the laws of Delaware, with a place of business in New

York, New York.  U.S. Philips is a subsidiary of global parent Royal Philips Electronics,

one of the world's largest publicly-traded electronics companies.

Defendant/Counterclaimant Eastman Kodak Company ("Kodak") is a corporation

organized and existing under the laws of New Jersey, with a place of business in

Rochester, New York.  Kodak is a public company, providing a wide range of products,

equipment and services in the areas of photographic film, digital photography, health

imaging, and printing.

## ALLEGATIONS IN THE COMPLAINT

Plaintiff Philips initiated a civil lawsuit in the United States District Court for the

District of Delaware against Defendant Kodak on April 18, 2006, pursuant to the Patent Laws of the United States, 25 U.S.C. § 1 *et seq*. Philips alleges that Kodak has infringed, and continues to infringe, United States Patent Number 4,901,075 ("the '075 patent") (*Annex D*; Exhibit 1) through Kodak's manufacture and sale of products that comply with the Joint Photographic Experts Group ("JPEG") standard for digital still image compression and decompression (the "JPEG standard").

Philips seeks a judgment that Kodak has infringed the '075 patent and that the infringement was deliberate and willful; that Kodak be permanently enjoined from making, using, selling or importing within the United States all JPEG compliant image encoding hardware and software products and services, including products made by such products and services; for damages; reasonable attorneys fees, and such other relief as the Court deems proper.

## DEFENDANT KODAK'S DEFENSES AND COUNTERCLAIMS

In its Answer and Counterclaims, Kodak denies that its products infringe the '075 patent and asserts that the '075 patent is invalid and unenforceable. Furthermore, Kodak asserts that Philips' claims fail due to Philips' participation, through its related corporate entities and representatives, in the development and adoption of the JPEG standard.

Kodak asserts that the JPEG standard is the result of almost a decade of worldwide collaboration by representatives of numerous companies, countries and standard-setting organizations. The Joint Photographic Experts Group ("the JPEG committee") was a collaborative effort that consisted of representatives from at least two international standard-setting organizations—the International Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards Organization

("ISO"). The CCITT and ISO each had a subcommittee dedicated to developing a worldwide standard for still-image compression and decompression: CCITT Study Group VIII and ISO Working Group 8. Kodak asserts that Philips was a member and active participant in both subcommittees as well as the JPEG committee itself. In addition, Kodak asserts that Philips was an active participant in a third standards-setting body involved with JPEG standardization, the British Standards Institute's ("BSI") subcommittee IST/37.

Kodak asserts that Philips, by and through its related entities and representatives in the Philips group of companies, was a member of CCITT Study Group VIII, ISO Working Group 8, BSI's subcommittee IST/37 and JPEG. Kodak further asserts that Philips:

(i)     knew the technical details of the proposed JPEG standard;

(ii)    was aware of the patent disclosure policies of each organization that required it to disclose patents and patent applications relevant to the JPEG standard;

(iii)   failed to disclose its patents including the '075 patent and related patent applications it now claims are necessary to implement the JPEG standard; and

(iv)    voted on several occasions to approve the JPEG standard.

Kodak also asserts that despite specific requests by committee leaders for patent disclosure and patent disclosures by other standard-setting committee members, Philips never disclosed that it had patents or patent applications that might be relevant to the JPEG standard. Kodak asserts that it also participated in the development and adoption of the JPEG standard and that it, along with other JPEG standardization participants, reasonably relied on Philips' silence and/or misrepresentations to conclude that Philips

did not possess patents or patent applications relevant to the JPEG standard.

Kodak further asserts that Philips waited an unreasonably long period of time to assert the '075 patent. Kodak asserts that it began making and publicly marketing, advertising and selling its products which incorporated the JPEG standard in the early 1990s. Despite Kodak's widespread public marketing and sale of JPEG standard enabled products, Philips did not inform Kodak of its purported belief that Kodak infringed its patent rights until a communication dated October 1, 2002. Philips did not file suit until April 18, 2006. Kodak asserts that in the intervening years of Philips' delay, the JPEG standard became deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images, and Kodak has made significant investments in developing and marketing products and services that implement that standard. Kodak asserts that as a result of Philips' conduct, Kodak has incurred damages and will continue to be damaged in the future.

Based on the above facts, Kodak asserts defenses and counterclaims based on waiver and equitable estoppel, laches, implied license, unclean hands, fraud, negligent misrepresentation, and deceptive trade practices under Delaware state law. Kodak seeks a judgment: that Kodak has not infringed the '075 patent; that the claims of the '075 patent are invalid; that Philips is barred from enforcing the '075 patent based on equitable estoppel; that Kodak has an implied license for the '075 patent; that Philips has engaged in deceptive trade practices, fraud and negligent misrepresentation; for a permanent injunction prohibiting Philips' deceptive trade practices and further enforcement of the '075 patent; damages; attorneys' fees and such other relief as the Court or jury deems proper.

## STAGE OF THE PROCEEDINGS

Philips commenced this action on April 18, 2006 when it filed its Complaint in the United States District Court for the District of Delaware. Kodak filed its Answer and Counterclaims on October 17, 2006. Philips filed its answer to those counterclaims on November 6, 2006. Responses to written interrogatories and requests for production of documents have been served by the parties. Trial is scheduled to commence on April 28, 2008.

## THE WITNESSES

The witnesses from whom testimony and documents are sought are Karl-Heinz Wenzel and Gerald Weth. Both of these witnesses are German citizens, residents of Bavaria and former employees of Philips Kommunikations Industrie AG ("PKI"). PKI was part of the Philips group of companies and an organizational member of CCITT Study Group VIII and the JPEG committee. Numerous representatives of PKI attended CCITT Study Group VIII and JPEG committee meetings during development and ultimate adoption of the JPEG standard. In addition, Peter Vogel, the named inventor of the '075 patent was a PKI employee.

Both of the aforementioned witnesses were employed by PKI during the relevant timeframe. Karl-Heinz Wenzel attended numerous CCITT Study Group VIII meetings as a PKI representative. And Gerald Weth attended at least one key JPEG committee meeting as a PKI representative.

## RELEVANCE OF THE EVIDENCE SOUGHT

*Karl-Heinz Wenzel:*

Kodak asserts that Karl-Heinz Wenzel, former employee and CCITT Study Group

VIII representative of PKI, has information essential to Kodak's defenses and counterclaims. For example, documents collected by Kodak show that Karl-Heinz Wenzel attended numerous CCITT Study Group VIII meetings on behalf of PKI and began attending those meetings as early as June, 1985. (*Annex D*; Exhibit 15, COM VIII-R 1-E, p. 17.) In particular, Karl-Heinz Wenzel attended a February 1988 CCITT Study Group VIII meeting which included a report on Study Group VIII's participation in the development of the JPEG standard. (*Annex D*; Exhibit 16, COM VIII-R 13-E, p. 12.) At the meeting, the committee chairman requested disclosure of patents relevant to standards under consideration. (*Annex D*; Exhibit 16, COM VIII-R 13-E, p. 7.)

In addition, Karl-Heinz Wenzel attended an October 1991 CCITT Study Group VIII meeting in Geneva. (*Annex D*; Exhibit 17, Temporary Document 807/3E, p. 7.) According to the meeting report, Karl-Heinz Wenzel may have voted to approve a draft that later issued as CCITT Recommendation T.81, the CCITT version of the JPEG standard. (*Annex D*; Exhibit 17, Temporary Document 807/3E, p.2, ("At the conclusion of the three meetings, the meeting participants concluded that Draft Recommendation T.80 and T.81 should be processed for approval in accordance with the procedures contained in Resolution 2.")) During this same meeting, IBM disclosed a proposed licensing arrangement for its JPEG related patents stating a willingness to license its applicable patents for a one-time fee of $5,000 or $10,000. (*Annex D*; Exhibit 17, Temporary Document 807/3E, pp. 2, 14-16.) Kodak believes that Karl-Heinz Wenzel continued to attend and participate in CCITT Study Group VIII meetings through final approval of the JPEG standard. Kodak claims that neither Karl-Heinz Wenzel nor Philips ever disclosed any patents to JPEG.

Kodak asserts that the facts surrounding Karl-Heinz Wenzel's participation in CCITT Study Group VIII will establish: (1) Philips' participation in JPEG standardization; (2) Philips knowledge of the technical specifications of the JPEG standard; (3) Philips' knowledge of the applicable JPEG related committee patent disclosure policies; (4) Philips' knowledge of other JPEG related committee members' patent disclosures and licensing statements, and (5) Philips' failure to properly disclose the '075 patent. *Annex A*, attached hereto, contains questions for the witness that bear directly on these matters.

The District Court asserts that the facts surrounding Karl-Heinz Wenzel's participation in JPEG standardization is essential to Kodak's ability to fully set forth its claims and defenses at trial. Justice cannot be completely served without Karl-Heinz Wenzel's testimony.

*Gerald Weth:*

Kodak asserts that Gerald Weth, former employee and JPEG representative of PKI, has information essential to Kodak's defenses and counterclaims. Documents collected by Kodak indicate that Gerald Weth attended a May 1988 JPEG meeting in Ottawa, Canada where a draft functional specification of the JPEG standard was presented. (*Annex D*; Exhibit 7, WG8 N817, pp. 1, 5.) At this meeting, the JPEG committee chairman also distributed a memo entitled "Patent Policy on the JPEG Standard" that discussed patent disclosure obligations of JPEG committee members. (*Annex D*; Exhibit 8, WG8 N730.) In addition, it was reported to JPEG committee members that previous patent searches had not turned up any JPEG applicable patents. JPEG committee members, including PKI, were advised to perform their own JPEG

patent searches. (*Annex D*; Exhibit 7, WG8 N817, p. 3.) Kodak claims that neither Gerald Weth nor Philips ever disclosed any patents to the JPEG committee.

Kodak asserts that the facts surrounding Gerald Weth's attendance at the May 1988 Ottawa JPEG committee meeting will establish: (1) Philips' participation in JPEG standardization; (2) Philips knowledge of the technical specifications of the JPEG standard; (3) Philips' knowledge of the applicable JPEG related committee patent disclosure policies; and (4) PKI's failure to properly disclose the '075 patent. Evidence collected by Kodak indicates that Mr. Weth likely attended other JPEG meetings on behalf of PKI and Philips. *Annex B*, attached hereto, contains questions for the witness that bear directly on these matters.

The District Court asserts that the facts surrounding Mr. Weth's participation in JPEG standardization is essential to Kodak's ability to fully set forth its claims and defenses at trial. Justice cannot be completely served without Mr. Weth's testimony.

**8.    *Evidence to be obtained or other judicial act to be performed:***

The District Court seeks both oral testimony and document production from the witnesses. The District Court further requests that the documents produced by the witnesses be made available for inspection and copying by the parties at least two weeks prior to the oral examination so that counsel may have an opportunity to supplement the questions to be put to the witnesses based on information disclosed in the documents.

The District Court notes that Kodak attempted to procure the deposition of both of the witnesses through counsel for Philips. However, counsel for Philips indicated that neither of the witnesses were within the control of Philips and that Kodak would have to

independently seek to compel the witnesses to give evidence abroad. (*Annex D*; Exhibit 6, 3/2/07 letter from Joyce Craig-Rient)

For the reasons set forth above, the District Court believes that both of the witnesses will be able to provide evidence directly relevant to the main issues between the parties and without which the ends of justice could not be properly met. The District Court believes that this evidence is not available from any other source.

Questions to be put to Karl-Heinz Wenzel are listed as *Annex A*. Questions to be put to Gerald Weth are listed as *Annex B*. Documents sought for production are listed as *Annex C*. Documents supporting this Request and for use during the witness examination are attached as *Annex D*.

| | | |
|---|---|---|
| **9.** | ***Identities and addresses of persons to be examined:*** | Karl-Heinz Wenzel<br>Wiesenweg 7<br>90562 Heroldsberg<br>GERMANY<br>Tel: +49 911 5180872<br><br>Gerald Weth<br>Bahnhofstrasse 37<br>90559 Burgthann<br>GERMANY<br>Tel: +49 (0) 911 526-0<br>gweth@lucent.com |
| **10.** | ***Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined:*** | Please see attached list (*Annexes* A & B) |
| **11.** | ***Documents or other property to be inspected:*** | Please see attached list (*Annex C*) |
| **12.** | ***Any requirement that the evidence be given on oath or affirmation and any specific form to be used:*** | Each of the witnesses should be examined under oath or affirmation, or in the alternative, should be instructed of the consequences for the giving of untruthful and false answers under the laws of |

Germany.

13.    ***Special methods or procedure to be followed:***

The District Court requests:

(1)    that the parties' representatives or their designees, interpreters, and a U.S. verbatim court reporter as well as a German stenographer be permitted to attend and participate in the examinations;

(2)    that the parties' legal representatives or their designees be permitted to submit additional questions to each of the witnesses following responses to the questions attached hereto in *Annexs A & B*;

(3)    that the interpreters be permitted to assist with the witness examinations, at Kodak's cost;

(4)    that a U.S. court reporter be permitted to record verbatim the witness examinations at Kodak's cost; and

(5)    that the German court ensure that any documents produced are authenticated in accordance with its normal practice and procedures.

The District Court additionally requests that the confidentiality of any evidence produced as a result of this Request be maintained pursuant to the laws of Germany. Finally, in conformity with Article 7 of the Hague Evidence Convention, the U.S. District Court requests that the Defendant's designee in the United States, Legal Language Services (an international litigation support firm), be advised of the date and location of the German hearings to execute this Request. Legal Language Services may also be contacted if the German authorities require clarification with respect to any aspect of this Request.

| | | |
|---|---|---|
| **14.** | ***Request for notification of the times and place for the execution of the Request and identity of the person to be notified:*** | It is requested that testimony be taken at such place, date or time as ordered by the German Court or as otherwise agreed to by the witnesses and the respective representatives of the Parties. |

When the time and place for execution of this request is ordered by the German Court, it is requested that you provide notice thereof to:

***Defendant's US designee:***

Cara LaForge
LEGAL LANGUAGE SERVICES
8014 State Line Road, Suite 110
Leawood, KS 66208
Tel: +1.913.341.3167
Fax: +1.913.341.3168
Email: claforge@legallanguage.com

***Defendant's German designee:***

Peter Hess
Johannes Heselberger
BARDEHLE PAGENBERG DOST
ALTENBURG GEISSLER
Galileiplatz 1,
81679 München
Germany
Tel: +49-89-92805571
Fax: +49-89-92805444
hess@bardehle.de
heselberger@bardehle.de

| | | |
|---|---|---|
| **15.** | ***Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:*** | None. |
| **16.** | ***Specification of privilege or duty to refuse to give evidence under the laws of the State of origin:*** | Each of the witnesses may refuse to answer any question propounded pursuant to Section 13 above if such answer (1) |

would subject the witness to a real and appreciable danger of criminal liability in the United States, or (2) would disclose a confidential communication between the witness and his attorney.

17. *The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:*

Defendant Eastman Kodak Company

*c/o Defendant's legal representative in the US:*

John Allcock, Esq.
Sean C. Cunningham, Esq.
Timothy Lohse, Esq.
John D. Kinton, Esq.
Nikki Wyll, Esq.
Jesse Hindman, Esq.
DLA PIPER US LLP
401 B. Street, Suite 1700
San Diego, CA 92101
U.S.A.
Tel: +1.619.699.2700
Fax: +1.619.699.2701
Email: John.Allock@dlapiper.com
Email: Sean.Cunningham@dlapiper.com
Email: Timothy.Lohse@dlapiper.com
Email: John.Kinton@dlapiper.com
Email: Nikki.Wyll@dlapiper.com
Email: Jesse.Hindman@dlapiper.com

18. *Date of Request:*

_____

19. *Signature and seal of the Requesting Authority:*

_____

Hon. Gregory M. Sleet
United States District Judge
United States District Court for the
District of Delaware
844 N. King Street, Room 4324
Wilmington, DE 19801
U.S.A.

*Annex A*:  Questions to be put to Karl-Heinz Wenzel (in English and in German)
*Annex B*:  Questions to be put to Gerald Weth (in English and in German)
*Annex C*:  Documents Sought for Production (in English and in German)
*Annex D*:  Documents to be Used During Witness Examination\Documents Supporting this Request (in English and in German)

*ANNEX A*
*Questions for Karl-Heinz Wenzel*

**Background Statement regarding questions to be put to the witness:**

Kodak asserts that the JPEG standard is the result of almost a decade of worldwide collaboration by representatives of numerous companies, countries and standard-setting organizations. The work was largely done by the JPEG committee that consisted of representatives from at least two international standard-setting organizations—the International Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards Organization ("ISO"). Each organization had a subcommittee dedicated to developing a worldwide standard for still-image compression and decompression: CCITT Study Group VIII and ISO Working Group 8. Kodak asserts that Philips was a member and participant in these two subcommittees as well as the JPEG committee itself, formed as a collaboration between them.

Kodak asserts that Philips, by and through its related entities in the Philips group of companies, was a member of CCITT Study Group VIII, ISO Working Group 8 and JPEG, and that Philips

    (i)      knew the technical details of the proposed JPEG standard;

    (ii)    was aware of the patent disclosure policies of each organization that required it to disclose patents and patent applications relevant to the JPEG standard;

    (iii)   failed to disclose its patents including the '075 patent and related patent applications it now claims are necessary to implement the JPEG standard; and

    (iv)   voted on several occasions to approve the JPEG standard.

Kodak also asserts that despite specific requests by committee leaders for patent disclosure and patent disclosures by other standard-setting committee members, Philips

never disclosed that it had patents or patent applications that might be relevant to the standard adopted by JPEG.

Kodak asserts that JPEG and the related standards-setting committees sought to adopt an "open" standard that would be free from patent infringement claims and would be widely available for industries, companies, and consumers worldwide to use. Kodak asserts that had Philips disclosed the '075 patent during JPEG standardization and made the royalty demands it now makes, JPEG and the related standards-setting committees would have chosen one of the available alternative compression techniques for standardization.

Kodak asserts that since its adoption, the JPEG standard has become deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images, and Kodak has made significant investments in the products and services that implement that standard. Based on these facts, Kodak asserts defenses and counterclaims of waiver and equitable estoppel, laches, implied license, unclean hands, fraud, negligent misrepresentation, and deceptive trade practices under Delaware state law.

The witness from whom testimony is sought is Karl-Heinz Wenzel, a German citizen, resident of Bavaria and former employee of Philips Kommunikations Industrie AG ("PKI"). PKI was part of the Philips group of companies and an organizational member of CCITT Study Group VIII. Numerous employees of PKI attended CCITT Study Group VIII and JPEG meetings during development of the JPEG standard between 1984 and 1994. In addition, PKI employees\representatives disclosed the '075 patent to Study Group XV, the subcommittee of CCITT devoted to motion picture compression

("MPEG"), therefore demonstrating Philips' knowledge of CCITT patent disclosure obligations.

Karl-Heinz Wenzel was employed by PKI between the years 1984 and 1994 and attended numerous CCITT Study Group VIII meetings as a representative of PKI beginning as early as June, 1985. In particular, Karl-Heinz Wenzel attended a February 1988 CCITT Study Group VIII meeting which included a report on Study Group VIII's participation in the development of the JPEG standard. At that meeting, the CCITT Study Group VIII committee chairman requested disclosure of patents relevant to standards under consideration.

Evidence shows that Karl-Heinz Wenzel also attended an October 1991 CCITT Study Group VIII meeting in Geneva. According to the meeting report, it appears that the meeting participants approved a draft that later issued as CCITT Recommendation T.81, the CCITT version of the JPEG standard. In addition, at the meeting IBM disclosed a proposed licensing arrangement for its JPEG related patents stating a willingness to license its applicable patents for a one-time fee of $5,000 or $10,000. Kodak believes that Karl-Heinz Wenzel continued to attend and participate in CCITT Study Group VIII meetings through final approval of the JPEG standard. There is no evidence that Karl-Heinz Wenzel ever disclosed any patents to JPEG.

The anticipated testimony from Karl-Heinz Wenzel is relevant to establish: (1) Philips' participation in JPEG standardization; (2) Philips knowledge of the technical specifications of the JPEG standard; (3) Philips' knowledge of the applicable JPEG related committee intellectual property and patent disclosure policies; (4) Philips' knowledge of other JPEG related committee members' patent disclosures and licensing

statements, and (5) Philips' failure to properly disclose the '075 patent.

*Questions to establish background and foundational information regarding*

*witness:*

1.     Please state your full name.

2.     Please state your home address.

3.     Please state your date of birth.

4.     Please state your current employer.

5.     Please state your current employer's address.

6.     Have you ever been employed by Philips Kommunikations Industrie AG ("PKI")?

7.     During what time period were you employed by PKI?

8.     What positions or titles have you held at PKI?

9.     Please state your job responsibilities for each position or title held at PKI.

10.    In what group or department within PKI did you hold each position?

11.    During what time period did you hold each position?

12.    During your employment at PKI, what was the address(es) of your residence?

13.    What was your work address at PKI?

14.    Has any employee or representative from the Philips group of companies contacted you in connection with your testimony today?

15.    Who was the Philips employee\representative that contacted you?

16.    Please describe the substance of all conversations you had with any Philips' group employees or representatives regarding your testimony today.

*Questions to establish knowledge of the '075 patent inventor and the '075 patent (and related patents):*

17.     Have you ever heard of Peter Vogel?

18.     Do you personally know Peter Vogel?

19.     Did you work with Peter Vogel?

20.     Did you ever work with Peter Vogel at PKI?

21.     Did you ever work with Peter Vogel in the same group or department at PKI?

22.     During what time period did you work with Peter Vogel?

23.     Did you ever work on any specific projects with Peter Vogel?

24.     What projects did you work on with Peter Vogel?

25.     Did you ever work on image compression at PKI?

26.     Did you ever work with Peter Vogel on image compression?

27.     What work with Peter Vogel did you do relating to image compression?

28.     When did you work with Peter Vogel on image compression?

29.     Did your work on image compression ever result in any patents?

30.     What patents resulted from your work on image compression?

31.     Was your work on image compression related to the JPEG standard?

32.     How was your work on image compression related to the JPEG standard?

33.     Was your work with Peter Vogel on image compression related to the JPEG standard?

34.     How was your work with Peter Vogel on image compression related to the JPEG standard?

35.  Are you familiar with United States Patent Number 4,901,075 ("the '075 patent") which lists Peter Vogel as its named inventor? (show witness *Annex D*; Exhibit 1, the '075 patent)

36.  Were you involved in the research and development of the technology that became the '075 patent?

37.  In what way were you involved in the research and development of the technology that became the '075 patent?

38.  Do you believe that the '075 patent relates to the JPEG standard?

39.  When did you first come to the belief that the '075 patent relates to the JPEG standard?

40.  In what way does the '075 patent relate to the JPEG standard?

41.  Do you believe that the '075 patent is necessary to implement the JPEG standard?

42.  In what way is the '075 patent necessary to implement the JPEG standard?

43.  Do you believe that the '075 patent relates to the MPEG standard?

44.  When did you first come to the belief that the '075 patent relates to the MPEG standard?

45.  In what way does the '075 patent relate to the MPEG standard?

46.  Do you believe that the '075 patent is necessary to implement the MPEG standard?

47.  In what way is the '075 patent necessary to implement the MPEG standard?

48. Are you familiar with European Patent 0 260 748 B1 ("EP '748") which lists Peter Vogel as its named inventor? (show witness *Annex D*; Exhibit 2, EP '748)

49. Were you involved in the research and development of the technology that became EP '748?

50. In what way were you involved in the research and development of the technology that became EP '748?

51. Do you believe that EP '748 relates to the JPEG standard?

52. When did you first come to the belief that EP '748 relates to the JPEG standard?

53. In what way does EP '748 relate to the JPEG standard?

54. Do you believe that EP '748 is necessary to implement the JPEG standard?

55. In what way is EP '748 necessary to implement the JPEG standard?

56. Do you believe that EP '748 relates to the MPEG standard?

57. When did you first come to the belief that EP '748 relates to the MPEG standard?

58. In what way does EP '748 relate to the MPEG standard?

59. Do you believe that EP '748 is necessary to implement the MPEG standard?

60. In what way is EP '748 necessary to implement the MPEG standard?

61. Are you familiar with German patent application no. 3,631,252, to which EP '748 and the '075 patent claim priority? (show witness *Annex D*; Exhibit 3, German patent application no. 3,631,252 (English and German translations included))

62.     Were you involved in the research and development of the technology that became German patent application no. 3,631,252?

63.     In what way were you involved in the research and development of the technology that became German patent application no. 3,631,252?

64.     Do you believe that German patent application no. 3,631,252 relates to the JPEG standard?

65.     When did you first come to the belief that German patent application no. 3,631,252 relates to the JPEG standard?

66.     In what way does German patent application no. 3,631,252 relate to the JPEG standard?

67.     Do you believe German patent application no. 3,631,252 is necessary to implement the JPEG standard?

68.     In what way is German patent application no. 3,631,252 necessary to implement the JPEG standard?

69.     Do you believe that German patent application no. 3,631,252 relates to the MPEG standard?

70.     When did you first come to the belief that German patent application no. 3,631,252 relates to the MPEG standard?

71.     In what way does German patent application no. 3,631,252 relate to the MPEG standard?

72.     Do you believe German patent application no. 3,631,252 is necessary to implement the MPEG standard?

73.   In what way is German patent application no. 3,631,252 necessary to implement the MPEG standard?

74.   Are you familiar with German patent application no. 3,638,127, to which EP '748 and the '075 patent claim priority?  (show witness *Annex D*; Exhibit 4, German patent application no. 3,638,127 (English and German translations included))

75.   Were you involved in the research and development of the technology that became German patent application no. 3,638,127?

76.   In what way were you involved in the research and development of the technology that became German patent application no. 3,638,127?

77.   Do you believe that German patent application no. 3,638,127 relates to the JPEG standard?

78.   When did you first come to the belief that German patent application no. 3,638,127 relates to the JPEG standard?

79.   In what way does German patent application no. 3,638,127 relate to the JPEG standard?

80.   Do you believe German patent application no. 3,638,127 is necessary to implement the JPEG standard?

81.   In what way is German patent application no. 3,638,127 necessary to implement the JPEG standard?

82.   Do you believe that German patent application no. 3,638,127 relates to the MPEG standard?

83. When did you first come to the belief that German patent application no. 3,638,127 relates to the MPEG standard?

84. In what way does German patent application no. 3,638,127 relate to the MPEG standard?

85. Do you believe German patent application no. 3,638,127 is necessary to implement the MPEG standard?

86. In what way is German patent application no. 3,638,127 necessary to implement the MPEG standard?

87. Are you familiar with German patent application no. 3,717,399, to which EP '748 and the '075 patent claim priority?  (show witness *Annex D*; Exhibit 5, German patent application no. 3,717,399 (English and German translations included))

88. Were you involved in the research and development of the technology that became German patent application no. 3,717,399?

89. In what way were you involved in the research and development of the technology that became German patent application no. 3,717,399?

90. Do you believe that German patent application no. 3,717,399 relates to the JPEG standard?

91. When did you first come to the belief that German patent application no. 3,717,399 relates to the JPEG standard?

92. In what way does German patent application no. 3,717,399 relate to the JPEG standard?

93.  Do you believe German patent application no. 3,717,399 is necessary to implement the JPEG standard?

94.  In what way is German patent application no. 3,717,399 necessary to implement the JPEG standard?

95.  Do you believe that German patent application no. 3,717,399 relates to the MPEG standard?

96.  When did you first come to the belief that German patent application no. 3,717,399 relates to the MPEG standard?

97.  In what way does German patent application no. 3,717,399 relate to the MPEG standard?

98.  Do you believe German patent application no. 3,717,399 is necessary to implement the MPEG standard?

99.  In what way is German patent application no. 3,717,399 necessary to implement the MPEG standard?

***Questions to establish that witness attended CCITT Study Group VIII meetings as a representative of PKI:***

100.  Please review the document designated COM VIII-R 1-E, titled "Report of the Meeting of Study Group VIII, Kyoto, 5-14 June 1985." Did you attend the June 1985 CCITT Study Group VIII meeting in Kyoto? (show witness *Annex D*; Exhibit 15, COM VIII-R 1-E, p. 17.)

101.  Is your name on the list of attendees –*Annex 1*, page 17 of the June 1985 Kyoto CCITT Study Group VIII meeting report? (*Annex D*; Exhibit 15, COM VIII-R 1-E, p. 17.)

102. On the list of attendees - *Annex 1*, page 17 of the Kyoto Study Group VIII meeting report (*Annex D*; Exhibit 15)- PKI is listed as the company you are associated with. Did you attend the June 1985 Kyoto CCITT Study Group VIII meeting as a representative and on behalf of PKI?

103. Please review the document designated COM VIII-R 13-E titled "Report of Final Meeting of Study Group VIII in the Study Period 1985-1988 (Geneva, 8 to 19 February 1988)." Did you attend the February 1988 CCITT Study Group VIII meeting in Geneva? (show witness *Annex D*; Exhibit 16, COM VIII-R 13-E, p. 12)

104. On the list of attendees - page 17 of the February 1988 CCITT Study Group VIII meeting report (*Annex D*; Exhibit 16), PKI is listed as the company you are associated with. Did you attend the February 1988 CCITT Study Group VIII meeting in Geneva as a representative and on behalf of Philips\PKI?

105. Please review the document designated Temporary Document 807/3E. Did you attend the October 1991 CCITT Study Group VIII meeting in Geneva? (show witness *Annex D*; Exhibit 17, Temporary Document 807/3E, p. 7)

106. On the list of attendees, page 7 of Temporary Document 807/3E (*Annex D*; Exhibit 17)- PKI is listed as the company you are associated with. Did you attend the October 1991 CCITT Study Group VIII meeting in Geneva as a representative and on behalf of Philips\PKI?

107. Is that your handwriting on page 7 of Temporary Document 807/3E? (Annex D; Exhibit 17)

108. What was "Question 16/VIII" of CCITT Study Group VIII?

109.   Was PKI a member of Question 16/VIII within CCITT Study Group VIII?

110.   Was Questions 16/VIII the subgroup within CCITT Study Group VIII devoted to JPEG standardization?

111.   During your employment with PKI, did you ever attend any other CCITT Study Group VIII meetings?

112.   How many other CCITT Study Group VIII meetings did you attend?

113.   What were the dates and locations of the CCITT Study Group VIII meetings you attended?

114.   Are you aware of any other PKI employees that attended any CCITT Study Group VIII meetings?

115.   Who were the other PKI employees that attended CCITT Study Group VIII meetings?

116.   Did PKI pay for your travel expenses associated with the CCITT Study Group VIII meetings you attended?

117.   Did PKI pay for your hotel accommodations in connection with the CCITT Study Group VIII meetings you attended?

118.   Did PKI pay for your meals in connection with the CCITT Study Group VIII meetings you attended?

119.   Did PKI pay CCITT Study Group VIII membership dues?

120.   Did you attend each CCITT Study Group VIII meeting as a representative on behalf of PKI\Philips?

*Questions to establish witness's knowledge of the subject matter of the JPEG standard gained as member of CCITT Study Group VIII:*

121.   On page 2 of Temporary Document 807/3E (*Annex D*; Exhibit 17), it

indicates that at the October 1991 CCITT Study Group VIII meeting, draft

Recommendation T.81 was reviewed with the meeting participants.  Were you

present during discussion of draft Recommendation T.81?

122.   Who was present during discussion of draft Recommendation T.81?

123.   What do you recall about the discussion of draft Recommendation T.81 at the

October 1991 CCITT Study Group VIII meeting?

124.   What was your understanding regarding the purpose of the discussion of draft

Recommendation T.81 at the October 1991 CCITT Study Group VIII

meeting?

125.   Were the technical specifications of the JPEG standard ever presented or

discussed during any of the other CCITT Study Group VIII meetings you

attended?

126.   Who discussed the technical specifications of the JPEG standard during the

other CCITT Study Group VIII meetings you attended?

127.   What exactly about the technical specifications of the JPEG standard was

discussed during the other CCITT Study Group VIII meetings you attended?

***Questions to establish witness's knowledge of and compliance with CCITT***

***Study Group VIII patent policies:***

128.   Page 7 of the February 1988 CCITT Study Group VIII meeting  report (*Annex

D*; Exhibit 16) indicates that at the February 1988 CCITT Study Group VIII

meeting, "the Chairman asked if there were any Patents relevant to any T-

series Recommendation which had not yet been communicated to the

Secretariat." Do you recall the CCITT Study Group VIII chairman requesting disclosure of relevant patents?

129. Did you respond to that request?

130. Did PKI respond to that request?

131. Please describe your or PKI's response.

132. Page 7 of the February 1988 CCITT Study Group VIII meeting report (*Annex D*; Exhibit 16) indicates that at the February 1988 CCITT Study Group VIII meeting no T-series relevant patents were disclosed following the chairman's request. Do you recall being present during that discussion?

133. Were there any requests from CCITT Study Group VIII that members conduct searches for patents applicable to the JPEG standard?

134. When were the other requests that CCITT Study Group VIII members conduct searches for patents applicable to the JPEG standard made?

135. Who made the requests that CCITT Study Group VIII members conduct searches for patents applicable to the JPEG standard?

136. Were you aware of other CCITT Study Group VIII members that conducted JPEG standard related patent searches?

137. Did you or PKI ever conduct a search for patents applicable to the JPEG standard?

138. Please describe all steps you took to conduct a search for patents applicable to the JPEG standard at PKI?

139. Was *Annex 3* of the February 1988 CCITT Study Group VIII meeting report (*Annex D*; Exhibit 16, p.15) titled "Statement on CCITT Patent Policy"

distributed at the February 1988 CCITT Study Group VIII meeting in Geneva?

140.    Did you receive *Annex 3* of the February 1988 CCITT Study Group VIII meeting report (*Annex D*; Exhibit 16, p.15) titled "Statement on CCITT Patent Policy?"

141.    Have you ever seen the document designated Document No. 2-E titled "CCITT Patent Policy?" (show witness *Annex D*; Exhibit 18)

142.    When did you see the document designated Document No. 2-E titled "CCITT Patent Policy?" (*Annex D*; Exhibit 18)

143.    What CCITT Study Group VIII patent policies were you aware of when you attended CCITT Study Group VIII meetings?

144.    How did you become aware of those CCITT Study Group VIII patent policies?

145.    When you attended the CCITT Study Group VIII meetings, were you aware that it was CCITT Study Group VIII's goal to adopt standards that were free from patent claims?

146.    When you attended CCITT Study Group VIII meetings, were you aware of any patent disclosure policies applicable to CCITT Study Group VIII members?

147.    What patent disclosure policies applicable to CCITT Study Group VIII members were you aware of?

148.    When you attended the CCITT Study Group VIII, were you aware that CCITT Study Group VIII patent policy provided that its members should disclose

patents that were applicable to any technique under consideration for standardization?

149. When you attended CCITT Study Group VIII meetings, were you aware that CCITT Study Group VIII patent policy encouraged members to provide royalty free licenses to standard applicable patents on a non-discriminatory basis?

150. When you attended CCITT Study Group VIII meetings were you aware that CCITT Study Group VIII patent policy required its members to license standard applicable patents on reasonable and nondiscriminatory terms?

151. At any of CCITT Study Group VIII meetings you attended, were there any verbal requests that members disclose JPEG applicable patents?

152. Who made the verbal requests that members disclose JPEG applicable patents?

153. When were the verbal requests that members disclose JPEG applicable patents made?

154. Were you aware that other JPEG members disclosed patents to CCITT Study Group VIII?

155. On page 2 of Temporary Document 807/3E (*Annex D*; Exhibit 17), it indicates that at the October 1991 CCITT Study Group VIII meeting, a letter from IBM regarding licensing of its JPEG applicable patents was received and reviewed. Do you recall that discussion?

156. What do you recall about that discussion?

157.    On pages 15-16 of Temporary Document 807/3E (*Annex D*; Exhibit 17), there is a copy of the letter from IBM regarding licensing of its JPEG applicable patents. Have you ever seen that letter before?

158.    When did you see that letter?

159.    The letter from IBM at pages 15-16 of Temporary Document 807/3E (*Annex D*; Exhibit 17) indicates that IBM was willing to license its JPEG applicable patents for a one-time fee of $5,000 or $10,000. Do you recall IBM making its JPEG applicable patents available for a one-time payment of $5,000 or $10,000?

160.    When did you become aware that IBM made its JPEG applicable patents available for a one-time payment of $5,000 or $10,000?

161.    Did you ever disclose any patents to CCITT Study Group VIII?

162.    Did PKI ever disclose any patents to CCITT Study Group VIII?

***Questions to establish that PKI voted in CCITT Study Group VIII to approve the JPEG standard:***

163.    Page 2 of Temporary Document 807/3E states that "At the conclusion of the three meetings, the meeting participants concluded that Draft Recommendation T.80 and T.81 should be processed for approval in accordance with the procedures contained in Resolution 2." (show witness *Annex D*; Exhibit 17, p. 2) Were you one of the October 1991 CCITT Study Group VIII\Question 16 meeting participants that concluded that Draft Recommendation T.81 should be processed for approval?

164. Please describe how you concluded that Draft Recommendation T.81 should be processed for approval.

165. What exactly does that mean – "processed for approval in accordance with the procedures contained in Resolution 2?"

166. Did you ever vote to approve any other drafts of the JPEG standard in connection with your attendance at CCITT Study Group VIII meetings?

167. When did you vote to approve other JPEG drafts?

168. Are you aware of whether any other employees of PKI ever voted to approve any drafts of the JPEG standard?

169. Who were the PKI employees who voted to approve drafts of the JPEG standard?

170. When did those PKI employees vote to approve drafts of the JPEG standard?

171. Did you vote for final approval of CCITT Recommendation T.81?

172. When did you vote for final approval of CCITT Recommendation T.81?

173. Are you aware of whether any other employees of PKI ever voted for final approval of CCITT Recommendation T.81?

174. Who were the PKI employees who voted for final approval of CCITT Recommendation T.81?

175. When did those PKI employees vote for final approval of CCITT Recommendation T.81?

***Questions to establish that witness attended JPEG committee meetings as a representative of PKI:***

176. During your employment with PKI, did you ever attend any Joint Photographic Experts Group – "JPEG" – committee meetings?

177. How many other JPEG committee meetings did you attend?

178. What were the dates of all the JPEG committee meetings you attended?

179. Where were the locations of all the JPEG committee meetings you attended?

180. Are you aware of any other PKI employees that attended any JPEG committee meetings?

181. Who were the other PKI employees that attended JPEG committee meetings?

182. Did PKI pay for your travel expenses associated with the JPEG committee meetings you attended?

183. Did PKI pay for your hotel accommodations in connection with the JPEG committee meetings you attended?

184. Did PKI pay for your meals in connection with the JPEG committee meetings you attended?

185. Did PKI pay JPEG committee membership dues?

186. Did you attend each JPEG committee meeting as a representative on behalf of PKI\Philips?

*Questions to establish witness's knowledge of the subject matter of the JPEG standard gained as member of JPEG committee:*

187. What was your understanding regarding the purpose of the JPEG committee?

188. Were the technical specifications of the JPEG standard ever presented or discussed during any other of the JPEG committee meetings you attended?

189. Who discussed the technical specifications of the JPEG standard during the other JPEG committee meetings you attended?

190. What exactly about the technical specifications of the JPEG standard was discussed during the other JPEG committee meetings you attended?

*Questions to establish witness's knowledge of and compliance with JPEG committee patent policies:*

191. Were there any requests from the JPEG committee that members conduct searches for patents applicable to the JPEG standard?

192. When were the requests that JPEG committee members conduct searches for patents applicable to the JPEG standard made?

193. Who made the requests that JPEG members conduct searches for patents applicable to the JPEG standard?

194. Were you aware of other JPEG committee members that conducted JPEG standard related patent searches?

195. Did the JPEG committee have any policies concerning patents?

196. What JPEG patent policies were you aware of when you attended JPEG meetings?

197. How did you become aware of those JPEG patent policies?

198. When you attended the JPEG committee meetings, were you aware that it was the JPEG committee's goal to adopt a standard that was free from patent claims?

199. When you attended the JPEG committee meetings, were you aware of any patent disclosure policies applicable to JPEG members?

200.  What patent disclosure policies applicable to JPEG members were you aware of?

201.  When you attended the JPEG committee meetings, were you aware that JPEG patent policy provided that its members should disclose patents that were applicable to any technique under consideration for standardization?

202.  When you attended JPEG committee meetings, were you aware that JPEG patent policy provided that members should provide royalty free licenses to JPEG applicable patents on a non-discriminatory basis?

203.  When you attended JPEG committee meetings were you aware that JPEG patent policy required its members to license JPEG standard applicable patents on reasonable and nondiscriminatory terms?

204.  Have you ever seen the document designated JPEG – 718 titled "Request for Patent Statements or Re-statements?" (show witness *Annex D*; Exhibit 12, JPEG – 718)

205.  Did the JPEG committee distribute the document designated JPEG – 718 titled "Request for Patent Statements or Re-statements?" (*Annex D*; Exhibit 12)

206.  Did you receive the document designated JPEG – 718 titled "Request for Patent Statements or Re-statements?" (*Annex D*; Exhibit 12)

207.  At any of the JPEG meetings you attended, were there any verbal requests that members disclose JPEG applicable patents?

208.  Who made the verbal requests that members disclose JPEG applicable patents?

209. When were the verbal requests that members disclose JPEG applicable patents made?

210. Were you aware that other JPEG members disclosed patents to JPEG?

211. Did you ever conduct a search for patents applicable to the JPEG standard in response to JPEG's requests?

212. Did PKI ever conduct a search for patents applicable to the JPEG standard in response to JPEG's requests?

213. Please describe all steps taken regarding your and PKI's search for patents in response to JPEG's request.

214. Did you ever disclose any patents to the JPEG committee?

215. Did PKI ever disclose any patents to the JPEG committee?

216. Have you ever seen the document designated WG8 N741 titled "Patent Issues: ADCT and ISO in General" before?  (show witness *Annex D*; Exhibit 13, WG8 N741)

217. Was the document designated WG8 N741 titled "Patent Issues: ADCT and ISO in General" distributed by the JPEG committee?  (*Annex D*; Exhibit 13)

218. Did you receive the document designated WG8 N741?  (*Annex D*; Exhibit 13)

219. Have you ever seen the document designated JPEG – 11.2-R1?  (show witness *Annex D*; Exhibit 14, JPEG – 11.2-R1, "Recommendation from Livingston, NJ JPEG Meeting")

220. Did the JPEG committee distribute the document designated JPEG – 11.2-R1? (*Annex D*; Exhibit 14)

221.   Did you receive the document designated JPEG – 11.2-R1?  (*Annex D*; Exhibit 14)

*Questions to establish that PKI voted in the JPEG committee to approve the JPEG standard:*

222.   Did you ever vote to approve any draft specifications of the JPEG standard in connection with your attendance at JPEG meetings?

223.   When did you vote to approve JPEG specification drafts?

224.   Are you aware of whether any other employees of PKI ever voted to approve any draft specifications of the JPEG standard in connection with the JPEG committee?

225.   Who were the PKI employees who voted to approve draft specifications of the JPEG standard in connection with the JPEG committee?

226.   When did those PKI employees vote to approve draft specifications of the JPEG standard?

227.   Did you ever vote to approve any final drafts of the JPEG standard in connection with your attendance at JPEG meetings?

228.   When did you vote to approve a final draft of the JPEG standard in connection with your attendance at JPEG meetings?

229.   Are you aware of whether any other employees of PKI ever voted to approve any final draft specifications of the JPEG standard in connection with the JPEG committee?

230.   Who were the PKI employees who voted to approve final draft specifications of the JPEG standard in connection with the JPEG committee?

231.    When did those PKI employees vote to approve final draft specifications of the JPEG standard in connection with the JPEG committee?

***Questions to establish participation in CCITT Study Group XV as a representative of PKI:***

232.    During your employment at PKI, did you ever attend any CCITT Study Group XV meetings?

233.    What CCITT Study Group XV meetings did you attend?

234.    What were the dates of the CCITT Study Group XV meetings you attended?

235.    Where were the locations of the CCITT Study Group XV meetings you attended?

236.    Did PKI pay for your travel to the CCITT Study Group XV meetings you attended?

237.    Did PKI pay for your hotel accommodations in connection with the CCITT Study Group XV meetings you attended?

238.    Did PKI pay for your meals in connection with the CCITT Study Group XV meetings you attended?

239.    Did PKI pay the CCITT membership dues in connection with your attendance at CCITT Study Group XV meetings?

240.    Did you personally as an individual pay CCITT membership dues?

241.    What other employees of PKI attended CCITT Study Group XV meetings?

242.    Did you attend CCITT Study Group XV meetings as a representative and on behalf of PKI?

***Questions to establish witness's knowledge of JPEG standard through***

***attendance at CCITT Study Group XV meetings:***

243.   What was your understanding regarding the purpose of CCITT Study Group
       XV?

244.   At any of the CCITT Study Group XV meetings you attended, was still image
       compression ever discussed?

245.   What regarding still image compression was discussed?

246.   Were the technical specifications of the JPEG standard ever presented or
       discussed during the CCITT Study Group XV meetings you attended?

247.   Who discussed the technical specifications of the JPEG standard during the
       CCITT Study Group XV meetings you attended?

248.   What exactly about the technical specifications of the JPEG standard was
       discussed?

***Questions to establish that Philips disclosed patents and made licensing***

***statements to CCITT Study Group XV:***

249.   Are you aware that PKI disclosed the patent applications to which the '075
       patent claims priority ("*Vogel Applications*" – *Annex D*; Exhibits 3-5) to
       CCITT Study Group XV in connection with development of the MPEG
       standard?

250.   Were you in any way involved in the disclosure of the Vogel Applications to
       CCITT Study Group XV?

251.   In what way were you involved in the disclosure of the Vogel Applications to
       CCITT Study Group XV?

252.    Why did PKI disclose the Vogel Applications to CCITT Study Group XV?

253.    Did CCITT patent disclosure obligations require PKI to disclose the Vogel Applications to Study Group XV?

254.    What was your understanding of CCITT Study Group XV patent disclosure obligations?

255.    Are you aware that CCITT Study Group XV and Study Group VIII share the same patent disclosure policy?

256.    Why did PKI disclose the Vogel Applications to CCITT Study Group XV but not to JPEG, CCITT Study Group VIII or ISO Working Group VIII?

257.    Was it your understanding that the Vogel Applications applied to video (moving picture) compression and not still image compression?

*Questions to establish that witness participated in ISO Working Group 8 committee meetings as a representative of PKI:*

258.    During your employment at PKI, did you ever attend any meetings of the International Standards Organization – "ISO" - Working Group 8?

259.    How many ISO Working Group 8 meetings did you attend?

260.    What were the dates of the ISO Working Group 8 meetings you attended?

261.    Where were the locations of the ISO Working Group 8 meetings you attended?

262.    Did PKI pay for your travel to the ISO Working Group 8 meetings you attended?

263.    Did PKI pay for your hotel accommodations in connection with the ISO Working Group 8 meetings you attended?

264. Did PKI pay for your meals in connection with the ISO Working Group 8 meetings you attended?

265. Did PKI pay the ISO membership dues in connection with your attendance at ISO Working Group 8 meetings?

266. What other employees of PKI attended ISO Working Group 8 meetings?

267. Did you attend ISO Working Group 8 meetings as a representative and on behalf of PKI?

*Questions to establish witness's knowledge of the subject matter and specification of the JPEG standard gained as member of ISO Working Group 8:*

268. What was your understanding regarding the purpose of ISO Working Group 8?

269. At any of the ISO Working Group 8 meetings you attended, was still image compression ever discussed?

270. What regarding still image compression was discussed?

271. Were the technical specifications of the JPEG standard ever presented or discussed during the ISO Working Group 8 meetings you attended?

272. Who discussed the technical specifications of the JPEG standard during the ISO Working Group 8 meetings you attended?

273. What exactly about the technical specifications of the JPEG standard was discussed?

*Questions to establish that PKI voted in ISO Working Group 8 to approve the JPEG standard:*

274.   Did you ever vote to approve any draft specifications of the JPEG standard in connection with your attendance at ISO Working Group 8 meetings?

275.   When did you vote to approve JPEG specification drafts?

276.   Are you aware of whether any other employees of PKI ever voted to approve any draft specifications of the JPEG standard in connection with ISO Working Group 8?

277.   Who were the PKI employees who voted to approve draft specifications of the JPEG standard in connection with ISO Working Group 8?

278.   When did those PKI employees vote to approve draft specifications of the JPEG standard?

279.   Did you ever vote to approve any final drafts of the JPEG standard in connection with your attendance at ISO Working Group 8 meetings?

280.   When did you vote to approve a final draft of the JPEG standard in connection with your attendance at ISO Working Group 8?

281.   Are you aware of whether any other employees of PKI ever voted to approve any final draft specifications of the JPEG standard in connection with ISO Working Group 8?

282.   Who were the PKI employees who voted to approve final draft specifications of the JPEG standard in connection with ISO Working Group 8?

283.   When did those PKI employees vote to approve final draft specifications of the JPEG standard in connection with ISO Working Group 8?

*Questions to establish witness's knowledge of and compliance with ISO Working Group 8 patent policies:*

284. Did ISO Working Group 8 have any policies concerning patents?

285. What ISO Working Group 8 patent policies were you aware of when you attended ISO Working Group 8 meetings?

286. How were you aware of those ISO Working Group 8 patent policies?

287. When you attended ISO Working Group 8 meetings, were you aware that it was ISO Working Group 8's goal to adopt a standard that was free from patent claims?

288. When you attended ISO Working Group 8 meetings, were you aware of any patent disclosure policies applicable to ISO Working Group 8 members?

289. What patent disclosure policies applicable to ISO Working Group 8 members were you aware of?

290. Were those patent disclosure policies applicable to ISO Working Group 8 members written policies?

291. When you attended ISO Working Group 8 meetings, were you aware that ISO Working Group 8 patent policy provided that its members should disclose patents that were applicable to any technique under consideration for standardization?

292. When you attended ISO Working Group 8 meetings, were you aware that ISO Working Group 8 patent policy provided that members should provide royalty free licenses to JPEG applicable patents on a non-discriminatory basis?

293. When you attended ISO Working Group 8 meetings were you aware that ISO Working Group 8 patent policy required its members to license patents

applicable to standards under consideration on reasonable and nondiscriminatory terms?

294. At any of the ISO Working Group 8 meetings you attended, were there any verbal requests that members disclose JPEG applicable patents?

295. Who made the verbal requests that members disclose JPEG applicable patents?

296. When were the verbal requests that members disclose JPEG applicable patents made?

297. Were there any requests from ISO Working Group 8 that members conduct searches for patents applicable to the JPEG standard?

298. When were the requests that ISO Working Group 8 members conduct searches for patents applicable to the JPEG standard made?

299. Did you or PKI ever conduct a patent search for JPEG applicable patents in response to any requests from ISO Working Group 8?

300. Please describe all steps taken by you or PKI pursuant to any patent searches.

301. Who made the requests that ISO Working Group 8 members conduct searches for patents applicable to the JPEG standard?

302. Were you aware that other ISO Working Group 8 members disclosed patents to JPEG?

303. Did you ever disclose any patents to ISO Working Group 8?

304. Did PKI ever disclose any patents to ISO Working Group 8?

*ANNEX B*
*Questions for Gerald Weth*

**Background Statement regarding questions to be put to the witness:**

Kodak asserts that the JPEG standard is the result of almost a decade of worldwide collaboration by representatives of numerous companies, countries and standard-setting organizations. The work was largely done by the JPEG committee that consisted of representatives from at least two international standard-setting organizations—the International Telegraph and Telephone Consultative Committee ("CCITT") and the International Standards Organization ("ISO"). Each organization had a subcommittee dedicated to developing a worldwide standard for still-image compression and decompression: CCITT Study Group VIII and ISO Working Group 8. Kodak asserts that Philips was a member and participant in these two subcommittees as well as the JPEG committee itself, formed as a collaboration between them.

Kodak asserts that Philips, by and through its related entities in the Philips group of companies, was a member of CCITT Study Group VIII, ISO Working Group 8 and JPEG, and that Philips

(i)     knew the technical details of the proposed JPEG standard;

(ii)    was aware of the patent disclosure policies of each organization that required it to disclose patents and patent applications relevant to the JPEG standard;

(iii)   failed to disclose its patents including the '075 patent and related patent applications it now claims are necessary to implement the JPEG standard; and

(iv)    voted on several occasions to approve the JPEG standard.

Kodak also asserts that despite specific requests by committee leaders for patent disclosure and patent disclosures by other standard-setting committee members, Philips

never disclosed that it had patents or patent applications that might be relevant to the standard adopted by JPEG.

Kodak asserts that JPEG and the related standards-setting committees sought to adopt an "open" standard that would be free from patent infringement claims and would be widely available for industries, companies, and consumers worldwide to use. Kodak asserts that had Philips disclosed the '075 patent during JPEG standardization and made the royalty demands it now makes, JPEG and the related standards-setting committees would have chosen one of the available alternative compression techniques for standardization.

Kodak asserts that since its adoption, the JPEG standard has become deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images, and Kodak has made significant investments in the products and services that implement that standard. Based on these facts, Kodak asserts defenses and counterclaims of waiver and equitable estoppel, laches, implied license, unclean hands, fraud, negligent misrepresentation, and deceptive trade practices under Delaware state law.

The witness from whom testimony is sought is Gerald Weth, a German citizen, resident of Bavaria and former employee of Philips Kommunikations Industrie AG ("PKI"). PKI was part of the Philips group of companies and an organizational member of CCITT Study Group VIII. Numerous employees of PKI attended CCITT Study Group VIII and JPEG meetings during development of the JPEG standard between 1984 and 1994. In addition, PKI employees\representatives disclosed the '075 patent to Study Group XV, the MPEG subcommittee of CCITT devoted to motion picture compression,

therefore demonstrating Philips' knowledge of CCITT patent disclosure obligations.

Gerald Weth was employed by PKI between the years 1984 and 1994 and attended JPEG meetings as a representative of PKI. Specifically, documents collected by Kodak indicate that Gerald Weth attended a May 1988 JPEG meeting in Ottawa, Canada that included a presentation of the draft functional specification of the JPEG standard. At this meeting, the JPEG committee chairman distributed a memo entitled "Patent Policy on the JPEG Standard." It was also reported to JPEG members that patent searches that had been conducted prior to that meeting had not revealed any applicable patents. In addition, JPEG members, including PKI, were advised to perform their own JPEG patent searches. There is no evidence that Gerald Weth or Philips ever disclosed the '075 patent to JPEG.

The anticipated testimony from Gerald Weth is relevant to establish: (1) Philips' participation in JPEG standardization; (2) Philips knowledge of the technical specifications of the JPEG standard; (3) Philips' knowledge of the applicable JPEG related committee patent disclosure policies; and (4) PKI's failure to disclose the '075 patent in connection with JPEG standardization.

***Questions to establish background and foundational information regarding witness:***

1.    Please state your full name.

2.    Please state your home address.

3.    Please state your date of birth.

4.    Please state your current employer.

5.    Please state your current employer's address.

6.     Have you ever been employed by Philips Kommunikations Industrie AG ("PKI")?

7.     During what time period were you employed by PKI?

8.     What positions or titles have you held at PKI?

9.     Please state your job responsibilities for each position or title held at PKI.

10.    In what group or department within PKI did you hold each position?

11.    During what time period did you hold each position?

12.    During your employment at PKI, what was the address(es) of your residence?

13.    What was your work address at PKI?

14.    Has any employee or representative from the Philips group of companies contacted you in connection with your testimony today?

15.    Who was the Philips employee\representative that contacted you?

16.    Please describe the substance of all conversations you had with any Philips' group employees or representatives regarding your testimony today.

***Questions to establish knowledge of the '075 patent inventor and the '075 patent (and related patents):***

17.    Have you ever heard of Peter Vogel?

18.    Do you personally know Peter Vogel?

19.    Did you work with Peter Vogel?

20.    Did you ever work with Peter Vogel at PKI?

21.    Did you ever work with Peter Vogel in the same group or department at PKI?

22.    During what time period did you work with Peter Vogel?

23.    Did you ever work on any specific projects with Peter Vogel?

24.    What projects did you work on with Peter Vogel?

25.    Did you ever work on image compression at PKI?

26.    Did you ever work with Peter Vogel on image compression?

27.    What work with Peter Vogel did you do relating to image compression?

28.    When did you work with Peter Vogel on image compression?

29.    Did your work on image compression ever result in any patents?

30.    What patents resulted from your work on image compression?

31.    Was your work on image compression related to the JPEG standard?

32.    How was your work on image compression related to the JPEG standard?

33.    Was your work with Peter Vogel on image compression related to the JPEG standard?

34.    How was your work with Peter Vogel on image compression related to the JPEG standard?

35.    Are you familiar with United States Patent Number 4,901,075 ("the '075 patent") which lists Peter Vogel as its named inventor?  (show witness *Annex D*; Exhibit 1, the '075 patent)

36.    Were you involved in the research and development of the technology that became the '075 patent?

37.    In what way were you involved in the research and development of the technology that became the '075 patent?

38.    Do you believe that the '075 patent relates to the JPEG standard?

39.    When did you first come to the belief that the '075 patent relates to the JPEG standard?

40.    In what way does the '075 patent relate to the JPEG standard?

41.    Do you believe that the '075 patent is necessary to implement the JPEG standard?

42.    In what way is the '075 patent necessary to implement the JPEG standard?

43.    Do you believe that the '075 patent relates to the MPEG standard?

44.    When did you first come to the belief that the '075 patent relates to the MPEG standard?

45.    In what way does the '075 patent relate to the MPEG standard?

46.    Do you believe that the '075 patent is necessary to implement the MPEG standard?

47.    In what way is the '075 patent necessary to implement the MPEG standard?

48.    Are you familiar with European Patent 0 260 748 B1 ("EP '748") which lists Peter Vogel as its named inventor?  (show witness *Annex D*; Exhibit 2, EP '748)

49.    Were you involved in the research and development of the technology that became EP '748?

50.    In what way were you involved in the research and development of the technology that became EP '748?

51.    Do you believe that EP '748 relates to the JPEG standard?

52.    When did you first come to the belief that EP '748 relates to the JPEG standard?

53.    In what way does EP '748 relate to the JPEG standard?

54.    Do you believe that EP '748 is necessary to implement the JPEG standard?

55.     In what way is EP '748 necessary to implement the JPEG standard?

56.     Do you believe that EP '748 relates to the MPEG standard?

57.     When did you first come to the belief that EP '748 relates to the MPEG standard?

58.     In what way does EP '748 relate to the MPEG standard?

59.     Do you believe that EP '748 is necessary to implement the MPEG standard?

60.     In what way is EP '748 necessary to implement the MPEG standard?

61.     Are you familiar with German patent application no. 3,631,252, to which EP '748 and the '075 patent claim priority?  (show witness *Annex D*; Exhibit 3, German patent application no. 3,631,252 (English and German translations included))

62.     Were you involved in the research and development of the technology that became German patent application no. 3,631,252?

63.     In what way were you involved in the research and development of the technology that became German patent application no. 3,631,252?

64.     Do you believe that German patent application no. 3,631,252 relates to the JPEG standard?

65.     When did you first come to the belief that German patent application no. 3,631,252 relates to the JPEG standard?

66.     In what way does German patent application no. 3,631,252 relate to the JPEG standard?

67.     Do you believe German patent application no. 3,631,252 is necessary to implement the JPEG standard?

68. In what way is German patent application no. 3,631,252 necessary to implement the JPEG standard?

69. Do you believe that German patent application no. 3,631,252 relates to the MPEG standard?

70. When did you first come to the belief that German patent application no. 3,631,252 relates to the MPEG standard?

71. In what way does German patent application no. 3,631,252 relate to the MPEG standard?

72. Do you believe German patent application no. 3,631,252 is necessary to implement the MPEG standard?

73. In what way is German patent application no. 3,631,252 necessary to implement the MPEG standard?

74. Are you familiar with German patent application no. 3,638,127, to which EP '748 and the '075 patent claim priority?  (show witness *Annex D*; Exhibit 4, German patent application no. 3,638,127 (English and German translations included))

75. Were you involved in the research and development of the technology that became German patent application no. 3,638,127?

76. In what way were you involved in the research and development of the technology that became German patent application no. 3,638,127?

77. Do you believe that German patent application no. 3,638,127 relates to the JPEG standard?

78.  When did you first come to the belief that German patent application no. 3,638,127 relates to the JPEG standard?

79.  In what way does German patent application no. 3,638,127 relate to the JPEG standard?

80.  Do you believe German patent application no. 3,638,127 is necessary to implement the JPEG standard?

81.  In what way is German patent application no. 3,638,127 necessary to implement the JPEG standard?

82.  Do you believe that German patent application no. 3,638,127 relates to the MPEG standard?

83.  When did you first come to the belief that German patent application no. 3,638,127 relates to the MPEG standard?

84.  In what way does German patent application no. 3,638,127 relate to the MPEG standard?

85.  Do you believe German patent application no. 3,638,127 is necessary to implement the MPEG standard?

86.  In what way is German patent application no. 3,638,127 necessary to implement the MPEG standard?

87.  Are you familiar with German patent application no. 3,717,399, to which EP '748 and the '075 patent claim priority?  (show witness *Annex D*; Exhibit 5, German patent application no. 3,717,399 (English and German translations included))

88.  Were you involved in the research and development of the technology that became German patent application no. 3,717,399?

89.  In what way were you involved in the research and development of the technology that became German patent application no. 3,717,399?

90.  Do you believe that German patent application no. 3,717,399 relates to the JPEG standard?

91.  When did you first come to the belief that German patent application no. 3,717,399 relates to the JPEG standard?

92.  In what way does German patent application no. 3,717,399 relate to the JPEG standard?

93.  Do you believe German patent application no. 3,717,399 is necessary to implement the JPEG standard?

94.  In what way is German patent application no. 3,717,399 necessary to implement the JPEG standard?

95.  Do you believe that German patent application no. 3,717,399 relates to the MPEG standard?

96.  When did you first come to the belief that German patent application no. 3,717,399 relates to the MPEG standard?

97.  In what way does German patent application no. 3,717,399 relate to the MPEG standard?

98.  Do you believe German patent application no. 3,717,399 is necessary to implement the MPEG standard?

99.    In what way is German patent application no. 3,717,399 necessary to implement the MPEG standard?

*Questions to establish that witness attended JPEG committee meetings as a representative of PKI:*

100.    Please review the document designated WG8 N817, titled "Report of the Joint Photographic Experts Group Meeting." Did you attend the May 1988 JPEG meeting in Ottawa, Canada? (show witness *Annex D*; Exhibit 7, WG8 N817)

101.    Is your name on the list of attendees – *Annex 2* - on page 5 of the Ottawa JPEG meeting report? (*Annex D*; Exhibit 7)

102.    On the list of attendees - *Annex 2* - on page 5 of the Ottawa JPEG meeting report (*Annex D*; Exhibit 7), Philips is listed as the company you are associated with. Did you attend the May 1988 Ottawa JPEG meeting as a representative and on behalf of Philips?

103.    Please review the document designated WG8 N810, titled "Attendants of London meeting (September 19-23, 1988)" Did you attend the September 1988 JPEG meeting in London? (show witness *Annex D*; Exhibit 9, WG8 N810)

104.    Did you attend the September 1988 JPEG meeting in London as a representative and on behalf of Philips\PKI?

105.    During your employment with PKI, did you ever attend any other Joint Photographic Experts Group – "JPEG" – committee meetings?

106.    How many other JPEG committee meetings did you attend?

107.    What were the dates of all the JPEG committee meetings you attended?

108. Where were the locations of all the JPEG committee meetings you attended?

109. Are you aware of any other PKI employees that attended any JPEG committee meetings?

110. Who were the other PKI employees that attended JPEG committee meetings?

111. Did PKI pay for your travel expenses associated with the JPEG committee meetings you attended?

112. Did PKI pay for your hotel accommodations in connection with the JPEG committee meetings you attended?

113. Did PKI pay for your meals in connection with the JPEG committee meetings you attended?

114. Did PKI pay JPEG committee membership dues?

115. Did you attend each JPEG committee meeting as a representative on behalf of PKI\Philips?

*Questions to establish witness's knowledge of the subject matter of the JPEG standard gained as member of JPEG committee:*

116. On page 1 of the Ottawa meeting report (*Annex D*; Exhibit 7, WG8 N817), it indicates that at the May 1988 Ottawa JPEG meeting, a draft functional specification of the JPEG standard was presented. Were you present during the presentation of the draft functional specification of the JPEG standard?

117. Who presented the draft functional specification of the JPEG standard at the May 1988 Ottawa JPEG meeting?

118. What do you recall about the presentation of the draft functional specification of the JPEG standard at the May 1988 Ottawa JPEG meeting?

119.  What was your understanding regarding the purpose of the JPEG committee?

120.  Were the technical specifications of the JPEG standard ever presented or discussed during any other of the JPEG committee meetings you attended?

121.  Who discussed the technical specifications of the JPEG standard during the other JPEG committee meetings you attended?

122.  What exactly about the technical specifications of the JPEG standard was discussed during the other JPEG committee meetings you attended?

*Questions to establish witness's knowledge of and compliance with JPEG committee patent policies:*

123.  Page 3 of the Ottawa JPEG meeting report (*Annex D*; Exhibit 7, WG8 N817) indicates that at the May 1988 Ottawa meeting, "members were advised to have [patent] searches of their own performed." Do you recall being requested to conduct a patent search?

124.  Did PKI conduct a patent search in response to that request?

125.  Please describe exactly what steps were taken pursuant to that patent search.

126.  Page 3 of the Ottawa JPEG meeting report (*Annex D*; Exhibit 7, WG8 N817) also indicates that it was reported at the Ottawa meeting that no "obviously applicable patents" had turned up following a JPEG patent search. Do you recall being present during that discussion?

127.  Were there any other requests from the JPEG committee that members conduct searches for patents applicable to the JPEG standard?

128.  When were the other requests that JPEG committee members conduct searches for patents applicable to the JPEG standard made?

129.  Who made the requests that JPEG members conduct searches for patents applicable to the JPEG standard?

130.  Were you aware of other JPEG committee members that conducted JPEG standard related patent searches?

131.  Were any of the documents listed on page 6 - *Annex 3* - of the Ottawa meeting report (*Annex D*; Exhibit 7, WG8 N817) distributed at the May 1988 JPEG meeting in Ottawa?

132.  Did you receive any of the documents listed on page 6 - *Annex 3* - of the Ottawa meeting report (*Annex D*; Exhibit 7, WG8 N817)?

133.  Was the document designated WG8 N730 titled "Patent Policy on JPEG Standard" distributed at the May 1988 JPEG meeting in Ottawa?  (show witness *Annex D*; Exhibit 8, WG8 N730)

134.  Have you ever seen the document designated WG8 N730 titled "Patent Policy on JPEG Standard" before? (*Annex D*; Exhibit 8)

135.  Did you receive the document designated WG8 N730 at the May 1988 JPEG meeting in Ottawa? (*Annex D*; Exhibit 8)

136.  Did PKI declare to be obedient to the ISO and CCITT patent policy per the request by the JPEG Convener in WG8 N730? (*Annex D*; Exhibit 8)

137.  Who was the PKI representative that declared to be obedient to the ISO and CCITT patent policy per the request by the JPEG Convener in WG8 N730? (*Annex D*; Exhibit 8)

138. Did other JPEG members declare to be obedient to the ISO and CCITT patent policy per the request by the JPEG Convener in WG8 N730? (*Annex D*; Exhibit 8)

139. Which JPEG members declared to be obedient to the ISO and CCITT patent policies?

140. Have you ever seen the document designated WG8 N458 titled "Information To Be Given On Photographic Compression Techniques"? (show witness *Annex D*; Exhibit 10, WG8 N458)

141. Did the JPEG committee distribute the document designated WG8 N458 titled "Information To Be Given On Photographic Compression Techniques"? (*Annex D*; Exhibit 10)

142. Did you receive the document designated WG8 N458 titled "Information To Be Given On Photographic Compression Techniques"? (*Annex D*; Exhibit 10)

143. Have you ever seen the document designated JPEG – 722 titled "Draft Annex L on patents for CD/DIS/IS" ? (show the witness *Annex D*; Exhibit 11, JPEG - 722)

144. Did the JPEG committee distribute the document designated JPEG – 722 titled "Draft Annex L on patents for CD/DIS/IS" ? (*Annex D*; Exhibit 11)

145. Did you receive the document designated JPEG – 722 titled "Draft Annex L on patents for CD/DIS/IS" ?  (*Annex D*; Exhibit 11)

146. Have you ever read Annex L of the published JPEG standard?

147. Did the JPEG committee have any policies concerning patents?

148. What JPEG patent policies were you aware of when you attended JPEG meetings?

149. How did you become aware of those JPEG patent policies?

150. When you attended the JPEG committee meetings, were you aware that it was the JPEG committee's goal to adopt a standard that was free from patent claims?

151. When you attended the JPEG committee meetings, were you aware of any patent disclosure policies applicable to JPEG members?

152. What patent disclosure policies applicable to JPEG members were you aware of?

153. When you attended the JPEG committee meetings, were you aware that JPEG patent policy provided that its members should disclose patents that were applicable to any technique under consideration for standardization?

154. When you attended JPEG committee meetings, were you aware that JPEG patent policy provided that members should provide royalty free licenses to JPEG applicable patents on a non-discriminatory basis?

155. When you attended JPEG committee meetings were you aware that JPEG patent policy required its members to license JPEG standard applicable patents on reasonable and nondiscriminatory terms?

156. Have you ever seen the document designated JPEG – 718 titled "Request for Patent Statements or Re-statements?" (show witness *Annex D*; Exhibit 12, JPEG – 718)

157. Did the JPEG committee distribute the document designated JPEG – 718 titled "Request for Patent Statements or Re-statements?" (*Annex D*; Exhibit 12)

158. Did you receive the document designated JPEG – 718 titled "Request for Patent Statements or Re-statements?" (*Annex D*; Exhibit 12)

159. At any of the JPEG meetings you attended, were there any verbal requests that members disclose JPEG applicable patents?

160. Who made the verbal requests that members disclose JPEG applicable patents?

161. When were the verbal requests that members disclose JPEG applicable patents made?

162. Were you aware that other JPEG members disclosed patents to JPEG?

163. Did you ever conduct a search for patents applicable to the JPEG standard?

164. Did PKI ever conduct a search for patents applicable to the JPEG standard?

165. Please describe all steps that were taken pursuant to your or PKI's JPEG patent search.

166. Did you ever disclose any patents to the JPEG committee?

167. Did PKI ever disclose any patents to the JPEG committee?

168. Have you ever seen the document designated WG8 N741 titled "Patent Issues: ADCT and ISO in General" before? (show witness *Annex D*; Exhibit 13, WG8 N741)

169. Was the document designated WG8 N741 titled "Patent Issues: ADCT and ISO in General" distributed at the May 1988 JPEG meeting in Ottawa? (*Annex D*; Exhibit 13)

170. Did you receive the document designated WG8 N741? (*Annex D*; Exhibit 13)

171. Have you ever seen the document designated JPEG – 11.2-R1? (show witness *Annex D*; Exhibit 14, JPEG – 11.2-R, "Recommendations from Livingston N.J. JPEG Meeting")

172. Did the JPEG committee distribute the document designated JPEG – 11.2-R1? (*Annex D*; Exhibit 14)

173. Did you receive the document designated JPEG – 11.2-R1? (*Annex D*; Exhibit 14)

*Questions to establish that PKI voted in the JPEG committee to approve the JPEG standard:*

174. Did you ever vote to approve any draft specifications of the JPEG standard in connection with your attendance at JPEG meetings?

175. When did you vote to approve JPEG specification drafts?

176. Are you aware of whether any other employees of PKI ever voted to approve any draft specifications of the JPEG standard?

177. Who were the PKI employees who voted to approve draft specifications of the JPEG standard?

178. When did those PKI employees vote to approve draft specifications of the JPEG standard?

179. Did you ever vote to approve any final drafts of the JPEG standard in connection with your attendance at JPEG meetings?

180. When did you vote to approve a final draft of the JPEG standard in connection with your attendance at JPEG meetings?

181. Are you aware of whether any other employees of PKI ever voted to approve any final draft specifications of the JPEG standard?

182. Who were the PKI employees who voted to approve final draft specifications of the JPEG standard?

183. When did those PKI employees vote to approve final draft specifications of the JPEG standard?

*Questions to establish that witness participated in CCITT Study Group VIII committee meetings as a representative of PKI:*

184. During your employment at PKI, did you ever attend any meetings of the International Telegraph and Telephone Consultative Committee ("CCITT"), Study Group VIII?

185. How many CCITT Study Group VIII meetings did you attend?

186. What were the dates of the CCITT Study Group VIII meetings you attended?

187. Where were the locations of the CCITT Study Group VIII meetings you attended?

188. Did PKI pay for your travel to the CCITT Study Group VIII meetings you attended?

189. Did PKI pay for your hotel accommodations in connection with the CCITT Study Group VIII meetings you attended?

190.    Did PKI pay for your meals in connection with the CCITT Study Group VIII meetings you attended?

191.    Did PKI pay the CCITT membership dues in connection with your attendance at CCITT Study Group VIII meetings?

192.    What other employees of PKI attended CCITT Study Group VIII meetings?

193.    Did you attend CCITT Study Group VIII meetings as a representative and on behalf of PKI?

*Questions to establish witness's knowledge of the subject matter and specification of the JPEG standard gained as member of CCITT Study Group VIII:*

194.    What was your understanding regarding the purpose of CCITT Study Group VIII?

195.    At any of the CCITT Study Group VIII meetings you attended, was still image compression ever discussed?

196.    What regarding still image compression was discussed?

197.    Were the technical specifications of the JPEG standard ever presented or discussed during the CCITT Study Group VIII meetings you attended?

198.    Who discussed the technical specifications of the JPEG standard during the CCITT Study Group VIII meetings you attended?

199.    What exactly about the technical specifications of the JPEG standard was discussed?

*Questions to establish that PKI voted in CCITT Study Group VIII to approve the JPEG standard:*

200. Did you ever vote to approve any draft specifications of the JPEG standard in connection with your attendance at CCITT Study Group VIII meetings?

201. When did you vote to approve JPEG specification drafts in connection with your attendance of CCITT Study Group VIII meetings?

202. Are you aware of whether any other employees of PKI ever voted to approve any draft specifications of the JPEG standard in connection with CCITT Study Group VIII?

203. Who were the PKI employees who voted to approve draft specifications of the JPEG standard in connection with CCITT Study Group VIII?

204. When did those PKI employees vote to approve draft specifications of the JPEG standard?

205. Did you ever vote to approve any final drafts of the JPEG standard in connection with your attendance at CCITT Study Group VIII meetings?

206. When did you vote to approve a final draft of the JPEG standard in connection with your attendance at CCITT Study Group VIII meetings?

207. Are you aware of whether any other employees of PKI ever voted to approve any final draft specifications of the JPEG standard in connection with CCITT Study Group VIII?

208. Who were the PKI employees who voted to approve final draft specifications of the JPEG standard in connection with CCITT Study Group VIII?

209. When did those PKI employees vote to approve final draft specifications of the JPEG standard in connection with CCITT Study Group VIII ?

*Questions to establish witness's knowledge of and compliance with CCITT*

*Study Group VIII patent policies:*

210.    Did CCITT Study Group VIII have any policies concerning patents?

211.    What CCITT Study Group VIII patent policies were you aware of when you

        attended JPEG meetings?

212.    How were you aware of those CCITT Study Group VIII patent policies?

213.    When you attended CCITT Study Group VIII meetings, were you aware that

        it was the JPEG committee's goal to adopt a standard that was free from

        patent claims?

214.    When you attended CCITT Study Group VIII meetings, were you aware of

        any patent disclosure policies applicable to CCITT Study Group VIII

        members?

215.    What patent disclosure policies applicable to CCITT Study Group VIII

        members were you aware of?

216.    Were those patent disclosure policies applicable to CCITT Study Group VIII

        members written policies?

217.    When you attended CCITT Study Group VIII meetings, were you aware that

        CCITT Study Group VIII patent policy provided that its members should

        disclose patents that were applicable to any technique under consideration for

        standardization?

218.    When you attended CCITT Study Group VIII meetings, were you aware that

        CCITT Study Group VIII patent policy provided that members should provide

royalty free licenses to JPEG applicable patents on a non-discriminatory basis?

219. When you attended CCITT Study Group VIII meetings were you aware that CCITT Study Group VIII patent policy required its members to license patents applicable to standards under consideration on reasonable and nondiscriminatory terms?

220. At any of the CCITT Study Group VIII meetings you attended, were there any verbal requests that members disclose JPEG applicable patents?

221. Who made the verbal requests that members disclose JPEG applicable patents?

222. When were the verbal requests that members disclose JPEG applicable patents made?

223. Were there any requests from CCITT Study Group VIII that members conduct searches for patents applicable to the JPEG standard?

224. When were the requests that CCITT Study Group VIII members conduct searches for patents applicable to the JPEG standard made?

225. Who made the requests that CCITT Study Group VIII members conduct searches for patents applicable to the JPEG standard?

226. Did you or PKI conduct a patent search in response to a request by CCITT Study Group VIII?

227. Please describe all steps taken pursuant to that patent search.

228. Were you aware that other CCITT Study Group VIII members disclosed patents to JPEG?

229.    Did you ever disclose any patents to CCITT Study Group VIII?

230.    Did PKI ever disclose any patents to CCITT Study Group VIII?

*Questions to establish that witness participated in ISO Working Group 8*

*committee meetings as a representative of PKI:*

231.    During your employment at PKI, did you ever attend any meetings of the International Standards Organization – "ISO" - Working Group 8?

232.    How many ISO Working Group 8 meetings did you attend?

233.    What were the dates of the ISO Working Group 8 meetings you attended?

234.    Where were the locations of the ISO Working Group 8 meetings you attended?

235.    Did PKI pay for your travel to the ISO Working Group 8 meetings you attended?

236.    Did PKI pay for your hotel accommodations in connection with the ISO Working Group 8 meetings you attended?

237.    Did PKI pay for your meals in connection with the ISO Working Group 8 meetings you attended?

238.    Did PKI pay the ISO membership dues in connection with your attendance at ISO Working Group 8 meetings?

239.    What other employees of PKI attended ISO Working Group 8 meetings?

240.    Did you attend ISO Working Group 8 meetings as a representative and on behalf of PKI?

*Questions to establish witness's knowledge of the subject matter and*

*specification of the JPEG standard gained as member of ISO Working Group 8:*

241.    What was your understanding regarding the purpose of ISO Working Group 8?

242.    At any of the ISO Working Group 8 meetings you attended, was still image compression ever discussed?

243.    What regarding still image compression was discussed?

244.    Were the technical specifications of the JPEG standard ever presented or discussed during the ISO Working Group 8 meetings you attended?

245.    Who discussed the technical specifications of the JPEG standard during the ISO Working Group 8 meetings you attended?

246.    What exactly about the technical specifications of the JPEG standard was discussed?

***Questions to establish that PKI voted in ISO Working Group 8 to approve the JPEG standard:***

247.    Did you ever vote to approve any draft specifications of the JPEG standard in connection with your attendance at ISO Working Group 8 meetings?

248.    When did you vote to approve JPEG specification drafts?

249.    Are you aware of whether any other employees of PKI ever voted to approve any draft specifications of the JPEG standard in connection with ISO Working Group 8?

250.    Who were the PKI employees who voted to approve draft specifications of the JPEG standard in connection with ISO Working Group 8?

251.    When did those PKI employees vote to approve draft specifications of the JPEG standard?

252. Did you ever vote to approve any final drafts of the JPEG standard in connection with your attendance at ISO Working Group 8 meetings?

253. When did you vote to approve a final draft of the JPEG standard in connection with your attendance at ISO Working Group 8?

254. Are you aware of whether any other employees of PKI ever voted to approve any final draft specifications of the JPEG standard in connection with ISO Working Group 8?

255. Who were the PKI employees who voted to approve final draft specifications of the JPEG standard in connection with ISO Working Group 8?

256. When did those PKI employees vote to approve final draft specifications of the JPEG standard in connection with ISO Working Group 8?

***Questions to establish witness's knowledge of and compliance with ISO Working Group 8 patent policies:***

257. Did ISO Working Group 8 have any policies concerning patents?

258. What ISO Working Group 8 patent policies were you aware of when you attended ISO Working Group 8 meetings?

259. How were you aware of those ISO Working Group 8 patent policies?

260. When you attended ISO Working Group 8 meetings, were you aware that it was ISO Working Group 8's goal to adopt a standard that was free from patent claims?

261. When you attended ISO Working Group 8 meetings, were you aware of any patent disclosure policies applicable to ISO Working Group 8 members?

262. What patent disclosure policies applicable to ISO Working Group 8 members were you aware of?

263. When you attended ISO Working Group 8 meetings, were you aware that ISO Working Group 8 patent policy provided that its members should disclose patents that were applicable to any technique under consideration for standardization?

264. When you attended ISO Working Group 8 meetings, were you aware that ISO Working Group 8 patent policy provided that members should provide royalty free licenses to JPEG applicable patents on a non-discriminatory basis?

265. When you attended ISO Working Group 8 meetings were you aware that ISO Working Group 8 patent policy required its members to license patents applicable to standards under consideration on reasonable and nondiscriminatory terms?

266. At any of the ISO Working Group 8 meetings you attended, were there any verbal requests that members disclose JPEG applicable patents?

267. Who made the verbal requests that members disclose JPEG applicable patents?

268. When were the verbal requests that members disclose JPEG applicable patents made?

269. Were there any requests from ISO Working Group 8 that members conduct searches for patents applicable to the JPEG standard?

270. When were the requests that ISO Working Group 8 members conduct searches for patents applicable to the JPEG standard made?

271. Who made the requests that ISO Working Group 8 members conduct searches for patents applicable to the JPEG standard?

272. Were you aware that other ISO Working Group 8 members disclosed patents to JPEG?

273. Did you or PKI conduct a patent search in response to ISO Working Group 8's request?

274. Please describe all steps taken pursuant to that patent search.

275. Did you ever disclose any patents to ISO Working Group 8?

276. Did PKI ever disclose any patents to ISO Working Group 8?

***Questions to establish participation in CCITT Study Group XV as a representative of PKI:***

277. During your employment at PKI, did you ever attend any CCITT Study Group XV meetings?

278. What CCITT Study Group XV meetings did you attend?

279. What were the dates of the CCITT Study Group XV meetings you attended?

280. Where were the locations of the CCITT Study Group XV meetings you attended?

281. Did PKI pay for your travel to the CCITT Study Group XV meetings you attended?

282. Did PKI pay for your hotel accommodations in connection with the CCITT Study Group XV meetings you attended?

283. Did PKI pay for your meals in connection with the CCITT Study Group XV meetings you attended?

284. Did PKI pay the CCITT membership dues in connection with your attendance at CCITT Study Group XV meetings?

285. What other employees of PKI attended CCITT Study Group XV meetings?

286. Did you attend CCITT Study Group XV meetings as a representative and on behalf of PKI?

***Questions to establish witness's knowledge of JPEG standard through attendance at CCITT Study Group XV meetings:***

287. What was your understanding regarding the purpose of CCITT Study Group XV?

288. At any of the CCITT Study Group XV meetings you attended, was still image compression ever discussed?

289. What regarding still image compression was discussed?

290. Were the technical specifications of the JPEG standard ever presented or discussed during the CCITT Study Group XV meetings you attended?

291. Who discussed the technical specifications of the JPEG standard during the CCITT Study Group XV meetings you attended?

292. What exactly about the technical specifications of the JPEG standard was discussed?

***Questions to establish that Philips disclosed patents and made licensing statements to CCITT Study Group XV:***

293. Are you aware that PKI disclosed the patent applications to which the '075 patent claims priority ("Vogel Applications" – *Annex D*; Exhibits 3-5) to

CCITT Study Group XV in connection with development of the MPEG standard?

294. Were you in any way involved in the disclosure of the Vogel Applications to CCITT Study Group XV?

295. In what way were you involved in the disclosure of the Vogel Applications to CCITT Study Group XV?

296. Why did PKI disclose the Vogel Applications to CCITT Study Group XV?

297. Did CCITT patent disclosure obligations require PKI to disclose the Vogel Applications to Study Group XV?

298. What was your understanding of CCITT Study Group XV patent disclosure obligations?

299. Are you aware that CCITT Study Group XV and Study Group VIII share the same patent disclosure policy?

300. Why did PKI disclose the Vogel Applications to CCITT Study Group XV but not to JPEG, CCITT Study Group VIII or ISO Working Group VIII?

301. Was it your understanding that the Vogel Applications applied to video (moving picture) compression and not still image compression?

*ANNEX C*
*Documents Sought for Production*

The District Court requests that the witnesses produce the following documents in their possession, custody, or control and that they be made available for inspection and copying at least two weeks prior to each witness's oral examination:

1. The draft specifications of the JPEG standard;

2. The final specifications of the JPEG standard;

3. The JPEG committee voting ballots from 1988 through 1994;

4. The CCITT Study Group VIII voting ballots from 1988 through 1994;

5. The ISO Working Group 8 voting ballots from 1988 through 1994;

6. The JPEG committee meeting reports from 1988 through 1994;

7. The CCITT Study Group VIII meeting reports from 1988 through 1994;

8. The ISO Working Group 8 meeting reports from 1988 through 1994;

9. The JPEG committee patent policies from 1988 through 1994;

10. The CCITT Study Group VIII patent policies from 1988 through 1994;

11. The ISO Working Group 8 patent policies from 1988 through 1994;

12. The JPEG committee meeting attendance lists from 1988 through 1994;

13. The CCITT Study Group VIII meeting attendance lists from 1988 through 1994;

14. The ISO Working Group 8 meeting attendance lists from 1988 through 1994;

15. The JPEG committee membership fee receipts from 1988 through 1994;

16. The CCITT Study Group VIII membership fee receipts from 1988 through 1994;

17. The ISO Working Group 8 membership fee receipts from 1988 through 1994;

18. The requests for patent disclosure from the JPEG committee from 1988 through 1994;

19. The requests for patent disclosure from CCITT Study Group VIII from 1988

through 1994; and

20. The requests for patent disclosure from ISO Working Group 8 from 1988 through

1994.

*ANNEX D*
*Documents to be Used During Witness Examination/Documents Supporting this Request*