IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | Case No. 06-0251 GMS |
| Plaintiff, | ) | |
| v. | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| Defendant. | ) | |

**DECLARATION OF T. JESSE HINDMAN IN SUPPORT OF EASTMAN KODAK COMPANY'S APPLICATION FOR ISSUANCE OF LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

I, T. Jesse Hindman, declare as follows:

1.    I am an associate with the law firm DLA Piper US LLP, attorneys of record for defendant Eastman Kodak Company ("Kodak") in the above matter.  Unless the context indicates otherwise, I make this declaration based upon my own personal knowledge.

2.    Attached hereto as Exhibit No. 1 are true and correct copies of Kodak's Notices of Deposition and Requests for Production of Documents and Things for Karl-Heinz Wenzel, Gerald Weth and Dr. Ulf Rothgordt.

3.      Attached hereto as Exhibit No. 2 is a true and correct copy of the March 2, 2007 letter from Joyce Craig-Rient to T. Jesse Hindman.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Dated this 27th day of April, 2007, at San Diego, California.

_____
T. Jesse Hindman

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on May 1, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered counsel of record via e-mail.

I hereby further certify that on May 1, 2007, I caused a copy of the foregoing document to be served on the following counsel of record by the manner so indicated:

<u>BY E-MAIL AND HAND DELIVERY:</u>
Steven J. Balick
John G. Day
Tiffany Geyer Lydon
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

<u>BY E-MAIL AND U.S. MAIL:</u>
Thomas W. Winland
Steven M. Anzalone
Frank A. DeCosta, III
Joyce Craig-Rient
Pat Hart
Finnegan Henderson Farabow Garrett and Dunner LLP
901 New York Avenue, NW
Washington, DC 20001

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00251-GMS |
| v. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF DEPOSITION AND REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS OF KARL-HEINZ WENZEL**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30, counsel

for Eastman Kodak Company ("Kodak") will take the deposition upon oral examination of Karl-

Heinz Wenzel, employee of Philips Kommunikations Industrie AG, representative to the

International Telegraph and Telephone Consultative Committee ("CCITT") and attendee of the

October 1991 CCITT Study Group VIII meeting in Geneva. The deposition will begin at 9:00

a.m. on April 4, 2007 at the offices of DLA Piper US LLP, 401 B Street, Suite 1700, San Diego,

CA 92101-4297. The deposition will continue from day to day until completed.

The deposition will be conducted pursuant to Federal Rule of Civil Procedure 30 and will

be taken before an officer, notary public, or other person authorized to administer oaths and may

be videotaped. The deposition will be taken for the purposes of discovery, for use at trial in this

matter, and for any purposes permitted under the Federal Rules of Civil Procedure.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Federal Rules of Civil

Procedure 30(b)(5) and 34, Kodak requests that Karl-Heinz Wenzel and U.S. Philips Corporation

produce the documents and things in their possession, custody or control requested in Schedule

A, at 9:00 a.m. on March 5, 2007, at the law offices of DLA Piper US LLP, 401 B Street, Suite

1700, San Diego, CA 92101-4297.

Dated: **Feb 2**, 2007

Francis DiGiovanni (#3189)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
e-mail: fdigiovanni@cblh.com

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
Jesse Hindman
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701
Attorneys for Defendant
Eastman Kodak Company

## SCHEDULE A

**DEFINITIONS:**

1.      "Kodak" means Defendant Eastman Kodak Company, including its predecessors, successors, assigns, past and present subsidiaries, divisions, affiliates, officers, directors, agents and employees, attorneys and other persons acting on its behalf.

2.      "Philips" means U.S. Philips Corporation including its predecessors, successors, assigns, past and present subsidiaries, past and present corporate parents, past or present subsidiaries of its corporate parents, divisions, affiliates, officers, directors, agents and employees, attorneys and other persons acting on its behalf, including Royal Philips Electronics, Philips Kommunikations Industrie AG (Germany), Philips Research Laboratories (United Kingdom), Philips Data Systems, Philips International B.V. (Netherlands), Philips Telecommuicatie Industrie (Netherlands), Philips Consumer Electronics B.V. (Netherlands), Philips Patentverwaltung GmbH, and N. V. Philips' Gloeilampenfabrieken.

3.      "You" and "Your" shall refer to Karl-Heinz Wenzel.

4.      The terms "communication" or "communications" shall mean any transfer or exchange between two or more persons of any information whether by written, oral, electronic or other means, including but not limited to personal conversations, correspondence, electronic mail, telephone calls, facsimile communications, or telegrams.  A draft or non-identical copy is a separate document within the meaning of this term.

5.      The term "document" shall have the broadest meaning possible within the broad context of the Federal Rules of Civil Procedure, and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of notations or markings) or any and all other written, printed, typed, punched, taped, filmed or graphic matter or recorded or tangible thing, of whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data), and shall include all attachments to and enclosures with any requested item, to which they are attached or

with which they are enclosed, and each draft thereof. The term document includes for example, but is not limited to: correspondence, telegrams, memoranda, communications, minutes or records of meetings and conferences, lists of persons attending meetings or conferences, summaries, records of conversations, drafts, notes, notebooks, logs, test results, invention records and disclosures, translations, drawings, graphs, charts, photographs, data compilations, computer records or printouts, change orders, schematics, engineering reports, mockups, models, bread boards, prototypes, specifications, reports, service manuals, operational manuals, component lists, opinions, summaries, agreements, forecasts, plan drawings, mask works, engineering drawings, expressions or statements of policy, consultations, brochures, pamphlets, advertisements, publications, circulars, trade letters, press releases, convention materials, drafts of any documents, revisions of drafts of any documents, whether printed, recorded, written by hand, stored electronically or on computer disc or in some other tangible medium of expression from which the information can be retrieved, perceived or understood and specifically includes electronically stored information and other documents and information that may exist only in electronic form. Kodak requests that any and all electronic records, computerized information and/or electronically stored information requested herein be produced in its "native file" format and that all metadata associated with such electronically stored information be preserved and produced.

  6. The terms "person" or "persons" mean any individual, corporation, proprietorship, partnership, association, agency, or any other entity.

  7. "Infringe" and "Infringement" refer to direct Infringement, contributory Infringement, inducement of Infringement, literal Infringement, and/or Infringement by the doctrine of equivalents.

  8. "Prior Art" has the same meaning as used in 35 U.S.C. § 103, including without limitation any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in 35 U.S.C. § 102, taken singly or in combination.

  9. The terms "all" and "any" both mean "any and all."

10.     The singular includes the plural and vice versa; the words "and" and "or" shall be interpreted in either the conjunctive or disjunctive sense to bring within the scope of the request the broadest number of documents or things and greatest amount of information. The word "including" shall not be used to limit any general category or description that precedes it.

11.     The terms "the Patent-in-Suit" and the "'075 patent" mean United States Patent No. 4,901,075.

12.     The term "Philips Application" means any and all applications for the Patent-in-Suit, any continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, and any other applications disclosing, describing, or claiming any invention disclosed, described, or claimed in the Patent-in-Suit, whether or not abandoned and whether or not issued.

13.     The term "Related Philips Patents" means any U.S. or foreign patents corresponding to or related in any way to the Patent-in-Suit, the invention disclosed in the Patent-in-Suit or any other patent related to video compression technology assigned in whole or in part to Philips, including any corrections and certificates of reexamination and including without limitation European Patent No. 0 260 748 B1.

14.     The term "Related Philips Patent Applications" means any U.S. or foreign patent applications that led to or matured into any of the Related Philips Patents, and any U.S. or foreign patent application from or through which the Patent-in-Suit or any of the Related Philips Patents claim priority, and any predecessors, continuations, divisionals or continuations-in-part of any of the foregoing patent applications (including any rejected, abandoned or pending applications).

15.     The phrases "relating to," "relate to" or "related to" shall mean embodying, pertaining, concerning, involving, constituting, commenting upon, comprising, reflecting, discussing, evidencing, mentioning, referring to, consisting of, responding to, or having any logical or factual connection whatever with the subject matter in question.

16.    The term "claimed subject matter" of the Patent-in-Suit shall mean and include all products, processes, services, technology, implementations, uses, methods, and any other subject matter alleged to be covered by one or more claims of the Patent-in-Suit.

17.    The term "CCITT" means International Telegraph and Telephone Consultative Committee, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

18.    The term "ANSI" means American National Standards Institute, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

19.    The term "ISO" means International Organization for Standardization, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

20.    The term "IEC" means International Electrotechnical Commission, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

21.    The term "BSI" means British Standards Institution, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

22.    The meaning of "JPEG Standard" shall include International Standard ISO/IEC 10918-1 (the "ISO standard"), International Telecommunication Union CCITT Recommendation T.81 (the "CCITT standard"), and all national standards body versions, equivalents, or variations of the ISO standard or the CCITT standard.

23.    "MPEG Standard" shall mean any and/or all of the international standards for compression, decompression, processing, and coded representation of moving picture, audio and their combination including those developed by the ISO, IEC and CCITT.

24.    "ESPRIT" means the information technologies program managed by the Directorate General for Industry of The European Commission.

25.    The term "Accused Product(s)" means each apparatus, product, device, process, method, act, service or other instrumentality that Philips contends infringes the Patent-in-Suit, whether such infringement is alleged to be direct, under the doctrine of equivalents, induced or contributory.

**INSTRUCTIONS:**

1.    These requests shall apply to all documents in your possession, custody or control at the present time or coming into your possession, custody or control prior to the date of the production.  If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody or control, you shall so state and shall identify such documents or things, and the person who has possession, custody or control of the documents or things.

2.    If no documents are responsive to a particular request, you are to state that no responsive documents exist.

3.    For any responsive documents or tangible things that have been lost, destroyed or withheld from production based on any ground, you shall provide a written statement setting forth:

        a.    the identity of the document;

        b.    the nature of the document (e.g., letter, memorandum, chart)

        c.    the identity of the person(s) who received copies of the document;

        d.    the date of the document;

        e.    a brief description of the subject matter of the document; and

      f.     the circumstances of the loss or destruction of the document and

      g.     any fact, statute, rule or decision upon which you rely in

withholding the document.

    4.     If you decline to produce any document or part thereof based on a claim of

privilege or any other claim, provide, a privilege log which identifies each document separately

and specifies for each document at least the following:

      a.     the date;

      b.     the sender(s) identified by position and entity with which they are

employed or associated and, if any sender is an attorney, a statement so stating and, if any sender

is a foreign patent agent, a statement so stating and a statement as to whether the laws of the

agent's country grant privileged status to a patent agent's communications;

      c.     the recipient(s), including copy recipients, identified by position

and entity with which they are employed or associated and, if any recipient is an attorney, a

statement so stating and, if any recipient is a foreign patent agent, a statement so stating and, if

any recipient is a foreign patent agent, a statement so stating and a statement as to whether the

laws of the agent's country grant privileged status to a patent agent's communications;

      d.     the general subject matter of the document;

      e.     the portion(s) of the document as to which privilege is claimed;

and

      f.     the type of privilege asserted as well as a certification that all

elements of the claimed privilege have been met and not waived.

    5.     All documents requested are to be produced in the same file or other

organizational environment in which they are maintained.  For example, a document that is

part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original. Alternatively, as to each document and thing produced in response hereto, you shall identify the request for production and where applicable, the interrogatory number, in response to which the document or thing is being produced.

6.       These requests seek all responsive documents in their original language and, if such original language is not English, these requests also seek all English-language translations that may exist for any such documents.

7.       You shall keep and produce a record of the source of each document produced. This shall include the name and location of the file where each document was located and the name of the person, group or department having possession, custody or control of each document.

8.       Electronic records, computerized information and/or electronically stored information requested herein must be produced in its "native file" format and all metadata associated with such electronically stored information must be preserved and produced as required by Federal Rule of Civil Procedure 34.

**DOCUMENT REQUESTS**:

Any and all documents pertaining or relating to:

      1.     The JPEG Standard, including the development, establishment, and adoption thereof.

      2.     Any investigation, testing, or analysis of the JPEG Standard conducted by or on behalf of Philips.

      3.     Any analysis, review, inspection, test, or observation for the purpose of determining whether any claims of the Patent-in-Suit or the Related Philips Patents cover the JPEG Standard.

      4.     The MPEG Standard, including the development, establishment, and adoption thereof.

      5.     Any analysis, review, inspection, test, or observation for the purpose of determining whether any claims of the Patent-in-Suit or the Related Philips Patents cover the MPEG Standard.

      6.     Philips' dealings or interaction with, participation in, and/or observation of any activity associated with any of the organizations (including their members) responsible for establishing the JPEG Standard, including but not limited to correspondence, communications, memos, reports, statements, and records of meetings.

      7.     Philips' dealings or interaction with, participation in, and/or observation of any activity associated with any of the organizations (including their members) responsible for establishing the MPEG Standard, including but not limited to correspondence, communications, memos, reports, statements, and records of meetings.

      8.     The ISO and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

9.     The CCITT and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

10.     The ANSI and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

11.     The IEC and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

12.     The BSI and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

13.     Philips' participation in the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups including without limitation those involving development and adoption of the JPEG and MPEG Standards.

14.     Philips' correspondence and other communications with the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups, and/or members of those committees and groups.

15.     The Adaptive Discrete Cosine Transform method.

16.     Adaptive binary arithmetic coding or the Q Coder.

17.     Generalized block truncated coding.

18.     Bylaws and rules of the ISO, CCITT, ANSI, IEC, and BSI including any of their standard-setting committees and groups and including without limitation patent and patent application disclosure policies, requests or rules (express or implied).

19.     Identification, disclosure, or non-disclosure of any patents or patent applications to the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups, and/or members of those committees and groups.

20.    Any image or data compression project concerning or associated with ESPRIT.

21.    Communications including without limitation those internal to Philips relating to development or approval of the JPEG Standard.

22.    Communications including without limitation those internal to Philips relating to development or approval of the MPEG Standard.

23.    Patent or patent application disclosure policies, rules, or requests, either express or implied, of standards-setting committees including without limitation the JPEG and MPEG Standards related committees of the ISO, CCITT, ANSI, IEC, and BSI.

24.    Communications relating to or involving in any way Peter Vogel.

25.    Your knowledge of the Patent-in-Suit, the Philips Application, the Related Philips Patents and/or any Related Philips Patent Applications.

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on February 2, 2007, copies of the foregoing

document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

**BY UNITED STATES MAIL AND E-MAIL:**

Thomas W. Winland
Steven M. Anzalone
Frank A. DeCosta, III
Finnegan Henderson Farabow Garrett and Dunner LLP
901 New York Avenue, NW
Washington, DC 20001

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00251-GMS |
| v. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF DEPOSITION AND REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS OF GERALD WETH**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30, counsel

for Eastman Kodak Company ("Kodak") will take the deposition upon oral examination of

Gerald Weth, employee of Philips Kommunikations Industrie AG and attendee of the May 1988

JPEG meeting held in Ottawa, Canada. The deposition will begin at 9:00 a.m. on April 5, 2007

at the offices of DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, CA 92101-4297. The

deposition will continue from day to day until completed.

The deposition will be conducted pursuant to Federal Rule of Civil Procedure 30 and will

be taken before an officer, notary public, or other person authorized to administer oaths and may

be videotaped. The deposition will be taken for the purposes of discovery, for use at trial in this

matter, and for any purposes permitted under the Federal Rules of Civil Procedure.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Federal Rules of Civil

Procedure 30(b)(5) and 34, Kodak requests that Gerald Weth and U.S. Philips Corporation

1

produce the documents and things in their possession, custody or control requested in Schedule

A, at 9:00 a.m. on March 5, 2007, at the law offices of DLA Piper US LLP, 401 B Street, Suite

1700, San Diego, CA 92101-4297.

Dated: _____Feb 2_____, 2007

_____

Francis DiGiovanni (#3189)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
e-mail: fdigiovanni@cblh.com

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
Jesse Hindman
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701
Attorneys for Defendant
Eastman Kodak Company

## SCHEDULE A

**DEFINITIONS:**

1.      "Kodak" means Defendant Eastman Kodak Company, including its predecessors, successors, assigns, past and present subsidiaries, divisions, affiliates, officers, directors, agents and employees, attorneys and other persons acting on its behalf.

2.      "Philips" means U.S. Philips Corporation including its predecessors, successors, assigns, past and present subsidiaries, past and present corporate parents, past or present subsidiaries of its corporate parents, divisions, affiliates, officers, directors, agents and employees, attorneys and other persons acting on its behalf, including Royal Philips Electronics, Philips Kommunikations Industrie AG (Germany), Philips Research Laboratories (United Kingdom), Philips Data Systems, Philips International B.V. (Netherlands), Philips Telecommuicatie Industrie (Netherlands), Philips Consumer Electronics B.V. (Netherlands), Philips Patentverwaltung GmbH, and N. V. Philips' Gloeilampenfabrieken.

3.      "You" and "Your" shall refer to Gerald Weth.

4.      The terms "communication" or "communications" shall mean any transfer or exchange between two or more persons of any information whether by written, oral, electronic or other means, including but not limited to personal conversations, correspondence, electronic mail, telephone calls, facsimile communications, or telegrams.  A draft or non-identical copy is a separate document within the meaning of this term.

5.      The term "document" shall have the broadest meaning possible within the broad context of the Federal Rules of Civil Procedure, and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of notations or markings) or any and all other written, printed, typed, punched, taped, filmed or graphic matter or recorded or tangible thing, of whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data), and shall include all attachments to and enclosures with any requested item, to which they are attached or

with which they are enclosed, and each draft thereof. The term document includes for example, but is not limited to: correspondence, telegrams, memoranda, communications, minutes or records of meetings and conferences, lists of persons attending meetings or conferences, summaries, records of conversations, drafts, notes, notebooks, logs, test results, invention records and disclosures, translations, drawings, graphs, charts, photographs, data compilations, computer records or printouts, change orders, schematics, engineering reports, mockups, models, bread boards, prototypes, specifications, reports, service manuals, operational manuals, component lists, opinions, summaries, agreements, forecasts, plan drawings, mask works, engineering drawings, expressions or statements of policy, consultations, brochures, pamphlets, advertisements, publications, circulars, trade letters, press releases, convention materials, drafts of any documents, revisions of drafts of any documents, whether printed, recorded, written by hand, stored electronically or on computer disc or in some other tangible medium of expression from which the information can be retrieved, perceived or understood and specifically includes electronically stored information and other documents and information that may exist only in electronic form. Kodak requests that any and all electronic records, computerized information and/or electronically stored information requested herein be produced in its "native file" format and that all metadata associated with such electronically stored information be preserved and produced.

      6.     The terms "person" or "persons" mean any individual, corporation, proprietorship, partnership, association, agency, or any other entity.

      7.     "Infringe" and "Infringement" refer to direct Infringement, contributory Infringement, inducement of Infringement, literal Infringement, and/or Infringement by the doctrine of equivalents.

      8.     "Prior Art" has the same meaning as used in 35 U.S.C. § 103, including without limitation any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in 35 U.S.C. § 102, taken singly or in combination.

      9.     The terms "all" and "any" both mean "any and all."

10.    The singular includes the plural and vice versa; the words "and" and "or" shall be interpreted in either the conjunctive or disjunctive sense to bring within the scope of the request the broadest number of documents or things and greatest amount of information. The word "including" shall not be used to limit any general category or description that precedes it.

11.    The terms "the Patent-in-Suit" and the "'075 patent" mean United States Patent No. 4,901,075.

12.    The term "Philips Application" means any and all applications for the Patent-in-Suit, any continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, and any other applications disclosing, describing, or claiming any invention disclosed, described, or claimed in the Patent-in-Suit, whether or not abandoned and whether or not issued.

13.    The term "Related Philips Patents" means any U.S. or foreign patents corresponding to or related in any way to the Patent-in-Suit, the invention disclosed in the Patent-in-Suit or any other patent related to video compression technology assigned in whole or in part to Philips, including any corrections and certificates of reexamination and including without limitation European Patent No. 0 260 748 B1.

14.    The term "Related Philips Patent Applications" means any U.S. or foreign patent applications that led to or matured into any of the Related Philips Patents, and any U.S. or foreign patent application from or through which the Patent-in-Suit or any of the Related Philips Patents claim priority, and any predecessors, continuations, divisionals or continuations-in-part of any of the foregoing patent applications (including any rejected, abandoned or pending applications).

15.    The phrases "relating to," "relate to" or "related to" shall mean embodying, pertaining, concerning, involving, constituting, commenting upon, comprising, reflecting, discussing, evidencing, mentioning, referring to, consisting of, responding to, or having any logical or factual connection whatever with the subject matter in question.

16.    The term "claimed subject matter" of the Patent-in-Suit shall mean and include all products, processes, services, technology, implementations, uses, methods, and any other subject matter alleged to be covered by one or more claims of the Patent-in-Suit.

17.    The term "CCITT" means International Telegraph and Telephone Consultative Committee, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

18.    The term "ANSI" means American National Standards Institute, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

19.    The term "ISO" means International Organization for Standardization, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

20.    The term "IEC" means International Electrotechnical Commission, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

21.    The term "BSI" means British Standards Institution, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

22.    The meaning of "JPEG Standard" shall include International Standard ISO/IEC 10918-1 (the "ISO standard"), International Telecommunication Union CCITT Recommendation T.81 (the "CCITT standard"), and all national standards body versions, equivalents, or variations of the ISO standard or the CCITT standard.

23.    "MPEG Standard" shall mean any and/or all of the international standards for compression, decompression, processing, and coded representation of moving picture, audio and their combination including those developed by the ISO, IEC and CCITT.

24.    "ESPRIT" means the information technologies program managed by the Directorate General for Industry of The European Commission.

25.    The term "Accused Product(s)" means each apparatus, product, device, process, method, act, service or other instrumentality that Philips contends infringes the Patent-in-Suit, whether such infringement is alleged to be direct, under the doctrine of equivalents, induced or contributory.

**INSTRUCTIONS:**

1.    These requests shall apply to all documents in your possession, custody or control at the present time or coming into your possession, custody or control prior to the date of the production. If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody or control, you shall so state and shall identify such documents or things, and the person who has possession, custody or control of the documents or things.

2.    If no documents are responsive to a particular request, you are to state that no responsive documents exist.

3.    For any responsive documents or tangible things that have been lost, destroyed or withheld from production based on any ground, you shall provide a written statement setting forth:

        a.    the identity of the document;

        b.    the nature of the document (e.g., letter, memorandum, chart)

        c.    the identity of the person(s) who received copies of the document;

        d.    the date of the document;

        e.    a brief description of the subject matter of the document; and

      f.      the circumstances of the loss or destruction of the document and

      g.      any fact, statute, rule or decision upon which you rely in withholding the document.

    4.    If you decline to produce any document or part thereof based on a claim of privilege or any other claim, provide, a privilege log which identifies each document separately and specifies for each document at least the following:

      a.      the date;

      b.      the sender(s) identified by position and entity with which they are employed or associated and, if any sender is an attorney, a statement so stating and, if any sender is a foreign patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

      c.      the recipient(s), including copy recipients, identified by position and entity with which they are employed or associated and, if any recipient is an attorney, a statement so stating and, if any recipient is a foreign patent agent, a statement so stating and, if any recipient is a foreign patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

      d.      the general subject matter of the document;

      e.      the portion(s) of the document as to which privilege is claimed; and

      f.      the type of privilege asserted as well as a certification that all elements of the claimed privilege have been met and not waived.

    5.    All documents requested are to be produced in the same file or other organizational environment in which they are maintained.  For example, a document that is

part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original. Alternatively, as to each document and thing produced in response hereto, you shall identify the request for production and where applicable, the interrogatory number, in response to which the document or thing is being produced.

6.    These requests seek all responsive documents in their original language and, if such original language is not English, these requests also seek all English-language translations that may exist for any such documents.

7.    You shall keep and produce a record of the source of each document produced. This shall include the name and location of the file where each document was located and the name of the person, group or department having possession, custody or control of each document.

8.    Electronic records, computerized information and/or electronically stored information requested herein must be produced in its "native file" format and all metadata associated with such electronically stored information must be preserved and produced as required by Federal Rule of Civil Procedure 34.

**DOCUMENT REQUESTS**:

Any and all documents pertaining or relating to:

1.    The JPEG Standard, including the development, establishment, and adoption thereof.

2.    Any investigation, testing, or analysis of the JPEG Standard conducted by or on behalf of Philips.

3.    Any analysis, review, inspection, test, or observation for the purpose of determining whether any claims of the Patent-in-Suit or the Related Philips Patents cover the JPEG Standard.

4.    The MPEG Standard, including the development, establishment, and adoption thereof.

5.    Any analysis, review, inspection, test, or observation for the purpose of determining whether any claims of the Patent-in-Suit or the Related Philips Patents cover the MPEG Standard.

6.    Philips' dealings or interaction with, participation in, and/or observation of any activity associated with any of the organizations (including their members) responsible for establishing the JPEG Standard, including but not limited to correspondence, communications, memos, reports, statements, and records of meetings.

7.    Philips' dealings or interaction with, participation in, and/or observation of any activity associated with any of the organizations (including their members) responsible for establishing the MPEG Standard, including but not limited to correspondence, communications, memos, reports, statements, and records of meetings.

8.    The ISO and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

9.     The CCITT and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

10.     The ANSI and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

11.     The IEC and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

12.     The BSI and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

13.     Philips' participation in the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups including without limitation those involving development and adoption of the JPEG and MPEG Standards.

14.     Philips' correspondence and other communications with the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups, and/or members of those committees and groups.

15.     The Adaptive Discrete Cosine Transform method.

16.     Adaptive binary arithmetic coding or the Q Coder.

17.     Generalized block truncated coding.

18.     Bylaws and rules of the ISO, CCITT, ANSI, IEC, and BSI including any of their standard-setting committees and groups and including without limitation patent and patent application disclosure policies, requests or rules (express or implied).

19.     Identification, disclosure, or non-disclosure of any patents or patent applications to the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups, and/or members of those committees and groups.

20.    Any image or data compression project concerning or associated with ESPRIT.

21.    Communications including without limitation those internal to Philips relating to development or approval of the JPEG Standard.

22.    Communications including without limitation those internal to Philips relating to development or approval of the MPEG Standard.

23.    Patent or patent application disclosure policies, rules, or requests, either express or implied, of standards-setting committees including without limitation the JPEG and MPEG Standards related committees of the ISO, CCITT, ANSI, IEC, and BSI.

24.    Communications relating to or involving in any way Peter Vogel.

25.    Your knowledge of the Patent-in-Suit, the Philips Application, the Related Philips Patents and/or any Related Philips Patent Applications.

**CERTIFICATE OF SERVICE**

I, Francis DiGiovanni, hereby certify that on February 2, 2007, copies of the foregoing

document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

**BY UNITED STATES MAIL AND E-MAIL:**

Thomas W. Winland
Steven M. Anzalone
Frank A. DeCosta, III
Finnegan Henderson Farabow Garrett and Dunner LLP
901 New York Avenue, NW
Washington, DC 20001

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00251-GMS |
| v. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF DEPOSITION AND REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS OF U. ROTHGORDT**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30, counsel

for Eastman Kodak Company ("Kodak") will take the deposition upon oral examination of U.

Rothgordt, employee of Philips Kommunikations Industrie AG and representative to the

International Telegraph and Telephone Consultative Committee ("CCITT"). The deposition will

begin at 9:00 a.m. on April 6, 2007 at the offices of DLA Piper US LLP, 401 B Street, Suite

1700, San Diego, CA 92101-4297. The deposition will continue from day to day until

completed.

The deposition will be conducted pursuant to Federal Rule of Civil Procedure 30 and will

be taken before an officer, notary public, or other person authorized to administer oaths and may

be videotaped. The deposition will be taken for the purposes of discovery, for use at trial in this

matter, and for any purposes permitted under the Federal Rules of Civil Procedure.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Federal Rules of Civil

Procedure 30(b)(5) and 34, Kodak requests that U. Rothgordt and U.S. Philips Corporation

produce the documents and things in their possession, custody or control requested in Schedule

A, at 9:00 a.m. on March 5, 2007, at the law offices of DLA Piper US LLP, 401 B Street, Suite

1700, San Diego, CA 92101-4297.

Dated: _Feb 2_, 2007

Francis DiGiovanni (#3189)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
e-mail: fdigiovanni@cblh.com

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
Jesse Hindman
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701
Attorneys for Defendant
Eastman Kodak Company

## SCHEDULE A

**DEFINITIONS:**

    1.    "Kodak" means Defendant Eastman Kodak Company, including its predecessors, successors, assigns, past and present subsidiaries, divisions, affiliates, officers, directors, agents and employees, attorneys and other persons acting on its behalf.

    2.    "Philips" means U.S. Philips Corporation including its predecessors, successors, assigns, past and present subsidiaries, past and present corporate parents, past or present subsidiaries of its corporate parents, divisions, affiliates, officers, directors, agents and employees, attorneys and other persons acting on its behalf, including Royal Philips Electronics, Philips Kommunikations Industrie AG (Germany), Philips Research Laboratories (United Kingdom), Philips Data Systems, Philips International B.V. (Netherlands), Philips Telecommuicatie Industrie (Netherlands), Philips Consumer Electronics B.V. (Netherlands), Philips Patentverwaltung GmbH, and N. V. Philips' Gloeilampenfabrieken.

    3.    "You" and "Your" shall refer to U. Rothgordt.

    4.    The terms "communication" or "communications" shall mean any transfer or exchange between two or more persons of any information whether by written, oral, electronic or other means, including but not limited to personal conversations, correspondence, electronic mail, telephone calls, facsimile communications, or telegrams. A draft or non-identical copy is a separate document within the meaning of this term.

    5.    The term "document" shall have the broadest meaning possible within the broad context of the Federal Rules of Civil Procedure, and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of notations or markings) or any and all other written, printed, typed, punched, taped, filmed or graphic matter or recorded or tangible thing, of whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data), and shall include all attachments to and enclosures with any requested item, to which they are attached or

with which they are enclosed, and each draft thereof. The term document includes for example, but is not limited to: correspondence, telegrams, memoranda, communications, minutes or records of meetings and conferences, lists of persons attending meetings or conferences, summaries, records of conversations, drafts, notes, notebooks, logs, test results, invention records and disclosures, translations, drawings, graphs, charts, photographs, data compilations, computer records or printouts, change orders, schematics, engineering reports, mockups, models, bread boards, prototypes, specifications, reports, service manuals, operational manuals, component lists, opinions, summaries, agreements, forecasts, plan drawings, mask works, engineering drawings, expressions or statements of policy, consultations, brochures, pamphlets, advertisements, publications, circulars, trade letters, press releases, convention materials, drafts of any documents, revisions of drafts of any documents, whether printed, recorded, written by hand, stored electronically or on computer disc or in some other tangible medium of expression from which the information can be retrieved, perceived or understood and specifically includes electronically stored information and other documents and information that may exist only in electronic form. Kodak requests that any and all electronic records, computerized information and/or electronically stored information requested herein be produced in its "native file" format and that all metadata associated with such electronically stored information be preserved and produced.

      6.    The terms "person" or "persons" mean any individual, corporation, proprietorship, partnership, association, agency, or any other entity.

      7.    "Infringe" and "Infringement" refer to direct Infringement, contributory Infringement, inducement of Infringement, literal Infringement, and/or Infringement by the doctrine of equivalents.

      8.    "Prior Art" has the same meaning as used in 35 U.S.C. § 103, including without limitation any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in 35 U.S.C. § 102, taken singly or in combination.

      9.    The terms "all" and "any" both mean "any and all."

10. The singular includes the plural and vice versa; the words "and" and "or" shall be interpreted in either the conjunctive or disjunctive sense to bring within the scope of the request the broadest number of documents or things and greatest amount of information. The word "including" shall not be used to limit any general category or description that precedes it.

11. The terms "the Patent-in-Suit" and the "'075 patent" mean United States Patent No. 4,901,075.

12. The term "Philips Application" means any and all applications for the Patent-in-Suit, any continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, and any other applications disclosing, describing, or claiming any invention disclosed, described, or claimed in the Patent-in-Suit, whether or not abandoned and whether or not issued.

13. The term "Related Philips Patents" means any U.S. or foreign patents corresponding to or related in any way to the Patent-in-Suit, the invention disclosed in the Patent-in-Suit or any other patent related to video compression technology assigned in whole or in part to Philips, including any corrections and certificates of reexamination and including without limitation European Patent No. 0 260 748 B1.

14. The term "Related Philips Patent Applications" means any U.S. or foreign patent applications that led to or matured into any of the Related Philips Patents, and any U.S. or foreign patent application from or through which the Patent-in-Suit or any of the Related Philips Patents claim priority, and any predecessors, continuations, divisionals or continuations-in-part of any of the foregoing patent applications (including any rejected, abandoned or pending applications).

15. The phrases "relating to," "relate to" or "related to" shall mean embodying, pertaining, concerning, involving, constituting, commenting upon, comprising, reflecting, discussing, evidencing, mentioning, referring to, consisting of, responding to, or having any logical or factual connection whatever with the subject matter in question.

16.    The term "claimed subject matter" of the Patent-in-Suit shall mean and include all products, processes, services, technology, implementations, uses, methods, and any other subject matter alleged to be covered by one or more claims of the Patent-in-Suit.

17.    The term "CCITT" means International Telegraph and Telephone Consultative Committee, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

18.    The term "ANSI" means American National Standards Institute, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

19.    The term "ISO" means International Organization for Standardization, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

20.    The term "IEC" means International Electrotechnical Commission, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

21.    The term "BSI" means British Standards Institution, including its past and present groups, subgroups, committees, working groups, technical committees, ad hoc committees, members, agents, employees, attorneys and other persons acting on its behalf.

22.    The meaning of "JPEG Standard" shall include International Standard ISO/IEC 10918-1 (the "ISO standard"), International Telecommunication Union CCITT Recommendation T.81 (the "CCITT standard"), and all national standards body versions, equivalents, or variations of the ISO standard or the CCITT standard.

23.    "MPEG Standard" shall mean any and/or all of the international standards for compression, decompression, processing, and coded representation of moving picture, audio and their combination including those developed by the ISO, IEC and CCITT.

24.    "ESPRIT" means the information technologies program managed by the Directorate General for Industry of The European Commission.

25.    The term "Accused Product(s)" means each apparatus, product, device, process, method, act, service or other instrumentality that Philips contends infringes the Patent-in-Suit, whether such infringement is alleged to be direct, under the doctrine of equivalents, induced or contributory.

**INSTRUCTIONS:**

1.    These requests shall apply to all documents in your possession, custody or control at the present time or coming into your possession, custody or control prior to the date of the production.  If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody or control, you shall so state and shall identify such documents or things, and the person who has possession, custody or control of the documents or things.

2.    If no documents are responsive to a particular request, you are to state that no responsive documents exist.

3.    For any responsive documents or tangible things that have been lost, destroyed or withheld from production based on any ground, you shall provide a written statement setting forth:

      a.    the identity of the document;

      b.    the nature of the document (e.g., letter, memorandum, chart)

      c.    the identity of the person(s) who received copies of the document;

      d.    the date of the document;

      e.    a brief description of the subject matter of the document; and

  f.  the circumstances of the loss or destruction of the document and

  g.  any fact, statute, rule or decision upon which you rely in

withholding the document.

  4.  If you decline to produce any document or part thereof based on a claim of

privilege or any other claim, provide, a privilege log which identifies each document separately

and specifies for each document at least the following:

  a.  the date;

  b.  the sender(s) identified by position and entity with which they are

employed or associated and, if any sender is an attorney, a statement so stating and, if any sender

is a foreign patent agent, a statement so stating and a statement as to whether the laws of the

agent's country grant privileged status to a patent agent's communications;

  c.  the recipient(s), including copy recipients, identified by position

and entity with which they are employed or associated and, if any recipient is an attorney, a

statement so stating and, if any recipient is a foreign patent agent, a statement so stating and, if

any recipient is a foreign patent agent, a statement so stating and a statement as to whether the

laws of the agent's country grant privileged status to a patent agent's communications;

  d.  the general subject matter of the document;

  e.  the portion(s) of the document as to which privilege is claimed;

and

  f.  the type of privilege asserted as well as a certification that all

elements of the claimed privilege have been met and not waived.

  5.  All documents requested are to be produced in the same file or other

organizational environment in which they are maintained.  For example, a document that is

part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original.  Alternatively, as to each document and thing produced in response hereto, you shall identify the request for production and where applicable, the interrogatory number, in response to which the document or thing is being produced.

6.      These requests seek all responsive documents in their original language and, if such original language is not English, these requests also seek all English-language translations that may exist for any such documents.

7.      You shall keep and produce a record of the source of each document produced. This shall include the name and location of the file where each document was located and the name of the person, group or department having possession, custody or control of each document.

8.      Electronic records, computerized information and/or electronically stored information requested herein must be produced in its "native file" format and all metadata associated with such electronically stored information must be preserved and produced as required by Federal Rule of Civil Procedure 34.

**DOCUMENT REQUESTS**:

Any and all documents pertaining or relating to:

      1.     The JPEG Standard, including the development, establishment, and adoption thereof.

      2.     Any investigation, testing, or analysis of the JPEG Standard conducted by or on behalf of Philips.

      3.     Any analysis, review, inspection, test, or observation for the purpose of determining whether any claims of the Patent-in-Suit or the Related Philips Patents cover the JPEG Standard.

      4.     The MPEG Standard, including the development, establishment, and adoption thereof.

      5.     Any analysis, review, inspection, test, or observation for the purpose of determining whether any claims of the Patent-in-Suit or the Related Philips Patents cover the MPEG Standard.

      6.     Philips' dealings or interaction with, participation in, and/or observation of any activity associated with any of the organizations (including their members) responsible for establishing the JPEG Standard, including but not limited to correspondence, communications, memos, reports, statements, and records of meetings.

      7.     Philips' dealings or interaction with, participation in, and/or observation of any activity associated with any of the organizations (including their members) responsible for establishing the MPEG Standard, including but not limited to correspondence, communications, memos, reports, statements, and records of meetings.

      8.     The ISO and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

9.    The CCITT and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

10.    The ANSI and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

11.    The IEC and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

12.    The BSI and its standards-setting committees and groups that dealt with image compression or data compression technology including without limitation those involving development and adoption of the JPEG or MPEG Standards.

13.    Philips' participation in the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups including without limitation those involving development and adoption of the JPEG and MPEG Standards.

14.    Philips' correspondence and other communications with the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups, and/or members of those committees and groups.

15.    The Adaptive Discrete Cosine Transform method.

16.    Adaptive binary arithmetic coding or the Q Coder.

17.    Generalized block truncated coding.

18.    Bylaws and rules of the ISO, CCITT, ANSI, IEC, and BSI including any of their standard-setting committees and groups and including without limitation patent and patent application disclosure policies, requests or rules (express or implied).

19.    Identification, disclosure, or non-disclosure of any patents or patent applications to the ISO, CCITT, ANSI, IEC, BSI and any of their standards-setting committees and groups, and/or members of those committees and groups.

20.    Any image or data compression project concerning or associated with ESPRIT.

21.    Communications including without limitation those internal to Philips relating to development or approval of the JPEG Standard.

22.    Communications including without limitation those internal to Philips relating to development or approval of the MPEG Standard.

23.    Patent or patent application disclosure policies, rules, or requests, either express or implied, of standards-setting committees including without limitation the JPEG and MPEG Standards related committees of the ISO, CCITT, ANSI, IEC, and BSI.

24.    Communications relating to or involving in any way Peter Vogel.

25.    Your knowledge of the Patent-in-Suit, the Philips Application, the Related Philips Patents and/or any Related Philips Patent Applications.

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on February 2, 2007, copies of the foregoing document were served on the following counsel of record in the manner indicated:

**BY HAND DELIVERY AND E-MAIL:**

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

**BY UNITED STATES MAIL AND E-MAIL:**

Thomas W. Winland
Steven M. Anzalone
Frank A. DeCosta, III
Finnegan Henderson Farabow Garrett and Dunner LLP
901 New York Avenue, NW
Washington, DC 20001

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

**EXHIBIT 2**



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

**JOYCE CRAIG-RIENT**
202.408.6013
joyce.craig-rient@finnegan.com

March 2, 2007

T. Jesse Hindman, Esq.                          **Via Electronic Mail**
DLA Piper                                   **Confirmation by U.S. Mail**
401 B Street
Suite 1700
San Diego, California 92101-4297

Re:    Status of Discovery and Depositions
       U.S. Philips v. Eastman Kodak, Civil Action No. 06-251-GMS

Dear Jesse:

I am writing to memorialize the substance of our telephone conversations regarding discovery and depositions in the above-referenced matter.

1.    Discovery

The parties agree to extend the due date for responses to written discovery requests from March 5, 2007, until April 6, 2007. This includes the responses to requests for documents and things under Rule 34 relating specifically to Dr. John Morris, Norman Richards, Simon Turner, C. Brandis, U. Rothgordt, Gerald Weth, and Karl-Heinz Wenzel .

2.    Depositions

The parties agree to postpone the 30(b)(6) deposition of U.S. Philips noticed by Kodak for March 28, 2007, until approximately 30 days from the date responses to written discovery requests are served as outlined above.

At the present time, the status of the deposition situation is as follows:

John Morris is currently employed by Philips. Philips will make Mr. Morris available in the United Kingdom at a time that is mutually convenient and agreeable to the parties within approximately 30 days from the date responses to written discovery requests are served.

Simon Turner and Norman Richards are retired employees of Philips. As such, Philips will make every effort to make them available in the United Kingdom at a time

T. Jesse Hindman, Esq.
March 2, 2007
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that is mutually agreeable and within approximately 30 days from the date responses to written discovery requests are served.  Philips is unable at this time to represent that Messrs. Turner and Richards will be available without service of process as they are not within Philips' control.

C. Brandis, U. Rothgordt, Gerald Weth, and Karl-Heinz Wenzel are not within the control of Philips.  As such, Kodak would have to independently effect service of process on these individuals to ensure their attendance at any deposition.

Sincerely,

Joyce Craig-Rient

Joyce Craig-Rient

JCR/bat

1295345_2.DOC