IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Civil Action No. 06-251-GMS |
| v. | ) ) | |
| EASTMAN KODAK COMPANY, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF U.S. PHILIPS CORPORATION'S
<u>FIRST NOTICE OF 30(b)(6) DEPOSITION TO KODAK</u>**

PLEASE TAKE NOTICE that beginning at 9:00 a.m. on August 30, 2007, in the offices of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 901 New York Ave., N.W., Washington, D.C. 20001, or at another time and place agreed upon by the parties, Plaintiff U.S. Philips Corporation ("Philips") shall take the deposition upon oral examination of Defendant, Eastman Kodak Company ("Kodak"). Kodak is directed to produce, pursuant to Fed. R. Civ. P. 30(b)(6), one or more of its officers, directors, managing agents, employees, or other designated persons to testify on its behalf with respect to the subject matters set forth in Schedule A, attached hereto.

The testimony derived pursuant to this Notice of Deposition shall be used for any and all appropriate purposes as provided by the Federal Rules of Civil Procedure and Evidence. Pursuant to Fed. R. Civ. P. 30(b)(2), the testimony may be recorded by sound and visual means in addition to stenographic means.

ASHBY & GEDDES

/s/ *Tiffany Geyer Lydon*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@asby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff U.S. Philips Corporation*

*Of Counsel*:

Thomas W. Winland
Steven N. Anzalone
Frank A. De Costa, III
Houtan K. Esfahani
Joyce Craig
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Dated:  August 17, 2007

183333.1

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1. All definitions set forth in Philips' previous discovery requests (*see, e.g.*, Philips' February 2, 2007, Requests for Production), including the definition of "Kodak," are incorporated as if set forth fully herein.

2. Additionally, for purposes of this Deposition Notice, the term "person" specifically refers to the present and past officers, employees, counsel, agents, consultants, and/or representatives of Kodak.

3. Additionally, for purposes of this Deposition Notice, the term "product" shall mean hardware and/or software, including firmware, and shall include, without limitation, all models, prototypes, and modifications thereof.

4. Additionally, for purposes of this Deposition Notice, "the identification of all JPEG image encoding products or services," requires the identification of all JPEG image encoding products or services made, used, sold, offered for sale, imported, exported, leased, licensed or distributed by or for Kodak from April 18, 2000, through the present, as well as the identification of all currently planned future JPEG image encoding products or services.

5. Additionally, for purposes of this Deposition Notice, the phrase "MPEG Standard" shall mean the standards for video and audio compression and for multimedia delivery developed by the Moving Picture Experts Group ("MPEG").

6. The term "document" is used herein in a comprehensive sense as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, including, but not limited to, software, firmware, source code, and electronic items such as email, compilations, and databases. Any original or copy of a document containing or having attached to it any alterations, notes, comments, or other material not included in the first document shall be deemed a separate document. Any English translation of a requested document shall be deemed a separate document.

7. The term "thing," as used in this Deposition Notice, has the same meaning prescribed in Rule 34 of the Federal Rules of Civil Procedure, and includes every kind of physical specimen or tangible item, other than a document, in the possession, custody, or control of Kodak.

8. The term "Relevant Products or Services" includes all JPEG image encoding products or services identified in any interrogatory answer (*see, e.g.*, Kodak's April 6, 2007, Responses to Philips' First Set of Interrogatories; Philips' April 6, 2007, Responses to Kodak's First Set of Interrogatories), and all JPEG image encoding products or services identified in response to Subject No. 1 of this Deposition Notice.

9. Kodak is instructed to bring representative organizational charts for Kodak for each year from 2000 to the present.

1

## **SUBJECTS OF THE DEPOSITION**

1. The identification (by product name, part number, model, manufacturer, designer, and supplier) of all Kodak's JPEG image encoding products or services that implement or utilize the baseline sequential mode of the JPEG Standard, ISO/IEC 10918-1, for the encoding of images (*see, e.g.*, Section 4.3 and Annex F).

2. The identification (by product name, part number, model, manufacturer, designer, and supplier) of any device, circuitry, chip, software (including firmware), module, or other component used in the products identified in Subject No. 1 to perform the baseline sequential mode of the JPEG Standard, ISO/IEC 10918-1, for the encoding of images.

3. For each Relevant Product or Service, the identification of all documents and things sufficient to describe the design, manufacture, configuration, and/or structure of any device, circuitry, chip, or other component that implements or performs DCT-based encoding of data according to the procedures set forth in Section 4.3 and/or F.1 of the JPEG Standard, ISO/IEC 10918-1, including but not limited to the following documents: specifications, schematics, block diagrams, hardware description language, board layouts, component lists, bills of materials, logic diagrams, circuit diagrams, logic simulation or emulation materials, engineering drawings, and test procedures.

4. For each Relevant Product or Service, the identification of all documents and things sufficient to describe the design, manufacture, configuration, and/or structure of any software, firmware, algorithm, or module that implements or performs DCT-based encoding of data according to the procedures set forth in Section 4.3 and/or F.1 of the JPEG Standard, ISO/IEC 10918-1, including but not limited to the following documents: specifications, flow charts, libraries, schematics, block diagrams, logic diagrams, test procedures, and computer program source code listings.

5. For all Relevant Products or Services, the identification of all documents and things sufficient to describe the function, use, or operation of any device, circuitry, software, firmware, algorithm, chip, or other module or component that implements or performs DCT-based encoding of data according to the procedures set forth in Section 4.3 and/or F.1 of the JPEG Standard, ISO/IEC 10918-1, including but not limited to the following documents: requirements specifications, functional specifications, service manuals, operator's or owner's manuals, installation manuals, reference manuals, customer network configurations, and white papers.

6. For all Relevant Products or Services, the identification of documents and things sufficient to show the protocols used, parameters evaluated, and/or results obtained for all tests, evaluations, diagnoses, or troubleshooting of any device, circuitry, chip, software (including firmware), module, or other component to perform the DCT-based encoding of data according to the procedures set forth in Section 4.3 and/or F.1 of the JPEG Standard, ISO/IEC 10918-1.

7.     For each Relevant Product or Service, an explanation of how the following encoding functions, set forth in the JPEG Standard, ISO/IEC 10918-1, (*see, e.g.*, Section 4.3 and Annex F) are performed:

    (a)     level shifting and forwarding the input data;

    (b)     quantizing the resulting coefficients;

    (c)     Huffman encoding of the DC coefficient; and

    (d)     Huffman encoding of the AC coefficients.

8.     The identification of each person or entity that has made any Relevant Product or Service.

9.     The identification of each person or entity that has sold, offered for sale, imported, exported, leased, licensed or distributed any Relevant Product or Service.

10.     The identification of the specific JPEG image encoding product(s) or service(s) made, sold, offered for sale, imported, exported, leased, licensed or distributed by each person or entity identified in Subject Nos. 8 and 9.

11.     The identification of all products that compete(d), or that will compete, with Relevant Products or Services.

12.     The identification of individuals at Kodak who are primarily responsible for the following functions and a general explanation of the duties, responsibilities, and activities of each identified person:

    (a)     Marketing, advertising, market research, market expectations, and forecasts for Relevant Products or Services and related products or services;

    (b)     Evaluation of competitors of Kodak, and competitive products to Relevant Products or Services and related products or services and markets;

    (c)     Accounting, finance, preparation of profit and loss statements, financial expectations, and forecasts regarding Relevant Products or Services and related products or services;

    (d)     Sales and pricing of Relevant Products or Services and related products or services;

    (e)     Licensing;

    (f)     Testing and evaluation of Relevant Products or Services and related products;

    (g)     Research, development, and design related to Relevant Products or Services and related products;

    (h)     Procurement of components used in Relevant Products or Services and related products;

  (i)  Manufacturing of Relevant Products or Services and related products;

  (j)  Design and coding of source code, firmware, hardware description language, and software regarding Relevant Products or Services and related products; and

  (k)  Formulation and negotiation of agreements, contracts, licenses, and understandings with suppliers of components used in Relevant Products or Services and related products.

13. The identification of the types and names of all reports, documents, and things that individuals receive, review, use, and/or produce in performing the following functions:

  (a)  Marketing, advertising, market research, market expectations, and forecasts for Relevant Products or Services and related products or services;

  (b)  Evaluation of competitors of Kodak, and competitive products to Relevant Products or Services and related products or services and markets;

  (c)  Accounting, finance, preparation of profit and loss statements, financial expectations, and forecasts regarding Relevant Products or Services and related products or services;

  (d)  Sales and pricing of Relevant Products or Services and related products or services;

  (e)  Licensing;

  (f)  Testing and evaluation of Relevant Products or Services and related products;

  (g)  Research, development, and design related to Relevant Products or Services and related products;

  (h)  Procurement of components used in Relevant Products or Services and related products;

  (i)  Manufacturing of Relevant Products or Services and related products;

  (j)  Design and coding of source code, firmware, hardware description language, and software regarding Relevant Products or Services and related products; and

  (k)  Formulation and negotiation of agreements, contracts, licenses, and understandings with suppliers of components used in Relevant Products or Services and related products.

14. Kodak's participation in standards-setting committees, including the JPEG and MPEG Standards-related committees of the ISO, CCITT, ANSI, and BSI.

15. Kodak's knowledge of, participation in, and/or involvement in the development and adoption of MPEG Standards, including the related committees of the ISO, CCITT,

ANSI, and BSI, including Kodak's attendance at meetings of the standards organizations, knowledge of statements made at meetings regarding disclosure of patents, and patent-related discussions with Philips personnel at meetings.

16. Kodak's knowledge of, participation in, and/or involvement in the development and adoption of JPEG Standards, including the related committees of the ISO, CCITT, ANSI, and BSI, including Kodak's attendance at meetings of the standards organizations, knowledge of statements made at meetings regarding disclosure of patents, and patent-related discussions with Philips' personnel at meetings.

17. Kodak's knowledge of, participation in, and/or involvement in any standards-setting organizations alleged to be related to the subject matter of the Patent-in-Suit, the application resulting in the Patent-in-Suit, or any related patents and patent applications, including the JPEG and MPEG Standards-related committees of the:

    (a) ISO;

    (b) CCITT;

    (c) ANSI; and

    (d) BSI.

18. Kodak's practices in voting at standards-setting organizations in the early 1990s, where patents were disclosed and offered for license under reasonable and non-discriminatory ("RAND") terms.

19. Kodak's practices for searching for and disclosing its own patents and patent applications to standards-setting organizations in the early 1990s.

20. All of Kodak's U.S. or foreign patents or patent applications that potentially cover any MPEG Standards.

21. When anyone at Kodak first learned that any Kodak patent or patent application potentially covered any MPEG Standards.

22. All of Kodak's U.S. or foreign patents or patent applications that potentially cover any JPEG Standards.

23. When anyone at Kodak first learned that any Kodak patent or patent application potentially covered any JPEG Standards.

24. Kodak's consideration and taking of any licenses offered on a RAND basis in connection with any MPEG Standards.

25. Kodak's consideration and taking of any licenses offered on a RAND basis in connection with any JPEG Standards.

26. Any "freedom to operate" or clearance opinion or analysis of patents obtained or conducted by or for Kodak before the introduction of any Relevant Product or Service into the market.

27. Bylaws and rules including patent and patent application disclosure policies, requests or rules (express or implied) of the MPEG Standards-related committees of the:

    (a) ISO;

    (b) CCITT;

    (c) ANSI; and

    (d) BSI.

28. Bylaws and rules, including patent and patent application disclosure policies, requests or rules (express or implied) of the JPEG Standards-related committees of the:

    (a) ISO;

    (b) CCITT;

    (c) ANSI; and

    (d) BSI.

29. Identification, disclosure, or non-disclosure of any patents or patent applications by Kodak to:

    (a) ISO;

    (b) CCITT;

    (c) ANSI; and

    (d) BSI.

30. When Kodak first learned of the Patent-in-Suit or any of its counterparts.

31. Kodak's knowledge of Philips' offer to license the Patent-in-suit on RAND terms and Kodak's consideration of such offer.

32. The organizational structure of Kodak including, but not limited to, the engineering, research and development, marketing, sales, licensing, and/or customer service divisions and departments of Kodak, for each year from 2000 to the present including, but not limited to, the officers, directors, supervisors and/or managers of such divisions and departments.

33. The location and identity of all documents and things searched, considered, identified, reviewed, or collected in responding to Philips' interrogatories, document requests, and this Deposition Notice.

34. The persons who searched, considered, identified, reviewed, or collected any documents or things in determining Kodak's responses to Philips' interrogatories, document requests, and this Deposition Notice.

35. The factual bases for Kodak's April 6, 2007, responses to Philips' First Set of Interrogatories.

36. The factual bases for the First Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

37. The factual bases for the Third Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

38. The factual bases for the Fourth Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

39. The factual bases for the Fifth Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

40. The factual bases for the Sixth Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

41. The factual bases for the Seventh Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

42. The factual bases for the Eighth Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

43. The factual bases for the Ninth Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

44. The factual bases for the Tenth Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

45. The factual bases for the Eleventh Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

46. The factual bases for the Twelfth Defense raised in Kodak's Answer and Counterclaims, dated October 17, 2006.

47. The identification, collection, storage, and organization of the electronically-stored information referred to in Kodak's August 9, 2007, letter from Nikki Wyll of DLA Piper to Joyce Craig of Finnegan, Henderson, Farabow, Garrett, & Dunner L.L.P., including, but not limited to, the sources of the electronically-stored information, the volume of the

electronically-stored information, the types of the electronically-stored information, any databases, networks, computers, or servers that contain or house the electronically-stored information, any software components or packages, including database software, used by or required to read the electronically-stored information, and the particular requests for documents and things made by Philips on February 2, 2007, to which the electronically-stored information is responsive.

48. The persons, both inside and outside of Kodak, contacted or consulted in determining Kodak's responses to Philips' interrogatories, document requests, and this Deposition Notice.

49. The policies regarding retention or destruction of documents and things at Kodak and the persons responsible for developing, managing, revising, and enforcing those policies.