IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT I 3b:**

**FINAL JURY INSTRUCTIONS [PATENT]**

Plaintiff and Counterclaim Defendant U.S. Philips Corporation ("Philips") and Defendant

and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") submit the following proposed

final jury instructions and objections as of March 3, 2008.  The parties reserve the right to submit

modifications to these instructions and/or additional instructions on any pertinent issue.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Of counsel:*

Thomas W. Winland
Steven M. Anzalone
Frank A. De Costa, III
Kenneth M. Frankel

CONNOLLY BOVE LODGE & HUTZ LLP

Francis DiGiovanni (I.D. #3189)
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
(302) 658-9141
fdigiovanni@chlh.com

*Of counsel:*

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
Jesse Hindman
DLA PIPER US LLP

Joyce Craig
Matthew Levy
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

*Attorneys for Plaintiff*

401 B Street, Suite 1700
San Diego, CA  92101-4297
(619) 699-2700

*Attorneys for Defendant*

### FINAL JURY INSTRUCTIONS TABLE OF CONTENTS

1.  GENERAL INSTRUCTIONS .......................................................................... 1
    1.1  INTRODUCTION [AGREED] ............................................................ 1
    1.2  JURORS' DUTIES [AGREED] ............................................................ 2
    1.3  BURDENS OF PROOF [DISPUTED] ................................................. 3
    1.4  EVIDENCE DEFINED [AGREED] ..................................................... 6
    1.5  CONSIDERATION OF EVIDENCE [AGREED] ............................... 8
    1.6  DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED] .......... 9
    1.7  CREDIBILITY OF WITNESSES [AGREED] ................................... 10
    1.8  NUMBER OF WITNESSES [AGREED] ........................................... 12
    1.9  EXPERT TESTIMONY [AGREED] ................................................. 13
2.  THE PARTIES' CONTENTIONS .................................................................. 14
    2.1  THE PARTIES [AGREED]................................................................. 14
    2.2  PHILIPS' CONTENTIONS [DISPUTED]......................................... 15
    2.3  KODAK'S CONTENTIONS [DISPUTED]........................................ 18
    2.4  SUMMARY OF PATENT ISSUES [DISPUTED] ............................ 21
3.  INFRINGEMENT............................................................................................ 26
    3.1  CLAIM INFRINGEMENT [AGREED]............................................. 26
    3.2  CONSTRUCTION OF CLAIMS [AGREED].................................... 27
    3.3  DEPENDENT AND INDEPENDENT CLAIMS [AGREED]............ 31
    3.4  PATENT INFRINGEMENT—GENERALLY [AGREED] ............... 32
    3.5  DIRECT INFRINGEMENT [AGREED] ........................................... 33
    3.6  INDIRECT INFRINGEMENT [AGREED] ....................................... 34
          3.6.1  INDUCING PATENT INFRINGEMENT [AGREED]........... 35
          3.6.2  CONTRIBUTORY INFRINGEMENT [AGREED] ............... 36
    3.7  LITERAL INFRINGEMENT [AGREED] ......................................... 37
    3.8  DOCTRINE OF EQUIVALENTS [AGREED].................................. 38
    3.9  INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR
          PATENTS ON IMPROVEMENTS [AGREED]................................... 40
4.  VALIDITY DEFENSES................................................................................... 46
    4.1  ANTICIPATION [DISPUTED] ......................................................... 46
    4.2  WHAT IS PRIOR ART [AGREED] ................................................. 50
          4.2.1  PRINTED PUBLICATIONS AS PRIOR ART [AGREED].... 51

          4.2.2   PRIOR UNITED STATES PATENT APPLICATION [DISPUTED] ................................................................. 53

          4.2.3   PRIOR PUBLIC USE/SALE [DISPUTED] ............................ 56

          4.2.4   REFERENCES DESCRIBING THE INVENTOR'S WORK [AGREED] ............................................................... 58

     4.3   OBVIOUSNESS [AGREED] ................................................ 59

          4.3.1   SCOPE AND CONTENT OF THE PRIOR ART [AGREED] .............. 60

          4.3.2   DIFFERENCES OVER THE PRIOR ART [AGREED] ........................ 62

          4.3.3   LEVEL OF ORDINARY SKILL [AGREED] ....................... 63

          4.3.4   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS) [AGREED] .............................. 64

5.     STANDARDS SETTING CLAIMS AND DEFENSES ................................ 65

     5.1   EQUITABLE ESTOPPEL [DISPUTED] ............................................ 65

     5.2   FRAUD [DISPUTED] ....................................................................... 67

     5.3   NEGLIGENT MISREPRESENTATION [DISPUTED] .................................... 71

     5.4   DAMAGES – FRAUD OR NEGLIGENT MISREPRESENTATION [DISPUTED] ................................................................... 75

     5.5   DECEPTIVE TRADE PRACTICES [DISPUTED] ............................................ 77

6.     DAMAGES - INFRINGEMENT ................................................................. 80

     6.1   COMPENSATORY DAMAGES IN GENERAL [AGREED] ........................... 80

     6.2   REASONABLE CERTAINTY [DISPUTED] .................................... 81

     6.3   ENTIRE MARKET VALUE RULE [AGREED] ................................... 83

     6.4   REASONABLE ROYALTY AS A MEASURE OF DAMAGES [DISPUTED] ...................................................................... 84

     6.5   FACTORS FOR DETERMINING REASONABLE ROYALTY [AGREED] ...................................................................... 86

     6.6   LACHES [DISPUTED] ................................................................... 88

     6.7   CURATIVE INSTRUCTION [AGREED] ............................................ 90

7.     DELIBERATION AND VERDICT ................................................................. 91

     7.1   INTRODUCTION [AGREED] ................................................................. 91

     7.2   UNANIMOUS VERDICT [AGREED] ............................................ 92

     7.3   DUTY TO DELIBERATE [AGREED] ............................................ 93

     7.4   COURT HAS NO OPINION [AGREED] ............................................ 94

## 1.     GENERAL INSTRUCTIONS

## 1.1     INTRODUCTION [AGREED]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

**Source:**     Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (March 1993) ("Uniform Instructions") § 1.1; *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 829 (D. Del. 1995); Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia Tech. Inc. v. Cisco Sys. Inc.*, 04-876-GMS (D.I. 343) § 1.1.

.

## 1.2    JURORS' DUTIES [AGREED]

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you and apply it to the facts. It is my job to instruct you about the law and about what the claims of the patent mean, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Source:**    Adapted from Uniform Instructions § 1.2; *CellPro*, 894 F. Supp. at 829; Miscellaneous Jury Instructions (GMS) Rev. 1/18/06; *Telcordia,* 04-876-GMS (D.I. 343) § 1.2.

### 1.3    BURDENS OF PROOF [DISPUTED]

[PHILIPS' INSTRUCTION]

This is a civil case in which the plaintiff, Philips, is charging the defendant, Kodak, with patent infringement. Philips alleges that Kodak has infringed the asserted claims of Philips' patent. Philips has the burden of proving patent infringement by a preponderance of the evidence. That means that Philips has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Philips claims is more likely true than not. To put it differently, if you were to put Philips' and Kodak's evidence relating to infringement on the opposite sides of a scale, the evidence supporting Philips' claims would have to make the scales tip somewhat on Philips' side.

Philips further alleges that Kodak's infringement has been willful. Philips has the burden of proving that the Kodak's infringement was willful by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Kodak is alleging that Philips' patent is invalid. A patent, however, is presumed to be valid. Accordingly, Kodak has the burden of proving that Philips' patent is invalid by clear and convincing evidence.

Kodak also contends that it had a license to practice the '075 patent for digital still imaging, and that Philips engaged in fraud, negligent misrepresentation, and deceptive trade practices, which Kodak has the burden of proving by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiff or defendant has met

3

its burden of proof.

**Source:**        Adapted from Uniform Instructions § 1.3; *CellPro*, 894 F. Supp. at 829;

*Telcordia,* 04-876-GMS (D.I. 343) § 1.3.

**[KODAK'S OBJECTION]**

Kodak  objects  on  the  grounds  that  Philips' proposed  instruction  fails  to  include or

 mention Kodak's affirmative defenses of equitable estoppel and laches.   Although Kodak

acknowledges these are equitable issues, given the substantial factual and evidentiary overlap

with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being

presented  before  the  jury  for  advisory  verdicts  would  promote  judicial  economy.    Kodak

respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

This is a civil case in which the plaintiff, Philips, is charging the defendant, Kodak, with

patent infringement.  Philips alleges that Kodak has infringed the asserted claims of the '075

patent.  Philips has the burden of proving patent infringement by a preponderance of the

evidence.  That means that Philips has to produce evidence which, when considered in light of all

of the facts, leads you to believe that what Philips claims is more likely true than not.  To put it

differently, if you were to put Philips' and Kodak's evidence relating to infringement on the

opposite sides of a scale, the evidence supporting Philips' claims would have to make the scales

tip somewhat on Philips' side.

Philips further alleges that Kodak's infringement has been willful.  Philips has the burden

of proving that Kodak's infringement was willful by clear and convincing evidence.  Clear and

convincing evidence is evidence that produces an abiding conviction that a factual contention is

true.  Proof by clear and convincing evidence is thus a higher burden than proof by a

preponderance of the evidence.

In this case, Kodak alleges that the '075 patent is invalid.  A patent, however, is presumed to be valid.  Accordingly, Kodak has the burden of proving that the '075 patent is invalid by clear and convincing evidence.

Kodak also contends Philips engaged in fraud, negligent misrepresentation, and deceptive trade practices.  Kodak further contends that the '075 patent is unenforceable against Kodak based on equitable estoppel, and that Philips' damages are limited by the legal doctrine of laches. Kodak has the burden of proving these claims and defenses by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiff or defendant has met its burden of proof.

**Source:**      Adapted from Uniform Instructions § 1.3; *CellPro*, 894 F. Supp. at 829; *Telcordia,* 04-876-GMS (D.I. 343) § 1.3.

### [PHILIPS' OBJECTION]

Philips objects to the inclusion of equitable estoppel and laches in the jury instructions, which are equitable issues for the Court to decide  *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50).

5

## 1.4    EVIDENCE DEFINED [AGREED]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was read to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed. Certain charts, summaries, and graphics have been used to illustrate testimony from witnesses. These charts, summaries, and graphics are not themselves evidence, and are only as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown had I admitted it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

6

**Source:**     Uniform Instructions § 1.4; *CellPro*, 894 F. Supp. at 830; *Telcordia,* 04-876-GMS (D.I. 343) § 1.4.

### 1.5    CONSIDERATION OF EVIDENCE [AGREED]

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

**Source:**    Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; Uniform Instructions § 1.5;
*CellPro*, 894 F. Supp. at 830; *Telcordia,* 04-876-GMS (D.I. 343) § 1.5.

## 1.6     DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED]

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Source:**     Uniform Instructions § 1.6; *CellPro*, 894 F. Supp. at 830; Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia,* 04-876-GMS (D.I. 343) § 1.6.

### 1.7    CREDIBILITY OF WITNESSES [AGREED]

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you cannot do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial.  You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

**Source:**      Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia*, 04-876-GMS
(D.I. 343) § 1.7.

## 1.8    NUMBER OF WITNESSES [AGREED]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**Source:**    Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; Uniform Instructions § 1.8; *CellPro*, 894 F. Supp. at 830-31; *Telcordia,* 04-876-GMS (D.I. 343) § 1.8.

## 1.9    EXPERT TESTIMONY [AGREED]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**Source:**      Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia,* 04-876-GMS (D.I. 343) § 1.9.

## 2.    THE PARTIES' CONTENTIONS

### 2.1    THE PARTIES [AGREED]

The plaintiff and counterclaim defendant is U.S. Philips Corporation.  U.S. Philips Corporation asserts that it owns United States Patent No. 4,901,075.  The defendant and counterclaim plaintiff in this case is Eastman Kodak Company.  For convenience, I will refer to the plaintiff and counterclaim defendant as Philips and the defendant and counterclaim plaintiff as Kodak.  As I noted at the start of the trial, I will refer to the asserted patent by its last three numbers: the '075 patent.

**Source:**      Adapted from Uniform Instructions § 2.1; *Telcordia*, 04-876-GMS (D.I. 343) § 2.1.

## 2.2    PHILIPS' CONTENTIONS [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Philips contends that Kodak has infringed claims 3, 4, 7, 8, and 11 of Philips' '075 patent by making, using, selling and offering for sale image encoding products that fall within or perform methods falling within the scope of one or more of those claims, and by inducing and contributing to infringement by others.

Philips contends that Kodak's infringement of the '075 patent is willful.

Philips contends that it has been damaged by Kodak's infringement of the '075 patent, and that Philips is thus entitled to, among other things, an award of a reasonable royalty, as provided by statute.

Philips contends that none of the asserted claims of the '075 patent is invalid or unenforceable for any of the reasons alleged by Kodak.

Philips contends that Kodak's claims and defenses of negligent misrepresentation, fraud, and deceptive trade practices are not supported by the facts and should be rejected.

**Source:**    Adapted from Uniform Instructions § 2.2; *Telcordia,* 04-876-GMS (D.I. 343) § 2.2.

**[KODAK'S OBJECTIONS]**

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

Philips contends that Kodak has infringed claims 3, 4, 7, 8, and 11 of Philips' '075 patent by making, using, selling and offering for sale image encoding products that fall within or perform methods falling within the scope of one or more of those claims, and by inducing and contributing to infringement by others.

Philips contends that Kodak's infringement of the '075 patent was willful.

Philips contends that it has been damaged by Kodak's infringement of the '075 patent, and that Philips is thus entitled to, among other things, an award of a reasonable royalty.

Philips contends that none of the asserted claims of the '075 patent is invalid or unenforceable for any of the reasons alleged by Kodak.

Philips contends that Kodak's claims and defenses of fraud, equitable estoppel, negligent misrepresentation, deceptive trade practices and laches are not supported by the facts and should be rejected.

**Source:**    Adapted from Uniform Instructions § 2.2; *Telcordia,* 04-876-GMS (D.I. 343) § 2.2.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches in the jury instructions, which are equitable issues for the Court to decide.  *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992)))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson*

*v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D.

Pa. June 29, 2007) (*citing Cox*, 894 F.2d at 649-50).

## 2.3    KODAK'S CONTENTIONS [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Defendant Kodak contends that it does not infringe any of the asserted claims of the '075 patent.

Kodak contends that it has not willfully infringed any claim of the '075 patent.

Kodak contends that the Philips' patent is invalid in view of the prior art.

Kodak contends that Philips engaged in deceptive trade practices, fraud, and negligent misrepresentation.

**Source:**    Adapted from Uniform Instructions § 2.3; *Telcordia,* 04-876-GMS (D.I. 343) § 2.3.

**[KODAK'S OBJECTIONS]**

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's claim for damages based on Kodak's state law counterclaims. The Seventh Amendment guarantees a right to a jury trial for civil causes of action based on the common law. U.S. Const. Amend. VII; *Benjamin v. Traffic Executive Ass'n Eastern Railroads* 869 F.2d 107, 114 (2d Cir. 1989). Fraud and negligent misrepresentation "are claims at law which the Seventh Amendment right to a jury trial attaches." *In re Tou Houa Thao,* 2006 WL 3716055 at *2 (Bkrtcy.W.D. Mo. 2006). And the Seventh Amendment applies to statutory actions such as those brought under Delaware's Deceptive Trade Practices Act. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989). Kodak has a constitutional right to present its damages claims to the jury. Kodak has quantified those damages and Philips has not sought summary judgment on this issue. Therefore, Kodak is entitled to the instruction.

Kodak further objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak

acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy.  Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

Kodak contends that it does not infringe any of the asserted claims of the '075 patent.

Kodak contends that the '075 patent is invalid in view of the prior art.

Kodak contends that Philips is not entitled to any damages for any alleged infringement.

Kodak contends that it has not willfully infringed any claim of the '075 patent.

Kodak contends that Philips engaged in fraud, negligent misrepresentation, and deceptive trade practices.

Kodak contends that it has been damaged by Philips' fraud and/or negligent misrepresentation and that Kodak is, without limitation, entitled to the costs associated with defending against Philips' claims.

Kodak contends that the '075 patent is unenforceable against Kodak based on equitable estoppel.

Kodak contends that any damages for which it may be found liable are limited to those occurring after Philips filed suit based on the doctrine of laches.

**Source:**      Adapted from Uniform Instructions § 2.3; *Telcordia,* 04-876-GMS (D.I. 343) § 2.3.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches in the jury instructions, which are equitable issues for the Court to decide.  *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the

sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (*citing Cox*, 894 F.2d at 649-50).

Philips also objects to Kodak's proposed instruction that it is entitled to claim as damages under its fraud and negligent misrepresentation counterclaims the costs associated with defending against Philips' claims of infringement, which is contrary to the law.  *See MBKS Co. Ltd. v. Reddy*, 924 A.2d 965, 977 (Del. Ch. 2007) (explaining that under the "American Rule" litigants generally bear their own costs of litigation); *Brice v. State Dept. of Correction*, 704 A.2d 1176, 1178 (Del. 1998) (same).

## 2.4    SUMMARY OF PATENT ISSUES [DISPUTED]

**[PHILIPS' INSTRUCTION]**

The following is a brief summary of the patent issues that you will be asked to decide:

1.    Whether Philips has proven by a preponderance of the evidence that Kodak's manufacture, use, sale and/or offer for sale of the accused products, or the methods practiced by the products, infringe any of the asserted claims of Philips' '075 patent.

2.    If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, whether Philips has established by clear and convincing evidence that Kodak's infringement was willful.

3.    If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, what amount of damages due to the infringement Philips has proven by a preponderance of the evidence.

4.    Whether Kodak has proven by clear and convincing evidence that any of the asserted claims of Philips' '075 patent are invalid.

5.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in deceptive trade practices.

6.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in fraud.

7.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in negligent misrepresentation.

**Source:**    Adapted from Uniform Instructions § 2.4; *CellPro*, 894 F. Supp. at 831; *Telcordia*, 04-876-GMS (D.I. 343) § 2.4.

**[KODAK'S OBJECTIONS]**

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's claim for damages based on Kodak's state law counterclaims.  The Seventh Amendment guarantees a right to a jury trial for civil causes of action based on the common law.  U.S. Const. Amend. VII; *Benjamin v. Traffic Executive Ass'n Eastern Railroads* 869 F.2d 107, 114 (2d Cir. 1989).  Fraud and negligent misrepresentation "are claims at law which the Seventh Amendment right to a jury trial attaches."  *In re Tou Houa Thao,* 2006 WL 3716055 at *2 (Bkrtcy.W.D. Mo. 2006).  And the Seventh Amendment applies to statutory actions such as those brought under Delaware's Deceptive Trade Practices Act.  *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989).  Kodak has a constitutional right to present its damages claims to the jury.   Kodak has quantified those damages and Philips has not sought summary judgment on this issue.  Therefore, Kodak is entitled to the instruction.

Kodak further objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches.   Although Kodak acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy.   Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

The following is a brief summary of the patent issues that you will be asked to decide:

1.      Whether Philips has proven by a preponderance of the evidence that Kodak's manufacture, use, sale and/or offer for sale of the accused products, or the methods practiced by the products, infringe any of the asserted claims of Philips' '075 patent.

2.      If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, whether Philips has established by clear and convincing evidence that Kodak's infringement was willful.

3.      If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, what amount of damages due to the infringement Philips has proven by a preponderance of the evidence.

4.      Whether Kodak has proven by clear and convincing evidence that any of the asserted claims of Philips' '075 patent are invalid.

5.      Whether Kodak has proven by a preponderance of the evidence that Philips engaged in fraud.

6.      Whether Kodak has proven by a preponderance of the evidence that Philips engaged in negligent misrepresentation.

7.      If you find that Philips has engaged in fraud and/or negligent misrepresentation, what amount of damages has Kodak proven by a preponderance of the evidence.

8.      Whether Kodak has proven by a preponderance of the evidence that Philips engaged in deceptive trade practices.

9.      Whether the '075 patent is unenforceable against Kodak due to equitable estoppel.

10.      Whether Kodak has proven by a preponderance of the evidence that Philips' damages, if any, should be limited to those occurring before Philips filed suit based on laches.

**Source:**      Adapted from Uniform Instructions § 2.4; *CellPro*, 894 F. Supp. at 831; *Telcordia,* 04-876-GMS (D.I. 343) § 2.4.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches in paragraphs 9 and 10, which are equitable issues for the Court to decide. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50).

Philips also objects to paragraph 7, which asks the jury to decide damages for Kodak's fraud and negligent misrepresentation counterclaims. Kodak claims as damages for its state law claims: (1) its litigation expenses in defending Philips infringement suit; and (2) whatever damages it may be required to pay for its infringement of Philips' patent. For those two theories, the Court, not the jury, must determine the amount of damages, because Kodak will not be able to prove until after trial the amount of any adverse damage award for which it is liable or its litigation expenses. The amount of damages for which Kodak is liable may be affected by decisions the Court must make if the jury were to find that Kodak willfully infringed Philips' patent, or if the Court were to find in favor of Kodak on its equitable defenses of equitable estoppel and laches. Likewise, the litigation expenses (even if Kodak were entitled to claim them as damages for its fraud and negligent misrepresentation counterclaims, which it is not) will not be quantifiable until after trial. *See TruePosition Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 465 (D. Del. 2007) (deferring alleged relief for fraud, based on possible infringement

24

damages and attorneys fees, for the Court's consideration after trial); *Acierno v. Goldstein*, No. Civ. A. 20056-NC, 2005 WL 3111993, at *6 (Del. Ch. Nov. 16, 2005) ("Delaware law does not permit the fact finder to supply a damages figure based on 'speculation or conjecture' where the plaintiff has failed to meet its burden of proof on damages." (citing *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1950))).

**3.    INFRINGEMENT**

**3.1    CLAIM INFRINGEMENT [AGREED]**

Before you can decide whether Kodak has infringed the '075 patent, you will have to understand the patent "claims." Patent claims define, in words, the boundaries of what Philips claims as its invention. The patent claims are the numbered paragraphs at the end of the patent. The patent claims at issue here are claims 3, 4, 7, 8, and 11 of the '075 patent, beginning at column 7, line 41 of the patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. The specification and drawings merely describe certain embodiments of the invention. Limitations of those embodiments may not be incorporated into the claims. Each of the claims must be considered individually, and to show infringement of a patent, Philips need only establish that one claim of the patent has been infringed.

**Source:**    Adapted from Uniform Instructions § 3.1; *CellPro*, 894 F. Supp. at 831-32; *Telcordia*, 04-876-GMS (D.I. 343) § 3.1.

26

### 3.2    CONSTRUCTION OF CLAIMS [AGREED]

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of the terms the Court construed. You must use the meaning that I give you for each patent claim to make your decisions as to whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or attorneys.

It may be helpful to refer to the copy of the '075 patent that you have been given as I discuss the claims at issue here. The claims of the '075 patent are toward the end, starting in column 7. The claims of the patent at issue are 3, 4, 7, 8, and 11.

1.    The term "coefficient" is construed to mean "a multiplication factor that results from transform coding."

2.    The term "zero coefficient" is construed to mean "a coefficient whose value is zero or approximately zero."

3.    The term "non-zero coefficient" is construed to mean "a coefficient whose possible magnitudes proceed through the natural numbers without the zero."

4.    The term "code word" is construed to mean "a sequence of bits assigned to represent a particular event or events in accordance with a predefined set of rules."

5.    The term "assigning a code word to represent said run length and said non-zero coefficient" is construed to have its plain and ordinary meaning.

6.    The term "Huffman codeword" is construed to mean "a sequence of bits assigned to represent a particular event or events in accordance with a predefined set of rules with the following characteristics: (i) the code words may be of different lengths; (ii) no code word is a prefix of another code word; and (iii) the predefined set of rules strives to minimize the average code word length by exploiting the distribution of event probabilities."

27

7.    The term "Huffman codeword is independent of the sign of that nonzero coefficient" is construed to have its plain and ordinary meaning.

8.    The term "the sign is coded by a separate bit" is construed to have its plain and ordinary meaning.

9.    The term "event" is construed to mean "a run of zero coefficients and the value of the non-zero coefficient which immediately precedes or follows that run."

10.    The term "run" is construed to mean "a sequence, of zero or more length, of successive identical particular values."

11.    The term "run length" is construed to mean "the number, which can be zero, of identical particular values in a run."

12.    The term "transform" is construed to mean "a mathematical operation which yields an alternative representation of a sequence or array of values."

13.    The term "transforming" is construed to mean "performing a mathematical operation which yields an alternative representation of a sequence or array of values."

14.    The term "a blockwise transform of pixels" is construed to mean "a mathematical operation which yields an alternative representation of a block of pixels."

15.    The term "a sequence of coefficients which results after a blockwise transform of pixels of a video signal with subsequent quantization" is construed to have its plain and ordinary meaning.

16.    The term "signal comprising a sequence of coefficients which results after a blockwise transform of pixels of a video signal" limits the claim in which it appears and is construed to have its plain and ordinary meaning.

17.    The term "transforming said signal" is construed to mean "performing a

28

mathematical operation which yields an alternative representation of a sequence or array of values."

18.     The term "transforming said signal into a sequence comprising zero coefficients occurring in runs and non-zero coefficients" is construed to mean "performing a mathematical operation on a sequence or array of values that yields an alternative representation comprising zero coefficients occurring in runs and non-zero coefficients."

19.     The term "signal" is construed to mean "a sequence or array of values that represents information."

20.     The term "video signal" is construed to mean "a sequence of values that represents sequential and interdependent image frames that when rapidly displayed are capable of depicting movement."

21.     The term "for transmission at a reduced bit rate" is not a claim limitation and is construed to mean "for transmission with fewer bits per pixel."

22.     The term "for transmission at a reduced bandwidth" is not a claim limitation and is construed to mean "for transmission at fewer bits per second."

23.     The term "determining whether the run length of each event exceeds a predetermined run length" is construed to have its plain and ordinary meaning.

24.     The term "splitting said respective event into a plurality of sections" is construed to have its plain and ordinary meaning.

25.     The term "assigning a code word to each section" is construed to have its plain and ordinary meaning.

26.     The term "coding" is construed to have its plain and ordinary meaning.

**Source:**     Adapted from [Proposed] Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (2004) ("2004 Uniform Instructions") § 3.3.2.

### 3.3    DEPENDENT AND INDEPENDENT CLAIMS [AGREED]

There are two different types of claims in the patent.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependant claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 3 is an independent claim.  You know this because this claim mentions no other claim.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 4, on the other hand, is a dependent claim.  Accordingly, the words of Claims 3 and 4 must be read together in order to determine what the dependent Claim 4, covers.

Some claims of the patent-in-suit are broader than other claims..  You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.

**Source:**        Adapted from Uniform Instructions § 3.3.

31

### 3.4     PATENT INFRINGEMENT—GENERALLY [AGREED]

A patent confers on its owner the right to exclude others from importing, making, using, selling or offering to sell the patented invention in the United States during the term of its patent. The patent owner may enforce this right by filing a lawsuit for patent infringement.  Here, Philips, the patent owner, has sued Kodak and has alleged that certain of Kodak's products infringe claims 3, 4, 7, 8, and 11 of Philips' '075 patent.

Any person or business entity which imports, makes, uses, sells or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.  You must decide whether Philips has proven, by a preponderance of the evidence, that the defendant's products or methods infringe any of the asserted claims of the '075 patent.

There are three ways to infringe a patent.  One may: (1) directly infringe a patent; (2) induce others to infringe a patent, in which case the inducer is liable for infringement as well as the direct infringer; or (3) contribute to the infringement of a patent by another by supplying a component specially designed for the patented invention, in which case both the direct infringer and the contributory infringer would be liable for patent infringement.  Next, I will explain each type of infringement more completely.

**Source:**        Adapted from Uniform Instructions § 3.4; *CellPro*, 894 F. Supp. at 834; *Telcordia,* 04-876-GMS (D.I. 343) § 3.3.

## 3.5     DIRECT INFRINGEMENT [AGREED]

Kodak is liable for directly infringing Philips' '075 patent if you find that Philips has proven, by a preponderance of the evidence, that Kodak has imported, made, used, sold, or offered to sell the invention defined in any one or more of claims 3, 4, 7, 8, and 11 of Philips' '075 patent.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent.  He may directly infringe even though in good faith he believes that what he is doing is not an infringement of any patent.

**Source:**     Adapted from Uniform Instructions § 3.5; *Telcordia,* 04-876-GMS (D.I. 343) § 3.4.

## 3.6     INDIRECT INFRINGEMENT [AGREED]

Philips asserts that Kodak indirectly infringes Philips' '075 patent.  There are two kinds of indirect infringement:  (1) inducement to infringe; and (2) contributory infringement.  Both types of indirect infringement require that Philips prove that someone other than Kodak directly infringes the patent claim by making, using, selling, offering for sale or importing a Kodak product in a way that includes all of the requirements of the asserted claims.  Kodak can be liable for indirect infringement only where its sale of a product results in a direct infringement.  Therefore, Kodak can only be liable for acts of indirect infringement stemming from specific instances of direct infringement.

**Source:**     Adapted from 2004 Uniform Instructions § 3.7; *Telcordia,* 04-876-GMS (D.I. 343) § 3.4.1.

### 3.6.1   INDUCING PATENT INFRINGEMENT [AGREED]

To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product or perform a method in a manner that you find infringes the asserted patent claims.  For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that Kodak induced infringement of the '075 patent, Philips must prove by a preponderance of the evidence each of the following four things with respect to that patent and that Defendant:

1. Kodak had knowledge of the patent;

2. Kodak actively encouraged or instructed another person how to use a product [or perform a process] in a way you, the jury, finds infringes the patent claims;

3. Kodak had an affirmative intent to cause the acts that constitute direct infringement and must have known or should have known that its action would cause direct infringement; and

4. The induced person directly infringed a claim of the patent.

All four of these things must be proven by either direct or circumstantial evidence before you may find that Kodak induced patent infringement.

**Source:**     Adapted from 2004 Uniform Instructions § 3.8; *Telcordia,* 04-876-GMS (D.I. 343) § 3.5.

### 3.6.2   CONTRIBUTORY INFRINGEMENT [AGREED]

Kodak may also be infringing if they contribute to infringement by others.  The elements of contributory infringement are:

1.      sale or supply by Kodak;

2.      of a material component of the patented invention, or a material component for use in practicing a patented process, that is not a staple article of commerce capable of substantial noninfringing use;

3.      with knowledge of the patent and with knowledge that the component was especially made or adapted for use in infringement of such invention.

A "staple" article is a commodity or product with substantial uses apart from a patented invention.  In determining whether the component supplied by Kodak is a "staple article of commerce," you should take into account the quality, quantity, and efficiency of Kodak's suggested uses for its products.

Kodak can be liable for contributory infringement if a patent claim is directly infringed by one of its customers.  Proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

**Source:**      Adapted from Uniform Instructions § 3.7; *Telcordia,* 04-876-GMS (D.I. 343) § 3.6.

### 3.7    LITERAL INFRINGEMENT [AGREED]

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

A patent claim is literally infringed if the defendant's product or method includes each and every component, or limitation, of that claim.  If Kodak's products or methods include each and every limitation of any claim of the '075 patent, then Kodak infringes that claim.  You must conduct this comparison for each asserted claim of the patent.  Infringement may not be avoided simply by adding features or components or method steps not required by the claims.  If Kodak's products or methods do not meet any single limitation of any asserted claim of the '075 patent, then there is no literal infringement.  You must determine literal infringement with respect to each patent claim, and each product and method, individually.

**Source:**    Adapted from Uniform Instructions § 3.8; *Telcordia,* 04-876-GMS (D.I. 343) § 3.7.

### 3.8    DOCTRINE OF EQUIVALENTS [AGREED]

If you do not find literal infringement, you may consider infringement under the "doctrine of equivalents."  You may find that Kodak's products and methods infringe a claim, even if not all of the components or method steps of the claim are literally present in Kodak's products.  You may find infringement in such circumstances if the components or method steps of Kodak's products are equivalent to that claimed in at least one of the '075 patent claims.  This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule.  Patent claims must be clear enough so that the public has fair notice of what was patented.  Notice permits other parties to avoid actions which infringe the patent and to design around the patent.  On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalents is whether Kodak's products and components and methods involve no substantial differences from the inventions claimed in the '075 patent.  One way to determine if the differences are substantial is to determine whether each component of Kodak's products, or each method step in Kodak's methods, perform substantially the same function in substantially the same way to produce substantially the same result as the corresponding component or method step claimed in the '075 patent.  However, the doctrine of equivalents is applied on a limitation by limitation basis.  Therefore, if any limitation is substantially different, there is no infringement under the doctrine of equivalents.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent

issued.  The question of whether Kodak's products and/or methods and components are

equivalent to that defined in Philips' claims is to be determined as of the time of the alleged

infringement.

**Source:**        Adapted from Uniform Instructions § 3.9; *Dawn Equip. Co. v. Kentucky Farms,*
                   *Inc.*, 140 F.3d 1009, 1015-16 (Fed. Cir. 1998).

### 3.9    INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS [AGREED]

You may find that Kodak's accused products or methods represent an improvement over the invention defined in the '075 patent claims.  You may have even seen and heard evidence that Kodak obtained patents on its products or methods.  However, you are not to presume that this means that Kodak cannot infringe the '075 patent claims.  As long as Kodak's accused products or methods include all of the elements of at least one of the '075 patent claims, or if Kodak's accused products or methods are found to be equivalent under the doctrine of equivalents, then the '075 patent claims are infringed by Kodak's products despite any improvements made or patents obtained by Kodak.

**Source:**    Adapted from Uniform Instructions § 3.16; *Telcordia,* 04-876-GMS (D.I. 343) § 3.10.

## 3.10    WILLFUL INFRINGEMENT [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Philips asserts that Kodak has willfully infringed Philips' '075 patent.  If you find that Kodak's products infringe at least one of Philips' '075 patent claims, you must further decide whether or not Philips has proven by clear and convincing evidence that Kodak's infringement was willful.

Willful infringement is established where Philips has proven 1) that Kodak was aware of the '075 patent, and 2) that Kodak infringed *despite an objectively high likelihood that its actions constituted infringements of a valid patent.

The law requires that a potential infringer having actual notice of another's patent has an affirmative duty to use due care.

In determining whether Kodak willfully infringed Philips' patent, you must consider the totality of the circumstances, which may include contribution of several factors.  These factors include but are not limited to:

(1)    Whether Kodak, when it learned of Philips' patent protection, investigated the scope of the patent and formed a good faith belief that the patent was invalid or unenforceable or that it was not infringed before Kodak started or continued any possible infringing activity;

**(2)    Whether Kodak, when it learned of the Philips' patent protection sought and obtained legal advice before continuing to engage in activity that may result in infringement.

(3)     Whether Kodak reasonably believed that it had a substantial defense to

infringement and reasonably believed that the defense would be successful if

litigated;

(4)     Whether Kodak made a good faith effort to avoid infringing the patent, for

example, by taking remedial action upon learning of the patent by ceasing

infringing activity or attempting to design around the patent; and

(5)     ***Whether Kodak previously had been licensed or offered a license.

In assessing these various factors and deciding whether or not Kodak willfully infringed

the patent, you need not find that all of the factors are present.  In addition, no one or more of

these factors are determinative.  Rather, you must decide, based on the evidence that is presented

to you, whether you find clear and convincing evidence that the alleged infringement was willful.

**Source:**     Adapted from Uniform Instructions § 3.18; *In re Seagate Tech.,LLC*, 497 F.3d
1360, 1371 (Fed. Cir. 2007); **Stryker Corp. v. Intermedics Orthopedics, Inc.,* 96
F.3d 1409, 1414 (Fed. Cir. 1996); ***SRI Int'l, Inc. v. Advanced Tech. Labs.,
Inc.*, 127 F.3d 1462, 1464-66 (Fed. Cir. 1997) ; *Read Corp. v. Portec, Inc.*, 970
F.2d 816, 826-27 (Fed. Cir. 1992) (superseded on other grounds as recognized in
*Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)).

## [KODAK'S OBJECTIONS]

Philips' instruction is not consistent with the current case law.  In particular, Philips'

inclusion of whether Kodak sought and obtained legal advice is contrary to the Federal Circuit's

holding in *Knorr-Bremse*.  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*.,

383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc) ("[I]t is inappropriate to draw an adverse

inference that undisclosed legal advice for which attorney-client privilege is claimed was

unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to

consult counsel.").

Kodak's proposed instruction is adapted directly from the American Intellectual Property Law Association's 2007 Model Patent Jury Instructions which, contrary to Philips' assertion below, is post-*Seagate* and in fact cites the *Seagate* decision.  The 2007 AIPLA instruction specifically notes that the factor of "'whether the Defendant relied on competent legal advice,' should only be included in the instruction if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement."  AIPLA Model Patent Jury Instructions, No. 13 (2007). Kodak is not relying on advice of counsel as a defense to willful infringement and, therefore, Philips' instruction is contrary to current law..  The 2007 AIPLA Model Patent Jury Instructions are available at:

http://www.aipla.org/Content/Microsites117/Patent_Litigation1/Committee_Documents19/Repor ts19/AIPLA_Model_Patent_Jury_Instructions/CleanAIPLA2007ModelJuryInstructions.pdf

Finally, to the extent the Court finds that Philips' instruction is appropriate, Kodak requests that the jury be instructed that the law imposes "no affirmative obligation to obtain opinion of counsel."  *In re Seagate Tech.,LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

**[KODAK'S INSTRUCTION]**

If you find by a preponderance of the evidence that Kodak infringed the '075 patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

1.      Kodak had actual knowledge of the '075 patent;

2.      A reasonable person, with knowledge of the '075 patent, would have concluded that: (a) Kodak's actions were highly likely to infringe the '075 patent, and (b) the '075 patent was highly likely to be valid; and

3.      Kodak acted even though Kodak knew, or it was so obvious that Kodak should have known, that Kodak's actions were highly likely to infringe the '075 patent.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include but are not limited to whether Kodak intentionally copied the claimed invention or product covered by the '075 patent and whether Kodak presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

***Source:***      Adapted from AIPLA Model Patent Jury Instructions, No. 13; *In re Seagate Technology, LLC*, 497 F.3d 1360, 83 U.S.P.Q.2d 1865 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

**[PHILIPS' OBJECTIONS]**

Kodak relies on AIPLA Model Jury Instruction No. 13, dated February 2006, which interprets the *Knorr-Bremse* case. AIPLA's pre-*Seagate* instruction includes the advice of counsel as an optional factor, with the following footnote:

> This factor, "whether the Defendant relied on competent legal advice," should only be included if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement. "[I]t is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to consult counsel." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

AIPLA Model Patent Jury Instructions (Feb. 2006), available at http://www.aipla.org/Content/ContentGroups/Publications1/Publications_available_for_viewing 1/MPJ_word_021006.doc, p. 46.

Contrary to the AIPLA Model Instructions' suggestion limiting the use of the legal advice instruction, *Knorr-Bremse* does not provide for completely removing the "opinion of counsel" factor from the jury's consideration, as Kodak did. This Court analyzed *Knorr-Bremse*

44

in a virtually identical context and held that "*Knorr-Bremse* left untouched the totality of the circumstances standard that the jury may consider in its willful infringement analysis," noting further that subsequent cases applying *Knorr-Bremse* have held that "[t]he fact that no opinion of counsel on the issue of infringement was acquired by [the] defendant may be considered by the trier of fact in its willful infringement analysis, but no inference may be drawn to suggest that such an opinion, had it been acquired, would have been unfavorable to [the] defendant." *Telcordia Tech., Inc. v. Lucent Tech., Inc.*, No. 1:04-cv-00875-GMS, slip op. at 9-10 (D. Del. Apr. 24, 2007) (Sleet, J.) (citations omitted).  The Court allowed the plaintiff to introduce evidence of the defendant's failure to obtain legal advice about the patent-in-suit.  *Id.* at 11.

In a more recent, post-*Seagate*, decision, this Court held that "nothing in *Seagate* forbids a jury to consider whether a defendant obtained advice of counsel as part of the totality of the circumstances in determining willfulness . . . ."  *Energy Transp. Group, Inc. v. William Demant Holding A/S*, C.A. No. 05-422 GMS, 2008 WL 114861, at *1 (D. Del. Jan. 7, 2008).

Philips further objects to Kodak's introduction of "a reasonable person" in element 2 of Kodak's instruction.  Nowhere has Kodak defined or provided a legal standard for determining who a "reasonable person" is.

45

### 4.    VALIDITY DEFENSES

### 4.1    ANTICIPATION [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak contends that the invention defined in the claims of Philips' patent is not new or novel. Something that shows that a patent claim is not novel is said to anticipate that claim. Several different types of events may anticipate and invalidate a patent claim. Here, Kodak contends that the claims are anticipated by publications or patents which, if they meet certain requirements, may be "prior art." I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in Philips' patent for anticipation, Kodak must prove, by clear and convincing evidence for each claim, that each and every limitation of the claimed invention is found in a single piece of prior art. The absence from the single piece of prior art of even a single claim limitation negates anticipation. Stated another way, Kodak may not rely on any evidence beyond the piece of prior art itself, such as testimony by the prior art reference's author, to supplement or fill gaps in the teachings of the prior art. To meet its burden, Kodak must prove by clear and convincing evidence that:

1)    the material upon which it relies is "prior art" under the law;

2)    if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

3)    the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that Kodak has failed to meet its burden with respect to any of these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipates a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the

limitations of the claimed invention is found in a single piece of prior art.  If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art.  To prove that a limitation is inherent in a piece of prior art, Kodak must show, by clear and convincing evidence, that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art.  Inherency may not be established by probabilities or possibilities.  Thus, the allegedly inherent property must always be present.  The mere fact that a certain thing may result from a given set of circumstances is not enough.

Accordingly, the claims of the '075 patent are anticipated if each and every element of the claimed invention was disclosed in a single prior art reference before September 11, 1986.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by Kodak.  There are additional requirements that apply to each kind of anticipation that Kodak contends apply here, and I will discuss those further.

**Source:**    Adapted from Uniform Instructions § 4.2; *Telcordia*, 04-876-GMS (D.I. 343) § 4.3.


**[KODAK'S OBJECTIONS]**

Philips instruction is inconsistent with the case law and the facts and evidence in the present case.  Kodak has asserted that the Widcom VTC-56 machine (a product) is prior art to the '075 patent and anticipates the '075 patent.  However, Philips jury instruction does not describe that a product (on sale or used) can be anticipatory prior art.   The sentence that begins with "Accordingly" does not describe all of the events in which a piece of prior art is anticipatory prior art.

**[KODAK'S INSTRUCTION]**

Kodak contends that the invention defined in the claims of the '075 patent is not new or novel. Something that shows that a patent claim is not novel is said to anticipate that claim. Several different types of events may anticipate and invalidate a patent claim. Here, Kodak contends that the claims are anticipated by publications, patents or products which, if they meet certain requirements, may be "prior art." I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in the '075 patent for anticipation, Kodak must prove, by clear and convincing evidence for each claim, that each and every limitation of the claimed invention is found expressly or inherently in a single piece of prior art. The absence from the single piece of prior art of even a single claim limitation negates anticipation. To meet its burden, Kodak must prove by clear and convincing evidence that:

　　1.　　the material upon which it relies is "prior art" under the law;

　　2.　　if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

　　3.　　the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that Kodak has failed to meet its burden with respect to any of these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipates a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the limitations of the claimed invention is found in a single piece of prior art. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. To prove that a limitation is inherent in a piece of

prior art, Kodak must show, by clear and convincing evidence, that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art. Inherency may not be established by probabilities or possibilities. Thus, the allegedly inherent property must always be present. The mere fact that a certain thing may result from a given set of circumstances is not enough.

Accordingly, the claims of the '075 patent are anticipated if: 1) each and every element of the claimed invention was disclosed in a single prior art reference or in public use or on sale before September 11, 1986; 2) the claimed invention was known or used by others or described in a printed publication before the invention thereof; or 3) the claimed invention was described in a patent granted on an application for patent by another filed in the in the United States before the invention by Philips.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by Kodak. There are additional requirements that apply to each kind of anticipation that Kodak contends apply here, and I will discuss those further.

**Source:**     Adapted from Uniform Instructions § 4.4; *Telcordia*, 04-876-GMS (D.I. 343) § 4.3.

## [PHILIPS' OBJECTIONS]

Kodak has provided no support for deleting the third sentence in the second paragraph from the standard instruction (shown in grey background in Philips' instruction), which explains an important point and was used by this Court in April 2007 in the *Telcordia* case. If Kodak restores it, Philips will agree to Kodak's additions to the penultimate paragraph (shown in grey background in Kodak's instruction).

## 4.2     WHAT IS PRIOR ART [AGREED]

As previously discussed, for Kodak to prevail on an anticipation defense as to any asserted claim, Kodak must prove, by clear and convincing evidence, not only that the material relied upon contains each and every limitation of the claims of the '075 patent, but also that the material relied upon is legally available as prior art.  Because Kodak relies on different types of alleged prior art, I will discuss what is required for various categories of material to be legally available as prior art.  If you determine that any of the material or events on which Kodak relies is not prior art, then you must disregard that material or event, because it can have no effect on the validity of the patent.

**Source:**     *Telcordia*, 04-876-GMS (D.I. 343) § 4.4.

### 4.2.1   PRINTED PUBLICATIONS AS PRIOR ART [AGREED]

Kodak contends that claims 3, 4, 7, and 8 of the '075 patent were anticipated because the inventions defined by those claims were described in a printed publication.  Kodak must prove this by clear and convincing evidence.

A printed publication may be prior art if it was sufficiently accessible to interested members of the public either more than one year before the U.S. filing date of the patent-in-suit (or the filing date of the parent application in the case of a reissued patent), or before the inventor made the invention.  Books, periodicals, or newspapers of general circulation are common examples of printed publications.  In the other extreme, information that can only be located in a person's private files or a company's private files is not a printed publication.  Documents disseminated to a degree between these extremes may constitute printed publications under certain circumstances.  Documents maintained in a library, for example, may constitute printed publications if the public could, by reference to a subject matter index, locate and access the document without restriction.

The existence or lack of confidentiality restrictions on the document is one factor to consider in determining whether the document was sufficiently accessible.  The mere lack of a confidentiality label, however, does not compel the conclusion that the document constitutes a printed publication.  Rather, there still must be clear and convincing evidence of actual dissemination.

Even if a reference meets the conditions I just discussed, it still will not qualify as invalidating prior art unless it meets the so-called "enablement" requirement.  Enablement requires that the disclosure of the reference be sufficiently detailed to enable one skilled in the art to practice the reference's teachings without undue experimentation.  This requirement ensures that the subject matter of the reference was truly put into the possession of the public, thereby

operating as a surrender of patent rights to that same subject matter.  If a reference does not

enable one skilled in the art to practice the reference's teachings without undue experimentation,

then it cannot be used to invalidate a patent claim.  Shortly, I will list various factors to consider

when evaluating the issue of undue experimentation.

**Source:**       Adapted from Uniform Instructions § 4.8.1; *CellPro*, 894 F. Supp. at 840;
                  *Telcordia*, 04-876-GMS (D.I. 343) § 4.4.1.

### 4.2.2   PRIOR UNITED STATES PATENT APPLICATION [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak contends that Claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was embodied in a prior patent application.  A patent may be found invalid if the claimed invention was described in a patent granted on an application as filed by another in the United States before the invention was made by Plaintiff.  *The filing of a patent application in Germany by Philips served as the invention date of the subject matter described in that patent application.

In order for the '075 patent to be anticipated by a prior United States patent application, Defendant must prove the following:

1.       There is another patent with inventors other than the named inventor;

2.       The application for that other patent was filed in the United States before September 13, 1986; and

3.       The other patent describes what the named inventor claimed in the '075 patent.

**Source:**       2004 Uniform Instruction § 4.6; *Hyde v. Boone*, 146 F.3d 1348 (Fed. Cir. 1998).

**[KODAK'S OBJECTION]**

Philips instruction is not consistent with the case law.  In particular, the filing of the German patent application can only serve as an invention date for the '075 patent if the German patent application meets the requirements of best mode, written description and enablement which is not clearly stated in Philips instruction.

**[KODAK'S INSTRUCTION]**

Kodak contends that claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was embodied in a prior patent application.  A patent may be found invalid if the claimed invention was described in a patent granted on an application as filed

by another in the United States before the invention was made by Plaintiff.  The patent may be entitled to an earlier invention date based on a priority date.

The "priority date" of the '075 patent is the earliest date on which Philips filed with the German patent office an application containing a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

In order for the '075 patent to be anticipated by a prior United States patent application, Defendant must prove the following:

1.    There is another patent with inventors other than the named inventor;

2.    The application for that other patent was filed in the United States before the "priority date" of the '075 patent; and

3.    The other patent describes what the named inventor claimed in the '075 patent.

**Source:**    2004 Uniform Instruction § 4.6; *Hyde v. Boone*, 146 F.3d 1348 (Fed. Cir. 1998).

**[PHILIPS' OBJECTION]**

Philips objects to Kodak's proposed instruction to the extent it states contentions or theories that have not been adequately disclosed to Philips or are not supported by the evidence and/or expert testimony.  Specifically, Philips objects to Kodak's removing the September 13, 1986, date from the instruction when Kodak has provided no support for its contention that the '075 patent is not entitled to the September 13, 1986 priority date, since Kodak's expert did not offer any opinion on the '075 patent's priority date.

Philips also objects to the paragraph defining the priority date of the '075 patent.

Kodak's instruction misstates the law, is not supported by case law, and will confuse the jury.

### 4.2.3   PRIOR PUBLIC USE/SALE [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak contends that Claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was publicly used prior to September 13, 1986.

The "public use" of a completed invention before September 13, 1986, invalidates the patent.  An invention is publicly used when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor.  Thus, a patent is not invalidated if the particular device, composition, or process is used by someone other than the inventor, under circumstances where it is not made accessible to the public.

If the prior public use was an experimental use that was performed to perfect or complete the invention to determine that it will work for its intended purpose, that use will not invalidate the patent.

**Source:**     2004 Uniform Instruction § 4.5.2.

**[KODAK'S OBJECTION]**

The '075 patent is not entitled to the September 13, 1986 priority date indicated in Philips' instruction.

**[KODAK'S INSTRUCTION]**

Kodak contends that claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was publicly used prior to the "priority date" of the '075 patent.

The "public use" of a completed invention before the priority date, invalidates the patent. An invention is publicly used when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor.  Thus, a patent

56

is not invalidated if the particular device, composition, or process is used by someone other than the inventor, under circumstances where it is not made accessible to the public.

If the prior public use was an experimental use that was performed to perfect or complete the invention to determine that it will work for its intended purpose, that use will not invalidate the patent.

**Source:**        2004 Uniform Instruction § 4.5.2.

**[PHILIPS' OBJECTION]**

Philips objects to Kodak's proposed instruction to the extent it states contentions or theories that have not been adequately disclosed to Philips or are not supported by the evidence and/or expert testimony.  Specifically, Philips objects to Kodak's removing the September 13, 1986, date from the instruction when Kodak has provided no support for its contention that "'075 patent is not entitled to the September 13, 1986 priority date," since Kodak's expert did not offer any opinion on the '075 patent's priority date.

### 4.2.4   REFERENCES DESCRIBING THE INVENTOR'S WORK [AGREED]

References describing the inventor's own work published less than one year before the United States application filing date are not prior art that will render the invention anticipated or obvious.  It does not matter whether the article was authored by the inventor or someone else.  So long as the article describes the inventor's own work, it cannot be used as prior art to invalidate the claimed invention.

**Source:**        *Telcordia,* 04-876-GMS (D.I. 343) § 4.4.2.

### 4.3    OBVIOUSNESS [AGREED]

Even though an invention claimed in Philips' patent is not anticipated by the prior art, the claimed invention may nevertheless be invalid if it would have been obvious to one of skill in the art at the time the invention was made.

In order to prove that the invention claimed in the claims of Philips' patent is invalid for obviousness, Kodak must prove, by clear and convincing evidence for each claim, that the differences between the subject matter of the claimed invention and the prior art are such that the subject matter of the claim taken as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the relevant art.

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining whether or not Kodak has established obviousness by clear and convincing evidence, you must consider the following factors:

1.    The scope and content of the prior art relied upon by Kodak;

2.    The differences between each claim of Philips' patent and the prior art;

3.    The level of ordinary skill in the pertinent art at the time the invention of Philips' patent was made; and

4.    Any objective indicia of non-obviousness.

I will now explain each of these factors.

**Source:**    Adapted from 2004 Uniform Instructions § 4.8; *CellPro*, 894 F. Supp. at 837; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.

### 4.3.1   SCOPE AND CONTENT OF THE PRIOR ART [AGREED]

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if, although in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have presented itself as worthy of an inventor's attention in considering his problem. Scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look at in solving a particular problem. Non-analogous, or non-pertinent art cannot render a patent claim obvious. The prior art includes the following:

1.     Prior patents that issued before the date of invention or more than one year before the filing date of the patent-in-suit;

2.     Prior publications having a publication date before the date of invention or more than one year before the filing date of the patent-in-suit;

3.     U.S. Patents that have a filing date prior to the date of invention of the patent-in-suit;

4.     Anything in public use or on sale in the United States more than one year before the filing date of the patent-in-suit;

5.     Anything that was publicly known or publicly used by others in this country before the date of invention of the patent-in-suit;

6.     Anything that was made or built or any process that was used in this country by another person before the date of invention of the patent-in-suit, where the thing

made or built or the process used was not abandoned, suppressed or concealed; and

7.    Anything that, although not publicly known at the time of the invention, existed before the claimed invention, but was not invented by any of the inventors of the patent-in-suit, was known to the inventor(s) prior to invention, and from which the named inventors derived the claimed invention.

As you did in considering Kodak's anticipation contentions, you must first determine whether the material or events relied on by Kodak are "prior art." If these materials or events are the same as those relied on by Kodak in alleging anticipation, your determination should be the same here. Thus, if you previously found that something did not qualify as "prior art" for anticipation purposes, it is likewise not prior art for the obviousness determination.

You must then consider what the qualifying prior art would have taught to one skilled in the art at the time of the invention.

**Source:**    Adapted from Uniform Instructions § 4.8.1, *CellPro*, 984 F. Supp. at 837; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.1.

### 4.3.2   DIFFERENCES OVER THE PRIOR ART [AGREED]

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

**Source:**        Adapted from Uniform Instructions § 4.8.2; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.2.

### 4.3.3   LEVEL OF ORDINARY SKILL [AGREED]

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. The issue of obviousness is determined entirely with reference to a hypothetical person having ordinary skill in the art. It is only that hypothetical person who is presumed to be aware of all the pertinent prior art. The actual inventor's skill is irrelevant to the inquiry. A person of ordinary skill in the art is also presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

**Source:**      Adapted from Uniform Instructions § 4.8.3; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.3.

### 4.3.4   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS) [AGREED]

In deciding whether a claimed invention is obvious, you must consider the following objective evidence which may show that the claims at issue are not obvious:

1.    Commercial success of products covered by Philips' '075 patent.  Evidence concerning commercial success may take the form of sales figures coupled with market share data, or sales figures alone.  The commercial success may be shown through the sales of anyone practicing the claimed invention, including Kodak.

2.    A long-felt need in the art which was satisfied by the invention of the patent-in-suit;

3.    The failure of others to make the invention;

4.    Unexpected results achieved by the invention;

5.    Praise of the invention by those in the field;

6.    The taking of licenses under the patent by others; and

7.    Initial skepticism of the invention by those in the field.

There must be a connection between the evidence showing any of these factors and the claimed invention.

**Source:**       Adapted from Uniform Instructions § 4.8.4; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.4.

5.    **STANDARDS SETTING CLAIMS AND DEFENSES**

5.1    **EQUITABLE ESTOPPEL [DISPUTED]**

**[KODAK'S INSTRUCTION]**

Kodak contends that Philips is equitably estopped from asserting the '075 patent against Kodak. A finding of equitable estoppel bars Philips from seeking relief for Kodak's infringement of the '075 patent.

To prevail on this defense, Kodak must prove, by a preponderance of the evidence, that:

1.    Philips, through misleading words, conduct, or silence, led Kodak to reasonably infer that Philips would not assert the '075 against the JPEG Standard. Silence alone will not create an estoppel unless there was a duty to speak; and

2.    Kodak would be harmed if Philips is now permitted to proceed with its infringement claim. This harm suffered by Kodak must be the result of Kodak's reliance on Philips' words, conduct or silence.

**Source:**    *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992); *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001); *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 775 (Fed. Cir. 1995).

**[PHILIPS' OBJECTIONS]**

Equitable estoppel is an issue for the Court to decide, not the jury. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, C.A. No. 2:06-CV-3814-LDD,

2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50). Philips does not agree that equitable estoppel should be decided by the jury, and will oppose an advisory verdict on this equitable issue.  If the Court were to permit an advisory jury, Philips reserves its rights to object to this proposed instruction and to propose its own.

**[KODAK'S RESPONSE]**

Although Kodak acknowledges this is an equitable issue, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

## 5.2    FRAUD [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak alleges that Philips committed fraud, causing damage to Kodak.  To prove that Philips committed fraud, for each accused product Kodak must prove, by a preponderance of the evidence, all five of the following elements:

1) Philips made a false representation of a fact that is important to another;

2) Philips knew or believed that this representation was false, or made it with reckless indifference to the truth;

3) Philips intended to induce Kodak to act on the false representation, or to decline to act;

4) Kodak acted, or declined to act, in justifiable reliance on the false representation; and

5) Kodak was damaged as a result of this reliance.

A false representation may be asserted by words or conduct.  A fact is important if it would cause a reasonable person to decide to act in a particular way, or if the maker of the misrepresentation knew another person would regard it as important.

Fraud may occur if Philips deliberately concealed facts important to a transaction, causing Kodak to rely on the deception to its detriment.  This concealment can occur by a person's silence in the fact of a duty to disclose the facts or by some action taken to prevent Kodak from discovering the facts important to the transaction. *Silence alone will not give rise to fraud unless there was a duty to speak.

*A standards-setting organization's policy that does not define clearly what, when, how, and to whom the members must disclose does not provide a firm basis for the disclosure duty necessary for a fraud verdict.

If Kodak was aware of the true facts of the transaction, even if they were concealed by Philips, or if Kodak did not rely on the concealment of these facts, then there is no fraud.

**\*\*Kodak claims that it was damaged by Philips' bringing and maintaining this infringement litigation.  In order to find that Kodak was damaged by Philips' bringing and maintaining this infringement litigation, you must find that Philips' claims of infringement were objectively baseless and were brought in an attempt to use the litigation to interfere directly with the business relationships of Kodak.**

**Source:**    Adapted from Delaware Superior Court Instructions §§ 16.1, 16.3, 16.4; *\*Rambus v. Infineon*, 318 F.3d 1081, 1096, 1102 (Fed. Cir. 2003); \*\* *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999).

**[KODAK'S OBJECTIONS]**

Kodak objects to Philips' instruction on the grounds that the proposed language from *Rambus v. Infineon* is taken out of context and is misleading.  The cited language relates to the Court's discussion regarding whether a member's plans or intentions to file or amend patent applications fell within the scope of the standards-setting committee's patent disclosure policy. *Rambus v. Infineon*, 318 F.3d 1081, 1102 (Fed. Cir. 2003).  The Court was merely observing that if a standards-setting body intends its patent disclosure policy to require disclosure of future intentions, it could be drafted accordingly.  *See id.*  In the present case, Philips' failed to disclose an existing patent which clearly falls within all relevant policies.

Further, the cited language is misleading.  In the same case, the Federal Circuit found that although the relevant patent disclosure policy statements did not impose any direct disclosure duty on members, "because [the] members treated the language … as imposing a duty," the court nevertheless found that a duty existed.  *Rambus*, 318 F.3d at 1098.  This finding contradicts the proposed language that Philips takes out of context.

Next, Kodak objects to Philips' proposed language set forth in the last paragraph of its proposed instruction.  The cited case, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures*

*Indus., Inc.*, 508 U.S. 49 (1993), involves the issue of what constitutes "sham" litigation for purposes of establishing an exception to *Noerr* antitrust immunity. *Id*. at 51. Nothing cited by Philips supports the proposition that this language is in any way applicable to Kodak's fraud counterclaim. This instruction is simply inappropriate.

In addition, because this case involves misleading silence, it is appropriate that the listed elements in the beginning of the instruction include the appropriate language, which Philips' instruction omits.

Finally, Kodak objects to Philips' proposed language requiring Kodak to prove fraud "for each accused product." Philips provides no support for this language and it is inappropriate and confusing.

**[KODAK'S INSTRUCTION]**

Kodak alleges that Philips committed fraud, causing damage to Kodak. To prove that Philips committed fraud, Kodak must prove, by a preponderance of the evidence, all five of the following elements:

1.      Philips made a false representation of an important fact either by affirmative conduct or misleading silence. Silence alone will not give rise to fraud unless there was a duty to speak;

2.      Philips knew or believed that this representation was false, or made it with reckless indifference to the truth;

3.      Philips intended to induce Kodak to act on the false representation, or to decline to act;

4.      Kodak acted, or declined to act, in justifiable reliance on the false representation; and

5.    Kodak was damaged as a result of this reliance.

A fact is important if it would cause a reasonable person to decide to act in a particular way, or if the maker of the misrepresentation knew another person would regard it as important.

Fraud may occur if Philips deliberately concealed important facts, causing Kodak to rely on the deception to its detriment.  This concealment can occur by a person's silence despite a duty to disclose the facts, or by some action taken to prevent Kodak from discovering the important facts.

If Kodak was aware of the true facts of the transaction, even if they were concealed by Philips, or if Kodak did not rely on the concealment of these facts, then there is no fraud.

**Source:**    Adapted from Delaware Superior Court Instructions §§ 16.1, 16.3, 16.4.

**[PHILIPS' OBJECTIONS]**

Philips is willing to agree to Kodak's instruction provided Kodak allows the insertion of the highlighted holdings from *Rambus v. Infineon* and *Prof'l Real Estate Iinvestors*.

### 5.3     NEGLIGENT MISREPRESENTATION [DISPUTED]

[PHILIPS' INSTRUCTION]

Kodak alleges that Philips committed negligent misrepresentation, causing damage to Kodak.  To prove that Philips committed negligent representation, for each accused product Kodak must prove, by a preponderance of the evidence, all four of the following elements:

(1) Philips had a particular duty to provide accurate information based on Kodak's pecuniary interest in that information;

(2) Philips supplied false information;

(3) Philips failed to exercise reasonable care in obtaining or communicating information; and

(4) Kodak suffered a pecuniary loss caused by justifiable reliance upon the false information.

*Silence alone will not give rise to negligent misrepresentation unless there was a duty to speak.  A standards-setting organization's policy that does not define clearly what, when, how, and to whom the members must disclose does not provide a firm basis for the disclosure duty necessary for a negligent misrepresentation verdict.

**Kodak claims that it was damaged by Philips' bringing and maintaining this infringement litigation.  In order to find that Kodak was damaged by Philips' bringing and maintaining this infringement litigation, you must find that Philips' claims of infringement were objectively baseless and were brought in an attempt to use the litigation to interfere directly with the business relationships of Kodak.

**Source:**        *Atwell v. Rhis, Inc.*, 2006 WL 2686532, at *1 (Del. Super. Ct. Aug. 18, 2006); *H.M. Wexford LLC v. Encorp, Inc*., 832 A.2d 129, 147 n.44 (Del. Ch. 2003); *Rambus v. Infineon*, 318 F.3d 1081, 1096, 1102 (Fed. Cir. 2003); ** *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999).

**[KODAK'S OBJECTIONS]**

Kodak objects to Philips proposed construction on the grounds that it does not cover circumstances involving omitted material facts.  A claim of negligent misrepresentation, or equitable fraud, requires proof of all of the elements of common law fraud except "that plaintiff need not demonstrate that the misstatement or <u>omission</u> was made knowingly or recklessly." *Williams v. White Oak Builders, Inc*., No. Civ.A. 17556,  2006 WL 1668348, \*7 (Del.Ch. June 6, 2006) (emphasis added); *Eames v. Nationwide Mut. Ins. Co. ,* 412 F.Supp.2d 431, 437 (D.Del.,2006); *Those Certain Underwriters at Lloyd's London v. National Installment Ins. Services, Inc.*  No. Civ.A. 19804-NC, 2007 WL 1207106, at \*4 (Del.Ch.Feb. 8, 2007).  Because negligent misrepresentation, like fraud, can be established with silence in the face of a duty to speak, Kodak's proposed language cures the deficiency in Philips' proposed instruction.

Kodak objects to Philips' instruction on the grounds that the proposed language from *Rambus v. Infineon* is taken out of context and is misleading.  The cited language relates to the Court's discussion regarding whether a member's plans or intentions to file or amend patent applications fell within the scope of the standards-setting committee's patent disclosure policy. *Rambus v. Infineon*, 318 F.3d 1081, 1102 (Fed. Cir. 2003).  The Court was merely observing that if a standards-setting body intends its patent disclosure policy to require disclosure of future intentions, it could be drafted accordingly.  *See id.*  In the present case, Philips' failed to disclose an existing patent which clearly falls within all relevant policies.

Further, the cited language is misleading.  In the same case, the Federal Circuit found that although the relevant patent disclosure policy statements did not impose any direct disclosure duty on members, "because [the] members treated the language … as imposing a duty," the court nevertheless found that a duty existed.  *Rambus*, 318 F.3d at 1098.  This finding contradicts the

72

proposed language that Philips takes out of context.

Next, Kodak objects to Philips' proposed language set forth in the last paragraph of its proposed instruction. The cited case, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993), involves the issue of what constitutes "sham" litigation for purposes of establishing an exception to *Noerr* antitrust immunity. *Id.* at 51. Nothing cited by Philips supports the proposition that this language is in any way applicable to Kodak's fraud counterclaim. This instruction is simply inappropriate.

Finally, Kodak objects to Philips' proposed language requiring Kodak to prove negligent misrepresentation "for each accused product." Philips provides no support for this language and it is inappropriate and confusing.

**[KODAK'S INSTRUCTION]**

Kodak alleges that Philips committed negligent misrepresentation, causing damage to Kodak. To prove that Philips committed negligent representation, Kodak must prove, by a preponderance of the evidence, all four of the following elements:

1. Philips had a duty to provide accurate information based on Kodak's financial interest in that information;

2. Philips supplied false information or omitted material facts;

3. Philips failed to exercise reasonable care in obtaining or communicating the information or omitting material facts; and

4. Kodak suffered a financial loss caused by justifiable reliance upon the false information or omission.

**Source:**      *Atwell v. Rhis, Inc.*, No. 02C-12-003WLW, 2006 WL 2686532, at *1 (Del. Super. Ct. Aug. 18, 2006); *H-M Wexford LLC v. Encorp, Inc*., 832 A.2d 129, 147 n.44 (Del. Ch.

2003); *In re Medical Wind Down Holdings III, Inc.*, 332 B.R. 98, 102 (Bankr. D.Del. 2005).

**[PHILIPS' OBJECTIONS]**

      The instruction with the asterisk in Philips' proposed instruction should be included to parallel the same duty referred to in the fraud instruction, based on *Rambus v. Infineon*, 318 F.3d 1081, 1096, 1102 (Fed. Cir. 2003).  Kodak also does not include the obligation to prove that Philips' claims of infringement were objectively baseless and were brought in an attempt to use the litigation to interfere directly with the business relationships of Kodak, as required by *Prof'l Real Estate Investors.*

**5.4    DAMAGES – FRAUD OR NEGLIGENT MISREPRESENTATION [DISPUTED]**
**[KODAK'S INSTRUCTION]**

If you find that Philips has committed fraud or negligent misrepresentation, then Kodak is entitled to damages that will put it in the same financial position that would have existed had Philips' representation been true.  In this case, Kodak would be entitled to be placed in the same financial position that would have existed if Philips had no patents applicable to the JPEG Standard.  Such damages may include costs Kodak has incurred associated with Philips' lawsuit and any damages associated with Kodak's alleged infringement of the '075 patent.

**Source:**    Adapted from Delaware Superior Court Instructions § 22.17.

**[PHILIPS' OBJECTIONS]**

Philips objects to this instruction, because the jury cannot determine damages for Kodak's fraud and negligent misrepresentation counterclaims.  Kodak claims as damages for its fraud and negligent misrepresentation counterclaims: (1) its litigation expenses in defending Philips infringement suit; and (2) whatever damages it may be required to pay for its infringement of Philips' patent.  For those two theories, the Court, not the jury, must determine the amount of damages, because Kodak will not be able to prove until after trial the amount of any adverse damage award for which it is liable or its litigation expenses.  The amount of damages for which Kodak is liable may be affected by decisions the Court must make if the jury were to find that Kodak willfully infringed Philips' patent, or if the Court were to find in favor of Kodak on its equitable defenses of equitable estoppel and laches. Likewise, the litigation expenses (even if Kodak were entitled to claim them as damages for its fraud and negligent misrepresentation counterclaims, which it is not) will not be quantifiable until after trial.  *See TruePosition Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 465 (D. Del. 2007) (deferring alleged relief for fraud, based on possible infringement damages and attorneys fees, for the Court's

consideration after trial); *Acierno v. Goldstein*, No. Civ. A. 20056-NC, 2005 WL 3111993, at *6 (Del. Ch. Nov. 16, 2005) ("Delaware law does not permit the fact finder to supply a damages figure based on 'speculation or conjecture' where the plaintiff has failed to meet its burden of proof on damages." (citing *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1950))).

Philips also objects to Kodak's proposed instruction that it is entitled to claim as damages under its fraud and negligent misrepresentation counterclaims the costs associated with defending against Philips' claims of infringement, which is contrary to the law. *See MBKS Co. Ltd. v. Reddy*, 924 A.2d 965, 977 (Del. Ch. 2007) (explaining that under the "American Rule" litigants generally bear their own costs of litigation); *Brice v. State Dept. of Correction*, 704 A.2d 1176, 1178 (Del. 1998) (same).

**[KODAK'S RESPONSE]**

Kodak's instruction is appropriate.  The Seventh Amendment guarantees a right to a jury trial for civil causes of action based on the common law.  U.S. Const. Amend. VII; *Benjamin v. Traffic Executive Ass'n Eastern Railroads*  869 F.2d 107, 114 (2d Cir. 1989).  Fraud and negligent misrepresentation "are claims at law which the Seventh Amendment right to a jury trial attaches."  *In re Tou Houa Thao,* 2006 WL 3716055 at *2 (Bkrtcy.W.D. Mo. 2006).  And the Seventh Amendment applies to statutory actions such as those brought under Delaware's Deceptive Trade Practices Act.  *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989). Kodak has a constitutional right to present its damages claims to the jury.   Kodak has quantified those damages and Philips has not sought summary judgment on this issue.  Therefore, Kodak is entitled to the instruction.

## 5.5     DECEPTIVE TRADE PRACTICES [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak alleges that Philips engaged in deceptive trade practices in violation of Delaware's Deceptive Trade Practices Act. To prove that Philips violated Delaware's Deceptive Trade Practices Act, for each accused product Kodak must prove, *by a preponderance of the evidence, all four of the following elements:

1) Philips caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2) Philips caused a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

3) Philips disparaged the goods, services, or business of another by false or misleading representation of fact; or

4) Philips engaged in any other conduct which similarly created a likelihood of confusion or of misunderstanding.

In determining whether a likelihood of confusion exists, you should consider the following factors:

1)  the degree of similarity between the marks;

2)  the similarity of products for which the name is used;

3)  the area and manner of concurrent use;

4)  the degree of care likely to be exercised by consumers;

5)  the strength of the plaintiff's mark;

6)  whether there has been actual confusion; and

7)  the intent of the party to palm off his products as those of another.

**Source:**    6 Del. C. § 2532(a)(2)-(a)(3), (a)(8), (a)(12); *Roberts v. Am. Home Warranty*, 514 A.2d 1132 (Del. Sup. Ct. 1986)**;** *Draper Commc'ns, Inc. v. Delaware Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1290 (Del.Ch. 1985); *Copi of Delaware, Inc. v. Kelly*, 1996 WL 633302, at *7 (Del. Ch. Oct. 25, 1996).

## [KODAK'S OBJECTIONS]

Kodak objects to Philips proposed instruction on the grounds that it improperly imposes a requirement to establish four separate elements. Each element identified by Philips constitutes a stand alone violation of the Delaware Deceptive Trade Practices Act.

Kodak also objects to Philips language requiring Kodak to prove a violation of the Act for "each accused product." Philips provides no support for this language and it is inappropriate and confusing.

Kodak objects to Philips' proposed instruction as misleading on the grounds that Philips includes language from the statute relating to violations involving trademark actions. The Delaware Deceptive Trade Practices Act is not solely limited to trademark actions. The Act forbids disparagement of the business of another by false or misleading misrepresentations of fact. *EDIX Media Group, Inc. v. Mahani,* 2006 WL 3742595, 12 (Del.Ch. Dec. 12, 2006). Kodak's proposed instruction excludes Philips' unnecessary and misleading language and applies the statute appropriately.

## [KODAK'S INSTRUCTION]

Kodak alleges that Philips engaged in deceptive trade practices in violation of Delaware's Deceptive Trade Practices Act. To prove that Philips violated Delaware's Deceptive Trade Practices Act, Kodak must prove, by a preponderance of the evidence, that:

1.    Philips caused a likelihood of confusion or of misunderstanding as to the applicability of the '075 patent to Kodak's products that practice the JPEG standard by failing to disclose the '075 patent to the JPEG committees and failing to raise the patent

78

with Kodak before 2002;

    2.      Philips caused a likelihood of confusion or of misunderstanding by attempting to enforce the '075 patent against Kodak's products that practice the JPEG Standard;

    3.      Philips disparaged the goods, services, or business of Kodak by false or misleading representation of fact; or

    4.      Philips engaged in any other conduct which similarly created a likelihood of confusion or of misunderstanding.

**Source:**    6 Del. C. § 2532(a)(2)-(a)(3), (a)(8), (a)(12); *Roberts v. Am. Warranty Corp.*, 514 A.2d 1132 (Del. Sup. Ct. 1986); *Draper Commc'ns, Inc. v. Delaware Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1290 (Del.Ch. 1985); *Copi of Delaware, Inc. v. Kelly*, No. 14529, 1996 WL 633302, at *7 (Del. Ch. Oct. 25, 1996).

## [PHILIPS' OBJECTIONS]

Kodak appears to be trying to rewrite the statute. Its changes to paragraph nos. 1 and 2 do not appear in the language of the statute. Kodak has provided no support for its changes. Moreover, to the extent Kodak proposes to include a failure to disclose standard for deceptive trade practices, it should at least parallel the failure to disclose standard set for fraud set forth above regarding a duty to speak.

## 6. DAMAGES - INFRINGEMENT

### 6.1 COMPENSATORY DAMAGES IN GENERAL [AGREED]

If you find that one or more of Kodak's products infringes at least one valid claim of the '075 patent, you must determine the amount of damages to be awarded to Philips for the infringement. By statute, the amount of those damages must be adequate to compensate Philips for the infringement, but in no event may it be less than a "reasonable royalty." Damages "adequate to compensate" means "full compensation for 'any damages' [Philips] suffered as a result of the infringement."

**Source:**          Uniform Instructions § 6.1; *Telcordia*, 04-876-GMS (D.I. 343) § 6.1.

## 6.2    REASONABLE CERTAINTY [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Philips bears the burden of proving patent infringement damages by a preponderance of the evidence and is entitled to all damages that can be proven with "reasonable certainty." You may base your evaluation of reasonable certainty on opinion evidence. The amount of damages must not be the result of mere speculation or guess-work. Philips, however, does not need to prove its damages with absolute certainty.

Any doubts regarding the computation of the amount of damages should be resolved against Kodak and in favor of Philips.

**Source:**    Adapted from Uniform Instructions § 6.3.

**[KODAK'S OBJECTIONS]**

Kodak objects to Philips' proposed instruction on the grounds that the last paragraph is vague as to the terms "any doubts" and "computation" and renders the entire instruction confusing and prejudicial to Kodak. This paragraph is also unnecessary because the instruction already indicates that Philips' is not required to prove its damages with absolute certainty. Finally, the Court recently struck a similar instruction. *See Telcordia Tech. Inc. v. Cisco Sys. Inc.*, 04-876-GMS (D.I. 343) § 6.2.

**[KODAK'S INSTRUCTION]**

Philips bears the burden of proving patent infringement damages by a preponderance of the evidence and is entitled to all damages that can be proven with "reasonable certainty." You may base your evaluation of reasonable certainty on opinion evidence. The amount of damages must not be the result of mere speculation or guess-work. Philips, however, does not need to prove its damages with absolute certainty.

**Source:**    Adapted from Uniform Instructions § 6.3.

**[PHILIPS' OBJECTIONS]**

Kodak has offered no support for its deletion of the last paragraph from this standard instruction, shown in grey background above.  *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("[W]hen the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.")

### 6.3     ENTIRE MARKET VALUE RULE [AGREED]

Under the "entire market value" rule, a patent owner may recover damages based on the value of an entire apparatus or product containing several features, even though only one feature is patented, where the unpatented components function together with the patented components in some manner to produce a desired end product or result.  A patent owner may also recover damages under the entire market value rule where the infringing component was the basis of customer demand for the product.

**Source:**     Adapted from Uniform Instructions § 6.4; *Telcordia*, 04-876-GMS (D.I. 343) § 6.4.

## 6.4     REASONABLE ROYALTY AS A MEASURE OF DAMAGES [DISPUTED] [PHILIPS' INSTRUCTION]

By statute, Philips is entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for any infringing sales.  A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms-length negotiation between Philips and Kodak, assuming that both parties were willing to enter into a license and with both operating under the assumption that the patent is valid and is being infringed.  While the date of the hypothetical negotiation is the date on which infringement began, all relevant business facts (even those after the date of the hypothetical negotiation) are deemed known to both parties.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of Kodak, and who was willing to take a license, would have known that Philips' patent was valid and enforceable, and infringed by Kodak.

In determining the damages award, you can take into consideration that Kodak did not voluntarily take a license and that litigation ensued.  However, you may not enhance damages due to the litigation.

**Source:**     35 U.S.C. § 284; adapted from Uniform Instructions § 6.10, *Telcordia*, 04-876-GMS (D.I. 343) § 6.5.

## [KODAK'S OBJECTIONS]

Kodak objects to the final paragraph in Philips' proposed instruction.  Philips' proposed language is not supported by 35 U.S.C. § 284,  Uniform Instruction § 6.10, nor the factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.* 318 F. Supp. 1116 (S.D.N.Y. 1970).  Further, Philips' proposed language is confusing and contradicts itself to the extent it instructs the jury to "take into consideration" that litigation ensued but to "not enhance" damages due to the litigation.

**[KODAK'S INSTRUCTION]**

By statute, Philips is entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for any infringing sales.  A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms-length negotiation between Philips and Kodak, assuming that both parties were willing to enter into a license and with both operating under the assumption that the patent is valid and is being infringed.  While the date of the hypothetical negotiation is the date on which infringement began, all relevant business facts (even those after the date of the hypothetical negotiation) are deemed known to both parties.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of Kodak, and who was willing to take a license, would have known that the '075 patent was valid and enforceable, and infringed by Kodak.

**Source:**    35 U.S.C. § 284; adapted from Uniform Instructions § 6.10; *Telcordia*, 04-876-GMS (D.I. 343) § 6.5.

**[PHILIPS' OBJECTIONS]**

Kodak has offered no support for departing form the instruction used in the *Telcordia* case in April 2007 by removing the last paragraph from the instruction shown in grey background above.

**6.5    FACTORS FOR DETERMINING REASONABLE ROYALTY [AGREED]**

In determining a reasonable royalty, some of the factors that may be considered are:

1.    the royalties received by the patentee for licensing others under the patent-in-suit;

2.    the rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

3.    the nature and scope of the license, as exclusive or non-exclusive, or as restricted or unrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    the licensor's established policy and marketing program to maintain his patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.    the duration of the patent and the term of the licenses;

8.    the established profitability of the product made under the patent, its commercial success, and its current popularity;

9.    the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.    the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.    the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.    the opinion testimony of qualified experts; and

15.    any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Source:**    Uniform Instructions § 6.11; *Telcordia*, 04-876-GMS (D.I. 343) § 6.6.

## 6.6     LACHES [DISPUTED]

**[KODAK'S INSTRUCTION]**

Kodak contends that  any damages should be limited based on the defense of laches.  A finding of laches bars Philips from collecting any damages occurring prior to when Philips filed this lawsuit – in this case, April 18, 2006.   To prove laches, Kodak must prove, by a preponderance of the evidence, that:

    1.     Philips engaged in unreasonable delay in filing suit based on when Philips knew or should have known that Kodak was infringing the '075 patent; and

    2.     Philips' unreasonable delay in filing suit resulted in material harm to Kodak.  This harm can be either economic or evidentiary.

If you find that Philips delayed over 6 years from the time it knew or should have known of Kodak's alleged infringement, laches is presumed and must be found absent credible evidence that either Philips' delay was reasonable or Kodak was not harmed.

**Source:**    *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992).

**[PHILIPS' OBJECTIONS]**

Laches is an equitable issue for the Court to decide, not the jury.  *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992)))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50). Philips does

not agree that equitable estoppel should be decided by the jury, and will oppose an advisory verdict on this equitable issue.  If the Court were to permit an advisory jury, Philips reserves its rights to object to this proposed instruction and to propose its own.

**[KODAK'S RESPONSE]**

Although Kodak acknowledges this is an equitable issue, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

## 6.7     CURATIVE INSTRUCTION [AGREED]

The fact that I have instructed you regarding damages should not be construed as indicating any view of the Court as to which party is entitled to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Philips.

**Source:**      Uniform Instructions § 6.13; *Telcordia*, 04-876-GMS (D.I. 343) § 6.7.
.

### 7.    DELIBERATION AND VERDICT

### 7.1    INTRODUCTION [AGREED]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  After you hear the closing arguments of counsel, you will return to the jury room to begin your deliberations.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  The first thing you should do is select a foreperson.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages should normally be sent to me through your foreperson.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

**Source:**    Adapted from Uniform Instructions § 7.1; *Telcordia*, 04-876-GMS (D.I. 343) § 7.1.

## 7.2    UNANIMOUS VERDICT [AGREED]

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence, to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

**Source:**        Uniform Instructions § 7.2.

### 7.3     DUTY TO DELIBERATE [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that -- your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**Source:**     Uniform Instructions § 7.3.

## 7.4     COURT HAS NO OPINION [AGREED]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

**Source:**     Uniform Instructions § 7.4.