IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

U.S. PHILIPS CORPORATION,                    )
                                             )
            Plaintiff,                       )
                                             )        Civil Action No. 06-251-GMS
      v.                                     )
                                             )        **REDACTED**
EASTMAN KODAK COMPANY,                       )        **PUBLIC VERSION**
                                             )
            Defendant.                       )

**FINAL PRETRIAL ORDER**

This matter having come before the Court at a pretrial conference held pursuant to Fed. R. Civ. P. ("Rule") 16, and Steven J. Balick of Ashby & Geddes, 500 Delaware Ave., P.O. Box 1150, Wilmington, Delaware 19899, (302) 654-1888, and Steven M. Anzalone of Finnegan, Henderson, Farabow, Garrett and Dunner, L.L.P., 901 New York Avenue, Washington, D.C. 20001, (202) 408-4000, having appeared as counsel for plaintiff U.S. Philips Corporation ("Philips"), and Francis DiGiovanni of Connolly, Bove, Lodge & Hutz, 1007 N. Orange Street, Wilmington, Delaware 19899, (302) 658-9141, and Sean C. Cunningham and John Allcock of DLA Piper, 401 B Street, Suite 1700, San Diego, California 92101, (619) 699-2700, having appeared as counsel for defendant Eastman Kodak Company ("Kodak"), the following actions were taken:

(1)    This is an action for patent infringement, including a claim for willful infringement. The jurisdiction of the Court is involved under 28 U.S.C. §§ 1331 and 1338. Jurisdiction is not disputed. In the event that liability is found on U.S. Patent No. 4,901,075 ("the '075 patent"), Philips will seek treble damages and attorneys' fees.

1

(2)    This is also an action for a declaratory judgment that the '075 patent is not infringed, is invalid, that Philips is estopped from enforcing the '075 patent based on equitable estoppel and that Kodak is entitled to relief for Philips' deceptive trade practices, fraud and negligent misrepresentation. The jurisdiction of the Court is involved under 28 U.S.C. §§1331, 1337, 1338 and 1367. Jurisdiction is not disputed. In the event that Philips is found to have engaged in deceptive trade practices, fraud or negligent misrepresentation, Kodak will seek damages and attorneys' fees.

(3)    The following stipulations and statements were submitted and are attached to and made a part of this Order:

(a)    a comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case (and which, in a jury trial, may be read to the jury by the Court or any party) [Exhibit A];

(b)    an agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to [Exhibits B1 - B3];

(c)    except for rebuttal exhibits, schedules in the form set out in the attached Schedule (c) of;

(1)    all exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charts and other items expected to be offered in evidence, and

(2)    any demonstrative evidence and experiments to be offered during trial [Exhibits C1 - C4];[1]

(d)    a list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list [Exhibits D1 - D2];

(e)    stipulations or statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stand [Exhibit E1 - E2];

(f)    a list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto [Exhibits F1 - F2];

(g)    an itemized statement of special damages [Exhibit G];

(h)    waivers of any claims or defenses that have been abandoned by any party [Exhibit H];

(i)    for the jury trial:

    (i)    trial briefs [Exhibits I1 - I2];

    (ii)    three sets of marked proposed jury instructions, verdict forms, and special interrogatories, if any [Exhibits I3 through I5]; and

    (iii)    a list of the questions the parties request the Court to ask prospective jurors in accordance with Fed. R. Civ. P. 47(a) and D. Del. LR 47.1(a) [Exhibit I6].

---

[1] The parties agree that they will disclose by e-mail to each other any witnesses that will be called two days prior to such witnesses being called. The parties also agree that they will disclose by e-mail to each other the demonstratives and exhibits intended to be used in direct examination by 7:00 p.m. the day before such witnesses will be called and the demonstratives and exhibits are intended to be used.

(j)    for equitable issues, proposed Findings of Fact and Conclusions of Law [Exhibit J1]. Kodak plans to submit, and Philips plans to submit a supplemental, proposed Findings of Fact and Conclusions of Law on any equitable issues following trial;

(k)    a statement summarizing the history and status of settlement negotiations, indicating whether further negotiations are ongoing and likely to be productive [Exhibit K];

(l)    a statement that each party has completed discovery, including the depositions of expert witnesses [Exhibit L]; and

(m)    motions *in limine*: Motions *in limine* will be briefed and filed in accordance with the schedule set forth in the Revised Scheduling Order (D.I. 72).

(4)    Trial of this case is expected to take 7 days.

(5)    Indicate the type of trial by placing an X in the appropriate box:

Jury    X               Non-Jury    X[2]

(6)    The parties recommend that 8 jurors be selected at the commencement of the trial and that all 8 jurors deliberate.

(7)    This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

---

[2] Philips' position is that infringement, validity, certain defenses, Kodak's state law claims, and damages should be tried to the jury; equitable issues and defenses should be tried to the bench. Kodak's position is that a separate trial for the equitable issues is unnecessary and that all issues should be tried before the jury.

(8)    Possibility of settlement of this case was considered by the parties.

_____

Chief Judge

Date:_____

ASHBY & GEDDES

/s/ Tiffany Geyer Lydon
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
(302) 654-1888
Wilmington, Delaware 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Thomas W. Winland
Steven M. Anzalone
Frank A. De Costa, III
Kenneth M. Frankel
Joyce Craig
Matthew A. Levy
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000

CONNOLLY BOVE LODGE & HUTZ, LLP

/s/ Francis DiGiovanni
_____
Francis DiGiovanni (I.D. #3189)
The Nemours Building
1007 N. Orange Street
Wilmington, Delaware 19899
(302) 658-9141
fdigiovanni@cblh.com

*Attorneys for Defendant*

*Of Counsel:*

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
T. Jesse Hindman
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 699-2700

188759.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## EXHIBIT A: UNDISPUTED FACTS

1.    Plaintiff U.S. Philips Corporation ("Philips") is a corporation organized and existing under the laws of Delaware, with a place of business at 1251 Avenue of the Americas, New York, New York 10020.

2.    Defendant and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") is a corporation organized and existing under the laws of New Jersey, having an office and a principal place of business at 343 State Street, Rochester, New York 14650.

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and venue is proper pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

4.    On April 18, 2006, Philips filed a Complaint against Kodak alleging infringement of U.S. Patent No. 4,901,075 ("the '075 patent"). Philips' Complaint also alleges that Kodak willfully infringed the '075 patent.

5.    On October 17, 2006, Kodak filed its Answer to Philips' Complaint denying infringement and setting forth Kodak's defenses including invalidity and unenforceability of the

'075 patent.  In addition, Kodak alleged counterclaims against Philips based on fraud and other state law causes of action.

6.    The application for the '075 patent was filed on September 11, 1987.

7.    The '075 patent issued on February 13, 1990.

8.    The '075 patent expired on September 11, 2007.

9.    Peter Vogel is named as the inventor on the face of the '075 patent.

10.    Peter Vogel was an employee of Philips' German subsidiary, Philips Komunikations Industrie AG, or "PKI."

11.    Peter Vogel assigned any rights he had in the '075 patent to U.S. Philips Corporation.  Philips currently holds any such rights.

12.    Philips asserts only Claims 3, 4, 7, 8, and 11 of the '075 patent against Kodak.

13.    CCITT Recommendation T.81 was published on September 21, 1992, and sets forth specific procedures for the encoding of images.

14.    ISO/IEC International Standard 10918-1 was published on February 15, 1994, and sets forth specific procedures for the encoding of images.

15.    ISO/IEC International Standard 10918-1, CCITT Recommendation T.81 and BS ISO/IEC 10918-1:1994 set forth identical procedures for the encoding of images.

16.    ISO/IEC International Standard 10918-1 and CCITT Recommendation T.81 are collectively and individually referred to as "the JPEG standard."

17.    Philips' allegations of infringement are based on Kodak's implementation of the JPEG standard into its products and services.

18.    "Scene Adaptive Coder" by W.H. Chen and W.K. Pratt ("Chen and Pratt Article") was published in March 1984.

19.    U.S. Patent Nos. 4,101,934, 4,316,222, 4,394,774, and 4,698,672 (Chen) were cited during the prosecution of the '075 patent.

20.    "Codec Squeezes Color Teleconferencing Through Digital Telephone Lines" by J. Anderson et al. was published on January 26, 1984.

21.    U.S. Patent No. 4,698,672 to Chen was filed on October 27, 1986 and issued on October 6, 1987.

22.    U.S. Patent No. 3,984,833 to Van Voorhis was filed on July 17, 1975 and issued on October 5, 1976.

23.    U.S. Patent No. 4,420,771 to Pirsch was filed on February 9, 1981 and issued on December 13, 1983.

24.    U.S. Patent No. 4,363,036 to Subramaniam was filed on March 16, 1981 and issued on December 7, 1982.

25.    U.S. Patent No. 4,316,222 to Subramaniam was filed on December 7, 1979 and issued on February 16, 1982.

26.    U.S. Patent No. 4,092,676 to Saran was filed on December 29, 1976 and issued on May 30, 1978.

27.    U.S. Patent No. 4,136,363 to Saran was filed on December 29, 1976 and issued on January 23, 1979.

28.    U.S. Patent No. 4,494,151 to Liao was filed on February 9, 1982 and issued on January 15, 1985.

29.    "Upper Bound, Lower Bound and Run-Length Substitution Coding" by Henry J. Liao was published in 1977.

30.    The JPEG standard uses a lossy image compression algorithm that employs a block-wise DCT (Discrete Cosine Transform), followed by quantization and Huffman coding of the transform coefficients.

31.    The minimum capabilities of the JPEG standard's lossy image compression algorithm that employs a block-wise DCT (Discrete Cosine Transform), followed by quantization and Huffman coding of the transform coefficients, is known as "Baseline JPEG."

32.    The functional specification for Baseline JPEG is given in Annex F of the JPEG standard.

33.    Any DCT-based JPEG decoder must support Baseline JPEG.

34.    Each 8x8 DCT (Discrete Cosine Transform) block in the JPEG standard contains 64 coefficients. The first coefficient, which represents the average value of the block, is called the DC coefficient. The remaining 63 coefficients are called AC coefficients.

35.    Huffman coding must be used for encoding in Baseline JPEG.

36.    Kodak has imported, made, offered for sale, and/or sold in the United States hardware and software products, such as digital cameras, file scanners, document scanners, software, and scanning services that are compliant with Baseline JPEG.

# EXHIBIT B1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>EASTMAN KODAK COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 06-251 (GMS)<br>)<br>)<br>)<br>)<br>)<br>) |

**EXHIBIT B1:**
**AGREED STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

## I.  CONTESTED ISSUES OF FACT ON INFRINGEMENT

1.  Whether Kodak directly infringed claims 3, 4, 7, 8, or 11 of the '075 patent either literally or under the doctrine of equivalents.

2.  Whether Kodak induced infringement of claims 3, 4, 7, 8, or 11 of the '075 patent.

3.  Whether Kodak engaged in contributory infringement of claims 3, 4, 7, 8, or 11 of the '075 patent.

## II.  CONTESTED ISSUES OF FACT AND LAW ON DAMAGES, WILLFUL INFRINGEMENT, LACHES AND PATENT MARKING

### A.  Contested Issues of Fact

4.  What amount of monetary damages would compensate Philips for Kodak's alleged infringement of the '075 patent.

5.  Whether Kodak willfully infringed the '075 patent.

6.  Whether Kodak is entitled to a presumption of laches.

7.  If a presumption of laches arises, whether it is overcome.

8. Whether Philips delayed filing suit for an unreasonable and inexcusable length of time from when it knew or reasonably should have known of its patent infringement claim against Kodak.

## B. Contested Issues of Law

9. If Kodak is found to have willfully infringed the '075 patent, whether any damages for which Kodak is found liable should be trebled or increased under 35 U.S.C. § 284.

10. If Kodak is found to have willfully infringed the '075 patent, whether Kodak is barred from asserting any equitable defense because it acted with unclean hands.

11. Whether the case is exceptional under 35 U.S.C. § 285, entitling Philips or Kodak to recover attorneys' fees, expenses, and costs.

12. Whether pre-suit damages are barred under the equitable doctrine of laches.

## III. CONTESTED ISSUES OF FACT AND LAW ON VALIDITY

### A. Contested Issues of Fact

13. Whether Kodak has proven by clear and convincing evidence that the references relied on by Kodak are prior art to the '075 patent under 35 U.S.C. § 102.

14. What is the scope and content of the prior art to the '075 patent.

15. What are the differences between the prior art and claims 3, 4, 7, 8, and 11 of the '075 patent.

16. What is the level of ordinary skill in the art related to the subject matter of claims 3, 4, 7, 8, and 11 of the '075 patent.

17. What objective indicia support nonobviousness of the claimed invention of claims 3, 4, 7, 8, and 11 of the '075 patent.

**B. Contested Issues of Law**

18. Whether Kodak has proven by clear and convincing evidence that claims 3, 4, 7, 8, or 11 of the '075 are invalid under 35 U.S.C. § 103 as obvious in view of the prior art references relied upon by Kodak.

19. Whether Kodak has proven by clear and convincing evidence that claims 3 or 8 of the '075 patent are invalid under 35 U.S.C. § 112 as indefinite.

## IV. CONTESTED ISSUES OF FACT AND LAW ON KODAK'S DEFENSES AND COUNTERCLAIMS RELATING TO STANDARDS SETTING

**A. Equitable Estoppel/Waiver (4th and 7th Aff. Def.; 3d Cclm.)**

**1. Contested Issues of Fact**

20. Whether facts exist respecting the equities of the parties that the Court should consider in exercising its discretion in deciding whether to allow this equitable defense.

**2. Contested Issues of Law**

21. Whether Philips is equitably estopped from asserting that Kodak, through its implementation of the JPEG Standard into its products, infringes the '075 patent.

**B. Implied License (6th and 7th Aff. Def., 4th Cclm.)**

**1. Contested Issues of Fact**

22. Whether Philips engaged in any conduct during or after the development and adoption of the JPEG Standard from which Kodak could reasonably infer that Philips consented to Kodak's use of the '075 patent.

23. Whether Kodak reasonably relied upon such conduct in investing in and developing its products that comply with the JPEG Standard.

24. Whether Kodak would be harmed if Philips is allowed to proceed with its infringement claim.

### 2. Contested Issues of Law

25. Whether Kodak has an implied license to practice the '075 patent.

## C. Unclean Hands (8th Aff. Def.)

26. Whether Philips is barred from recovery for infringement on the ground of unclean hands.

## D. Fraud (6th Cclm.)

27. Whether Kodak is entitled to an injunction prohibiting Philips from asserting the '075 patent against Kodak for practicing the JPEG standard.

28. Whether Kodak's counterclaim for fraud is barred by the statute of limitations.

## E. Negligent Misrepresentation (7th Cclm.)

29. Whether Kodak is entitled to an injunction prohibiting Philips from asserting the '075 patent against Kodak for practicing the JPEG standard.

30. Whether Kodak's counterclaim for negligent misrepresentation is barred by the statute of limitations.

## F. Deceptive Trade Practices (5th Cclm.)

### 1. Contested Issues of Fact

31. Whether Philips' '075 patent infringement claims in this lawsuit are objectively baseless and were brought and maintained in an attempt to interfere directly with the business relationships of Kodak.

### 2. Contested Issues of Law

32. Whether Kodak is entitled to treble damages under Del. Code Ann. tit. 6, § 2533.

33. Whether Kodak is entitled to an injunction prohibiting Philips from asserting the '075 patent against Kodak for practicing the JPEG Standard.

34. Whether Del. Code Ann. tit. 6, § 2532 applies to the conduct that Kodak alleges.

35. Whether allegedly causing a likelihood of confusion or misunderstanding as to the infringement, validity and enforceability of a patent is within the scope of Del. Code Ann. tit. 6, § 2532.

36. Whether allegedly disparaging Kodak by filing an infringement Complaint is within the scope of Del. Code Ann. tit. 6, § 2532.

37. Whether Kodak's claim that Philips violated Del. Code Ann. tit. 6, § 2532 by filing its Complaint and pursuing this litigation is preempted by federal patent law.

38. Whether Philips' filing of its Complaint and pursuing this litigation is protected by the First Amendment to the Constitution.

39. Whether Kodak faces the prospect of any future harm by any of the alleged conduct such that an injunction would be warranted.

40. Whether Kodak's counterclaim under Del. Code Ann. tit. 6, § 2532 is barred by the statute of limitations.

# EXHIBIT B2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 06-251 (GMS) |
| ) | |
| v. ) | |
| ) | |
| EASTMAN KODAK COMPANY, ) | |
| ) | |
| Defendant. ) | |

## EXHIBIT B2: PLAINTIFF PHILIPS'
## STATEMENT OF CONTESTED ISSUES OF FACT AND LAW

## I. CONTESTED ISSUES OF FACT ON INFRINGEMENT

1.  Whether Kodak directly infringed claims 3, 4, 7, 8, or 11 of the '075 patent either literally or under the doctrine of equivalents.

2.  Whether Kodak induced infringement of claims 3, 4, 7, 8, or 11 of the '075 patent.

3.  Whether Kodak engaged in contributory infringement of claims 3, 4, 7, 8, or 11 of the '075 patent.

## II. CONTESTED ISSUES OF FACT AND LAW ON DAMAGES, WILLFUL INFRINGEMENT, LACHES AND PATENT MARKING

### A. Contested Issues of Fact

4.  What amount of monetary damages would compensate Philips for Kodak's alleged infringement of the '075 patent.

5.  Whether Kodak willfully infringed the '075 patent.

6.  Whether Kodak is entitled to a presumption of laches.

7.  If a presumption of laches arises, whether it is overcome.

8. Whether Philips delayed filing suit for an unreasonable and inexcusable length of time from when it knew or reasonably should have known of its patent infringement claim against Kodak.

9. Whether Kodak was materially prejudiced, economically or by loss of evidence, as a result of the amount of time between when Philips knew or reasonably should have known of its patent infringement claim against Kodak and when Philips sued.

## B. Contested Issues of Law

10. If Kodak is found to have willfully infringed the '075 patent, whether any damages for which Kodak is found liable should be trebled or increased under 35 U.S.C. § 284.

11. If Kodak is found to have willfully infringed the '075 patent, whether Kodak is barred from asserting any equitable defense because it acted with unclean hands.

12. Whether the case is exceptional under 35 U.S.C. § 285, entitling Philips or Kodak to recover attorneys' fees, expenses, and costs.

13. Whether pre-suit damages are barred under the equitable doctrine of laches.

## III. CONTESTED ISSUES OF FACT AND LAW ON VALIDITY

### A. Contested Issues of Fact

14. Whether Kodak has proven by clear and convincing evidence that the references relied on by Kodak are prior art for the '075 patent under 35 U.S.C. § 102.

15. Whether Kodak has proven by clear and convincing evidence that any of the references relied on by Kodak anticipate claims 3, 4, 7, or 8 of the '075 patent under 35 U.S.C. § 102.

16. What is the scope and content of the prior art to the '075 patent.

17. What are the differences between the prior art and claims 3, 4, 7, 8, and 11 of the '075 patent.

18. What is the level of ordinary skill in the art related to the subject matter of claims 3, 4, 7, 8, and 11 of the '075 patent.

19. What objective indicia support nonobviousness of the claimed invention of claims 3, 4, 7, 8, and 11 of the '075 patent.

**B.  Contested Issues of Law**

20. Whether Kodak has proven by clear and convincing evidence that claims 3, 4, 7, 8, or 11 of the '075 are invalid under 35 U.S.C. § 103 as obvious in view of the prior art references relied upon by Kodak.

21. Whether Kodak has proven by clear and convincing evidence that claims 3 or 8 of the '075 patent are invalid under 35 U.S.C. § 112 as indefinite.

## IV. CONTESTED ISSUES OF FACT AND LAW ON KODAK'S DEFENSES AND COUNTERCLAIMS RELATING TO STANDARDS SETTING

**A.  Equitable Estoppel/Waiver (4th and 7th Aff. Def.; 3d Cclm.)**

**1.  Contested Issues of Fact**

22. Whether Philips had a duty to disclose the '075 patent to the appropriate standards organization(s) during the development and adoption of the JPEG standard.

23. Whether Philips engaged in any misleading conduct before the JPEG Committee by violating a duty of disclosure that led Kodak to reasonably infer that Philips did not intend to enforce its '075 patent against Kodak's products or services that comply with the JPEG standard.

24. Whether Kodak reasonably relied upon any allegedly misleading conduct by Philips before the JPEG Committee by violating a duty of disclosure to infer that Philips did not intend to enforce a patent against Kodak's products or services that comply with the JPEG standard.

3

25. Whether Kodak would be materially prejudiced if Philips is permitted to proceed with its infringement claim.

26. Whether facts exist respecting the equities of the parties that the Court should consider in exercising its discretion in deciding whether to allow this equitable defense.

   **2.  Contested Issues of Law**

27. Whether Philips is equitably estopped from asserting that Kodak, through its implementation of the JPEG Standard into its products, infringes the '075 patent.

**B.  Implied License (6th and 7th Aff. Def., 4th Cclm.)**

   **1.  Contested Issues of Fact**

28. Whether Philips engaged in any conduct during and after the development and adoption of the JPEG Standard from which Kodak could reasonably infer that Philips consented to Kodak's use of the '075 patent.

29. Whether Kodak reasonably relied upon such conduct in investing in and developing its products that comply with the JPEG Standard.

30. Whether Kodak would be harmed if Philips is allowed to proceed with its infringement claim.

31. Whether facts exist respecting the equities of the parties that the Court should consider in exercising its discretion in deciding whether to allow this equitable defense.

   **2.  Contested Issues of Law**

32. Whether Kodak has an implied license to practice the '075 patent.

## C. Unclean Hands (8th Aff. Def.)

### 1. Contested Issues of Fact

33. Whether Philips engaged in any unconscionable acts that had an immediate and necessary relation to Philips' claim for relief against Kodak for patent infringement.

34. Whether facts exist respecting the equities of the parties that the Court should consider in exercising its discretion in deciding whether to allow this equitable defense.

### 2. Contested Issues of Law

35. Whether Philips is barred from recovery for infringement on the ground of unclean hands.

## D. Fraud (6th Cclm.)

### 1. Contested Issues of Fact

36. Whether Philips had a duty to disclose the '075 patent to the appropriate standards organization(s) during the development and adoption of the JPEG standard.

37. Whether Philips deliberately concealed from the appropriate standards organization(s) during the development and adoption of the JPEG standard any material facts regarding the '075 patent in the face of a duty to disclose those facts.

38. Whether Philips did not provide such a disclosure with reckless indifference to the truth.

39. Whether Philips did not provide such a disclosure with an intent to induce Kodak to develop products compliant with the JPEG Standard.

40. Whether Kodak justifiably relied upon any allegedly fraudulent conduct by Philips before the JPEG committee during the development and adoption of the JPEG

standard to conclude that Philips did not have any patents potentially covering to the proposed JPEG standard.

41. Whether Philips' '075 patent infringement claims in this lawsuit are objectively baseless and were brought and maintained in an attempt to interfere directly with the business relationships of Kodak.

## 2. Contested Issues of Law

42. Whether Kodak is entitled to an injunction prohibiting Philips from asserting the '075 patent against Kodak for practicing the JPEG standard.

43. Whether Kodak's counterclaim for fraud is barred by the statute of limitations.

44. Whether Kodak's claim that Philips engaged in fraud by filing its Complaint and pursuing this litigation is preempted by federal patent law.

45. Whether Philips' filing of its Complaint and pursuing this litigation is protected by the First Amendment to the Constitution.

46. Whether Kodak is entitled to its attorneys' fees to defend Philips' infringement claims in this litigation as damages for fraud.

## E. Negligent Misrepresentation (7th Cclm.)

### 1. Contested Issues of Fact

47. Whether Philips had a particular duty to provide a disclosure of the '075 patent to the appropriate standards organization(s) during the development and adoption of the JPEG standard based on Kodak's financial interest in that information.

48. Whether Philips supplied false information to the appropriate standards organization(s) during the development and adoption of the JPEG standard regarding the '075 patent.

49. Whether Philips failed to exercise reasonable care in communicating information regarding the '075 patent to the appropriate standards organization(s) during the development and adoption of the JPEG standard.

50. Whether Kodak justifiably relied upon the information communicated by Philips to the appropriate standards organization(s) during the development and adoption of the JPEG standard regarding the '075 patent.

51. Whether Philips' '075 patent infringement claims in this lawsuit are objectively baseless and were brought and maintained in an attempt to interfere directly with the business relationships of Kodak.

### 2. Contested Issues of Law

52. Whether Kodak is entitled to an injunction prohibiting Philips from asserting the '075 patent against Kodak for practicing the JPEG standard.

53. Whether Kodak's counterclaim for negligent misrepresentation is barred by the statute of limitations.

54. Whether Kodak's claim that Philips engaged in negligent misrepresentation by filing its Complaint and pursuing this litigation is preempted by federal patent law.

55. Whether Philips' filing of its Complaint and pursuing this litigation is protected by the First Amendment to the Constitution.

56. Whether Kodak is entitled to its attorneys' fees to defend Philips' infringement claims in this litigation as damages for negligent misrepresentation.

## F. Deceptive Trade Practices (5th Cclm.)

### 1. Contested Issues of Fact

57. Whether Philips caused a likelihood of confusion or misunderstanding as to the validity and enforceability of the '075 patent by its conduct relating to the

development and adoption of the JPEG standard or by its dealings with Kodak relating to the '075 patent after the JPEG standard was set, in violation of Del. Code Ann. tit. 6, § 2532.

58. Whether Philips disparaged Kodak's digital imaging products and services through Philips' Complaint in this lawsuit, in violation of Del. Code Ann. tit. 6, § 2532.

59. Whether Philips brought this lawsuit and is maintaining this litigation in bad faith.

60. Whether Philips' '075 patent infringement claims in this lawsuit are objectively baseless and were brought and maintained in an attempt to interfere directly with the business relationships of Kodak.

61. Whether Philips willfully engaged in a deceptive trade practice in violation of Del. Code Ann. tit. 6, § 2532

## 2. Contested Issues of Law

62. Whether Kodak is entitled to treble damages under Del. Code Ann. tit. 6, § 2533.

63. Whether Kodak is entitled to an injunction prohibiting Philips from asserting the '075 patent against Kodak for practicing the JPEG Standard.

64. Whether Del. Code Ann. tit. 6, § 2532 applies to the conduct that Kodak alleges.

65. Whether allegedly causing a likelihood of confusion or misunderstanding as to the infringement, validity and enforceability of a patent is within the scope of Del. Code Ann. tit. 6, § 2532.

66. Whether allegedly disparaging Kodak by filing an infringement Complaint is within the scope of Del. Code Ann. tit. 6, § 2532.

67. Whether Kodak's claim that Philips violated Del. Code Ann. tit. 6, § 2532 by filing its Complaint and pursuing this litigation is preempted by federal patent law.

68. Whether Philips' filing of its Complaint and pursuing this litigation is protected by the First Amendment to the Constitution.

69. Whether Kodak faces the prospect of any future harm by any of the alleged conduct such that an injunction would be warranted.

70. Whether Kodak's counterclaim under Del. Code Ann. tit. 6, § 2532 is barred by the statute of limitations.

71. Whether Kodak is entitled to its attorneys' fees to defend Philips' infringement claims in this litigation as damages for a violation of Del. Code Ann. tit. 6, § 2532.

# EXHIBIT B3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT B3:**
**KODAK'S STATEMENT OF CONTESTED ISSUES OF FACT AND LAW NOT
AGREED TO**

## I. CONTESTED ISSUES OF FACT ON DAMAGES, WILLFUL INFRINGEMENT, LACHES AND PATENT MARKING

1. What amount of monetary damages would compensate Kodak for Philips' alleged fraud.

2. What amount of monetary damages would compensate Kodak for Philips' alleged negligent misrepresentation.

3. Whether Kodak was materially prejudiced, economically or by loss of evidence, as a result of Philips' unreasonable and inexcusable delay in filing suit.

4. Whether Philips' claims for relief are barred, in whole or in part, by failing to comply with the marking and notice requirements of 35 U.S.C. § 287.

## II. CONTESTED ISSUES OF FACT ON VALIDITY

5. Whether Kodak has proven by clear and convincing evidence that any of the references relied on by Kodak anticipate claims 3, 4, 7, 8, or 11 of the '075 patent under 35 U.S.C. § 102.

### III. CONTESTED ISSUES OF FACT AND LAW ON KODAK'S DEFENSES AND COUNTERCLAIMS RELATING TO STANDARDS SETTING

**A. Equitable Estoppel/Waiver (4th and 7th Aff. Def.; 3d Cclm.)**

6. Whether Philips had a duty to disclose to the ISO, CCITT, BSI and/or the JPEG Committee, the '075 patent's alleged applicability to the JPEG Standard.

7. Whether Philips' failure to disclose the '075 patent's alleged applicability to the ISO, CCITT, BSI and/or the JPEG Committee led Kodak to reasonably infer that Philips did not believe that the '075 patent applied to the JPEG Standard.

8. Whether Kodak relied upon Philips' failure to disclose the '075 patent to the ISO, CCITT, BSI and/or the JPEG Committee.

9. Whether Kodak was harmed by Philips' failure to disclose the '075 patent to the ISO, CCITT, BSI and/or the JPEG Committee.

**B. Unclean Hands (8th Aff. Def.)**

10. Whether Philips engaged in any inequitable or bad faith acts that have an immediate and necessary relation to Philips' claim for relief against Kodak for patent infringement.

**C. Fraud (6th Cclm.)**

11. Whether Philips had a duty to disclose to the ISO, CCITT, BSI and/or the JPEG Committee, the '075 patent's alleged applicability to the JPEG Standard.

12. Whether Philips acted with knowledge when it failed to disclose the '075 patent to the ISO, CCITT, BSI and/or the JPEG Committee, or acted with reckless indifference to the truth.

13. Whether Philips intentionally concealed the '075 patent.

14. Whether Kodak justifiably relied upon Philips' failure to disclose the '075 patent to the ISO, CCITT, BSI and/or the JPEG Committee.

15. Whether Kodak suffered harm as a result of its reliance on Philips' failure to disclose the '075 patent to the ISO, CCITT, BSI and/or the JPEG Committee, and if so, in what amount.

**D. Negligent Misrepresentation (7th Cclm.)**

16. Whether Philips had a duty to disclose to the ISO, CCITT, BSI and/or the JPEG Committee, the '075 patent's alleged applicability to the JPEG Standard.

17. Whether Philips failed to exercise reasonable care when it failed to disclose the '075 patent's alleged applicability to the JPEG Standard to the ISO, CCITT, BSI or the JPEG Committee.

18. Whether Kodak suffered harm as a result of its reliance on Philips' failure to disclose the '075 patent to the ISO, CCITT, BSI and/or the JPEG Committee, and if so, in what amount.

**E. Deceptive Trade Practices (5th Cclm.)**

19. Whether Philips caused a likelihood of confusion or misunderstanding as to the validity and enforceability of the '075 patent by its silence regarding the existence and relevance of the '075 patent to the JPEG standard during JPEG standardization, in violation of Del. Code Ann. tit. 6, § 2532.

20. Whether Philips caused a likelihood of confusion or misunderstanding as to the validity and enforceability of the '075 patent by its continued silence during the years Kodak incorporated the JPEG Standard into its products and services, in violation of Del. Code Ann. tit. 6, § 2532.

21. Whether Philips disparaged Kodak's goods, services, and business by falsely and misleadingly alleging that Kodak's goods infringe the '075 patent, in violation of Del. Code Ann. tit. 6, § 2532.

22. Whether Philips has acted in bad faith in engaging in the aforementioned deceptive trade practices.

# EXHIBIT C1

U.S. Philips Corporation v. Eastman Kodak Company
Philip's Trial Exhibit List with Kodak's Objections [Exhibit C1]
(Dated March 3, 2008)[1]

| Trialx# | Def. Trial# (DTX) | Docdate | Description | Begdoc# | Enddoc# | Depexh# | Objected | Identified | Admitted |
|---|---|---|---|---|---|---|---|---|---|
| PX 0001 | | 1/31/2006 | Certified Copy of U.S. Patent No. 4,901,075 for Method and Apparatus for Bit Rate Reduction, issued to Vogel on February 13, 1990 | PHLPSKD_00005022 | PHLPSKD_00005032 | | | | |
| PX 0002 | | 2/26/2007 | Certified Copy of U.S. Patent File History for 4,901,075, Application Number 07/096,177 for Method and Apparatus for Bit Rate Reduction, filed September 11, 1987, issued February 13, 1990 | PHLPSKD_00089919 | PHLPSKD_00090110 | | | | |

---

[1] **Legend of Kodak's Objections:**

A – Lacks Authenticity (FRE 901/902)
H - Hearsay (FRE 802/805)
UP – Unduly Prejudicial/Confusing/Waste of Time (FRE 403)
NP – Philips Did Not Timely Produce This Exhibit (FRCP 37(c)(1))
UPA – Undisclosed Prior Art
M - Multiple Documents

F – Lacks Foundation/ Speculative (FRE 602)
R – Lacks Relevance (FRE 401/402)
CL - Conclusion of Law
P - Partial Document/Lacks Context (FRE 106)
I - Incorrectly Identified
Q - Quality

In addition to these objections, Kodak incorporates any objections made in its motions *in limine* as they pertain to the trial exhibits.

| PX 0003 | | 1/26/2006 | Certified Copy of U.S. Patent Assignment from Peter Vogel to U.S. Philips Corporation for Serial No. 096,177, for Method of and circuit arrangement for bit rate reduction, filed September 11, 1987 | PHLPSKD_00005250 | PHLPSKD_00005253 | | | | |
| PX 0004 | | 9/13/1986 | Certified German Patent Application for Procedures for Bit Rate Reduction PHD 86 327, file reference P 36 31 252.5 | PHLPSKD_00009229 | PHLPSKD_0009274 | | F, A, H | | |
| PX 0005 | | 9/13/1986 | Certified English Translation of German Patent Application for: Procedures for Bit Rate Reduction PHD 86 327, file reference P 36 31 252.5 | PHLPSKD_00080967 | PHLPSKD_00080973 | | F, A, H | | |
| PX 0006 | | 11/8/1986 | Certified German Patent Application for Method for Bit Rate Reduction PHD 86 336, file reference P36 38 127.6, Addendum to Patent Application P 36 31 252.5 | PHLPSKD_00009237 | PHLPSKD_00009250 | | F, A, H | | |
| PX 0007 | | 11/8/1986 | Certified English Translation of German Patent Application for Method for Bit Rate Reduction PHD 86 336, file reference P 36 38 127.6, Addendum to Patent Application P 36 31 252.5 | PHLPSKD_00080945 | PHLPSKD_00080957 | | F, A, H | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PX 0008 | | 5/23/1987 | Certified German Patent Application for Procedures for Bit Rate Reduction PHD 87-109 file reference P 37 17 399.5 | PHLPSKD_00009212 | PHLPSKD_00009220 | | F, A, H | |
| PX 0009 | | 5/23/1987 | Certified English Translation of German Patent Application for Procedures for Bit Rate Reduction PHD 87-109 file reference P 37 17 399.5 | PHLPSKD_00080958 | PHLPSKD_00080966 | | F, A, H | |
| PX 0010 | | 4/18/2006 | Complaint including Exhibit A: US Patent 4,901,075 | | | | R | |
| PX 0011 | | 10/17/2006 | Excerpts from Defendant Eastman Kodak Company's Answer and Counterclaims; Demand for Jury Trial | | | | R, P | |
| PX 0012 | | 11/6/2006 | Philips' Reply to Eastman Kodak Company's Counterclaims | | | | R | |
| PX 0013 | | 11/4/2007 | Kodak's Accused Product List | | | | A, I | |
| PX 0014 | | 11/19/2007 | Kodak's Log of Privileged Documents | | | | R, F, H | |
| PX 0015 | DTX 174 | | Issues and Future Directions in JPEG Image Coding | IBM 8810000569 | IBM 8810000574 | Mitchell 4 | | |
| PX 0016 | DTX 279 | | 2006 Big Bundle Roadmap | | | Scott 3 | | |
| PX 0017 | DTX 280 | | Project Charter-Corvette | KDK 426577 | KDK 426577 | Scott 4 | | |
| PX 0018 | DTX 281 | | Project Charter-Mustang | KDK 426252 | KDK 426559 | Scott 5 | P, I | |
| PX 0019 | DTX 283 | | US Go-To-Market Plan C315 | | | Scott 7 | | |

REDACTED

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0020 | DTX 291 | | Kodak D&AI Market Requirements Document M3 Camera | Kodak_189193 | Kodak_189219 | Scott 15 | | | |
| PX 0021 | DTX 219 | | License Agreement between Eastman Kodak Company and ▮ | Kodak_019047 | Kodak_019062 | | | | |
| PX 0022 | | 5/12/2004 | License Agreement between Eastman Kodak Company and ▮ | KODAK_019117 | KODAK_019134 | | R, A, F, H | | |
| PX 0023 | DTX 224 | 3/21/2005 | License Agreement between Eastman Kodak Company and ▮ | KODAK_019170 | KODAK_019187 | | | | |
| PX 0024 | | 8/21/2002 | License Agreement between Eastman Kodak Company and ▮ | KODAK_021969 | KODAK_021988 | | R, A, F, H | | |
| PX 0025 | | 9/1/2003 | License Agreement between Eastman Kodak Company and ▮ | KODAK_023184 | KODAK_023292 | | P, I, R, A, F, H | | |
| PX 0026 | DTX 240 | | Data Compression Algorithm Evaluation | Kodak_279492 | Kodak_279509 | Rabbani 11 | | | |
| PX 0027 | DTX 278 | | 2005 Digital Cameral Market Attack Plan | Kodak_704145 | Kodak_704145 | | | | |
| PX 0028 | | 2/20/2003 | Development Agreement between Eastman Kodak company and ▮ | KODAK_023139 | KODAK_023159 | | R, F, A, H | | |
| PX 0029 | | 12/26/2005 | License Agreement between Eastman Kodak Company and ▮ | KODAK_023293 | KODAK_023357 | | R, F, A, H | | |
| PX 0030 | | 1/7/2005 | License Agreement between Eastman Kodak Company and ▮ | KODAK_023376 | KODAK_023395 | | R, F, A, H | | |

REDACTED

REDACTED

| PX 0031 | | 3/31/2005 | License Agreement between Eastman Kodak Company and ███ | KODAK_023415 | KODAK_023431 | | R, F, A, H | | |
|---------|---------|-----------|----------------------------------|--------------|--------------|--|----------|--|--|
| PX 0032 | | 1/1/1997 | License Agreement between Eastman Kodak and ███ | KODAK_022058 | KODAK_022062 | | R, F, A, H | | |
| PX 0033 | DTX 356 | 4/15/2005 | License Agreement between Koninklijke Philips Electronics N.V and ███ | PHLPSKD_00042369 | PHLPSKD_00042380 | | | | |
| PX 0034 | | 11/1/2006 | License Agreement between Koninklijke Philips Electronics NV and ███ | PHLPSKD_00079185 | PHLPSKD_00079199 | | R, F, A, H | | |
| PX 0035 | | 12/31/2007 | ███ Product Royalties Chart | PHLPSKD_00083642 | PHLPSKD_00083642 | | R, F, A, H, UP | | |
| PX 0036 | DTX 208 | | Cross-Licensee List | | | Parkins 1 | | | |
| PX 0037 | | | Cost 211bis Rules of Procedure | PHLPSKD_00081147 | PHLPSKD_00081149 | | P | | |
| PX 0038 | | 7/18/1978 | U.S. Patent 4,101,934 issued to Fukuoka | PHLPSKD_00090026 | PHLPSKD_00090038 | | R, F | | |
| PX 0039 | | 7/19/1983 | U.S. Patent 4,394,774 issued to Widergren et al. | PHLPSKD_00005070 | PHLPSKD_00005112 | | R, F | | |
| PX 0040 | | | WITHDRAWN | | | | | | |
| PX 0041 | | | WITHDRAWN | | | | | | |
| PX 0042 | | 5/20/1982 | Letter of Agreement between ███ and Koninklijke Philips Electronics N.V. and ███ | PHLPSKD_00079231 | PHLPSKD_00079232 | | P, R, F, A, H | | |

REDACTED

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0043 | | | | WITHDRAWN | | | | | |
| PX 0044 | DTX 337 | 3/1/1983 | ISO- Report of First WG8 Meeting | KODAK_184108 | KODAK_184114 | Van Der Meer 65 | | | |
| PX 0045 | DTX 150 | 4/1/1983 | Algorithm Definition Report for 56 Kbps Video Teleconferencing Codec (VTC-56) | WIDCOM 000905 | WIDCOM 000957 | Fralick 2 | | | |
| PX 0046 | DTX 153 | 8/1/1983 | Pictures for Pennies, Data Communications, August 1983 | WIDCOM 011256 | WIDCOM 011257 | Fralick 5 | | | |
| PX 0047 | DTX 300 | 12/9/1983 | CCITT Patent Policy | KODAK_183599 | KODAK_183599 | Sebestyen 26 | | | |
| PX 0048 | DTX 100 | 1/1/1984 | CODEC squeezes color teleconferencing through digital telephone lines, 8032 Electronics International, Vol. 57 (1984) Jan., No. 2, New York, USA | KODAK_051224 | KODAK_051226 | Acharya 5 | | | |
| PX 0049 | DTX 164 | 3/1/1984 | Scene Adaptive Coder-IEEE Article, Wen-Hsiung Chen, and William K. Pratt, IEEE Transactions on Communications, Vol. Com-32, No. 3, March 1984 | KODAK_050252 | KODAK_050260 | Hamilton 7 | | | |
| PX 0050 | | | | WITHDRAWN | | | | | |
| PX 0051 | DTX 152 | 6/15/1985 | Telespan Newsletter 6/15/1985 | WIDCOM 008671 | WIDCOM 008672 | Fralick 4 | | | |
| PX 0052 | DTX 99 | 8/26/1985 | Approval of Blanket SER Expenditure | KODAK_015746 | KODAK_015748 | Derourian 9 | | | |
| PX 0053 | DTX 11 | 9/27/1985 | Memo from D. Keen to B. Widergren, C. Van Dusen, J. Tubb, M. Triolo, K. Arnold regarding PVS | | | Acharya 11 | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Production | | | | | | |
| PX 0054 | DTX 310 | 11/1/1985 | ISO- WG8 Related Resolutions in Recent 3 SC2 Plenaries | IBM 8710049419 | IBM 8710049424 | Clark 17 | | | |
| PX 0055 | | 3/1/1986 | WG8 Photographic Coding Group Ad hoc Meeting in Boston | KODAK_058366 | KODAK_053867 | | | | |
| PX 0056 | | 7/1/1986 | WG8 Photographic Coding Group Ad hoc Meeting in Rennes | KODAK_058778 | KODAK_058780 | | | | |
| PX 0057 | DTX 18 | 9/9/1986 | Cost 211 bis Simulation Subgroup Document, Block Coding using a two-dimensional run-length table, dated September 9, 1986 | PHLPSKD_00070973 | PHLPSKD_00070979 | Cho 6 | | | |
| PX 0058 | | 10/1/1986 | October 1986 Federal Republic of Germany delegation submits Intellectual Property to CCITT SGXV | KODAK_050443 | KODAK_050446 | | | | |
| PX 0059 | DTX 332 | 10/28/1986 | CCITTStudy Group XV, Working Party XV/1 Specialists Group on Coding for Visual Telephony - Intellectual Property | KODAK_183922 | KODAK_183925 | Van der Meer 55 | | | |
| PX 0060 | DTX 272 | 11/00/1986 | WG8 Active Member List | KODAK_059317 | KODAK_059319 | Schylander 3 | P | | |
| PX 0061 | DTX 244 | 11/1/1986 | CCITTSC XV, Specialists Group on Coding for Visual Telephony, Coding of coefficients with a two-dimensional table, November 1986 | KODAK_183918 | KODAK -183921 | Volmer 8 | | | |

| PX 0062 | | 11/1/1986 | ISO- Parsippany, NJ Meeting attendance list | KODAK_059186 | KODAK_059187 | | | | |
| PX 0063 | | 11/1/1986 | ISO- Cooperation between ISO and CCITT in the development of picture coding techniques | KODAK_059035 | KODAK_059036 | | | | |
| PX 0064 | DTX 305 | 11/1/1986 | ISO- Report of JPEG meeting 11-13 November 1986, Parsippany, NJ | PHLPSKD_00063733 | PHLPSKD_00063743 | | | | |
| PX 0065 | DTX 243 | 11/1/1986 | SGXV 7th Specialists Group on Coding for Visual Telephony attendance | KODAK_052841 | KODAK_052882 | Rabbani 16 | | | |
| PX 0066 | | 1/1/1987 | ISO- Rules for reference to patented items in International Standards | PHLPSKD_00066479 | PHLPSKD_00066479 | | P | | |
| PX 0067 | | | WITHDRAWN | | | | | | |
| PX 0068 | DTX 409 | 3/1/1987 | ISO- Information to be Given on Photographic Compression Techniques | KODAK_184201 | KODAK_184203 | Weth 9 | | | |
| PX 0069 | DTX 322 | 3/1/1987 | ISO- Report of the Joint Photographic Experts Group, 24-26 March 1987, Darmstadt | KODAK_011492 | KODAK_011504 | Turner 2 | | | |
| PX 0070 | | 3/1/1987 | ESPRIT's Proposal: Adaptive Discrete Cosine Transform (ADCT) | KODAK_059621 | KODAK_059644 | | | | |
| PX 0071 | DTX 61 | 3/1/1987 | JPEG Meeting Darmstadt attendance ISO- Report of JPEG Meeting 24-26 March 1987, Darmstadt | KODAK_013119 | KODAK_013132 | | | | |
| PX 0072 | DTX 301 | 5/1/1987 | ISO- Fifteenth WG8 Distribution List | KODAK_012398 | KODAK_012402 | Sebestyen 27 | | | |

| PX 0073 | DTX 14 | 6/1/1987 | ISO- Adaptive Discrete Cosine Transform coding scheme for still image communication on ISDN | PHLPSKD_00038619 | PHLPSKD_00038651 | Acharya 14 | | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0074 | | 6/1/1987 | ISO- Report of Joint Photographic Experts Group Meeting Copenhagen, 16-19 June, 1987 | KODAK_063664 | KODAK_063695-- | | P | | |
| PX 0075 | DTX 306 | 7/10/1987 | Fax Annex 6, of Results of joint ISO/CCITT meeting Correspondence- Istvan Sebestyen to G. Hudson, M. Worlitzer, Yasuda, & Yamazaki | KODAK_061018 | KODAK_061020 | Sebestyen 32 | | | |
| PX 0076 | DTX 365 | 8/1/1987 | Unofficial Copy of DIS 10918-1, JPEG Joint Photographic Experts Group ISO/IEC JTC1/SC2/WG10, CCITT SG VIII | PHLPSKD_00070739 | PHLPSKD_00070739 | Vogel 20 | | | |
| PX 0077 | DTX 249 | 1/1/1988 | ISO- Report of Joint Photographic Experts Group Meeting Washington, 26-30 October, 1987 | KODAK_062123 | KODAK_062134 | Rabbani 23 | | | |
| PX 0078 | DTX 319 | 10/6/1987 | US Patent 4,698,672 to Chen | KODAK_074752 | KODAK_074770 | Tescher 5 | | | |
| PX 0079 | DTX 81 | 11/1/1987 | ISO- Liason between ISO/TC97/SC2/WG8 and CCITT SGXV (Mr. Okubo) | KODAK_012471 | KODAK_012530 | Clark 28 | | | |
| PX 0080 | | 11/1/1987 | JPEG Meeting Winchester attendance | PHLPSKD_00039019 | PHLPSKD_00039031 | | | | |
| PX 0081 | DTX 248 | 11/27/1987 | AFNOR - Report and Recommendations of the 11th meeting of WG 8 in Copenhagen (1987-6-15/19 | KODAK_062440 | KODAK_062461 | Rabbani 22 | | | |

| PX 0082 | DTX 250 | 1/31/1988 | Report of the JPEG Meeting 25-27 January 1988, KTAS, Copenhagen | KODAK_184286 | KODAK_184298 | Mitchell 5 | | | |
|---------|---------|-----------|------------------------------------------------------------------|--------------|--------------|------------|---|---|---|
| PX 0083 | | 1/1/1988 | JPEG Meeting Copenhagen 88 attendance | KODAK_062882 | KODAK_062889 | | I | | |
| PX 0084 | DTX 307 | 1/13/1988 | Siemens Fax between L Sebestyen and H. Yasuda | | | Sebestyen 33 | | | |
| PX 0085 | DTX 302 | 1/31/1988 | ISO- Report Joint Photographic Expert Group Meeting 25-27 January 1988, KTAS, Copenhagen | KODAK_013189 | KODAK_013201 | Sebestyen 28 | | | |
| PX 0086 | DTX 177 | 2/29/1988 | Document titled: A draft ISO Standard for Coded Representation of Still Pictures bearing | KODAK_184267 | KODAK_184285 | | | | |
| PX 0087 | DTX 262 | 3/1/1988 | ISO- Recommendation of 12th WG8 Meeting at Copenhagen (1/25-1/29 1988) | PHLPSKD_00039077 | PHLPSKD_00039077 | Richards 3 | P | | |
| PX 0088 | DTX 177 | 3/1/1988 | ISO- A Draft ISO Standard for Coded Representation of Still Pictures | KODAK_012326 | KODAK_012344 | Richards 4 | | | |
| PX 0089 | DTX 304 | 3/1/1988 | CCITT- Report of Final Meeting of Study Group VIII in the Study Period 1985-1988 (Geneva, 8 to 19 February 1988) | KODAK_013202 | KODAK_013217 | Rothgordt 7 | | | |
| PX 0090 | | 3/1/1988 | Activity Report of WG8 to SC2 Plenary in London | KODAK_063944 | KODAK_063951 | | | | |
| PX 0091 | | 4/1/1988 | Relevant patents and patent applications listed in a document from JPEG Working Party XV/1 Chairman. | KODAK_053601 | KODAK_053604 | | | | |

| PX 0092 | | 5/1/1988 | JTC1/SC2/WG 8 MPEG Meeting In Ottawa | KODAK_063875 | KODAK_063876 | | | | |
|---------|--------|-----------|-------------------------------|--------------|--------------|-----------|---|---|---|
| PX 0093 | DTX 64 | 5/1/1988 | ISO- Patent Policy on JPEG Standard | KODAK_184310 | KODAK_184314 | Weth 8 | | | |
| PX 0094 | DTX 412 | 5/9/1988 | ISO- Patent Issues: ADCT and ISO in General | KODAK_074801 | KODAK_074802 | Weth 13 | | | |
| PX 0095 | | 5/9/1988 | Report of the JPEG Meeting in Canada | KODAK_013683 | KODAK_013689 | | | | |
| PX 0096 | DTX 77 | 9/1/1988 | ISO- Report of JPEG Meeting 9-13 May 1988, Communications Canada Ottawa | KODAK_184335 | KODAK_184341 | Rabbani 32 | | | |
| PX 0097 | | 5/11/1988 | CCITT/ISO- Photographic Image Data Compression Standard Functionality and Goals | KODAK_069356 | KODAK_069361 | Richards 6 | I | | |
| PX 0098 | DTX 71 | 6/1/1988 | ISO- JPEG Member/ Mailing List | KODAK_067314 | KODAK_067319 | Weth 17 | | | |
| PX 0099 | DTX 515 | 6/8/1988 | Letter from T. Omachi to G. Wallace | KODAK_183558 | KODAK_183562 | | | | |
| PX 0100 | DTX 517 | 9/1/1988 | CCITT SG XV: Patent Applications by PKI | KODAK_184066 | KODAK_184066 | | | | |
| PX 0101 | DTX 84 | 9/1/1988 | Patent Applications by PKI on low bitrate video encoding | KODAK_012454 | KODAK_012454 | Van der Meer 53 | | | |
| PX 0102 | | 9/1/1988 | 14th WG8 Meeting attendance | KODAK_063650 | KODAK_063695 | | | | |
| PX 0103 | DTX 308 | 9/9/1988 | International Organization for Standardaztion ISO/IEC/JTC1SC2/WG8 Coded Representaion of Picture and Audio Information Patent Considerations In Standardization Efforts, September 9, 1988 | KODAK_012370 | KODAK_012376 | | | | |

| PX 0104 | DTX 245 | 9/22/1988 | CCITT- Report of the Thirteenth Meeting in Paris | Kodak_012118 | Kodak_012143 | Rabbani 18 | | | |
| PX 0105 | DTX 559 | 10/17/1988 | Resolutions taken by ISO/IEC JTC 1/SC2 at 1st Plenary Meeting in London | KODAK_184416 | KODAK_184423 | | | | |
| PX 0106 | DTX 72 | 10/18/1988 | ISO Report on the activity of SC2/WG8 to the SC Plenary Meeting in London, 1988 10-17/21 | IBM 8710031697 | IBM 8710031738 | Clark 16 | | | |
| PX 0107 | DTX 179 | 1/1/1989 | ISO- WG8 Document Register from N800 | IBM 8710026924 | IBM 8710026925 | Mitchell 20 | I | | |
| PX 0108 | | 1/20/1989 | Recommendations in 15th WG8 Meeting at Livingston | KODAK_064491 | KODAK_064496 | | | | |
| PX 0109 | DTX 311 | 1/25/1989 | ISO- Important Matters toward 15th WG8 February Meeting at Livingston | IBM 8710026926 | IBM 8710026929 | Sebestyen 37 | | | |
| PX 0110 | DTX 204 | 1/25/1989 | X3L2.8 Picture Coding | WIDCOM 004501 | WIDCOM 004506 | | | | |
| PX 0111 | DTX 704 | 2/3/1989 | JPEG Joint Photographic Experts Group ISO/IEC JTCI/SC2/WG8 CCITT SGVIII JPEG N264, February 3, 1989 Working Paper for Draft Proposal (Algorithm Specification) | PHLPSKD_00037418 | PHLPSKD_00037535 | | | | |
| PX 0112 | DTX 202 | 2/10/1989 | Memorandum from C. F. Touchton (of IBM) to G. Wallace (JPEG Chairman) | KODAK_013690 | KODAK_013690 | | | | |
| PX 0113 | DTX 73 | 2/24/1989 | 15th meeting in Livingston, New Jersey, USA. | KODAK_068816 | KODAK_068818 | | | | |
| PX 0114 | | 3/1/1989 | Q-Coder Patents for JPEG Committee | KODAK_069774 | KODAK_069774 | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Consideration | | | | | | |
| PX 0115 | | 3/1/1989 | Agenda and Schedule of 16th WG8 Meeting at Stockholm | KODAK_064534 | KODAK_064542 | | I | | |
| PX 0116 | DTX 203 | 4/1/1989 | IBM, KTAS, and SAT submit patent statements. | KODAK_013283 | KODAK_013290 | | P | | |
| PX 0117 | | 5/1/1989 | JPEG/ODA-Color meeting | KODAK_064965 | KODAK_064977 | | | | |
| PX 0118 | | 7/1/1989 | Document Register JPEG-377 thru JPEG-418 | PHLPSKD_00036861 | PHLPSKD_00036864 | | | | |
| PX 0119 | | 7/7/1989 | ISO- Accreditation of Delegates to ISO/IEC/ JTC1/SC2/WG8 | KODAK_064700 | KODAK_064736 | Nier 3 | I | | |
| PX 0120 | DTX 206 | 10/10/1989 | Letter from J. Speidel to S. Okubo regarding CCITT Patent Statement for p x 64 Kbit/s video coding | KODAK_012455 | KODAK_012456 | Nier 31 | | | |
| PX 0121 | | 10/16/1989 | JPEG Meeting Report-Japan | PHLPSKD_00036853 | PHLPSKD_00036875 | | | | |
| PX 0122 | DTX 247 | 11/7/1989 | CCITT- Patent Licensing Policies for Rec. H. 261 | KODAK_184067 | KODAK_184080 | Rabbani 20 | | | |
| PX 0123 | DTX 230 | 1/1/1990 | Patent license agreement between ▮▮▮ and Eastman Kodak Company  REDACTED | KODAK_019276 | KODAK_019301 | | | | |
| PX 0124 | DTX 169 | 2/16/1990 | US Patent 4,316,222 | KODAK_051025 | KODAK_051041 | | | | |
| PX 0125 | | 3/1/1990 | JPEG Tampa Meeting attendance | PHLPSKD_00036834 | PHLPSKD_00036843 | | I | | |
| PX 0126 | DTX 190 | 3/10/1990 | WG8 Mailing List (March 1990) | KODAK_065554 | KODAK_065577 | Schylander 4 | | | |
| PX 0127 | | 3/17/1990 | Proposal for a Change to the Maximum Number of Quantization Matrices in the JPEG Baseline System | PHLPSKD_00038135 | PHLPSKD_00038135 | | | | |

| PX 0128 | DTX 380 | 3/15/1990 | ISO/IEC JTC I/SC2/WG8 Coded Representation of Picture and Audio Information Tampa, Florida | PHLSKD_00067265 | PHLSKD_00067267 | Watkins 7 | | | |
| PX 0129 | DTX 200 | 3/27/1990 | ISO- JPEG Member/Mailing List | IBM 8810406775 | IBM 8810406781 | Nier 11 | | | |
| PX 0130 | DTX 532 | 4/1/1990 | JPEG Budapest Meeting attendance | KODAK_184632 | KODAK_184642 | | | | |
| PX 0131 | DTX 23 | 4/12/1990 | ISO- Budapest Meeting Report | PHLPSKD_00039932 | PHLPSKD_00039934 | Cho 11 | | | |
| PX 0132 | DTX 161 | 6/13/1990 | ISO- Preprint of Interface Paper | PH_PAN 0158584 | PH_PAN 0158591 | Hamilton 2 | | | |
| PX 0133 | DTX 274 | 9/4/1990 | Meeting Minutes of WG8 at its 19th meeting in Porto, July 9th-13th 1990 | KODAK 184595 | KODAK 184624 | Schylander 6 | | | |
| PX 0134 | DTX 402 | 9/5/1990 | Report on activities of Q.16/VIII since April, 1990, temp. doc. 294/3 | KODAK_182598 | KODAK_182611 | | | | |
| PX 0135 | DTX 86 | 12/5/1990 | ISO- Patent Statement, Information to MPEG Members | KODAK_011662 | KODAK_011662 | | | | |
| PX 0136 | DTX 86 | 12/5/1990 | Disclosure of German Patent No. 36.31.252 | KODAK_011663 | KODAK_011663 | | | | |
| PX 0137 | DTX 239 | 1/8/1991 | Comprehensive List of Chip Manufactures and their interests | WIDCOM 004420 | WIDCOM 004424 | Rabbani 10 | | | |
| PX 0138 | DTX 162 | 4/1/1991 | The JPEG Still Picture Compression Standard | KODAK_079211 | KODAK_079225 | Hamilton 3 | | | |
| PX 0139 | DTX 65 | 8/4/1991 | ISO- Request for Patent Statements or Re-statements | KODAK_183589 | KODAK_183589 | Clark 9 | | | |
| PX 0140 | DTX 334 | 8/15/1991 | ISO- Collection of patent statements concerning patents for 11172 | KODAK_184661 | KODAK_184699 | Van der Meer 60 | | | |
| PX 0141 | DTX 199 | 8/19/1991 | ISO- Patent Status | KODAK_182971 | KODAK_182975 | Nier 9 | | | |

| PX 0142 | DTX 67 | 8/19/1991 | ISO- Draft Annex L on patents for CD/DIS/IS | KODAK_013440 | KODAK_013441 | Nier 23 | | |
| PX 0143 | DTX 76 | 9/19/1991 | ISO- WG10 Response to June 1991 US Resolutions | IBM8710004704 | IBM8710004714 | Clark 22 | | |
| PX 0144 | DTX 188 | 9/30/1991 | Report of the Plenary Meeting of ISO/IEC JTC 1/SC 2/WG8 held in Santa Clara, California, USA on August 19th and 23rd 1991 | KODAK_184700 | KODAK_184709 | Morris 7 | | |
| PX 0145 | DTX 327 | 9/30/1991 | ISO- Report from the plenary meeting of ISO/IEC JTC 1/SC 2/WG8 held in Santa Clara, California, USA on August 19th and 23rd 1991 | PHLPSKD_00068823 | PHLPSKD_00068823 | | | |
| PX 0146 | DTX 346 | 10/16/1991 | Document headed STUDY GROUP VIII - REPORT R 28 | KODAK_182147 | KODAK_182230 | | | |
| PX 0147 | DTX 176 | 10/22/1991 | Letter from between H.J Hall and T. Imer | KODAK_013243 | KODAK_013244 | Mitchell 10 | | |
| PX 0148 | DTX 196 | 10/24/1991 | CCITT- List of Participants | KODAK_180080 | KODAK_180087 | Nier 4 | | |
| PX 0149 | DTX 198 | 11/1/1991 | CCITT- Study Group VIII- Report R 28 | KODAK_077497 | KODAK_077579 | Nier 6 | | |
| PX 0150 | DTX 276 | 11/21/1991 | ISO/IEC JTC 1/SC 29 N 094 First Plenary Meeting Report, Tokyo | KODAK_183654 | KODAK_183692 | | | |
| PX 0151 | | 11/22/1991 | Agreement between Eastman Kodak Company and ▇▇ REDACTED | KODAK_023074 | KODAK_023138 | | R, F, A, H | |
| PX 0152 | DTX 414 | 12/1/1991 | JPEG Still Compression Standard | PHLPSKD_00001284 | PHLPSKD_00001300 | Hamilton 4 | | |
| PX 0153 | DTX 383 | 1/1/1992 | ISO- Singapore Meeting Attendance List | PHLPSKD_00058226 | PHLPSKD_00058229 | Watkins 10 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0154 | DTX 276 | 1/24/1992 | ISO- Report of the First Plenary Meeting, held in Tokyo Japan, 21-23 November 1991, of ISO/IEC JTC 1/SC 29 | KODAK_183654 | KODAK_183692 | Schylander 8 | | | |
| PX 0155 | DTX 296 | 4/29/1992 | CCITT- List of Participants | KODAK_183036 | KODAK_183043 | Sebestyen 21 | | | |
| PX 0156 | DTX 294 | 9/1/1992 | CCITT- T.81 Terminal Equipment and Protocols for Telematic Services | KODAK_012535 | KODAK_012720 | Clark 24 | | | |
| PX 0157 | DTX 63 | 10/13/1992 | Correspondence between I. Sebestyen and J. Miyagaya | | | Clark 7 | | | |
| PX 0158 | DTX 314 | 6/29/1993 | ISO- ITU-TS Special Rapporteur Report | IBM 8710227860 | IBM 8710227874 | | | | |
| PX 0159 | DTX 242 | 11/4/1993 | Revised ISO/IEC DIS 10918-2, Information technology- Digital compression and coding of continuous-tone still images- Part 2: Compliance testing | KODAK_141603 | KODAK_141686 | Rabbani 13 | | | |
| PX 0160 | DTX 186 | 7/15/1994 | Implementation of ISO/IEC 10918-1:1994 | KODAK_183218 | KODAK_183399 | Morris 6 | | | |
| PX 0161 | DTX 229 | 4/21/1995 | Agreement between Eastman Kodak and ■■■■■ **REDACTED** | KODAK_019266 | KODAK_019275 | Parkins 22 | | | |
| PX 0162 | DTX 298 | 7/31/1995 | Kodak D&AI Market/Customer Requirements Document | KODAK_218571 | KODAK_218571 | Scott 13 | | | |
| PX 0163 | DTX 207 | 5/23/1997 | Correspondence between K. Parulski and Izumi | KODAK_205431 | KODAK_205432 | Nier 33 | | | |
| PX 0164 | DTX 47 | 8/6/1997 | Kodak Philips Correspondence | KODAK_181205 | KODAK_181211 | Cho 35 | | | |
| PX 0165 | | 8/18/1998 | Cross License Agreement between Koninkluke Philips Electronics N.V. and ■■■■■ **REDACTED** | PHLPSKD_00083615 | PHLPSKD_00083623 | R, F, A, H | | | |

REDACTED

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PX 0166 | | 1/1/1999 | Patent Cross License Agreement between ████ and Koninklijke Philips Electronics N.V. | PH_PAN 0175231 | PH_PAN 0175244 | | R, F, A, H | |
| PX 0167 | DTX 220 | 2/10/1999 | Agreement between Eastman Kodak and ████ | KODAK_019063 | KODAK_019075 | Parkins 13 | | |
| PX 0168 | | 4/20/1999 | Automotive Supplier Agreement between ████ and Eastman Kodak | KODAK_022036 | KODAK_022047 | | R, F, A, H | |
| PX 0169 | DTX 28 | 7/6/2000 | Philips Electronics North America Corporation Document Retention/Destruction Policy and Guidelines | | | Cho 16 | | |
| PX 0170 | | 12/6/2000 | December 6, 2000 letter from S. Tsugaru to T. Sasaki regarding Japanese Patent 2,711,665 | PHLPSKD_00057293 | PHLPSKD_00057293 | | R, F, A, H | |
| PX 0171 | | 12/25/2000 | December 25, 2000 letter from T. Sasaki to S. Tsugaru responding to December 6, 2000 letter | PHLPSKD_00057291 | PHLPSKD_00057292 | | R, F, A, H | |
| PX 0172 | DTX 80 | 8/2/2001 | ISO- Correspondence to F. Bennett | | | Clark 27 | | |
| PX 0173 | DTX 223 | 9/1/2001 | Cross-license agreement between Eastman Kodak Company and ████ | KODAK_019153 | KODAK_019169 | | | |
| PX 0174 | | 12/15/2001 | DV Editing License Agreement between Koninklijke Philips Electronics N.V. and | PHLPSKD_00079200 | PHLPSKD_00079210 | | R, F, A, H | |

REDACTED

REDACTED

| | | | ████████ | | | | | |
|---|---|---|---|---|---|---|---|---|
| PX 0175 | | 3/29/2002 | Digital Still Picture Camera License Agreement between Koninkluke Philips Electronics N.V. and ████ | PH_PAN10175348 | PH_PAN10175360 | | I, R, F, A, H | |
| PX 0176 | DTX 232 | 4/1/2002 | Agreement between Eastman Kodak and ████ | KODAK_019135 | KODAK_019152 | Parkins 25 | | |
| PX 0177 | DTX 356 | 4/15/2002 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PHLPSKD_00042369 | PHLPSKD_00042381 | | I | |
| PX 0178 | | 6/1/2002 | Excerpts from e-mails correspondence between Kodak and Chinon | KODAK_018207 | KODAK_018226 | | R, M, F, A, H | |
| PX 0179 | DTX 394 | 6/20/2002 | Letter from Philips to Chinon Industries | PHLPSKD_00057315 | PHLPSKD_00057315 | | | |
| PX 0180 | DTX 395 | 7/8/2002 | Excerpt from e-mail correspondence between T. Close and W. Shih | KODAK_018207 | KODAK_018208 | Watkins 21 | | |
| PX 0181 | DTX 396 | 7/15/2002 | Correspondence between C. Snee and T. Takehana | KODAK_018220 | KODAK_018220 | Watkins 22 | | |
| PX 0182 | DTX 397 | 7/19/2002 | Correspondence between M. Kobayashi and S. Tsuguru | PHLPSKD_00057313 | PHLPSKD_00057314 | Watkins 23 | | |
| PX 0183 | DTX 32 | 7/30/2002 | Patent License Agreement between ████ and Koninkluke Philips Electronics N.V. | PHLPSKD_00040203 | PHLPSKD_00040213 | Cho 20 | | |

REDACTED

| PX 0184 | DTX 253 | 8/12/2002 | Excerpt from e-mail correspondence between I. Sebestyen, A. Leger, and others | IBM 8810385969 | IBM 8810385971 | Rabbani 27 | | | |
| PX 0185 | DTX 252 | 8/13/2002 | JPEG Patent Activity Question | IBM 8810386011 | IBM 8810386016 | Rabbani 26 | | | |
| PX 0186 | | 9/30/2002 | Digital Still Picture Camera License Agreement between Koninkluke Philips Electronics N.V. and ███ REDACTED | PHLPSKD_00071005 | PHLPSKD_00071014 | | R, F, A, H | | |
| PX 0187 | DTX 53 | 10/1/2002 | Correspond between J. Slobod and T. Close | KODAK_427833 | KODAK_427843 | Cho 41 | | | |
| PX 0188 | DTX 52 | 10/1/2002 | Correspond between J. Slobod and T. Close | PH_PAN 0168752 | PH_PAN 0168752 | Cho 40 | | | |
| PX 0189 | DTX 167 | 11/6/2002 | Excerpt from e-mail correspondence between M. Rabbani and guru@jpeg.org | IBM 8710182911 | IBM 8710182911 | Hamilton 13 | | | |
| PX 0190 | DTX 254 | 11/14/2002 | CLI attendance of JPEG | IBM 8810387048 | IBM 8810387054 | Rabbani 28 | | | |
| PX 0191 | DTX 284 | 3/9/2003 | DX7630 Gate 6 Addendums | | | Scott 8 | | | |
| PX 0192 | | 6/5/2003 | Patent License Agreement between ███ and Eastman Kodak. | KODAK_023007 | KODAK_023044 | | R, F, A, H | | |
| PX 0193 | | 6/5/2003 | Patent License Agreement between ███ and Eastman Kodak. | KODAK_022992 | KODAK_023006 | | R, F, A, H | | |
| PX 0194 | | 6/5/2003 | Patent License Agreement between ███ and Eastman Kodak | KODAK_022977 | KODAK_022991 | | R, F, A, H | | |

**REDACTED**

**REDACTED**

| PX 0195 | DTX 227 | 8/18/2003 | Agreement between Eastman Kodak and ███████ | KODAK_019228 | KODAK_019245 | Parkins 20 | | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0196 | | 8/30/2003 | ISO- Why Standards Matter | KODAK_012457 | KODAK_012458 | | R, F, H | | |
| PX 0197 | DTX 210 | 12/2/2003 | Agreement between Kodak and ███████ regarding ███ | KODAK_077829 | KODAK_077882 | | | | |
| PX 0198 | | 1/1/2004 | License Agreement for Digital Video Camera-Recorder between Koninklijke Philips Electronics N.V. and ███████ | PHLPSKD_00078488 | PHLPSKD_00078495 | | R, F, A, H | | |
| PX 0199 | DTX 37 | 3/31/2004 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ███████ | PH_PAN 0175154 | PH_PAN 0175163 | Cho 25 | | | |
| PX 0200 | DTX 278 | 4/1/2004 | 2005 Digital Camera Market Attack Plan Industry Characterization | | | Scott 2 | | | |
| PX 0201 | DTX 225 | 4/9/2004 | Agreement between Eastman Kodak and ███████ | KODAK_019188 | KODAK_019207 | Parkins 18 | | | |
| PX 0202 | DTX 277 | 7/1/2004 | 2006 Digital Camera Market Industry Characterization | | | Scott 1 | | | |
| PX 0203 | DTX 226 | 7/1/2004 | Agreement between Eastman Kodak and ███████ | KODAK_019208 | KODAK_019227 | Parkins 19 | | | |
| PX 0204 | DTX 228 | 1/7/2005 | Agreement between Eastman Kodak and ███████ | KODAK_019246 | KODAK_019265 | Parkins 21 | | | |
| PX 0205 | DTX 221 | 3/31/2005 | Agreement between Eastman Kodak and ███████ | KODAK_019076 | KODAK_019094 | Parkins 14 | | | |
| PX 0206 | DTX 356 | 4/15/2005 | Patent License Agreement between ███████ | PHLPSKD_00042369 | PHLPSKD_00042380 | Van Der Meer 99 | | | |

**REDACTED**

REDACTED

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Philips and ■■■ | | | | | | |
| PX 0207 | DTX 209 | 6/11/2005 | License between Kodak and ■■■ regarding | KODAK_078089 | KODAK_078149 | | | | |
| PX 0208 | | 10/3/2005 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ■■■ | PHLPSKD_00079174 | PHLPSKD_00079184 | | R, F, A, H | | |
| PX 0209 | DTX 42 | 12/15/2005 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ■■■ | PH_PAN 0175280 | PH_PAN 0175291 | Cho 30 | | | |
| PX 0210 | | 12/22/2005 | Letter regarding Patent License Agreement between ■■■ and Koninkluke Philips Electronics N.V. | PHLPSKD_00071037 | PHLPSKD_00071037 | | P, R, F, A, H | | |
| PX 0211 | | 12/31/2005 | Patent License Agreement between N.V. Philips Electronics N.V. and ■■■ | PH_PAN 0172778 | PH_PAN 0172784 | | R, F, A, H | | |
| PX 0212 | DTX 35 | 1/2/2006 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ■■■ | PH_PAN 0175129 | PH_PAN 0175138 | Cho 23 | | | |
| PX 0213 | DTX 43 | 1/31/2006 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ■■■ | PH_PAN 0175306 | PH_PAN 0175316 | Cho 31 | | | |
| PX 0214 | DTX 114 | 2/10/2006 | VPE Drill Down | | | Evenski 3 | | | |
| PX 0215 | DTX 113 | 2/24/2006 | Basic Statutory Margin | | | Evenski 1 | | | |

REDACTED

REDACTED

| PX 0216 | DTX 37 | 3/31/2006 | Patent License Agreement between Philips and ▇ | PH_PAN 0175154 | PH_PAN 0175163 | | | |
|---------|--------|-----------|-------------|----------------|----------------|--|--|--|
| PX 0217 | | 5/30/2006 | Patent License Agreement between ▇ and Koninkluke Philips Electronics N.V. | PHLPSKD_00079233 | PHLPSKD_00079244 | R, F, A, H | | |
| PX 0218 | DTX 44 | 5/31/2006 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ▇ | PH_PAN 0175317 | PH_PAN 0175326 | Cho 32 | | |
| PX 0219 | DTX 40 | 5/31/2006 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ▇ | PH_PAN 0175203 | PH_PAN 0175213 | Cho 28 | | |
| PX 0220 | DTX 41 | 8/31/2006 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ▇ | PH_PAN 0175223 | PH_PAN 0175230 | Cho 29 | | |
| PX 0221 | DTX 38 | 9/1/2006 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ▇ | PH_PAN 0175164 | PH_PAN 0175193 | Cho 26 | | |
| PX 0222 | DTX 39 | 9/15/2006 | Patent License Agreement between Koninkluke Philips Electronics N.V. and ▇ | PH_PAN 0175194 | PH_PAN 0175202 | Cho 27 | | |
| PX 0223 | DTX 231 | 9/18/2006 | Agreement between Eastman Kodak and ▇ | KODAK_019318 | KODAK_019351 | | | |

REDACTED

| PX 0224 | | 3/29/2007 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ■ REDACTED | PHLPSKD_00079213 | PHLPSKD_00079230 | | R, F, A, H | | |
|---------|--|-----------|----------------------------------------------------------------------------------------------------------------|------------------|------------------|--|-----------|--|--|
| PX 0225 | | 4/6/2007 | Excerpts from Kodak's Responses to Philips' First Set of Interrogatories (Nos. 1-13) | | | | P | | |
| PX 0226 | | 7/25/2007 | Certified Copy of Eastman Kodak Company v. Matsushita Electronic Industrial Company, Limited, Panasonic Corporation of North America, Victor Company of Japan, Limited (JVC) and JVC Americas Corporation, Civil Action No. 6:07CV352 Complaint and Exhibits A-D; Exhibit A U.S. Patent 5,016,107; Exhibit B U.S. Patent 5,164,831; Exhibit C U.S. Patent 5,493,335; Exhibit D U.S. Patent 6,292,218 B1 | PHLPSKD_00089637 | PHLPSKD_00089701 | | R, F, H | | |
| PX 0227 | | 9/7/2007 | Excerpts from Defendant Eastman Kodak Company's First Supplemental Responses to Plaintiff U.S. Philips Corporation's First Set of Interrogatories (Nos. 2-3) | | | | P | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0228 | | 9/17/2007 | Excerpts from Defendant Eastman Kodak Company's Second Supplemental Responses to Plaintiff U.S. Philips Corporation's First Set of Interrogatories (Nos. 1 & 10) | | | | | P | |
| PX 0229 | | 9/25/2007 | License Agreement between Philips Electronics N. V. and REDACTED | PHLPSKD_00079165 | PHLPSKD_00079173 | | | R, F, A, H | |
| PX 0230 | | 10/1/2007 | Payment Satisfaction Agreement between Philips Electronics N. V. and REDACTED | PHLPSKD_00079106 | PHLPSKD_00079107 | | | R, F, A, H | |
| PX 0231 | DTX 238 | 10/8/2007 | Excerpts from Defendant Eastman Kodak Company's Third Supplemental Response to Plaintiff US Philips Corporation's First Set of Interrogatories (Nos. 1, 4, and 10) | | | | Rabbani 7 | P | |
| PX 0232 | | 10/11/2007 | Excerpts from Defendant Eastman Kodak Company's Fourth Supplemental Response to Plaintiff U.S. Philips Corporation's First Set of Interrogatories (No. 5) | | | | | P | |
| PX 0233 | DTX 282 | 10/17/2007 | Consumer Digital Camera Dashboard 2007 | | | | Scott 6 | | |
| PX 0234 | DTX 112 | 10/19/2007 | Eastman Kodak Co US-DAI Cameras | | | | Evenski 2 | | |
| PX 0235 | DTX 376 | 11/6/2007 | Eastman Kodak Company Management | | | | Wahl 6 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Flowchart | | | | | | |
| PX 0236 | | 11/7/2007 | Excerpts from Defendant Eastman Kodak Company's Responses to Plaintiff U.S. Philips Corporation's Second Set of Interrogatories (Nos. 14-20) | | | | P | | |
| PX 0237 | | 11/7/2007 | Excerpts from Defendant Eastman Kodak Company's Responses to Plaintiff U.S. Philips Corporation's Third Set of Interrogatories (Nos. 21-23) | | | | P | | |
| PX 0238 | | 11/13/2007 | Excerpts from Defendant Eastman Kodak Company's Supplemental Responses to Plaintiff U.S. Philips Corporation's First Set of Interrogatories (Nos. 7-9) | | | | P | | |
| PX 0239 | | 4/2/1990 | Activity Report of WG8 to SC2 Plenary in Washington, DC (April 9-12, 1990) | PHLPSKD_00039843 | PHLPSKD_00039855 | | | | |
| PX 0240 | | 5/10/1989 | IBM Statement on Q-coder Patents | KODAK_013238 | KODAK_013242 | | | | |
| PX 0241 | | 1/1/1982 | Objectives and Results of COST 211 | PH_PAN 0154736 | PH_PAN 0154738 | | | | |
| PX 0242 | | 00/00/0000 | Memorandum of Understanding on the COST 211 Project | PH_PAN 0154719 | PH_PAN 0154733 | | | | |
| PX 0243 | | 00/00/0000 | Hudson- a UK View on Photographic Coding | KODAK_058234 | KODAK_058240 | | M | | |
| PX 0244 | | 00/00/1987 | Hudson- PICA Photovideotex Image | PH_PAN 0155143 | PH_PAN 0155152 | | I | | |

| | | | | Compression Algorithm | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0245 | | | 3/3/1986 | Report COST 211-bis Simulation Subgroup Meeting | PHLPSKD_00048460 | PHLPSKD_00048474 | | | |
| PX 0246 | | | 9/1/1987 | ESPRIT 563- PICA Towards International Standardization | KODAK_061286 | KODAK_061310 | | | |
| PX 0247 | | | 6/1/1987 | Report of the 1st Meeting, KTAS-Copenhagen | KODAK_061376 | KODAK_061489 | | P | |
| PX 0248 | | | 1/17/1986 | Objective Measures of Quality in highly compressed images | KODAK_052171 | KODAK_052175 | | | |
| PX 0249 | | | 3/22/1985 | CCITT- Comments on Source Coding | KODAK_051793 | KODAK_051794 | | | |
| PX 0250 | | | 9/1/1985 | Simulations on source coding with a COST sequence | KODAK_051919 | KODAK_051931 | | | |
| PX 0251 | | | 5/1/1987 | Hybrid Coding at 64 bits and its compatibility with 384kbits/sec | KODAK_053171 | KODAK_053173 | | | |
| PX 0252 | | | 1/9/2008 | T. Schoechle Appendix C- 1983 WG8 Structure | | | | R, F, H | |
| PX 0253 | | | 1/9/2008 | T. Schoechle Appendix D- 1986 Formation of JPEG Organizational Structure | | | | R, F, H, UP | |
| PX 0254 | | | 1/9/2008 | T. Schoechle Appendix E- 1988 WG 8 Structure Expansion | | | | R, F, H, UP | |
| PX 0255 | | | 1/9/2008 | T. Schoechle Appendix F- 1991 Reorganization within JTC 1 of ISO | | | | R, F, H, UP | |
| PX 0256 | | | 3/2/2008 | T. Schoechle Appendix G- Attendance at WG8/ SC 29 Meetings | | | | F, H, UP | |

| PX 0257 | | 3/2/2008 | T. Schoechle Appendix H- Attendance at JPEG Meetings | | | | F, H, UP | | |
|---|---|---|---|---|---|---|---|---|---|
| PX 0258 | | 3/2/2008 | T. Schoechle Appendix J- Attendance at MPEG Meetings | | | | F, H, UP | | |
| PX 0259 | | 3/2/2008 | T. Schoechle Appendix K- Attendance at CCITT SGXV Meetings | | | | F, H, UP | | |
| PX 0260 | | 3/3/2008 | M. Peterson Exhibit III- Royalty and Damages Charts | | | | F, H, UP, CL | | |
| PX 0261 | DTX 298 | 4/1/1991 | CCITT- Report of the Working Party VIII/3 (Part I) of the Study Group VIII Meeting Held in Geneva from 18-27 March 1991 | KODAK_182073 | KODAK_182146 | Sebestyen 24 | | | |
| PX 0262 | DTX 173 | 7/7/1989 | ISO- Accreditation of Delegates to ISO/IEC JTC1/SC2/WG8 | KODAK_064711 | KODAK_064736 | Mitchell 3 | | | |
| PX 0263 | DTX 294 | 9/1/1992 | CCITT- T.81 Terminal Equipment and Protocols for Telematic Services | KODAK_012535 | KODAK_012720 | Sebestyen 19 | | | |
| PX 0264 | DTX 189 | 5/1/1988 | ISO N730- Patent Policy on JPEG Standard | KODAK_079247 | KODAK_079251 | Morris 8 | | | |
| PX 0265 | DTX 197 | 10/25/1991 | CCITT- Report of the Rapporteur Group on Question 16/VIII | KODAK_183005 | KODAK_183023 | Sebestyen 22 | | | |
| PX 0266 | DTX 413 | 2/24/1989 | ISO- Recommendations from Livingston N.J. JPEG Meeting | KODAK_183548 | KODAK_183549 | Weth 14 | | | |
| PX 0267 | | 5/31/1991 | May 31, 1991 Meeting of the CEBus Technical Steering Committee." | PHLPSKD_00090895 | PHLPSKD_00090897 | | P | | |
| PX 0268 | | 2/7/2008 | M. Peterson Exhibit IV- "M. Peterson Exhibit IV- Reconciliation of Mr. Wallace to Mr. Peterson" | | | | F, H, UP | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PX 0269 | DTX 513 | 5/9/1988 | ISO/IEC/SC2/WG8 Coded Representation of Picture and Audio Information CCITT/ISO Photographic Image Data Compression Standard Functionality and Goals by Joan L. Mitchell | KODAK_184322 | KODAK_184327 | | | |
| PX 0270 | DTX 415 | 9/23/1988 | September 1988 WG8 Meeting in London-attendance list | PHLPSKD_00066447 | PHLPSKD_00066450 | | | |
| PX 0271 | DTX 251 | 4/6/2001 | Excerpt from e-mail correspondence between D. Woods and I. Sebestyen regarding JPEG encoding | KODAK_427773 | KODAK_427773 | | | |
| PX 0272 | | 11/16/2007 | Excerpts from Defendant Eastman Kodak Company's Sixth Supplemental Responses to Plaintiff U.S. Philips Corporation's First Set of Interrogatories (Nos. 2-3, 7-9 & 12-13) | | | P | | |
| PX 0273 | | | Kodak EasyShare C330 Zoom Digital Camera Specifications | KODAK_004512 | KODAK_004588 | M, A, F, H | | |
| PX 0274 | | 2/22/2007 | Web page for Kodak Professional DCS Pro Back 645M, 645C, 645H | KODAK_010602 | KODAK_010750 | M, A, F, H | | |
| PX 0275 | | | Comparison Chart for Kodak Picture CD and Kodak Photo CD Discs | KODAK_090347 | KODAK_090348 | R, F, A, H | | |
| PX 0276 | | | Web page and User's Guide for i30/i40 Scanners | KODAK_007579 | KODAK_007666 | M, F, A, H, R | | |
| PX 0277 | | | Kodak Molecular Imaging Software Manual | KODAK_079624 | KODAK_079999 | R, F, A, H | | |

| PX 0278 | | 2/23/2007 | Web Page for Kodak EasyShare P850 Zoom Digital Camera | KODAK_006779 | KODAK_006891 | | M, F, A, H | |
|---------|--|-----------|-------------------------------------------------------|--------------|--------------|--|----------|--|
| PX 0279 | | 4/10/1992 | License Agreement between Kodak and **REDACTED** | KODAK_023769 | KODAK_023778 | | R, F, A, H | |
| PX 0280 | DTX 656 | 2/25/1986 | Compression Labs, Inc. v. Widergren Communications, Inc. (Sup. Ct. Cal.), Order Finding Defendants in Contempt | WIDCOM 006895 | WIDCOM 006901 | | R | |
| PX 0281 | | 11/9/1989 | JPEG Mailing List (Nov. 1989) | KODAK_068489 | KODAK_068494 | | I | |
| PX 0282 | | 6/5/2003 | Patent License Agreement between **REDACTED** and Eastman Kodak. | KODAK_023045 | KODAK_023073 | | R, F, A, H | |
| PX 0283 | | 1/9/2008 | T. Schoechle Appendix I- Attendance at CCITT SGVIII Meetings | | | | F, H, UP | |
| PX 0284 | | 1/30/2008 | Kodak's intercompany sales data (2000_all_months) | KODAK_24188 | | | F, A | |
| PX 0285 | | 1/30/2008 | Kodak's intercompany sales data (2001_all_months) | KODAK_24188 | | | F, A | |
| PX 0286 | | 1/30/2008 | Kodak's intercompany sales data (2002_all_months) | KODAK_24188 | | | F, A | |
| PX 0287 | | 1/30/2008 | Kodak's intercompany slaes data (2003all_months ) | KODAK_24188 | | | F, A | |
| PX 0288 | | 1/30/2008 | Kodak's intercompany sales data (2004_all_months) | KODAK_24188 | | | F, A | |
| PX 0289 | | 1/30/2008 | Kodak's intercompany sales data (2005_all_months) | KODAK_24188 | | | F, A | |

| PX 0290 | | 1/30/2008 | Kodak's intercompany sales data (2007_all_months) | KODAK_24188 | | | F, A | | |
| PX 0291 | | 1/30/2008 | Kodak's intercompany sales data (Pakon JPEG 2Kodak Spreadsheet 07Dec07JB) | KODAK_24188 | | | F, A | | |
| PX 0292 | | 1/30/2008 | Kodak's intercompany sales data (Pakon JPEG 2Kodak Spreadsheet 25Oct07bJB) | KODAK_24188 | | | F, A | | |
| PX 0293 | | 8/7/2001 | Excerpts from e-mail correspondence between W. Van Der Kruk and M. Rabbani regarding JPEG committee | PHLPSKD_00000357 | | | F, A, H | | |
| PX 0294 | | 3/1/1988 | 23rd WG8 Document Register | KODAK_063271 | KODAK_063274 | | | | |
| PX 0295 | | 3/1/1987 | ESPRIT PICA-Summary of Report for the Second Half of 1986 | KODAK_059656 | KODAK_059660 | | | | |
| PX 0296 | DTX 293 | 2/15/1994 | ISO/IEC 10918-1 | KODAK_012872 | KODAK_013058 | Rabbani 9 | | | |
| PX 0297 | DTX 688 | 6/8/1989 | Correspondence between M. Gold and A. Leger (Patent Statement) | PHLPSKD_00060101 | PHLPSKD_00060101 | | | | |
| PX 0298 | DTX 687 | 6/6/1989 | Correspondence between G. Modena and G. Wallace (Patent Statement) | PHLPSKD_00037713 | PHLPSKD_00037713 | | | | |
| PX 0299 | DTX 686 | 4/1/1989 | H. Poulsen Patent Statement | PHLPSKD_00037690 | PHLPSKD_00037690 | | | | |
| PX 0300 | DTX 313 | 4/20/1989 | Report of the CCIC Group Activities during interregnum (including image compression standardization article from Nov. 1988) | KODAK_076583 | KODAK_076595 | | | | |
| PX 0301 | DTX 257 | 11/15/2002 | Excerpts from e-mail correspondence between | IBM 8810387106 | IBM 8810387107 | Rabbani 31 | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | M. Rabbani, J. Barda, and others | | | | |
| PX 0302 | | | Supplement to Charts for expert report of M. Peterson | TBD | TBD | | I |
| PX 0303 | | 1/09/2008 | T. Schoechle Appendix L- Flowchart of ADCT Technology into JPEG | | | | R, F, H, UP |
| PPX 1 | | | Kodak C330 Digital Camera | | | | |
| PPX 2 | | | Kodak P850 Digital Camera | | | | |
| PPX 3 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| PPX 4 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| PPX 5 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| PPX 6 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| PPX 7 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| PPX 8 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| PPX 9 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| PPX 10 | | | Reserved for Plaintiff's Physical Exhibit | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

# EXHIBIT C2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

U.S. PHILIPS CORPORATION V. EASTMAN KODAK COMPANY
CIVIL ACTION NO. 06-00251-GMS

**DEFENDANT EASTMAN KODAK'S TRIAL EXHIBIT LIST with PHILIP'S OBJECTIONS**
**(MARCH 3, 2008)**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 1 | | 02/13/1990 | U.S. Patent Number 4,901,075 | KODAK_074784 | KODAK_074793 | Acharya Ex. 16 and Schylander Ex. 2 Girod Ex. 3; Clark Ex. 2; Rabbani Ex. 14; Weth Ex. 2; Tescher Ex. 7; Marion Ex. 2; Vogel Ex. 1; Van Der Meer Ex. 77; Volmer Ex. 3; Derouanian Ex. 3; Schoechle Ex. 1; Ebrahimi Ex. 20 | |
| DTX 2 | | 02/16/2006 | Certified U.S. Patent Number 4,901,075 File History | PHLPSKD 00005033 | PHLPSKD 00005249 | | |
| DTX 3 | | 05/22/2006 | Certified Patent Assignment Abstract of Title for U.S. Patent Number 4,901,075 | KODAK_000001 | KODAK_000003 | | |
| DTX 4 | | 04/27/2006 | Certified Patent Assignment | KODAK_000004 | KODAK_000008 | | |
| DTX 5 | | 04/27/2006 | Certified Maintenance Fee for Serial number 07/096,177 | KODAK_000009 | KODAK_000011 | | |
| DTX 6 | | 09/08/1984 | Acharya performance review | WIDCOM 012611 | WIDCOM 012612 | Acharya Ex. 1 | 402, 403, 802, 901 |

SD\1786679.1

1

| DTX 7 | | 11/12/1983 | Computer code (AOS Rev. 4.2) | WIDCOM 003705 | WIDCOM 003798 | Partial Doc. At Acharya Ex. 2 | 402, 403, 802, 901 | |
| DTX 8 | | 04/26/1999 | Letter from Sies Plokker (Royal Philips Electronics) to Shrinath Acharya re patent rights | PHLPSKD_00056531 | PHLPSKD_0056531 | Acharya Ex. 3 | | |
| DTX 9 | | Undated | Committee Membership List (non-paying members) | IBM 8710075837 | IBM 8710075838 | Acharya Ex. 4 | 402, 403, 802 | |
| DTX 10 | | 08/28/1984 | Letter from James P. Skinner (General Electric Information Serivces Company) to Edmund T. Wright (WIDCOM) | N/A | N/A | Acharya Ex. 10 | 402, 403, 802 | |
| DTX 11 | PX 0053 | 09/27/1985 | Memorandum from Dana Keen to Bob Widergren, Chuck Van Dusen, Jim Tubb re PVS Production | N/A | N/A | Acharya Ex. 11 | 402, 403, 802 | |
| DTX 12 | | 03/01/1988 | Letter from Landis Mahaffey to Len Roberts enclosing StarSignal products brochure | N/A | N/A | Acharya Ex. 12 | 402, 403, 802 | |
| DTX 13 | | Undated | WIDCOM block diagram (schematic) | N/A | N/A | Acharya Ex. 13 | 402, 403, 802, 901 | |
| DTX 14 | PX 0073 | June 1987 | ISO/TC97/SC2/WG8 N502: Coded Representation of Picture and Audio Information | N/A | N/A | Acharya Ex. 14 | | |
| DTX 15 | | Undated | Excerpted pages from publication or patent application | N/A | N/A | Acharya Ex. 15 | 402, 403, 802, 901 | |
| DTX 16 | | 10/26/2007 | Current Philips Structure and Philips Structure circa 1990 | PHLPSKD_00083277 | PHLPSKD_00083278 | Cho Ex. 2 | | |
| DTX 17 | | 10/26/2007 | Timeline for Philips Companies listed by Kodak | PHLPSKD_00083279 | PHLPSKD_00083280 | Cho Ex. 3 | | |
| DTX 18 | PX 0057 | 09/09/1986 | Cost 211bis Simulation Subgroup Block coding using a two-dimensional run-length table | PHLPSKD_00070973 | PHLPSKD_00070979 | Cho Ex. 6 | | |
| DTX 19 | | 05/14/1987 | Esprit 925 (PKI-Original) Further results regarding the transformation blocksize | PHLPSKD_00070980 | PHLPSKD_00070983 | Cho Ex. 7 | Incomplete | |
| DTX 20 | | No Date | Handwritten notes regarding Hybrid Coding of Pictorial Data | PHLPSKD_00069653 | PHLPSKD_00069655 | Cho Ex. 8 | 402, 403, 802, 901 | |
| DTX 21 | PX 0115 | 09/00/1989 | International Organization for Standardization Agenda and Schedule of 16th WG8 Meeting at Stockholm (July 3-7, 1989) | PHLPSKD_00039405 | PHLPSKD_00039407 | Cho Ex. 9 | | |
| DTX 22 | | 11/12/1991 | Jim Kurose letter to Peter Vogel regarding receipt of paper entitled "Source Coding by Classification" with | PHLPSKD_00070798 | PHLPSKD_00070809 | Cho Ex. 10 | 402, 403, 802, 901 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | multiple similar letters to Vogel attached | | | |
| DTX 23 | PX 0131 | 04/12/1990 | JPEG Joint Photographic Experts Group Budapest Meeting Report | PHLPSKD_00039932 | PHLPSKD_00039934 | Cho Ex. 11 |
| DTX 24 | | No Date | Greg Wallace memorandum to JPEG members regarding brief outline of the JPEG DP. | PHLPSKD_00059678 | | Cho Ex. 12 |
| DTX 25 | | 09/08/1989 | Takao Omachi memorandum to Gregory Wallace regarding Japan's current work on JPEG | PHLPSKD_00060130 | | Cho Ex. 13 |
| DTX 26 | | 02/10/1989 | JPEG Joint Photographic Experts Group Patent Positions for Committee Consideration and Action | PHLPSKD_00060044 | | Cho Ex. 14 |
| DTX 27 | | 11/20/1989 | JPEG Joint Photographic Experts Group Update on JPEG work | PHLPSKD_00037881 | PHLPSKD_00037883 | Cho Ex. 15 |
| DTX 28 | PX 0169 | 07/06/2000 | Philips Electronic North America Corporation Document Retention/Destruction Policy and Guidelines (11 Pages) | NO BATES | | Cho Ex. 16 |
| DTX 29 | | 06/06/2003 | Retention Policy Files (3 Pages) | NO BATES | | Cho Ex. 17 |
| DTX 30 | | 06/29/1988 | Assignment from Vogel to U.S. Philips Corporation for U.S. Patent for the improvements in a "System for transmitting video pictures." | PH_PAN 0059344 | | Cho Ex. 18 |
| DTX 31 | PX 0003 | 01/30/2006 | Certified Copy of Assignment | PHLPSKD_00005250 | PHLPSKD_00005253 | Cho Ex. 19 |
| DTX 32 | PX 0183 | 11/07/2002 | Patent License Agreement between ▮▮▮▮▮ and Koninklijke Philips Electronics N.V. **REDACTED** | PHLPSKD_00040203 | PHLPSKD_00040213 | Cho Ex. 20 |
| DTX 33 | | 09/10/1987 | Republic of China Assignment from Vogel to N.V. Philips' Gloeilampenfabrieken for a new invention entitled: "Method of and circuit arrangement for bitrate reduction." | PH_PAN 0080698 | | Cho Ex. 21 |
| DTX 34 | | 04/15/2005 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ▮▮▮▮ | PH_PAN 0175337 | PH_PAN 0175347 | Cho Ex. 22 |
| DTX 35 | PX 0212 | 01/02/2006 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ▮▮▮▮ | PH_PAN 0175129 | PH_PAN 0175138 | Cho Ex. 23 |
| DTX 36 | | 11/01/2006 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ▮▮▮▮ | PH_PAN 0175139 | PH_PAN 0175153 | Cho Ex. 24 |
| DTX 37 | PX 0199 | 03/31/2004 | Patent License Agreement between Koninklijke Philips | PH_PAN 0175154 | PH_PAN 0175163 | Cho Ex. 25 |

**REDACTED**

**REDACTED**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | PX 0216 | | Electronics N.V. and ███████ | | | | |
| DTX 38 | PX 0221 | 09/01/2006 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PH_PAN 0175164 | PH_PAN 0175193 | Cho Ex. 26 | |
| DTX 39 | PX 0222 | 09/15/2006 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PH_PAN 0175194 | PH_PAN 0175202 | Cho Ex. 27 | |
| DTX 40 | PX 0219 | 05/31/2005 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PH_PAN 0175203 | PH_PAN 0175213 | Cho Ex. 28 | |
| DTX 41 | PX 0220 | 08/31/2005 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PH_PAN 0175223 | PH_PAN 0175230 | Cho Ex. 29 | |
| DTX 42 | PX 0209 | 12/15/2005 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PH_PAN 0175280 | PH_PAN 0175291 | Cho Ex. 30 | |
| DTX 43 | PX 0213 | 01/31/2006 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PH_PAN 0175306 | PH_PAN 0175316 | Cho Ex. 31 | |
| DTX 44 | PX 0218 | 05/31/2006 | Patent License Agreement between Koninklijke Philips Electronics N.V. and ████ | PH_PAN 0175317 | PH_PAN 0175326 | Cho Ex. 32 | |
| DTX 45 | | 11/01/1986 | Draft VTC-S6 Decoder Theory of Operation Widecom, Inc. | PH_PAN 0171478 | PH_PAN 0171520 | Cho Ex. 33 | 402, 403, 802, 901 |
| DTX 46 | | 03/17/2006 | Settlement ████████ | KODAK_018650 | KODAK_018651 | Cho Ex. 34 | 408 |
| DTX 47 | PX 0164 | 08/06/1997 | Philips Semiconductors and Eastman Kodak Company Bilateral Non-disclosure Agreement Number NDA971240 | KODAK_181205 | KODAK_181211 | Cho Ex. 35 | 402, 403 |
| DTX 48 | | 11/03/1990 check date 11/16/1990? | Video Technology News article, *New Products Bring Video to the Desktop on a Chip Set* | VDMPK_000508 | VDMPK_000515 | Cho Ex. 36; Van Der Meer Ex. 90 | 402, 403, 802 |
| DTX 49 | | 03/02/2005 | Philips Electronics North America Corporation Confidential Disclosure Agreement with Kodak | KODAK_181178 | KODAK_181181 | Cho Ex. 37 | 402, 403 |
| DTX 50 | | 03/00/1992 | Macworld Article: Macworld Lab tests 8 JPEG products. | KODAK_075788 | KODAK_075794 | Cho Ex. 38; Van Der Meer Ex. 91 | 402, 403, 802 |

**REDACTED**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 51 | | | Kodak Professional DCS Information | KODAK_011346 | KODAK_011349 | Cho Ex. 39 | 402, 403, 802 | |
| DTX 52 | PX 0188 | 10/01/2002 | Jack D. Slobod letter to Thomas Close at Eastman Kodak Company regarding U.S. Patent No. 4,901,075 | PH_PAN 0168752 | | Cho Ex. 40; Watkins Ex. 24 | | |
| DTX 53 | PX 0187 | 10/01/2002 | Jack D. Slobod letter to Thomas Close at Eastman Kodak Company regarding discussion to grant Kodak a royalty-bearing license with attached patent (same letter as above with attachment and additional Kodak date stamp and handwritten initials) | KODAK_427833 | KODAK_427843 | Cho Ex. 41 | | |
| DTX 54 | | 01/12/2004 | J.J. Hawley email to Jack D. Slobod regarding visit to Kodak office | KODAK_427870 | KODAK_427872 | Cho Ex. 42 | 408 | |
| DTX 55 | | 12/09/2005 | J.J. Hawley email to Jack Slobod regarding meeting | KODAK_018169 | KODAK_018171 | Cho Ex. 43 | 408 | |
| DTX 56 | | 01/10/2006 | | KODAK_018164 | KODAK_018165 | Cho Ex. 44 | 408 | |
| DTX 57 | | No Date | REDACTED | KODAK_018163 | | Cho Ex. 45 | 408 | |
| DTX 58 | | 03/21/2006 | REDACTED Jack Slobod email to J. Jeffrey Hawley regarding | KODAK_018248 | KODAK_018251 | Cho Ex. 46 | 408 | |
| DTX 59 | | 03/27/2006 | J.J. Hawley email to Jack Slobod regarding Widcom machine | KODAK_018254 | | Cho Ex. 47 | 408 | |
| DTX 60 | | 10/12/2007 | Notice of Deposition of Richard Clark | | | Clark Ex. 1 | | |
| DTX 61 | PX 0071 | 03/00/1987 | ISO – Coded Representation of Picture and Audio Information – Report of the Joint Photographic Experts Group Meeting 24-26 March 1987, Darmstadt | KODAK_013119 | KODAK_013132 | Clark Ex. 3 | | |
| DTX 62 | | 01/00/1988 | Eighteenth WG8 Distribution List | KODAK_012301 | KODAK_012305 | Clark Ex. 6 | | |
| DTX 63 | PX 0157 | 10/13/1992 | Director of CCITT facsimile to Jacqueline Miyagawa regarding ISO/IEC DIS 10918-1 ("JPEG Part 1") approved as CCITT T.81 – September 19, 1992 was officially approved by CCITT as their Recommendation | | | Clark Ex. 7 | | |

| DTX 64 | PX 0093 | 05/00/1988 | ISO – Coded Representation of Picture and Audio Information – Patent Policy on JPEG Standard; Patents Relevant to the Flexible Hardware Specification (1/26/1988) | KODAK_184310 | KODAK_184314 | Clark Ex. 8; Weth Ex. 8; Nier Ex. 7; Schoechle Ex. 7 | | |
| DTX 65 | PX 0139 | 08/04/1991 | JPEG Joint Photographic Experts Group ISO/IEC JTC1/SC2/WG10 Request for Patent Statements or Re-statements | KODAK_183589 | KODAK_183589 | Clark Ex. 9; Weth Ex. 12; Nier Ex. 8; Morris Ex. 10; Ebrahimi Ex. 15 | | |
| DTX 66 | | 05/09/1988 | ISO memo regarding Patent Issues: ADCT and ISO in General; Source: Gregory Wallace | PHLPSKD_00039148 | PHLPSKD_00039149 | Clark Ex. 10; Richards Ex. 8, 8A; Nier Ex. 10 | | |
| DTX 67 | PX 0142 | 08/19/1991 | JPEG memo – Source: Convenor (G.K. Wallace); Title: Draft Annex L on patents for CD/DIS/IS | KODAK_013440 | KODAK_013441 | Clark Ex. 11; Nier Ex. 23 | | |
| DTX 68 | | 08/22/2006 | Affidavit of Richard Clark | KODAK_181533 | KODAK_181539 | Clark Ex. 12 | 402, 403, 802 | |
| DTX 69 | | 03/00/1988 | ISO memo – Source: ISO/IEC JTC1/SC2/WG8 Convener; Title: A Draft ISO of Standard for Coded Representation of Still Pictures | KODAK_063203 | KODAK_063221 | Clark Ex. 13 | | |
| DTX 70 | | 10/00/1988 | Meeting Schedules, JPEG Attendance Japan Meeting October 1989 | KODAK_068825 | KODAK_068840 | Clark Ex. 14 | | |
| DTX 71 | PX 0098 | 06/00/1988 | JPEG Member/ Mailing List | KODAK_067314 KODAK_068458 | KODAK_067319 KODAK_068464 | Clark Ex. 15; Weth Ex. 17 | | |
| DTX 72 | PX 0106 | 10/18/1988 | ISO Report on the activity of SC 2/WG 8 to the SC 2 Plenary meeting in London, 1988-10-17/21 | IBM 8710031697 | IBM 8710031738 | Clark Ex. 16; Nier Ex. 13; Mitchell Ex. 26 | | |
| DTX 73 | PX 0113 | 02/24/1989 | JPEG document titled Recommendations from Livingston N.J. JPEG Meeting | KODAK_068816 | KODAK_068817 | Clark Ex. 18; Nier Ex. 16; Ebrahimi Ex. 12 | | |
| DTX 74 | | 05/30/1989 | JPEG memo Title: IBM Patent Statement relative to JPEG Algorithm; Source: Tonehton (IBM); Pennebaker (IBM); Mitchell (IBM) | KODAK_013583 | KODAK_013290 | Clark Ex. 20 | | |
| DTX 75 | | 03/28/1991 | CCITT Study Group VIII Title: Direction Statement regarding Patent Statement with Respect to JEPG Algorithm | IBM 8710004640 | IBM 8710004640 | Clark Ex. 21; Nier Ex. 20 | | |

| DTX 76 | PX 0143 | 09/19/1991 | JPEG Document titled WG10 Response to June 1991 US Resolutions | IBM 8710004704 | IBM 8710004714 | Clark Ex. 22;<br>Nier Ex. 21 | | |
| DTX 77 | PX 0096 | 09/00/1988 | ISO Report of the Joint Photographic Experts Group Meeting 9-13 May 1988, Communications Canada, Ottawa | KODAK_184335 | KODAK_184341 | Clark Ex. 23;<br>Weth Ex. 7;<br>Turner Ex. 5;<br>Nier Ex. 22;<br>Van Der Meer Ex. 87 | | |
| DTX 78 | | 11/19/1993 | ISO/IEC Draft Recommendation from JTC 1/SC 29 to JTC 1 on Patent Issues | | | Clark Ex. 25 | | |
| DTX 79 | | 07/05/1994 | Meeting Report, Fourth Meeting of JTC 1/SC 29, 1993-11-06/08, Seoul, Rep. of Korea | | | Clark Ex. 26 | | |
| DTX 80 | PX 0172 | 08/02/2001 | Brotons-Dias (IEC) letter to Bennett (ISO/IEC) regarding policy of ISO/IEC IPR | | | Clark Ex. 27 | | |
| DTX 81 | PX 0079 | 01/18/1988 | ISO Liaison between ISO/TC97/SC2/WG8 and CCITT SGXV (Mr. Okubo) | KODAK_012471 | KODAK_012530 | Clark Ex. 28;<br>Nier Ex. 25<br>Van der Meer Ex. 52 | | |
| DTX 82 | | 05/18/1988 | ISO Liaison to CCITT SGXV, re 5/25-26 Martlesham Heath Meeting of DCT Chip Manufactures | KODAK_067331 | KODAK_067332 | Clark Ex. 29;<br>Nier Ex. 26 | | |
| DTX 83 | | 01/29/1988 | CCITT SGXV Document titled Report of the Eleventh Meeting in Tokyo (January 26-29, 1988) | KODAK_184029 | KODAK_184065 | Clark Ex. 30;<br>Nier Ex. 28;<br>Van Der Meer Ex. 58 | | |
| DTX 84 | PX 0101 | 09/00/1988 | CCITT SG XV Document titled Patent Application by PKI on low bitrate video encoding | KODAK_012454 | KODAK_012454 | Clark Ex. 31;<br>Van der Meer Ex. 53;<br>Nier Ex. 29 | | |
| DTX 85 | | 11/28/1988 | CCITT SG XV List of Informed Patents (Issue 3) | KODAK_054550 | KODAK_054555 | Clark Ex. 32;<br>Nier Ex. 30 | | |
| DTX 86 | PX 0135 and PX 0136<br>they made 2 exhibits out of this | 12/05/1990 | ISO Information to MPEG members – Patent Statement | KODAK_011662 | KODAK_011663 | Clark Ex. 33;<br>Nier Ex. 32 | | |
| DTX 87 | | 09/30/2002 | Mitchell email to Schecter (and others) regarding Press Release | IBM 8710218466 | IBM 8710218475 | Clark Ex. 34 | 402, 403, 802, 602 | |

| DTX 88 | | 08/13/2002 | Mitchell email to Schecter (and others) regarding "News – JPEG no more? ISO mulls withdrawal of Standard" | IBM 8710218321 | IBM 8710218329 | Clark Ex. 35 | 402, 403, 802, 602 | |
| DTX 89 | | 09/25/2002 | Ron Arps email to Daniel Morris (and others) regarding two law firms and Xerox coming together in an agreement to defend claims being made by Forgent | IBM 8710218447 | IBM 8710218449 | Clark Ex. 36; Hamilton Ex. 12 | 402, 403, 802, 602 | |
| DTX 90 | | 09/16/2002 | Mitchell email to Morris regarding more information on Philips patent | IBM 8710230149 | IBM 8710230151 | Clark Ex. 37 | 402, 403, 802, 602 | |
| DTX 91 | | 08/28/2002 | Mitchell email to Schecter (and others) regarding Philips patent mentioned in email between Clark and Sebestyen | IBM 8710218411 | IBM 8710218415 | Clark Ex. 38 | 402, 403, 802, 602 | |
| DTX 92 | | 03/20/2006 | Clark letter to ICT Members regarding major patent issue, regarding JPEG/ Phillips | KODAK_075839 | KODAK_075840 | Clark Ex. 39; Morris Ex. 12 | 402, 403, 802, 602 | |
| DTX 93 | | 07/27/2007 | Clark email to Mitchell regarding being now part of the Info-Print Solutions Company | JM-IBM 00001 | JM-IBM 00008 | Clark Ex. 40 | 402, 403, 802, 602 | |
| DTX 94 | | 00/00/2006 | Declaration of Robert Deronian | KODAK_015735 | KODAK_015738 | Deronian Ex. 1 | 402, 403, 802, 602 | |
| DTX 95 | | 08/16/2007 | Subpoena to Robert Deronian | | | Deronian Ex. 2 | | |
| DTX 96 | | 07/16/1985 | Leith letter to Deronian enclosing a temporary retrofit of the existing videoconference systems | KODAK_015749 | KODAK_015749 | Deronian Ex. 6 | 402, 403, 802 | |
| DTX 97 | | 07/18/1985 | Seidel Proposal to Deronian regarding teleconferencing retrofit | KODAK_015750 | KODAK_015751 | Deronian Ex. 7 | 402, 403, 802 | |
| DTX 98 | | 10/15/1984 | TeleSpan article referencing Peiroe-Phelps contract and using two Widcom VTC-56 codecs | KODAK_015752 | KODAK_015753 | Deronian Ex. 8 | 402, 403, 802 | |
| DTX 99 | PX 0052 | 08/26/1985 | Approval of Blanket SER Expenditure to Kenneth Keating | KODAK_015746 | KODAK_015748 | Deronian Ex. 9 | 402, 403, 802 | |
| DTX 100 | PX 0048 | 01/26/1984 | Article entitled *Codec Squeezes Color Teleconferencing Through Digital Telephone Lines*, by Anderson, Fralick, Hamilton, Tescher and Widergren | KODAK_051224 | KODAK_051226 | Deronian 10 (different bates); Tescher Ex. 2; Volmer Ex. 10; Hamilton Ex. 5; Fralick Ex. 6; Acharya Ex. 5 | 402, 403, 802 | |
| DTX 101 | | 00/00/0000 | Brochure article entitled *Videoconferencing Comes of Age. And Down to Size.* | XEROX 00001 | XEROX 00004 | Deronian Ex. 11; Marion Ex. 11 | 402, 403, 802 | |

| DTX 102 | | 12/14/2007 | Expert Report of Dr. Touradj Ebrahimi for U.S. Patent No. 4,901,075 on Invalidity | | | Ebrahimi Invalidity Report Ebrahimi Ex. 23 | 402, 403, 802 | |
|---|---|---|---|---|---|---|---|---|
| DTX 103 | | 12/14/2007 | Dr. Touradj Ebrahimi 4,901,075 Invalidity Report List of Materials Relied Upon | | | Ebrahimi Invalidity Appendix A | 402, 403, 802 | |
| DTX 104 | | 12/14/2007 | Anticipatory Invalidity Charts from Dr. Touradj Ebrahimi 4,901,075 Invalidity Report | | | Ebrahimi Invalidity Appendix B | 402, 403, 802 | |
| DTX 105 | | 12/14/2007 | Obviousness Invalidity Charts from Dr. Touradj Ebrahimi 4,901,075 Invalidity Report | | | Ebrahimi Invalidity Appendix C | 402, 403, 802 | |
| DTX 106 | | 01/07/2008 | Expert Report of Dr. Touradj Ebrahimi for U.S. Patent 4,901,075 on NonInfringement | | | Ebrahimi Non-Infringement Report Ebrahimi Ex. 22 | 402, 403, 802 | |
| DTX 107 | | 01/07/2008 | Dr. Touradj Ebrahimi U.S. Patent 4,901,075 Report on Non-Infringement List of Materials Relied Upon | | | Ebrahimi Non-Infringement Report | 402, 403, 802 | |
| DTX 108 | | 12/14/2007 | Dr. Touradj Ebrahimi Curriculum Vitae | | | Ebrahimi Standard Appendix A | 402, 403, 802 | |
| DTX 109 | | 12/14/2007 | Dr. Touradj Ebrahimi JPEG Standard Issues Report List of Documents Relied Upon | | | Ebrahimi Standard Appendix B | 402, 403, 802 | |
| DTX 110 | | 12/14/2007 | Philips Standardization Participation: JPEG and MPEG Chart | . | | Ebrahimi Standard Appendix C | 402, 403, 802 | |
| DTX 111 | | 12/14/2007 | Expert Report of Dr. Touradj Ebrahimi Regarding JPEG Standard Issues | | | Ebrahimi Standard Report | 402, 403, 802 | |
| DTX 112 | | 12/00/2000 | EK Statement of Earnings Comparison | KODAK 1999-2000 CAMERAS P&L DATA | | Evenski Ex. 2 | | |
| DTX 113 | | 2000-2001 | Eastman Kodak Company Basic Statutory Margin Chart | KODAK_078364 | KODAK_078368 | Evenski Ex. 1 | | |
| DTX 114 | | 06/06/2006 | Eastman Kodak Company ERP Global Data Warehouse Chart | KODAK_078547 | KODAK_078549 | Evenski Ex. 3 | | |
| DTX 115 | | 2002-2003 | Eastman Kodak Company Basic Statutory Margin Chart | KODAK_078383 | KODAK_078393 | Evenski Ex. 4 | | |
| DTX 116 | | 2004-2005 | Eastman Kodak Company Basic Statutory Margin Chart | KODAK_078438 | KODAK_078454 | Evenski Ex. 5 | | |
| DTX 117 | | 12/00/2002 | EK Statement of Earnings Comparison | KODAK 2001-2002 | | Evenski Ex. 6 | | |

| | | | | CAMERAS P&L DATA | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 118 | | 12/00/2004 | EK Statement of Earnings Comparison | KODAK 2003-2004 CAMERAS PL DATA | | Evenski Ex. 7 | | |
| DTX 119 | | 12/00/2006 | EK Statement of Earnings Comparison | KODAK 2005-2006 CAMERAS PL DATA | | Evenski Ex. 8 | | |
| DTX 120 | | 09/00/2007 | EK Cameras PL Data for Jan-Sept 2007 | KODAK 2007 JAN-SEPT CAMERAS PL DATA | | Evenski Ex. 9 | | |
| DTX 121 | | 2004-2005 | Eastman Kodak Company ERP Global Data Warehouse Chart | KODAK_078671 | KODAK_078682 | Evenski Ex. 11 | | |
| DTX 122 | | 2006 | Eastman Kodak Company ERP Global Data Warehouse Chart | KODAK_078470 | KODAK_078474 | Evenski Ex. 12; Evenski Ex. 10 | | |
| DTX 123 | | 2001 | Sum of Inv Extended Price and Month | KDK00709013 KODAK_018143\CAP T-IL DATA 2001-07 V4.XLS | | Evenski Ex. 13 | | |
| DTX 124 | | 2004-2007 | Total Manufacturing Costs – JPEG Enabled Products Sold in the U.S. | KDK00709012 \KODAK_018141\US MFG INVESTMENT SPENDING FOR DL.XLS | | Evenski Ex. 14 | | |
| DTX 125 | | 2000-2007 | U.S. Only Products Revenue and Sales Marketing Investment Actuals | KDK00709011 \KODAK_018141\JPE G PRODUCTS REVENUE AND SALES MARKETING INVESTMENT.XLS | | Evenski Ex. 15 | | |
| DTX 126 | | 1998-2006 | Basic Statutory Margin KP-Digital Cameras | KDK00000001 KODAK_015930\NAT IVE\57686.XLS | | Evenski Ex. 16 | | |

| DTX 127 | | 1998-2005 | Corp. & BU allocated costs are not include in this P/L Drill Down Reports | KDK00000003 KODAK_015930\NAT IVE\57688.XLS | | Evenski Ex. 17 | | |
|---|---|---|---|---|---|---|---|---|
| DTX 128 | | 2003-2005 | Corp. & BU allocated costs are not include in this P/L Drill Down Reports for POJJ KPro Digital Cameras | KDK00000006 KODAK_015930\NAT IVE\57691.XLS | | Evenski Ex. 18 | | |
| DTX 129 | | 1998-2005 | ProDigital Cameras Sales Units | KDK00000007 KODAK_015930\NAT IVE\57692.XLS | | Evenski Ex. 19 | | |
| DTX 130 | | 1998-2006 | ProDigital Cameras Sales Units | KDK00000009 KODAK_015930\NAT IVE\57694.XLS | | Evenski Ex. 20 | | |
| DTX 131 | | 1998-2006 | Corp. & BU allocated costs are not include in this P/L Drill Down Reports | KDK00000010 KODAK_015930\NAT IVE\57699.XLS | | Evenski Ex. 21 | | |
| DTX 132 | | 1998-2005 | Fully Allocated SPU Results Total Digital Cameras | KDK00000011 KODAK_015930\NAT IVE\57700.XLS | | Evenski Ex. 22 | | |
| DTX 133 | | 1999 | Digital and Applied Imaging 1999 Sales | KDK00000012 KODAK_015930\NAT IVE\57701.XLS | | Evenski Ex. 23 | | |
| DTX 134 | | 00/00/0000 | List of Companies | KDK00000013 KODAK_015930\NAT IVE\57702.XLS | | Evenski Ex. 24 | | |
| DTX 135 | | 1998 | U.S. Sales | KDK00000020 KODAK_015930\NAT IVE\57713.XLS | | Evenski Ex. 25 | | |
| DTX 136 | | 2007 | Financials with US and C Waterfall Analysis | | | Evenski Ex. 26 | | |
| DTX 137 | | 2005 | Financials with US and C Waterfall Analysis | | | Evenski Ex. 27 | | |
| DTX 138 | | 2006 | Financials with US and C Waterfall Analysis | | | Evenski Ex. 28 | | |
| DTX 139 | | 1998-2006 | ProDigital Cameras Sales Units | KODAK_015930\NAT IVE\57692.XLS | | Evenski Ex. 29 | | |
| DTX 140 | | 2004-2005 | Financials with US and C Waterfall Analysis | KDK00000028 KODAK_015930\NAT IVE\57721.XLS | | Evenski Ex. 30 | | |

| DTX 141 | | 2003-2005 | Pro Camera P&L – US chart | KDK00000028 KODAK_015930\NAT IVE\57721.XLS | | Evenski Ex. 31 | | |
|---------|--|-----------|---------------------------|------------------------------------------|--|----------------|--|--|
| DTX 142 | | 2000-2001 | Eastman Kodak Company ERP Global Data Warehouse VPE Drill Down | KDK00000029 KODAK_015930\NAT IVE\57728.XLS | | Evenski Ex. 32 | | |
| DTX 143 | | 2002-2003 | Eastman Kodak Company ERP Global Data Warehouse VPE Drill Down | KDK00000030 KODAK_015930\NAT IVE\57729B.XLS | | Evenski Ex. 33 | | |
| DTX 144 | | 2004-2005 | Eastman Kodak Company ERP Global Data Warehouse VPE Drill Down | KDK00000031 KODAK_015930\NAT IVE\57730.XLS | | Evenski Ex. 34 | | |
| DTX 145 | | 20020-2005 | Eastman Kodak Company Camera WW Avg NRR Trend Chart | KDK00000034 KODAK_015930\NAT IVE\57734.XLS | | Evenski Ex. 35 | | |
| DTX 146 | | 2000-2007 | Kodak Pakon JPEG Spreadsheet | KODAK PAKON JPEG SPREADSHEET 25OCT07A | | Evenski Ex. 36 | | |
| DTX 147 | | 1998-2004 | JPG U.S. Sales Since April 22, 1998 | JPG US SALES SINCE APR 22 1998 | | Evenski Ex. 37 | | |
| DTX 148 | | 09/00/2007 | Cameras Hyperion P&L data chart for January to September 2007 | CAMERAS HYPERION 07 JAN-SEP 2007 JAN-SEPT CAMERAS P&L DATA –RE-REVISED | | Evenski Ex. 38 | | |
| DTX 149 | | Undated | CV of Dr. Stanley C. Fralick | WIDCOM 018448 | WIDCOM 018448 | Fralick Ex. 1 | 402, 403, 802 | |
| DTX 150 | PX 0045 | 04/01/1983 | Algorithm Definition Report for 56 Kbps Video Teleconferencing Codec (VTC-56) | WIDCOM 000905 | WIDCOM 000987 | Fralick Ex. 2 + additional pages | 402, 403, 802, 901 | |
| DTX 151 | | Feb. 1984 | Innovative Codecs and Many New Services Brighten Nation's Teleconferencing Picture, by M. Edwards | KODAK_018228 | KODAK_018239 | Fralick Ex. 3 | 402, 403, 802, 901 | |
| DTX 152 | PX 0051 | 06/15/1985 | Pages from TeleSpan regarding WIDCOM's third quarterly report | WIDCOM 008671 | WIDCOM 008672 | Fralick Ex. 4 | 402, 403, 802, 901 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 153 | PX 0046 | 08/00/1983 | Newsfront: Pictures for pennies | WIDCOM 011256 | WIDCOM011257 | Fralick Ex. 5 | 402, 403, 802, 901 |
| DTX 154 | | 01/18/2008 | Bernd Girod Subpoena | | | Girod Ex. 1 | |
| DTX 155 | | 12/14/2007 | Expert Report of Professor Bernd Girod Regarding Infringement of Philips' U.S. Patent No. 4,901,075 by Certain Kodak Products and Services | | | Girod Ex. 2 | |
| DTX 156 | | 01/25/2008 | Order Construing the Terms of the U.S. Patent No. 4,901,075 | | | Girod Ex. 4; Ebrahimi Ex. 21 | |
| DTX 157 | | 01/07/2008 | Rebuttal Expert Report of Professor Bernd Girod Regarding Validity of Philips' U.S. Patent No. 4,901,075 | | | Girod Ex. 7 | |
| DTX 158 | | 10/30/2007 | Deposition transcript of Shrikant Acharya | | | Girod Ex. 8 | 402, 403, objection to submission of complete transcript; objection to designated portions in log for deposition designations |
| DTX 159 | | 00/00/000 | Handwritten note "400 50000 50000001 001" | | | Girod Ex. 9 | |
| DTX 160 | | 09/00/2002 | CCITT Recommendation T.81: Terminal Equipment and Protocols for Telematic Services – Information Technology – Digital Compression and Coding of Continuous-Tone Still Images – Requirements and Guidelines | N/A | N/A | Hamilton Ex. 1 | |
| DTX 161 | PX 0132 | 06/13/1990 | JPEG-601 Translation of a paper "The Standardization of Still Picture Coding: The JPEG Image Compression Algorithm," by Eric R. Hamilton | PH_PAN 0158584 | PH_PAN 0158591 | Hamilton Ex. 2 | |
| DTX 162 | PX 0138 | 04/00/1991 | The JPEG Still Picture Compression Standard, by Gregory K. Wallace | KODAK_079211 | KODAK_079225 | Hamilton Ex. 3 | |
| DTX 163 | | Undated | VTC-56B Coder Theory of Operation Widcom, Inc. | KODAK_079512 | KODAK_079570 | Hamilton Ex. 6; Fralick Ex. 7; Acharya Ex. 6; Tescher Ex. 3 | 402, 403, 802, 901 |

| DTX 164 | PX 0049 | 03/00/1984 | Scene Adaptive Coder, by Wen-Hsiung Chen and William K. Pratt | KODAK_050252 | KODAK_050260 | Hamilton Ex. 7; Fralick Ex. 8; Acharya Ex. 7; Girod Ex. 6 | 402, 403, 802 | |
| DTX 165 | | 09/21/1988 | Settlement Agreement between Compression Labs, Robert D. Widergren, John L. Douglas and Eric Hamilton | WIDCOM 000092 | WIDCOM 000107 | Hamilton Ex. 10 | 402, 403, 408, 802 | |
| DTX 166 | | 01/08/1991 | Comprehensive List of Chip Manufactures and their interests (from SKA) | WIDCOM 004293 | WIDCOM 004295 | Hamilton Ex. 11 | 402, 403, 802 | |
| DTX 167 | PX 0189 | 11/06/2002 | Email from Majid Rabbani to gwu@jpeg.org re CLI attendance of JPEG | IBM 8710182911 | IBM 8710182911 | Hamilton Ex. 13 | 402, 403, 802 | |
| DTX 168 | | 02/13/1990 | File History for U.S. Patent No. 4,901,075 | KODAK_000012 | KODAK_000230 | Marion Ex. 3; Vogel Ex. 2 | | |
| DTX 169 | PX 0124 | 02/16/1982 | U.S. Patent No. 4,316,222 (Subramaniam) | KODAK_051025 | KODAK_051041 | Marion Ex. 8 | | |
| DTX 170 | | 00/00/1987 | Abstract: Improved Hybrid Coders with 2D-Signal Processing for Moving Pictures by Speidel and Vogel | KODAK_184081 | KODAK_184090 | Marion Ex. 10; Volmer Ex. 9 | | |
| DTX 171 | | 00/00/0000 | Participants List for Meeting Evaluation of MPEG Related Patents on 04/01/1993 | PHLPSKD_00046968 | PHLPSKD_00046968 | Marion Ex. 12; Vogel Ex. 16; Van Der Meer Ex. 78; Schoechle Ex. 20 | | |
| DTX 172 | | 06/28/2007 | Subpoena in a Civil Case | N/A | N/A | Mitchell Ex. 1 | | |
| DTX 173 | PX 0262 | 07/07/1989 | ISO Document titled Accreditation of Delegates to ISO/IEC JTC1/SC2/WG8 | KODAK_064711 | KODAK_064736 | Mitchell Ex. 3 | | |
| DTX 174 | PX 0015 | Undated | Issues and Future Directions In JPEG Image Coding, by Joan L. Mitchell | IBM 8810000569 | IBM 8810000572 | Mitchell Ex. 4 | | |
| DTX 175 | | 10/28/1988 | JPEG Liaison Report, by Jock Williams | KODAK_184430 | KODAK_184432 | Mitchell Ex. 8; Turner Ex. 10 | | |
| DTX 176 | PX 0147 | 10/22/1991 | Letter from H.J. Hall (IBM) to Theodore Irmer, CCITT re IBM Patents for Arithmetic Coding | KODAK_013243 | KODAK_113244 | Mitchell Ex. 10 | | |
| DTX 177 | PX 0086 | 03/00/1988 | A Draft ISO Standard for Coded Representation of Still Pictures | KODAK_184267 | KODAK_184285 | Mitchell Ex. 15; Van Der Meer Ex. 84; Richards Ex. 4 | | |
| DTX 178 | | 03/00/1987 | ISO Document titled Information To Be Given On Photographic Compression Techniques | IBM 8810014124 | IBM 8810014126 | Mitchell Ex. 16 | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 179 | PX 00107 | 01/00/1988 | ISO Document titled WG8 Document Register from NBOO | IBM 8710026924 | IBM 8710026928 | Mitchell Ex. 20 | | |
| DTX 180 | | 05/01/1989 | Meeting Report: X9L2.8 Meeting #3: Tampa: January 1989 | IBM 8710040054 | IBM 8710040060 | Mitchell Ex. 21 | | |
| DTX 181 | | 06/03/1991 | IBM Patent Statement relative to JPEG algorithm | IBM 8710003823 | IBM 8710000836 | Mitchell Ex. 23 | | |
| DTX 182 | | 03/18/1991 | CCITT Study Group VIII: Patent Statement with Respect to JPEG Algorithm | IBM 8710004640 | IBM 8710004640 | Mitchell Ex. 24 | | |
| DTX 183 | | 04/18/2007 | Email string re Fw: I'm part of the new InfoPrint Solutions Company | | | Mitchell Ex. 27 | 402, 403, 802 | |
| DTX 184 | | 02/02/2007 | Notice of Deposition and Requests for Production of Documents and Things of Dr. John Morris | NO BATES | | Morris Ex. 1 | | |
| DTX 185 | | 00/00/1991 | British Standard: A standard for standards Part 1. Guide to general principles of standardization | KODAK_181396 | KODAK_181523 | Morris Ex. 5 | | |
| DTX 186 | PX 0160 | 00/00/1994 | British Standard: Implementation of ISO/IEC 10918-1:1994 Information technology – Digital compression and coding of continuous-tone still images: Requirements and guidelines | KODAK_183218 | KODAK_183399 | Morris Ex. 6 | | |
| DTX 187 | | 00/00/1994 | ISO/IEC 10918-1:1994(E) page 91 | KODAK_012966 | KODAK_012967 | Morris Ex. 6a | Incomplete | |
| DTX 188 | PX 0144 | 09/30/1991 | ISO/IEC JTC 1/SC 2/WG 8 Coded Representation of Picture and Audio Information: Report from the Plenary Meeting held in Santa Clara, California on August 19th and 23rd, 1991 | KODAK_0184700 | KODAK_184709 | Morris Ex. 7 | | |
| DTX 189 | PX 0264 | 05/00/1988 | International Organization for Standardization Patent Policy of JPEG Standard | KODAK_079247 | KODAK_079251 | Morris Ex. 8 | | |
| DTX 190 | PX 0126 | 03/10/1990 | International Organization for Standardization WG8 Mailing List Coded Representation of Picture and Audio Information by Hiroshi Yasuda | KODAK_065554 | KODAK_065577 | Morris Ex. 9; Schylander Ex. 4 | | |
| DTX 191 | | 01/30/1990 | O.I. Morris letter to Ir. Jan van der Meer regarding a draft technical specification from the JPEG still picture coding group; specification attached. | PHLPSKD_00070990 | PHLPSKD_00070994 | Morris Ex. 11 | | |
| DTX 192 | | 03/00/1989 | Philips Research Laboratories Technical Note No. 2796: A Software Implementation of the Draft ISO-JPEG Adaptive Discrete Cosine Transform Still Picture | VDMPK_019202 | VDMPK_019225 | Morris Ex. 13; Schylander Ex. 10; Van Der Meer Ex. 64 | | |

SD\8785679.1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Coding Technique by O.J. Morris | | | | |
| DTX 193 | | 12/13/2007 | Expert Report of Charles J. Neuhauser, PH.D. on Behalf of Defendant Eastman Kodak Company | | | Neuhauser Report; Neuhauser Ex. 1 | 402, 403, 802 |
| DTX 194 | | 10/19/2007 | Eastman Kodak Company's Subpoena Ad Testificandum of Michael C. Nier | N/A | N/A | Nier Ex. 1 | |
| DTX 195 | PX 0119 | 07/07/1989 | OSO/IEC JTC1/SC2/WG8 Coded Representation of Picture and Audio Information memo | KODAK_064711 | KODAK_064732 | Nier Ex. 3 | |
| DTX 196 | PX 0148 | 10/24/1991 | List of Participants, CCITT, Geneve, 16-25 Octobre 1991 | KODAK_180080 | KODAK_180087 | Nier Ex. 4 | |
| DTX 197 | PX 0265 | 10/16/1991 | CCITT Study Group VIII Pater titled Report of the Rapporteur Group on Question 16/VIII | KODAK_183005 | KODAK_183023 | Nier Ex. 5; Sebestyen Ex. 22; Wenzel Ex. 17; Schoechle Ex. 16 | |
| DTX 198 | PX 0149 | 11/00/1991 | Study Group VIII – Report R.28 | KODAK_077497 | KODAK_077579 | Nier Ex. 6 | |
| DTX 199 | PX 0141 | 08/19/1991 | JPEG Document from Mitsubishi Electric Corp. titled Patent Status | KODAK_182971 | KODAK_182975 | Nier Ex. 9 | |
| DTX 200 | PX 0129 | 03/27/1990 | JPEG Member/Mailing List | IBM 8810406775 | IBM 8810406781 | Nier Ex. 11; Mitchell Ex. 25 | |
| DTX 201 | | 12/00/1991 | The JPEG Still Picture Compression Standard, by Gregory K. Wallace | | | Nier Ex. 12 | |
| DTX 202 | PX 0112 | 02/10/1989 | JPEG Memo from C.F. Touchton (IBM) to G.K. Wallace (DEC) re Patent Positions | KODAK_013690 | KODAK_013690 | Nier Ex. 17; Clark Ex. 19 | |
| DTX 203 | PX 0116 | 05/30/1989 | JPEG Document titled IBM Patent Statement relative to JPEG algorithm | KODAK_013283 | KODAK_013290 | Nier Ex. 18; Mitchell Ex. 11; Schoechle Ex. 8 | |
| DTX 204 | PX 0110 | 01/25/1989 | Meeting Minutes for ANSI x312.8 Picture Coding, hosted by IBM in Tampa, Florida | WIDCOM 004501 | WIDCOM 004506 | Nier Ex. 19 | |
| DTX 205 | | 04/02/1990 | ISO Document titled Activity Report of WG8 to SC2 Plenary in Washington D.C. (April 9-12, 1990) | KODAK_184554 | KODAK_184566 | Nier Ex. 27 | |
| DTX 206 | PX 0120 | 10/10/1989 | Philips Letter from Dr. Speidel and Dr. Brandis to Mr. S. Okubo re CCITT Patent Statement for p x 64 kbit/s video coding | KODAK_012455 | KODAK_012456 | Nier Ex. 31 | . |
| DTX 207 | PX 0163 | 05/26/1997 | Email from Ken Parulski to Izumi-san re Kodak IP on TIFF/EP and Exif | KODAK_205431 | KODAK_205432 | Nier Ex. 33 | |

| DTX 208 | PX 0036 | Undated | List of Cross-Licensees | N/A | N/A | Perkins Ex. 1 | |
| DTX 209 | PX 0207 | 06/1/2005 | MPEG-2 Patent Portfolio License | KODAK_078089 | KODAK_078149 | Perkins Ex. 2 | |
| DTX 210 | PX 0197 | 01/01/2000 | MPEG-4 Visual Patent Portfolio License | KODAK_077829 | KODAK_077882 | Perkins Ex. 3 | |
| DTX 211 | | 01/01/1998 | 1394 Patent Portfolio License | KODAK_077883 | KODAK_077906 | Perkins Ex. 4 | 402, 403 |
| DTX 212 | | 10/18/1993 | Photo CD Patent License Agreement for Read & Display Software | K 003579 | K 003590 | Perkins Ex. 5 | 402, 403 |
| DTX 213 | | 01/26/1994 | Photo CD Player License Agreement | K 004201 | K 004214 | Perkins Ex. 6 | 402, 403 |
| DTX 214 | | 03/03/1993 | Photo CD Authoring System Software License Agreement | K 003520 | K 003528 | Perkins Ex. 7 | 402, 403 |
| DTX 215 | | 08/24/1992 | Photo CD Photofinisher Authoring Software License Agreement | K 004322 | K 00004330 | Perkins Ex. 8 | 402, 403 |
| DTX 216 | | 08/24/1992 | Photo CD Industrial & Institutional Authoring Software License Agreement | K 004348 | K 004356 | Perkins Ex. 9 | 402, 403 |
| DTX 217 | | 01/23/2001 | Settlement Agreement (unsigned) between ▉▉ **REDACTED** | KODAK_427767 | KODAK_422772 | Perkins Ex. 10 | 402, 403 |
| DTX 218 | | 04/06/2002 | Royalty Report, MPEGLA.LLC | N/A | N/A | Perkins Ex. 11 | |
| DTX 219 | PX 0021 | 05/01/2002 | Agreement (between Kodak and ▉) | KODAK_019047 | KODAK_019062 | Perkins Ex. 12 | |
| DTX 220 | PX 0167 | 02/10/1999 | Patent License Agreement Between ▉ and Eastman Kodak Company | KODAK_019063 | KODAK_019075 | Perkins Ex. 13 | |
| DTX 221 | PX 0205 | 03/31/2005 | ▉ | KODAK_019076 | KODAK_019094 | Perkins Ex. 14 | |
| DTX 222 | | 05/06/2004 | Email from ATLC to suzakie@fesui.co.jp re PLA, with attached agreement documents | KODAK_019095 | KODAK_019134 | Perkins Ex. 15 | |
| DTX 223 | PX 0173 | 09/01/2001 | Agreement (between Kodak and ▉) | KODAK_019153 | KODAK_019169 | Perkins Ex. 16 | |
| DTX 224 | PX 0023 | 04/04/2005 | Letter from Michael R. Pagao to Mitsuhiro Yoshizawa re patent license agreement, with attached agreement | KODAK_019170 | KODAK_019187 | Perkins Ex. 17 | |
| DTX 225 | PX 0201 | 04/09/2004 | Agreement (between Kodak and ▉) | KODAK_019188 | KODAK_019207 | Perkins Ex. 18 | |
| DTX 226 | PX 0203 | 07/01/2004 | Agreement (between Kodak and ▉) | KODAK_019208 | KODAK_019227 | Perkins Ex. 19 | |
| DTX 227 | PX 0195 | 08/19/2003 | Agreement (between Kodak and ▉) | KODAK_019228 | KODAK_019245 | Perkins Ex. 20 | |
| DTX 228 | PX 0204 | 01/07/2005 | Digital Video Camera Agreement (between Kodak and ▉) | KODAK_019246 | KODAK_019265 | Perkins Ex. 21 | |

**REDACTED**

**REDACTED**

**REDACTED**

| DTX 229 | PX 0161 | 04/21/2005 | Agreement (between Kodak and ███) | KODAK_019266 | KODAK_019275 | Perkins Ex. 22 | |
|---------|---------|------------|----------------------------------|--------------|--------------|----------------|--|
| DTX 230 | PX 0123 | 01/01/1990 | Patent License Agreement between Kodak and ███ | KODAK_019276 | KODAK_019301 | Perkins Ex. 23 | |
| DTX 231 | PX 0223 | 09/18/2006 | Digital Still Camera Patent License Agreement (between Kodak and ███) | KODAK_019318 | KODAK_019351 | Perkins Ex. 24 | |
| DTX 232 | PX 0176 | 04/01/2002 | Agreement between Eastman Kodak Company and ███ | KODAK_099135 | KODAK_019152 | Perkins Ex. 25 | |
| DTX 233 | | 08/17/2007 | Notice of Deposition and Requests for Production of Documents and Things of Majid Rabbani | | | Rabbani Ex. 1 | |
| DTX 234 | | 09/11/2007 | Plaintiff U.S. Corporation's Second Notice of 30(b)(6) Deposition to Kodak | | | Rabbani Ex. 3 | |
| DTX 235 | | 09/21/2007 | Plaintiff U.S. Philips Corporation's Third Notice of 30(b)(6) Deposition to Kodak | | | Rabbani Ex. 4; Sasson Ex. 2 | |
| DTX 236 | | 10/02/2007 | Wyll letter to Levy regarding list of Philips' 30(b)(6) deposition topics | | | Rabbani Ex. 5 | |
| DTX 237 | | 10/10/2007 | Wyll email to Levy regarding 30(b)(6) deposition of Majid Rabbani | | | Rabbani Ex. 6 | |
| DTX 238 | PX 0231 | 10/08/2007 | Defendant Eastman Kodak Company's Third Supplemental Response to Plaintiff U.S. Philips Corporation's First Set of Interrogatories (Nos. 1,4 and 10) | | | Rabbani Ex. 7; Sasson Ex. 4 | 402, 403, 802 |
| DTX 239 | PX 0137 | 01/08/1991 | Comprehensive List of Chip Manufactures and their interests | WIDCOM 004420 | WIDCOM 004424 | Rabbani Ex. 10 | 402, 403, 802 |
| DTX 240 | PX 0026 | 12/11/1995 | Imaging Science Division Technical Memorandum – the Data Compression Algorithm Evaluation | KODAK_279492 | KODAK_279509 | Rabbani Ex. 11 | 402, 403, 802 |
| DTX 241 | | 09/28/1998 | Hobbes System Architecture by Schulze | KODAK_261390 | KODAK_261421 | Rabbani Ex. 12 | 402, 403, 802 |
| DTX 242 | PX 0159 | 11/04/1993 | JPEG – Revised ISO/IEC DIS 10918-2, Information technology – Digital Compression and Coding of Continuous-tone Still Images – Part 2: Compliance testing | KODAK_141603 | KODAK_141686 | Rabbani Ex. 13 | |
| DTX 243 | PX 0065 | 11/14/1986 | CCITT SGXV – Report of the Seventh Meeting in Nuremberg (November 11-14, 1986) | KODAK_052841 | KODAK_052882 | Rabbani Ex. 16 | |

| DTX 244 | PX 0061 | 11/00/1986 | CCITT SGXV – Coding of Coefficients with a two-dimensional table | KODAK_183918 | KODAK_183921 | Rabbani Ex. 17; Volmer Ex. 8; Van Der Meer Ex. 57 | | |
| DTX 245 | PX 0104 | 09/22/1988 | CCITT SGXV – Report of the Thirteenth Meeting in Paris (September 19-22, 1988) | KODAK_012118 | KODAK_012143 | Rabbani Ex. 18 | | |
| DTX 246 | | 09/00/1988 | CCITT SGXV – Patent Applications by PKI on low bitrate video encoding | PHLPS_NATIVE0000 63 | PHLPS_NATIVE0000 63 | Rabbani Ex. 19 | | |
| DTX 247 | PX 0122 | 11/07/1989 | CCITT SGXV Document titled Patent Licensing Policies for Rec. H.261 | KODAK_184067 | KODAK_184080 | Rabbani Ex. 20; Van Der Meer Ex. 59 | | |
| DTX 248 | PX 0081 | 11/27/1987 | Report and Recommendation of the 11th Meeting of WG 8 in Copenhagen (1987-6-15/19) | KODAK_062440 | KODAK_062461 | Rabbani Ex. 22 | | |
| DTX 249 | PX 0077 | 01/00/1988 | Report of the Joint Photographic Experts Group Meeting 26-30 October 1987, Washington | KODAK_062123 | KODAK_062134 | Rabbani Ex. 23 | | |
| DTX 250 | PX 0082 | 01/00/1988 | Report of the Joint Photographic Experts Group Meeting 25-27 January 1988, KTAS, Copenhagen | KODAK_184286 | KODAK_184298 | Rabbani Ex. 24; Van Der Meer Ex.; 69; Mitchell Ex. 5; Schoechle Ex. 11 | | |
| DTX 251 | PX 0271 | 04/06/2001 | Woods email to Sebestyen and Rabbani regarding Phillips company's involvement in the original generation of the JPEG standard in 1985-1986 | KODAK_427773 | KODAK_427773 | Rabbani Ex. 25 | | |
| DTX 252 | PX 0185 | 08/13/2002 | Leger email to Hamilton, Sebestyen (and others) regarding JPEG Patent Activity Question | IBM 8810386011 | IBM 8810386016 | Rabbani Ex. 26 | 402, 403, 802 | |
| DTX 253 | PX 0184 | 8/12/2002 | Sebestyen email to Leger, Rabbani (and others) regarding "home old docs" (PCS '86, JPEG-patent forum) | IBM 8810385969 | IBM 8810385971 | Rabbani Ex. 27 | 402, 403, 802 | |
| DTX 254 | PX 0190 | 11/14/2002 | Clark email to Rabbani regarding CLI attendance of JPEG | IBM 8810387048 | IBM 8810387054 | Rabbani Ex. 28 | 402, 403, 802 | |
| DTX 255 | | 12/19/2002 | Rabbani email to Hamilton regarding prior art and Widcom Teleconferencing units | IBM 8810387349 | IBM 8810387350 | Rabbani Ex. 29 | 402, 403, 802 | |
| DTX 256 | | 03/00/1988 | Study Group VIII – Report R 13 – Report of Final Meeting of Study Group VIII in the Study Period of 1985-1988 (Geneva, 8 to 19 February 1988) | PHLPS_NATIVE0000 78 | PHLPS_NATIVE0000 92 | Rabbani Ex. 30 | | |
| DTX 257 | PX 0301 | 11/15/2002 | Rabbani email to Barda regarding CLI attendance of JPEG | IBM 8810387106 | IBM 8810387107 | Rabbani Ex. 31 | 402, 403, 802 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 258 | | 09/00/1988 | ISO Coded Representation of Picture and Audio Information | KODAK_012294 | KODAK_012300 | Rabbani Ex. 32 | |
| DTX 259 | | 02/24/1989 | JPEG – Recommendations from Livingston N.J. JPEG Meeting | IBM 8810025393 | IBM 8810025394 | Rabbani Ex. 33 Mitchell Ex. 22 | |
| DTX 260 | | 02/02/2007 | Notice of Deposition and Request for Production of Documents and Things of Norman Richards | | | Richards Ex. 1 | |
| DTX 261 | PX 0087 | 06/00/1989 | ISO WG8 Mailing List (June 1989) | KODAK_064562 | KODAK_064576 | Richards Ex. 2 | |
| DTX 262 | PX 0087 | 03/00/1988 | Recommendation of 12th WG8 Meeting at Copenhagen (1/25-1/29, 1988) | PHLPSKD_00039077 | PHLPSKD_00039081 | Richards Ex. 3 | |
| DTX 263 | | 01/00/1989 | ISO Report of the Joint Photographic Experts Group Meeting 25-27 January 1988, KTAS, Copenhagen | KODAK_012345 | KODAK_012357 | Richards Ex. 5 | |
| DTX 264 | PX 0097 | 05/11/1988 | CCITT/ISO Photographic Image Data Compression Standard Functionality and Goals | KODAK_183408 | KODAK_183413 | Richards Ex. 6; Van Der Meer Ex. 73 | |
| DTX 265 | | 01/25/1988 | Summary OSO ADCT (from Copenhagen meeting) | KODAK_184223 | KODAK_184247 | Richards Ex. 7; Van Der Meer Ex. 72 | |
| DTX 266 | | 01/16/1990 | Current Membership List of IST/2/-/1 Panel | PHLPSKD_00039775 | PHLPSKD_00039778 | Richards Ex. 9; Van Der Meer Ex. 80 | |
| DTX 267 | | 08/17/2007 | Plaintiff U.S. Philips Corporation's First Notice of 30(b)(6) Deposition to Kodak | N/A | N/A | Sasson Ex. 1; Rabbani Ex. 2 | |
| DTX 268 | | 10/17/2006 | Defendant Eastman Kodak Company's Answer and Counterclaims; Demand for Jury Trial | N/A | N/A | Sasson Ex. 3 | 402, 403, 802 |
| DTX 269 | | 10/31/2007 | Letter from Megan E. McCarthy to Matthew Levy re Accused Product List | N/A | N/A | Sasson Ex. 5 | |
| DTX 270 | PX 0013 | 10/31/2007 | Accused Product List | N/A | N/A | Sasson Ex. 6 | |
| DTX 271 | | 03/14/2007 | Notice of Deposition and Requests for Production of Documents and Things of Erik Schylander | N/A | N/A | Schylander Ex. 1 | |
| DTX 272 | PX 0060 | Undated | Active Member List | PHLPSKD_00039446 | PHLPSKD_00039458 | Schylander Ex. 3 | |
| DTX 273 | | 08/30/1989 | Coded Representation of Picture and Audio Information (WG8 Meeting Report Draft) | KODAK_065000 | KODAK_065031 | Schylander Ex. 5 | |
| DTX 274 | PX 0133 | 09/04/1990 | Coded Representation of Picture and Audio Information (Meeting minutes) | KODAK_184595 | KODAK_184624 | Schylander Ex. 6 | |

| DTX 275 | | 09/30/1991 | Coded Representation of Picture and Audio Information (Meeting minutes) | PHLPSKD_00040107 | PHLPSKD_00040115 | Schylander Ex. 7 | | |
| DTX 276 | PX 0150; PX 0154 | 01/24/1992 | Report of the First Plenary Meeting held in Toyko ISO/IEC JTC 1/SC 29 Coded Representation of Audio, Picture Multimedia and Hypermedia Information | KODAK_183654 | KODAK_183692 | Schylander Ex. 8; Van Der Meer Ex. 83 | | |
| DTX 277 | PX 0202 | July 2004 | PowerPoint Presentation: 2006 Digital Camera Market Industry Characterization | KDK 704284 | | Scott Ex. 1 | | |
| DTX 278 | PX 0027 | April 2004 | PowerPoint Presentation: 2005 Digital Camera Market Attack Plan | KDK 704145 | | Scott Ex. 2 | | |
| DTX 279 | PX 0016 | Undated | PowerPoint Presentation: 2006 Big Bundle Roadmap | KDK 66395 | | Scott Ex. 3 | | |
| DTX 280 | PX 0017 | Undated | Spreadsheet titled Project Charter – Corvette | KDK00426577 | | Scott Ex. 4 | | |
| DTX 281 | PX 0018 | Undated | Spreadsheet titled Project Charter – Mustang | KDK426582 | | Scott Ex. 5 | | |
| DTX 282 | PX 0233 | 10/17/2007 | Consumer Digital Camera Dashboard spreadsheet | KODAK_019302 | KODAK 019302 | Scott Ex. 6 | | |
| DTX 283 | PX 0019 | Undated | PowerPoint Presentation: Kodak EasyShare C315 Digital Camera | KDK 28620 | | Scott Ex. 7 | | |
| DTX 284 | PX 0191 | 03/09/2003 | DX7630 (Bud) Gate 6 Addendum | KDK160479 | | Scott Ex. 8 | | |
| DTX 285 | | 04/09/2003 | PowerPoint Presentation: Bud Pre Gate 0 | KDK 159799 | | Scott Ex. 9 | | |
| DTX 286 | | 09/01/1990 | Report of Japan FAST Team | KODAK_285934 | KODAK_285970 | Scott Ex. 10 | | |
| DTX 287 | | Undated | Kodak Confidential Draft: Chameleon Strategic Vision | KODAK_222304 | KODAK_222361 | Scott Ex. 11 | | |
| DTX 288 | | 07/14/1993 | ROADRUNNER Phase 0 Product Concept Proposal, Version 1.0 | KODAK_280376 | KODAK_280383 | Scott Ex. 12 | | |
| DTX 289 | PX 0162 | 07/31/1995 | Kodak D&AI Market/Customer Requirements Document ("Snap" Digital Camera) | KODAK_218544 | KODAK_218571 | Scott Ex. 13 | | |
| DTX 290 | | 01/20/1997 | PowerPoint Presentation: Marketing and Business Issues – The M3 Camera Gate 0/1 Review | KODAK_187050 | KODAK_187097 | Scott Ex. 14 | | |
| DTX 291 | PX 0020 | Undated | Kodak D&AI Market Requirements Document – M3 Camera | KODAK_189193 | KODAK_189219 | Scott Ex. 15 | | |
| DTX 292 | | 06/09/1997 | PowerPoint Presentation: 1997 Digital Imaging Strategic Quantification | KODAK_279779 | KODAK_279798 | Scott Ex. 16 | | |

| DTX 293 | PX 0296 | 02/15/1994 | ISO/IEC 10918-1 International Standard: Information Technology – Digital Compression and Coding of Continuous-Tone Still Images: Requirements and Guidelines | KODAK_012872 | KODAK_013058 | Sebestyen Ex. 18; Rabbani Ex. 9; Mitchell Ex. 13; Ebrahimi Ex. 24 | | |
| DTX 294 | PX 0156; PX 0263 | 09/00/1992 | CCITT International Telecommunication Union: Terminal Equipment and Protocols for Telematic Services – Information Technology – Digital Compression and Coding of Continuous-Tone Still Images – Requirements and Guidelines | KODAK_012535 | KODAK_012720 | Sebestyen Ex. 19; Rabbani Ex. 8; Clark Ex. 24; Nier Ex. 24; Mitchell Ex. 14; Girod Ex. 5; Ebrahimi Ex. 19 | | |
| DTX 295 | | 00/00/0000 | Declaration of Dr. Istvan Sebestyen | KODAK_181540 | KODAK_181545 | Sebestyen Ex. 20 | 402, 403, 802 | |
| DTX 296 | PX 0155 | 04/29/1992 | CCITT Study Group VIII – List of Participants | KODAK_183036 | KODAK_183043 | Sebestyen Ex. 21 | | |
| DTX 297 | | 03/27/1991 | CCITT Study Group VIII – Liasion to the Associate Rapporteur on Q.4/VIII on Colour Facsimile Gr4 | KODAK_182660 | KODAK_182667 | Sebestyen Ex. 23 | | |
| DTX 298 | PX 0261 | 04/00/1991 | Study Group VIII – Report R 21 – Report of Working Party VIII/3 (Part 1) of the Study Group VIII Meeting Held in Geneva from 18-27 March 1991 | KODAK_182073 | KODAK_182146 | Sebestyen Ex. 24; Van Der Meer Ex. 88; Schoechle Ex. 15 | | |
| DTX 299 | | 11/00/1991 | CCITT Study Group VIII – Report of the Meeting of the Study Group VII, of the Four Working Parties of Study Group VIII and the Rapporteurs Group on Question 17/VIII – Meeting Held in Geneva from 16-25 October 1991 – Report (Part 1) of Working Party VIII/3 | KODAK_013442 | KODAK_013455 | Sebestyen Ex. 25 | | |
| DTX 300 | PX 0047 | 12/09/1983 | CCITT Meeting of Chairmen of Study Groups – CCITT Patent Policy | KODAK_183599 | KODAK_183599 | Sebestyen Ex. 26; Rothgordt Ex. 8; Schoechle Ex. 5 | | |
| DTX 301 | PX 0072 | 05/00/1987 | International Organization of Standardization – Fifteenth WG8 Distribution List | KODAK_012398 | KODAK_012402 | Sebestyen Ex. 27; Clark Ex. 5 | | |
| DTX 302 | PX 0085 | 01/00/1989 | ISO – Coded Representation of Picture and Audio Information – Report of the Joint Photographic Experts Group Meeting 25-27 January 1989, KTAS Copenhagen | KODAK_013189 | KODAK_013201 | Sebestyen Ex. 28; Clark Ex. 4 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 303 | | 01/18/1988 | Sebestyen letter to Zhao regarding distribution of the upcoming CCITT Study Group VIII Plenary Meeting in February | KODAK_184221 | KODAK_184222 | Sebestyen Ex. 29; Van Der Meer Ex. 71 | |
| DTX 304 | PX 0089 | 03/00/1988 | CCITT Study Group VIII – Report of the Final Meeting of Study Group VIII in the Study Period 1985-1988 (Geneva, 8 to 19 February 1988) | KODAK_013202 | KODAK_013217 | Sebestyen Ex. 30; Rothgordt Ex. 7; Wenzel Ex. 16; Ebrahimi Ex. 5 | |
| DTX 305 | PX 0064 | 11/00/1986 | ISO – Coded Representation of Picture and Audio Information – Report of the Joint Photographic Experts Meeting, 11-13 November 1986, Parsippany | PHLPSKD_00063733 | PHLPSKD_00063744 | Sebestyen Ex. 31 | |
| DTX 306 | PX 0075 | 00/00/0000 | Sebestyen facsimile to Hudson, Worlitzer, Yasuda, Yamazaki enclosing Annex 6 Results of Joint ISO/CCITT Meeting and Sebestyen letter to Zhao dated 07/10/87 regarding Annex 6 typos | KODAK_061018 | KODAK_061020 | Sebestyen Ex. 32 | |
| DTX 307 | PX 0084 | 01/13/1988 | Sebestyen facsimile to Yasuda regarding receipt of envelopes from three proposer's groups (Dr. Mitchell, KTAS and the Japanese group) | PHLPSKD_00039050 | | Sebestyen Ex. 33 | |
| DTX 308 | PX 0103 | 09/09/1988 | ISO – Coded Representation of Picture and Audio Information – Patent Consideration in Standardization Efforts | KODAK_012370 | KODAK_012376 | Sebestyen Ex. 34; Mitchell Ex. 18 | |
| DTX 309 | | 10/18/1988 | ISO Report in the activity of SC 2/WG to the SC 2 Plenary meeting in London, 1988-10-17/21 | KODAK_064269 | KODAK_064314 | Sebestyen Ex. 35 | |
| DTX 310 | PX 0054 | 09/26/1985 | WG8 Related Resolutions in Recent 3 SC2 – Resolutions Approved by ISO/TC 97/SC 2 at its 19th Plenary Meeting, Stockholm, September 23-26, 1985 | IBM 8710049419 | IBM 8710049424 | Sebestyen Ex. 36; Clark Ex. 17; Nier Ex. 15; Mitchell Ex. 19 | |
| DTX 311 | PX 0109 | 01/25/1989 | ISO Coded Representation of Picture and Audio Information | IBM 8710026926 | IBM 8710026929 | Sebestyen Ex. 37 | |
| DTX 312 | | 03/27/1990 | Joint Photographic Experts Group – Explanation of JPEG Member/Mailing Lists | PHLPSKD_00036596 | PHLPSKD_00036602 | Sebestyen Ex. 38; Rabbani Ex. 15; Ebrahimi Ex. 17 | |
| DTX 313 | PX 0300 | 04/20/1989 | CCITT Study Group VIII – Report on the Activities of the CCIC Group during Interregnum (February 1988 – March 1989) | KODAK_076583 | KODAK_076595 | Sebestyen Ex. 39 | |

| DTX 314 | PX 0158 | 06/29/1993 | ISO/IEC ITU-TS Special Rapporteur Report on Some "Lessons Learned" Regarding Current Patent Policy of Joint CCITT and ISO/IEC Recommendations/ Standards | IBM 8710227860 | IBM 8710227868 | Sebestyen Ex. 40 | | |
|---------|---------|------------|---------------------------------------------------------------------------------------------------------------------------------------------------------|----------------|----------------|-----------------|---|---|
| DTX 315 | PX 0067 | 03/00/1987 | Coded Representation of Picture and Audio Information – Report of the Joint Photographic Experts Group Meeting 24-26 March 1987, Darmstadt | IBM 8810398959 | IBM 8810398972 | Sebestyen Ex. 41; Rabbani Ex. 21 | | |
| DTX 316 | | 11/11/1992 | ISO/IEC Concern about current patent policy practice of joint ISO/CCITT standards/recommendations | PHLPSKD_00030095 | PHLPSKD_00030096 | Sebestyen Ex. 42 | | |
| DTX 317 | | 11/00/1983 | Computer print-out – Two Dimensional Adaptive Block Coder | WIDCOM 003706 | WIDCOM 003712 | Tescher Ex. 1 | 402, 403, 802, 901 | |
| DTX 318 | | 03/03/1984 | IEEE article entitled *Scene Adaptive Coder*, by Chen and Pratt | PH_PAN 0080327 | PH_PAN 0080334 | Tescher Ex. 4; Marion Ex. 7; Vogel Ex. 8; | 402, 403, 802 | |
| DTX 319 | PX 0078 | 10/06/1987 | U.S. Patent 4,698,672 (Chen) | KODAK_074752 | KODAK_074770 | Tescher Ex. 5; Marion Ex. 9; Vogel Ex. 11; Hamilton Ex. 8; Fralick Ex. 9; Acharya Ex. 8; Girod Ex. 11; Ebrahimi 25 | | |
| DTX 320 | | 09/10/1985 | U.S. Patent 4,541,012 (Tescher) | KODAK_051113 | KODAK_051160 | Tescher Ex. 6; Hamilton Ex. 9; Fralick Ex. 10; Acharya Ex. 9 | | |
| DTX 321 | | 02/07/2007 | Notice of Deposition and Requests for Production of Documents and Things of Simon Turner | | | Turner Ex. 1 | | |
| DTX 322 | PX 0069 | 03/00/1987 | ISO Report of Joint Photographic Experts Group Meeting 24-26 March 1987, Darmstadt | KODAK_011492 | KODAK_011504 | Turner Ex. 2 | | |
| DTX 323 | | 03/00/1988 | ISO Nineteenth WG8 Distribution List | KODAK_012314 | KODAK_012318 | Turner Ex. 3 | | |
| DTX 324 | | 09/00/1987 | ISO Report of Joint Photographic Experts Group Meeting Copenhagen, 16-19 June, 1987 | PHLPSKD_00038866 | PHLPSKD_00038871 | Turner Ex. 4 | | |
| DTX 325 | | 01/25/1989 | ISO Important Matters Toward 15th WG8 February Meeting at Livingston | PHLPSKD_00039388 | PHLPSKD_00039388 | Turner Ex. 6 | | |
| DTX 326 | | 02/14/1989 | ISO WG8 Mailing List (fifth revision) | PHLPSKD_00039281 | PHLPSKD_00039298 | Turner Ex. 7 | | |

| DTX 327 | | 09/30/1991 | ISO Report from the Plenary Meeting of ISO/IEC JTC 1/SC 2/WG8 held in Santa Clara, California, U.S.A on August 19th and 23rd 1991 | PHLPSKD_00068823 PHLPSKD_00040107 | PHLPSKD_00068823 PHLPSKD_00040115 | Turner Ex. 8 | | |
| DTX 328 | | 09/28/2007 | Handwritten drawing on DLA paper entitled "International Standard Process" | | | Turner Ex. 9 | | |
| DTX 329 | | 02/02/2007 | Eastman Kodak Company's First 30(b)(6) Notice of Deposition to Plaintiff U.S. Philips Corporation | N/A | N/A | Van Der Meer Ex. 50; Cho Ex. 1; Volmer Ex. 1 Previously Marked Ex. 50 (See Van Der Meer Depo) | | |
| DTX 330 | | 08/13/2007 | Eastman Kodak Company's Second 30(b)(6) Notice of Deposition to Plaintiff U.S. Philips Corporation | N/A | N/A | Van Der Meer Ex. 51; Marion Ex. 1; Volmer Ex. 2; Morris Ex. 2; Cho Ex. 4 | | |
| DTX 331 | | Undated | Pages 11 – 50 from a book or publication with the heading COOM 15-R 3-E | KODAK_077457 | KODAK_077496 | Van Der Meer Ex. 54 | Incomplete | |
| DTX 332 | PX 0059 | Undated | CCITT Study Group XV document titled Intellectual Property | KODAK_183922 | KODAK_183925 | Van Der Meer Ex. 55 | | |
| DTX 333 | | 11/00/1986 | ISO Document: Report of the Joint Photographic Experts Meeting, 11-13 November 1986, Parsippany | KODAK_184183 | KODAK_184194 | Van Der Meer Ex. 56 | | |
| DTX 334 | PX 0140 | 08/15/1991 | ISO Document titled Collection of Patent Statements Concerning Patents for 11172 | KODAK_184661 | KODAK_184699 | Van Der Meer Ex. 60 | | |
| DTX 335 | | 10/00/1992 | CCITT Document titled Use of JPEG still image transmission. | KODAK_183192 | KODAK_183192 | Van Der Meer Ex. 61 | | |
| DTX 336 | | 01/30/1990 | Letter from O.J. Morris (Philips) to Jan Van Der Meer re draft JPEG specification | PHLPSKD_00070990 | PHLPSKD_00070994 | Van Der Meer Ex. 62 | | |
| DTX 337 | PX 0044 | 03/00/1983 | ISO Document titled Report of First WG8 Meeting | KODAK_184108 | KODAK_184114 | Van Der Meer Ex. 65 | | |
| DTX 338 | | 05/00/1984 | ISO Document titled Report of the Third WG8 Meeting (Tokyo 16-18 April 1984) | KODAK_184120 | KODAK_184125 | Van Der Meer Ex. 66 | | |
| DTX 339 | | 06/12/1986 | Letter from Hiroshi Yasuda to Philips and Tektronics thanking them for contribution to ISO | KODAK_184177 | KODAK_184177 | Van Der Meer Ex. 67 | | |
| DTX 340 | | 03/00/1987 | ISO Document titled Report of The Joint Photographic Experts Group Meeting 24 – 26 March 1987, Darmstadt | KODAK_184204 | KODAK_184218 | Van Der Meer Ex. 70 Mitchell Ex. 17 | | |

| DTX 341 | | 05/10/1989 | JPEG-306: IBM Statement of Q-Coder Patents | KODAK_183580 | KODAK_183583 | Van Der Meer Ex. 74 | |
| DTX 342 | | 08/24/2007 | Eastman Kodak Company's Third 30(b)(6) Notice of Deposition to Plaintiff U.S. Philips Corporation | | | Van Der Meer Ex. 75; Morris Ex. 3; Cho Ex. 5 | |
| DTX 343 | | 12/05/1990 | Patent Statement | PHLPSKD_00046957 | PHLPSKD_00046957 | Van Der Meer Ex. 76 | |
| DTX 344 | | 07/04/1991 | Report MPEG2 meeting at Nat Lab, July 3, 1991 | VDMPK_021012 | VDMPK_021015 | Van Der Meer Ex. 79 | |
| DTX 345 | | 09/04/1990 | ISO Coded Representation of Picture and Audio Information | KODAK_184625 | KODAK_184631 | Van Der Meer Ex. 81 | |
| DTX 346 | PX 0146 | 11/00/1991 | Study Group VIII – Report R 28 Report of the Meeting of Study Group VIII of the Four Working Parties of Study Group VIII and of the Rapporteurs Group on Question 17/VIII – Meeting Held in Geneva | KODAK_182147 | KODAK_182230 | Van Der Meer Ex. 82 | |
| DTX 347 | | 04/08/1992 | ISO Summary of Voting on CD 10918-2, Information Technology Digital Images Compression and Coding Continuous-Tone Still Images – Part 2: Compliance Testing | KODAK_183799 | KODAK_183844 | Van Der Meer Ex. 85 | |
| DTX 348 | | 07/00/1990 | Enhancement of Draft Rec. H.221/H.242 for Still Picture Transmission | KODAK_183600 | KODAK_183910 | Van Der Meer Ex. 89 | |
| DTX 349 | | 06/24/1991 | Video Technology News article, *Multimedia: Companies Turn to Software Compression* | VDMPK_000485 | VDMPK_0004888 | Van Der Meer Ex. 92 Schylander Ex. 9 | 402, 403, 802 |
| DTX 350 | | 00/00/0000 | Table: PVRs: Worldwide Unit Shipment Forecast by Platform (Units in Thousands) | PHLPSKD_00083268 | | Van Der Meer Ex. 93 | |
| DTX 351 | | 00/00/0000 | Table: Worldwide Sales of Philips Semiconductor Products with TriMedia Cores | PHLPSKD_00083269 | | Van Der Meer Ex. 94 | |
| DTX 352 | | 00/00/0000 | Table: Worldwide DVD Recorder market | PHLPSKD_00083270 | | Van Der Meer Ex. 95 | |
| DTX 353 | | 00/00/0000 | Table: Philips Licensees | PHLPSKD_00083271 | | Van Der Meer Ex. 96 | |
| DTX 354 | | 00/00/0000 | Table: Worldwide Market DSC | PHLPSKD_00083272 | PHLPSKD_00083275 | Van Der Meer Ex. 97 | |
| DTX 355 | | 00/00/0000 | Handwritten "Commercial Success" | PHLPSKD_00083276 | | Van Der Meer Ex. 98 | |
| DTX 356 | | 04/25/2005 | Patent License Agreement between Philips and ▓▓▓▓▓▓▓ REDACTED | PHLPSKD_00042369 | PHLPSKD_00042380 | Van Der Meer Ex. 99 | |
| DTX 357 | | 05/22/1987 | German document – Vogel | PHLPSKD_00070077 | PHLPSKD_00070088 | Vogel Ex. 4 | |
| DTX 358 | | 11/1/1986 | German document – Vogel | PHLPSKD_00070063 | PHLPSKD_00070076 | Vogel Ex. 7 | |
| DTX 359 | | 06/16/1982 | U.S. Patent No. 4,316,222 (Subramanian) with European Patent cover page attached | PHLPSKD_00069934 | PHLPSKD_00069951 | Vogel Ex. 9 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 360 | | 06/10/1987 | Coding System for Reducing Redundancy | PHLPSKD_00069908 | PHLPSKD_00069933 | Vogel Ex. 10 | | |
| DTX 361 | | 03/14/1990 | Draft Revision of Recommendation Vide Codex for Audiovisual Services At px64 kbit/s | PHLPSKD_00070572 | PHLPSKD_00070590 | Vogel Ex. 12 | 402, 403, 802 | |
| DTX 362 | | 09/07/1988 | Video Coding and Associates Systems: Modified Version *Description of Ref. Model 5 (RM5)* | PHLPSKD_00069736 | PHLPSKD_00069783 | Vogel Ex. 15 | | |
| DTX 363 | | 00/00/0000 | Summary of Hybrid Coding Techniques | PHLPSKD_00069551 PHLPSKD_00070976 | PHLPSKD_00069554 PHLPSKD_00070983 | Vogel Ex. 17 | 402, 403, 802 | |
| DTX 364 | | 07/18/1989 | Wilfried Geuen memo to Members of the COST 211bis Simulation Subgroup enclosing draft report of Paris meeting | PHLPSKD_00069583 | PHLPSKD_00069587 | Vogel Ex. 18 | | |
| DTX 365 | PX 0076 | 10/15/1991 | Unofficial Copy of DIS 10918-1 JPEG Joint Photographic Experts Group | PHLPSKD_00070739 | PHLPSKD_00070739 | Vogel Ex. 20; Schoechle Ex. 17 | | |
| DTX 366 | | 02/21/1987 | Improved Hybrid Coders with 2D-Signal Processing for Moving Pictures by Speidel and Vogel | PHLPSKD_00070947 | PHLPSKD_00070963 | Vogel Ex. 21 | | |
| DTX 367 | | 00/00/1985 | IEEE article *Motion-Compensated Hybrid Coding at 50 KB/S* by Ericsson | PHLPSKD_00069659 | PHLPSKD_00069662 | Vogel Ex. 22 | 402, 403, 802 | |
| DTX 368 | | 01/00/1988 | CCITT SGXV A Hybrid Coder for nx384 kbit/s with 64 kbit/s capacity | PHLPSKD_00069835 | PHLPSKD_00069907 | Vogel Ex. 23 | | |
| DTX 369 | | 10/19/1987 | Declaration and Power of Attorney | KODAK_000046 | KODAK_000046 | Volmer Ex. 7 | | |
| DTX 370 | | 00/00/0000 | Article *Now You Can Make and Answer Your Own Video Phone Calls. In Color.* | WIDCOM 008738 | WIDCOM 008741 | Volmer Ex. 11 | 402, 403, 802 | |
| DTX 371 | | 08/05/1985 | Article *Picture Phones: New Spin on an Old Idea* | WIDCOM 009101 | WIDCOM 009101 | Volmer 12 | 402, 403, 802 | |
| DTX 372 | | 08/09/2007 | Letter from Nikki Wyll to Joyce Craig | N/A | N/A | Wahl Ex. 1 | 402, 403, 802 | |
| DTX 373 | | 2002 | EK Records Management – Exemptions Defined (printed from Kodak.com) | KODAK_019804 | KODAK_019804 | Wahl Ex. 2 | | |
| DTX 374 | | Undated | Eastman Kodak Corporate Policy on Records Management | N/A | N/A | Wahl Ex. 3 | | |
| DTX 375 | | 10/24/2000 | Memo to EK Leadership Team re Lotus Notes – Mail – Policy – Kodak Management Directive Regarding Mail Retention | KODAK_018242 | KODAK_018242 | Wahl Ex. 5; Wahl Ex. 4 | | |
| DTX 376 | PX 0235 | 11/06/2007 | Kodak Organizational Chart (MGT Chairman's Office) | KODAK_019305 | KODAK_019312 | Wahl Ex. 6 | | |

| DTX 377 | | 03/22/2006 | Consumer Digital Imaging Group (CDG) Intellectual Property Org Chart | KODAK_018243 | KODAK_018243 | Wahl Ex. 7 | | |
| DTX 378 | | 12/00/1998 | Statement of Policy (Records Management) | KODAK_018140 | KODAK_018140 | Wahl Ex. 8 | | |
| DTX 379 | | 07/04/1989 | ISO Document titled Separate Meeting of the MPEG/Video Group | PHLPSKD_00028173 | PHLPSKD_00028175 | Watkins Ex. 6 | | |
| DTX 380 | PX 0128 | 03/15/1990 | United States Delegation for Coded Representation of Picture and Audio Information, Tampa Florida | PHLPSKD_00067265 | PHLPSKD_00067267 | Watkins Ex. 7 | | |
| DTX 381 | | Unknown | Slipsheet stating "Not shown to witness" | IBM 8710134021 | IBM 8710134023 | Watkins Ex. 8 | | |
| DTX 382 | | 01/00/1992 | Sixteenth WG11 Meeting Report (ISO) | PHLPSKD_00022092 | PHLPSKD_00022100 | Watkins Ex. 9 | | |
| DTX 383 | PX 0153 | 01/00/1992 | Singapore Meeting Attendance List (ISO) | PHLPSKD_00058226 | PHLPSKD_00058229 | Watkins Ex. 10 | | |
| DTX 384 | | 03/00/1992 | Haifa meeting report (ISO) | PHLPSKD_00021040 | PHLPSKD_00021047 | Watkins Ex. 11 | | |
| DTX 385 | | 01/00/1983 | Report of 21st meeting (ISO) | PHLPSKD_00020599 | PHLPSKD_00020610 | Watkins Ex. 12 | | |
| DTX 386 | | 04/02/1993 | Report of 22nd meeting (ISO) | PHLPSKD_00020178 | PHLPSKD_00020191 | Watkins Ex. 13 | | |
| DTX 387 | | 09/00/1993 | Report of the 24th meeting (ISO) | PHLPSKD_00019423 | PHLPSKD_00019437 | Watkins Ex. 14 | | |
| DTX 388 | | 11/00/1993 | Report of the 25th meeting (ISO) | PHLPSKD_00027717 | PHLPSKD_00027732 | Watkins Ex. 15 | | |
| DTX 389 | | 03/00/1994 | Report of the 26th meeting (ISO) | PHLPSKD_00014883 | PHLPSKD_00014896 | Watkins Ex. 16 | | |
| DTX 390 | | 03/00/1994 | Report of the 26th meeting (ISO) | PHLPSKD_00014883 | PHLPSKD_00014896; 14940 | Watkins Ex. 17 | | |
| DTX 391 | | 07/00/1994 | Report of the 28th meeting (ISO) | PHLPSKD_00017855 | PHLPSKD_00017869 | Watkins Ex. 18 | | |
| DTX 392 | | 11/00/1995 | Report of the 32nd WG11 meeting | PHLPSKD_00001426 | PHLPSKD_00001437 | Watkins Ex. 19 | | |
| DTX 393 | | Undated | Kodak's Log of Privileged Documents | N/A | N/A | Watkins Ex. 2 | 402, 403, 802 | |
| DTX 394 | PX 0179 | 06/20/2002 | Letter from Susumu Tsuguru to Chinon Industries Inc. re Philips Patents for JPEG | PHLPSKD_00057315 | PHLPSKD_00057315 | Watkins Ex. 20 | | |
| DTX 395 | PX 0180 | 07/03/2002 | Email string re Action needed – Accusation of Patent Infringement from Philips – Japanese JPEG Patent | KODAK_018207 | KODAK_018208 | Watkins Ex. 21 | | |
| DTX 396 | PX 0181 | 07/15/2002 | Letter from Charles E. Snee to Takamichi Takehana (Chinon Industries) re Philips Patents for JPEG | KODAK_018220 | KODAK_018220 | Watkins Ex. 22 | | |
| DTX 397 | PX 0182 | 07/19/2002 | Letter from Masao Kobayashi (Chinon) to Susmu Tsuguru (Philips) re Philips Patents for JPEG | PHLPSKD_00057313 | PHLPSKD_00057314 | Watkins Ex. 23 | | |
| DTX 398 | | 07/00/1985 | Report of the Meeting of Study Group VIII, Kyoto, 5-14 June 1985 Part I: Report of the Plenary Meetings of Study Group VIII | KODAK_181941 | KODAK_181946 | Wenzel Ex. 18 | | |

| DTX 399 | | 04/20/1989 | CCITT Study Group VIII – List of Names and Addresses of the Various Rapporteur Group Members | KODAK_182534 | KODAK_182566 | Wenzel Ex. 19 | | |
| DTX 400 | | 04/20/1989 | CCITT Study Group VIII – Report on the Activities of the CCITT-ISO/JPEG Group "Joint Photographic Experts Group" during the Interregnum on the Consensus for the Main Technical Features (February 1988-March 1989) | KODAK_182505 | KODAK_182513 | Wenzel Ex. 20 | | |
| DTX 401 | | 09/13/1990 | List of Participants | KODAK_182624 | KODAK_182631 | Wenzel Ex. 21 | | |
| DTX 402 | PX 0134 | 09/14/1990 | CCITT Study Group VIII – Report on the Activities of Q.16/VIII since April 1990 – Status Report | KODAK_182598 | KODAK_082611 | Wenzel Ex. 22 | | |
| DTX 403 | | 00/00/1991 | M. Wenzel name and company label | | | Wenzel Ex. 23 | | |
| DTX 404 | | 07/10/1990 | U.S. Patent No. 4,941,053 (Hienerwadel) | PHLPSKD_00001152 | PHLPSKD_00001156 | Weth Ex. 1 | | |
| DTX 405 | | 09/10/1987 | European Patent EP 0 260 748 B1 | PHLPSKD_00001157 | PHLPSKD_00001152 | Weth Ex. 3 | | |
| DTX 406 | | 04/27/1987 | Federal Republic of Germany – Certificate/ Application "bit-rate reduction process" on September 13, 1986 | KODAK_018629 | KODAK_018648 | Weth Ex. 4; Marion Ex. 6; Vogel Ex. 5; Volmer Ex. 4; Girod Ex. 10 | | |
| DTX 407 | | 08/26/1987 | Federal Republic of Germany – Certificate/ Application "bit-rate reduction process" on November 8, 1986 | KODAK_018602 | KODAK_018627 | Weth Ex. 5; Marion Ex. 5; Vogel Ex. 6; Volmer Ex. 5 | | |
| DTX 408 | | 10/16/1987 | Federal Republic of Germany – Certificate/ Application "bit-rate reduction process" on May 23, 1987 | KODAK_018581 | KODAK_018601 | Weth Ex. 6; Marion Ex. 4; Vogel Ex. 3; Volmer Ex. 6 | | |
| DTX 409 | PX 0068 | 03/00/1987 | Information to be Given on Photographic Compression Techniques | KODAK_184201 | KODAK_184203 | Weth Ex. 9; Ebrahimi Ex. 11 | | |
| DTX 410 | | 08/19/1991 | Draft Annex L on patents for CD/ DIS/ IS | | | Weth Ex. 10 | | |
| DTX 411 | | 10/00/1988 | Attendants of London Meeting (September 19-23, 1988) | KODAK_012292 | KODAK_012293 | Weth Ex. 11 | | |
| DTX 412 | PX 0094 | 05/09/1988 | ISO – Patent Issues: ADCT and ISO in General | KODAK_074801 | KODAK_074802 | Weth Ex. 13 | | |
| DTX 413 | PX 0266 | 02/24/1989 | JPEG Structure of Standard | KODAK_183548 | KODAK_183549 | Weth Ex. 14 | | |

| DTX 414 | PX 0152 | 02/00/1992 12/06/1991 Which date is correct? | Article entitles *The JPEG Still Picture Compression Standard*, by Wallace | PHLPSKD_00001284 | PHLPSKD_00001300 | Weth Ex. 15; Hamilton Ex. 4 | | |
|---|---|---|---|---|---|---|---|---|
| DTX 415 | PX 0270 | 00/00/0000 | Handwritten attendance list at London | PHLPSKD_00066447 | PHLPSKD_00066450 | Weth Ex. 16 | | |
| DTX 416 | | 01/30/2008 | Expert Report of Robert H. Wallace | N/A | N/A | Wallace 1/30/08 Report | 402, 403, 802 | |
| DTX 417 | | 01/30/2008 | Summary of Reasonable Royalties Due to Philips on Kodak's Domestic Sales | N/A | N/A | Exhibit 1 to Wallace 1/30/08 Report | 402, 403, 802, but will consider as demonstrative | |
| DTX 418 | | 01/30/2008 | Summary of Kodak's Domestic Sales of Accused Products | N/A | N/A | Exhibit 2 to Wallace 1/30/08 Report | | |
| DTX 419 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2A to Wallace 1/30/08 Report | | |
| DTX 420 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2B to Wallace 1/30/08 Report | | |
| DTX 421 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2C to Wallace 1/30/08 Report | | |
| DTX 422 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2D to Wallace 1/30/08 Report | | |
| DTX 423 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2E to Wallace 1/30/08 Report | | |
| DTX 424 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2F to Wallace 1/30/08 Report | | |
| DTX 425 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2G to Wallace 1/30/08 Report | | |
| DTX 426 | | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. | N/A | N/A | Exhibit 2H to Wallace 1/30/08 Report | | |
| DTX 427 | | 01/30/2008 | Summary of Kodak's Domestic Sales of Accused Document Imaging Products – Paper Scanner Products | N/A | N/A | Exhibit 2I to Wallace 1/30/08 Report | | |
| DTX 428 | | 01/30/2008 | Kodak's Domestic Sales of Health Molecular Imaging Systems JPEG Products | N/A | N/A | Exhibit 2J to Wallace 1/30/08 Report | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 429 | | 01/30/2008 | Summary of the Profits/(Losses) Earned by Kodak From Domestic Sales of Consumer Digital Cameras and Related Accessories and Service | N/A | N/A | Exhibit 3 to 1/30/08 Wallace Report | | |
| DTX 430 | | 01/30/2008 | Summary of Kodak's Total Company Statements of Operations | N/A | N/A | Exhibit 4 to 1/30/08 Wallace Report | | |
| DTX 431 | | 01/30/2008 | Summary of Kodak's Revenues and Operating Earning/(Losses) By Business Segment | N/A | N/A | Exhibit 5 to 1/30/08 Wallace Report | | |
| DTX 432 | | 01/30/2008 | Philips' Licenses of the '075 Patent and Eleven Foreign Patent Counterparts for JPEG-Related Products | N/A | N/A | Exhibit 6 to 1/30/08 Wallace Report | | |
| DTX 433 | | 01/30/2008 | Summary of License Fees For Philip's License of the '075 Patent and 11 Foreign Patent Counterparts For JPEG Use | N/A | N/A | Exhibit 6A to 1/30/08 Wallace Report | | |
| DTX 434 | | 01/30/2008 | Summary of License Fees Received by Philips For Licensing the '075 Patent and 11 Foreign Patent Counterparts For JPEG Use (Excluding Licenses Involving Litigation or Mobile Phones) And License Fees per 1% of Worldwide Market Share | N/A | N/A | Exhibit 6B to 1/30/08 Wallace Report | | |
| DTX 435 | | 01/30/2008 | Worldwide Market for Digital Still Cameras (Stated in thousand of units) | N/A | N/A | Exhibit 6C to 1/30/08 Wallace Report | | |
| DTX 436 | | 01/30/2008 | Summary of Kodak's Agreements Licensing in Technology From Third Parties | N/A | N/A | Exhibit 7 to 1/8/08 Wallace Report | | |
| DTX 437 | | 01/30/2008 | License Indicating Industry Royalty Rates for MPEG Technology – Licensor is MPEG LA, an independent licensing administrator | N/A | N/A | Exhibit 8 to 1/30/08 Wallace Report | | |
| DTX 438 | | 01/30/2008 | Reasonable Royalty for the Patent-In-Suit Indicated by the Georgia-Pacific Factors | N/A | N/A | Exhibit 9 to 1/30/08 Wallace Report | 402, 403, 802, but will consider as demonstrative | |
| DTX 439 | | 01/30/2008 | Summary of Reasonable Royalties Due to Philips on Kodak's Domestic and Intercompany Sales | N/A | N/A | Exhibit 10 to 1/30/08 Wallace Report | 402, 403, 802, but will consider as demonstrative | |
| DTX 440 | | 01/30/2008 | Summary of Kodak's Domestic and Intercompany Sales of Accused Products | N/A | N/A | Exhibit 11 to 1/30/08 Wallace Report | | |

SDU1785679.1

31

| | | | | | | |
|---|---|---|---|---|---|---|
| DTX 441 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11A to 1/30/08 Wallace Report | |
| DTX 442 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11B to 1/30/08 Wallace Report | |
| DTX 443 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11C to 1/30/08 Wallace Report | |
| DTX 444 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11D to 1/30/08 Wallace Report | |
| DTX 445 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11E to 1/30/08 Wallace Report | |
| DTX 446 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11F to 1/30/08 Wallace Report | |
| DTX 447 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11G to 1/30/08 Wallace Report | |
| DTX 448 | 01/30/2008 | Summary of Kodak's Consumer Digital Camera Sales In the U.S. and Intercompany | N/A | N/A | Exhibit 11H to 1/30/08 Wallace Report | |
| DTX 449 | 01/30/2008 | Summary of Kodak's Domestic and Intercompany Sales of Accused Documetns Imaging Products – Paper Scanner Products | N/A | N/A | Exhibit 11I to 1/30/08 Wallace Report | |
| DTX 450 | 01/30/2008 | CV of Robert H. Wallace, CPA/ABV | N/A | N/A | Appendix A to 1/30/08 Wallace Report | 402, 403, 802 |
| DTX 451 | 01/30/2008 | Robert Wallace Deposition List and Trial Testimony List | N/A | N/A | Appendix B to 1/30/08 Wallace Report | 402, 403, 802 |
| DTX 452 | 01/30/2008 | List of documents reviewed by Robert Wallace in Connection with this Matter | N/A | N/A | Appendix C to 1/30/08 Wallace Report | 402, 403, 802 |
| DTX 453 | 03/29/1991 | ST Report International Online Magazine "The Original 16/32bit Online Magazine" | KODAK_011380 | KODAK_011424 | | 402, 403, 802 |
| DTX 454 | 03/26/1991 | Article *Kodak Colorsqueeze in Public Domain – Eastman Kodak Releases Its Decompression Tools* | KODAK_011430 | KODAK_011430 | | 402, 403, 802 |
| DTX 455 | 08/19/1991 | JPEG Joint Photographic Image Experts Group – Patent Status | KODAK_013435 | KODAK_013439 | | |
| DTX 456 | 1991, 1992 | User Manual: Kodak Professional Digital Camera System | KODAK_018257 | KODAK_018580 | | |
| DTX 457 | 00/00/0000 | CD of Native Files. | KODAK_018652 | KODAK_018652 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 458 | | | WITHDRAWN | | | | |
| DTX 459 | | 09/15/1984 | TeleSpan article *Widcom Sells to Federal Express* | WIDCOM 010535 | WIDCOM 010535 | | 402, 403, 802, 901 | |
| DTX 460 | | | WITHDRAWN | | | | |
| DTX 461 | | | WITHDRAWN | | | | |
| DTX 462 | | | WITHDRAWN | | | | |
| DTX 463 | | | WITHDRAWN | | | | |
| DTX 464 | | | WITHDRAWN | | | | |
| DTX 465 | | | WITHDRAWN | | | | |
| DTX 466 | | | WITHDRAWN | | | | |
| DTX 467 | | | WITHDRAWN | | | | |
| DTX 468 | | | WITHDRAWN | | | | |
| DTX 469 | | 06/30/1983 | Form 10-K – Annual Report for Widergren Communications | WIDCOM 012913 | WIDCOM 012930 | | 402, 403, 802, 901 | |
| DTX 470 | | | WITHDRAWN | | | | |
| DTX 471 | | | WITHDRAWN | | | | |
| DTX 472 | | | WITHDRAWN | | | | |
| DTX 473 | | 07/21/1983 | Video Teleconferencing Codec Purchase Agreement between Widergren Communications, Inc. and Vitalink Corporation | WIDCOM 018905 | WIDCOM 018920 | | 402, 403, 802, 901 | |
| DTX 474 | | | WITHDRAWN | | | | |
| DTX 475 | | | WITHDRAWN | | | | |
| DTX 476 | | 03/27/1991 | CCITT Report of the Meeting of Working Party VIII/3 | KODAK_182668 | KODAK_182680 | | |
| DTX 477 | | 03/28/1991 | CCITT Meeting Report for Question 16/VIII | KODAK_182681 | KODAK_182686 | | |
| DTX 478 | | 03/28/1991 | CCITT Report of the Rapporteur Group on Question 16/VIII | KODAK_182687 | KODAK_182704 | | |
| DTX 479 | | 03/27/1991 | CCITT Meeting Agenda regarding Question 16/VIII | KODAK_182654 | KODAK_182654 | | |
| DTX 480 | | 04/00/1991 | Study Group VIII – Report R 18: Report of the Meeting of the Study Group VIII, of the Four Working Parties of Study Group VIII and of the Rapporteurs Group on Question 17/VIII – Meeting Held in Geneva From 18-27 March 1991 | KODAK_182001 | KODAK_182072 | | |

| DTX 481 | | 03/27/1991 | CCITT Report of the Rapporteur Group on Q. 16/VIII Covering the Period Since the September 1990 CCITT SGVIII Meeting | KODAK_182655 | KODAK_182659 | | | |
| DTX 482 | | 08/19/1991 | JPEG – Joint Photographic Image Experts Group – Patent Status | KODAK_183592 | KODAK_182975 | | | |
| DTX 483 | | 08/19/1991 | JPEG – Joint Photographic Image Experts Group – Draft Annex L on Patents for CD/DIS/IS | KODAK_183590 | KODAK_183591 | | | |
| DTX 484 | | 10/25/1991 | CCITT Study Group – Report of the Meeting of Working Party VIII/3 | KODAK_182976 | KODAK_183000 | | | |
| DTX 485 | | 10/25/1991 | CCITT Study Group VIII and its Working Parties – Report of the SpR for Q.16/VIII on the Work Since the March 1991 SGVIII Meeting | KODAK_182712 | KODAK_182744 | | | |
| DTX 486 | | 25/10/1991 | CCITT Study Group VIII and its Working Parties – Draft Recommendation T.81 | KODAK_182761 | KODAK_182970 | | | |
| DTX 487 | | 05/03/2007 | Declaration of Richard Clark at Elysium, Ltd. | KODAK_181552 | KODAK_181553 | Schoechle Ex. 21 | 402, 403, 802 | |
| DTX 488 | | 03/27/1991 | ISO – Updated List of Members and Mailing Address of ISO/IEC JTC 1/SC 2/WG 8 1005, 1990-09-04) | KODAK_184645 | KODAK_184660 | | | |
| DTX 489 | | 11/00/1992 | CCITT Study Group XV – Report R 105 – Report of the Geneva Meeting (5-10 November 1992) | KODAK_181555 | KODAK_181590 | | | |
| DTX 490 | | 10/00/1992 | CCITT Study Group XV – Contribution – Protocols For JPEG Still Picture Transmission Through LSD/HSD | KODAK_183102 | KODAK_183191 | | | |
| DTX 491 | | 04/29/1993 | ITU – Telecommunication Standardization Sector Study Group 8 – Draft Report of the First Meeting of Study Group 8 (Part 1 – 27 April) | KODAK_183207 | KODAK_183210 | | | |
| DTX 492 | | 00/00/1993 | ITU – Telecommunication Standardization Sector Study Group 8 – Some Information on the "Still Image Transmission Option" in CCITT H.261 ("Videophony") | KODAK_183195 | KODAK_183197 | | | |
| DTX 493 | | 03/28/1991 | CCITT Study Group VIII - Report Rapporteur for Question 16/VIII | KODAK_076775 | KODAK_076792 | | | |
| DTX 494 | | 00/00/1993 | ITU – Telecommunication Standardization Sector Study Group 8 – Rapporteur Progress Report | KODAK_183211 | KODAK_183215 | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 495 | | 02/15/1996 | ITU – Telecommunication Standardization Sector Study Group 8 – Assessment of Work of Q.16/8 in the Study Period 1993-1996 (for discussion) | KODAK_183216 | KODAK_183401 | | | |
| DTX 496 | | 06/30/1994 | ISO – Preprint if Invited Paper for the Picture Coding Symposium '94 | KODAK_184097 | KODAK_184104 | | | |
| DTX 497 | | 11/00/1998 | IEEE article *The International Standardization of a Still Picture Compression Technique*, Hudson, Yasuda, Sebestyen | KODAK_183574 | KODAK_183579 | | | |
| DTX 498 | | 12/00/1992 | ISO – Calling Notice for the First WG8 Meeting | KODAK_184105 | KODAK_184107 | | | |
| DTX 499 | | 08/00/1993 | ISO – Coded Representation of Pictures Third Distribution List (To Supersede WG8 N25) | KODAK_184115 | KODAK_184119 | | | |
| DTX 500 | | 05/00/1984 | ISO – Coded Representation of Pictures Fifth WG8 Distribution List | KODAK_184126 | KODAK_184129 | | | |
| DTX 501 | | 10/00/1984 | ISO – Coded Representation of Pictures Sixth WG8 Distribution List | KODAK_184130 | KODAK_184133 | | | |
| DTX 502 | | 01/00/1985 | ISO – Coded Representation of Pictures Seventh WG8 Distribution List | KODAK_184134 | KODAK_184137 | | | |
| DTX 503 | | 09/00/1993 | Study Group 15 – Report R 3 – Report of Working Party 1/15 (Audiovisual) – Part 1 (General) | KODAK_077447 | KODAK_077496 | | | |
| DTX 504 | | 00/00/0000 | Handwritten: "Patents" WG8 Guidance | KODAK_183587 | KODAK_183587 | Ebrahimi Ex. 16 | 402, 403, 802, 901 | |
| DTX 505 | | 09/00/1990 | CCITT Study Group VIII – Report of the meeting of Working Part 3 of Study Group VIII, Part 1 Geneva 5-14, September 1990 | KODAK_181962 | KODAK_182000 | | | |
| DTX 506 | | 00/00/1986 | ISO – Liaison Statement to CCITT SG VIII New Image Communication (NIC) Group | KODAK_184178 | KODAK_184179 | | | |
| DTX 507 | | 07/00/1986 | ISO – Brief Report of the Photographic Ad-hoc Meeting, Rennes (handwritten) | KODAK_184180 | KODAK_184182 | | | |
| DTX 508 | | 11/14/1986 | CCITT SGXV Working Party Group XV/1 –Report of the Seventh Meeting in Nurnberg (November 11-14, 1986) | KODAK_183926 | KODAK_183967 | | | |
| DTX 509 | | 06/00/1987 | WG8 Document Register in Copenhagen | KODAK_184219 | KODAK_184219 | | | |
| DTX 510 | | 00/00/1988 | ISO – Report of the Joint Photographic Experts Group Meeting 25-27 January 1988, KTAS Copenhagen | KODAK_184299 | KODAK_184305 | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 511 | | 04/00/1988 | ISO – Standardization of ADCT Algorithm | KODAK_184306 | KODAK_184309 | | | |
| DTX 512 | | 05/09/1988 | ISO – Alternative Approaches to Specifying DCT and IDCT | KODAK_184317 | KODAK_184321 | | | |
| DTX 513 | PX 0269 | 09/09/1988 | ISO – CCITT/ISO Photographic Image Data Compression Standard Functionality and Goals | KODAK_184322 | KODAK_184327 | | | |
| DTX 514 | | 06/00/1988 | JPEG Member Mailing List | KODAK_183402 | KODAK_183407 | | | |
| DTX 515 | PX 0099 | 06/08/1988 | Omachi letter to Wallace regarding patent that includes 2-D VLC (two dimensional variable length coder) | KODAK_183558 | KODAK_183562 | Schoechle Ex. 19; Ebrahimi Ex. 18 | | |
| DTX 516 | | 07/00/1988 | ISO – Encoding Method of AC Coefficient | KODAK_183563 | KODAK_183565 | | | |
| DTX 517 | PX 100 | 09/00/1988 | CCITT SG XV – Patent Applications by PKI on Low Bitrate Video encoding | KODAK_184066 | KODAK_184066 | | | |
| DTX 518 | | 10/23/1988 | Report of 21st SC2 London Plenary about WG8 Matters | KODAK_184349 | KODAK_184349 | | | |
| DTX 519 | | 10/27/1988 | European Patent papers (Yasuda) | KODAK_184350 | KODAK_184351 | | | |
| DTX 520 | | 02/14/1989 | ISO – WG8 Mailing List (Fifth Revision) | KODAK_184352 | KODAK_184369 | | | |
| DTX 521 | | 04/20/1989 | CCITT – Report of the Activities of the CCIC Group During Interregnum (February 1988-March 1989) | KODAK_182492 | KODAK_182504 | | | |
| DTX 522 | | 04/19/1989 | CCITT Study Group VIII – List of Participants | KODAK_182526 | KODAK_182533 | | | |
| DTX 523 | | 04/21/1989 | CCITT Study Group VIII – Meeting Reports | KODAK_182520 | KODAK_182525 | | | |
| DTX 524 | | 04/21/1989 | Handwritten: CCITT Study Group VIII – Report of the Rapporteur Group on Q.16/VIII | KODAK_182514 | KODAK_182519 | | | |
| DTX 525 | | 06/00/1989 | ISO – WG8 Mailing List (June 1989) | KODAK_184433 | KODAK_184447 | | | |
| DTX 526 | | 11/07/1989 | CCITT SGXV Working Party XV/1 – Patent Licensing Policies for Rec. H.261 | KODAK_184067 | KODAK_184080 | | | |
| DTX 527 | | 01/00/1990 | CCITT 16/VIII – Technical Specification of the JPEG-Algorithm (revision 5) for Compression and Decompression of Still-Frame, Continuous-Tone "Photographic" (Grayscale or Color) Digitized Images | KODAK_181779 | KODAK_181911 | | | |
| DTX 528 | | 04/00/1990 | CCITT Questions 5, 8, 11, 16, 20, 23/VIII –Report of the Meeting Party VIII/3 – Coding, Conversion Transmission (Budapest, 26 March – 4 April 1990) | KODAK_182445 | KODAK_182491 | Schoechle Ex. 14 | | |
| DTX 529 | | 04/10/1990 | Handwritten: CCITT Meeting Report of Working Party | KODAK_182588 | KODAK_182597 | | | |
| DTX 530 | | 04/10/1990 | CCITT Study Group VIII – Mailing List | KODAK_182584 | KODAK_182587 | | | |

| DTX 531 |  | 04/10/1990 | CCITT Study Group VIII – Mailing Report | KODAK_182567 | KODAK_182583 |  |  |
| DTX 532 | PX 0130 | 12/05/1990 | ISO – Budapest Meeting Report | KODAK_184632 | KODAK_184642 |  |  |
| DTX 533 |  | 04/00/1990 | ISO – Redefinition/Restructure of WG8 | KODAK_184581 | KODAK_184587 |  |  |
| DTX 534 |  | 04/00/1990 | ISO – Resolutions of 2nd SC2 Plenary at Washington (April 9-12, 1990) | KODAK_184567 | KODAK_184580 |  |  |
| DTX 535 |  | 07/12/1990 | JPEG - Liaison Report to WG9 (handwritten) | KODAK_183588 | KODAK_183588 |  |  |
| DTX 536 |  | 09/14/1990 | CCITT Study Group VIII –Report of the Meeting of Working Party VIII/3 | KODAK_182632 | KODAK_182653 |  |  |
| DTX 537 |  | 09/14/1990 | CCITT Study Group VIII –Report of Q.16/VIII Meeting (Geneva, 10 September 1990) | KODAK_182620 | KODAK_182623 |  |  |
| DTX 538 |  | 09/05/1990 | CCITT Study Group VIII – Provisional List of Participants | KODAK_182612 | KODAK_182619 |  |  |
| DTX 539 |  | 09/00/1990 | CCITT Study Group VIII – Photovideotex Syntax | KODAK_181912 | KODAK_181940 |  |  |
| DTX 540 |  | 12/04/1992 | Memo to Lepesqueur regarding Planned Revision of CCITT Recommendation T.81 | KODAK_181524 | KODAK_181532 |  |  |
| DTX 541 |  | 03/00/1988 | Study Group VIII – Report of Final Meeting of Study Group VIII in the Study Period 1985-1988 (Geneva 8 to 19 February 1988) | KODAK_181947 | KODAK_181961 |  |  |
| DTX 542 |  | 10/00/1991 | Study Group VIII – Report of the Meeting of Study Group VIII, of the Four Working Parties of the Study Group VIII and of the Rapporteurs Group on Question 17/VIII – Meeting Held in Geneva From 16-25 October 1991 | KODAK_182231 | KODAK_182444 |  |  |
| DTX 543 |  | 04/00/1992 | Liaison Report on the Second SC29 Plenary Meeting (March 30-April 1, 1992) | KODAK_183024 | KODAK_183035 |  |  |
| DTX 544 |  | 05/00/1992 | Study Group VIII – Report of the Meeting of Study Group VIII, of the Four Working Parties of the Study Group VIII and of the Rapporteurs Group on Question 17/VIII – Meeting Held in Geneva From 22-30 April 1992 | KODAK_183044 | KODAK_183094 |  |  |
| DTX 545 |  | 00/00/0000 | Annex 2-2 Proposed Test for Question Qpci-general/VIII | KODAK_183095 | KODAK_183101 | Incomplete |  |
| DTX 546 |  | 05/06/1993 | Report on the ISO/IEC JTC1/SC29 Plenary Meeting in Ottawa, Canada (November 9-11, 1992) | KODAK_183193 | KODAK_183194 |  |  |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 547 | | 05/06/1993 | The SpR's Report on some "Lessons Learned" regarding Current Patent Policy Practice of Joint CCITT and ISO/IEC Recommendations/Standards | KODAK_183198 | KODAK_183206 | | |
| DTX 548 | | 03/28/1989 | Structure of JPEG Algorithm: Explanation of Livingston Consensus | KODAK_183550 | KODAK_183557 | | |
| DTX 549 | | 05/10/1989 | IBM Statement on Q-Coder Patents | KODAK_183580 | KODAK_183584 | | |
| DTX 550 | | 07/00/1990 | Handwritten – Joint Photographic Expert Group – Questions to the "Near Lossless'" Cap | KODAK_183586 | KODAK_183586 | | |
| DTX 551 | | 10/05/1976 | CCITT VIth Plenary Assembly – Draft Resolution Patented Items | KODAK_183598 | KODAK_183598 | | |
| DTX 552 | | 11/23/1991 | Attendance List for the First Plenary Meeting of ISO/IEC JTC 1/SC 29 | KODAK_183911 | KODAK_183912 | | 402, 403, 802, 901 |
| DTX 553 | | 00/00/0000 | CCITT Study Group XV - Intellectual Property Considerations | KODAK_183913 | KODAK_183915 | | |
| DTX 554 | | 01/18/1988 | CCITT SGXV Working Party XV/1 – Coded Representation of Picture and Audio Information | KODAK_183968 | KODAK_184028 | | |
| DTX 555 | | 03/08/1994 | Coding of Still Pictures – IBM Letter on Arithmetic Coding Patents (Mitchell) | KODAK_184093 | KODAK_184096 | | |
| DTX 556 | | 11/00/1987 | ISO – Liaison Between ISO/TC97/SC2/WG8 and CCITT SGXV (Mr. Okubo) | KODAK_184220 | KODAK_184220 | | |
| DTX 557 | | 09/09/1988 | ISO – Patent Consideration in Standardization Efforts | KODAK_184328 | KODAK_184334 | | |
| DTX 558 | | 10/18/1988 | ISO – Report on the Activity of SC 2/WG8 to the SC 2 Plenary Meeting in London, 1988-10-17/21 | KODAK_184370 | KODAK_184415 | | |
| DTX 559 | PX 0105 | 10/20/1988 | ISO – Resolutions Taken by ISO/IEC JTC 1/SC 2 at Its 1st Plenary Meeting in London, 1988-10-17/20 | KODAK_184416 | KODAK_184423 | | |
| DTX 560 | | 06/28/1989 | ISO – WG8 Document Register at Stockholm | KODAK_184424 | KODAK_184425 | | |
| DTX 561 | | 01/25/1989 | ISO – Important Matters Toward 15th WG8 February Meeting at Livingston | KODAK_184426 | KODAK_184429 | | |
| DTX 562 | | 06/28/1989 | ISO – WG8 Participation List (June 1989) | KODAK_184448 | KODAK_184453 | | |
| DTX 563 | | 03/12/1990 | ISO – WG8 Plenary Sessions: Stockholm: July 3-7, 1989 Meeting Report | KODAK_184486 | KODAK_184549 | | |
| DTX 564 | | 07/06/1990 | ISO – WG8 Participation List (To Porto Meeting: July 6, 1990) | KODAK_184588 | KODAK_184594 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 565 | | 12/25/1990 | ISO – JPEG Activity Summary for Term of 10/88-3/90 (Wallace) | KODAK_184643 | KODAK_184644 | | |
| DTX 566 | | 00/00/0000 | Photocopy of "2 Professional DCS" (with picture of a camera) | KODAK_438383 | KODAK_438383 | | 901 |
| DTX 567 | | 09/10/1986 | Invention Disclosure/ European Patent File History – German Language document | PH_PAN 0188335 | PH_PAN 0188354 | | |
| DTX 568 | | 00/00/0000 | Article: *Facial Recognition Emerges as New Frontier* | KODAK_024189 | KODAK_024189 | | |
| DTX 569 | | 12/00/2005 | Network magazine *It's All His Fault*, Steven Sasson "Father of the Digital Camera" | KODAK_024190 | KODAK_024193 | | 402, 403, 802 |
| DTX 570 | | 11/15/2005 | Digital Life article *Future Memories Look Good*, Steven Sasson | KODAK_024194 | KODAK_024194 | | 402, 403, 802 |
| DTX 571 | | 10/00/2003 | Picture CD Consumer Satisfaction Survey Wave IX | KODAK_024086 | KODAK_024167 | | 402, 403, 802, 901, 1006 |
| DTX 572 | | 01/12/1995 | Peters letter to Sheldon regarding ISO-IEC Standard DIS 10918-1 (JPEG) | PH_PAN 0289493 | PH_PAN 0289496 | | |
| DTX 573 | | 01/00/1988 | CCITT SGXV – A Hybrid Coder for n x 384 kbit/s with 64 kbit/s capability | PHLPSKD_00070965 | PHLPSKD_00070989 | | Two documents together |
| DTX 574 | | 03/00/1994 | ISO – Report of the 26th Meeting | PHLPSKD 00014883 | PHLPSKD 00014956 | | |
| DTX 575 | | 07/00/1994 | ISO – Report of the 28th Meeting | PHLPSKD 00017855 | PHLPSKD 00017925 | | |
| DTX 576 | | 09/00/1993 | ISO – Report of the 24th Meeting | PHLPSKD 00019423 | PHLPSKD 00019502 | | |
| DTX 577 | | 04/02/1993 | ISO – Report of the 22nd Meeting | PHLPSKD 00020178 | PHLPSKD 00020299 | | |
| DTX 578 | | 01/00/1993 | ISO – Report of the 21st Meeting | PHLPSKD 00020599 | PHLPSKD 00021087 | | |
| DTX 579 | | 03/00/1989 | Philips Research Laboratories, Redhill – Technical Note A Software Implementation of the Draft ISO/JPEG Adaptive Discrete Cosine Transform Still Picture Coding Technique, O.J. Morris | PHLPSKD_00054091 | PHLPSKD_00054114 | | |
| DTX 580 | | | WITHDRAWN | | | | |
| DTX 581 | | | WITHDRAWN | | | | |
| DTX 582 | | 00/00/0000 | System Block Diagram – flowchart | WIDCOM 001273 | WIDCOM 001283 | | 402, 403, 802, 901 |
| DTX 583 | | 09/25/1984 | VTC-56 Instruction Manual, by Widcom Inc. | WIDCOM 001335 | WIDCOM 001345 | | 402, 403, 802, 901 |

| DTX 584 | 01/23/1986 | Widcom Customer Base (Shipped) VTC-56 Video CODEC Personal Video Stations Rapics 500 | WIDCOM 001550 | WIDCOM 001551 | | 402, 403, 802, 901 | |
| DTX 585 | 05/28/1985 | Distribution Agreement | WIDCOM 003056 | WIDCOM 003075 | | 402, 403, 802, 901 | |
| DTX 586 | | WITHDRAWN | | | | | |
| DTX 587 | 00/00/0000 | Widcom flowchart – VTC __, Incoder Coder Board | WIDCOM 004140 | WIDCOM 004145 | | 402, 403, 802, 901 | |
| DTX 588 | 03/23/1983 | Award/Contract issued by Defense Supply Service-Washington to Widergren Communications, Inc. (dated effective April 1, 1983) | WIDCOM 006694 | WIDCOM 006178 | | 402, 403, 802, 901 | |
| DTX 589 | | WITHDRAWN | | | | | |
| DTX 590 | | WITHDRAWN | | | | | |
| DTX 591 | | WITHDRAWN | | | | | |
| DTX 592 | | WITHDRAWN | | | | | |
| DTX 593 | 04/15/1984 | TeleSpan article *Teleconferencing Used for Citizens Forums* | WIDCOM 008664 | WIDCOM 008664 | | 402, 403, 802, 901 | |
| DTX 594 | 03/29/1985 | TeleSpan article *Widcom Demonstrates 56kbps System on Today Show* | WIDCOM 008669 | WIDCOM 008669 | | 402, 403, 802, 901 | |
| DTX 595 | | WITHDRAWN | | | | | |
| DTX 596 | 06/15/1986 | TeleSpan article *Federal Express to Install 500-Site Dedicated Broadcast Video Network* | WIDCOM 008677 | WIDCOM 008677 | | 402, 403, 802, 901 | |
| DTX 597 | | WITHDRAWN | | | | | |
| DTX 598 | | WITHDRAWN | | | | | |
| DTX 599 | 04/01/1982 | Computer Print-out – Gray scale image using Widcom's proprietary adaptive cosine transform sub-block coding algorithm | WIDCOM 001075 | WIDCOM 001148 | | 402, 403, 802, 901 | |
| DTX 600 | 12/15/1986 | Robson letter to Wallace regarding two Widcom VTC-56 Codecs in September 1985 | WIDCOM 001565 | WIDCOM 001565 | | 402, 403, 802, 901 | |
| DTX 601 | 06/08/1983 | VTC-56 Encoder – coder board flowchart | WIDCOM 003029 | WIDCOM 003038 | | 402, 403, 802, 901 | |
| DTX 602 | 11/13/1987 | Coder flowchart | WIDCOM 003039 | WIDCOM 003046 | | 402, 403, 802, 901 | |
| DTX 603 | 00/00/0000 | Clock Gen Circuitry flowchart | WIDCOM 003149 | WIDCOM 003158 | | 402, 403, 802, 901 | |

| DTX 604 | 00/00/0000 | Clock Gen Circuitry flowchart | WIDCOM 003159 | WIDCOM 003166 | | 402, 403, 802, 901 | |
| DTX 605 | 12/12/1985 | Handwritten VTC-56 Customers | WIDCOM 003167 | WIDCOM 003168 | | 402, 403, 802, 901 | |
| DTX 606 | 00/00/1987 | Coder Board – Block Diagram | WIDCOM 003169 | WIDCOM 003179 | | 402, 403, 802, 901 | |
| DTX 607 | 07/31/1985 | Kodak office – Approval of SER Expenditure | WIDCOM 003216 | WIDCOM 003216 | | 402, 403, 802, 901 | |
| DTX 608 | 00/00/0000 | Kodak office – Resource Request Form | WIDCOM 003217 | WIDCOM 003217 | | 402, 403, 802, 901 | |
| DTX 609 | 07/16/1985 | Leith letter to Derounian enclosing design for a temporary retrofit of the existing videoconference systems | WIDCOM 003220 | WIDCOM 003220 | | 402, 403, 802, 901 | |
| DTX 610 | 07/18/1985 | Pierce Phelps proposal no. 850813 to Derounian | WIDCOM 003221 | WIDCOM 003221 | | 402, 403, 802, 901 | |
| DTX 611 | 08/26/1985 | Kodak office – Approval of Blanket SER Expenditure | WIDCOM 003224 | WIDCOM 003227 | | 402, 403, 802, 901 | |
| DTX 612 | 00/00/0000 | Abstract: Design and Testing of a Facility for Two-Way Video Teleconferencing by Cushman and Derounian | WIDCOM 003228 | WIDCOM 003232 | Derounian Ex. 4 | 402, 403, 802, 901 | |
| DTX 613 | 00/00/0000 | Purchase Requisition for Teleconferencing Equipment to be Used with Widcom 56 kbps CODEC in B/20 and B205 | WIDCOM 003233 | WIDCOM 003234 | Derounian Ex. 5 | 402, 403, 802, 901 | |
| DTX 614 | 12/13/1983 | Widergren Communications, Inc Notice of Annual Meeting of Shareholders | WIDCOM 003245 | WIDCOM 003271 | | 402, 403, 802, 901 | |
| DTX 615 | 11/21/1983 | Computer print out coding luminance and chrominance components of an image sequence | WIDCOM 003413 | WIDCOM 003425 | | 402, 403, 802, 901 | |
| DTX 616 | 10/17/1983 | Computer print out | WIDCOM 003488 | WIDCOM 003502 | | 402, 403, 802, 901 | |
| DTX 617 | 00/00/1982 | Darpa Report for VTC-56 | WIDCOM 003518 | WIDCOM 003594 | | 402, 403, 802, 901 | |
| DTX 618 | 06/25/1984 | VTC Experiments, Phase I | WIDCOM 003693 | WIDCOM 003704 | | 402, 403, 802, 901 | |

SDU1785479.1

41

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DTX 619 | | 11/12/1983 | Computer print out fixed initial variance - two dimensional adaptive block coder | WIDCOM 003705 | WIDCOM 003807 | | 402, 403, 802, 901 |
| DTX 620 | | 00/00/0000 | VTC-56 Coder Board flowchart | WIDCOM 003808 | WIDCOM 003813 | | 402, 403, 802, 901 |
| DTX 621 | | 04/11/1984 | Schematic - Console Central Panel | WIDCOM 003957 | WIDCOM 003959 | | 402, 403, 802, 901 |
| DTX 622 | | 04/01/1982 | Computer print out Subroutine to perform forward or inverse two dimensional cosine transform | WIDCOM 003960 | WIDCOM 003962 | | 402, 403, 802, 901 |
| DTX 623 | | 10/11/1983 | Computer print out rate buffer definitions | WIDCOM 003996 | WIDCOM 004042 | | 402, 403, 802, 901 |
| DTX 624 | | 08/04/1981 | Computer print out program to adjust replenishment threshold | WIDCOM 004045 | WIDCOM 004046 | | 402, 403, 802, 901 |
| DTX 625 | | 09/25/1980 | Computer print out index mapping arrays for snake block coder | WIDCOM 004047 | WIDCOM 004048 | | 402, 403, 802, 901 |
| DTX 626 | | 12/23/1980 | Computer print out subroutine xfload (NBPEL, NBITS, BLK, DIM) – subroutine to position a block for the forward transformation | WIDCOM 004051 | WIDCOM 004054 | | 402, 403, 802, 901 |
| DTX 627 | | 08/31/1983 | Computer print out | WIDCOM 004057 | WIDCOM 004660 | | 402, 403, 802, 901 |
| DTX 628 | | 08/31/1983 | Computer print out | WIDCOM 004063 | WIDCOM 004068 | | 402, 403, 802, 901 |
| DTX 629 | | 06/15/1984 | Computer print out | WIDCOM 004074 | WIDCOM 004086 | | 402, 403, 802, 901 |
| DTX 630 | | 09/30/1983 | Computer print out | WIDCOM 004095 | WIDCOM 004124 | | 402, 403, 802, 901 |
| DTX 631 | | 06/16/1984 | Computer print out frame to frame synchronizer | WIDCOM 004146 | WIDCOM 004151 | | 402, 403, 802, 901 |
| DTX 632 | | 06/13/1984 | Computer print out | WIDCOM 004155 | WIDCOM 004166 | | 402, 403, 802, 901 |
| DTX 633 | | 11/11/1977 | Article *Digital Coding of Color Video Signals – A Review*, Limb, Rubinstein and Thompson | WIDCOM 004167 | WIDCOM 004238 | | 402, 403, 802, 901 |
| DTX 634 | | 08/31/1983 | Computer print out | WIDCOM 004239 | WIDCOM 004240 | | 402, 403, 802, 901 |

| DTX 635 | | 06/02/1982 | Computer print out frame to frame synchronizer | WIDCOM 004250 | WIDCOM 004252 | | 402, 403, 802, 901 | |
| DTX 636 | | 00/00/0000 | Meeting Minutes from January 25, 1989 meeting | WIDCOM 004323 | WIDCOM 004328 | | | |
| DTX 637 | | 01/09/1991 | List of Significant Contributors in the X3I2.8 Committee | WIDCOM 004329 | WIDCOM 004331 | | | |
| DTX 638 | | 10/17/1983 | Computer print out | WIDCOM 004389 | WIDCOM 004585 | | 402, 403, 802, 901 | |
| DTX 639 | | 06/20/1984 | Computer print out Multi resolution block smoother | WIDCOM 004619 | WIDCOM 004626 | | 402, 403, 802, 901 | |
| DTX 640 | | 07/20/1984 | Computer print out convert images in real format to integer format | WIDCOM 004752 | WIDCOM 004755 | | 402, 403, 802, 901 | |
| DTX 641 | | 11/01/1986 | DRAFT: VTC-56B Theory of Operation A System Overview Widcom, Inc. | WIDCOM 005000 | WIDCOM 005016 | | 402, 403, 802, 901 | |
| DTX 642 | | 06/01/1984 | Coder Board Block Diagram | WIDCOM 006042 | WIDCOM 006072 | | 402, 403, 802, 901 | |
| DTX 643 | | 11/01/1986 | DRAFT: VTC-56B Coder Theory of Operation, Widcom, Inc. | WIDCOM 006170 | WIDCOM 006234 | | 402, 403, 802, 901 | |
| DTX 644 | | 11/01/1986 | DRAFT: VTC-56B Cosine Theory of Operation, Widcom, Inc. | WIDCOM 006235 | WIDCOM 006256 | | 402, 403, 802, 901 | |
| DTX 645 | | 11/01/1986 | DRAFT: VTC-56 Decoder Theory of Operation, Widcom, Inc. | WIDCOM 006257 | WIDCOM 006300 | | 402, 403, 802, 901 | |
| DTX 646 | | 11/01/1986 | DRAFT: VTC-56 Digital to Analog Converter (DAC) Theory of Operation, Widcom, Inc. | WIDCOM 006301 | WIDCOM 006306 | | 402, 403, 802, 901 | |
| DTX 647 | | 11/01/1986 | DRAFT: VTC-56 Forward Error Corrector Theory of Operation, Widcom, Inc. | WIDCOM 006307 | WIDCOM 006341 | | 402, 403, 802, 901 | |
| DTX 648 | | 11/01/1986 | DRAFT: VTC-56 Input Processor Theory of Operation, Widcom, Inc. | WIDCOM 006342 | WIDCOM 006356 | | 402, 403, 802, 901 | |
| DTX 649 | | 11/01/1986 | DRAFT: VTC-56 Inverse Cosine Transform Theory of Operation, Widcom, Inc. | WIDCOM 006357 | WIDCOM 006384 | | 402, 403, 802, 901 | |
| DTX 650 | | 11/01/1986 | DRAFT: VTC-56 Output Processor Theory of Operation, Widcom, Inc. | WIDCOM 006385 | WIDCOM 006395 | | 402, 403, 802, 901 | |
| DTX 651 | | 11/01/1986 | DRAFT: VTC-56 Receive Memory Theory of Operation, Widcom, Inc. | WIDCOM 006467 | WIDCOM 006512 | | 402, 403, 802, 901 | |

| DTX 652 | | 11/01/1986 | DRAFT: VTC-56 Theory of Operation A System Overview, Widcom, Inc. | WIDCOM 006513 | WIDCOM 006528 | | 402, 403, 802, 901 | |
| DTX 653 | | 00/00/1986 | Power Distribution System 220/VDE VTC-56 | WIDCOM 006529 | WIDCOM 006529 | | 402, 403, 802, 901 | |
| DTX 654 | | 00/00/0000 | Schenker Stinnes Logistics: European Document, shipping receipts, invoices, photos | WIDCOM 006631 | WIDCOM 006662 | | 402, 403, 802, 901 | |
| DTX 655 | | 00/00/0000 | Photocopy of a CD entitled VTC-56 Product Demonstrations | WIDCOM 006663 | WIDCOM 006663 | | 402, 403, 802, 901, 1002 | |
| DTX 656 | PX 0280 | 02/22/1986 | Order Finding Defendants in Contempt of this Court's May 27, 1983 Order and Dismissing Defendant's Order to Show Cause re Contempt Against Plaintiff | WIDCOM 006895 | WIDCOM 009601 | | | |
| DTX 657 | | 06/30/1984 | Widcom, Inc. SEC Form 10-K | WIDCOM 007139 | WIDCOM 007165 | | 402, 403, 802, 901 | |
| DTX 658 | | 02/15/1986 | TeleSpan Article *Widcom, in the Black for Quarter Sells 102 Codecs to Date UK Distribution Set* | WIDCOM 008864 | WIDCOM 008864 | | 402, 403, 802, 901 | |
| DTX 659 | | 10/15/1986 | TeleSpan Article *Widcom Report Shipments of 56kbps Codecs: Revised Financials Pending* | WIDCOM 008865 | WIDCOM 008865 | | 402, 403, 802, 901 | |
| DTX 660 | | 11/15/1985 | TeleSpan Article *Widcom Announces 90 Codecs Shipped so Far in 1985* | WIDCOM 009344 | WIDCOM 009344 | | 402, 403, 802, 901 | |
| DTX 661 | | 00/00/0000 | Specification page: *A Line on Widcom The 56 Kilobit Performer* | WIDCOM 011200 | WIDCOM 011200 | | 402, 403, 802, 901 | |
| DTX 662 | | 00/00/0000 | Video Teleconferencing User Guide | WIDCOM 011307 | WIDCOM 011308 | | 402, 403, 802, 901 | |
| DTX 663 | | 12/31/1984 | Widcom Form 10-K | WIDCOM 011548 | WIDCOM 011563 | | 402, 403, 802, 901 | |
| DTX 664 | | 04/00/1986 | IEEE Article: *Gray-Scale Image Coding for Freeze-Frame Videoconferencing*, Anastassiou, Pennebaker, Mitchell | WIDCOM 012405 | WIDCOM 012417 | | 402, 403, 802, 901 | |
| DTX 665 | | 09/29/1983 | Excerpts from Anderson lab notebook | WIDCOM 018896 | WIDCOM 018999 | | 402, 403, 802, 901 | |
| DTX 666 | | 12/12/1985 | Handwritten notes on VTC-56 Customers | WIDCOM 019000 | WIDCOM 019001 | | 402, 403, 802, 901 | |
| DTX 667 | | 11/01/1986 | DRAFT: VTC-56 Inverse Cosine Transform Theory of Operation, Widcom, Inc. | WIDCOM 019092 | WIDCOM 019114 | | 402, 403, 802, 901 | |

| DTX 668 | | 11/01/1986 | DRAFT: VTC-56B Coder Theory of Operation, Widcom, Inc. | WIDCOM 019167 | WIDCOM 019225 | | 402, 403, 802, 901 | |
| DTX 669 | | 11/01/1986 | DRAFT: VTC-56 Output Processor Theory of Operation, Widcom, Inc. | WIDCOM 019226 | WIDCOM 019237 | | 402, 403, 802, 901 | |
| DTX 670 | | 09/10/1986 | English translation with certification of German Invention Disclosure to Vogel patent [Bates stamped PH_PAN 0188335-PH_PAN 0188339] | KODAK_024344 | KODAK_024349 | | 402, 403, 701, 802 | |
| DTX 671 | | 06/05/2007 | Court of the Hague – Dutch Judgement LG Electronics Benelux Sales v. Koninklijke Philips Electronics (2007) | KODAK_024195 | KODAK_024204 | | 402, 403, 802 | |
| DTX 672 | | 06/05/2007 | English translation with certification of Dutch Judgment LG Electronics Benelux Sales v Koninklijke Philips Electronics (2007) [Bates stamped KODAK_024195-KODAK_024204] | KODAK_024381 | KODAK_024391 | | 402, 403, 701, 802 | |
| DTX 673 | | 00/00/2006 | Korean District Court Decision of Noninfringement for Koninklijke Philips Electronics N.V. v. LG Electronics | KODAK_024205 | KODAK_024232 | | 402, 403, 802 | |
| DTX 674 | | 00/00/2006 | English translation with certification of Korean District Court Decision of Noninfringement for Koninklijke Philips Electronics N.V. v. LG Electronics [Bates stamped KODAK_024205-KODAK_024232] | KODAK_024392 | KODAK_024420 | | 402, 403, 701, 802 | |
| DTX 675 | | 00/00/2006 | Korean IPT Decision of Noninfringement in the case of LG Electronics v. Koninklijke Philips Electronics | KODAK_024233 | KODAK_024271 | | 402, 403, 802 | |
| DTX 676 | | 00/00/2006 | English translation with certification of Korean IPT Decision of Noninfringement in the case of LG Electronics v. Koninklijke Philips Electronics [Bates stamped KODAK_024233-KODAK_024271] | KODAK_024421 | KODAK_024461 | | 402, 403, 701, 802 | |
| DTX 677 | | 00/00/2006 | Korean IPT Decision of Validity in the case of LG Electronics v. Koninklijke Philips Electronics | KODAK_024272 | KODAK_024313 | | 402, 403, 802 | |
| DTX 678 | | 00/00/2006 | English translation with certification of Korean IPT Decision of Validity in the case of LG Electronics v. Koninklijke Philips Electronics [Bates stamped KODAK_024272-KODAK_024313] | KODAK_024462 | KODAK_024504 | | 402, 403, 701, 802 | |

| DTX 679 | | 06/05/2007 | German Nullity Decision in the case of LG Electronics and Kodak v. Philips Intellectual Property and Standards | KODAK_024314 | KODAK_024342 | | 402, 403, 802 | |
| DTX 680 | | 06/05/2007 | English translation with certification of German Nullity Decision in the case of LG Electronics and Kodak v. Philips Intellectual Property and Standards [Bates stamped KODAK_024314-KODAK_024342] | KODAK_024350 | KODAK_024379 | | 402, 403, 701, 802 | |
| DTX 681 | | 00/00/0000 | CD of NBC Today Show | KODAK_011345 | KODAK_011345 | | 402, 403, 802, 901 | |
| DTX 682 | | 00/00/1992 | Kodak Professional DCS – Specifications of Kodak Professional Digital Camera System | KODAK_438406 | KODAK_438409 | | | |
| DTX 683 | | 01/13/93 | International Standard DIS 10918-1; CCITT Recommendation T.81; Digital Compression and Coding of Continuous-Tone Still Images; Table of Contents and Forward | PHLPSKD_00070211 | PHLPSKD00070212 | Schoechle Ex. 17 | | |
| DTX 684 | | | Annex L (informative) | PHLPSKD_00070409 | PHLPSKD_00070410 | Schoechle Ex. 17 | | |
| DTX 685 | | 05/23/2007 | Tijdelijn – deelname Philips aan diverse JPEG-studiegroepen | PH_PAN 0259847 | 4 pages total (not bated) | | 402, 403, 802 | |
| DTX 686 | PX 0299 | 04/00/1989 | Patents Statement; JPEG 314 | PHLPSKD_00037690 | | | | |
| DTX 687 | PX 0298 | 06/06/1989 | Statement on CSELT patents relevant to the ADCT algorithm; JPEG 325 | PHLPSKD_00037713 | | | | |
| DTX 688 | PX 0297 | 08/08/1989 | Patent Statement; JPEG 334 | PHLPSKD_00060101 | | | | |
| DTX 689 | | 02/08/1993 | Patent Statement from Electronic Imagery | PHLPSKD_00060502 | | | | |
| DTX 690 | | 04/12/92 | ISO/IEC DIS 11172; Coding of Moving Pictures and Associated Audio (MPEG); MPEG93/193 | PHLPSKD_00046969 | | | | |
| DTX 691 | | 08/06/1986 | BSI – Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on July 22, 1986 Held at Hampton House in London | BSI_00001 | BSI_00008 | | | |
| DTX 692 | | 05/03/1989 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on April 26, 1989 Held at Hampton House in London | BSI_00009 | BSI_00030 | | | |

| DTX 693 | | 08/03/1989 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on July 31, 1989 Held at Hampton House in London | BSI_00031 | BSI_00038 | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 694 | | 11/28/1989 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on November 27, 1989 Held at Hampton House in London | BSI_00039 | BSI_00055 | | | |
| DTX 695 | | 02/12/1990 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on February 12, 1990 Held at Hampton House in London | BSI_00056 | BSI_00066 | | | |
| DTX 696 | | 05/29/1990 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on May 17, 1990 Held at Hampton House in London | BSI_00067 | BSI_00074 | | | |
| DTX 697 | | 05/23/1991 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on May 21, 1991 Held at Hampton House in London | BSI_00075 | BSI_00087 | | | |
| DTX 698 | | 11/05/1991 | BSI – To the Members of Technical Committee IST/37 Coded Representation of Picture, Audio, and Multimedia/Hypermedia Information – Uniformed Minutes of the First IST/37 Meeting Held on November 1, 1991 Held at Hampton House in London | BSI_00088 | BSI_00100 | | | |
| DTX 699 | | 03/03/1992 | BSI – To the Members of Technical Committee IST/37 Coded Representation of Picture, Audio, and Multimedia/Hypermedia Information – Uniformed Minutes of the Third IST/37 Meeting Held on March 2, 1992 Held at Hampton House in London | BSI_00101 | BSI_00111 | | | |
| DTX 700 | | 06/12/1992 | BSI – To the Members of Technical Committee IST/37 Coded Representation of Picture, Audio, and Multimedia/Hypermedia Information – Uniformed Minutes of the Fourth IST/37 Meeting Held on June 11, 1992 Held at Hampton House in London | BSI_00112 | BSI_00123 | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DTX 701 | | 09/21/1992 | BSI – To the Members of Technical Committee IST/37 Coded Representation of Picture, Audio, and Multimedia/Hypermedia Information – Uniformed Minutes of the Third IST/37 Meeting Held on September 2, 1992 Held at Hampton House in London | BSI_00124 | BSI_00133 | | | |
| DTX 702 | | 10/12/1990 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on October 5, 1990 Held at Hampton House in London | BSI_00134 | BSI_00139 | | | |
| DTX 703 | | 09/30/1991 | BSI – To the Members of Technical Committee IST/2 Character Sets and Information Coding – Uniformed Minutes of the IST/2 Meeting Held on September 26, 1991 Held at Hampton House in London | BSI_00140 | BSI_00150 | | | |
| DTX 704 | PX 0111 | 02/03/1989 | JPEG –Joint Photographic Experts Group ISO/IEC JTC1/SC2/WG8 | PHLPSKD_00037418 | PHLPSKD_00037535 | Neuhauser EX 26 | | |
| DTX 705 | | 03/17/2006 | Directory of CD "Widcom Technical Documentation for Neuhauser" | | | Neuhauser EX 2 | 402, 403, 802, 901, 1006 | |
| DTX 706 | | 06/21/2006 | Directory of CD "CLI351725 re 5_20 CLI VTC-56 San Diego Inspection for Neuhauser" | | | Neuhauser Ex. 3 | 402, 403, 802, 901, 1006 | |
| DTX 707 | | 07/16/2004 | Widcom VTC-56B Video Coder/ Decoder Data Extraction Report | | | Neuhauser EX 4 | 402, 403, 701, 702, 802, 901 | |
| DTX 708 | | 01/19/2006 | Article entitled *Reverse Engineering Delivers Product Knowledge, Axis Technology Spread*, Dick James | | | Neuhauser EX 5 | 402, 403, 802, 901 | |
| DTX 709 | | 02/08/2008 | Native File CD: 2007 January to September drop shipments of digital cameras to non-US locations | KODAK_024343 | KODAK_024343 | | | |
| DTX 710 | | 02/20/2008 | Native File CD | KODAK_024505 | KODAK_024505 | | 901, 402, 403 | |
| DTX 711 | | 02/20/2008 | Native File CD | KODAK_024506 | KODAK_024506 | | | |
| DTX 712 | | 02/21/2008 | Native File CD | KODAK_024507 | KODAK_024507 | | | |
| DTX 713 | | 00/00/0000 | Korean File Wrapper | KODAK_024508 | KODAK_024626 | | | |
| DTX 714 | | 00/00/0000 | English Translation and certification for Korean File Wrapper [Bates stamped KODAK_024568-KODAK_024584] | TBD | TBD | | 402, 403, 802, 901 | |

| DTX 715 | | 01/07/2008 | Rebuttal Expert Report of Timothy Schoechle Regarding Standards Issues – corrected January 9, 2008 | | | Schoechle Ex. 2; Ebrahimi Ex. 3 | |
| DTX 716 | | 00/00/0000 | Curriculum Vitae of Timothy Schoechle | | | Schoechle Ex. 3 | |
| DTX 717 | | 00/00/0000 | Common Patent Policy for ITU-T/ITU-R/ISO/IEC | KODAK_024170 | KODAK_024171 | Schoechle Ex. 4 | 402, 403, 802, 901 |
| DTX 718 | | 12/05/2002 | Presentation: Standards and Patents: Do they Fit? | PHLPSKD_00089843 | PHLPSKD_00089850 | Schoechle Ex. 6 | 402, 403, 802 |
| DTX 719 | | 08/00/1991 | Ogden Webster letter to Gregory Wallace regarding JEPG-718, 4 August 1991 | KODAK_013497 | KODAK_013437 | Schoechle Ex. 9 | |
| DTX 720 | | 08/13/1991 | Vsaben Jorgan memo to Gregory Wallace regarding Patent statement on JPEG technology | KODAK_013438 | KODAK_013438 | Schoechle Ex. 10 | |
| DTX 721 | | 05/09/1988 | ISO Coded Representation of Picture and Audio Information: Titled – Patent Issues: ADCT and ISO General | KODAK_012379 | KODAK_012380 | Schoechle Ex. 11 | |
| DTX 722 | | 03/00/1988 | SO Coded Representation of Picture and Audio Information: Titled – A Draft ISO for Coded Representation of Still Pictures | KODAK_184248 | KODAK_184266 | Schoechle Ex. 13 | |
| DTX 723 | | 04/28/1989 | Hall letter to G. Wallace regarding licensing arrangements for Q-Coder patents and Wallace letter to Hall dated 4/21/89 regarding licensing arrangements for Q-Coder patents | KODAK_083581 | KODAK_083584 | Schoechle Ex. 18 | |
| DTX 724 | | 01/15/2007 | Notice of Deposition and Subpoena of Dr. Touradj Ebrahimi | | | Ebrahimi Ex. 1 | |
| DTX 725 | | 12/14/2007 | Expert Report of Touradj Ebrahimi regarding JPEG Standard Issues | | | Ebrahimi Ex. 2 | 402, 403, 802 |
| DTX 726 | | 02/19/1988 | CCITT Study Group VIII, Title: Statement on the CCITT Patent Policy | KODAK_012533 | KODAK_012534 | Ebrahimi Ex. 4 | |
| DTX 727 | | 00/00/1987 | Rules for Reference to Patented Items in International Standards | KODAK_011681 | KODAK_011681 | Ebrahimi Ex. 6 | |
| DTX 728 | | 03/19/2007 | ISO: IEC, ISO and ITU, the World's Leading Developers of International Standards, Agree on Common Patent Policy | | | Ebrahimi Ex. 7 | 402, 403, 802 |
| DTX 729 | | | Email to Ebrahimi regarding Ticket Passenger Itinerary | | | Ebrahimi Ex. 8 | 402, 403, 802 |
| DTX 730 | | | Ebrahimi Electronic Ticketing number | | | Ebrahimi Ex. 9 | 402, 403, 802 |

| DTX 731 | | Ebrahimi billing/ hours calculations for time spent on Philips v. Kodak | | | Ebrahimi Ex. 10 | 402, 403, 802 | |
|---|---|---|---|---|---|---|---|
| DTX 732 | 10/31/2007 | Deposition of Richard Clark | | | Ebrahimi Ex. 13 | 402, 403, objection to submission of complete transcript; objection to designated portions in log for deposition designations | |
| DTX 733 | 04/05/1993 | ITU – Telecommunication Standardization Sector Study Group .8: The SpR's Report on Some "Lessons Learned" regarding Current Patent Policy Practice of Joint CCITT and ISO/IEC Recommendations/ Standards | | | Ebrahimi Ex. 14 | | |
| DTX 734 | 04/06/2007 | Plaintiff U.S. Philips Corporation's Objections and Responses to Defendant Eastman Kodak Company's First Set of Interrogatories to Plaintiff U.S. Philips Corporation (Nos. 1-12) | | | | | |
| DTX 735 | 04/09/2007 | Plaintiff U.S. Philips Corporation's Objections and Responses to Defendant Eastman Kodak Company's Second Set of Interrogatories to Plaintiff U.S. Philips Corporation (Nos. 13) | | | | | |
| DTX 736 | 11/06/2007 | Plaintiff U.S. Philips Corporation's Supplemental Responses to Defendant Eastman Kodak Company's First Set of Interrogatories to Plaintiff U.S. Philips Corporation (Nos. 1-3, 5, 10-12) | | | | | |
| DTX 737 | 04/23/2006 | Neuhauser Invoices for March 2006 through Octorber 2007 | NEUHAUSER 0063 | NEUHAUSER 0079 | | 402, 403, 802 | |
| DTX 738 | 1/14/2008 | Neuhauser Invoice for December 2007 | NEUHAUSER 0080 | NEUHAUSER 0081 | | 402, 403, 802 | |
| DTX 739 | 2/9/2008 | Neuhauser Invoice for January 2008 | NEUHAUSER 0082 | NEUHAUSER 0083 | | 402, 403, 802 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Reserved for: Kodak Litigation Expenses | | | | All objections reserved | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

U.S. PHILIPS CORPORATION V. EASTMAN KODAK COMPANY
CIVIL ACTION NO. 06-00251-GMS

**DEFENDANT EASTMAN KODAK'S PHYSICAL TRIAL EXHIBITS**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DPX001 | | | Widcom VTC-56 Codec | | | | 402, 403, 901 | |
| | | | Reserved for Physical Evidence | | | | | |
| | | | Reserved for Physical Evidence | | | | | |
| | | | Reserved for Physical Evidence | | | | | |
| | | | Reserved for Physical Evidence | | | | | |
| | | | Reserved for Physical Evidence | | | | | |
| | | | Reserved for Physical Evidence | | | | | |
| | | | Reserved for Physical Evidence | | | | | |

SD\1765679.1

52

# EXHIBIT C3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

U.S. PHILIPS CORPORATION,              )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        Civil Action No. 06-251 (GMS)
                                       )
EASTMAN KODAK COMPANY,                 )
                                       )
                Defendant.             )

**EXHIBIT C3**
**U.S. PHILIPS CORPORATION'S LIST OF DEMONSTRATIVES**
**AND EXPERIMENTS**

Plaintiff U.S. Philips Corporation ("Philips") hereby submits its list of proposed

demonstratives and experiments as of March 3, 2008.  The parties agree that they will disclose

any demonstrative exhibits intended to be used at trial by at least 7:00 p.m. the day before such

exhibits are used in order to permit any objections to be raised before any such demonstratives

are used at trial.  Philips reserves the right to submit additions and/or revisions to its

demonstrative list after meeting and conferring with defendant Eastman Kodak Company

("Kodak") on outstanding trial management issues, after reviewing the defendant's

demonstrative list, and after receiving the Court's rulings on the parties' respective motions *in*

*limine.*

1. Animations, diagrams, time lines and/or pictures illustrating Philips' formation, corporate history, primary business responsibilities, commercial relationships, legal and statutory obligations, and/or corporate and ownership structure.

2. Animations, diagrams, and/or pictures demonstrating Kodak's infringement (both literal and under the doctrine of equivalents) of the claims in suit.

3. Animations, diagrams, and/or pictures demonstrating the structure and operation of products implementing the JPEG standard.

4. Animations, diagrams, and/or pictures demonstrating the invention, the asserted claims, drawings, excerpts, and the prosecution history of U.S. Patent No. 4,901,075.

5. Posters and/or pictures of the asserted claims.

6. Posters and/or pictures of briefs and accompanying exhibits, transcripts, and demonstratives in connection with the November 20, 2007, *Markman* hearing.

7. Animations, diagrams, and/or pictures demonstrating the distinctions between U.S. Patent 4,901,075 and the prior art references asserted by Kodak.

8. Animations, diagrams, time lines and/or pictures illustrating the inapplicability of the prior art references asserted by Kodak as anticipating U.S. Patent 4,901,075.

9. Animations, diagrams, time lines and/or pictures illustrating the development of the JPEG standard.

10. Animations, diagrams, time lines and/or pictures illustrating Kodak's practice of the JPEG standard.

11. Animations, diagrams, time lines, and/or pictures illustrating Kodak's willful infringement.

12. Animations, diagrams, time lines, and/or pictures illustrating communications between Kodak and Philips demonstrating Kodak's willful infringement.

13. Animations, diagrams, time lines, and/or pictures illustrating Kodak's market activity, product introductions, marketing, sales, market share, commercial relationships, and communications with Philips demonstrating Kodak's willful infringement and Philips' entitlement to damages.

14. Animations diagrams, time lines, and/or pictures illustrating the licensing of Philips' patents.

15. Animations, diagrams, time lines, spread sheets, charts, and/or pictures reflecting summaries of voluminous material, including financial and sales records, pursuant to Federal Rule of Evidence 1006.

16. Charts, summaries, and/or calculations of voluminous material, including financial and sales records, pursuant to Federal Rule of Evidence 1006.

# EXHIBIT C4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-251 (GMS) |
| | ) |
| EASTMAN KODAK COMPANY, | ) |
| | ) |
| Defendant. | ) |

**EXHIBIT C4:**
**EASTMAN KODAK COMPANY'S LIST OF DEMONSTRATIVES**

Defendant and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") hereby

submits its list of proposed demonstratives as of March 3, 2008.  The parties agree that they will

disclose any demonstrative exhibits intended to be used at trial by at least 7:00 p.m. the day

before such exhibits are used in order to permit any objections to be raised before any such

demonstratives are used at trial.  Kodak reserves the right to submit additions and/or revisions to

its demonstrative list after meeting and conferring with Plaintiff U.S. Philips Corporation

("Philips") on outstanding trial management issues, after reviewing the plaintiff's demonstrative

list, and after receiving the Court's rulings on the parties' respective motions *in limine*.

Kodak's proposed list is as follows:

1.      Animations, diagrams, time lines, charts and/or pictures illustrating Kodak's

formation, corporate history, primary business responsibilities, commercial relationships,

legal and statutory obligations, and/or corporate and ownership structure.

2.     Animations, diagrams, time lines, charts and/or pictures illustrating Philips' formation, corporate history, primary business responsibilities, commercial relationships, legal and statutory obligations, and/or corporate and ownership structure.

3.     Animations, diagrams, charts and/or pictures demonstrating Kodak's non-infringement of the claims in suit.

4.     Animations, posters and/or pictures of the asserted claims.

5.     Charts, posters and/or pictures of briefs and accompanying exhibits, transcripts, and demonstratives in connection with the November 20, 2007, *Markman* hearing or the Court's January 25, 2008 Claim Construction Order.

6.     Animations, diagrams, charts and/or pictures demonstrating the comparison between U.S. Patent No. 4,901,075 and the asserted prior art references.

7.     Animations, diagrams, time lines, charts and/or pictures illustrating the applicability of the asserted prior art references as invalidating U.S. Patent No. 4,901,075.

8.     Animations, diagrams, time lines, charts and/or pictures illustrating the development, policies and practices of the JPEG standard.

9.     Animations, diagrams, time lines, charts and/or pictures illustrating the industry's practice of and investment in the JPEG standard.

10.     Animations, diagrams, time lines, charts and/or pictures illustrating the extent of Philips' participation in JPEG.

11.     Animations, diagrams, time lines, charts and/or pictures illustrating Kodak's reasonable actions in implementing the JPEG standard.

12.     Animations, diagrams, time lines, charts and/or pictures illustrating Philips' unreasonable delay in filing this lawsuit.

13.     Animations, diagrams, time lines, charts and/or pictures illustrating the evidentiary and economic prejudice Kodak has suffered as a result of Philips' unreasonable delay in filing this lawsuit.

14.     Animations, diagrams, time lines, charts and/or pictures illustrating Kodak's market activity, product introductions, marketing, sales, market share, commercial relationships, and communications with Philips in assessing whether Philips is entitled to damages.

15.     Animations, diagrams, time lines, spread sheets, charts, and/or pictures reflecting calculations or summaries of voluminous material, including financial and sales records, pursuant to Federal Rule of Evidence 1006.

16.     Animations, posters and/or pictures of verdict forms and/or jury instructions.

# EXHIBIT D1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

U.S. PHILIPS CORPORATION,    )
                            )
            Plaintiff,      )
                            )
    v.                      )      Civil Action No. 06-251 (GMS)
                            )
EASTMAN KODAK COMPANY,      )
                            )
            Defendant.      )

**EXHIBIT D1:**

**PHILIPS' WITNESS LIST**

Plaintiff U.S. Philips Corporation ("Philips") hereby submits its witness list as of March 3, 2008. Philips reserves the right to submit, as appropriate, additions and/or revisions to its witness list as the pretrial and trial process evolves, including meeting and conferring with Defendant Eastman Kodak Company ("Kodak") on outstanding trial management issues and receiving the Court's rulings on matters such as the parties' respective motions *in limine*. Philips reserves the right to call any witnesses on Kodak's witness list and any other witnesses called by Kodak. To the extent that Philips has not yet had an opportunity to depose a potential witness and will not be provided with an opportunity to depose such a witness, Philips objects to Kodak's inclusion of such witness(es) on its witness list. Philips reserves all objections under Fed. R. Civ. P. 32. Philips also reserves the right to introduce deposition testimony consistent with the deposition designations set forth in Exhibit F.

**Witnesses Who Will Be Called**

1.    Dr. Bernd Girod, 790 Mayfield Avenue, Stanford, CA 94305-1044

2.    Mark Peterson, Robinwood Consulting LLC, 566 West Adams, Suite 300, Chicago, IL 60661

3.    Dr. Timothy D. Schoechle, 3066 Sixth Street, Boulder, CO 80304

4.    Jack Slobod, Philips Intellectual Property & Standards, 345 Scarborough Road, Briarcliff Manor, NY 10510

5.    Jan van der Meer, Philips Research Eindhoven, High Tech Campus 44, 5656 AE Eindhoven, The Netherlands

6.    Dr. Peter Vogel, Freesienweg 37, 41564 Kaarst, Germany

**Witnesses Who May Be Called**

7.    Kenneth Cho, Philips Intellectual Property & Standards, 345 Scarborough Road, Briarcliff Manor, NY 10510

8.    John Morris, Philips Applied Technologies, Cross Oak Lane, Redhill, Surrey, RH1 5HA, UK

9.    Majid Rabbani, Eastman Kodak Co., c/o DLA PIPER US LLP, 401 B Street, Suite 1700, San Diego, California 92101-4297

10.   Norman Richards, 15 Saint Mary's Gardens, Horsham, West Sussex RH12 1JP, UK

11.   Eric Schylander, Juliana de Lannoylaan 14, 5582 EC Waalre, The Netherlands

12.   Joachim Speidel, Institute of Telecommunications, University of Stuttgart, Pfaffenwaldring 47 (ETI 2), 70569 Stuttgart, Germany

13.   Susumu Tsugaru, Philips Intellectual Property & Standards 2-13-37, Kohnan, Minato-ku, Tokyo 108-8507, Japan

14.   Simon Turner, Simon Turner Associates Ltd., Redhill, Surrey, UK

# EXHIBIT D2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00251-GMS |
| v. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT D2:**

**EASTMAN KODAK COMPANY'S WITNESS LIST**

Defendant and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") hereby

submits its witness list as of March 3, 2008.  Kodak reserves the right to submit, as appropriate,

additions and/or revisions to its witness list as the pretrial and trial process evolves, including

meeting and conferring with Plaintiff U.S. Philips Corporation ("Philips") on outstanding trial

management issues and receiving the Court's rulings on matters such as the parties' respective

motions *in limine*.  Kodak reserves the right to call any witnesses on Philips' witness list and any

other witnesses called by Philips.  To the extent that Kodak has not yet had an opportunity to

depose a potential witness and will not be provided with an opportunity to depose such a witness,

Kodak objects to Philips' inclusion of such witness(es) on its witness list.  Kodak reserves all

objections under Fed. R. Civ. P. 32.  Kodak also reserves the right to introduce deposition

testimony consistent with the deposition designations set forth in Exhibit F2.

**Witnesses Who Will Be Called:**

1.  Dr. Touradj Ebrahimi, Bd de la Forêt 32, CH-1009 Pully, Switzerland

2.  Mr. Andrew R. Evenski, Eastman Kodak Company, 343 State Street, Rochester, NY 14650

3.  Dr. Stanley Fralick, 9220 Los Lagos Circle South, Granite Bay, CA 95746

4.  Dr. Joan Mitchell, Infoprint Solutions Co., 6300 Diagonal Hwy., Boulder, CO 80301

5.  Dr. Charles J. Neuhauser, 525 West Remington Drive, Suite 126, Sunnyvale, CA 94087

6.  Mr. Michael Nier, 22638 Rose Quartz Square, Ashburn, VA 20148

7.  Mr. Steve Sasson, Eastman Kodak Company, 343 State Street, Rochester, NY 14650

8.  Mr. Majid Rabbani, Eastman Kodak Company, 343 State Street, Rochester, NY 14650

9.  Mr. Robert Wallace, Brodshatzer, Wallace, Spoon & Yip, 555 W. Beech Street, Suite 400, San Diego, CA 92101

**Witnesses May Be Called:**

1.  Mr. Richard Clark, Rocks Farm Cottage, Stone Cross, Crowborough, United Kingdom

2.  Mr. Jan van der Meer, Philips Research Eindhoven, High Tech Campus 44, 5656 AE Eindhoven, The Netherlands

3.  Mr. Istvan Sebestyen, Ecma International, Rue du Rhône 114, CH-1204 Geneva, Switzerland

4.  Dr. Peter Vogel, Freesienweg 37, 41564 Kaarst, Germany

5.  Mr. Peyton Watkins, Eastman Kodak Company, 343 State Street, Rochester, NY 14650

SD\1781662.2
223612-25

# EXHIBIT E1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT E1: PLAINTIFF U.S. PHILIPS CORPORATION'S
STATEMENT SETTING FORTH THE QUALIFICATIONS OF ITS EXPERTS**

Plaintiff U.S. Philips Corporation hereby submits its statement setting forth the

qualifications of its expert witnesses in such form as can be read to the jury at the time the expert

witness takes the stand.

### BERND GIROD, Ph.D.

Dr. Bernd Girod is Professor of Electrical Engineering at Stanford University and holds a courtesy appointment in the Stanford Department of Computer Science. Dr. Girod also serves as Director both of the Stanford Center for Image Systems Engineering and the Max Planck Center for Visual Computing and Communication. Dr. Girod earned a Prediploma in Electrical Engineering from the University of Hannover, Germany, in 1978, and a Master of Science degree in Electrical Engineering from the Georgia Institute of Technology in 1980. Dr. Girod earned a Ph.D. in Electrical Engineering "with highest honors" from the University of Hannover in 1987.

Dr. Girod has over 25 years of experience in the area of image compression. He has authored or co-authored over 400 scientific publications, the majority of them related to image compression. He is also the inventor of more than 20 patents, with several others pending, most of them related to image compression. At Stanford University, Dr. Girod teaches graduate-level courses in the fields of image compression and digital image processing. As part of these courses, image compression in general, and Baseline JPEG in particular, are discussed in detail.

From 1981 to 1987, Dr. Girod was member of the research staff of the Telecommunications Institute at the University of Hannover. In 1988, he joined the Massachusetts Institute of Technology, first as a Visiting Scientist and then as an Assistant Professor of Media Technology. From 1990 to 1993, he was Professor of Computer Graphics and Technical Director of the Academy of Media Arts in Cologne, Germany. In 1993, he was a Visiting Adjunct Professor with the Digital Signal Processing Group at the Georgia Institute of Technology. From 1993 until 1999, Dr. Girod was Chaired Professor of Electrical Engineering and Telecommunications at the University of Erlangen-Nuremberg, Germany, and the Head of

the Telecommunications Institute. He served as the Chairman of the Electrical Engineering Department from 1995 to 1997, and as Director of the Center of Excellence "3-D Image Analysis and Synthesis" from 1995 to 1999.

In 1988, "for his contributions to the theory and practice of video communications," Dr. Girod was elected Fellow of the Institute of Electrical and Electronics Engineers (IEEE), the world's leading professional association for the advancement of technology. He was a member of the IEEE Image and Multidimensional Signal Processing Technical Committee from 1989 to 1997. He has served on the Editorial Boards of several journals in his field, among them as Area Editor for Speech, Image, Video & Signal Processing of the *IEEE Transactions on Communications*. The IEEE Signal Processing Society named him "Distinguished Lecturer" in 2002. Dr. Girod received the Technical Achievement Award from the European Signal Processing Society in 2004 and the IEEE Multimedia Communication Best Paper Award in 2007. In 2007, Dr. Girod was also elected a member of the German Academy of Sciences (Leopoldina).

### MARK A. PETERSON

Mr. Peterson is the Chief Executive Officer and founder of Robinwood Consulting, located in Chicago, Illinois. He has over 20 years of experience in the valuation of intellectual property and has assisted clients in valuing technology for licensing purposes, including negotiating licenses and packaging technology for sale.

Mr. Peterson has also assisted clients in the licensing of technology, both in settlement of litigation as well as the avoidance of litigation. In addition, Mr. Peterson has provided consulting assistance in the evaluation of economic damages resulting from the infringement of intellectual property rights. These evaluations have included reasonable royalties. His analyses have included determinations of fixed and variable costs, incremental profit determinations, cost savings, analyses of market demand, capacity, convoyed sales, economic effects of acceptable non-infringing alternatives, and more.

Since 1988, Mr. Peterson has been actively involved with the Licensing Executives Society (LES), an organization of over 11,000 licensing professionals worldwide and over 5,000 in the U.S. and Canada. Since 2002, Mr. Peterson has created and taught a number of LES educational seminars related to the valuation of intellectual property. He has also made numerous presentations to the Licensing Executives Society and the Association of University Technology Managers on technology pricing and damages in intellectual property litigation. In 2002, Mr. Peterson wrote the valuation and negotiation sections of the Licensing Executive Society's *Fundamentals of Intellectual Asset Management* seminar, and in 2003 he wrote the valuation portion of the *Intermediate Intellectual Asset Management* seminar.

Prior to forming Robinwood Consulting, Mr. Peterson was a Vice President in the international consulting firm Peterson Consulting Limited Partnership, where he focused on

4

intellectual property and commercial damage issues. Before that, he was an Associate Member of the Chicago Board of Trade and spent three years as Controller and General Manager of a brokerage firm in Chicago.

Mr. Peterson has a Bachelor of Business Administration degree in accounting and economics from Ohio University. He is a Certified Public Accountant in Illinois, and a member of the American Institute of Certified Public Accountants and the Illinois CPA Society. In the Licensing Executives Society, Mr. Peterson served as Trustee from 1995 to 2001, as Treasurer from 1999 to 2001, and as a member of its Executive Committee from 1998 to 2001.

## TIMOTHY D. SCHOECHLE, Ph.D.

Dr. Schoechle is an expert in the field of standardization, specifically with respect to communications and computer engineering. He has also been involved in communication policy for over a decade. Dr. Schoechle advises corporations, law firms, governments, and agencies on standards policy and on related intellectual property issues. He lives in Boulder, Colorado.

For over 30 years, Dr. Schoechle has served as a speaker, moderator, and author of technical engineering and public policy papers at numerous international conferences and forums. He has written and lectured on such topics as electronic privacy, network architectures, Internet telephony, higher education, distance learning, technical standards, patents, innovation, and intellectual property.

Dr. Schoechle has served in many capacities in various standards bodies, including as Chair and Secretary. Since 1990, he has served as the Secretary of ISO/IEC JTC1 SC25 WG1, the international standards committee for Home Electronic System, where he also serves as a technical expert representing the United States and as an editor of international standards documents. In addition, he serves as Secretary of JTC1 SC32—the international standards committee for Data Management and Interchange. In 2006, Dr. Schoechle was appointed to a special standards oversight committee on Intelligent Transportation Systems associated with the National Academy of Sciences. In addition, he presently serves as a member of the American National Standards Institute's Patent and Education Committees.

Dr. Schoechle earned a B.S. in Administrative Science from Pepperdine University in 1973. He earned an M.S. in Telecommunications in 1995 and a Ph.D. in Communication Policy in 2004, both from the University of Colorado, Boulder. His doctoral dissertation focused on the

development of the international standardization system and on its current issues and dynamics It is currently being edited for publication as a book by an international academic publisher.

Until recently, Dr. Schoechle was a faculty member in the Interdisciplinary Telecommunications Program at the University of Colorado, where, for several years, he taught one of the only graduate courses in standards offered at the university level worldwide, TLEN 5190 *Telecommunications Standards: Current Issues.* During that time, he also was a founder and Director of the International Center for Standards Research, an academic research and teaching initiative devoted to the study of the standards system and processes.

Dr. Schoechle currently serves on the Editorial Board of the *International Journal of IT Standards and Standardization Research*, an international scholarly journal on standardization research. He served as the organizer and General Chair of SIIT 2001 (the 2nd *IEEE Conference on Standardization and Innovation in Information Technology*), a juried biennial interdisciplinary academic conference devoted to standards research and teaching. He continues his involvement with SIIT, both as an advisor and as member of its International Organizing Committee.

# EXHIBIT E2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

U.S. PHILIPS CORPORATION,

                 Plaintiff,

      v.

EASTMAN KODAK COMPANY,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 06-00251-GMS

## EXHIBIT E2:
## DEFENDANT EASTMAN KODAK COMPANY'S STATEMENTS SETTING FORTH THE QUALIFICATIONS OF ITS EXPERTS

    Defendant Eastman Kodak Company hereby submits its statement setting forth the qualifications of its expert witnesses in such form as can be read to the jury at the time the expert witness takes the stand.

## Touradj Ebrahimi, Ph.D.

Dr. Touradj Ebrahimi is a Professor of Image Processing at the Swiss Federal Institute of Technology (EPFL), in Lausanne, Switzerland and is involved in teaching and research in the field of Multimedia Signal Processing. Before joining EPFL as a faculty member in 1994, Dr. Ebrahimi was employed at AT&T Bell Laboratories Research Center in Holmdel, NJ, USA, where Dr. Ebrahimi worked on video compression techniques for communication. Prior to that, Dr. Ebrahimi was employed by Sony Corporation in Tokyo, Japan, working at its Corporate Research Center in the area of image and video compression for storage applications.

Dr. Ebrahimi holds a Masters of Science Degree from EPFL in Electrical Engineering with specialization in Image Processing, and a PhD from EPFL in Video Compression.

During his career, Dr. Ebrahimi has been closely involved in various projects on image and video compression including many related to standardization. Dr. Ebrahimi is the Head of the Swiss Delegation to JPEG, MPEG and SC29 which is the body overseeing the work of these two standards. Dr. Ebrahimi has been and continues to be the chair of various technical subgroups within the JPEG and MPEG standardization committees, including chairman of requirements in JPEG, editor of the secure JPEG 2000 standard, and editor of the MPEG-4 video standard. Dr. Ebrahimi also chaired the joint Ad Hoc Group between ISO/IEC and ITU-T experts in charge of examining proposals for inclusion of new Amendments to the JPEG image compression standard.

Dr. Ebrahimi has received several awards and distinctions in the area of image and video compression standardization. Examples include four ISO certificates for outstanding contributions to JPEG 2000, Secure JPEG 2000, JPEG 2000 reference software, and the MPEG-4 video standard. Dr. Ebrahimi received the first prize for best publication of the IEEE Transactions on Consumer Electronics in 2000 for a paper describing the JPEG 2000 standard. Dr. Ebrahimi is the author or co-author of more than 150 publications (books, book chapters, journal papers, conference proceedings), and holds several patents.

Dr. Ebrahimi regularly teaches courses at graduate levels in European Universities (Switzerland, France, and Italy) on image and video compression which include a detailed description of the JPEG compression standard.

**Charles J. Neuhauser, Ph.D.**

Dr. Charles Neuhauser is an electrical engineer by training with specific education and experience in the operation of logic circuits and systems built from those circuits. Dr. Neuhauser holds a Bachelors of Science Degree from the University of Notre Dame in Electrical Engineering, a Masters of Science Degree from Northwestern University in Electrical Engineering, and a PhD from the John Hopkins University in Electrical Engineering.

From 1970-1990, Dr. Neuhauser worked actively in the field of logic and system design. Dr. Neuhauser's responsibilities covered the specification, selection of technology, design, simulation, debugging and validation of systems. During the period from 1970 to 1990, Dr. Neuhauser participated directly in design activities and supervised other engineers undertaking similar activities. Dr. Neuhauser's experience with designs includes processors, communications interfaces, printer controllers and similar systems.

For the product that is the subject of his opinions (the Widcom Coder Board), Dr. Neuhauser has designed a number of systems based on the logic families used in the Widcom Coder Board. In addition, the techniques used in the Widcom Coder Board design were widely known in the early 1980s because the particular logic families and components used in the Widcom Coder Board were standards within the semiconductor industry. Many of the systems that Dr. Neuhauser designed and worked with during the 1980s required extensive use of simulation systems similar to the system used for analyzing the Widcom Coder Board.

### Robert H. Wallace, CPA/ABV

Mr. Robert Wallace is a Certified Public Accountant and one of the founding partners of Brodshatzer Wallace Spoon and Yip, Certified Public Accountants and Consultants in San Diego, California. Mr. Wallace has been a CPA since 1977 and has over 20 years experience with Brodshatzer. He is one of the principal partners and devotes a significant amount of his career to litigation consulting and the analysis of damages in various legal matters.

Mr. Wallace obtained both a Bachelor of Science degree in Economics and Masters of Science degree in Accounting simultaneously from the Wharton Graduate School of the University of Pennsylvania, one of the world's leading business schools. After graduating in 1975, Mr. Wallace began his professional career with the international accounting firm Peat, Marwick, Mitchell & Company doing accounting, auditing and consulting work for large corporations. He moved on to Columbia Pictures Industries Inc. where he was engaged in auditing and financial work, and in 1978 joined Steres, Alpert and Carne where he was engaged in accounting, auditing, and consulting work centered on litigation. In 1988, Mr. Wallace formed Brodshatzer Wallace Spoon and Yip in San Diego, California and has focused his practice on litigation support and damages analysis for the last 20 years.

Mr. Wallace has extensive teaching experience throughout the last 30 years, and frequently instructs law firms, banks and other organizations. In addition, he frequently teaches classes and seminars at law schools.

For the last 20 years, Mr. Wallace has been well known and respected for his financial research, damage computations and valuation for cases involving intellectual property- including patent, copyright, trademark and trade secret matters. He has evaluated damages such as lost profits and reasonable royalties for both plaintiffs and defendants. His extensive accounting and finance background has led to his consultation for over forty companies in regard to patent matters, and he has been retained as a damage expert in over 30 patent infringement cases.

Mr. Wallace has been a member of the American Institute of Certified Public Accountants, the California Society of Certified Public Accountants, the Institute of Business Appraisers, the Licensing Executives Society and the National Association of Forensic Economists. Mr. Wallace is qualified by the courts in both California and Delaware to testify on patent damage matters.

# EXHIBIT F1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

U.S. PHILIPS CORPORATION V. EASTMAN KODAK COMPANY
CIVIL ACTION NO. 06-00251-GMS

**PHILIPS' DEPOSITION DESIGNATIONS AND
KODAK'S AMENDED
OBJECTIONS FOR TRIAL
EXHIBIT F1**

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Acharya, Shrikant | 10/30/2007 | 19:5-19:7 | | | | |
| | | 20:4-8;<br>21:2-6 | | | | |
| | | 24:2-24:5 | F | 24:6 | R 32(a) | |
| | | 24:7-24:8 | F | 24:6 | R 32(a) | |
| | | 24:12-24:16 | | | | |
| | | 25:17-26:1 | | 26:2 | R 32(a) | |
| | | 26:3-26:5 | | 26:2 | R 32(a) | |
| | | 26:7-26:17 | | | | |
| | | 27:11-28:3 | S, F as to 28:1-28:3 | 28:4-28:5 | R 32(a) | |
| | | 28:9-28:15 | I | 28:7-28:8 | | 28:7-28:8 |
| | | 28:21-29:14 | | 29:15 | R 32(a) | |
| | | 29:16-29:18 | | 29:15 | R 32(a) | |
| | | 29:20-29:21 | | 29:22 | R 32(a) | |
| | | 30:1-30:2 | | 29:22 | R 32(a) | |
| | | 30:4-30:7 | | 30:8 | R 32(a) | |
| | | 30:9-30:11 | | 30:8 | R 32(a) | |
| | | 32:3-32:4 | | | | |
| | | 32:10-32:21 | D | 32:22-33:1 | R 32(a) | |

---

[1] Kodak's Objection Key is located at the end of this document.

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Acharya cont. | | 33:2-33:17 | D as to 33:2-33:5 | 32:22-33:1 | R 32(a) | |
| | | 34:18-35:16 | | | | |
| | | 36:2-38:9 | | | | |
| | | 38:21-39:9 | | | | |
| | | 39:16-39:21 | | | | |
| | | 40:7-40:10 | | 40:11-40:12 | R 32(a) | |
| | | 40:13-40:15 | | 40:11-40:12 | R 32(a) | |
| | | 40:17-41:3 | | | | |
| | | 41:9-42:3 | | 42:4-42:5 | R 32(a) | |
| | | 42:6-42:7 | D as to 42:6-42:7 | 42:4-42:5 | R 32(a) | |
| | | 42:9-43:16 | | | | |
| | | 43:21-44:3 | | | | |
| | | 44:14-44:21 | | | | |
| | | 45:1-45:7 | | | | |
| | | 45:10-45:21 | FM, I as to 45:21 | 45:22 | R 32(a) | |
| | | 46:3-46:5 | I | 46:6-46:7 | R 32(a) | |
| | | 46:8-46:9 | FM, I | 46:6-46:7 | R 32(a) | |
| | | 46:11-46:22 | | 47:1 | R 32(a) | |
| | | 47:2-47:4 | | 47:1 | R 32(a) | |
| | | 47:6-47:10 | | 47:11 | R 32(a) | |
| | | 47:12-47:14 | | 47:11 | R 32(a) | |
| | | 47:16-47:18 | | | | |
| | | 50:5-50:6 | | 50:7 | R 32(a) | |
| | | 50:8-50:9 | | 50:7 | R 32(a) | |
| | | 50:11-50:12 | | | | |
| | | 51:8-51:12 | | | | |
| | | 56:17-57:8 | | 57:9 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Acharya cont. | | 57:10-57:16 | | 57:9 | R 32(a) | |
| | | 57:18-57:20 | | 57:21-58:1 | R 32(a) | |
| | | 58:2-58:3 | | 57:21-58:1 | R 32(a) | |
| | | 58:5-58:8 | | 58:9 | R 32(a) | |
| | | 58:10-58:18 | | 58:9 | R 32(a) | |
| | | 58:20-60:15 | | 60:16 | R 32(a) | |
| | | 60:17-60:19 | FM | 60:16 | R 32(a) | |
| | | 60:21-60:22 | FM | 61:1 | R 32(a) | |
| | | 61:2-62:12 | FM as to 61:2-61:6 | 61:1 | R 32(a) | |
| | | 70:22-71:12 | | 71:13 | R 32(a) | |
| | | 71:14-71:16 | | 71:13 | R 32(a) | |
| | | 71:18-71:20 | | 71:21 | R 32(a) | |
| | | 71:22-72:5 | | 71:21 | R 32(a) | |
| | | 72:7-72:15 | S, F, FM as to 72:15 | 72:16-72:17 | R 32(a) | |
| | | 72:18-72:19 | S, F, FM | 72:16-72:17 | R 32(a) | |
| | | 72:21 | S, F, FM | 72:22 | R 32(a) | |
| | | 73:1-73:8 | S, F, FM | 72:22 | R 32(a) | |
| | | 73:10-73:19 | D, S as to 73:19 | 73:20-73:21 | R 32(a) | |
| | | 73:22-74:3 | D, S | 73:20-73:21 | R 32(a) | |
| | | 74:5-75:17 | FM as to 75:15-75:17 | 75:18-75:19 | R 32(a) | |
| | | 75:20-78:16 | FM as to 75:20-76:10; FM, S as to 78:13-78:15 | 75:18-75:19; 78:17-78:20 | R 32(a) | |
| | | 78:21-78:22 | FM, S | 78:17-78:20 | R 32(a) | |
| | | 79:2-79:4 | FM, S | 79:5 | R 32(a) | |
| | | 79:6-79:8 | FM, S | 79:5 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Acharya cont. | | 79:10-79:13 | FM, S | 79:14 | R 32(a) | |
| | | 79:16-79:17 | FM, S | 79:18-79:19 | R 32(a) | |
| | | 79:20-80:4 | FM, S | 79:18-79:19 | R 32(a) | |
| | | 80:6-80:17 | S as to 80:17 | 80:18 | R 32(a) | |
| | | 80:19-81:2 | S | 80:18 | R 32(a) | |
| | | 81:4-81:8 | S as to 81:7-81:8 | 81:9 | R 32(a) | |
| | | 81:11 | S | 81:9 | R 32(a) | |
| | | 88:13-88:17 | S | 88:18 | R 32(a) | |
| | | 88:19-88:20 | S | 88:18 | R 32(a) | |
| | | 88:22-89:1 | FM | 89:2 | R 32(a) | |
| | | 89:3-89:6 | FM | 89:2 | R 32(a) | |
| | | 89:8-89:13 | F | 89:14-89:17 | R 32(a) | |
| | | 104:19-105:12 | | | | |
| | | | | | | |
| Cho, Kenneth | 10/26/2007 | In addition to the objections below, Kodak objects to Philips' designation of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. | | | | |
| | | 6:25-7:14 | | | | |
| | | 8:23-9:7 | | | | |
| | | 10:11-10:16 | | | | |
| | | 25:13-25:15 | | | | |
| | | 25:20-26:15 | | | | |
| | | 27:5-28:15 | | | | |
| | | 29:7-31:25 | I as to 29:7-29:12 | 28:16-29:6 | | |
| | | 32:25-33:5 | | | | |
| | | 50:23-51:2 | | | | |
| | | 51:4-51:24 | I as to 51:24 | 52:1-52:2 | | |
| | | 52:4-52:22 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Cho cont. | | 52:24-53:4 | | | | |
| | | 58:13-58:22 | | | | |
| | | 60:14-60:17 | | | | |
| | | 60:19-60:24 | | | | |
| | | 61:1-61:23 | | | | |
| | | 79:10-79:11 | | | | |
| | | 79:13-80:1 | | | | |
| | | 80:3-80:15 | | | | |
| | | 84:8-84:11 | | | | |
| | | 101:4-101:6 | | | | |
| | | 101:9-101:20 | | | | |
| | | 101:23-102:5 | | | | |
| | | 104:7-104:9 | | | | |
| | | 104:12-105:9 | | | | |
| | | 111:2-111:3 | | | | |
| | | 111:8-111:16 | | | | |
| | | 111:22-112:2 | | | | |
| | | 114:21-118:21 | | | | |
| | | 119:3-119:16 | | | | |
| | | 121:21-122:10 | | | | |
| | | 127:22-128:24 | | | | |
| | | 134:2-134:4 | | | | |
| | | 139:13-139:17 | I | 139:18-140:5 | | |
| | | 145:12-146:3 | I | 145:1-146:3 | | |
| | | 146:15-147:23 | | | | |
| | | 148:9-148:13 | | | | |
| | | 152:18-153:7 | | | | |
| | | 153:11-153:12 | | | | |
| | | 153:24-154:1 | I | 153:14-153:20 | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections' | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Cho cont. | | 160:5-160:19 | | | | |
| | | 161:5-161:21 | | | | |
| | | 165:2-165:14 | | | | |
| | | 166:1-166:10 | | | | |
| | | 173:23-175:7 | | | | |
| | | 178:23-178:25 | | | | |
| | | 179:3-179:8 | | | | |
| | | 180:17-180:20 | | | | |
| | | 180:22-181:17 | | | | |
| | | 182:3-182:24 | | | | |
| | | 183:2-183:9 | | | | |
| | | 184:15-185:5 | | | | |
| | | 187:12-188:6 | | | | |
| | | | | | | |
| Clark, Richard | 10/31/2007 | 6:17-6:20 | | | | |
| | | 17:23-23:18 | | | | |
| | | 24:25-25:19 | | | | |
| | | 26:10-26:13 | | | | |
| | | 26:15-26:25 | | | | |
| | | 40:19-40:25 | | | | |
| | | 41:4-42:11 | | | | |
| | | 59:12-59:24 | | | | |
| | | 60:17-61:8 | | | | |
| | | 61:22-24; 62:3-5 | | | | |
| | | 69:9-70:15 | | | | |
| | | 89:6-89:9 | | | | |
| | | 89:12-90:4 | | | | |
| | | 111:5-112:4 | | | | |
| | | 117:20-119:17 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Clark cont. | | 126:14-128:21 | | | | |
| | | 146:23-147:17 | | | | |
| | | 174:20-174:25 | | | | |
| | | 175:5-175:10 | | | | |
| | | 175:19-175:23 | I | 175:24-175:25 | | |
| | | 176:23-178:7 | I as to 178:2-178:7 | 178:8-178:13; 178:17 | 802 as to 178:8-13; R 32(a) as to 178:17 | |
| | | 179:7-180:12 | | | | |
| | | 184:13-184:21 | | | | |
| | | 188:8-189:2 | D, FM, I as to 188:23-189:2 | 189:3-189:4; 189:5 | R 32(a) as to 189:3-4 | |
| | | 189:8-189:16 | I, F, FM as to 189:13-189:16 | 189:17-190:2 | R 32(a) as to 189:17-19 | |
| | | 190:3-190:5 | F, FM | 190:6-190:8 | R 32(a) | |
| | | 190:9-191:10 | F, FM as to 190:9-23 | 190:6-190:8 | R 32(a) | |
| | | 208:12-208:14 | F | 208:15 | R 32(a) | |
| | | 208:16-209:2 | F | 208:15 | R 32(a) | |
| | | 235:12-235:15 | | | | |
| | | 236:6-236:21 | | | | |
| | | | | | | |
| Derounian, Robert | 9/14/2007 | 4:9-4:15 | | | | |
| | | 6:4-6:20 | | | | |
| | | 7:21-7:25 | | | | |
| | | 9:7-9:9 | | | | |
| | | 13:7-14:4 | I as to 13:16-14:4 | 14:5-14:7 | | |
| | | 15:16-15:19 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---------|--------------------|----------------------------------|--------------------|------------------------------|---------------------|--------------------------------|
| Derounian cont. | | 18:9-18:13 | | | | |
| | | 21:10-21:19 | | | | |
| | | 21:22-22:3 | | | | |
| | | 22:8-22:24 | | | | |
| | | 23:12-24:24 | | | | |
| | | 25:23-27:18 | | | | |
| | | 31:24-33:12 | | | | |
| | | 45:4-46:11 | I as to 45:8-46:11 | 46:12-46:15 | | |
| | | 47:15-48:2 | | | | |
| | | 48:24-49:9 | | | | |
| | | 49:11-50:5 | | | | |
| | | 52:16-53:10 | I as to 53:2-53:10 | 53:11-53:19 | | |
| | | 57:25-59:13 | | | | |
| | | 59:18-60:14 | | | | |
| | | 60:25-61:12 | | | | |
| | | 62:9-62:12 | | | | |
| | | 66:6-67:5 | | | | |
| | | 67:7-69:23 | I as to 69:13-69:23 | 69:24-70:2 | | |
| | | 71:12-71:25 | | | | |
| | | 72:2-72:25 | | | | |
| | | 73:6-75:15 | | | | |
| | | 76:22-77:13 | | | | |
| | | | | | | |
| Evenski, Andrew | 11/7/2007 | 16:7-16:9 | | | .. | 18:22-19:3; 19:8-13; 22:22-23:16 |
| | | 55:14-56:4 | | | | |
| | | 56:14-56:17 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Evenski cont. | | 56:20-58:2 | FM as to 58:1-58:2 | 58:3 | R 32(a) as to 58:3 | |
| | | 58:5-58:10 | FM as to 58:5; I | 58:3; 58:11-58:13 | R 32(a) as to 58:3 | 58:14-22 |
| | | 59:1-59:10 | | | | |
| | | 68:13-68:15 | FM, SC | 68:16-68:17 | R 32(a) | |
| | | 68:22-69:1 | FM, SC as to 68:22; SC as to 69:1 | 68:16-68:17; 69:2-69:3 | | |
| | | 69:4 | SC | 69:2-69:3 | R 32(a) | |
| | | 116:15-117:1 | | | | |
| | | | | | | |
| Evenski, Andrew (Day 2) | 11/8/2007 | 170:3-171:14 | | | | |
| | | | | | | |
| Fralick, Stanley | 10/22/2007 | 7:21-9:11 | | | | |
| | | 10:19-12:7 | | | | |
| | | 15:14-21:22 | | | | |
| | | 23:4-32:22 | | | | |
| | | 34:1-37:18 | | | | |
| | | 45:15-55:13 | | · | | |
| | | 58:18-64:12 | | | | |
| | | 72:1-72:4 | FM | 72:5 | R 32(a) | |
| | | 72:6-74:5 | FM as to 72:6 | 72:5 | R 32(a) | |
| | | 75:20-76:12 | | | | |
| | | 77:4-77:14 | FM as to 77:12-77:14 | 77:15-77:16 | R 32(a) | |
| | | 77:17-77:22 | FM | 77:15-77:16 | R 32(a) | |
| | | | | | | |
| Hamilton, Eric | 10/10/2007 | 16:4-16:6 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Hamilton cont. | | 16:21-17:1 | | | | |
| | | 17:4-21:20 | | | | |
| | | 22:10-24:18 | | | | |
| | | 25:5-27:10 | | | | |
| | | 27:18-28:6 | | | | |
| | | 29:13-29:21 | | | | |
| | | 32:1-32:17 | | | | |
| | | 34:13-35:13 | | | | |
| | | 38:17-39:20 | | | | |
| | | 40:12-43:8 | | | | |
| | | 45:4-47:18 | | | | |
| | | 48:1-51:6 | | | | |
| | | 51:19-52:11 | | | | |
| | | 52:19-53:1 | | | | |
| | | 55:8-61:21 | FM as to 61:20-61:21 | 61:22 | R 32(a) | |
| | | 62:1-62:2 | | 61:22 | R 32(a) | |
| | | 62:4-67:19 | | | | |
| | | 74:13-75:6 | FM as to 75:5-75:6 | 75:7 | R 32(a) | |
| | | 75:8-75:13 | FM as to 75:8-75:9 | 75:7 | R 32(a) | |
| | | 75:19-76:11 | | | | |
| | | 77:2-81:21 | | | | |
| | | 82:17-83:11 | | | | |
| | | 83:16-84:10 | | | | |
| | | 84:14-88:3 | | | | |
| | | 88:21-93:2 | | | | |
| | | 93:9-98:11 | | | | |
| | | 98:14-103:11 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Hamilton cont. | | 104:6-106:5 | | | | |
| | | 106:10-107:17 | | 107:18-107:19 | R 32(a) | |
| | | 107:20-108:5 | LC | 107:18-107:19 | R 32(a) | |
| | | 108:10-114:5 | LC as to 109:3-109:4 & 109:7-109:14; FM as to 114:4-114:5 | 109:5-109:6; 114:6 | R 32(a) | |
| | | 114:7-114:8 | FM | 114:6 | R 32(a) | |
| | | 116:14-119:4 | | | | |
| | | 125:3-129:22 | | | | |
| | | 131:3-131:21 | | | | |
| Marion, Michael | 10/23/2007 | In addition to the objections below, Kodak objects to Philips' designation of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. | | | | |
| | | 9:12-9:25 | | | | |
| | | 24:8-24:23 | | | | |
| | | 62:16-62:18 | | | | |
| | | 62:23-62:25 | | | | |
| | | 105:25-106:1 | | | | |
| | | 106:6-106:23 | | | | |
| | | 109:21-109:24 | | | | |
| | | 110:3-110:7 | | | | |
| | | 113:3-113:5 | I | 111: 18-21; 111:24-112:2; 112:5-6; 112:8-9; 112:12-21; 112:24; 113:2 | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Mitchell, Dr. Joan | 9/20/2007 | 6:2-6:11 | | | | |
| | | 15:19-16:2 | | | | |
| | | 17:10-17:15 | | | | |
| | | 18:16-18:18 | | | | |
| | | 21:12-24:24 | | | | |
| | | 25:7-32:9 | | | | |
| | | 42:16-42:20 | | | | |
| | | 43:1-43:18 | | | | |
| | | 49:11-49:19 | | | | |
| | | 50:16-51:15 | | | | |
| | | 52:16-53:11 | I | 53:12-17 | | |
| | | 56:3-57:22 | | | | |
| | | 68:14-68:21 | | | | |
| | | 70:10-72:7 | | | | |
| | | 76:7-78:15 | | | | |
| | | 79:5-80:11 | | | | |
| | | 89:21-91:4 | | | | |
| | | 91:8-91:11 | | | | |
| | | 95:8-96:21 | | | | |
| | | 102:20-104:12 | | | | |
| | | 105:4-105:7 | | | | |
| | | 106:6-106:14 | | | | |
| | | 106:16-107:21 | | | | |
| | | 109:16-110:8 | | | | |
| | | 110:13-110:22 | | | | |
| | | 139:19-144:18 | | | | |
| | | 145:4-146:14 | FM as to 146:13-146:14 | 146:15 | R 32(a) as to 146:15 | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Mitchell cont. | | 146:16-148:6 | FM as to 146:16-147:10 | 146:15 | R 32(a) as to 146:15 | |
| | | 149:14-150:6 | | | | |
| | | 150:20-152:25 | | | | |
| | | 153:12-158:6 | | | | |
| | | 158:16-159:13 | | | | |
| | | 159:23-161:9 | FM as to 160:23-161:9 | 161:10 | R 32(a) as to 161:10 | |
| | | 161:11-161:12 | FM | 161:10 | R 32(a) as to 161:10 | |
| | | 162:19-162:23 | I | 162:24-163:1 | | |
| | | 164:23-167:13 | I as to 167:7-167:13 | 167:14-167:18 | | |
| | | 167:22-169:10 | | | | |
| | | 172:16-174:14 | | | | |
| | | 183:13-184:12 | | | | |
| | | 186:12-187:9 | | | | |
| | | 188:1-189:4 | | | | |
| | | 189:19-194:1 | | | | |
| | | 201:15-201:19 | | | | |
| | | 203:23-205:18 | | | | |
| | | | | | | |
| Morris, John | 9/26/2007 | In addition to the objections below, Kodak objects to Philips' designations of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. Thus, Fed. R. Evid. 804 does not apply. | | | | |
| | | 30:2-30:23 | F | 6:1-3; 9:23-10:24 21:14-23 | | |
| | | 33:11-33:25 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Morris cont. | | 34:11-34:19 | | | | |
| | | 35:19-35:21 | | | | |
| | | 35:24-36:5 | | | | |
| | | 36:19-36:24 | | | | |
| | | 37:1-37:14 | | | | |
| | | 47:3-47:6 | | | | |
| | | 47:9-47:11 | | | | |
| | | 47:13-49:2 | | | | |
| | | 49:4-52:1 | | | | |
| | | 81:14-82:20 | | | | |
| | | 89:5-89:20 | | | | |
| | | 104:19-105:4 | | | | |
| | | 116:11-117:4 | | | | |
| | | 126:20-127:16 | | | | |
| | | 132:8-133:1 | | | | |
| | | | | | | |
| Nier, Michael | 10/30/2007 | 4:9-4:11 | | | | |
| | | 7:12-7:15 | | | | |
| | | 8:13-8:18 | | | | |
| | | 9:5-9:7 | | | | |
| | | 9:24-10:17 | | | | |
| | | 13:17-13:21 | | | | |
| | | 17:13-17:22 | | | | |
| | | 18:7-20:16 | | | | |
| | | 21:12-22:11 | | | | |
| | | 23:16-25:17 | | | | |
| | | 27:5-27:6 | | | | |
| | | 27:9-27:11 | | | | |
| | | 27:13-28:9 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Nier cont. | | 35:8-37:4 | | | | |
| | | 37:6-38:22 | | | | |
| | | 39:1-39:13 | | | | |
| | | 40:5-40:17 | | | | |
| | | 41:18-42:12 | | | | |
| | | 43:5-44:4 | | | | |
| | | 45:1-45:8 | | | | |
| | | 46:4-46:6 | | | | |
| | | 46:9 | | | | |
| | | 56:19-56:21 | | | | |
| | | 61:3-61:4 | | | | |
| | | 61:18-62:2 | | | | |
| | | 62:13-62:15 | | | | |
| | | 62:17-62:19 | | | | |
| | | 62:21-63:1 | | | | |
| | | 63:5-63:6 | | | | |
| | | 63:19-64:1 | | | | |
| | | 64:16-64:21 | | | | |
| | | 65:3-65:4 | | | | |
| | | 65:18-66:3 | | | | |
| | | 66:16-67:9 | | | | |
| | | 68:2-68:5 | | | | |
| | | 68:9-68:14 | | | | |
| | | 69:19-69:20 | | | | |
| | | 70:2-70:4 | | | | |
| | | 70:17-70:18 | | | | |
| | | 70:20-71:2 | | | | |
| | | 72:20-74:5 | | | | |
| | | 75:2-75:11 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---------|---------|---------|---------|---------|---------|---------|
| Nier cont. | | 75:19-76:2 | | | | |
| | | 76:5 | | | | |
| | | 84:9-86:1 | | | | |
| | | 89:3-89:13 | | | | |
| | | 92:17-92:19 | FM | 92:20 | R 32(a) as to 92:20 | |
| | | 92:21-92:23 | FM | 92:20 | R 32(a) as to 92:20 | |
| | | 92:25-94:19 | | | | |
| | | 96:6-97:9 | | | | |
| | | 97:20-99:14 | | | | |
| | | 99:18-101:20 | | | | |
| | | 102:7-102:24 | | | | |
| | | 104:20-107:6 | FM, S as to 107:4-107:6 | 107:7-107:8 | R 32(a) as to 107:7-107:8 | |
| | | 107:9-110:3 | FM, S as to 107:9-107:12; D as to 110:1-110:3 | 107:7-107:8; 110:4-110:5 | R 32(a) as to 107:7-107:8; 110:4-110:5 | |
| | | 110:6-110:19 | D as to 110:6; S as to 110:15-110:19 | 110:4-110:5; 110:20 | R 32(a) as to 110:4-110:5; 110:20 | |
| | | 110:21-110:24 | S | 110:20 | R 32(a) as to 110:20 | |
| | | 111:16-113:16 | | | | |
| | | 114:24-116:19 | | | | |
| | | 117:18-117:23 | FM | 117:24 | R 32(a) as to 117:24 | |
| | | 117:25-118:9 | FM | 117:24 | R 32(a) as to 117:24 | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter Designations | Philips' Objections | Philips' Rebuttal Designations |
|---------|-------------------|----------------------------------|--------------------|------------------------------|---------------------|-------------------------------|
| Nier cont. | | 118:15-119:21 | D as to 119:19-119:21 | 119:22-119:23 | R 32(a) as to 119:22-23 | |
| | | 119:24-121:22 | D as to 119:24-120:1; S, FM as to 121:14-121:22 | 119:22-119:23; 121:23 | R 32(a) as to 119:22-23; 121:23 | |
| | | 121:24-124:3 | FM as to 121:24; FM as to 123:17-124:3 | 121:23; 124:5 | R 32(a) as to 121:23; 124:5 | |
| | | 124:6-124:10 | FM as to 124:6; FM as to 124:8-124:10 | 124:5; 124:11 | R 32(a) as to 124:5; 124:11 | |
| | | 124:12-124:25 | FM as to 124:12-124:13 | 124:11 | R 32(a) as to 124:11 | |
| | | 125:6-125:8 | D | 125:9-125:10 | R 32(a) as to 125:9-10 | |
| | | 125:11 | D | 125:9-125:10 | R 32(a) as to 125:9-10 | |
| | | 126:1-126:22 | S as to 126:22 | 126:23 | R 32(a) as to 126:23 | |
| | | 126:24-126:25 | S | 126:23 | R 32(a) as to 126:23 | |
| | | 127:2-127:16 | | | | |
| | | 128:13-130:2 | | | | |
| | | 131:1-132:2 | FM as to 132:1-132:2 | 132:3 | R 32(a) as to 132:3 | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---------|-------------------|----------------------------------|--------------------|-----------------------------|--------------------|-------------------------------|
| Nier cont. | | 132:4-133:24 | FM as to 132:4-132:5; D as to 133:22-133:24 | 132:3; 133:25-134:1 | R 32(a) as to 132:3; 133:25-134:1 | |
| | | 134:2 | D | 133:25-134:1 | R 32(a) as to 133:25-134:1 | |
| | | 134:4-135:16 | FM, S as to 135:13-135:16 | 135:17 | R 32(a) as to 135:17 | |
| | | 135:18-136:9 | FM, S as to 135:18-135:20 | | | |
| | | 137:12-139:7 | FM as to 139:7 | 139:8 | R 32(a) as to 139:8 | |
| | | 139:9-139:13 | FM | 139:8 | R 32(a) as to 139:8 | |
| | | 140:12-140:21 | | | | |
| | | 141:7-141:17 | D, I as to 141:14-141:17 | 141:18-141:20 | R 32(a) as to 141:18-141:20 | |
| | | 142:7-142:10 | D, S, FM | 142:11-142:12 | R 32(a) as to 142:11-142:12 | |
| | | 142:13-142:20 | D, S, FM as to 142:13 | 142:11-142:12 | R 32(a) as to 142:11-142:12 | |
| | | 142:23-143:17 | | | | |
| | | 145:25-147:6 | FM as to 147:5-147:6 | 147:7 | R 32(a) as to 147:7 | |
| | | 147:8-147:17 | FM as to 147:8-147:11 | 147:7 | R 32(a) as to 147:7 | |
| | | 164:11-164:14 | S, FM | 164:15-164:16 | R 32(a) as to 164:15-164:16 | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Nier cont. | | 164:17-164:18 | S, FM | 164:15-164:16 | R 32(a) as to 164:15-164:16 | |
| | | 169:15-169:16 | S | 169:17-169:18 | R 32(a) as to 169:17-169:18 | |
| | | 169:19-169:22 | S as to 169:19; S, FM as to 169:21-169:22 | 169:17-169:18; 169:23-169:24 | R 32(a) as to 169:17-169:18; 169:23-169:24 | |
| | | 169:25-170:16 | S, FM as to 169:25-170:5; S, FM as to 170:14-170:26 | 169:23-169:24; 170:17 & 170:19-170:20 | R 32(a) as to 169:23-169:24; 170:17; 170:19-170:20 | |
| | | 170:18 | S, FM | 170:17 & 170:19-170:20 | R 32(a) as to 170:17; 170:19-170:20 | |
| | | 170:22 | FM, S | 170:23-170:24 | R 32(a) as to 170:23-170:24 | |
| | | 170:25-171:1 | FM, S | 170:23-170:24 | R 32(a) as to 170:23-170:24 | |
| | | 171:24-178:22 | FM as to 175:14 & 175:21-175:22 & 175:23; S as to 176:12 & 176:15; D, F as to 117:11-177:19 | 175:15; 175:19; 176:13-176:14; 177:20-177:21 | R 32(a) as to 175:15; 175:19; 176:13-176:14; 177:20-177:21 | |
| | | 179:7-181:12 | | | | |
| | | | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections¹ | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Parkins, Paul | 11/9/2007 | 10:12-10:20 | | | | |
| | | 15:2-17:10 | | | | |
| | | 23:19-24:16 | | | | |
| | | 24:21-25:9 | | | | |
| | | 27:21-28:3 | | | | |
| | | 35:5-37:2 | FM | 35:3-35:4 | 402 | |
| | | 37:6-37:21 | | | | |
| | | 38:10-38:13 | | | | |
| | | 38:17-39:3 | | | | |
| | | 39:6-39:11 | FM as to 39:7-39:11 | 39:12 | R 32(a) as to 39:12 | |
| | | 39:14-39:18 | FM | 39:12 | R 32(a) as to 39:12 | |
| | | 63:18-64:17 | | | | |
| | | | | | | |
| Rabbani, Majid | 10/11/2007 | 6:4-6:16 | | | | |
| | | 11:5-11:18 | | | | |
| | | 14:22-15:14 | | | | |
| | | 16:17-20:12 | | | | |
| | | 25:5-26:17 | | | | |
| | | 27:2-29:16 | | | | |
| | | 34:8-34:21 | | | | |
| | | 40:6-42:12 | | | | |
| | | 42:21-43:1 | I | 42:13-42:20 | | |
| | | 44:12-44:17 | | | | |
| | | 45:13-45:21 | | | | |
| | | 47:3-47:5 | | | | |
| | | 47:12-47:13 | | | | |
| | | 48:15-50:4 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections¹ | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 50:7-51:1 | SC, FM as to 50:20-51:1 | 51:2-51:3 | R 32(a) | |
| | | 51:5-52:6 | SC, FM as to 51:5-51:9; SC as to 52:5-52:6 | 51:2-51:3; 52:7-52:8 | R 32(a) | |
| | | 52:9-54:22 | SC, FM as to 52:10-52:13; SC as to 54:22 | 52:7-52:8; 55:1-55:2 | R 32(a) | |
| | | 55:4-55:11 | SC as to 55:4-55:7 | 55:1-55:2 | R 32(a) | |
| | | 58:8-58:11 | SC as to 58:11 | 58:12-58:13 | R 32(a) | |
| | | 58:14-58:17 | SC | 58:12-58:13; 58:18 | R 32(a) | |
| | | 58:19-58:21 | SC | 58:18 | R 32(a) | |
| | | 59:1-59:8 | SC as to 59:7-59:8 | 59:9 & 59:11 | R 32(a) | |
| | | 59:10 | SC | 59:9 & 59:11 | R 32(a) | |
| | | 59:12-59:14 | SC | 59:9 & 59:11 | R 32(a) | |
| | | 59:19-60:4 | | | | |
| | | 61:17-62:10 | | | | |
| | | 62:17-63:5 | SC, F as to 63:1-63:5 | 63:6-63:7 | R 32(a) | |
| | | 63:8-64:2 | SC, F as to 63:9-63:15; SC, F as to 64:1-64:2 | 63:6-63:7; 64:3 | R 32(a) | |
| | | 64:4-64:6 | SC, F | 64:3 | R 32(a) | |
| | | 65:5-68:11 | | | | |
| | | 68:18-69:22 | | | | |
| | | 70:19-72:2 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections¹ | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 75:12-75:14 | F, SC | 75:15-75:16 | R 32(a) | |
| | | 75:17-76:6 | F, SC | 75:15-75:16 | R 32(a) | |
| | | 78:8-80:9 | | | | |
| | | 84:11-84:16 | F, FM as 84:15-84:16 | 84:17 | R 32(a) | |
| | | 84:18-84:21 | F, FM | 84:17 | R 32(a) | |
| | | 85:7-85:13 | F as to 85:12-85:13 | 85:14-85:15 | R 32(a) | |
| | | 85:16-86:3 | F as to 85:16-85:18 | 85:14-85:15 | R 32(a) | |
| | | 89:1-89:11 | | | | |
| | | 89:13-90:8 | | | | |
| | | 93:16-93:19 | S, F | 93:20-93:21 | R 32(a) | |
| | | 94:1-95:16 | S, F as to 94:1-94:3 | 93:20-93:21 | R 32(a) | |
| | | 97:6-100:7 | LC as to 100:4-100:7 | 100:8-100:9 | R 32(a) | |
| | | 100:10-100:15 | LC as to 100:10-100:11; LC as to 100:12-100:15 | 100:8-100:9; 100:16-100:17 | R 32(a) | |
| | | 100:18-102:1 | LC as to 100:18-100:19; FM as to 101:20-102:1 | 100:16-100:17; 102:2 | R 32(a) | |
| | | 102:3-102:5 | FM | 102:2; 102:6 | R 32(a) | |
| | | 102:7-102:9 | FM | 102:2; 102:6 | R 32(a) | |
| | | 102:19-103:11 | F, S, FM as to 103:10-103:11 | 103:12-103:13 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections[1] | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 103:14-103:20 | F, S, FM as to 103:14-103:16; F, S, FM as to 103:17-103:20 | 103:12-103:13; 103:21 | R 32(a) | |
| | | 103:22-104:3 | F, S, FM | 103:21 | R 32(a) | |
| | | 105:16-105:18 | SC | 105:19-105:20 | R 32(a) | |
| | | 105:21-106:16 | SC as to 105:21-106:6; SC as to 106:15-106:16 | 105:19-105:20; 106:17-106:18 | R 32(a) | |
| | | 106:19-108:8 | SC as to 106:19-107:4 | 106:17-106:18 | R 32(a) | |
| | | 109:13-109:19 | | | | |
| | | 111:13-111:16 | S, F, O, SC | 111:17-111:19 | R 32(a) | |
| | | 111:20-112:20 | S, F, O, SC | 111:17-111:19 | R 32(a) | |
| | | 115:6-115:11 | LC | 115:12-115:13 | R 32(a) | |
| | | 115:15-116:6 | LC as to 115:15-115:20; FM, F, S, LC as to 115:21-116:6 | 115:12-115:13; 116:7-116:9 | R 32(a) | |
| | | 116:10-118:9 | FM, F, S, LC as to 116:10-118:4; FM, F, S, LC as to 118:5-118:9 | 116:7-116:9; 118:10-118:12 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 118:13-118:21 | FM, F, S, LC as to 118:13-118:16; FM, F, S, LC as to 118:16-118:21 | 118:10-118:12; 118:22 | R 32(a) | |
| | | 119:1 | FM, F, S, LC | | | |
| | | 120:8-120:11 | FM, F, S, LC as to 120:8-120:11 | 120:12 | R 32(a) | |
| | | 120:13-120:19 | FM, F, S, LC as to 120:13; FM, F, S, LC as to 120:14-120:19 | 120:12; 120:20 | R 32(a) | |
| | | 120:21-122:6 | FM, F, S, LC | 120:20 | R 32(a) | |
| | | 122:12-122:18 | FM, F, S, LC | 122:19 | R 32(a) | |
| | | 122:20-123:16 | FM, F, S, LC as to 122:20-122:22; FM, F, S, LC as to 123:14-123:16 | 122:19; 123:17-123:18 | R 32(a) | |
| | | 123:19-124:9 | FM, F, S, LC | 123:17-123:18 | R 32(a) | |
| | | 126:13-128:15 | | | | |
| | | 129:10-129:19 | | | | |
| | | 130:11-130:19 | FM | 130:20 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 130:21-131:22 | FM as to 130:21-131:17; F, S, FM as to 131:18-131:22 | 130:20: 132:1-132:2 | R 32(a) | |
| | | 132:3-132:6 | F, S, FM | 132:1-132:2; 132:7 | R 32(a) | |
| | | 132:8-133:15 | F, S, FM | 132:7 | R 32(a) | |
| | | 135:20-137:7 | | | | |
| | | 145:7-152:17 | | | | |
| | | 153:16-153:18 | FM | 153:21 | R 32(a) | |
| | | 154:1-154:6 | FM, F | 153:21; 154:7-154:8 | R 32(a) | |
| | | 154:9-155:15 | F as to 154:9-154:10; FM, S as to 155:13-155:15 | 154:7-154:8; 155:16-155:17 | R 32(a) | |
| | | 155:18-155:20 | FM, S | 155:16-155:17 | R 32(a) | |
| | | 156:16-158:1 | | | | |
| | | 162:9-163:13 | | | | |
| | | 166:6-167:21 | S as to 167:19-167:21 | 167:22-168:1 | R 32(a) | |
| | | 168:1-169:14 | S as to 168:2-168:9; SC as to 169:12-169:14 | 167:22-168:1; 169:15-169:16 | R 32(a) | |
| | | 169:18-171:7 | SC as to 169:18 | 169:15-169:16 | R 32(a) | |
| | | 174:18-175:14 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter Designations | Philips' Objections | Philips' Rebuttal Designations |
|---------|-------------------|----------------------------------|--------------------|-----------------------------|---------------------|-------------------------------|
| Rabbani cont. | | 178:6-178:15 | | | | |
| | | 179:2-179:7 | | | | |
| | | 181:21-182:10 | | | | |
| | | 182:16-184:6 | SC as to 184:4-184:6 | 184:7-184:8 | R 32(a) | |
| | | 184:9-184:13 | SC as to 184:9-184:11; SC as to 184:12-184:13 | 184:7-184:8; 184:14 | R 32(a) | |
| | | 184:15-185:14 | SC as to 184:15-185:11; SC as to 185:12-185:14 | 184:14; 185:15 | R 32(a) | |
| | | 185:16-186:17 | SC as to 185:16-186:12; SC, FM as to 186:13-186:17 | 185:15; 186:18-186:19 | R 32(a) | |
| | | 186:20-189:10 | SC, FM as to 186:20-189:1; I, SC as to 189:5-189:10 | 186:18-186:19; 189:11-189:12 & 189:20 & 190:3 | R 32(a) | |
| | | 189:22-190:2 | SC | 190:3 | R 32(a) | |
| | | 190:4-191:1 | SC | 190:3 | R 32(a) | |
| | | 192:5-192:9 | SC | 192:15-192:16 | R 32(a) | |
| | | 192:17-193:17 | SC | 192:15-192:16 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 198:9-201:19 | LC as to 201:16-201:19 | 201:20-201:21 | R 32(a) | |
| | | 201:22-202:11 | LC as to 201:22-202:3 | 201:20-201:21 | R 32(a) | |
| | | 203:10-203:12 | FM | 203:13 | R 32(a) | |
| | | 203:14-205:16 | FM as to 203:14; I as to 205:10-16 | 203:13; 205:17-206:3 | R 32(a) as to 203:13 | |
| | | 206:4-208:9 | | | | |
| | | 208:22-209:12 | S, FM as to 209:10-209:12 | 209:13-209:14 | R 32(a) | |
| | | 209:15-209:17 | S, FM | 209:13-209:14 | R 32(a) | |
| | | 210:6-210:9 | SC, FM | 210:10-210:11 | R 32(a) | |
| | | 210:12-211:14 | SC, FM | 210:10-210:11 | R 32(a) | |
| | | 212:20-212:21 | FM, S, SC | 212:22 | R 32(a) | |
| | | 213:1-213:13 | FM, S, SC | 212:22 | R 32(a) | |
| | | 215:5-215:10 | FM, S | 215:11-215:12 | R 32(a) | |
| | | 215:13-217:5 | FM, S as to 215:13-216:22; FM, S, SC as to 217:1-217:5 | 215:11-215:12; 217:6-217:7 | R 32(a) | |
| | | 217:8-218:1 | FM, S, SC as to 217:8-217:22; FM, S, SC as to 218:1 | 217:6-217:7; 218:2 | R 32(a) | |
| | | 218:3-219:5 | FM, S, SC | 218:2 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 219:14-222:10 | | | | |
| | | 223:2-223:6 | | | | |
| | | 223:15224:7 | | | | |
| | | 227:2-227:21 | I | 227:22-228:5 & 228:7 | | |
| | | 228:9-230:22 | | | | |
| | | 231:5-232:11 | FM as to 232:4-232:11 | 232:12 | R 32(a) | |
| | | 232:13-236:17 | FM as to 232:13-233:2 | 232:12 | R 32(a) | |
| | | 237:13-237:22 | I as to 237:20-237:21 | 237:22 | | |
| | | 238:1-239:12 | LC as to 238:20-239:5 & 239:8-239:10; LC as to 239:11-239:12 | 239:6-239:7; 239:13 | R 32(a) | |
| | | 239:14-241:8 | LC as to 239:14-239:17 | 239:13 | R 32(a) | |
| | | 241:16-241:17 | I, SC | 241:18-241:19 | R 32(a) | |
| | | 242:2-242:7 | SC | 241:18-241:19; 242:8 | R 32(a) | |
| | | 242:9-242:10 | SC | 242:8 | R 32(a) | |
| | | 243:4-243:5 | I | 243:6-244:1 | | |
| | | 244:2-244:15 | I | 243:6-244:1 | | |
| | | 244:18-244:19 | | | | |
| | | 245:1-245:2 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---------|-------------------|-------------------------------|-------------------|------------------------------|--------------------|-----------------------------|
| Rabbani cont. | | 246:5-250:22 | | | | |
| | | 251:6-251:14 | S, F, SC as to 251:13-251:14 | 251:15-251:17 | R 32(a) | |
| | | 251:18-252:11 | S, F, SC as to 251:18-252:1 | 251:15-251:17 | R 32(a) | |
| | | 252:14-252:20 | I, S, F, SC | 252:12; 252:13; 252:21-252:22 | R 32(a) | |
| | | 253:1-253:16 | SC as to 253:1-253:2 | 252:21-252:22 | R 32(a) | |
| | | 253:18-254:17 | LC as to 254:14-254:17 | 254:18-254:19 | R 32(a) | |
| | | 254:20-255:6 | LC | 254:18-254:19; 255:7 | R 32(a) | |
| | | 255:8-257:2 | LC as to 255:8-256:18; FM, F, S as to 256:19-257:2 | 255:7; 257:3-257:4 | R 32(a) | |
| | | 257:5-257:12 | FM, F, S as to 257:6; LC, FM, F, S as to 257:7-257:12 | 257:3-257:4; 257:13-257:14 | R 32(a) | |
| | | 257:15-260:11 | LC, FM, F, S as to 257:15-258:11 | 257:13-257:14 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 261:21-266:21 | LC as to 263:12-265:7; I, F, FM as to 266:17-266:21 | 263:20-263:21; 266:22-267:1 & 267:2 | R 32(a) | |
| | | 267:3-269:14 | FM as to 269:11-269:14 | 269:15-269:16 | R 32(a) | |
| | | 269:17-274:1 | FM as to 269:17 | 269:15-269:16 | R 32(a) | |
| | | 274:4 | F as to 274:4 | 274:2-273:3 | R 32(a) | |
| | | 274:22-275:7 | SC, FM, F, LC as to 274:22-275:7 | 275:8-275:16 | R 32(a) | |
| | | 275:17-276:1 | SC, P, FM, F, LC as to 275:17-275:19; SC, FM, LC as to 275:20-276:1 | 275:8-275:16; 276:2-276:3 | R 32(a) | |
| | | 277:1-278:11 | SC, P, FM, LC as to 277:1-277:2; SC as to 278:10-278:11 | 276:2-276:3; 278:12-278:13 | R 32(a) | |
| | | 278:14-278:19 | SC as to 278:14-278:16; SC as to 278:17-278:19 | 278:12-278:13; 278:20 | R 32(a) | |
| | | 278:21-279:22 | SC as to 278:21 | 278:20 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 280:14-280:19 | LC as to 280:14-280:19 | 280:20 | R 32(a) | |
| | | 280:21-283:13 | LC as to 280:21-281:1 | 280:20 | R 32(a) | |
| | | 283:18-283:21 | FM | 283:22 | R 32(a) | |
| | | 284:1-286:9 | FM as to 284:2-285:15 | 283:22 | R 32(a) | |
| | | 288:7-288:15 | SC, P | 289:3-289:7 | R 32(a) | |
| | | 289:13-292:8 | SC, P as to 289:13-290:3 | 289:3-289:7 | R 32(a) | |
| | | 292:13-292:22 | F as to 292:18-292:19 | 292:20-292:21 | R 32(a) | |
| | | 293:2-293:3 | F | 292:20-292:21 | R 32(a) | |
| | | 293:13-293:16 | F, SC | 293:17 | R 32(a) | |
| | | 293:18-293:21 | F, SC | 293:17; 293:22 | R 32(a) | |
| | | 294:1-294:3 | F, SC | 293:22; 294:4 | R 32(a) | |
| | | 294:5-294:14 | F, SC | 294:4 | R 32(a) | |
| | | 295:2-295:5 | F, SC | 295:6-295:7 | R 32(a) | |
| | | 295:8-295:16 | F, SC | 295:6-295:7; 295:17-295:19 | R 32(a) | |
| | | 295:20-296:1 | SC as to 295:20-295:21; SC as to 295:22-296:1 | 295:17-295:19; 296:2 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 296:3-299:7 | SC as to 296:3-296:21; SC as to 299:6-299:7 | 296:2; 299:8-299:9 | R 32(a) | |
| | | 299:10 | SC | 299:8-299:9 | R 32(a) | |
| | | 301:7-301:9 | SC | 301:10-301:11 | R 32(a) | |
| | | 301:12 | SC | 301:10-301:11 | R 32(a) | |
| | | 301:14-301:19 | SC | 301:20 | R 32(a) | |
| | | 301:21-302:7 | SC | 301:20 | R 32(a) | |
| | | 303:8-303:9 | F | 303:10-303:11 | R 32(a) | |
| | | 303:12-303:22 | F | 303:10-303:11 | R 32(a) | |
| | | 304:3-304:8 | | | R 32(a) | |
| | | 305:10-306:2 | F, SC as to 305:22-306:2 | 306:3-306:4 | R 32(a) | |
| | | 306:5-308:3 | F, SC as to 306:5-307:15; F, FM as to 308:2-308:3 | 306:3-306:4; 308:4-308:5 | R 32(a) | |
| | | 308:6-310:4 | F, FM as to 308:6 | 308:4-308:5 | R 32(a) | |
| | | 313:2-314:7 | | | | |
| | | 314:15-314:16 | | | | |
| | | 314:21-315:7 | | | | |
| | | 316:20-325:2 | | | | |
| | | 325:8-325:13 | | | | |
| | | 331:1-333:20 | | | | |
| | | 334:1-334:13 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani cont. | | 334:22-335:2 | P | 335:3-335-5 | R 32(a) | |
| | | 335:9-335:14 | P | 335:3-335-5; 335:15-335:18 | R 32(a) as to 335:3-5; 335:15-16; 701, 702 for 335:17-18 | 335:19-20 |
| | | 335:21-336:10 | P as to 335:21-336:3 | 335:15-335:18 | R 32(a) as to 335:15-16; 701, 702 for 335:17-18 | 335:19-20 |
| | | 336:16-336:21 | | | | |
| | | 337:7-338:4 | | | | |
| | | 338:8-338:10 | I, LC | 338:6-338:7 | R 32(a) | |
| | | 344:3-344:8 | LC, O, FM | 344:9-344:10 | R 32(a) | |
| | | 344:11-345:11 | LC, O, FM as to 344:11-345:2; LC, O, FM as to 345:3-345:11 | 344:9-344:10; 345:12 | R 32(a) | |
| | | 345:13-347:11 | LC, O, FM | 345:12; 347:12 | R 32(a) | |
| | | 347:13-348:9 | LC, O, FM | 347:12; 348:10-348:12 | R 32(a) | |
| | | 348:13-349:6 | LC, O, FM | 348:10-348:12 | R 32(a) | |
| | | | | | | |
| Rabbani, Majid (Day 2) | 10/12/2007 | 358:21-362:1 | F, FM as to 361:22-362:1 | 362:2-362:3 | R 32(a) | |
| | | 362:4-362:8 | F, FM | 362:9; 362:12 | R 32(a) | |
| | | 362:10-363:21 | F, FM as to 362:10-362:13 | 362:9; 369:12 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections[1] | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 364:1-364:9 | FM as to 364:7-364:9 | 364:10 | R 32(a) | |
| | | 364:11-368:8 | FM as to 364:11-364:19; SC as to 368:6-368:8 | 364:10; 368:9 | R 32(a) | |
| | | 368:11-368:14 | SC | 368:9; 368:15 | R 32(a) | |
| | | 368:16-370:1 | SC as to 368:16-368 18; FM as to 370:1 | 368:15; 370:2 | R 32(a) | |
| | | 370:3 | FM | 370:2 | R 32(a) | |
| | | 371:22-372:14 | S, F as to 372:12-372:14 | 372:15-372:16 | R 32(a) | |
| | | 372:17-372:20 | S, F | 372:15-372:16 | R 32(a) | |
| | | 374:11-376:20 | | | | |
| | | 380:6-380:7 | FM | 380:8 | R 32(a) | |
| | | 380:9-381:14 | FM as to 380:9-380:10; FM as to 381:12-381:14 | 380:8; 381:15 | R 32(a) | |
| | | 381:16-382:8 | FM as to 381:16-381:22 | 381:15 | R 32(a) | |
| | | 382:18-385:2 | I, FM as to 382:18-384:1; FM, F as to 384:22-385:2 | 382:11-382:13 & 382:14-382:15; 385:3-385:4 | R 32(a) as to 382:14-15; 385:3-4 | |
| | | 385:5-385:11 | FM, F | 385:3-4 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections[1] | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 385:13-385:17 | FM, F | 385:3-4 | R 32(a) | |
| | | 385:20-385:22 | FM, F | 386:1-2 | R 32(a) | |
| | | 386:3-388:4 | FM, F as to 386:3-386:12 | 386:1-2 | R 32(a) | |
| | | 389:8-391:17 | | | | |
| | | 392:12-395:20 | | | | |
| | | 396:16-398:14 | FM | 398:15-398:16 | R 32(a) | |
| | | 398:17-400:7 | FM as to 398:17-398:22 | 398:15-398:16 | R 32(a) | |
| | | 400:17-401:11 | FM as to 401:9-401:11 | 401:12 | R 32(a) | |
| | | 401:14-402:5 | FM as to 401:14-401:18; FM as to 402:4-402:5 | 401:12; 402:6 | R 32(a) | |
| | | 402:7-403:21 | FM as to 402:7-402:9 | 402:6 | R 32(a) | |
| | | 404:19-404:22 | FM | 405:1 | R 32(a) | |
| | | 405:2-405:8 | FM | 405:1 | R 32(a) | |
| | | 407:9-407:15 | | | | |
| | | 407:19-411:15 | | | | |
| | | 413:13-414:6 | FM as to 414:2-414:6 | 414:7 | R 32(a) | |
| | | 414:8-414:10 | FM | 414:7 & 414:11 | R 32(a) | |
| | | 414:12-414:22 | FM | 414:11 | R 32(a) | |
| | | 415:14-415:19 | F | 415:20-415:21 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 415:22-417:15 | F as to 415:22-416:2; P as to 417:8-417:15 | 415:20-415:21; 417:16-417:20 | R 32(a) | |
| | | 417:21-418:4 | P as to 417:21 | 417:16-417:20 | R 32(a) | |
| | | 418:7-418:14 | | | | |
| | | 418:20-419:4 | | | | |
| | | 419:7 | | | | |
| | | 420:5-420:8 | SC | 420:9-420:11 | R 32(a) | |
| | | 420:18-421:21 | SC as to 420:19-421:2; FM as to 421:20-421:21 | 420:9-420:11; 421:22 | R 32(a) | |
| | | 422:1-422:16 | FM as to 422:1-422:6; FM, SC as to 422:13-422:16 | 421:22; 422:17-422:18 | R 32(a) | |
| | | 422:19-424:1 | FM, SC as to 422:19-423:8 | 422:17-422:18 | R 32(a) | |
| | | 424:21-425:5 | FM | 425:6-425:7 | R 32(a) | |
| | | 425:8-426:11 | FM as to 425:8-425:12; SC as to 426:7-426:11 | 425:6-425:7; 426:12-426:13 | R 32(a) | |
| | | 426:14-426:20 | SC as to 426:14-426:16; I, SC, FM as to 426:17-426:20 | 426:12-426:13; 426:21-426:22 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 427:1–427:7 | I, SC, FM | 426:21–426:22 | R 32(a) | |
| | | 427:18–430:5 | | | | |
| | | 430:8–430:10 | LC, F, FM | 430:11–430:12 | R 32(a) | |
| | | 430:13–430:15 | LC, F, FM | 430:11–430:12 | R 32(a) | |
| | | 432:9–432:12 | P | 432:13–432:14 | R 32(a) | |
| | | ** | | | | |
| | | 432:15–432:16 | P | 432:13–432:14 | R 32(a) | |
| | | 433:6–433:16 | F, FM | 433:17–433:18 | R 32(a) | |
| | | 433:19–433:21 | F, FM | 433:17–433:18 | R 32(a) | |
| | | 434:6–434:8 | F | 434:9–434:10 | R 32(a) | |
| | | 434:11–434:15 | F, P | 434:9–434:10; 434:16–434:20 | R 32(a) | |
| | | 434:21–435:4 | P as to 434:21–434:22; SC as to 435:4 | 434:16–434:20; 435:5–435:6 | R 32(a) | |
| | | 435:7–435:20 | SC as to 435:7–435:10 | 435:5–435:6 | R 32(a) | |
| | | 436:4–436:9 | | | | |
| | | 436:13–437:4 | | | | |
| | | 437:19–439:13 | F as to 438:21–439:6; F, FM, LC as to 439:9–439:13 | 439:7–439:8; 439:14–439:15 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 439:16-439:21 | F, FM, LC | 439:14-439:15 | R 32(a) | |
| | | 440:7-441:1 | | | | |
| | | 441:8-443:21 | | | | |
| | | 444:21-445:4 | F | 445:5-445:6 | R 32(a) | |
| | | 445:7-446:6 | F as to 445:7-446:2; F, FM, S as to 446:3-446:6 | 445:5-445:6; 446:7-446:8 | R 32(a) | |
| | | 446:9-446:13 | F, FM, S | 446:7-446:8; 446:14-446:15 | R 32(a) | |
| | | 446:16-447:8 | F, FM | 446:14-446:15 | R 32(a) | |
| | | 447:20-448:10 | | | | |
| | | 449:6-451:2 | | | | |
| | | 451:15-451:20 | | | | |
| | | 454:12-454:19 | | | | |
| | | 455:11-456:6 | F as to 455:22-456:6 | 456:7-456:8 | R 32(a) | |
| | | 456:9-456:14 | F as to 456:9-456:12; F, S as to 456:13-456:14 | 456:7-456:8; 456:15-456:16 | R 32(a) | |
| | | 456:17-457:4 | F, S as to 456:17; F, S as to 457:4 | 457:5-457:6 | R 32(a) | |
| | | 457:8-458:5 | F, S | 457:5-457:6 | R 32(a) | |
| | | 458:13-459:7 | FM as to 459:5-459:7 | 459:8 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---------|-------------------|----------------------------------|--------------------|-----------------------------|--------------------|-------------------------------|
| Rabbani (Day 2) cont. | | 459:9-460:2 | FM as to 459:9-459:20 | 459:8 | R 32(a) | |
| | | 460:21-461:3 | | | | |
| | | 462:10-462:12 | F, FM | 462:13-462:14 | R 32(a) | |
| | | 462:15-462:17 | F, FM as to 462:15; F, FM as to 462:16-462:17 | 462:13-462:14; 462:18-462:20 | R 32(a) | |
| | | 462:22-464:14 | F, FM as to 462:22-463:4; FM as to 464:12-464:14 | 462:18-462:20; 464:15 | R 32(a) | |
| | | 464:16-466:20 | FM as to 464:16-464:19 | 464:15 | R 32(a) | |
| | | 467:2-469:15 | | | | |
| | | 469:21-474:4 | FM as to 474:1-474:4 | 474:5 | R 32(a) | |
| | | 474:6-474:10 | FM | 474:5 | R 32(a) | |
| | | 476:2-476:21 | | | | |
| | | 478:8-479:10 | | | | |
| | | 480:5-482:10 | | | | |
| | | 482:16-482:20 | FM | 482:21 | R 32(a) | |
| | | 482:22-483:3 | FM as to 482:22-23; F as to 483:2-3 | 483:4-483:5 | R 32(a) | |
| | | 483:6-483:12 | F | 483:4-483:5; 483:13-483:14 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 483:15-483:19 | F | 483:13-483:14 | R 32(a) | |
| | | 485:7-485:9 | | | | |
| | | 486:10-487:3 | | | | |
| | | 487:6-487:12 | | | | |
| | | 487:15-487:22 | | | | |
| | | 489:6-489:22 | | | | |
| | | 491:14-492:2 | | | | |
| | | 492:12-492:17 | | | | |
| | | 494:16-495:10 | | | | |
| | | 495:22-496:2 | FM | 496:3 | R 32(a) | |
| | | 496:4-496:22 | F, FM | 496:3; 497:1-497:2 | R 32(a) | |
| | | 497:3-497:18 | F, FM | 497:1-497:2 | R 32(a) | |
| | | 498:2-498:20 | S as to 498:15-498:20 | 498:21-498:22 | R 32(a) | |
| | | 499:1-500:2 | S as to 499:1-499:11; S as to 499:19-500:2 | 498:21-498:22;500:3-500:4 | R 32(a) | |
| | | 500:5-500:7 | S | 500:3-500:4 | R 32(a) | |
| | | 500:15-500:18 | F, FM, LC | 500:19-500:21 | R 32(a) | |
| | | 500:22-501:6 | F, FM, LC | 500:19-500:21 | R 32(a) | |
| | | 501:18-501:21 | | | | |
| | | 502:8-504:11 | LC as to 504:9-504:11 | 504:12-504:13 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter- Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 504:14-505:1 | LC as to 504:14-504:17; F, S as to 18-505:1 | 504:12-504:13; 505:2-505:3 | R 32(a) | |
| | | 505:4-506:4 | F, S as to 505:4-505:8 | 505:2-505:3 | R 32(a) | |
| | | 506:13-507:19 | F, S as to 507:17-507:19 | 507:20-507:21 | R 32(a) | |
| | | 507:22-508:10 | F, S; F, S, FM as to 508:9-508:10 | 507:20-507:21; 508:11-508:12 | R 32(a) | |
| | | 508:13-509:1 | F, S, FM | 508:11-508:12; 508:16; 509:2-509:3 | R 32(a) | |
| | | 509:4-509:8 | S, F, FM | 509:2-509:3; 509:9-509:10 | R 32(a) | |
| | | 509:11-510:3 | F, S, FM as to 509:11-509:21; F, S, FM as to 509:22-510:3 | 509:9-509:10; 510:4-510:5 | R 32(a) | |
| | | 510:6 | F, S, FM | 510:4-510:5 | R 32(a) | |
| | | 511:9-511:11 | | | | |
| | | 511:14-512:2 | | | | |
| | | 513:2-513:6 | FM | 513:7 | R 32(a) | |
| | | 513:8-515:20 | FM as to 513:8-513:13; FM as to 515:18-515:20 | 513:7; 515:21 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 515:22-516:3 | FM as to 515:22 | 515:21 | R 32(a) | |
| | | 517:15-51[8]:3 | I, S | 518:4-518:5 | R 32(a) | |
| | | 518:7-519:19 | S as to 518:7-519:16; F, S as to 519:17-519:19 | 518:4-518:5; 519:20-519:21 | R 32(a) | |
| | | 519:22-520:13 | F, S as to 519:22-520:2; F, S as to 520:10-520:13 | 519:20-519:21; 520:14-520:15 | R 32(a) | |
| | | 520:16-521:18 | F, S as to 520:16-520:17 | 520:14-520:15 | R 32(a) | |
| | | 522:5-523:21 | F, FM as to 523:19-523:21 | 523:22-524:1 | R 32(a) | |
| | | 524:2-524:5 | F, FM, P | 523:22-524:1; 524:6-524:12 | R 32(a) | |
| | | 524:13-524:22 | P as to 524:13-524:18; FM as to 19-524:22 | 524:6-524:12; 525:1 | R 32(a) | |
| | | 525:2-525:6 | FM | 525:1 | R 32(a) | |
| | | 526:5-527:1 | FM | 527:2-527:3 | R 32(a) | |
| | | 527:4-527:15 | FM as to 527:4-527:7; F, LC as to 527:8-527:15 | 527:2-527:3; 527:16-527:17 | R 32(a) | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Rabbani (Day 2) cont. | | 527:18-528:1 | F, LC as to 527:18-527:20; LC as to 527:21-528:1 | 527:16-527:17; 528:2-528:3 & 528:5-528:7 | R 32(a) | |
| | | 528:4 | LC | 528:2-528:3 & 528:5-528:7 | R 32(a) | |
| | | | | | | |
| Richards, Norman | 9/27/2007 | In addition to the objections below, Kodak objects to Philips' designation of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. | | | | |
| | | 19:24-20:11 | F | 6:6-12; 9:25-10:6 | | |
| | | 25:1-25:2 | | | | |
| | | 28:19-28:22 | | | | |
| | | 33:22-34:16 | | | | |
| | | 40:23-40:24 | | | | |
| | | 41:1-41:6 | | | | |
| | | 41:11-41:13 | | | | |
| | | 46:8-46:10 | | | | |
| | | 46:13-46:14 | | | | |
| | | 48:1-48:10 | | | | |
| | | 58:20-58:23 | | | | |
| | | 58:25-59:2 | | | | |
| | | 63:23-64:2 | | | | |
| | | 64:4-64:7 | | | | |
| | | 69:21-70:2 | | | | |
| | | | | | | |
| Sasson, Steve | 11/6/2007 | 7:5-7:16 | | | | 18:18-19 |
| | | 14:10-14:12 | | | | |
| | | 19:3-20:7 | I | 18:21-19:2 | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections¹ | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Sasson conti. | | 20:12-21:5 | | | | |
| | | 33:9-34:19 | F | 25:13-26:5 | | |
| | | 36:12-37:4 | | | | |
| | | 39:14-39:17 | | | | |
| | | 40:9-41:10 | SC | 43:2-7 | R 32(a) as to 43:2-7 | |
| | | 42:11-43:1 | SC | | | |
| | | 47:21-48:4 | | | | |
| | | 48:20-49:11 | | | | |
| | | 51:17-52:4 | | | | |
| | | 52:10-52:11 | S, SC | 52:12-13 | R 32(a) as to 52:12-13 | |
| | | 52:14-52:17 | | | | |
| | | 54:17-58:6 | | | | |
| | | 58:20-59:3 | | | | |
| | | 71:1-71:16 | SC | 71:17-18 | R 32(a) as to 71:17-18 | |
| | | 71:19-71:21 | | | | |
| | | 72:20-73:15 | F | 72:8-19 | | |
| | | | | | | |
| Schylander, Eric | 10/2/2007 | In addition to the objections below, Kodak objects to Philips' designation of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. | | | | |
| | | 6:17-6:22 | | | | |
| | | 7:1-7:8 | | | | |
| | | 10:22-11:3 | | | | |
| | | 13:5-19:5 | I | 12:19-13:4 | | |
| | | 29:20-30:2 | | | | |
| | | 31:8-31:13 | | | | |
| | | 32:20-33:7 | | | | |
| | | 34:11-35:5 | I | 35:6-7 | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Schylander cont. | | 35:8-35:18 | | | | |
| | | 37:1-37:16 | | | | |
| | | 37:20-37:21 | | | | |
| | | 54:1-54:4 | | | | |
| | | 54:10-54:20 | | | | |
| | | 60:2-60:4 | | | | |
| | | 60:8-60:16 | | | | |
| | | 60:18-61:2 | | | | |
| | | 66:7-66:11 | | | | |
| | | 66:15-67:2 | | | | |
| | | 69:11-71:6 | | | | |
| | | 71:20-72:5 | | | | |
| | | 72:9-72:10 | | | | |
| | | 72:20-73:21 | | | | |
| | | 74:3-74:12 | | | | |
| | | 75:13-75:20 | | | | |
| | | 82:16-83:19 | I | 82:8-15 | | |
| | | 84:22-85:7 | | | | |
| | | 85:11-85:22 | I | 85:8-10 | | |
| | | 102:1-102:12 | | | | |
| | | 103:14-103:18 | | | | |
| | | 104:12-106:21 | F | 103:19-104:11 | | |
| | | 108:15-108:21 | F | 107:11-108:13 | | |
| | | 109:2-109:16 | | | | |
| | | 121:9-121:10 | F | 120:7-12 | | |
| | | 122:14-121:17 | | | | |
| | | 122:20-123:3 | | | | |
| | | | | | | |
| Scott, Philip | 11/6/2007 | 10:8-10:10 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections[1] | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Scott cont. | | 13:9-13:21 | | | | |
| | | 14:22-17:18 | S | 17:19-20 | R 32(a) as to 17:19-20 | |
| | | 17:21-18:10 | | | | |
| | | 25:17-26:8 | SC | 26:9-11 | R 32(a) as to 26:9-11 | |
| | | 26:12-27:6 | | | | |
| | | 32:11-33:8 | F | 30:1-31:8 | | |
| | | 35:18-36:12 | F | | | |
| | | 37:8-37:17 | F | | | |
| | | 38:2-38:12 | I | 38:13-15 | | 38:16-19 |
| | | 38:20-39:7 | F | | | |
| | | 42:6-44:7 | S | | | |
| | | 48:13-49:4 | | | | |
| | | 49:12-49:14 | | | | |
| | | 50:9-50:21 | | | | |
| | | 55:7-55:22 | F, D | 54:20-55:6 | | |
| | | 56:8-57:14 | | | | |
| | | 61:9-62:10 | | | | |
| | | 68:19-69:21 | | | | |
| | | 70:1-72:3 | F, S | 72:8-20 | | |
| | | 72:21-74:21 | | | | |
| | | 75:8-75:19 | | | | |
| | | 77:8-77:16 | I | 77:7 | | 76:20-77:6 |
| | | 90:1-90:18 | | | | |
| | | 96:17-98:8 | | | | |
| | | 99:11-101:15 | I | 101:16 | | |
| | | 105:2-105:22 | F | 102:4-103:4; 103:18-104:4; 104:10-18 | | 104:5-9; 104:19-105:1 |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections[1] | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Scott cont. | | 110:16-111:3 | F, D | 110:11-13; 111:4-13 | | |
| | | 112:16-118:5 | | | | |
| | | 122:16-122:19 | F, I | 122:10-15; 122:20-123:7 | | |
| | | 123:8-125:22 | R | | | |
| | | 141:4-141:19 | F | 137:13-138:2; 140:13-15; 141:1-3 | | |
| | | 143:2-143:8 | | | | |
| | | | | | | |
| Sebestyen, Istvan | 9/21/2007 | 6:11-6:16 | | | | |
| | | 8:22-9:19 | | | | |
| | | 10:7-11:19 | | | | |
| | | 12:1-13:13 | | | | |
| | | 13:25-15:3 | | | | |
| | | 15:5-16:12 | | | | |
| | | 17:16-18:2 | | | | |
| | | 19:2-19:20 | | | | |
| | | 20:11-22:8 | | | | |
| | | 22:12-22:13 | | | | |
| | | 22:16-24:24 | | | | |
| | | 31:17-32:15 | | | | |
| | | 38:19-38:21 | | | | |
| | | 38:23-39:14 | | | | |
| | | 39:20-39:23 | | | | |
| | | 40:13-40:14 | | | | |
| | | 40:19-41:12 | | | | |
| | | 41:21-43:25 | | | | |
| | | 45:20-46:8 | | | | |
| | | 50:18-50:25 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Sebestyen cont. | | 51:8-55:8 | I | 51:1-3 | | |
| | | 55:17-56:12 | | | | |
| | | 57:14-58:5 | | | | |
| | | 58:7-58:24 | | | | |
| | | 59:11-59:14 | | | | |
| | | 59:16-60:4 | | | | |
| | | 66:3-66:25 | F | 61:22-62:24 | | |
| | | 67:2-67:17 | | | | |
| | | 69:13-69:24 | I | 69:25-70:2 | | |
| | | 70:9-70:25 | | | | |
| | | 71:2-72:2 | | | | |
| | | 72:11-73:7 | | | | |
| | | 75:17-75:19 | I | 74:24-75:5 | | |
| | | 76:4-77:4 | | | | |
| | | 77:8-77:10 | | | | |
| | | 77:20-77:22 | | | | |
| | | 79:8-79:12 | F | 78:11-13; 78:25-79:7 | | |
| | | 80:3-81:3 | F | | | |
| | | 84:19-84:22 | | | | |
| | | 85:2-85:15 | F | | | |
| | | 87:2-87:22 | | | | |
| | | 89:2-89:17 | | | | |
| | | 89:24-90:8 | F, I | 89:18-23 | | |
| | | 90:23-91:18 | | | | |
| | | 95:7-95:14 | | | | |
| | | 96:8-96:22 | | | | |
| | | 98:21-100:1 | | | | |
| | | 103:1-103:16 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections[1] | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Sebestyen cont. | | 106:9-106:19 | F, I | 104:18-105:11; 105:18-20; 106:5-8 | | |
| | | 107:20-108:2 | | | | |
| | | 108:12-109:5 | F | 108: 6-8 | | |
| | | 109:18-110:1 | F, I | 109:7-17 | | |
| | | 110:9-110:17 | | | | |
| | | 117:12-117:18 | | | | |
| | | 118:11-118:17 | F | 118:18-20 | | |
| | | 118:21-119:19 | | | | |
| | | 120:19-121:6 | | | | |
| | | 121:14-121:18 | | | | |
| | | 121:24-122:16 | | | | |
| | | 125:15-126:8 | | | | |
| | | 126:10-126:15 | | | | |
| | | 129:3-129:7 | FM, F | 127:20-23; 129:8 | R 32(a) as to 129:8 | |
| | | 129:9-130:23 | | | | |
| | | 131:6-131:9 | | | | |
| | | 132:1-132:9 | | | | |
| | | 133:1-133:3 | | | | |
| | | 134:2-136:18 | D | | | |
| | | 138:10-139:3 | | | | |
| | | 139:20-140:15 | | | | |
| | | 141:6-142:13 | D, F | 142:14 | R 32(a) as to 142:14 | |
| | | 142:15-142:23 | | | | |
| | | 143:3-144:4 | | | | |
| | | 144:9-144:20 | | | | |
| | | 147:20-148:6 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Sebestyen cont. | | 149:8-153:1 | S, F | 153:2-4 | R 32(a) as to 153:2-4 | |
| | | 156:23-158:4 | | | | |
| | | 158:12-158:18 | D, F | 158:19-20 | R 32(a) as to 158:19-20 | |
| | | 158:22-159:23 | D | | | |
| | | 160:21-165:19 | O, H | | | |
| | | 166:2-166:14 | D | | | |
| | | 167:7-168:15 | H, D | | | |
| | | 168:24-170:25 | H, D | | | |
| | | 171:9-172:11 | F, D | 172:12-13; 172:16-17 | R 32(a) as to 172:12-13 | |
| | | 172:18-173:18 | | | | |
| | | 175:14-175:23 | | | | |
| | | 177:9-177:21 | F | 175:24-176:11 | | |
| | | 178:2-179:24 | | | | |
| | | 180:10-181:17 | | | | |
| | | 187:17-187:21 | | | | |
| | | 188:3-196:5 | D | | | |
| | | 205:15-206:9 | | | | |
| | | 207:2-210:3 | D, F | | | |
| | | 210:16-213:25 | D, F, S, I | 214:1-9 | R 32(a) as to 214:1-9 | |
| | | 230:17-230:22 | F, I | 229:16-24 | | |
| | | | | | | |
| Tescher, Andrew | 10/5/2007 | 14:22-17:9 | F | 7:1-4 | | |
| | | 24:18-26:3 | | | | |
| | | 26:7-27:2 | | | | |
| | | 27:19-28:3 | | | | |
| | | 30:13-30:20 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Tescher conti. | | 32:3-33:4 | | | | |
| | | 33:10-34:7 | F | 31:15-18 | | |
| | | 35:4-37:14 | FM as to 37:13-14 | 37:15 | | |
| | | 37:16-40:19 | S as to 39:10-11 | | | |
| | | 41:8-41:22 | S | | | |
| | | 42:6-43:13 | | | | |
| | | 55:3-60:21 | | | | |
| | | 62:12-62:15 | | | | |
| | | 62:19-63:17 | | | | |
| | | 63:19-68:7 | | | | |
| | | 69:4-81:16 | F | 68:18-21 | | |
| | | 82:5-89:14 | F; R as to 88:6-19; FM as to 82:5-7 | 89:15-16 | | |
| | | 89:17-91:3 | S | | | |
| | | 92:5-92:13 | | | | |
| | | 94:1-95:19 | S as to 95:12-14 | | | |
| | | 114:19-116:19 | | | | |
| | | 117:3-117:12 | | | | |
| Turner, Simon | 9/28/2007 | In addition to the objections below, Kodak objects to Philips' designation of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. | | | | |
| | | 34:4-34:21 | F, I | 6:1-6; 9:2-19; 33:16-34:3 | | |
| | | 40:10-40:12 | F, I | | | |
| | | 45:7-45:10 | | | | |
| | | 45:12 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Turner conti. | | 53:9-53:19 | F, I | 47:2-17 | | |
| | | 53:21-54:15 | | | | |
| | | 54:25-55:10 | | | | |
| | | 55:12-56:12 | | | | |
| | | 57:1-58:1 | | | | |
| | | 87:25-88:5 | | | | |
| | | 91:1-91:2 | | | | |
| | | 91:4-91:10 | | | | |
| | | 91:12-92:25 | | | | |
| | | 125:9-125:21 | F, I | 121:5-14; 124:20-125:8 | | |
| | | 127:3-127:6 | F, I | 126:10-127:2 | | |
| | | 143:22-144:4 | | | | |
| | | 145:6-145:13 | | | | |
| | | | | | | |
| Van der meer, Jan | 9/25/2007 | In addition to the objections below, Kodak objects to Philips' designation of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. | | | | |
| | | 6:21-7:1 | | | | |
| | | 23:10-23:17 | | | | |
| | | 26:4-26:19 | | | | |
| | | 27:2-29:12 | | | | |
| | | 30:5-30:20 | | | | |
| | | 32:6-35:5 | | | | |
| | | 36:13-38:17 | | | | |
| | | 39:14-41:15 | I | 38:18-39:2; 39:7-13 | | |
| | | 44:22-45:2 | | | | |
| | | 45:5-45:10 | | | | |
| | | 45:13-46:10 | | | | |
| | | 46:21-47:19 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 49:10-49:19 | | | | |
| | | 50:12-50:18 | | | | |
| | | 56:8-56:17 | | | | |
| | | 59:15-59:17 | | | | |
| | | 59:21-61:14 | | | | |
| | | 63:6-63:7 | I | 63:9-11 | | |
| | | 63:22-64:1 | I, F | | | |
| | | 64:4-64:11 | | | | |
| | | 66:4-66:17 | | | | |
| | | 66:20-66:21 | | | | |
| | | 78:5-78:16 | | | | |
| | | 78:22-79:4 | | | | |
| | | 80:12-80:14 | | | | |
| | | 80:17-81:3 | | | | |
| | | 114:15-114:18 | I | 114:6-14 | | |
| | | 114:21-115:6 | | | | |
| | | 134:9-134:20 | | | | |
| | | 136:2-137:13 | | | | |
| | | 138:21-139:9 | | | | |
| | | 139:15-140:3 | I | 140:4-7 | | |
| | | 140:8-140:18 | | | | |
| | | 141:22-142:16 | | | | |
| | | 148:21-149:16 | I | 149:19-150:2 | | |
| | | 151:14-153:12 | | | | |
| | | 153:15-153:17 | | | | |
| | | 156:21-157:12 | | | | |
| | | 158:3-158:9 | | | | |
| | | 158:12-158:16 | | | | |
| | | 158:19-158:20 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 159:5-159:10 | | | | |
| | | 159:13-160:1 | | | | |
| | | 173:12-173:20 | I | 173:21-174:2 | | |
| | | 182:8-183:5 | | | | |
| | | 207:7-207:18 | | | | |
| | | 207:20-208:3 | | | | |
| | | | | | | |
| Van der meer, Jan (Day 2) | 10/24/2007 | In addition to the objections below, Kodak objects to Philips' designation of this witness' deposition as hearsay under Fed. R. Evid. 802. The declarant is a Philips representative, and therefore can be made available to testify at trial. | | | | |
| | | 284:6-284:11 | | | | |
| | | 284:18-285:1 | | | | |
| | | 286:11-286:15 | | | | |
| | | 290:9-290:16 | | | | |
| | | 294:6-294:7 | | | | |
| | | 294:10-295:9 | | | | |
| | | 298:7-298:12 | | | | |
| | | 299:20-299:21 | | | | |
| | | 300:3-300:5 | | | | |
| | | 301:2-301:8 | | | | |
| | | 301:14-302:7 | | | | |
| | | 302:11-302:14 | | | | |
| | | 304:1-304:16 | | | | |
| | | 304:19-304:20 | | | | |
| | | 305:9-305:17 | | | | |
| | | 305:20-305:21 | | | | |
| | | 306:18-306:19 | I | 306:1-2; 306:7-8; 306:10-11; 306:15-16 | | |
| | | 306:22-307:2 | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Wahl, Nancy | 11/8/2007 | 81:22-83:1 | F | 7:10-14; 66:14-67:1; 80:4-10 | | |
| | | | | | | |
| Watkins, Peyton | 11/8/2007 | 9:6-9:8 | | | | |
| | | 12:10-12:11 | | | | |
| | | 12:17-12:21 | | | | |
| | | 13:22-14:16 | | | | |
| | | 16:20-17:2 | | | | |
| | | 19:2-19:6 | I | 18:18-21 | 802 | |
| | | 31:11-32:22 | | | | |
| | | 34:1-34:15 | | | | |
| | | 37:15-37:22 | | | | |
| | | 40:22-42:3 | | | | |
| | | 43:20-43:21 | SC | 43:11-19; 43:22-44:2 | R 32(a) as to 43:13-14; 43:22-44:2 | 43:3-10 |
| | | 44:3-44:4 | | | | |
| | | 44:15-44:19 | SC | 44:5-14; 44:20-22 | R 32(a) as to 44:6-9; 44:13-14; 44:20-22 | |
| | | 45:1-45:3 | SC | 45:4-5 | R 32(a) as to 45:4-5 | |
| | | 45:6-45:7 | | | | |
| | | 46:10-46:16 | SC | 46:17-18 | R 32(a) as to 46:17-18 | |
| | | 46:21-47:2 | SC | 47:3-4 | R 32(a) as to 47:3-4 | |
| | | 47:5-47:9 | SC | 47:10 | R 32(a) as to 47:10 | |
| | | 47:11-47:12 | SC | 47:13 | R 32(a) as to 47:13 | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Watkins cont. | | 47:14-47:15 | | | | |
| | | 48:12-48:13 | SC | 48:14-15; 48:18-49:11 | R 32(a) as to 48:21-22; 49:4 | |
| | | 48:16-48:17 | | | | |
| | | 57:4-57:14 | F, SC | 57:15-16 | R 32(a) as to 57:15-16 | |
| | | 57:17-57:18 | F, SC | 57:19-20 | R 32(a) as to 57:19-20 | |
| | | 57:21-57:22 | | | | |
| | | 58:11-58:13 | F, SC | 58:14-15 | R 32(a) as to 58:14-15 | |
| | | 58:16 | | | | |
| | | 59:4-59:7 | FM, F | 59:8-9 | R 32(a) as to 59:8-9 | |
| | | 59:10-59:20 | S, I, F | 59:21-60:6 | | |
| | | 61:8-61:10 | F, FM, SC, I | 61:11-15 | R 32(a) as to 61:11-13 | |
| | | 62:3-62:8 | S, SC, F | 62:9-10 | R 32(a) as to 62:9-10 | |
| | | 62:11-63:1 | F, S, SC | 63:2-3 | R 32(a) as to 63:2-3 | |
| | | 63:4-63:11 | F, SC, S | 63:12-13 | R 32(a) as to 63:12-13 | |
| | | 63:14-63:15 | | | | |
| | | 63:19-64:3 | F, SC, S | 64:4-6 | R 32(a) as to 64:4-6 | |
| | | 64:7-64:17 | F, SC, S | 64:18-19 | R 32(a) as to 64:18-19 | |
| | | 64:20-64:22 | | | | |
| | | 65:4-65:13 | FM, F, SC, S, I | 65:14-18 | R 32(a) as to 65:14-16 | |
| | | 65:19-65:22 | F, S, SC | 66:1-3 | R 32(a) as to 66:1-3 | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Watkins cont. | | 66:4 | | | | |
| | | 108:10-108:12 | F, I | 107:21-108:9; 108:13-15 | | |
| | | 109:11-109:19 | F | 109:9-10 | | |
| | | 118:9 | I | 118:5-8; 118:10-16 | R 32(a) as to 118:14-15 | |
| | | 118:17-119:19 | | 17:9-18:5; 20:22-21:7; 38:11-17; 119:20-21 | R 32(a) as to 119:20-21; 802 as to 17:9-18:5; 20:22-21:7 | |
| | | 119:22-120:2 | | 120:3-5 | R 32(a) as to 120:3-5 | |
| | | 120:6-120:11 | | | | |
| | | 121:1-121:4 | | | | |
| | | 121:21-122:1 | D, I | 121:5-6; 122:4 | | |
| | | 122:5-124:6 | | | | |
| | | 124:14-124:17 | | | | |
| | | 124:20-125:5 | D | | | |
| | | 125:21-126:11 | D, S | | | |
| | | 131:10-131:19 | D | | | |
| | | 132:4-132:21 | D | | | |
| | | 134:5-134:7 | F, I, P | 134:8-9 | R 32(a) as to 137:14 | |
| | | 134:10-134:11 | | | | |
| | | 135:15-135:17 | | | | |
| | | 135:19-136:17 | | | | |
| | | 137:10-137:13 | FM | 137:14 | R 32(a) as to 137:14 | |
| | | 137:15 | | | | |
| | | | | | | |

| Witness | Date of Deposition | Philips' Deposition Designations | Kodak's Objections | Kodak's Counter-Designations | Philips' Objections | Philips' Rebuttal Designations |
|---|---|---|---|---|---|---|
| Weth, Gerald | 9/19/2007 | 11:6-11:18 | F | 6:21-24; 10:15-21 | | |
| | | 12:23-13:8 | | | | |
| | | 24:19-25:1 | F, I | 21:14-22:9; 23:24-24:18 | | 21:5-13 |
| | | 29:6-31:5 | | | | |
| | | 31:7-32:13 | | | | |
| | | 32:15-32:17 | | | | |
| | | 32:19-33:20 | | | | |
| | | 33:23-33:25 | | | | |
| | | 34:3-34:9 | | | | |
| | | 34:16-34:25 | | | | |
| | | 47:14-48:16 | | | | |
| | | 48:19-48:20 | | | | |
| | | 48:22-48:23 | | | | |
| | | 49:7-49:21 | | | | |
| | | 49:23-50:22 | | | | |
| | | 50:24-51:11 | | | | |
| | | 51:13-51:14 | | | | |
| | | 51:16-52:12 | | | | |
| | | 52:15-53:6 | | | | |
| | | 53:8-53:22 | | | | |
| | | 58:14-58:15 | | | | |
| | | 58:17-58:20 | | | | |
| | | 68:5-68:10 | | | | |
| | | 68:12-68:14 | | | | |
| | | 82:18-84:5 | F, I | 82:5-17 | | |
| | | 103:16-103:20 | F | | | |
| | | 103:22 | | | | |
| | | | | | | |

## Eastman Kodak Company's Objection Key: Deposition Designations

**D = Document Speaks for Itself.** Kodak objects to this deposition designation because the question asks the witness to offer testimony on a document that speaks for itself.

**F = Lacks Foundation.** Kodak objects to this deposition designation on the ground that the foundation necessary for its admission has not been laid. (Fed. R. Evid. 602)

**FM = Form.** Kodak objects to this deposition designation because the question asked is compound, leading, vague or has some other defect in form.

**H = Hearsay.** Kodak objects to this deposition designation because it constitutes or contains hearsay. (Fed. R. Evid. 802)

**I = Incomplete.** Kodak objects to this deposition designation because it does not contain the complete testimony. (Fed. R. Evid. 106). Kodak generally objects to all designations that include only a part of a question and/or a part of an answer, or that do not include any question.

**LC = Legal Conclusion.** Kodak objects to this deposition designation because it contains conclusions of law.

**O = Improper Opinion.** Kodak objects to this deposition designation because it constitutes or contains improper opinion by a lay witness. (Fed. R. Evid. 701 & 702)

**P = Privilege.** Kodak objects to this deposition designation because it seeks communications or information protected from disclosure by the attorney-client privilege and/or work product doctrine.

**R = Lacks Relevance.** Kodak objects to this deposition designation because it is not relevant to any issue to be decided in this case. (Fed. R. Evid. 401 & 402)

**S = Speculative.** Kodak objects to this deposition designation because it includes statements that are speculative as to matters of fact or law.

**SC = Beyond the Scope of 30(b)(6) Notice.** Kodak objects to this deposition designation because it is outside the scope of the topics on which the witness was designated as a corporate representative.

# EXHIBIT F2

*U.S. Philips Corporation v. Eastman Kodak Company*
Civil Action No. 06-00251-GMS

**Kodak's Amended Deposition Designations for Trial**

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Acharya, Shrikant | 10/30/07 | 8:4-7 | | | | |
| | | 8:11-13 | | | | |
| | | 12:16-13:16 | | | | |
| | | 16:3 | | | | |
| | | 16:7-8 | | | | |
| | | 16:10 | | | | |
| | | 19:5-14 | 802 as to 19:8-14 | | | |
| | | 20:4-21:6 | | | | |
| | | 23:4 | | | | |
| | | 23:6-9 | | | | |
| | | 23:12-13 | | | | |
| | | 24:2-5 | | | | |
| | | 24:7-16 | | | | |
| | | 25:17-26:1 | | | | |
| | | 26:3-17 | | | | |
| | | 27:11-22 | | 27:11-28:3 | F as to 28:12 | |
| | | 28:7-15 | | | | |
| | | 28:21-29:14 | | | | |
| | | 29:16-21 | | | | |
| | | 30:1-7 | | | | |
| | | 30:9-11 | | | | |
| | | 32:3-4 | | | | |
| | | 35:2-16 | | 34:18-35:16 | | |
| | | 36:6-38:1 | | 36:2-38:9; 38:21-39:9 | | 38:10-11; 38:13-19 |
| | | 40:7-10 | | | | |
| | | 40:13-41:3 | | | | |
| | | 41:9-42:3 | | | | |
| | | 44:14-45:7 | | | | |
| | | 45:10-12 | | 45:10-21 | FM | |
| | | 46:3-5 | | | | |
| | | 46:8-22 | | | | |
| | | 47:2-10 | | | | |
| | | 47:12-18 | | | | |
| | | 50:5-6 | | | | |
| | | 50:8-12 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Acharya cont. | | 51:8-12 | | | | |
| | | 56:2-7 | | | | |
| | | 56:17-57:8 | 901, 1002 | | | |
| | | 57:10-20 | 901, 1002 | | | |
| | | 58:2-8 | 901, 1002 | | | |
| | | 58:10-60:5 | 901, 1002 | 58:20-60:15 | | |
| | | 60:12-14 | 901, 1002 | | | |
| | | 68:2-4 | | | | |
| | | 68:7-14 | | 68:15-18 | FM | |
| | | 70:22-71:12 | | | | |
| | | 71:14-20 | | | | |
| | | 71:22-72:5 | | | | |
| | | | | | | |
| Cho, Kenneth | 10/26/07 | 5:1-7 | | | | |
| | | 5:12-14 | | | | |
| | | 6:25-7:14 | | | | |
| | | 7:22-8:6 | | | | |
| | | 8:23-9:7 | | | | |
| | | 10:11-16 | | | | |
| | | 25:13-15 | | | | |
| | | 25:20-26:15 | | | | |
| | | 27:5-28:15 | | | | |
| | | 28:25-29:2 | | | | |
| | | 29:7-30:9 | | 29:7-31:25 | | |
| | | 79:10-11 | | | | |
| | | 79:13-80:1 | | | | |
| | | 80:3-15 | | | | |
| | | 84:8-11 | | | | |
| | | 101:4-6 | | | | |
| | | 101:9-20 | | | | |
| | | 101:23-102:5 | | | | |
| | | 114:21-116:6 | | 114:21-118:21 | | |
| | | 127:22-128:6 | | 127:22-128:24 | | |
| | | 130:3-19 | 402, 403 | 132:10-133:8 | | |
| | | 133:9-14 | | | | |
| | | 133:18-134:4 | | | | |
| | | 137:4-18 | 402, 403 | 145:12-146:3 | | |
| | | 138:16-139:1 | 402, 403 | | | |
| | | 141:19-21 | 402, 403 | | | |
| | | 151:21-152:12 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Cho cont. | | 152:14-153:4 | 408, 402, 403 | 152:18-154:1 | | |
| | | 160:5-19 | | | | |
| | | 161:5-21 | | | | |
| | | 162:23-163:18 | | | | |
| | | 166:11-13 | | 166:1-10 | | |
| | | 167:5-168:10 | | | | |
| | | 173:23-174:9 | | 173:23-175:7 | | |
| | | 174:17-175:7 | | | | |
| | | 180:7-8 | | | | |
| | | 181:5-17 | | 180:17-20; 180:22-181:17 | | |
| | | 182:3-21 | | 182:3-24 | | |
| | | 184:15-185:5 | | | | |
| | | | | | | |
| Clark, Richard | 10/31/2007 | 6:5-11 | | | | |
| | | 6:17-25 | | | | |
| | | 9:18-10:5 | | | | |
| | | 10:18-12:12 | | | | |
| | | 13:16-15:16; 15:20-16:4 | | | | |
| | | 16:12-17:22 | | | | |
| | | 17:23-19:8 | | | | |
| | | 19:14-24:21 | | | | |
| | | 24:25-25:19 | | | | |
| | | 26:10-13; 26:15-27:21 | | | | |
| | | 27:22-28:17 | | | | |
| | | 30:2-4; 30:7-31:8 | | | | |
| | | 31:9-32:13 | | | | |
| | | 32:25-33:25 | | | | |
| | | 34:17-35:17 | | | | |
| | | 36:2-37:4; 37:7-38:4 | | 38:5-39:20 | | |
| | | 40:19-25; 41:4-42:16 | | | | |
| | | 43:2-7; 43:9-24 | | | | |
| | | 43:25-45:10 | | | | |
| | | 45:24-47:4; | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---------|------|------------------------------|---------------------|-------------------------------|--------------------|-------------------------------|
| | | 47:7-10 | | | | |
| Clark cont. | | 48:2-8; 48:11-49:5 | 602 | | | |
| | | 50:6-13; 50:15-17; 50:21-23 | | | | |
| | | 50:24-52:15; 52:18-21; 52:23-24 | 802, 602 as to 52:13-24 | | | |
| | | 55:11-12; 55:15-56:12; 56:15-57:8 | 802, 602 as to 56:10-57:8 | | | |
| | | 57:9-12; 57:15-20 | 802, 602 | | | |
| | | 57:21-58:13 | 802, 602 | | | |
| | | 59:25-60:16 | 802, 602 as to 60:3-16 | | | |
| | | 61:15-21 | | | | |
| | | 64:2-15 | | | | |
| | | 64:23-65:17 | | | | |
| | | 69:8-70:3 | | | | |
| | | 70:16-17; 70:20-71:4 | | | | |
| | | 71:5-6; 71:9-21 | | | | |
| | | 71:22-25; 72:5-74:10; 74:13-75:20 | 802, 602 as to 72:13-15, 74:22-75:20; 401 as to 73:16-22 | 75:21-25; 76:3-18; 124:19-125:13; 128:22-130:2; 130:5-131:22; 132:12-19; 133:8-134:14; 135:17-21; 135:23-136:11; 137:2-140:8; 140:16-142:20; 145:23-146:5; 147:18-149:16; 150:2-10; | F(130:3-4)  O(135:22)  SC(140:9-11)  FM(149:22-23)  F(150:11) | 131:23-132:11; 132:20-133:4  142:21-24  146:6-18 149:17-21; 149:24-150:1 |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---------|------|------------------------------|---------------------|-------------------------------|--------------------|-------------------------------|
| | | | | 150:12-14; 150:16-21; 152:4-13; 161:4-21; 161:24-162:12; 171:20-22; 174:9-11; 174:14-19; 191:23-192:11; 198:20-201:14; 201:22-24; 202:2-22; 202:25-203:12; 203:14-204:12; 206:8-17; 206:19-208:11; 209:12-215:13; 255:21-23; 256:8-16; 257:15-18; 257:20; 257:22-259:24; 260:3-19; 260:21; 260:24; 262:17-19; 263:3-5; 263:8-264:14; 265:20-266:7; 271:21-24; 272:3-24; 273:5-11; 273:22-275:2 | (150:15) F<br><br>(156:2) F<br>(161:22-23) (FM)<br><br>(162:17) F<br><br>(163:3) FM<br><br>(174:12-13) (FM)<br><br><br>(201:25) F<br>(202:24) F<br><br>(203:13) F<br><br>(206:18) F<br><br><br>F(255:24-25)<br>F(256:3-5)<br>(257:19-21) FM<br><br><br>F(259:25-260:2)<br><br>F(263:6-7)<br><br>(271:25) FM<br><br>(272:25-273:4) F, LC, | 152:14-155:25 156:3-22<br><br>162:13-16 162:18-163:2 163:4-8<br><br>170:25-171:19<br><br><br><br>192:12-193:7<br><br>206:5-7<br><br><br><br><br><br><br>260:20 260:22-23 |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| | | | | | FM | |
| Clark cont. | | 76:19-21; 76:24-78:6 | 802, 602 | 78:7-9; 78:12-24 | | |
| | | 78:25-80:22 | 802 as to 80:18-22 | | | |
| | | 80:23-81:4; 81:7-82:11 | | | | |
| | | 82:14-83:21 | | | | |
| | | 83:22-84:20 | 83:22-84:14 - Not testimony | | | |
| | | 84:25-86:14 | | | | |
| | | 87:2-4; 87:7-12; 87:14-88:4 | | | | |
| | | 88:5-89:3 | | | | |
| | | 89:6-9; 89:12-90:7; 90:10-17 | | | | |
| | | 90:25-91:4; 91:8-92:8 | 701, 802, 602 | | | |
| | | 92:12-93:20 | | | | |
| | | 94:7-95:3 | | | | |
| | | 96:2-98:12; 98:16; 98:19-22 | | | | |
| | | 100:2-11 | | | | |
| | | 100:12-102:24 | | | | |
| | | 103:14-104:9 | | | | |
| | | 104:23-105:16 | | | | |
| | | 105:17-106:6 | | | | |
| | | 106:7-107:11 | | | | |
| | | 107:25-108:24 | | | | |
| | | 108:25-110:2 | | | | |
| | | 110:3-114:11 | | 114:12-115:3 | | |
| | | 115:4-116:21 | | 116:22-117:19 | | |
| | | 119:18-120:13 | | | | |
| | | 121:21-123:8 | | | | |
| | | 123:9-125:6 | | | | |
| | | 147:3-17 | | | | |
| | | 170:11-24 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Clark cont. | | 171:23-172:23 | | 171:20-22; 172:24-173:18 | | |
| | | 183:12-184:3; 186:23-87:10; 187:12-188:8 | | 183:12-18; 185:8-186:4; 186:8-187:10 | (186:5-7) F, FM/(187:11) F | |
| | | 196:10-13; 196:15-23 | | 196:3-9 | | |
| | | 229:16-232:8 | 402, 802 | | | |
| | | 247:7-249:6 | 701, 602 as to 248:23-249:3 | | | |
| | | 252:17-253:11 | | | | |
| | | 279:20-24; 280:3-9; 280:13-15 | 802 | | | |
| | | 281:9-11; 281:13-16 | | | | |
| | | 283:19-284:23 | 802, 602 | | | |
| | | 285:6-14 | 602 | | | |
| | | 285:15-286:10 | | | | |
| | | | | | | |
| Derounian, Robert | 9/14/07 | 4:9-11 | | | | |
| | | 9:10-11:11 | | 16:12-17:6 | | |
| | | 12:3-13:4 | | | | |
| | | 13:7-15:25 | | | | |
| | | 18:14-21:19 | | | | |
| | | 21:22-24 | | | | |
| | | 22:5-24 | | | | |
| | | 23:12-15 | | | | |
| | | 23:18-24:24 | | 24:25-25:16 | | |
| | | 25:17-26:6 | | | | |
| | | 26:8-27:15 | | | | |
| | | 27:19-30:23 | | | | |
| | | 30:24-31:23 | | | | |
| | | 36:3-15 | | 34:17-36:2; 36:16-39:3 | | |
| | | 39:4-40:5 | | | | |
| | | 42:8-43:7 | | 40:22-42:4; 43:8-24; 44:9-13 | I as to 40:22-42:4 | 42:5-7 |
| | | 43:25-44:8 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| | | 44:14-20 | | 44:21-45:3 | | |
| Derounian cont. | | 45:4-46:15 | 701-702 | 46:22-47:10; 57:13-59:7 | I as to 57:13-59:7 | 56:25-57:12 |
| | | 61:13-62:16 | | | | |
| | | 67:7-68:19 | 602, 608 | | | |
| | | 68:23-69:4 | | | | |
| | | | | | | |
| Fralick, Stanley | 10/22/2007 | 5:8-11 | | | | |
| | | 6:16-21 | | | | |
| | | 9:22-10:13 | | | | |
| | | 10:19-12:7 | | | | |
| | | 13:11-14:14 | | | | |
| | | 15:14-20 | 701-702, 901, 1002 | 15:14-21:22 | | |
| | | 16:2-20:21 | 701-702, 802, 901, 1002 | 15:14-21:22 | | |
| | | 23:4-32:22 | 901, 1002 as to 32:19-22 | | | |
| | | 33:6-9 | | | | |
| | | 34:1-13 | | 34:1-37:18 | | |
| | | 39:1-21 | 802, 901, 1002 | | | |
| | | 45:15-20 | 802 as to 45:18-46:5 | 45:15-55:13 | | |
| | | 47:12-49:4 | | 45:15-55:13 | | |
| | | 51:20-53:2 | 901, 1002 | 45:15-55:13 | | |
| | | 56:8-16 | | | | |
| | | 58:21-59:1 | | 58:18-64:12 | S as to 63:9-64:3 | |
| | | 59:7-17 | 901 | 58:18-64:12 | S as to 63:9-64:3 | |
| | | 62:1-9 | 701-702 | 58:18-64:12 | S as to 63:9-64:3 | |
| | | 62:17-20 | 701-702 | 58:18-64:12 | S as to 63:9-64:3 | |
| | | 64:4-12 | | 58:18-64:12 | S as to 63:9-64:3 | |
| | | | | | | |
| Hamilton, Eric | 10/10/2007 | 7:22-8:3 | | | | |
| | | 10:7-11:7 | | | | |
| | | 12:22-13:8 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips Objections | Philips' Counter Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Hamilton cont. | | 16:4-14 | | | | |
| | | 16:21-17:1 | | | | |
| | | 17:4-10 | | 17:4-21:20 | | |
| | | 17:15-18:10 | | 17:4-21:20 | | |
| | | 18:19-20:11 | | 17:4-21:20 | | |
| | | 20:21-21:12 | | 17:4-21:20 | | |
| | | 21:17-20 | | 17:4-21:20 | | |
| | | 23:7-8 | | 22:10-24:18 | | |
| | | 23:14-22 | 802, 901, 1002 | 22:10-24:18 | | |
| | | 25:5-26:11 | 701-702, 901, 1002 | 25:5-27:10 | | |
| | | 27:18-28:3 | 901, 1002 | 27:18-28:6 | | |
| | | 28:22-29:8 | | 29:13-29:21 | | |
| | | 29:16-21 | 802, 1002 | 29:13-29:21 | | |
| | | 33:14-34:6 | 701-702 | | | |
| | | 34:16-19 | 701-702 | 34:13-35:13 | | |
| | | 35:3-6 | 701-702 | 34:13-35:13 | | |
| | | 35:10-11 | 701-702 | 34:13-35:13 | | |
| | | 42:6-18 | | | | |
| | | 45:4-47:16 | | 45:4-47:18 | | |
| | | 48:1-21 | | 48:1-51:6 | | |
| | | 49:9-50:5 | | 48:1-51:6 | | |
| | | 50:22-51:6 | | 48:1-51:6 | | |
| | | 51:19-52:11 | | | | |
| | | 55:11-56:4 | 802, 1002 | 55:8-61:21 | | |
| | | 56:10-57:4 | | 55:8-61:21 | | |
| | | 57:12-58:19 | 802, 1002 | 55:8-61:21 | | |
| | | 59:18-60:4 | 802, 1002 | 55:8-61:21 | | |
| | | 61:15-21 | 1002 | 55:8-61:21 | | |
| | | 62:1-8 | 1002 | 62:4-67:19 | | |
| | | 63:6-9 | 1002 | 62:4-67:19 | | |
| | | 63:15-64:4 | 802, 1002 | 62:4-67:19 | | |
| | | 65:22-66:20 | 1002 | 62:4-67:19 | | |
| | | 67:14-69:20 | 701-702 | 62:4-67:19 | | |
| | | 70:2-6 | 701-702 | | | |
| | | 70:15-18 | 701-702 | | | |
| | | 71:12-74:5 | 701-702 | | | |
| | | 77:20-82:16 | 802, 1002 | | | |
| | | 84:11-18 | | 84:14-88:3 | | |
| | | 87:6-88:3 | | 84:14-88:3 | | |
| | | 88:21-89:22 | 701-702, | 97:14-16; | LR as to 88:8- | |

| Witness | Date | Kodak's Designated Testimony | Philips Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| | | | 901, 1002 | 84:19-93:2 | 88:19 | |
| Hamilton cont. | | 90:7-17 | 701-702, 901, 1002 | 97:14-16; 84:19-93:2 | LR as to 88:8-88:19 | |
| | | 92:11-93:2 | 701-702, 901, 1002 | 97:14-16; 84:19-93:2 | LR as to 88:8-88:19 | |
| | | 93:21-94:7 | 701-702, 901, 1002 | 97:14-16; 84:19-85:1; 93:9-98:11 | | |
| | | 94:15-95:15 | 701-702, 901, 1002 | 97:14-16; 84:19-85:1; 93:9-98:11 | | |
| | | 96:16-97:13 | 701-702, 901, 1002 | 97:14-16; 84:19-85:1; 93:9-98:11 | | |
| | | 97:20-98:2 | 701-702, 901, 1002 | 97:14-16; 84:19-85:1; 93:9-98:11 | | |
| | | 98:14-99:8 | 701-702, 901, 1002 | 97:14-16; 98:14-103:11; 84:19-85:1 | | |
| | | 99:12-15 | 701-702, 901, 1002 | 97:14-16; 98:14-103:11; 84:19-85:1 | | |
| | | 100:3-16 | 701-702, 901, 1002 | 97:14-16; 98:14-103:11; 84:19-85:1 | | |
| | | 106:10-19 | 802 as to 106:13-19 | 106:10-107:17 | LC as to 107:16-107:19 | |
| | | 107:4-12 | 701-702 | 106:10-107:17 | LC as to 107:16-107:19 | |
| | | 113:3-11 | 701-702 | 108:10-114:5 | LC as to 109:3-109:14; FM, I as 114:4-5 | |
| | | 114:9-14 | | | | |
| | | 114:21-115:10 | | | | |
| | | 117:18-118:4 | 802, 1002 | 116:14-119:14 | I as to 119:5-119:14 | 119:5-119:16 |
| | | 131:14-21 | 701-702, 901, 1002 as to 131:19-21 | 131:3-21 | | |
| | | | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Marion, Michael | 10/23/07 | 5:2-8 | | | | |
| | | 5:13-17 | | | | |
| | | 12:16-13:2 | | | | |
| | | 13:6-23 | | 13:24-14:16 | | |
| | | 14:17-19 | | | | |
| | | 14:21-23 | | | | |
| | | 15:20-21 | | | | |
| | | 15:23-16:5 | | | | |
| | | 16:8-23 | | 17:9-18:18 | | |
| | | 19:7-21:7 | | | | |
| | | 21:9-15 | | | | |
| | | 21:17-23:12 | | | | |
| | | 23:14-19 | | | | |
| | | 23:21 | | | | |
| | | 24:8-10 | | | | |
| | | 24:15-16 | | | | |
| | | 24:19-23 | | | | |
| | | 25:1-3 | | | | |
| | | 25:6-7 | | | | |
| | | 25:9 | | | | |
| | | 25:11-26:6 | | 26:7-9 | | |
| | | 27:14-18 | | | | |
| | | 27:21 | | | | |
| | | 27:23-28:23 | | | | |
| | | 28:25-29:7 | | | | |
| | | 29:12-23 | | | | |
| | | 29:25-30:1 | | 30:3-30:10 | | |
| | | 33:23-34:4 | | | | |
| | | 34:7-9 | | | | |
| | | 34:18-35:7 | | | | |
| | | 35:10-15 | | | | |
| | | 35:19 | | | | |
| | | 36:10-12 | | | | |
| | | 36:14-37:1 | | | | |
| | | 37:4-14 | | | | |
| | | 37:16-20 | | | | |
| | | 37:22-38:4 | | | | |
| | | 38:16-20 | | | | |
| | | 38:22-39:5 | | | | |
| | | 39:8-13 | | 39:15-40:14 | | |
| | | 40:19-20 | | | | |
| | | 40:22-24 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Marion cont. | | 41:5-23 | | | | |
| | | 42:10-12 | | | | |
| | | 42:14-20 | | | | |
| | | 43:20-44:2 | | | | |
| | | 44:17-19 | | | | |
| | | 44:22-24 | | | | |
| | | 45:2-3 | | | | |
| | | 45:21-46:4 | | | | |
| | | 46:7 | | | | |
| | | 49:22-50:9 | | | | |
| | | 50:15-23 | | | | |
| | | 51:8-12 | | 51:25-52:16 | | |
| | | 52:17-19 | | | | |
| | | 52:23-24 | | | | |
| | | 53:1-3 | | | | |
| | | 53:5-7 | | | | |
| | | 53:25-54:3 | | | | |
| | | 54:5-55:2 | | | | |
| | | 55:8-14 | | | | |
| | | 55:16-24 | | | | |
| | | 56:1-2 | | | | |
| | | 58:6-10 | | | | |
| | | 58:16-21 | | | | |
| | | 59:1-8 | | | | |
| | | 59:13-20 | | 59:22-61:9 | | |
| | | 61:11-15 | | | | |
| | | 61:17-62:7 | | | | |
| | | 62:12-14 | | 62:23-25 | I | 62:16-18 & 16:23-16:25 |
| | | 63:2-4 | | | | |
| | | 63:7 | | | | |
| | | 63:9-11 | | | | |
| | | 63:14 | | | | |
| | | 65:3-7 | | | | |
| | | 65:11-12 | | | | |
| | | 65:17-23 | | | | |
| | | 76:5-12 | | | | |
| | | 76:15 | | | | |
| | | 82:11-14 | | | | |
| | | 82:19-22 | | | | |
| | | 83:24-84:19 | | | | |
| | | 84:23 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Marion cont. | | 84:25-85:5 | | | | |
| | | 88:4-25 | | | | |
| | | 89:3-12 | | | | |
| | | 89:14-18 | | | | |
| | | 92:6-9 | | | | |
| | | 92:14-15 | | | | |
| | | 94:12-15 | | | | |
| | | 94:20-95:6 | | | | |
| | | 95:11-21 | | | | |
| | | 96:2-6 | | | | |
| | | 101:6-9 | | | | |
| | | 101:11-12 | | | | |
| | | 101:14-17 | | | | |
| | | 101:20-102:5 | | | | |
| | | 102:8-17 | | 103:9-25 | | |
| | | 104:2-8 | | | | |
| | | 104:11-15 | | 104:21-105:23 | | |
| | | 104:17-19 | | | | |
| | | 106:8-24 | | | | |
| | | 107:2-10 | | | | |
| | | 107:13-16 | | | | |
| | | 107:21-23 | | | | |
| | | 108:22-23 | | | | |
| | | 109:3-5 | | | | |
| | | 109:7-13 | | | | |
| | | 109:18-19 | | | | |
| | | 111:12-13 | | | | |
| | | 111:16-112:2 | | | | |
| | | 112:5-6 | | | | |
| | | 113:7-8 | | | | |
| | | 113:15 | | | | |
| | | | | | | |
| Mitchell, Dr. Joan | 9/20/07 | 5:24-6:14 | | | | |
| | | 15:2-17:1 | | | | |
| | | 17:17-25 | | | | |
| | | 18:16-19:6 | | | | |
| | | 21:12-22:3 | | | | |
| | | 22:21-24:24 | | | | |
| | | 25:7-32:9 | | | | |
| | | 32:17-22 | | | | |
| | | 33:2-3 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---------|------|------------------------------|---------------------|-------------------------------|--------------------|-------------------------------|
| Mitchell cont. | | 33:11-23 | | 33:24-34:18 "Philips had a patent that covered the same thing as Forgent" | | |
| | | 34:19-20 | | | | |
| | | 34:25-36:1 | 802, 602, 402, 403 as to 34:19-35:2 | | | |
| | | 37:5-39:23 | 802, 602 as to 39:22-40:4 | 41:3-11; 41:14-15; 44:12-16 | | |
| | | 40:1-11 | | | | |
| | | 40:15-24 | | | | |
| | | 43:1-18 | | | | |
| | | 44:6-11 | | | | |
| | | 44:17-47:19 | | | | |
| | | 48:4-49:12 | | | | |
| | | 49:20-22 | | | | |
| | | 50:1-50:12 | 802, 602 as to 50:8-12 | | | |
| | | 51:4-25 | 602 as to 51:24-25 | | | |
| | | 52:5-53:19 | 602 as to 52:5-15 | | | |
| | | 53:25-54:13 | | | | |
| | | 54:17-61:16 | | | | |
| | | 61:20-64:3 | | | | |
| | | 64:23-65:14 | | 64:4-9 | | 64:10-22 |
| | | 66:21-69:17 | | 69:18-19; 69:22-70:9 | | |
| | | 70:10-15 | | | | |
| | | 70:22-71:3 | | | | |
| | | 71:11-25 | | | | |
| | | 72:3-76:6 | | | | |
| | | 79:5-23 | | | | |
| | | 80:18-19 | | | | |
| | | 80:23-83:24 | | | | |
| | | 83:25-84:1 | | | | |
| | | 84:6-15 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Mitchell cont. | | 84:20-86:1 | | | | |
| | | 86:4-5 | | | | |
| | | 86:11-87:4 | | | | |
| | | 87:16-25 | | 88:1-8 | | |
| | | 88:9-14 | | | | |
| | | 88:18-91:4 | 602, 802 as to 88:19-20 | | | |
| | | 91:8-22 | 602, 802 as to 92:3-4 | | | |
| | | 92:1-10 | | | | |
| | | 92:17-93:5 | 602, 802 as to 93:9-15 | | | |
| | | 93:9-94:12 | | | | |
| | | 95:8-24 | | | | |
| | | 97:16-21 | | | | |
| | | 97:24 | | 97:25-98:2; 98:6-12 | | 98:21-23 |
| | | 98:13-15 | | | | |
| | | 98:17 | | | | |
| | | 98:24-99:21 | | | | |
| | | 100:6-9 | | | | |
| | | 100:16-101:15 | | | | |
| | | 101:18-21 | | | | |
| | | 109:7-110:1 | | | | |
| | | 111:9-112:9 | | | | |
| | | 112:17-21 | | | | |
| | | 113:1-123:9 | | | | |
| | | 123:20-125:16 | | | | |
| | | 126:8-129:22 | | | | |
| | | 130:2-135:20 | | | | |
| | | 137:19-139:2 | | 136:11-137:18 | | |
| | | 144:13-18 | | | | |
| | | 145:4-146:7 | | | | |
| | | 152:6-25 | | | | |
| | | 154:6-17 | | | | |
| | | 155:8-158:6 | | | | |
| | | 167:22-168:11 | | | | |
| | | 170:3-16 | | 169:11-170:2 | | |
| | | 174:15-24 | | 179:20-25 | | |
| | | 178:5-179:18 | | | | |
| | | | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Morris, Dr. John | 9/26/07 | 5:1-11 | | | | |
| | | 5:21-25 | | | | |
| | | 6:1-8 | | | | |
| | | 9:10-17 | | | | |
| | | 9:23-10:24 | | | | |
| | | 11:9-19 | | | | |
| | | 12:1-4 | | | | |
| | | 12:9-13:23 | | | | |
| | | 14:2-10 | | | | |
| | | 14:15-20 | | | | |
| | | 19:24-21:7 | | | | |
| | | 21:14-23 | | | | |
| | | 23:1-13 | | | | |
| | | 24:2-22 | | | | |
| | | 26:1-20 | | 25:11-19; 25:22-25 | | |
| | | 26:25-27:18 | | 27:19-24 | | 27:25-28:14 |
| | | 28:15-29:12 | | | | |
| | | 29:14-16 | | | | |
| | | 29:22-30:7 | | | | |
| | | 30:16-23 | | | | |
| | | 31:25-32:4 | | 32:5-13 | | |
| | | 33:11-25 | | | | |
| | | 34:1-4 | | 34:5-6; 34:9-10 | | |
| | | 34:20-22 | | | | |
| | | 35:11-21 | | 35:3-8; 35:10 | | |
| | | 35:24-36:3 | | | | |
| | | 36:19-24 | | | | |
| | | 37:1-3 | | | | |
| | | 38:13-16 | | | | |
| | | 38:19-20 | | | | |
| | | 39:8-17 | | 38:25-39:7 | | |
| | | 40:10-13 | | 40:5-9 | | |
| | | 40:16-18 | | | | |
| | | 41:2-15 | | | | |
| | | 44:7-45:9 | | 42:25-44:3 | | 92:18-24; 95:12-19 |
| | | 45:20-46:1 | | | | |
| | | 48:3-21 | | | | |
| | | 49:6-50:7 | | | | |
| | | 50:13-55:3 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Morris cont. | | 55:19-56:1 | | | | |
| | | 56:4-6 | | 56:7-8 | | |
| | | 56:9-58:4 | | | | |
| | | 58:21-59:17 | | | | |
| | | 60:4-9 | | 60:12-14 | | |
| | | 60:19-61:15 | | | | |
| | | 61:17-18 | | | | |
| | | 61:20-22 | | | | |
| | | 62:5-16 | | | | |
| | | 65:1-66:8 | | | | |
| | | 66:13-15 | | | | |
| | | 66:21-67:5 | | | | |
| | | 67:15-23 | | 68:1-4 | | 67:6-14 |
| | | 68:5-21 | | | | |
| | | 68:23-69:16 | | | | |
| | | 71:7-17 | | | | |
| | | 72:8-74:6 | | | | |
| | | 74:10-75:15 | | | | |
| | | 76:7-16 | | | | |
| | | 76:20-77:9 | | | | |
| | | 77:14-18 | | | | |
| | | 78:7-16 | | 78:17-18 | | |
| | | 78:19-22 | | | | |
| | | 79:19-80:16 | | | | |
| | | 82:21-83:15 | | 83:18-23 | | |
| | | 84:1-5 | | | | |
| | | 84:8-11 | | | | |
| | | 84:20-85:3 | | | | |
| | | 85:8-9 | | | | |
| | | 85:12-13 | | | | |
| | | 85:17-88:24 | | | | |
| | | 89:5-90:10 | | | | |
| | | 90:21-22 | | | | |
| | | 91:11-92:24 | | | | |
| | | 93:7-13 | | | | |
| | | 95:6-8 | | | | |
| | | 95:11-16 | | | | |
| | | 95:18-20 | | | | |
| | | 96:16-18 | | | | |
| | | 96:20-97:4 | | | | |
| | | 97:6-8 | | | | |
| | | 97:10-15 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Morris cont. | | 97:19-98:11 | | | | |
| | | 98:17-102:20 | | | | |
| | | 102:22-103:4 | | | | |
| | | 103:6-9 | | | | |
| | | 103:19-104:6 | | | | |
| | | 104:8-106:9 | | | | |
| | | 106:24-108:8 | | | | |
| | | 108:13-22 | | | | |
| | | 108:24-109:4 | | | | |
| | | 109:6-17 | | | | |
| | | 109:19-110:11 | | 110:12-14 | | |
| | | 110:20-111:10 | | | | |
| | | 112:3-7 | | 112:9-10 | | |
| | | 112:11-113:22 | | | | |
| | | 113:24-119:10 | | | | |
| | | 119:16-122:23 | | | | |
| | | 123:9-124:2 | | 124:3-4 | | |
| | | 125:3-9 | R 32(a) | | | |
| | | 125:21-126:11 | | | | |
| | | 126:16-128:14 | | | | |
| | | 128:21-131:19 | | | | |
| | | 131:22-133:1 | | 133:2-8 | | |
| | | 133:9-14 | | | | |
| | | 134:5-147:24 | | | | |
| | | 152:3-9 | | 152:14-16 | | |
| | | 153:3-16 | | | | |
| | | | | | | |
| Ngosi, Theodora | 12/19/07 | 7:6-10 | | 7:3-5 | | |
| | | 8:24-9:6 | | | | |
| | | 9:15-17 | | 9:24-25 | | 9:18-23; 10:1-3 |
| | | 10:4-5 | | | | |
| | | 15:9-10 | | | | |
| | | 16:2-17:6 | | 17:7-8 | | |
| | | 17:24-18:4 | | | | |
| | | 18:8-19:4 | | 19:5-13 | | |
| | | 19:17-20:2 | | 20:3-7 | | |
| | | 20:8-25 | | 21:24-22:6 | | |
| | | 22:7-22 | | 22:23-23:1; 34:21-35:3; 36:11-15 | | |
| | | 23:2-3 | | 25:11-16 | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Ngosi cont. | | 24:17-19 | | | | |
| | | 25:21-26:9 | 802, 602 as to 26:1-9 | 25:17-20 | | |
| | | 27:13-28:2 | | 26:10-27:12; 28:3-4 | | |
| | | 29:4-30:16 | | 30:17-18 | | |
| | | 30:19-31:3 | 802, 602 as to 30:21-31:3 | | | |
| | | 32:13-18 | | | | |
| | | 37:21-39:7 | 802, 602 as to 38:2-39:7 | | | |
| | | 39:16-20 | | | | |
| | | 41:10-17 | 802, 602 | | | |
| | | 44:2-4 | | | | |
| | | 48:3-12 | 802, 602 | | | |
| | | 56:12-57:5 | 802, 602 | | | |
| | | | | | | |
| Nier, Michael | 10/30/07 | 4:1-15 | | | | |
| | | 6:13-7:11 | | | | |
| | | 7:24-8:18 | | | | |
| | | 9:5-10:17 | | | | |
| | | 15:20-16:13 | | | | |
| | | 17:6-19:11 | | | | |
| | | 19:12-20:16 | | | | |
| | | 20:17-21:2 | | | | |
| | | 21:12-22:24; 23:2-15 | | | | |
| | | 23:16-24:18 | | | | |
| | | 24:23-25:17 | | | | |
| | | 26:16-26:22 | | | | |
| | | 27:13-28:19; 29:22-30:10; 30:12-17 | 602 as to 30:9-17 | | | |
| | | 30:18-32:11 | | | | |
| | | 39:1-13 | | | | |
| | | 40:5-41:5 | | | | |
| | | 43:5-9 | | | | |
| | | 43:14-45:5 | | | | |
| | | 47:22-49:3 | | | | |
| | | 57:18-58:3 | | | | |
| | | 57:24-58:6 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Nier cont. | | 58:9-16; 58:19-60:7 | | 58:4-8 | | |
| | | 60:18-24; 61:2 | 802, 602 as to 60:22-61:2 | | | |
| | | 61:3-62:15 | | | | |
| | | 62:17-63:1 | | | | |
| | | 63:10-64:21 | | | | |
| | | 65:3-66:3 | | | | |
| | | 66:16-67:9 | | | | |
| | | 67:10-14; 67:17-25 | 602 as to 67:10-25 | | | |
| | | 68:2-5; 68:9-14 | | | | |
| | | 68:15-23 | | | | |
| | | 69:19-70:4 | | | | |
| | | 70:9-18; 70:20-71:2 | | | | |
| | | 71:3-72:25 | | | | |
| | | 74:7-11; 74:14-25 | 802 | | | |
| | | 75:2-18 | | | | |
| | | 76:7-12 | | | | |
| | | 94:20-25; 95:4-13 | | | | |
| | | 111:14-112:17 | | | | |
| | | | | | | |
| Richards, Norman | 9/27/07 | 5:23-6:15 | | | | |
| | | 9:13-10:6 | | | | |
| | | 11:20-13:2 | | | | |
| | | 13:7-14:17 | | | | |
| | | 18:19-19:15 | | | | |
| | | 19:16-20:5 | | | | |
| | | 20:12-21:1 | | | | |
| | | 21:11-23:6 | | | | |
| | | 23:11-23; 23:25-24:12 | | | | |
| | | 24:23-25:7 | | 24:20-22 | | |
| | | 25:11-19 | | 25:23-25 | | |
| | | 26:5-8 | | | | |
| | | 26:13-17; 26:19-27:10 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Richards cont. | | 28:3-22 | | | | |
| | | 29:17-30:19 | | | | |
| | | 30:24-31:25 | | | | |
| | | 32:16-34:16 | | 34:17-35:2 | | |
| | | 35:3-11 | | | | |
| | | 35:12-36:14 | | | | |
| | | 37:20-22 | | 37:23-38:10 | | |
| | | 38:11-40:1 | | | | |
| | | 40:4-8; 40:10-13 | | | | |
| | | 42:3-43:25; 44:3-23 | | | | |
| | | 47:1-2 | | | | |
| | | 47:13-16 | | 47:8-12; 47:22-25 | | 47:3-7; 47:17-21 |
| | | 49:16-23 | | | | |
| | | 51:18-52:2 | | 52:3-4; 52:6-15 | | 51:3-4 |
| | | 55:9-18 | | | | |
| | | 57:1-58:19 | | 58:20-23; 58:25-59:2 | | |
| | | 61:13-16 | | | | |
| | | 61:25-62:24 | | | | |
| | | 63:4-64:12 | | | | |
| | | 64:20-65:9 | | | | |
| | | 65:23-66:25 | | | | |
| | | 67:3-5 | | | | |
| | | 67:12-68:11 | | | | |
| | | 68:16-69:2 | | 69:4 | | |
| | | 69:5-12 | | 69:13-20 | | |
| | | | | | | |
| Schylander, Erik | 10/2/2007 | 6:2-11 | | | | |
| | | 6:17-22 | | | | |
| | | 10:8-15 | | | | |
| | | 12:19-13:21 | | 11:4-12:18 | | |
| | | 18:2-19:12 | | | | |
| | | 34:19-35:5 | | | | |
| | | 54:21-55:8 | | | | |
| | | 61:7-63:5 | | | | |
| | | 63:6-64:13 | | | | |
| | | 66:15-67:2 | | 65:16-18; 65:22-66:6 | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Schylander cont. | | 91:20-92:3 | | | | |
| | | 93:7-96:13 | | | | |
| | | 97:1-16 | | | | |
| | | 98:15-99:8; 99:11-101:14 | | | | |
| | | 103:6-105:6 | | | | |
| | | 106:8-107:10 | | | | |
| | | 107:11-108:21 | | | | |
| | | 109:2-110:5; 110:9-14; 110:18-21 | | | | |
| | | 110:22-112:15 | | | | |
| | | 117:4-5; 117:8-15 | | | | |
| | | 118:3-5; 118:9-11 | | | | |
| | | 118:17-119:7; 120:1-14 | | 119:16-20 | | 119:21-22 |
| | | 120:21-121:8 | | | | |
| | | 121:18-122:2 | | | | |
| | | 122:15-19 | | | | |
| | | | | | | |
| Sebestyen, Istvan | 9/21/07 | 5:12-17 | | | | |
| | | 6:11-16 | | | | |
| | | 7:15-9:19 | | | | |
| | | 10:7-13 | | | | |
| | | 10:22-11:19 | | | | |
| | | 12:1-13:4 | | | | |
| | | 13:18-15:3 | | | | |
| | | 15:5-16:12 | | | | |
| | | 17:16-18:23 | | | | |
| | | 19:2-6 | | | | |
| | | 20:8-22:13 | | | | |
| | | 22:16-24:6 | | | | |
| | | 24:14-22 | | | | |
| | | 24:25-26:1 | | | | |
| | | 33:15-34:3 | | | | |
| | | 36:23-37:5 | | | | |
| | | 37:8-18 | | | | |
| | . | 38:19-21 | | | | |
| | | 38:23-39:19 | | | | |
| | | 40:13-14 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Sebestyen cont. | | 40:19-41:12 | | | | |
| | | 41:21-43:25 | | | | |
| | | 44:12-45:16 | 602 | | | |
| | | 45:20-46:8 | | | | |
| | | 46:15-17 | | | | |
| | | 46:21-47:1 | 802 | | | |
| | | 47:12-15 | | | | |
| | | 48:4-49:7 | 802 | | | |
| | | 49:11-24 | 802 as to 49:11-21 | | | |
| | | 50:1-25 | 802 as to 50:10-16 | | | |
| | | 51:8-53:22 | | | | |
| | | 54:14-16 | | | | |
| | | 55:9-56:12 | | | | |
| | | 57:10-13 | | | | |
| | | 60:6-8 | | | | |
| | | 60:11-17 | 602 | | | |
| | | 73:23-24 | | | | |
| | | 74:1-10 | | | | |
| | | 74:12-75:5 | 802 | | | |
| | | 78:11-13 | | | | |
| | | 79:8-12 | | | | |
| | | 80:3-25 | | | | |
| | | 81:9-21 | | | | |
| | | 81:23-24 | | | | |
| | | 83:3-6 | | | | |
| | | 83:22-84:6 | | | | |
| | | 84:19-22 | | | | |
| | | 85:2-86:2 | | | | |
| | | 86:13-14 | | | | |
| | | 86:16-24 | | | | |
| | | 87:2-22 | | | | |
| | | 88:2-9 | | | | |
| | | 88:21-89:20 | | | | |
| | | 89:24-90:8 | | | | |
| | | 91:21-22 | | | | |
| | | 92:10-93:25 | | | | |
| | | 95:5-17 | | | | |
| | | 96:8-97:5 | | | | |
| | | 97:9-10 | | | | |
| | | 97:13-17 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Sebestyen cont. | | 97:19 | | | | |
| | | 98:3-16 | | | | |
| | | 98:18-100:1 | | | | |
| | | 100:6-16 | | | | |
| | | 100:19-20 | | | | |
| | | 100:25-101:11 | | | | |
| | | 101:15-21 | | | | |
| | | 102:21-103:3 | | | | |
| | | 103:18-22 | | | | |
| | | 104:1-11 | | | | |
| | | 104:13 | | | | |
| | | 104:18-19 | | | | |
| | | 104:23-25 | | | | |
| | | 105:9-11 | | | | |
| | | 106:5-19 | | | | |
| | | 106:24-25 | | | | |
| | | 107:3 | | | | |
| | | 107:11-12 | | | | |
| | | 107:20-108:2 | | | | |
| | | 108:6-8 | | | | |
| | | 108:12-109:8 | | | | |
| | | 110:25-111:8 | | | | |
| | | 115:6-15 | | | | |
| | | 117:10-119:14 | | | | |
| | | 120:19-121:6 | | | | |
| | | 121:14-18 | | | | |
| | | 121:21-22 | | | | |
| | | 121:24-122:16 | | | | |
| | | 122:22-123:2 | | | | |
| | | 123:4-6 | | | | |
| | | 123:8-124:6 | 802, 701 | | | |
| | | 124:7-8 | 802 | | | |
| | | 124:10 | 802 | | | |
| | | 125:15-16 | | | | |
| | | 125:18-126:8 | | | | |
| | | 126:10-15 | | | | |
| | | 147:20-23 | | | | |
| | | 149:8-150:7 | | | | |
| | | 156:23-158:4 | | | | |
| | | 180:7-181:17 | | | | |
| | | 182:13-183:11 | | | | |
| | | 183:19-184:12 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Sebestyen cont. | | 185:2-6 | | | | |
| | | 185:10-186:16 | | | | |
| | | 214:25-215:4 | | | | |
| | | 215:10-216:9 | | 216:10-23 | | |
| | | 216:24-217:23 | | | | |
| | | 217:25-218:13 | | 218:14-20 | | |
| | | 218:21-23 | | 218:24-219:11; 219:13-221:3 | 219:12 (FM) | |
| | | 226:15-16 | | | | |
| | | 226:23-227:20 | | | | |
| | | 229:5-230:12 | | | | |
| | | | | | | |
| Speidel, Joachim | 11/7/07 | 3:3-4 | 802, 604 – Hague Convention | * | | |
| | | 4:10-5:5 | 802, 604 – Hague Convention | * | | |
| | | 5:8-11 | 802, 604 – Hague Convention | * | | |
| | | 5:15-6:1 | 802, 604 – Hague Convention | * | | |
| | | 12:14-18 | 802, 604 – Hague Convention | * | | |
| | | 13:4-15:7 | 802, 604 – Hague Convention | * | | |
| | | 14:1-21 | 802, 604 – Hague Convention | * | | |
| | | 16:25-17:6 | 802, 604 – Hague Convention | * | | |
| | | 18:16-22 | 802, 604 – Hague Convention | * | | |
| | | 20:1-18 | 802, 604 – Hague Convention | * | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Speidel cont. | | 22:11-25 | 802, 604 – Hague Convention | * | | |
| | | 24:3-4 | 802, 604 – Hague Convention | * | | |
| | | 24:8 | 802, 604 – Hague Convention | * | | |
| | | 25:23-27:24 | 802, 604 – Hague Convention | * | | |
| | | 29:18-30:8 | 802, 604 – Hague Convention | * | | |
| | | 30:24-31:1 | 802, 604 – Hague Convention | * | | |
| | | 31:4-10 | 802, 604 – Hague Convention | * | | |
| | | 36:12-17 | 802, 604 – Hague Convention | * | | |
| | | 45:25-47:21 | 802, 604 – Hague Convention | * | | |
| | | 47:14-21 | 802, 604 – Hague Convention | * | | |
| | | 48:7-49:1 | 802, 604 – Hague Convention | * | | |
| | | 49:13-51:6 | 802, 604 – Hague Convention | * | | |
| | | 51:10-18 | 802, 604 – Hague Convention | * | | |
| | | 52:6-11 | 802, 604 – Hague Convention | * | | |
| | | 52:16-53:4 | 802, 604 – | * | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| | | | Hague Convention | | | |
| Speidel cont. | | 54:16-55:22 | 802, 604 - Hague Convention | * | | |
| | | 56:14-57:3 | 802, 604 - Hague Convention | * | | |
| | | 57:20-58:1 | 802, 604 - Hague Convention | * | | |
| | | 58:10-59:14 | 802, 604 - Hague Convention | * | | |
| | | 60:19-61:15 | 802, 604 - Hague Convention | * | | |
| | | 62:1-14 | 802, 604 - Hague Convention | * | | |
| | | 63:14-16 | 802, 604 - Hague Convention | * | | |
| | | 63:19-64:2 | 802, 604 - Hague Convention | * | | |
| | | 64:14-65:1 | 802, 604 - Hague Convention | * | | |
| | | 65:5-14 | 802, 604 - Hague Convention | * | | |
| | | 65:18-25 | 802, 604 - Hague Convention | * | | |
| | | 66:1-10 | 802, 604 - Hague Convention | * | | |
| | | 66:19-22 | 802, 604 - Hague Convention | * | | |
| | | 66:25-67:4 | 802, 604 - Hague | * | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| | | | Convention | | | |
| Speidel cont. | | 83:25-84:18 | 802, 604 - Hague Convention | * | | |
| | | 86:14-25 | 802, 604 - Hague Convention | * | | |
| | | 87:13-19 | 802, 604 - Hague Convention | * | | |
| | | | | | | |
| Tescher, Andrew | 10/5/2007 | 7:1-4 | | | | |
| | | 7:21-8:16 | | | | |
| | | 10:15-11:3 | | | | |
| | | 11:12-19 | | | | |
| | | 12:19-13:16 | | | | |
| | | 14:2-3 | | | | |
| | | 14:10-18 | | | | |
| | | 17:15-18:4 | | | | |
| | | 30:21-31:3 | | | | |
| | | 31:7-18 | | | | |
| | | 32:3-4 | | | | |
| | | 33:10-34:20 | | | | |
| | | 35:4-7 | | 35:9-37:12; 62:12-15 | | |
| | | 35:14-17 | | 35:18-37:12 | | |
| | | 37:13-14 | | | | |
| | | 37:16-38:7 | | 38:8-40:1 | | |
| | | 38:19-39:9 | | 39:10-40:1 | | |
| | | 48:1-6 | | | | |
| | | 49:7-18 | 701-702 | | | |
| | | 49:21-52:1 | 701-702 | | | |
| | | 52:6-53:7 | 701-702 | | | |
| | | 53:9-11 | 701-702 | | | |
| | | 54:12-57:3 | 701-702 | 57:4-8; 59:4-17 | | |
| | | 58:3-59:3 | | | | |
| | | 59:18-60:18 | 1002 | 60:19-21 | | |
| | | 60:22-61:10 | 901, 1002 | | | |
| | | 61:17-62:11 | | 62:12-15 | | |
| | | 62:16-18 | | 62:12-15 | | |
| | | 63:12-66:14 | 701-702, | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| | | | 106, R 32(a) | | | |
| Tescher cont. | | 68:18-21 | | | | |
| | | 69:4-8 | | 60:19-21 | | |
| | | 69:13-19 | 602, 901, 1002 | | | |
| | | 70:2-11 | 602 | 70:12-71:22 | | |
| | | 72:1-3 | 701-702, 901, 1002 | 71:15-22; 70:2-11 | | |
| | | 72:7-13 | 701-702, 901, 1002 | 71:15-22; 70:2-11 | | |
| | | 73:1-8 | 701-702, 901, 1002 | 71:15-22; 70:2-11 | | |
| | | 73:16-74:10 | 701-702, 901, 1002 | 71:15-22; 70:2-11 | | |
| | | 75:17-77:3 | 106, R 32(a), 701-702, | 77:4-11; 75:11-16 | I as to 75:11-75:16 | 75:11-76:3 |
| | | 77:12-78:20 | 701-702, 901, 1002 | | | |
| | | 82:11-83:17 | 602, 701-702 | 83:18-19 | | |
| | | 84:9-85:7 | 602 | 32:3-33:4 | | |
| | | 92:5-13 | 802 | | | |
| | | 94:15-95:11 | | 37:13-14; 37:16-40:1 | | |
| | | 115:2-10 | | | | |
| | | 115:14-116:19 | 701-702, 901, 1002 as to 115:17-116:19 | 117:3-12 | | |
| | | | | | | |
| Turner, Simon | 9/28/07 | 5:20-23 | | | | |
| | | 6:1-11 | | | | |
| | | 8:14-23 | | | | |
| | | 9:2-5 | | | | |
| | | 9:11-19 | | | | |
| | | 10:4-14 | | | | |
| | | 10:20-23 | | | | |
| | | 11:13-17 | | | | |
| | | 12:15-24 | | | | |
| | | 14:9-24 | | | | |
| | | 15:16-16:10 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Turner cont. | | 17:1-18:3 | | | | |
| | | 18:7-12 | | | | |
| | | 20:15-21:3 | | | | |
| | | 22:23-23:19 | | | | |
| | | 26:7-16 | | 26:17-27:5 | | |
| | | 27:6-31:6 | | | | |
| | | 32:3-13 | | | | |
| | | 33:16-34:21 | | 33:6-15 | | |
| | | 34:22-37:22 | | 37:23-24 | | |
| | | 38:19-39:14 | | | | |
| | | 39:19-40:23 | | | | |
| | | 41:1-6; 41:8-42:13; 42:15-21; 42:24-43:1; 43:3-7; 43:10-14; 43:17-18; 43:20-24 | | | | |
| | | 44:22-24; 45:4-12 | | 45:1-2 | | |
| | | 45:13-46:14; 46:16 | | | | |
| | | 46:18-23 | | | | |
| | | 47:6-52:10; 52:12-17 | | 52:11 | | |
| | | 52:21-53:19; 53:21-54:11 | | | | |
| | | 54:25-55:2 | | | | |
| | | 55:12-56:12 | | | | |
| | | 56:22-58:21; 58:24-59:3; 59:6-13; 59:16-17 | | | | |
| | | 59:19-60:4 | | | | |
| | | 60:5-62:19; 62:21-63:3 | | | | |
| | | 63:9-64:12; 64:15-24 | | | | |
| | | 64:25-65:3 | | | | |
| | | 66:5-67:15 | | | | |
| | | 68:10-69:8; | | 69:19-20 | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---------|------|------------------------------|---------------------|-------------------------------|--------------------|--------------------------------|
|  |  | 69:13-17 |  |  |  |  |
| Turner cont. |  | 70:11-14; 70:17-20; 70:23; 71:21-72:1; 72:4 |  |  |  |  |
|  |  | 73:22-74:1; 74:4 |  |  |  |  |
|  |  | 74:5-75:6 |  |  |  |  |
|  |  | 75:14-76:4 |  |  |  |  |
|  |  | 76:13-78:8 |  |  |  |  |
|  |  | 81:16-82:19 |  |  |  |  |
|  |  | 82:21-83:10 |  |  |  |  |
|  |  | 84:17-85:8; 85:13-15 |  | 85:10-11 |  |  |
|  |  | 85:16-23 |  |  |  |  |
|  |  | 86:3-15; 86:17-23 |  |  |  |  |
|  |  | 87: 1-88:6 |  |  |  |  |
|  |  | 88:14-89:20 |  | 89:25-90:2; 90:5-6 | FM R |  |
|  |  | 91:20-92:4 |  |  |  |  |
|  |  | 93:14-19 |  |  |  |  |
|  |  | 94:18-23; 94:25-95:9 |  |  |  |  |
|  |  | 95:13-97:10 |  | 95:10 | LR | 95:13-97:10 |
|  |  | 99:8-100:5 |  |  |  |  |
|  |  | 101:3-102:4; 102:7 |  | 102:8-103:2 |  |  |
|  |  | 104:2-24 |  |  |  |  |
|  |  | 105:4-8; 105:11-106:6 |  |  |  |  |
|  |  | 107:14-108:16 |  |  |  |  |
|  |  | 108:20-23 |  |  |  |  |
|  |  | 109:18-110:3; 110:5-12 |  | 110:16-19; 110:21-23 |  |  |
|  |  | 110:24-111:12; 111:15 |  |  |  |  |
|  |  | 111:21-112:13 |  |  |  |  |
|  |  | 112:14-114:7; 114:10 |  |  |  |  |
|  |  | 114:11-115:17 |  |  |  |  |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Turner cont. | | 115:25-116:10 | | | | |
| | | 116:20-120:9 | | | | |
| | | 121:5-126:9 | | | | |
| | | 126:10-130:1 | | | | |
| | | 130:10-131:11; 131:13-132:24 | | | | |
| | | 133:8-134:8 | | | | |
| | | 134:22-136:15; 136:22-24 | | | | |
| | | 137:7-138:6 | | | | |
| | | 138:7-139:22; 139:24-140:9 | | | | |
| | | 140:10-142:10 | | | | |
| | | 144:8-17 | | | | |
| | | 146:16-25; 147:3-4 | | 147:12-14 | | |
| | | | | | | |
| Van der meer, Jan Volume 1 | 9/25/07 | 6:5-7 | | | | |
| | | 6:21-7:4 | | | | |
| | | 10:5-6 | | | | |
| | | 10:14-11:11 | | | | |
| | | 12:1-13 | | | | |
| | | 23:10-17 | | | | |
| | | 24:2-11 | | | | |
| | | 26:4-19 | | | | |
| | | 27:2-11 | | | | |
| | | 28:5-11 | | | | |
| | | 29:9-30:10 | | | | |
| | | 30:21-31:4 | | | | |
| | | 32:6-20 | | | | |
| | | 33:3-14 | | | | |
| | | 33:17-34:16 | | | | |
| | | 35:6-13 | | | | |
| | | 36:13-37:8 | | | | |
| | | 44:22-45:2 | | | | |
| | | 45:5-10 | | | | |
| | | 45:13-46:10 | | | | |
| | | 47:6-19 | | | | |
| | | 48:5-49:2 | | 49:3-4 | | 49:5-9 |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---------|------|------------------------------|---------------------|-------------------------------|--------------------|-------------------------------|
| Van der meer cont. | | 49:5-19 | | | | |
| | | 57:15-58:1 | | 57:2-14 | | |
| | | 58:10-16 | | | | |
| | | 58:19 | | | | |
| | | 60:13-17 | | | | |
| | | 60:20-61:7 | | | | |
| | | 61:18-62:3 | | | | |
| | | 66:4-13 | | | | |
| | | 66:16-17 | | | | |
| | | 66:20-21 | | | | |
| | | 67:13-17 | | | | |
| | | 68:12-14 | | | | |
| | | 68:17-19 | | | | |
| | | 70:2-7 | | | | |
| | | 70:10-13 | | | | |
| | | 71:4-11 | | | | |
| | | 74:2-5 | | | | |
| | | 74:18-22 | | | | |
| | | 75:3-4 | | | | |
| | | 75:19-76:1 | 602 | 76:2-11 | | |
| | | 76:12-14 | | | | |
| | | 76:17-77:4 | | | | |
| | | 77:11-13 | | | | |
| | | 77:16-18 | | | | |
| | | 80:12-14 | | | | |
| | | 80:17-81:3 | | | | |
| | | 90:5-6 | | 90:7-12 | | |
| | | 93:6-10 | | | | |
| | | 93:13-14 | | | | |
| | | 93:17-22 | | | | |
| | | 95:12-96:16 | | | | |
| | | 103:9-10 | | 103:11-13; 103:16-17 | | |
| | | 104:17-105:2 | | | | |
| | | 105:5-11 | | | | |
| | | 105:19-106:16 | | | | |
| | | 107:21-22 | | 106:1-6 | | |
| | | 109:13-110:2 | 602 | | | |
| | | 110:5-6 | 602 | | | |
| | | 113:16-114:18 | | | | |
| | | 114:21-115:6 | | 115:7-9; 115:12-14 | | |

| Witness | Date | Kodak's Designated Testimony | Philips Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 115:15-18 | | | | |
| | | 115:21-116:1 | | | | |
| | | 126:1-2 | | 126:3-10 | | |
| | | 127:9-17 | | 127:18-22 | | |
| | | 128:1-2 | | 128:3-18; 128:21-129:1 | | |
| | | 131:16-133:6 | | 130:9-19 | | |
| | | 134:3-20 | | | | |
| | | 135:2-6 | | | | |
| | | 136:4-5 | | | | |
| | | 136:10-19 | | | | |
| | | 138:18-139:9 | | | | |
| | | 140:8-18 | | | | |
| | | 141:1-2 | | | | |
| | | 141:5-17 | | | | |
| | | 141:22-143:1 | | | | |
| | | 145:14-146:3 | | | | |
| | | 153:20-21 | | 153:22-154:11 | | |
| | | 154:12-15 | | 154:16-20 | | |
| | | 154:22-155:10 | | | | |
| | | 155:18-156:3 | | | | |
| | | 156:7-15 | | | | |
| | | 156:21-157:6 | | | | |
| | | 158:15-16 | | | | |
| | | 158:19-20 | | | | |
| | | 159:5-10 | | | | |
| | | 159:13-160:10 | | 160:11-161:3; 150:3-151:7 | | 151:8-13 |
| | | 161:10-162:3 | | | | |
| | | 163:6-9 | | | | |
| | | 163:15-20 | | | | |
| | | 164:11-14 | | | | |
| | | 164:18-21 | | | | |
| | | 165:2-12 | | | | |
| | | 166:2-6 | | 166:7-12 | | |
| | | 167:7-12 | | | | |
| | | 167:16-168:18 | | | | |
| | | 168:21-22 | | 169:11-21 | | |
| | | 169:22-170:6 | | 170:7-17 | | |
| | | 170:18-20 | | | | |
| | | 171:1-3 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 171:10-21 | | | | |
| | | 172:9-15 | | | | |
| | | 173:12-174:8 | | | | |
| | | 174:11-14 | | 174:15-16 | | |
| | | 174:17-175:13 | | | | |
| | | 176:4-19 | | | | |
| | | 176:22-177:2 | | | | |
| | | 177:6-13 | | 177:3-5 | | |
| | | 177:16-17 | | | | |
| | | 179:12-180:11 | | | | |
| | | 180:16-17 | | | | |
| | | 180:20-181:10 | | | | |
| | | 181:13-17 | | 181:18-21 | | 182:3-4 |
| | | 182:5-183:9 | | | | |
| | | 184:1-14 | | 183:19-22 | | |
| | | 185:19-20 | | | | |
| | | 186:7-9 | | 186:10-17 | | |
| | | 186:18-19 | | | | |
| | | 187:6-7 | | | | |
| | | 187:10-14 | | | | |
| | | 188:2-4 | | | | |
| | | 188:6-7 | | | | |
| | | 188:11-18 | | | | |
| | | 189:13-21 | | | | |
| | | 190:2-3 | | | | |
| | | 190:9-10 | | | | |
| | | 190:13 | | | | |
| | | 190:15-19 | | | | |
| | | 190:22-191:1 | | | | |
| | | 191:19-22 | | | | |
| | | 192:4-11 | | | | |
| | | 192:14-193:3 | | | | |
| | | 205:20-206:2 | | | | |
| | | 206:5-11 | | | | |
| | | 217:2-3 | | 217:4-9 | | |
| | | 218:18-21 | | 218:4-8 | | |
| | | 222:3-223:1 | | | | |
| | | 225:7-226:3 | | | | |
| | | 230:17-21 | | 230:22-231:1 | | |
| | | 243:14-244:13 | | | | |
| | | 253:14-15 | | 253:16-21 | | |
| | | 255:21-256:11 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 256:14-17 | | 256:12-13; 256:18-20 | | |
| | | 257:20-22 | | 257:16-19 | | |
| | | 258:21-259:1 | | | | |
| | | 259:5-21 | | 259:22-260:3 | | |
| | | 259:15-17 | | | | |
| | | 261:3-6 | | 261:7-14 | | 261:15-262:7 |
| Van der meer, Jan Volume 2 | 10/24/07 | 275:4-6 | | | | |
| | | 281:21-282:2 | | | | |
| | | 282:8-14 | | | | |
| | | 282:17-20 | | | | |
| | | 284:18-285:7 | | | | |
| | | 286:11-15 | | | | |
| | | 287:12-13 | | | | |
| | | 287:17-18 | | | | |
| | | 290:9-16 | | | | |
| | | 292:3-5 | | | | |
| | | 293:1-11 | | | | |
| | | 293:17 | | | | |
| | | 293:21-294:5 | | | | |
| | | 296:10-11 | | | | |
| | | 296:16-297:1 | | 296:1-2; 296:6-9; 297:13-16 | | 297:17-298:6 |
| | | 297:8-11 | | | | |
| | | 298:7-12 | | | | |
| | | 299:20-21 | | | | |
| | | 300:3-5 | | | | |
| | | 301:14-302:7 | | | | |
| | | 302:11-14 | | | | |
| | | 304:1-16 | | | | |
| | | 304:19-20 | | | | |
| | | 305:9-17 | | | | |
| | | 305:20-21 | | | | |
| | | 307:4-11 | | | | |
| | | 307:16-21 | | | | |
| | | 308:3-8 | | 308:9-11 | | |
| | | 308:18-20 | | | | |
| | | 309:2-3 | | 309:5-8; 309:11 | | |
| | | 309:13-17 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 310:20-311:20 | | | | |
| | | 313:9-10 | | | | |
| | | 313:14-314:4 | | | | |
| | | 314:10 | | 314:12-14; 314:18; 315:14-16; 315:22-316:1 | | |
| | | 314:21-315:3 | | | | |
| | | 315:8-10 | | | | |
| | | 315:12-13 | | | | |
| | | 317:6-7 | | | | |
| | | 317:14 | | | | |
| | | 317:21-318:4 | | | | |
| | | 318:14-21 | | | | |
| | | 324:16-19 | | 321:17-18; 322:3-7 | | |
| | | 324:22-325:4 | | | | |
| | | 325:7-14 | | | | |
| | | 325:17-20 | | | | |
| | | 326:1-2 | | 327:3-6 | | |
| | | 326:21-22 | | | | |
| | | 329:9-12 | | | | |
| | | 329:22-330:2 | | | | |
| | | 330:6-12 | | | | |
| | | 333:16-19 | | 333:22-334:2; 334:12-13 | | 334:15; 335:1; 335:4 |
| | | 335:6-10 | | | | |
| | | 335:14-18 | | | | |
| | | 335:21 | | | | |
| | | 336:12-22 | | | | |
| | | 337:7-18 | | | | |
| | | 338:12-15 | | | | |
| | | 340:15-17 | | | | |
| | | 340:22-341:10 | | | | |
| | | 341:21-342:1 | | | | |
| | | 345:6-8 | | | | |
| | | 345:13-21 | | 345:22-346:5 | | 386:7-14; 386:18-19; 387:1 |
| | | 350:18-21 | | | | |
| | | 360:22-361:3 | | | | |
| | | 361:9-12 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 362:19-363:13 | | | | |
| | | 364:19-365:3 | | | | |
| | | 365:9-366:2 | | | | |
| | | 366:5 | | | | |
| | | 371:17-372:3 | | | | |
| | | 378:22-379:1 | | | | |
| | | 379:5 | | | | |
| | | 379:9-21 | | 380:2-14 | | |
| | | 381:20-21 | | | | |
| | | 382:2-5 | | | | |
| | | 384:9-11 | | | | |
| | | 384:15-22 | | | | |
| | | 385:4-7 | | | | |
| | | 385:10-11 | | 385:14-18 | | |
| | | 389:8-11 | | | | |
| | | 400:8-9 | | 400:12-17 | | |
| | | 402:14-18 | | | | |
| | | 403:1-8 | | 404:3-4 | | |
| | | 403:11-12 | | | | |
| | | 407:6-8 | | | | |
| | | 407:18-408:7 | | | | |
| | | 408:12-13 | | | | |
| | | 408:18-19 | | | | |
| | | 409:16-20 | | | | |
| | | 410:3-7 | | | | |
| | | 410:12-14 | | | | |
| | | 420:6-7 | | | | |
| | | 420:18-19 | | | | |
| | | 421:2-6 | | | | |
| | | 421:10 | | | | |
| | | 421:13-18 | | | | |
| | | 421:21 | | | | |
| | | 422:2-6 | | | | |
| | | 424:13-14 | | 422:8-11 | I | |
| | | 424:19-20 | | | | |
| | | 426:5-6 | | 426:9-11 | | |
| | | 429:6-14 | | | | |
| | | 430:6-8 | 602 | | | |
| | | 510:5 | | | | |
| | | 510:10-11 | 602 | | | |
| | | 514:7-10 | | | | |
| | | 518:21-519:1 | 602, 701 | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Van der meer cont. | | 519:10-12 | 602, 701 | | | |
| | | | | | | |
| Vogel, Peter Dr. | 10/24/2007 | 5:6-9 | 802 | | | |
| | | 11:18-12:11 | 802 | | | |
| | | 12:15-16 | 802 | | | |
| | | 16:23-17:13 | 802 | | | |
| | | 21:5-8 | 802 | | | |
| | | 21:16-24 | 802 | | | |
| | | 22:7-12 | 802 | | | |
| | | 23:8-11 | 802 | | | |
| | | 23:19-22 | 802 | | | |
| | | 24:2-3 | 802 | | | |
| | | 24:5-14 | 802 | | | |
| | | 24:25-25:7 | 802 | | | |
| | | 25:15-18 | 802 | | | |
| | | 25:20-22 | 802 | | | |
| | | 27:20-21 | 802 | | | |
| | | 27:23-28:4 | 802 | | | |
| | | 29:11-20 | 802 | | | |
| | | 30:4-13 | 802 | | | |
| | | 31:7-8 | 802 | | | |
| | | 31:11-14 | 802 | | | |
| | | 31:17 | 802 | | | |
| | | 32:4-6 | 802 | | | |
| | | 32:8-17 | 802 | | | |
| | | 32:20-33:1 | 802 | | | |
| | | 33:10-34:7 | 802 | | | |
| | | 34:10-12 | 802 | | | |
| | | 35:7-8 | 802 | | | |
| | | 35:11-13 | 802 | | | |
| | | 35:21-36:1 | 802 | | | |
| | | 36:4-6 | 802 | | | |
| | | 37:2-6 | 802 | | | |
| | | 37:9-17 | 802 | | | |
| | | 37:20-38:12 | 802 | | | |
| | | 38:16-19 | 802 | | | |
| | | 42:11-43:14 | 802 | | | |
| | | 43:17-19 | 802 | | | |
| | | 44:7-19 | 802 | | | |
| | | 48:15-49:10 | 802 | | | |
| | | 49:12 | 802 | | | |
| | | 51:14-52:11 | 802 | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Vogel cont. | | 58:21-59:4 | 802 | | | |
| | | 59:6 | 802 | | | |
| | | 65:8-10 | 802 | | | |
| | | 65:13-66:9 | 802 | | | |
| | | 66:11-16 | 802 | | | |
| | | 66:19-20 | 802 | | | |
| | | 67:5-7 | 802 | | | |
| | | 67:10-69:8 | 802 | | | |
| | | 71:7-20 | 802 | | | |
| | | 75:16-18 | 802 | | | |
| | | 75:22-76:3 | 802 | | | |
| | | 76:5 | 802 | | | |
| | | 79:17-18 | 802 | | | |
| | | 79:22-80:1 | 802 | | | |
| | | 80:5-12 | 802 | | | |
| | | 80:16-20 | 802 | | | |
| | | 80:23-81:14 | 802 | | | |
| | | 84:8-10 | 802 | | | |
| | | 84:15-24 | 802 | | | |
| | | 96:7-97:10 | 802 | | | |
| | | 97:14-18 | 802 | | | |
| | | 98:13-99:19 | 802 | | | |
| | | 100:13-101:8 | 802 | | | |
| | | 101:16-18 | 802 | | | |
| | | 102:1-8 | 802 | | | |
| | | 104:6-7 | 802 | | | |
| | | 104:10-13 | 802 | | | |
| | | 105:14-15 | 802 | | | |
| | | 105:17-23 | 802 | | | |
| | | 105:25 | 802 | | | |
| | | 106:15-19 | 802 | | | |
| | | 112:24-114:11 | 802 | | | |
| | | 117:4-118:2 | 802 | | | |
| | | 118:4-9 | 802 | | | |
| | | 119:7-16 | 802 | | | |
| | | 120:2-4 | 802 | | | |
| | | 120:6-9 | 802 | | | |
| | | 120:12-20 | 802 | | | |
| | | 120:24-121:4 | 802 | | | |
| | | 121:17-23 | 802 | | | |
| | | 122:1-4 | 802 | | | |
| | | 122:7 | 802 | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Vogel cont. | | 122:21-123:4 | 802 | | | |
| | | 123:6-14 | 802 | | | |
| | | 123:17-124:4 | 802 | | | |
| | | 126:9-21 | 802 | | | |
| | | 126:23-127:13 | 802 | | | |
| | | 127:17-128:17 | 802 | | | |
| | | 128:21-129:9 | 802 | | | |
| | | 129:11 | 802 | | | |
| | | 135:5-14 | 802 | | | |
| | | | | | | |
| Volmer, Georg | 10/25/07 | 7:8-18 | | | | |
| | | 21:19-23:4 | | 23:5-6 | | |
| | | 23:7-10 | | 23:11-15 | | |
| | | 24:18-25:4 | | | | |
| | | 25:20-22 | | | | |
| | | 26:6-20 | | 27:10-13 | | 26:21-27:09 |
| | | 27:22-28:11 | | | | |
| | | 28:20-29:2 | | | | |
| | | 30:15-18 | | | | |
| | | 31:17-20 | | | | |
| | | 32:1-5 | | | | |
| | | 32:14-18 | | 32:25-33:1 | | |
| | | 34:5-7 | | | | |
| | | 35:7-11 | | | | |
| | | 36:8-9 | | 36:14-36:19 | | |
| | | 37:6-7 | | | | |
| | | 39:18-19 | | | | |
| | | 40:3-10 | | | | |
| | | 41:2-6 | | | | |
| | | 42:22-43:11 | | 43:15-18; 43:22-44:1 | | |
| | | 44:7-15 | | 44:3-44:6 | | |
| | | 50:17-51:2 | | | | |
| | | 52:11-17 | | | | |
| | | 52:22-53:3 | | | | |
| | | 53:11 | | | | |
| | | 63:13-19 | | | | |
| | | 67:3-8 | 403, 602 | | | |
| | | 67:13-16 | 403, 602 | | | |
| | | 68:9-13 | | | | |
| | | 73:19-74:3 | | | | |
| | | 90:9-14 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Volmer cont. | | 91:14-17 | | | | |
| | | 103:10-17 | 602, 701-702 | | | |
| | | 113:18-114:2 | | | | |
| | | 115:17-116:2 | | | | |
| | | 118:10-13 | | | | |
| | | 119:1-5 | | | | |
| | | 124:2-9 | | | | |
| | | 129:15-20 | | | | |
| | | 130:4-9 | | | | |
| | | 150:4-12 | | | | |
| | | 150:16-17 | | | | |
| | | 175:21-176:15 | | | | |
| | | 186:19-187:2 | | 186:15-18 | | |
| | | 187:5-6 | | | | |
| | | 187:16-18 | | | | |
| | | 191:21-192:1 | | | | |
| | | 192:4-7 | | | | |
| | | 192:13-16 | | | | |
| | | 192:20 | | | | |
| | | 201:15-202:2 | 402 | | | |
| | | 202:13-203:6 | | | | |
| | | 203:13-16 | | | | |
| | | 211:21-212:8 | | | | |
| | | | | | | |
| Wenzel, Karl-Heinz | 9/28/2007 | 5:3-6:4 | 802, 604 - Hague Convention | * | | |
| | | 6:12-20 | 802, 604 - Hague Convention | * | | |
| | | 6:21-8:6 | 802, 604 - Hague Convention | * | | |
| | | 22:20-24:12 | 802, 604 - Hague Convention | * | | |
| | | 24:13-25:5 | 802, 604 - Hague Convention | * | | |
| | | 26:13-18 | 802, 604 - Hague | * | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| | | | Convention | | | |
| Wenzel cont. | | 27:8-11 | 802, 604 – Hague Convention | * | | |
| | | 30:3-7 | 802, 604 – Hague Convention | * | | |
| | | 31:19-32:18 | 802, 604 – Hague Convention | * | | |
| | | 33:19-34-3 | 802, 604 – Hague Convention | * | | |
| | | 34:4-5 | 802, 604 – Hague Convention | * | | |
| | | 35:6-13 | 802, 604 – Hague Convention | * | | |
| | | 35:20-36:5 | 802, 604 – Hague Convention | * | | |
| | | 45:17-18 | 802, 604 – Hague Convention | * | | |
| | | 46:5-14 | 802, 604 – Hague Convention | * | | |
| | | 50:13-14 | 802, 604 – Hague Convention | * | | |
| | | 51:12-21 | 802, 604 – Hague Convention | * | | |
| | | 56:11-14 | 802, 604 – Hague Convention | * | | |
| | | | | | | |
| Weth, Gerald | 9/19/07 | 6:13-16 | | | | |
| | | 6:21-24 | | | | |
| | | 10:13-21 | | | | |
| | | 11:6-18 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Weth cont. | | 12:13-13:13 | | | | |
| | | 16:4-17 | | | | |
| | | 19:1-16 | | | | |
| | | 20:2-4 | | 19:22-23; 19:25-20:1 | | 20:11-12 |
| | | 20:6-10 | | | | |
| | | 28:3-7 | | | | |
| | | 29:6-7 | | | | |
| | | 29:22-25 | | | | |
| | | 30:8-15 | | | | |
| | | 32:24-33:20 | | | | |
| | | 33:23-25 | | | | |
| | | 34:3-9 | | | | |
| | | 38:10-11 | | 38:4-9 | | |
| | | 38:22-39:4 | 701-702 | | | |
| | | 39:6-7 | 701-702 | | | |
| | | 40:10-13 | | | | |
| | | 40:16-21 | | | | |
| | | 40:23-41:2 | | | | |
| | | 54:22-24 | | | | |
| | | 55:1-14 | | | | |
| | | 58:24 | | | | |
| | | 59:3-20 | | | | |
| | | 60:9-13 | | 60:15 | | |
| | | 60:16-61:4 | | | | |
| | | 61:6-15 | | | | |
| | | 61:21-62:6 | | 62:7-8; 62:11-12 | | |
| | | 62:13-15 | | | | |
| | | 62:18-25 | | | | |
| | | 63:2-15 | | | | |
| | | 64:17-18 | | 64:1-3; 64:5-16 | | |
| | | 64:21-22 | | | | |
| | | 64:24-65:4 | | | | |
| | | 66:15-67:2 | | | | |
| | | 67:4-16 | | 67:17-25 | | |
| | | 68:1-2 | | | | |
| | | 68:5-10 | | | | |
| | | 68:12-14 | | | | |
| | | 68:19-69:24 | | | | |
| | | 70:10-71:4 | | | | |

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---|---|---|---|---|---|---|
| Weth cont. | | 76:6-8 | | | | |
| | | 78:19-22 | | 78:3-5; 78:9-13 | | |
| | | 78:25-79:2 | | | | |
| | | 79:6-13 | 403, 602, 802 | | | |
| | | 85:17-21 | | 85:13-16 | | |
| | | 85:23-87:10 | | | | |
| | | 89:14-19 | | 88:22-89:13 | | 87:22-12; 87:25-88:21 |
| | | 92:14-20 | | | | |
| | | 93:1-3 | | | | |
| | | 93:5-14 | | | | |
| | | 93:16 | | 93:17-20 | | |
| | | | | | | |

* Preserves right to designate testimony if Kodak's designations found admissable.

*Philips/LG Electronics Case*
Civil Action No. 1:06-cv-01402-BSJ-THK

| Witness | Date | Kodak's Designated Testimony | Philips' Objections | Philips' Counter-Designations | Kodak's Objections | Kodak's Rebuttal Designations |
|---------|------|------------------------------|---------------------|-------------------------------|--------------------|-------------------------------|
| Cho, Kenneth K | 1/17/2008 | 8:9-16 | | | | |
| | | 45:5-19 | | | | |
| | | 71:6-72:8 | | | | |
| | | 76:13-18 | | | | |
| | | 156:12-22 | | | | |
| | | 157:1-5 | | | | |
| | | | | | | |
| Marion, Michael | 1/8/2008 | 52:16-18 | | | | |
| | | 52:21-24 | | | | |
| | | 58:2-3 | | | | |
| | | 58:8-24 | | | | |
| | | | | | | |
| Morris, John | 1/10/08 | 5:2-4 | | | | |
| | | 5:12-23 | | | | |
| | | 27:13-29:4 | | | | |
| | | 33:9-35:16 | | | | |
| | | 36:25-38:6 | | | | |
| | | 43:20-44:14 | | | | |
| | | 45:20-46:23 | | | | |
| | | 49:19-51:25 | | | | |
| | | 53:14-54:20 | | | | |
| | | 55:4-56:10 | | | | |
| | | 56:19-57:25 | | | | |
| | | 59:11-59:18 | | | | |
| | | 67:2-67:21 | | | | |
| | | 76:6-76:13 | | | | |
| | | 77:15-20 | | | | |
| | | 80:11-81:13 | | | | |
| | | 87:4-88:20 | | | | |
| | | 90:7-91:3 | | | | |
| | | 92:13-93:10 | | | | |
| | | 96:20-97:3 | | | | |
| | | 98:16-25 | | | | |
| | | 100:22-25 | | | | |
| | | 101:7-12 | | | | |
| | | 101:22-102:2 | | | | |
| | | 102:19-103:17 | | | | |
| | | 103:23-104:5 | | | | |
| | | 105:24-107:11 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 109:11-16 | | | | |
| | | 112:12-113:18 | | | | |
| | | 113:24-114:6 | | | | |
| | | 114:18-25 | | | | |
| | | 116:12-118:3 | | | | |
| | | 121:8-122:4 | | | | |
| | | 122:13-23 | | | | |
| | | 124:19-125:10 | | | | |
| | | 125:13-25 | | | | |
| | | 126:20-127:24 | | | | |
| | | 129:13-130:2 | | | | |
| | | 130:12-131:13 | | | | |
| | | 132:15-133:10 | | | | |
| | | 135:21-136:3 | | | | |
| | | 136:11 | | | | |
| | | 138:10-16 | | | | |
| | | 144:3-10 | | | | |
| | | 145:10-148:2 | | | | |
| | | 148:8-14 | | | | |
| | | 148:21 | | | | |
| | | 151:6-152:10 | | | | |
| | | 154:16-156:12 | | | | |
| | | 156:17-157:20 | | | | |
| | | 159:13-22 | | | | |
| | | 160:21-161:19 | | | | |
| | | 167:11-19 | | | | |
| | | 168:14-169:5 | | | | |
| | | 171:4-172:8 | | | | |
| | | 178:17-179:10 | | | | |
| | | 180:20-181:3 | | | | |
| | | 181:17-24 | | | | |
| | | 182:1-183:11 | | | | |
| | | 186:17-188:4 | | | | |
| Richards, Norman | 1/9/08 | 5:2-4 | | | | |
| | | 5:14-17 | | | | |
| | | 6:10-12 | | | | |
| | | 14:23-16:5 | | | | |
| | | 16:12-16 | | | | |
| | | 16-22:-17:7 | | | | |
| | | 17:13-18:6 | | | | |
| | | 20:21-21:12 | | | | |
| | | 21:23-22:24 | | | | |
| | | 24:15-25 | | | | |
| | | 25:18-26:9 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 26:10-13;<br>26:18-23 | | | | |
| | | 32:7-12;<br>32:17-33:13;<br>34:20-23 | | | | |
| | | | | | | |
| Scott, Kevin | 1/18/2008 | 7:14-18 | | | | |
| | | 8:3-7 | | | | |
| | | 8:14-18 | | | | |
| | | 9:4-10:2 | | | | |
| | | 15:21-16:5 | | | | |
| | | 17:20-18:14 | | | | |
| | | 36:12-22 | | | | |
| | | 37:7-13 | | | | |
| | | 43:17-44:7 | | | | |
| | | 44:18-20 | | | | |
| | | 45:1-6 | | | | |
| | | 45:16-46:5 | | | | |
| | | 46:21-47:7 | | | | |
| | | 51:12-52:8 | | | | |
| | | 52:16-53:1 | | | | |
| | | | | | | |
| Slobod, Jack D. | 1/16/2008 | 7:9-19 | | | | |
| | | 8:5-9:3 | | | | |
| | | 9:12-17 | | | | |
| | | 13:15-20 | | | | |
| | | 19:19-20:3 | | | | |
| | | 20:10-14 | | | | |
| | | 21:3-21 | | | | |
| | | 29:7-12 | | | | |
| | | 30:17-19 | | | | |
| | | 32:4-11 | | | | |
| | | 33:5-22 | | | | |
| | | 42:7-13 | | | | |
| | | 44:3-45:3 | | | | |
| | | 49:4-50:4 | | | | |
| | | 50:7-11 | | | | |
| | | 51:7-13 | | | | |
| | | 54:11-14 | | | | |
| | | 54:17-21 | | | | |
| | | 55:1 | | | | |
| | | 56:11-16 | | | | |
| | | 60:6-21 | | | | |
| | | 61:10-20 | | | | |
| | | 62:13-15 | | | | |

|  |  | 62:17-22 |  |  |  |  |
|--|--|----------|--|--|--|--|
|  |  | 63:10-12 |  |  |  |  |
|  |  | 72:2-3 |  |  |  |  |
|  |  | 72:6-17 |  |  |  |  |
|  |  | 78:6-12 |  |  |  |  |
|  |  | 78:15-79:3 |  |  |  |  |
|  |  | 79:6-20 |  |  |  |  |
|  |  | 80:1-7 |  |  |  |  |
|  |  | 80:10-15 |  |  |  |  |
|  |  | 80:18-22 |  |  |  |  |
|  |  | 81:2-5 |  |  |  |  |
|  |  | 83:4-7 |  |  |  |  |
|  |  | 83:10-17 |  |  |  |  |
|  |  | 83:21-84:1 |  |  |  |  |
|  |  | 84:12-21 |  |  |  |  |
|  |  | 88:13-15 |  |  |  |  |
|  |  | 88:19-20 |  |  |  |  |
|  |  | 91:22-92:4 |  |  |  |  |
|  |  | 92:11-17 |  |  |  |  |
|  |  | 94:10-12 |  |  |  |  |
|  |  | 94:15-21 |  |  |  |  |
|  |  | 95:18-96:1 |  |  |  |  |
|  |  | 99:5-11 |  |  |  |  |
|  |  | 103:21-105:1 |  |  |  |  |
|  |  | 109:3-6 |  |  |  |  |
|  |  | 109:10-22 |  |  |  |  |
|  |  | 116:9-20 |  |  |  |  |
|  |  | 120:12-14 |  |  |  |  |
|  |  | 120:17-121:1 |  |  |  |  |
|  |  | 121:8-12 |  |  |  |  |
|  |  | 121:14-20 |  |  |  |  |
|  |  | 122:4-5 |  |  |  |  |
|  |  | 122:9-11 |  |  |  |  |
|  |  | 126:18-22 |  |  |  |  |
|  |  | 127:4-8 |  |  |  |  |
|  |  | 127:11-128:3 |  |  |  |  |
|  |  | 131:10-13 |  |  |  |  |
|  |  | 131:19-132:5 |  |  |  |  |
|  |  | 132:10-19 |  |  |  |  |
|  |  | 133:3-8 |  |  |  |  |
|  |  | 133:12-16 |  |  |  |  |
|  |  | 134:4-10 |  |  |  |  |
|  |  | 134:13-19 |  |  |  |  |
|  |  | 135:2-5 |  |  |  |  |
|  |  | 136:6-18 |  |  |  |  |

| | | | | | |
|---|---|---|---|---|---|
| | | 136:21-137:2 | | | |
| | | 137:9-21 | | | |
| | | 138:1-5 | | | |
| | | 146:14-16 | | | |
| | | 146:20-147:3 | | | |
| | | 148:13-18 | | | |
| | | 149:11-16 | | | |
| | | 153:17-154:3 | | | |
| | | 156:20-157:18 | | | |
| | | 159:17-160:12 | | | |
| | | 165:2-14 | | | |
| | | 166:4-167:7 | | | |
| | | 167:15-19 | | | |
| | | 168:1-9 | | | |
| | | 172:18-173:5 | | | |
| | | 175:20-176:2 | | | |
| | | 182:7-10 | | | |
| | | 182:14-19 | | | |
| | | 183:7-10 | | | |
| | | 185:5-18 | | | |
| | | 187:3-11 | | | |
| | | 192:15-17 | | | |
| | | 193:5-8 | | | |
| | | 194:21-195:14 | | | |
| | | 195:17-196:5 | | | |
| | | 197:22-198:3 | | | |
| | | 199:13-17 | | | |
| | | 199:22-200:6 | | | |
| | | 201:13-202:6 | | | |
| | | 204:17-21 | | | |
| | | 205:11-20 | | | |
| | | 213:2-5 | | | |
| | | 213:11-17 | | | |
| | | 214:21-215:1 | | | |
| | | 215:6-216:1 | | | |
| | | 216:4-8 | | | |
| | | 216:10-217:3 | | | |
| | | 217:11-14 | | | |
| | | 219:13-20 | | | |
| | | 219:22-220:5 | | | |
| | | 231:11-20 | | | |
| | | 233:16-234:5 | | | |
| | | 235:5-9 | | | |
| | | 235:13-19 | | | |
| | | 236:12-14 | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 238:3-6 | | | | |
| | | 242:13-15 | | | | |
| | | 246:1-5 | | | | |
| | | 246:11-16 | | | | |
| | | 247:5-7 | | | | |
| | | 247:20-248:21 | | | | |
| | | 252:12-19 | | | | |
| | | | | | | |
| Slobod, Jack D. | 1/17/2008 | 274:6-15 | | | | |
| | | 278:12-16 | | | | |
| | | 278:20-279:5 | | | | |
| | | 281:5-9 | | | | |
| | | 287:9-11 | | | | |
| | | 296:1-4 | | | | |
| | | 296:8-17 | | | | |
| | | 296:20-21 | | | | |
| | | 297:1-2 | | | | |
| | | 306:13-18 | | | | |
| | | 308:14-21 | | | | |
| | | 311:6-10 | | | | |
| | | 311:16-22 | | | | |
| | | 312:20-313:2 | | | | |
| | | 313:8-17 | | | | |
| | | 314:10-15 | | | | |
| | | 316:16-18 | | | | |
| | | 320:1-4 | | | | |
| | | 320:8-10 | | | | |
| | | 320:15-19 | | | | |
| | | 329:11-15 | | | | |
| | | 329:19-331:7 | | | | |
| | | 332:11-15 | | | | |
| | | 332:21-333:5 | | | | |
| | | 334:19-335:3 | | | | |
| | | 335:5-11 | | | | |
| | | 335:13-336:3 | | | | |
| | | 339:4-9 | | | | |
| | | 339-17-20 | | | | |
| | | 340:21-341:4 | | | | |
| | | 346:11-15 | | | | |
| | | 346:22-347:1 | | | | |
| | | 347:7-9 | | | | |
| | | 348:7-11 | | | | |
| | | 348:16-18 | | | | |
| | | 349:5-8 | | | | |
| | | 349:11-16 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 353:16-17 | | | | |
| | | 355:5-17 | | | | |
| | | 355:19-2 | | | | |
| | | 366:8-11 | | | | |
| | | 366:19-21 | | | | |
| | | 367:1-6 | | | | |
| | | | | | | |
| Turner, Simon | 1/8/08 | 5:2-4 | | | | |
| | | 5:16-18 | | | | |
| | | 18:21-19:11 | | | | |
| | | 34:12-15 | | | | |
| | | 34:17-22 | | | | |
| | | 35:15-36:8 | | | | |
| | | 36:13-37:4 | | | | |
| | | 37:11-40:5 | | | | |
| | | 43:17-22 | | | . | |
| | | 51:15-52:5 | | | | |
| | | 53:8-57:11 | | | | |
| | | 61:19-32:20 | | | | |
| | | 64:25-65:11 | | | | |
| | | 66:24-67:9 | | | | |
| | | 67:23-68:12 | | | | |
| | | 68:13-72:6 | | | | |
| | | 72:7-72:19 | | | | |
| | | 73:7-73:15 | | | | |
| | | 73:19-74:20 | | | | |
| | | 74:24-77:12 | | | | |
| | | 80:11-82:10 | | | | |
| | | 84:9-85:11 | | | | |
| | | 86:18-88:4 | | | | |
| | | 89:17-21 | | | | |
| | | 97:8-100:16 | | | | |
| | | 100:17-19 | | | | |
| | | 101:18-102:11 | | | | |
| | | 102:14-103:16 | | | | |
| | | 104:12-105:3 | | | | |
| | | 123:8-14 | | | | |
| | | 129:13-130:1 | | | | |
| | | 130:9-14 | | | | |
| | | | | | | |
| Van der meer, Jan | 1/21/08 | 6:4-14 | | | | |
| | | 74:15-76:8 | | | | |
| | | 153:3-23 | | | | |
| | | | | | | |
| Van der meer, Jan | 1/22/08 | 194:6-13 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 260:13-19 | | | | |
| | | 262:6-9 | | | | |
| | | 290:22-291:10 | | | | |
| | | 291:17-292:14 | | | | |
| | | 293:10-13 | | | | |
| | | 294:6-20 | | | | |
| | | 311:3-313:2 | | | | |
| | | 314:4-12 | | | | |
| | | | | | | |
| Vogel, Peter | 1/19/08 | 17:2-5 | | | | |
| | | 18:4-7 | | | | |
| | | 18:9-16 | | | | |
| | | 19:15 | | | | |
| | | 19:18-20:4 | | | | |
| | | 20:7-8 | | | | |
| | | 21:17-21 | | | | |
| | | 21:24-22:5 | | | | |
| | | 22:7-11 | | | | |
| | | 22:14-15 | | | | |
| | | 23:10-12 | | | | |
| | | 24:21-25:1 | | | | |
| | | 25:12-14 | | | | |
| | | 25:17-19 | | | | |
| | | 26:16-19 | | | | |
| | | 26:21-24 | | | | |
| | | 27:2-12 | | | | |
| | | 31:21-23 | | | | |
| | | 32:9-16 | | | | |
| | | 32:18-21 | | | | |
| | | 32:24-33:4 | | | | |
| | | 38:15-24 | | | | |
| | | 39:24-40:1 | | | | |
| | | 40:3-9 | | | | |
| | | 53:10-21 | | | | |
| | | 53:23-24 | | | | |
| | | 54:2-3 | | | | |
| | | 54:6 | | | | |
| | | 55:12-15 | | | | |
| | | 64:1-65:9 | | | | |
| | | 76:24-77:3 | | | | |
| | | 77:6-8 | | | | |
| | | 96:12-15 | | | | |
| | | 96:17 | | | | |
| | | 106:13-15 | | | | |
| | | 106:17-19 | | | | |

53

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 110:16-18 | | | | |
| | | 110:21-111:2 | | | | |
| | | 112:20-113:8 | | | | |
| | | 119:23-24 | | | | |
| | | 120:5-6 | | | | |
| | | 120:8-19 | | | | |
| | | 142:21-143:2 | | | | |
| | | 147:14-148:10 | | | | |
| | | 157:23-159:11 | | | | |
| | | 160:7-23 | | | | |
| | | 162:21-163:3 | | | | |
| | | 164:8-165:1 | | | | |
| | | 165:21-166:20 | | | | |
| | | 167:13-16 | | | | |
| | | 168:10-169:6 | | | | |
| | | 184:21-185:15 | | | | |
| | | 190:13-16 | | | | |
| | | 193:7-10 | | | | |
| | | 193:13-14 | | | | |
| | | 193:15-18 | | | | |
| | | 193:20-22 | | | | |
| | | 193:24-194:7 | | | | |
| | | 195:5-6 | | | | |
| | | 195:9-12 | | | | |
| | | 198:10-14 | | | | |
| | | 198:17-199:2 | | | | |
| | | 199:4-6 | | | | |
| | | 199:9-12 | | | | |
| | | 200:19-23 | | | | |
| | | 201:2-6 | | | | |
| | | 201:8-12 | | | | |
| | | 201:15-22 | | | | |
| | | 201:15-22 | | | | |
| | | 202:9-15 | | | | |
| | | 202:17-18 | | | | |
| | | 202:20-22 | | | | |
| | | 208:22-209:2 | | | | |
| | | 209:5-14 | | | | |
| | | 211:13-15 | | | | |
| | | 211:18-23 | | | | |
| | | 212:1-2 | | | | |
| | | 212:5-19 | | | | |
| | | 216:17-20 | | | | |
| | | 217:19-218:8 | | | | |
| | | 218:19-219:6 | | | | |

| | | 225:3-13 | | | | |
|---|---|---|---|---|---|---|
| | | 230:24-231:7 | | | | |
| | | 261:15-17 | | | | |
| | | 262:3-263:5 | | | | |
| | | 264:21-24 | | | | |
| | | 265:3-8 | | | | |
| | | 267:3-5 | | | | |
| | | 267:9-10 | | | | |
| | | 267:12-13 | | | | |
| | | 267:15-23 | | | | |
| | | 268:22-24 | | | | |
| | | 269:2 | | | | |
| | | 269:5-8 | | | | |
| | | 269:12-19 | | | | |
| | | 269:21-270:4 | | | | |
| | | 270:22-271:4 | | | | |
| | | 278:24-279:2 | | | | |
| | | 279:5-8 | | | | |
| | | 280:13-15 | | | | |
| | | 280:18 | | | | |
| | | 281:12-15 | | | | |
| | | 282:12 | | | | |
| | | 283:10-285:5 | | | | |
| | | 285:7 | | | | |
| | | 291:18-22 | | | | |
| | | 292:1 | | | | |
| | | 293:8-11 | | | | |
| | | 293:13-23 | | | | |
| | | 298:18-23 | | | | |
| | | 299:13-16 | | | | |
| | | 325:7-8 | | | | |
| | | 325:11-12 | | | | |

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT G:**
**ITEMIZED STATEMENT OF SPECIAL DAMAGES**

**I.      PHILIPS' STATEMENT**

Philips asserts that Kodak's infringement has been, and continues to be, willful. As such, Philips seeks enhanced damages. Philips has also requested a finding that this is an exceptional case and is seeking an award of its attorneys' fees and costs. Philips further requests an award of pre-judgment interest.

**II.     KODAK'S STATEMENT**

Kodak asserts counterclaims based on fraud, negligent misrepresentation and deceptive trade practices under Delaware state law. As such, Kodak seeks compensatory damages in addition to punitive damages in connection with its fraud and negligent misrepresentation claims. Kodak also seeks treble damages in connection with its deceptive trade practices claim. Kodak requests a finding that this is an exceptional case and seeks an award of its attorney's fees and costs pursuant to 35 U.S.C. § 285. Kodak further requests an award of pre-judgment interest.

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>EASTMAN KODAK COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 06-251 (GMS)

**EXHIBIT H:**
**JOINT STATEMENT OF WAIVERS OF CLAIMS AND DEFENSES**

**I.    PHILIPS' STATEMENT**

Philips has not abandoned or waived any of its claims or defenses.

**II.    KODAK'S STATEMENT**

Kodak waives the following defenses:

- First Defense (Failure to State a Claim)

- Sixth Defense (Patent Exhaustion)

- Tenth Defense (Lack of Standing)

# EXHIBIT I1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-251 (GMS) |
| EASTMAN KODAK COMPANY, | ) | |
| Defendant. | ) | |

**EXHIBIT I1:**
**TRIAL BRIEF OF PLAINTIFF U.S. PHILIPS CORPORATION**

Plaintiff U.S. Philips Corporation ("Philips") submits its trial brief as of March 3, 2008.

Philips reserves the right to submit additions and revisions to its trial brief after meeting and

conferring with defendant Eastman Kodak Company ("Kodak") on outstanding trial management

issues, after reviewing defendant's trial brief, and after receiving the Court's rulings on the

parties' respective motions *in limine*.

*Of counsel:*

Thomas W. Winland
Steven M. Anzalone
Frank A. Decosta III
Kenneth M. Frankel
Joyce Craig
Matthew Levy
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Ave, N.W.
Washington, D.C.  20001
(202) 408-4000

March 3, 2008

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.    NATURE OF THE CASE ...................................................................................1

II.   CONTESTED FACTS TO BE ESTABLISHED AT TRIAL ...........................4

III.  PHILIPS' THEORY OF LIABILITY .............................................................4

    A.    Infringement .................................................................................................4

        1.    Claim Construction of the Asserted Claims ....................................4

        2.    Infringement of the Asserted Claims .............................................4

        3.    Inducement and Contributory Infringement ..................................5

    B.    Willfulness ....................................................................................................5

IV.   PHILIPS' THEORY OF DAMAGES ...........................................................6

V.    DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS ...................8

    A.    Non-Infringement (2d Aff. Def.; 1st Cclm.) .............................................8

    B.    Invalidity (3d Aff. Def.; 2d Cclm.) ...........................................................8

    C.    Defenses and Counterclaims Based on Development of JPEG Standard ...............9

        1.    Equitable Estoppel (4th Aff. Def.; 3d Cclm.) .............................11

        2.    Waiver (7th Aff. Def.) ...................................................................11

        3.    Implied License (4th Cclm.) ..........................................................12

        4.    Unclean Hands (8th Aff. Def.) ......................................................12

        5.    Fraud (6th Cclm.), Negligent Misrepresentation (7th Cclm.), and Deceptive Trade Practices, Del. Code Ann. tit. 6, § 2532 (5th Cclm.) ................................................................................................12

    D.    Laches (5th Aff. Def.) ..............................................................................14

    E.    Prosecution History Estoppel (9th Aff. Def.) .........................................15

    F.    Patent Marking (11th Aff. Def.) ..............................................................15

    G.    Limitation on Damages (12th Aff. Def.) ..................................................15

VI.    PHILIPS' ANTICIPATED MOTIONS FOR A DIRECTED VERDICT.........................15

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) ................ 11, 14

*Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001) ..................... 12

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) ...................... 5

*Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306 (Fed. Cir. 2002) ............................. 8

*Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119 (3d Cir. 1999) ............................. 14

*Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252 (D. Del. 2006) ................................. 13

*De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236 (1927) ........................ 12

*Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062 (Fed. Cir. 1987) ....................... 7, 15

*DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) ............................. 5, 7

*Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298 (Fed. Cir. 2001) ......................... 8

*Ecolab, Inc., v. Envirochem, Inc.*, 264 F.3d 1358 (Fed. Cir. 2001) ........................... 11

*Gasser Chair Co. v. Infanti Chair Mfg.*, 60 F.3d 770 (Fed. Cir. 1995) ....................... 11

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ...... 7

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ............................................... 8

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983) .................... 7, 15

*Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290 (Fed. Cir. 1992) ..................... 15

*H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129 (Del. 2003) ................................. 13

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305 (D. Del. 2005) ...... 12

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998) ............... 14

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) ................................... 6

*Jurgens v. CBK Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996) ........................................ 6

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933)........................................11, 12

*Lucent Techs., Inc. v. Newbridge Networks, Corp.*, 168 F. Supp. 2d 181 (D. Del. 2001)..............5

*Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*, Civ. A. No. 97-712-SLR,

    2000 U.S. DIST. LEXIS 14651 (D. Del. Sept. 29, 2000) ........................................................14

*Ortho Pharm. Corp. v. Smith*, 959 F.2d 936 (Fed. Cir. 1992) ........................................................8

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) .......................7

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ...........14

*Qualcomm Inc. v. Broadcom Corp.*, No. 05-CV-1958-B,

    2007 U.S. Dist. LEXIS 28211 (S.D. Cal. Mar. 21, 2007)...................................................11

*Rambus, Inc., v. Infineon Tech., AG*, 318 F.3d 1081 (Fed. Cir. 2003) ...................................11, 14

*Rixon, Inc. v. Racal-Milgo, Inc.*, 551 F. Supp. 163 (D. Del. 1982) ..............................................12

*Roberts v. Am. Warranty*, 514 A.2d 1132 (Del. Super. Ct. 1986)................................................13

*Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003)......................................8

*Schockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001) ...........................................................11

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069 (Del. 1983) .....................................................12

*Stickle v. Heublein, Inc.*, 716 F.2d 1550 (Fed. Cir. 1983).............................................................7

*Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362 (D. Del. 2005)............................13

*Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004) ......................................8

*Wang Labs. v. Mitsubishi Elecs. Am.*, 103 F.3d 1571 (Fed. Cir. 1997).......................................12

**Statutes**

35 U.S.C. § 102 ...............................................................................................................................8

35 U.S.C. § 103 ...............................................................................................................................8

35 U.S.C. § 112 .........................................................................................................................8, 15

35 U.S.C. § 271(b) ..................................................................................................5

35 U.S.C. § 282 ......................................................................................................8

35 U.S.C. § 284 ..................................................................................................6, 8

35 U.S.C. § 285 ..................................................................................................6, 8

35 U.S.C. § 286 ....................................................................................................15

35 U.S.C. § 287 ....................................................................................................15

35 U.S.C. § 287(a) ..................................................................................................7

Del. Code Ann. tit. 10, § 8106 ..............................................................................11

Del. Code Ann. tit. 6, § 2532 ................................................................................13

I.    **NATURE OF THE CASE**

This case is about the invention forming the core of the most widely known and practiced technique for saving digital images, such as photos. Philips' patented technique is part of the JPEG standard and is used to compress data into smaller files that take up less memory and transmit more quickly. The marketplace and two major standards organizations adopted this invention as the preferred method for coding still image data.

Dr. Peter Vogel, a scientist at a Philips' subsidiary, invented his "Two-Dimensional Variable Length Coding" ("2D-VLC") method in 1986 as a more effective way to compress data for digital images, including the still images produced by digital cameras. He claimed his invention in U.S. Patent No. 4,901,075, which is the patent-in-suit and claims priority from a set of patent applications filed in Germany beginning in September 1986. The patent expired on September 11, 2007.

Dr. Vogel based his 2D-VLC method on his insight that certain combinations of numbers used to code data for images occur more frequently than others—long runs of zeros were typically followed by smaller numbers, while short runs of zeros were typically followed by larger numbers. Employing his discovery, Dr. Vogel invented a variable length coding method in which two occurrences—runs of zeros and the immediately following number--are both coded together as one statistical event, i.e., Two-Dimensional Variable Length Coding.

In 1986, Dr. Vogel participated in a working group in Europe, referred to as the COST 211bis Simulation Subgroup, that sought to develop a coding system for picture phones and videoconferencing. Dr. Vogel presented his 2D-VLC method to the Subgroup. Philips supported inclusion of this technique in the H.261 and MPEG standards, which apply to video-conferencing and moving pictures, respectively, and the standards organizations included it.

Without a proposal by Philips and unknown to Philips at the time, Dr. Vogel's 2D-VLC

1

method also was included in a coding standard for the type of digital images produced by digital cameras and other still imaging products, such as image scanners. In 1986, groups from two international standards organization, ISO/IEC and CCITT, collaborated in a joint group (Joint Photographic Experts Group, i.e., "JPEG") to establish standards for the compression of these types of images. They considered at least 12 proposed methods and picked the one with the best quality. The winning method included an implementation of Dr. Vogel's 2D-VLC method.

The team that proposed this implementation to the JPEG group had been participating in a European project referred to as ESPRIT 563-PICA. People on this team may have learned about Dr. Vogel's 2D-VLC method because they also were in the COST 211bis Simulation Subgroup. But no one on the proposing team attributed the idea to Dr. Vogel.

Neither Dr. Vogel nor anyone else from Philips made any technology proposals to the JPEG group. Indeed, Philips' employees attended only a few early JPEG group meetings and did not know at the time that the winning proposal implemented Dr. Vogel's ideas.

In January 1988, the JPEG group effectively chose 2D-VLC as the encoding technique for what would become the core JPEG "Baseline" standard for compressing image data. Four years later in 1992, it was adopted by one of the two standards organizations (CCITT). Two years later in 1994, it was adopted by the other organization (ISO/IEC).

Since then, digital still cameras have universally implemented the JPEG Baseline method. For example, every Kodak digital camera that has been charged with infringement incorporates the 2D-VLC method set forth in the JPEG Baseline standard. The JPEG Baseline with 2D-VLC has been an overwhelming commercial success for coding multilevel still images, such as photos, in spite of attempts to promote other file formats. Kodak alone obtained over █

**REDACTED**

████ in revenues from products and services sold in the U.S. that perform the patented 2D-

VLC method from 2000 through the patent's expiration in September 2007. Other file formats for digital images have been available, but none have been able to replace the JPEG Baseline standard as the most popular format for digital still pictures.

Kodak, traditionally dominant in film cameras, adopted digital imaging more slowly that many of its camera competitors. While Kodak claims to have marketed one digital camera offering a JPEG standard option at least as early as 1992, substantial sales of its JPEG format digital still cameras began around 2000.

In December 2000, Philips brought its worldwide patent rights to the 2D-VLC method to Kodak's attention. Philips offered to license everyone in the industry, including Kodak, under reasonable terms and conditions. Kodak, however, continued to make and sell digital cameras and other imaging products and services that implement the patented method without paying for its use of Dr. Vogel's invention. Philips had to bring this lawsuit in April 2006 because Kodak refused to take a license, even though most of Kodak's competitors have taken licenses and paid for their use of the invention. Philips has received over **REDACTED** in revenue from its JPEG licensing program, demonstrating the importance of Dr. Vogel's invention.

After Philips offered to negotiate a license in December 2000, Kodak strung out the licensing negotiations. While taking its time in negotiations, Kodak continued to design and market JPEG products that used Philips' patented 2D-VLC method. Kodak greatly profited from its unsanctioned use of this important patented technology.

Philips' infringement case is straightforward in view of the JPEG Baseline standard, as is Philips' claim that Kodak willfully infringed. This Court's January 25, 2008 Order Construing the Terms of the '075 Patent rejected Kodak's position on 25 of 26 claim construction issues. The incorporation of the patented 2D-VLC method into the standards for JPEG,

videoconferencing, and MPEG and Philips' successful patent licensing program demonstrate the importance, acceptance, awareness, and applicability of Philips' 2D-VLC patented technology.

## II.    CONTESTED FACTS TO BE ESTABLISHED AT TRIAL

The contested facts Philips will establish at trial are set forth in Exhibit B, as well as in Exhibit J1 (Plaintiff Philips' Proposed Findings of Fact and Conclusions of Law) to the final Joint Proposed Pretrial Order.

## III.   PHILIPS' THEORY OF LIABILITY

### A.   Infringement

#### 1.    Claim Construction of the Asserted Claims

On January 25, 2008, the Court construed the claims of the '075 patent as a matter of law. The Court rejected Kodak's proposal for virtually all of the 26 claim interpretation issues on which Kodak took a position (see ¶¶ 1-19 and 21-26 of the Court's January 25, 2008 Order; the Court accepted parts of Philips' proposal in ¶ 22). While the Court accepted Kodak's proposed construction for the phrase "video signal," which appears only in the preamble of independent claim 3 (¶20 of January 25, 2008 Order), that construction has no bearing on independent claim 8, which does not contain any "video signal" limitation. As a result, almost all of Kodak's infringement defenses are without support in the claim language. Moreover, Philips asserts infringement of claim 3 by digital still cameras, for the reasons set forth in the Expert Report of Professor Bernd Girod Regarding Infringement.

#### 2.    Infringement of the Asserted Claims

The grounds for finding direct infringement by Kodak are detailed in the Expert Report of Professor Bernd Girod Regarding Infringement.

The claims Philips asserts—claims 3, 4, 7, 8, and 11—are method claims directed to 2D-VLC of digital images. Each limitation in the claims is met, either literally or under the doctrine

4

of equivalents, by the JPEG Baseline encoding method of the JPEG Standard.

Because each of Kodak's accused products and services conforms to the JPEG Baseline standard, proof of infringement is straightforward. The infringement issues are narrow because no dispute exists regarding how Kodak implements image encoding. *See Lucent Techs. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 223-24 (D. Del. 2001).

Kodak based its noninfringement positions principally on claim constructions that this Court rejected. If Kodak disputes infringement on these or other grounds, documentary evidence and fact and expert testimony will resolve these issues in Philips' favor.

### 3.     Inducement and Contributory Infringement

Likewise, the grounds for finding indirect infringement by Kodak are detailed in the Expert Report of Professor Bernd Girod Regarding Infringement.

Philips will establish that Kodak induced infringement by providing aid, encouragement, or instructions to its suppliers, customers, end users, or others to use the accused Kodak products and services to perform JPEG Baseline encoding. Kodak provided that help with the knowledge and intent that others would directly infringe Philips' patent. 35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) (en banc); *Lucent*, 168 F. Supp. 2d 181.

Philips also will establish that Kodak contributed to infringement by making, having made, selling, offering for sale, or importing components that are not staple articles of commerce and that provide functionality that is a material part of the claimed invention. Kodak did so with knowledge that components of its products and services were especially made or adapted for use in infringing the '075 patent. 35 U.S.C. § 271(c); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964).

### B.     Willfulness

Philips will establish that Kodak acted in complete disregard of Philips' 2D-VLC patent

rights. Kodak knew about these patent rights and knew or should have known of the objectively

high likelihood that its JPEG products and services would infringe. *In re Seagate Tech., LLC,*

497 F.3d 1360, 1371 (Fed. Cir. 2007).

By at least December 2000, Kodak learned that Philips had worldwide patent rights

covering JPEG encoding technology. Kodak also learned that Philips was actively licensing the

'075 patent and its foreign counterparts. Direct negotiations relating to the '075 patent began in

2002, but Kodak still refused to obtain any license when Philips filed suit. Meanwhile, Kodak

developed, introduced, and sold over ▩▩▩▩ **REDACTED** of products and services in the U.S. from 2000 to

patent expiration specifically designed to encode image data by practicing Philips' patented 2D-

VLC method.

Philips will establish that, under the totality of the circumstances, Kodak engaged in

willful infringement of the '075 patent, warranting a finding that this case is exceptional under

35 U.S.C. § 285 and an award of enhanced damages under 35 U.S.C. § 284. *Jurgens v. CBK

Ltd.,* 80 F.3d 1566, 1570 (Fed. Cir. 1996).

## IV.    PHILIPS' THEORY OF DAMAGES

The grounds for awarding damages to Philips are set forth in detail in the Expert Report

on Damages of Mark A. Peterson.

Philips is entitled to damages "adequate to compensate for the infringement, but in no

event less than a reasonable royalty . . . ." 35 U.S.C. § 284. Philips seeks a reasonable royalty

that, for most applications, would be the greater of ▩▩▩ **REDACTED** or ▩▩▩ per infringing product. These

rates correspond to rates Philips actually proposed in its original license offers to suppliers of

digital still cameras. Licensing has been Philips' principal way of recovering its substantial

investments in research and development. Instead of offering exclusive licenses or strategically

using its patents to exclude competitors, Philips has made its 2D-VLC patent available at

reasonable rates.

Kodak may argue that it is only liable for damages based on rates below those originally proposed by Philips. But, unlike most of its competitors in the digital camera field, Kodak chose not to accept any of Philips' offers. Instead, Kodak forced Philips into litigation and thus should not be entitled to pay royalties at the same rates as licensees who entered agreements without litigating. *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158 (6th Cir. 1978) ("[T]he infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid."), *adopted, Stickle v. Heublein*, 716 F.2d 1550, 1563 (Fed. Cir. 1983).

Philips is entitled to damages beginning April 18, 2000 (six years prior to filing of the lawsuit) until the '075 patent expired on September 11, 2007. The marking provisions of 35 U.S.C. § 287(a) do not apply in this case, because Philips asserts only method claims and never asserted that apparatus claims 1, 2, or 12 cover any licensed products. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed. Cir. 1983); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

Philips will support its claim for damages with fact and expert testimony and documentary evidence directed toward the factors considered in calculating a reasonable royalty enumerated in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), and the calculation of the amount of damages. If any doubts exist about the size of the royalty base of infringing JPEG products, and these doubts can be attributed to Kodak's failure to provide discovery or to keep adequate records, those doubts should be resolved in Philips' favor. *DSU Medical Corp.* 471 F.3d at 1309.

Philips also is entitled to receive prejudgment interest as part of its damages, and will

support its claim for interest with fact and expert testimony and documentary evidence. Philips also will seek enhancement of its damages under 35 U.S.C. § 284, due to Kodak's willful infringement. Finally, Philips will ask this Court to find this case exceptional under 35 U.S.C. § 285 and award Philips its attorneys' fees.

## V.  DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

### A.    Non-Infringement (2d Aff. Def.; 1st Cclm.)

Kodak infringes for the reasons discussed above.

### B.    Invalidity (3d Aff. Def.; 2d Cclm.)

Each claim in Philips' patent is presumed to be valid, and Kodak will be unable to rebut this presumption with clear and convincing evidence. 35 U.S.C. § 282; *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992). Specifically, Kodak will be unable to establish, by clear and convincing evidence, that any asserted claim is invalid under 35 U.S.C. §§ 102, 103, or 112. *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003); *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306 (Fed. Cir. 2002); *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001).

Kodak has based its invalidity positions on incorrect claim constructions that the Court has rejected. For example, paragraphs 21-22 of the Court's January 25, 2008, Order confirm that phrases in the preamble of the asserted claims that call "for transmission at a reduced" bit rate/bandwidth are not claim limitations. As a result, Kodak cannot maintain that these terms render the claims indefinite, and Philips will move for summary judgment on this defense. As another example, Kodak cannot, in view of paragraphs 1-3 of the Order, show that all claim limitations, including "coefficients" and "non-zero coefficient," are found in any references that qualify as prior art. To the extent Kodak is permitted to challenge validity on these or other

8

grounds, documentary evidence and fact and expert testimony will resolve these issues in Philips' favor.

### C.    Defenses and Counterclaims Based on Development of JPEG Standard

Kodak asserts defenses and counterclaims based on incorrect allegations that Philips violated a supposed obligation to disclose the '075 patent to standards-setting organizations that developed and adopted the JPEG standard.  In fact, Philips fully met its obligations to the organizations, as detailed in Plaintiff Philips' Proposed Findings of Fact and Conclusions of Law in Exhibit J1 to the final Joint Proposed Pretrial Order, and in the Rebuttal Expert Report Regarding Standards Issues by Dr. Timothy Schoechle.

Kodak asserts three false premises: (1) Philips was required to disclose its patent to the JPEG group; (2) by not disclosing, Philips led Kodak to believe that Philips had no patents covering the JPEG standard; and (3) had Philips disclosed its patent but not offered to license it for *free*, a different JPEG Baseline standard would have been adopted.

Kodak's first premise fails, because only those who proposed technology for the JPEG standard were required to disclose those patents they personally knew of that potentially covered their technology.  Philips, however, never proposed any technology for the JPEG standard.

Moreover, no evidence exists that any Philips' employees received the JPEG group's requests for disclosure in February 1989 or August 1991; they attended only three of 24 JPEG group meetings and stopped attending after May 1988.  They focused on other areas (MPEG and videoconferencing), where they proposed technologies for those standards and, thus, disclosed foreign patents corresponding to the '075 patent and provided the required commitment to provide licenses on reasonable and non-discriminatory ("RAND") terms.  Philips would have done the same in the JPEG group if Philips had proposed technology for the JPEG standard.

Contrary to Kodak's arguments, attendance at some plenary sessions of the JPEG group's

parent committee created no duty to disclose the '075 patent. Nor did it put attendees on notice to disclose the '075 patent, since no technical details were discussed. Moreover, none of Philips' employees attending JPEG group sessions knew about the '075 patent application or foreign counterparts when they attended, and no evidence exists that those attending plenary sessions knew about the patent coverage of the JPEG standard when they attended.

Kodak's second premise fails, because JPEG meeting participants—including Kodak's employees—were warned that additional patents might exist beyond the disclosures, the published standards carried this same warning. Moreover, the requests for patent disclosures sought only the personal knowledge of individual participants, not a search of their employers' files. In addition, the obligation was not strictly observed, for no disclosures or RAND license commitments came from several proposers.

Kodak's third premise fails as well, because the JPEG group chose the technology for the JPEG Baseline in January 1988 solely on the ground that it was the best option evaluated, not because it was royalty-free. Moreover, *before* the JPEG group chose the encoding technique, the technique's proposer told the group that it would not offer a free license. Well *after* choosing the 2D-VLC technique, the JPEG group's chairman requested disclosures in 1989 and again in 1991. Moreover, its parent committee expressly instructed the JPEG group *not* to chose technology based on patents, if a license on RAND terms were offered. The JPEG group would have violated its parent's instructions if it had switched from the best option because it was not free. Moreover, the next best alternatives also were not free. And, even if Philips had brought the '075 patent to the JPEG group's attention in August 1991, the group would not have switched to a different technology, because it had invested much effort in the intervening time in refining and documenting the proposed standard, which was to be released for voting in a few months.

10

In addition, Kodak's willful infringement should bar its equitable defenses and counterclaim because Kodak has acted with unclean hands. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 243-46 (1933); *Schockley v. Arcan, Inc.*, 248 F.3d 1349, 1361 (Fed. Cir. 2001). Finally, Kodak's state law claims of fraud, negligent misrepresentation, and deceptive trade practices fail to meet the required elements of proof and are barred by the statute of limitations, Del. Code Ann. tit. 10, § 8106, and Philips will move for summary judgment on its statute of limitations defense.

### 1. Equitable Estoppel (4th Aff. Def.; 3d Cclm.)

Kodak will not be able to establish estoppel by a preponderance of the evidence. Philips had no duty to disclose the '075 patent to the JPEG group because it proposed no technology for the JPEG standard. *See Rambus, Inc., v. Infineon Tech., AG*, 318 F.3d 1081, 1102 (Fed. Cir. 2003). Thus, Philips engaged in no misleading conduct that led Kodak reasonably to infer that Philips did not have or intend to enforce a patent covering the JPEG standard. Moreover, Kodak did not rely on the lack of such a disclosure in developing its digital camera business, and would not be materially prejudiced by the lack of such a disclosure if Philips is permitted to proceed with its infringement claim. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028, 1041-43 (Fed. Cir. 1992) (en banc); *Gasser Chair Co. v. Infanti Chair Mfg.*, 60 F.3d 770, 776 (Fed. Cir. 1995); *Ecolab, Inc., v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed. Cir. 2001).

### 2. Waiver (7th Aff. Def.)

Kodak will not be able to establish by clear and convincing evidence that Philips waived its right to assert the '075 patent against Kodak. No waiver would arise on equitable estoppel grounds, as discussed above. Moreover, Philips did not, with full knowledge of the material facts, intentionally relinquish its right to enforce the '075 patent or act so inconsistently with its right to enforce the '075 patent so as to induce a reasonable belief that it had relinquished that

11

right. *Qualcomm Inc. v. Broadcom Corp.*, No. 05-CV-1958-B, 2007 U.S. Dist. LEXIS 28211, at

*25-26, 32-33 (S.D. Cal. Mar. 21, 2007).

### 3.    Implied License (4th Cclm.)

Kodak will not be able to establish by a preponderance of the evidence that Philips

engaged in any conduct exhibited to Kodak from which Kodak could properly infer that Philips

consented to Kodak's use of the '075 patent. *De Forest Radio Tel. & Tel. Co. v. United States*,

273 U.S. 236, 241 (1927); *Wang Labs. v. Mitsubishi Elecs. Am.*, 103 F.3d 1571, 1580-81 (Fed.

Cir. 1997). Moreover, no implied license would arise on equitable estoppel grounds, as

discussed above.

### 4.    Unclean Hands (8th Aff. Def.)

Kodak will not be able to establish by clear and convincing evidence that Philips had

unclean hands. Philips complied with the standard-setting organizations' rules in connection

with the JPEG standard, and did not engage in any unconscionable conduct, including any

having an "immediate and necessary relation" to the relief that Philips seeks here. *Keystone*

*Driller*, 290 U.S. at 245; *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1374, 1376

(Fed. Cir. 2001); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305,

310 (D. Del. 2005); *Rixon, Inc. v. Racal-Milgo, Inc.*, 551 F. Supp. 163, 171 (D. Del. 1982).

### 5.    Fraud (6th Cclm.), Negligent Misrepresentation (7th Cclm.), and Deceptive Trade Practices, Del. Code Ann. tit. 6, § 2532 (5th Cclm.)

Kodak will not be able to establish by a preponderance of the evidence that Philips

committed fraud. Kodak does not allege that Philips made any false representations of fact, but

rather that Philips did not disclose the '075 patent to the JPEG group. Philips did not

deliberately conceal material facts from the JPEG group, act with reckless indifference to the

truth, or intend to induce Kodak to act. Kodak neither took any action in justifiable reliance on

the lack of a disclosure by Philips to the JPEG group, nor was damaged as a result of any supposed reliance. *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (stating elements); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259 (D. Del. 2006) (stating elements); *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 389 (D. Del. 2005) (stating burden of proof).

Kodak will not be able to establish by a preponderance of the evidence that Philips made any negligent misrepresentation. Kodak alleges no affirmative misrepresentation, but rather that Philips did not disclose the '075 patent to the JPEG group. Philips, however, supplied no false information and exercised reasonable care in its dealings with the JPEG group. Moreover, Kodak could not justifiably rely on any information communicated by Philips to the JPEG group to conclude that Philips had no patent potentially applicable to the JPEG standard, and Kodak suffered no pecuniary loss as a result of any such communication. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n. 44 (Del. 2003) (stating elements).

Kodak will not be able to establish by a preponderance of the evidence that Philips violated Delaware's Deceptive Trade Practices Act. Del. Code Ann. tit. 6, § 2532; *Roberts v. Am. Warranty*, 514 A.2d 1132, 1134 (Del. Super. Ct. 1986). First, the law is a trademark and passing off statute and does not apply to conduct that Kodak alleges violated the statute— causing confusion or disparagement by bringing suit. Second, Philips' not disclosing the patent to the JPEG group or raising the patent with Kodak earlier did not cause any likelihood of misunderstanding as to the validity or enforceability of the '075 patent. Third, Philips did not disparage Kodak by bringing this suit. Fourth, Kodak does not face any prospect of being harmed by such conduct that would warrant an injunction. Del. Code Ann. tit. 6, § 2532(a).

Silence alone cannot support a claim for fraud, negligent misrepresentation, or a

deceptive trade practice without a duty to speak, and a standards-setting organization's policy that does not define clearly what, when, how, and to whom the members must disclose does not provide a firm basis for the necessary disclosure duty. *See Rambus v. Infineon*, 318 F.3d 1081, 1096, 1102 (Fed. Cir. 2003). Kodak will not be able to establish that Philips violated any disclosure duty. In addition, Kodak's claims that Philips damaged Kodak by filing its Complaint and pursuing this litigation are preempted by the federal patent law, because Philips has done so in good faith. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336-37 (Fed. Cir. 1998); *Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*, Civ. A. No. 97-712-SLR, 2000 U.S. DIST. LEXIS 14651, at *22 (D. Del. Sept. 29, 2000). Moreover, Philips' actions are protected by the First Amendment because its claims are not objectively baseless and were not brought in an attempt to interfere directly with the business relationships of Kodak. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999).

### D.    Laches (5th Aff. Def.)

Kodak will be unable to establish laches on a product-by-product basis by a preponderance of the evidence. The time that passed until Philips sued was reasonable and excusable, especially in view of Philips' notice to Kodak in 2000, the licensing negotiations between the parties from 2002-2006, Philips' licensing negotiations with numerous camera and camera-phone manufacturers beginning in 2000, Philips' suits against others, and the relatively small size of the digital still camera market throughout the 1990s. Also, Kodak did not suffer material prejudice attributable to Philips' not bringing suit until 2006, because Kodak had to utilize the JPEG Baseline technique to compete in the digital camera market. Kodak also was not deprived of any material, non-cumulative evidence that it would have relied upon. *See A.C. Aukerman Co.*, 960 F.3d at 1028. Moreover, if, as Kodak contends, it believed the '075 patent to

be invalid, not infringed, or unenforceable, it did not rely on any lack of statements or delay in bringing suit by Philips when deciding to participate in the huge market for digital imaging products. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992).

### E.     Prosecution History Estoppel (9th Aff. Def.)

Prosecution history estoppel has already been considered and rejected by the Court in its January 25, 2008 Claim Construction Order.

### F.     Patent Marking (11th Aff. Def.)

The marking and notice requirements of 35 U.S.C. § 287 do not apply in this case, because Philips asserts only method claims and never asserted that apparatus claims 1, 2, or 12 cover any licensed products. *Hanson*, 718 F.2d at 1083; *Devices for Medicine*, 822 F.2d at 1066.

### G.     Limitation on Damages (12th Aff. Def.)

Philips seeks damages for six years prior to suit, as permitted by 35 U.S.C. § 286.

## VI.     PHILIPS' ANTICIPATED MOTIONS FOR A DIRECTED VERDICT

Based on the legal theories presented herein and subject to the evidence presented at trial, Philips anticipates moving for a directed verdict (or judgment as a matter of law) that no reasonable jury could find:

1  Non-infringement (either literally or under the doctrine of equivalents) of the '075 patent;
2  That the '075 patent is invalid over alleged prior art under theories of anticipation or obviousness;
3  That the '075 patent is invalid under 35 U.S.C. § 112 as indefinite; or
4  That Philips is liable under Kodak's state law claims of fraud, negligent misrepresentation, or deceptive trade practices.

Philips reserves the right to move for a directed verdict (or JMOL) on additional issues or theories that Kodak advances at trial depending on the evidence or lack thereof.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiff*

*Of Counsel:*

Thomas W. Winland
Steven M. Anzalone
Frank A. Decosta III
Kenneth M. Frankel
Joyce Craig
Matthew Levy
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave, N.W.
Washington, D.C.  20001
(202) 408-4000

Dated: March 3, 2008
188749.1

16

# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00251-GMS |
| v. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT I2:**
**TRIAL BRIEF OF DEFENDANT EASTMAN KODAK COMPANY**

Defendant Eastman Kodak Company ("Kodak") submits its trial brief as of March 3,

2008. Kodak reserves the right to submit additions and revisions to its trial brief for any reason

including without limitation after meeting and conferring with defendant Plaintiff U.S. Philips

Corporation ("Philips") and after receiving the Court's rulings on the parties' respective motions

*in limine.*

*Of counsel:*

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Francis DiGiovanni (#3189)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
e-mail: fdigiovanni@cblh.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

I.      NATURE OF THE CASE ............................................................................... 1

II.     CONTESTED FACTS TO BE ESTABLISHED AT TRIAL ........................... 3

III.    KODAK'S DEFENSES AND COUNTERCLAIMS ....................................... 3

    A.     Kodak Does Not Infringe the '075 Patent............................................ 3

    B.     The '075 Patent Is Invalid.................................................................... 6

    C.     Kodak Has Not Willfully Infringed the '075 Patent............................. 7

    D.     The '075 Patent Is Unenforceable Based on Equitable Estoppel, Waiver,
        and Implied License Resulting From Philips' Standard Setting Misconduct ........ 8

    E.     Philips Has Committed Fraud................................................................ 10

    F.     Negligent Misrepresentation ................................................................ 11

    G.     Deceptive Trace Practices — 6 Del. C. § 2532 et seq .......................... 11

    H.     Laches ................................................................................................... 12

    I.      Unclean Hands ...................................................................................... 13

IV.     KODAK'S THEORY OF DAMAGES .......................................................... 13

V.      KODAK'S ANTICIPATED MOTIONS FOR JUDGMENT AS A MATTER OF
    LAW ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.,*
  960 F.2d 1020 (Fed. Cir. 1992)..............................................................9, 16

*Cable Electric Prods. v. Genmark, Inc.,*
  770 F.2d 1015 (Fed. Cir. 1985).................................................................8

*Connell v. Sears, Roebuck & Co.,*
  722 F.2d 1542 (Fed. Cir. 1983)................................................................7

*Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.,*
  498 F. Supp. 2d 718 (D. Del. 2007)....................................................13, 14

*EDIX Media Group, Inc. v. Mahani,*
  2006 WL 3742595 (Del.Ch. Dec. 12, 2006)................................................12

*FAG (U.K.) Ltd. v. U.S.,*
  24 F. Supp. 2d 297 (C.I.T. 1998)..............................................................15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki,*
  535 U.S. 722 (2002)............................................................................5, 7

*Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers Inc.,*
  446 F.2d 295 (2d Cir. 1971) *cert. denied,* 404 U.S. 870 (1971)........................15

*Hall v. Aqua Queen Mfg., Inc.,*
  93 F.3d 1548 (Fed. Cir. 1996)..................................................................13

*In re Medical Wind Down Holdings III, Inc.,*
  332 B.R. 98 (Bkrtcy. D. Del. 2005)............................................................12

*In re Paulsen,*
  30 F.3d 1475 (Fed. Cir. 1994)...................................................................7

*In re Seagate Tech., LLC,*
  497 F.3d 1360 (Fed. Cir. 2007).............................................................8, 9

*Kearns v. Ford Motor Co.,*
  726 F. Supp. 159 (E.D. Mich. 1989)..........................................................15

*Moore North America, Inc. v. Poser Business Forms, Inc.,*
  2000 WL 1480992 (D. Del. Sept. 29, 2000)..................................................13

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Pennwalt Corp. v. Durand-Wayland, Inc.,*
833 F.2d 931 (Fed. Cir. 1987).................................................................4

*Princess Cruises, Inc. v. U.S.,*
397 F.3d 1358 (Fed. Cir. 2005)...........................................................14

*Rambus Inc. v. Infineon Technologies AG,*
318 F.3d 1081 (Fed. Cir. 2003).............................................................10

*Rite-Hite Corp. v. Kelley Co., Inc.,*
56 F.3d 1538 (Fed. Cir. 1995)................................................................15

*Stephenson v. Capano Development, Inc.,*
462 A.2d 1069 (Del. 1983) .............................................................11, 12

*Wanlass v. General Elec. Co.,*
148 F.3d 1334 (Fed. Cir. 1998)..............................................................14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
520 U.S. 17 (1997)..................................................................................4

## STATUTES

35 U.S.C. §102 ..........................................................................................7

35 U.S.C. § 103 .........................................................................................7

35 U.S.C. § 284 ....................................................................................14, 16

35 U.S.C. § 285 .......................................................................................16

35 U.S.C. § 286 .......................................................................................16

35 U.S.C. § 287 .......................................................................................16

## MISCELLANEOUS

6 Del. C. § 2532 .....................................................................................12

SD\1785682.1

## I.    NATURE OF THE CASE.

This lawsuit arises out of efforts by Philips to enforce a patent it now alleges covers the JPEG Standard for still image compression.  Although Philips' effort fails because the patent is invalid and not infringed, Philips' infringement claims in this lawsuit suffer from an even more fundamental defect because Philips failed to disclose U.S. Patent No. 4,901,075 during the JPEG standardization process despite having a duty to do so.  Philips' conduct renders the patent unenforceable and also constitutes fraud.

The JPEG Standard is an international standard that has played a key role in the rapid growth of the digital imaging industry over the past 15 years.  Since its formal adoption in 1992, hundreds of manufacturers worldwide have implemented the JPEG Standard in their products.  Although it is difficult to pinpoint the worldwide revenue for all products incorporating the JPEG Standard, it is in the many billions of dollars.  The widespread success of the JPEG Standard is largely the result of the universal understanding that it was and is an "open" standard, unencumbered by patents and free from royalty demands.

Philips' present claim that the '075 patent covers the JPEG Standard is directly at odds with its many years of conduct to the contrary.  Philips was a member and an active participant in the standard-setting organizations responsible for setting the JPEG Standard.  JPEG and its parent organizations are governed by specific policies that required its participants to disclose patents that they believed were relevant to the developing standard.  Despite these written policies, despite verbal and written requests to disclose related patents, and despite patent disclosures made by other participants, Philips never so much as hinted to the JPEG committees that the '075 patent might be relevant to JPEG.  Philips' silence misled other JPEG participants,

including Kodak, into believing that Philips did not have any patents that might be relevant to the standard.

Had Philips disclosed its current position regarding its patents during the standard-setting process, JPEG could have chosen one of the readily available alternative techniques for its standard. Similarly, had Philips disclosed its patent interests pursuant to the JPEG policies and made the excessive royalty demands it is now making, companies and entire industries would not have incorporated the JPEG Standard into their products. Instead, for nearly a decade after the JPEG Standard was published, Philips remained silent regarding the '075 patent. During that decade, industries and consumers worldwide became locked into the standard. To this day, despite asserting the patent against Kodak and others in various district courts throughout the United States, Philips has never disclosed the '075 patent to the relevant JPEG standards committees.

The evidence in this case establishes that Philips was well-aware of the '075 patent's purported applicability to JPEG during the standardization process. Indeed, the '075 patent's inventor, Peter Vogel, testified during his deposition that he prepared handwritten notes on a draft version of the JPEG Standard dated October 1991—one year before the JPEG Standard was first published. Dr. Vogel's handwritten notes specifically identify the '075 patent as applicable to the JPEG Standard. Dr. Vogel also testified that he ███████████████████

**REDACTED**

████████████████████████████████████████. Dr. Vogel's handwritten notes and testimony establish that Philips, its employees, and its lawyers were all alerted to the '075 patent's purported applicability to the JPEG Standard. Nevertheless, Philips chose to remain silent both during standardization and for the decade following.

Philips' silence was contrary to the patent disclosure policies of the standards committees in which it participated and the expectations of other members of the JPEG standards committees. One of those members is Kodak, who also participated in the JPEG standardization process. As a pioneer in digital photography, Kodak had a significant interest in developing an international standard for still image compression. Like other members of the JPEG committees, Kodak relied on Philips' misleading silence during the JPEG standardization process and spent billions of dollars researching and developing products that implement the JPEG Standard, including digital cameras. Philips' attempted patent ambush in this lawsuit is unreasonable, unexcused, and has substantially harmed Kodak. Philips' conduct renders the '075 patent unenforceable and also entitles Kodak to damages.

## II.    CONTESTED FACTS TO BE ESTABLISHED AT TRIAL

The contested facts Kodak will establish at trial are set forth in Exhibit B.

## III.    KODAK'S DEFENSES AND COUNTERCLAIMS

### A.    Kodak Does Not Infringe the '075 Patent.

Kodak's noninfringement positions are set forth in Dr. Touradj Ebrahimi's expert report and deposition testimony.

A finding of infringement requires that every limitation of a claim be met, either literally or equivalently, by the accused device. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). There can be no infringement if even one limitation of a claim or its equivalent is not present in the accused device. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935-36 (Fed. Cir. 1987) (en banc). Philips asserts that the accused products and services infringe claims 3, 4, 7, 8 and 11 of the '075 patent by virtue of encoding images using the JPEG Standard's baseline mode. As such, the parties agree it is appropriate to compare the

asserted claims as construed by the Court with the JPEG Standard itself. Accordingly, the JPEG

Standard does not infringe the claims of the '075 patent for at least the following reasons:

  ▪   Claim 3 (and dependent claims 4 and 7) of the '075 patent contains the

limitation "video signal," which the Court construed to mean "a sequence of values that

represents sequential and interdependent image frames that when rapidly displayed are capable

of depicting movement." Claim Construction Order at 6 (D.I. 158). The JPEG Standard is for

still image and not video compression as clearly evidenced by its title—"*Digital compression of*

*continuous-tone **still images**.*" The JPEG Standard plainly does not describe encoding a "video

signal" as construed by the Court and there is no literal infringement. Furthermore, still image

signals are not equivalent to video signals, and the "video signal" limitation was added during

prosecution of the '075 patent to overcome a prior art rejection. As such, Philips is not entitled

to any range of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 535 U.S. 722,

723 (2002).

  ▪   All asserted claims of the '075 patent contain an "event" limitation, which

the Court construed to mean "a run of zero coefficients and the value of the non-zero coefficient

which immediately precedes or follows that run." Claim Construction Order at 3 (D.I. 158). The

JPEG Standard does not derive the claimed event from the still image signals. Rather, JPEG

derives two different symbols from the still image signal. The first symbol derived for encoding

in JPEG is the run of zero coefficients and the <u>category</u> of the non-zero coefficient which follows

the run, not the <u>value</u> of that coefficient as required by the Court's construction. The second

symbol derived for encoding is the value of the non-zero coefficient which follows the run.

Neither the first symbol nor the second symbol can be the claimed "event" as construed by the

Court. Accordingly, the JPEG Standard does not satisfy this limitation literally or under the doctrine of equivalents.

      ■    Each asserted independent claim also contains the limitation "assigning a code word to represent said non-zero coefficient and said run length," which the Court construed to have its plain and ordinary meaning. Claim Construction Order at 2 (D.I. 158). The plain and ordinary meaning of assigning a code word to represent said non-zero coefficient and said run length involves assigning just one code word. In JPEG, the two symbols described above are assigned two different code words and, therefore, this limitation is not met literally or under the doctrine of equivalents.

      ■    Dependent claims 4 and 7 contain the limitation "Huffman code word" which the Court construed to mean "a sequence of bits assigned to represent a particular event or events in accordance with a predefined set of rules with the following characteristics: (i) the code words may be of different lengths; (ii) no code word is a prefix of another code word; and (iii) the predefined set of rules strives to minimize the average code word length by exploiting the distribution of event probabilities." *Id.* If Philips takes the position that the two code words assigned to the two symbols encoded using the JPEG Standard are a single code word, that single code word is not a Huffman code under the Court's construction or its equivalent because in JPEG, code words for combinations of the same run length with different following non-zero coefficients can have the exact same length, even if the probabilities of that combination are different. Thus Kodak does not infringe either literally or under the doctrine of equivalents.

      ■    Dependent claim 7 also contains the limitation "Huffman codeword is independent of the sign of that non-zero coefficient" which the Court construed to have its plain and ordinary meaning. *Id.* If Philips takes the position that the two code words assigned to the

two symbols encoded using the JPEG Standard constitute a single Huffman code word, that single code word is not a Huffman code word independent of the sign of the following non-zero coefficient or its equivalent under the plain and ordinary meaning of the phrase.

▪    Claim 11 requires that the run length of each section be below the predetermined length. The Court construed these limitations to have their plain and ordinary meaning. Claim Construction Order at 6 (D.I. 158). In the JPEG Standard, the run length of the run of zeroes followed by a non-zero coefficient is examined to see if it exceeds a length of 15. If the run length exceeds 15, a symbol is created with a run length of 15 followed by a non-zero coefficient of category 0. Thus, even if this symbol is the claimed "event" (and it is not), its run length is equal to the predetermined amount, not below the predetermined amount as claimed. Therefore, this claim is not infringed literally or under the doctrine of equivalents.

### B.    The '075 Patent Is Invalid.

Invalidity is an affirmative defense to a charge of infringement. *Festo Corp.* 535 U.S. 722. The analysis focuses on whether the properly construed claims of a patent comply with the requirements for patentability set forth in Title 35, United States Code and in particular the novelty requirements of 35 U.S.C. § 102 and the non-obviousness requirements of 35 U.S.C. § 103. In order to anticipate a claim under 35 U.S.C. § 102, each element of the claim must be found in a single prior art reference. *In re Paulsen*, 30 F.3d 1475 (Fed. Cir. 1994); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542 (Fed. Cir. 1983). The claims of a patent may be found to be obvious if the differences between the subject matter sought to be patented and the prior art is such that the subject matter as a whole would have been obvious at the time of the invention to a person of ordinary skill in the art. *See* 35 U.S.C. § 103. If no single prior art reference discloses all of the elements of a claim, the claim may nevertheless be obvious under 35 U.S.C. § 103

based upon a combination of references. *Cable Electric Prods. v. Genmark, Inc.*, 770 F.2d 1015 (Fed. Cir. 1985).

Kodak will establish, by clear and convincing evidence, that the asserted claims of the '075 patent are invalid because several different single pieces of prior art anticipate those claims (with each element of the claims being found in the prior art) and because a number of different combinations of prior art render the asserted claims obvious. More specifically, one or more of the asserted claims of the '075 patent are anticipated by five different pieces of prior art: (1) the Widcom VTC-56 codec machine; (2) U.S. Patent No. 4,698,672 to Chen et al; (3) a "Block Coding Using a Two-Dimensional Run-Length Table" paper published to the COST 211bis Simulation Subgroup; (4) U.S. Patent No. 4,420,771 to Pirsch; and (5) the "Scene Adaptive Coder" article by Chen et al. (the "Chen Article").

In addition, the asserted claims are obvious over a number of different combinations of prior art, including: (1) U.S. Patent No. 3,984,833 to Van Voorhis in view of the Chen Article; (2) U.S. Patent No. 4,316,222 to Subramaniam in view of the Chen Article; (3) U.S. Patent No. 4,363,036 to Subramaniam in view of the Chen Article; (4) U.S. Patent No. 4,092,676 to Saran in view of the Chen Article; (5) U.S. Patent No. 4,136,363 to Saran in view of the Chen Article; (6) U.S. Patent No. 4,494,151 to Liao in view of the Chen Article; and (7) the "Upper Bound, Lower Bound and Run-Length Substitution Coding" article by Henry Liao in view of the Chen Article.

## C.    Kodak Has Not Willfully Infringed the '075 Patent.

A finding of willful infringement requires "at least a showing of objective recklessness." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Accordingly, to establish willful infringement, Philips "must show by clear and convincing evidence" that Kodak "acted

despite an objectively high likelihood that its actions constituted infringement of a valid patent."
*Id.*

The evidence establishes that Kodak's actions were not objectively reckless. Kodak and Philips were members of JPEG, and were present at meetings where the patent disclosure policies were discussed. At these meetings and in various documents distributed to members, it was announced on a number of occasions that members were conducting patent searches and that the baseline JPEG Standard was believed to be patent-free. And Philips never disclosed the '075 patent to JPEG members like Kodak. Moreover, a digital camera patent search conducted by Kodak in 1998 did not reveal the '075 patent.

Later in 2002 when Kodak first received notice of the '075 patent, Kodak reasonably determined that the patent did not cover JPEG, was invalid and would be unenforceable as a result of Philips standards-setting abuses. Courts in Korea, Germany and the Netherlands have agreed with Kodak's assessment, finding the '075 patent's foreign counterparts either not infringed by JPEG, invalid or unenforceable. Finally, Kodak filed a petition for reexamination of the '075 patent on February 7, 2008. If approved, the PTO's finding of a substantial new question of patentability is further evidence that Kodak's actions were not objectively reckless. Philips cannot satisfy its burden to demonstrate by clear and convincing evidence that Kodak has willfully infringed the '075 patent.

**D.    The '075 Patent Is Unenforceable Based on Equitable Estoppel, Waiver, and Implied License Resulting From Philips' Standard Setting Misconduct.**

Kodak will establish that the '075 patent is unenforceable in this case based on the doctrine of equitable estoppel. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042-1043 (Fed. Cir. 1992). Members and participants of the various JPEG related committees were required to disclose to their respective committees the existence of patents or patent

applications relevant to any subject matter under consideration. These obligations attached to technology proposers and committee participants alike and applied even if the patent holder discovered the existence of a relevant patent after standardization was complete. These obligations arose not only from the relevant standards bodies' published patent statements, but also from numerous verbal and written requests by committee leaders for patent disclosure during promulgation of the JPEG Standard. *Rambus Inc. v. Infineon Technologies AG*, 318 F.3d 1081, 1098-99 (Fed. Cir. 2003).

Further, the conduct and expectation of the relevant committee members gave rise to a duty to disclose patents and patent applications. Numerous members of the relevant standards committees, including Kodak, made patent statements in accordance with the relevant disclosure policies and in response to specific disclosure requests. These members either disclosed known patents and/or patent applications and offered to license the same on reasonable and non-discriminatory terms or stated that the member was not aware of any relevant patents. Philips did neither. Given the cooperative environment of the standards-setting process, there was a wide spread expectation on the part of committee members that other members would simply act in good faith and timely disclose relevant patents. *Id*. Philips' own conduct in disclosing its patent applications in the context of MPEG (i.e. video compression) standardization—which was governed by the same rules as JPEG standardization—demonstrates Philips' knowledge and recognition of the aforementioned policies and obligations.

Despite its membership and participation in the JPEG related committees, Philips ignored its duties and never disclosed the '075 patent. Had Philips disclosed its purported belief that the '075 patent was applicable, JPEG could have chosen one of the other available techniques for the standard. Instead, JPEG and Kodak relied on Philips' misleading conduct and chose a technique

they believed to be royalty free. Kodak further relied to its detriment when it subsequently made substantial investments in products that practiced JPEG. Philips continued to mislead JPEG and Kodak when it remained silent for over a decade following JPEG's official publication in 1992 and while the entire digital imaging industry became locked into the standard.

JPEG and Kodak were robbed of the opportunity to pick an unencumbered technique for the standard, which they would have done had Philips disclosed. Kodak has also been harmed because it is forced to address Philips' infringement allegations 15 years following adoption of the JPEG Standard, after it has invested hundreds of millions of dollars in compliant products. Finally, Kodak has expended significant resources in defending Philips' patent infringement claims. The harm to Kodak is severe.

### E.    Philips Has Committed Fraud.

Fraud shares the common elements of misleading silence, reliance and harm with the defense of equitable estoppel—but with the added elements of (1) knowledge (or reckless indifference to the truth) and (2) intent. *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983). Philips' fraud is established by at least the following facts: (1) Philips was a member of the standard-setting bodies involved in setting the JPEG Standard and attended numerous JPEG related committee meetings; (2) Those standards-setting bodies had policies requiring members to disclose patents that a member believed to apply to a standard; (3) While the JPEG Standard was being set, Philips analyzed a draft version and concluded that the '075 patent purportedly applied to the standard; (4) Philips chose not to disclose the '075 patent to JPEG; (5) Based on Philips' misleading silence, Kodak reasonably concluded that the JPEG Standard was patent-free and implemented the standard into its products; and (6) Philips purposefully waited more than a decade until after Kodak had made a substantial investment in

products using the JPEG Standard before asserting its patent. *Id.* Kodak's damages include without limitation litigation expenses such as the significant costs associated with international discovery and expert witness fees. Kodak's damages also include potential infringement liability.

**F.      Negligent Misrepresentation.**

Kodak will establish by a preponderance of the evidence that Philips made negligent misrepresentations regarding the '075 patent. Under Delaware law, a claim of negligent misrepresentation requires the same elements as fraud, yet a party need not demonstrate that the misrepresentation was made knowingly or recklessly. *In re Medical Wind Down Holdings III, Inc.*, 332 B.R. 98, 102 (Bkrtcy. D. Del. 2005). Through their participation in the JPEG committees and continued silence, beginning in 1987 and continuing on to this day, Philips misled their fellow participating members, including Kodak, into believing that they had no patents applicable to the JPEG Standard. Kodak justifiably relied on Philips' continued silence and chose to implement JPEG rather than pursue alternative, equally performing compression techniques. Kodak's damages include litigation expenses and potential infringement liability.

**G.      Deceptive Trace Practices — 6 Del. C. § 2532 et seq.**

Kodak will establish that Philips violated Delaware's Deceptive Trade Practices Act by a preponderance of the evidence. 6 Del. C. § 2532. The Delaware Deceptive Trade Practices Act is not solely limited to trademark actions. The Act forbids disparagement of the business of another by false or misleading misrepresentations of fact. *EDIX Media Group, Inc. v. Mahani*, 2006 WL 3742595, 12 (Del.Ch. Dec. 12, 2006). In the course of its business, Philips has made false and misleading allegations of fact that Kodak's products infringe the '075 patent. Philips'

failure to disclose the '075 patent to the JPEG committee and failure to raise the patent with

Kodak before 2002 created a substantial likelihood of misunderstanding as to the applicability of

the '075 patent to practice the JPEG Standard and the products that implement it.

Through the pursuit of this litigation, Philips has disparaged Kodak's goods and services

in alleging violation of the '075 patent. Kodak has been, and will be, harmed by Philips'

deceptive trade practices and false assertions to the public that Kodak's products and services are

infringing. Furthermore, Philips has acted in bad faith by maintaining continued silence to the

JPEG committee by not disclosing the '075 patent and foreign counterparts and pursuing its

patent ambush.

Finally, Kodak's claim of deceptive trade practices is not preempted by patent law.

Philips' use of *Moore North America, Inc. v. Poser Business Forms, Inc.* is misplaced. Because

Kodak has presented sufficient allegations of bad faith regarding Philips' failure to disclose the

'075 patent, the state claim is not preempted. *Moore North America, Inc. v. Poser Business

Forms, Inc.*, 2000 WL 1480992, 7 (D. Del. Sept. 29, 2000).

**H.    Laches.**

Philips unreasonably and inexcusably delayed in filing suit from the time it knew or

should have known of Kodak's alleged infringement. *Crown Packaging Technology, Inc. v.

Rexam Beverage Can Co.*, 498 F. Supp. 2d 718, 726 (D. Del. 2007). In 1991, Kodak released the

first digital professional camera, the Kodak DCS-100. The DCS-100 utilized JPEG image

compression and was widely known and publicized. Publication of allegedly infringing activities

starts the laches delay period. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1552-1553 (Fed. Cir.

1996). In addition, files produced from Mr. Jan van der Meer, Philips' 30(b)(6) corporate

designee, contained articles from the early 1990s describing Kodak's JPEG based products.

Despite Philips' belief in 1991 that the '075 patent applied to JPEG and Kodak's widespread publication and sale of JPEG Standard enabled cameras, Philips delayed approximately 15 years before filing suit against Kodak on April 18, 2006. Because Philips' delay was greater than 6 years, its delay is presumptively unreasonable, inexcusable and prejudicial. *Crown Packaging*, 498 F. Supp. 2d at 726. During Philips' delay, Kodak invested many years and hundreds of millions of dollars into the design, development, manufacture and marketing of products compliant with the JPEG Standard. By the time Philips filed suit, Kodak and its customers were deeply locked in, making it no longer feasible for Kodak to abandon the JPEG Standard for an alternative compression technique. Further, relevant documents related to JPEG standardization and other issues that existed in the 1990's are now difficult to locate and many witnesses' memories have faded. Therefore Philips' unreasonable delay has resulted in both economic and evidentiary prejudice to Kodak, and Philips should be precluded from any damages occurring before April 18, 2006, when it filed suit. *Wanless v. General Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998).

## I.     Unclean Hands.

Due to Philips' fraud and deceit in connection with JPEG standardization as set forth above, Philips has unclean hands in connection with its assertion of the '075 patent against Kodak. *Princess Cruises, Inc. v. U.S.*, 397 F.3d 1358, 1369 (Fed. Cir. 2005).

## IV.     KODAK'S THEORY OF DAMAGES

Kodak's positions regarding Philips' claimed damages based on infringement of the '075 patent are set forth in detail in the expert report of Robert H. Wallace.

Assuming liability, Philips would be entitled to a reasonable royalty to compensate for Kodak's alleged infringement. 35 U.S.C. § 284. A reasonable royalty for a patent is that which

would have been agreed to in a hypothetical negotiation taking place on the eve of first infringement. *Rite-Hite Corp. v. Kelley Co.*, Inc., 56 F.3d 1538, 1554 (Fed. Cir. 1995). Here, Kodak's first allegedly infringing product (i.e., JPEG compliant) was the DCS 100 which Kodak brought to market in May, 1991. Because the evidence establishes that JPEG was seeking a royalty free technique for its baseline standard, had Philips asserted its patent in 1991 and demanded anything other than nominal fees, JPEG would have chosen one of the available alternatives. Specifically, IBM's arithmetic coding technique delivered equivalent or better performance than ADCT and IBM had offered to make all related patents available for a one-time fee of $15,000. Therefore, a reasonable royalty to Philips should be no greater than $15,000.

Assuming, contrary to the evidence, that JPEG would have knowingly included a patented technique subject to undetermined royalty fees into the baseline standard, a reasonable royalty calculated under the factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers Inc.*, 446 F.2d 295 (2d Cir. 1971) *cert. denied*, 404 U.S. 870 (1971), would not **REDACTED** exceed ▮ per allegedly infringing product. This will be established at trial through expert and fact witness testimony and documentary evidence.

The evidence will further establish that Philips' royalty base figures are significantly exaggerated. A large percentage of the "intercompany sales" for which Philips seeks royalties involve products that were never manufactured, sold or imported into the United States. These products were shipped directly from manufacturing facilities abroad to Kodak's wholly owned foreign subsidiaries—transfers that do not constitute infringing sales. *See FAG (U.K.) Ltd. v. U.S.*, 24 F. Supp. 2d 297, 303 at n.5 (C.I.T. 1998); *see also Kearns v. Ford Motor Co.*, 726 F. Supp. 159, 163 (E.D. Mich. 1989).

In addition, Kodak has not willfully infringed Philips' patent and is therefore not liable for enhanced damages under 35 U.S.C. § 284. Nor is Philips entitled to attorney's fees and costs under 35 U.S.C. § 285. Indeed, to the contrary, Kodak is entitled to its attorneys' fees and costs based on Philips' standards setting misconduct.

Finally, Philips should be precluded from any pre-filing damages under the doctrine of laches. *A.C. Aukerman Co.*, 960 F.2d 1020. Philips is also barred from seeking any damages occurring prior to Philips providing notice to Kodak because of its failure to comply with the marking requirements of 35 U.S.C. § 287. And at the very least, any recovery by Philips is limited under 35 U.S.C. § 286 to any alleged infringement committed no more than 6 years prior to filing of the Complaint.

## V.    KODAK'S ANTICIPATED MOTIONS FOR JUDGMENT AS A MATTER OF LAW.

Based on the legal theories herein and subject to the evidence presented at trial, Philips anticipates moving for judgment as a matter of law regarding the following issues:

1.    Noninfringement (either literally or under DOE) of at least claims 3, 4, 7 and 11;

2.    Invalidity of each asserted claim under theories of anticipation or obviousness;

3.    Unenforceability of the '075 patent based on Philips' standards-setting abuses;

4.    Preclusion of pre filing damages on the grounds of laches;

5.    Exclusion from the royalty base of any damages based on products not manufactured, sold or imported in the United States.

Kodak reserves its right to move for judgment as a matter of law on any other grounds as the evidence, or lack thereof, provides.

# EXHIBIT I3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-251 (GMS) |
| | ) |
| EASTMAN KODAK COMPANY, | ) |
| | ) |
| Defendant. | ) |

## EXHIBIT I 3a:

## <u>PRELIMINARY JURY INSTRUCTIONS [PATENT]</u>

Plaintiff and Counterclaim Defendant U.S. Philips Corporation ("Philips") and Defendant and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") submit the following proposed Preliminary Jury Instructions and objections as of March 3, 2008. The parties reserve the right to submit modifications to these instructions and/or additional instructions on any pertinent issue.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Of counsel:*

Thomas W. Winland
Steven M. Anzalone
Frank A. De Costa, III
Kenneth M. Frankel
Joyce Craig
Matthew Levy

CONNOLLY BOVE LODGE & HUTZ LLP

Francis DiGiovanni (I.D. #3189)
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
(302) 658-9141
fdigiovanni@chlh.com

*Of counsel:*

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
Jesse Hindman
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297

i

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Plaintiff*

(619) 699-2700

*Attorneys for Defendant*

# TABLE OF CONTENTS

1.  INTRODUCTION [AGREED] ..................................................................1

2.  THE PARTIES AND THEIR CONTENTIONS [DISPUTED] ...................2

3.  DUTIES OF THE JURY [AGREED] ..........................................................7

4.  EVIDENCE [AGREED] .............................................................................8

5.  CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY [AGREED] ...........................................................................10

6.  BURDEN OF PROOF [DISPUTED] ........................................................11

7.  GENERAL GUIDANCE REGARDING PATENTS [AGREED] .................14

    7.1.  CONSTITUTIONAL BASIS FOR PATENT GRANT [AGREED].................15

    7.2.  EXCLUSIONARY RIGHT AND TERM OF A PATENT [AGREED] .............16

8.  THE PARTS OF A PATENT [AGREED] ..................................................17

9.  SUMMARY OF THE ISSUES [DISPUTED] .............................................19

10. CONDUCT OF THE JURY [AGREED] .....................................................23

11. COURSE OF THE TRIAL [AGREED] .......................................................25

12. TRIAL SCHEDULE [AGREED] ................................................................26

13. GLOSSARY OF PATENT TERMS [AGREED] ..........................................27

## 1. INTRODUCTION [AGREED]

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any civil case. However, because this is a patent trial which will deal with subject matter that is not within the everyday experience of most of us, I will also give you some additional preliminary instructions regarding patents to assist you in discharging your duties as jurors.

**Source:**       Preliminary Jury Instructions – Patent (GMS) Rev: 1/18/06.

## 2.  THE PARTIES AND THEIR CONTENTIONS
## [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff, U.S. Philips Corporation, and the defendant, Eastman Kodak Company.

The dispute between the parties relates to the importation, manufacture, and sale of JPEG image encoding hardware and software products, including digital cameras, file scanners, document scanners, software, and scanning services. During the trial, the parties will offer testimony to familiarize you with this technology.

Philips asserts that it owns a United States Patent that it alleges Kodak has infringed, Patent No. 4,901,075. Because a patent number is so long, a patent is usually referred to by its last three digits. For example, Patent No. 4,901,075 is called simply "the '075 patent." Sometimes the patent will be referred to as the "Patent-In-Suit." Philips contends that Kodak has made, used, sold, and offered for sale image encoding products that infringe this patent. Philips contends that Kodak's infringement of the '075 patent has been willful. Philips seeks damages for Kodak's alleged infringement.

Philips does not contend that Kodak has infringed all of the claims of the patent. Instead, Philips asserts that only certain claims have been infringed. They may be called "asserted claims." Philips contends that some of Kodak's products have infringed the asserted claims. I,

and the attorneys and witnesses, may refer to these products as "accused products." You, of course, will determine whether or not each accused product has infringed the asserted claims of Philips' patent.

Persons or companies sued for allegedly infringing a patent can deny infringement. They can also defend a charge of infringement by proving the patent is invalid or unenforceable. In this case, Kodak denies that it has infringed Philips' patent and asserts what are called "affirmative defenses" to the charges of infringement. Kodak asserts defenses and counterclaims against Philips based on fraud, negligent misrepresentation, and deceptive trade practices. I will tell you more about infringement in a few minutes. I will instruct you as to defenses to a charge of infringement and possible damages resulting from a finding of infringement in my instructions to you at the close of the evidence.

**Source:**        Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06

**[KODAK'S OBJECTIONS]**

Kodak  objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pre-trial conference.

Kodak objects to Philips' characterization of "JPEG image encoding hardware and software products" as prejudicially overemphasizing the JPEG functionality of Kodak's accused products. The accused products include digital cameras, digital scanners, complex medical imaging devices and software whose functionality goes far beyond being merely JPEG compliant. Kodak's proposed language fairly characterizes the accused products.

3

**[KODAK'S INSTRUCTION]**

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff and counterclaim defendant U.S. Philips Corporation, and the defendant and counterclaim plaintiff Eastman Kodak Company.

The dispute between the parties relates to the importation, manufacture, and sale of digital cameras, document scanners, software, and other products and services that are compliant with or utilize the JPEG Standard for digital image compression and storage. During the trial, the parties will offer testimony to familiarize you with this technology.

Philips asserts that it owns a United States Patent that it alleges Kodak has infringed, Patent No. 4,901,075. Because a patent number is so long, a patent is usually referred to by its last three digits. For example, Patent No. 4,901,075 is called simply "the '075 patent." Sometimes the patent will be referred to as the "Patent-In-Suit." Philips contends that Kodak has made, used, sold, and offered for sale image encoding products that infringe this patent and that such infringement has been willful. Philips seeks damages for Kodak's alleged infringement.

Philips does not contend that Kodak has infringed all of the claims of the patent. Instead, Philips asserts that only certain claims have been infringed. They may be called "asserted claims." Philips contends that some of Kodak's products have infringed the asserted claims. I, and the attorneys and witnesses, may refer to these products as "accused products." You, of course, will determine whether or not each accused product has infringed the asserted claims of Philips' patent.

4

Persons or companies sued for allegedly infringing a patent can deny infringement. They can also defend a charge of infringement by proving the patent is invalid or unenforceable. In this case, Kodak denies that it has infringed Philips' patent and asserts defenses to the charges of infringement. Specifically, Kodak asserts that the '075 patent is invalid and unenforceable against Kodak. Kodak also asserts defenses and counterclaims against Philips based on fraud, negligent misrepresentation, deceptive trade practices, equitable estoppel and laches.

I will tell you more about infringement in a few minutes. I will instruct you as to defenses to a charge of infringement and possible damages resulting from a finding of infringement in my instructions to you at the close of the evidence. I will also instruct you regarding Kodak's defenses and claims that Philips has committed standard setting misconduct.

**Source:**        Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches, which are claims for the Court to decide. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50).

Philips also objects to the last line regarding "standard setting misconduct." It is a redundant characterization, slanted to prejudice Philips. Its substance is already covered by the "defenses to a charge of infringement and possible damages" sentence just before it, as well as

5

the sentence in the previous paragraph that states "Kodak denies that it has infringed Philips'

patent and asserts defenses to the charges of infringement."

### 3.  DUTIES OF THE JURY [AGREED]

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all of the instructions that I give you, even if you personally disagree with them. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**Source:**        Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

### 4. EVIDENCE [AGREED]

The evidence from which you will find the facts will consist of the testimony of witnesses (testimony of witnesses consists of the answers of the witnesses to questions posed by the attorneys or the court — you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.     Statements, arguments, and questions by lawyers are not evidence.

2.     Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.     Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.     Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no

distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

**Source:**      Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

### 5.    CREDIBILITY OF WITNESSES –
### WEIGHING CONFLICTING TESTIMONY [AGREED]

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

**Source:**    Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

## 6.  BURDEN OF PROOF [DISPUTED]

**[PHILIPS' INSTRUCTION]**

As I have already told you, in this case Philips is the owner of a patent which it contends Kodak infringes.  Philips has the burden of proving infringement by what is called a preponderance of the evidence.  That means Philips has to produce evidence, which, considered in light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not.  To put it differently, if you were to put Philips' and Kodak's evidence on opposite sides of a scale, the evidence supporting Philips' allegations would have to make the scale tip somewhat on its side.  If Philips fails to meet this burden, the verdict must be for Kodak.  Philips must also prove its damages by a preponderance of the evidence.  Kodak must prove its counterclaims or defenses of fraud, negligent misrepresentation, and deceptive trade practices by a preponderance of the evidence as well.

In this case, Kodak asserts that Philips' patent is invalid and unenforceable.  A patent, however, is presumed to be valid and enforceable.  Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid or unenforceable.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.  Philips also contends that Kodak willfully infringed the patent-in-suit.  Philips must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**Source:**    Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

**[KODAK'S OBJECTIONS]**

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pre-trial conference.

**[KODAK'S INSTRUCTION]**

As I have already told you, in this case Philips is the owner of a patent which it contends Kodak infringes. Philips has the burden of proving infringement by what is called a preponderance of the evidence. That means Philips has to produce evidence, which, considered in light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not. To put it differently, if you were to put Philips' and Kodak's evidence on opposite sides of a scale, the evidence supporting Philips' allegations would have to make the scale tip somewhat on its side. If Philips fails to meet this burden, the verdict must be for Kodak. Philips must also prove its damages by a preponderance of the evidence. Kodak must prove its counterclaims or defenses of equitable estoppel, fraud, negligent misrepresentation, deceptive trade practices, and laches by a preponderance of the evidence as well.

In this case, Kodak asserts that Philips' patent is invalid. A patent, however, is presumed to be valid. Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the

evidence. Philips also contends that Kodak willfully infringed the patent-in-suit. Philips must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**Source:**    Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches, which are claims for the Court to decide. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50).

## 7. GENERAL GUIDANCE REGARDING PATENTS [AGREED]

I will now give you a general overview of what a patent is and how one is obtained.

**Source:**       Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

### 7.1.    CONSTITUTIONAL BASIS FOR PATENT GRANT  [AGREED]

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

**Source:**        Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06

## 7.2.    EXCLUSIONARY RIGHT AND TERM OF A PATENT
## [AGREED]

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents.  Once the "Patent and Trademark Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.  If the invention covered by the patent is a method, the patent law gives the patent owner the right to exclude others from using the method throughout the United States or making or selling throughout the United States any product made by the patented method anywhere in the world.

A person who, without the patent owner's authority, makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent.  A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement.  This is called inducing infringement.

**Source:**        Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

## 8.  THE PARTS OF A PATENT [AGREED]

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents.  Many of the terms used by me in this description are contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions.  Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the Patent and Trademark Office examines patent applications and issues patents.  A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise, and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention.  The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention.  When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws.  The examiner reviews the prior work of others in the form of voluminous files of patents and publications.  This type of material is called "prior art."  Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application.  Sometimes, in specific circumstances and

under specific conditions, technical information that was not known to the public can also be prior art. Documents found in the search of prior art are called "references." In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched. The compilation of the papers concerning the proceedings before the Patent and Trademark Office is called the "prosecution history," "file wrapper," or "file history." The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

**Source:**    Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06

## 9.  SUMMARY OF THE ISSUES [DISPUTED]

**[PHILIPS' INSTRUCTION]**

In this case, you must decide several things according to the instructions that I will give you at the end of the trial.  Those instructions will repeat this summary and will provide more detail.  One thing you will need not decide is the meaning of the patent claims.  That is one of my jobs — to explain to you what the patent claims mean.  By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

(1)     whether Philips has proven by a preponderance of the evidence that Kodak infringed the asserted claims of the '075 patent;

(2)     if you find that Kodak infringed the '075 patent, whether Philips has proven by clear and convincing evidence that Kodak's infringement was willful;

(3)     whether the asserted claims of Philips' patent that have been infringed have been proven by Kodak by clear and convincing evidence to be invalid or unenforceable;

(4)     if you find that Philips' patent, before it expired, was valid and infringed, whether Philips has proven its measure of damages for the infringement by a preponderance of the evidence;

(5)     whether Kodak has proven by a preponderance of the evidence that Philips engaged in fraud, negligent misrepresentation, or deceptive trade practices.

**Source:**       Adapted from Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06

**[KODAK'S OBJECTIONS]**

Kodak  objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches.  Although Kodak

19

acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy.

Kodak respectfully requests the opportunity to address this issue at the pre-trial conference.

Kodak further objects to Philips' proposed instruction to the extent it seeks to take the issue of damages relating to Kodak's state law counterclaims from the jury. The Seventh Amendment guarantees a right to a jury trial for civil causes of action based on the common law. U.S. Const. Amend. VII; *Benjamin v. Traffic Executive Ass'n Eastern Railroads* 869 F.2d 107, 114 (2d Cir. 1989). Fraud and negligent misrepresentation "are claims at law which the Seventh Amendment right to a jury trial attaches." *In re Tou Houa Thao,* 2006 WL 3716055 at *2 (Bkrtcy.W.D. Mo. 2006). And the Seventh Amendment applies to statutory actions such as those brought under Delaware's Deceptive Trade Practices Act. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989). Kodak has a constitutional right to present its damages claims to the jury.

**[KODAK'S INSTRUCTION]**

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs — to explain to you what the patent claims mean. By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a definition in the glossary attached to these preliminary instructions. In essence, you must decide:

1.     whether Philips has proven by a preponderance of the evidence that Kodak
       infringed the asserted claims of the '075 patent;

2.     whether the asserted claims of the '075 patent have been proven by Kodak by clear and convincing evidence to be invalid;

3.     if you find that Philips' patent, before it expired, was valid and infringed, whether Philips has proven its measure of damages for the infringement by a preponderance of the evidence;

4.     if you find that Kodak infringed the '075 patent, whether Philips has proven by clear and convincing evidence that Kodak's infringement was willful;

5.     if you find Kodak liable, whether Kodak has proven by a preponderance of the evidence that pre filing damages should be excluded under the doctrine of laches;

6.     whether Kodak has proven by a preponderance of the evidence that Philips engaged in fraud, negligent misrepresentation, or deceptive trade practices;

7.     if you find that Philips engaged in fraud or negligent misrepresentation, whether Kodak has proven its measure of damages by a preponderance of the evidence;

8.     whether Kodak has proven by a preponderance of the evidence that Philips' patent is unenforceable against Kodak due to equitable estoppel.

**Source:**     Adapted from Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches, which are claims for the Court to decide. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and*

21

*Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50).

Philips also objects to paragraph 7, which asks the jury to decide damages for Kodak's fraud and negligent misrepresentation counterclaims. Kodak claims as damages for its state law claims: (1) its litigation expenses in defending Philips infringement suit; and (2) whatever damages it may be required to pay for its infringement of Philips' patent. For those two theories, the Court, not the jury, must determine the amount of damages, because Kodak will not be able to prove until after trial the amount of any adverse damage award for which it is liable or its litigation expenses. The amount of damages for which Kodak is liable may be affected by decisions the Court must make if the jury were to find that Kodak willfully infringed Philips' patent, or if the Court were to find in favor of Kodak on its equitable defenses of equitable estoppel and laches. Likewise, the litigation expenses (even if Kodak were entitled to claim them as damages for its fraud and negligent misrepresentation counterclaims, which it is not) will not be quantifiable until after trial. *See TruePosition Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 465 (D. Del. 2007) (deferring alleged relief for fraud, based on possible infringement damages and attorneys fees, for the Court's consideration after trial); *Acierno v. Goldstein*, No. Civ. A. 20056-NC, 2005 WL 3111993, at *6 (Del. Ch. Nov. 16, 2005) ("Delaware law does not permit the fact finder to supply a damages figure based on 'speculation or conjecture' where the plaintiff has failed to meet its burden of proof on damages.") (citing *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1950)).

## 10.  CONDUCT OF THE JURY [AGREED]

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about the case, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes.  A word of caution is in order.  There is always a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your

memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And remember that they are only for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**Source:**        Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

## 11.  COURSE OF THE TRIAL [AGREED]

This trial, like most jury trials, comes in seven stages or phases.  We have already been through the first phase, which was to select you as jurors.  The remaining stages are:

2.      These preliminary instructions to you;

3.      Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence.  The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence;

4.      The presentation of the evidence, which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

5.      My final instructions on the law to you;

6.      The closing arguments of the lawyers, which will be offered to help you make your determination; and, finally,

7.      Your deliberations, where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**Source:**      Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

## 12. TRIAL SCHEDULE [AGREED]

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take seven (7) days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00 P.M. and, after a one-hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen-minute break at 11:00 A.M. and another fifteen-minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 P.M. We will post a copy of this schedule for your convenience in the jury room.

**Source:**        Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

## 13. GLOSSARY OF PATENT TERMS [AGREED]

| | |
|---|---|
| Applicants | The named inventors who are applying for the patent. |
| Assignment | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| Claims | The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| Disclosure of Invention | The part of the patent specification that explains how the invention works and usually includes a drawing. |
| File Wrapper, File History or Prosecution History | The written record of proceedings in the United States Patent and Trademark Office ("Patent and Trademark Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent and Trademark Office and the applicant. |
| Patent Application | The initial papers filed in the Patent and Trademark Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant. |
| Patent Examiners | Personnel employed by the Patent and Trademark Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention. |
| Prior Art | Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application. |
| Prior Art References | Any item of prior art (publication, patent or product) used to determine patentability. |
| Specification | The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do. |

**Source:**    Preliminary Jury Instructions - Patent (GMS) Rev: 1/18/06.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT I 3b:**

**FINAL JURY INSTRUCTIONS [PATENT]**

Plaintiff and Counterclaim Defendant U.S. Philips Corporation ("Philips") and Defendant

and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") submit the following proposed

final jury instructions and objections as of March 3, 2008. The parties reserve the right to submit

modifications to these instructions and/or additional instructions on any pertinent issue.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

CONNOLLY BOVE LODGE & HUTZ LLP

Francis DiGiovanni (I.D. #3189)
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
(302) 658-9141
fdigiovanni@chlh.com

*Of Counsel:*

Thomas W. Winland
Steven M. Anzalone
Frank A. De Costa, III
Kenneth M. Frankel
Joyce Craig
Matthew Levy
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

*Attorneys for Plaintiff*

*Of Counsel:*

John Allcock
Sean C. Cunningham
Tim Lohse
John D. Kinton
Jesse Hindman
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
(619) 699-2700

*Attorneys for Defendant*

# FINAL JURY INSTRUCTIONS TABLE OF CONTENTS

1.   GENERAL INSTRUCTIONS ................................................................1
    1.1   INTRODUCTION [AGREED] ...........................................1
    1.2   JURORS' DUTIES [AGREED]..........................................2
    1.3   BURDENS OF PROOF [DISPUTED] .............................3
    1.4   EVIDENCE DEFINED [AGREED] ...................................6
    1.5   CONSIDERATION OF EVIDENCE [AGREED] ..................8
    1.6   DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED]...................9
    1.7   CREDIBILITY OF WITNESSES [AGREED] ...................10
    1.8   NUMBER OF WITNESSES [AGREED]..........................12
    1.9   EXPERT TESTIMONY [AGREED] ................................13
2.   THE PARTIES' CONTENTIONS.......................................................14
    2.1   THE PARTIES [AGREED] ............................................14
    2.2   PHILIPS' CONTENTIONS [DISPUTED].......................15
    2.3   KODAK'S CONTENTIONS [DISPUTED].......................18
    2.4   SUMMARY OF PATENT ISSUES [DISPUTED]...............21
3.   INFRINGEMENT .............................................................................26
    3.1   CLAIM INFRINGEMENT [AGREED] ..........................26
    3.2   CONSTRUCTION OF CLAIMS [AGREED] ....................27
    3.3   DEPENDENT AND INDEPENDENT CLAIMS [AGREED] ...........31
    3.4   PATENT INFRINGEMENT—GENERALLY [AGREED]...............32
    3.5   DIRECT INFRINGEMENT [AGREED] .........................33
    3.6   INDIRECT INFRINGEMENT [AGREED] ......................34
        3.6.1   INDUCING PATENT INFRINGEMENT [AGREED] ...........35
        3.6.2   CONTRIBUTORY INFRINGEMENT [AGREED]...............36
    3.7   LITERAL INFRINGEMENT [AGREED] ........................37
    3.8   DOCTRINE OF EQUIVALENTS [AGREED] ..................38
    3.9   INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS [AGREED] ...............40
4.   VALIDITY DEFENSES ....................................................................46
    4.1   ANTICIPATION [DISPUTED]......................................46
    4.2   WHAT IS PRIOR ART [AGREED] ...............................50
        4.2.1   PRINTED PUBLICATIONS AS PRIOR ART [AGREED].................51

4.2.2 PRIOR UNITED STATES PATENT APPLICATION [DISPUTED]......................................................53

4.2.3 PRIOR PUBLIC USE/SALE [DISPUTED]..........................56

4.2.4 REFERENCES DESCRIBING THE INVENTOR'S WORK [AGREED]..........................................................58

4.3 OBVIOUSNESS [AGREED].........................................................59

4.3.1 SCOPE AND CONTENT OF THE PRIOR ART [AGREED]..............60

4.3.2 DIFFERENCES OVER THE PRIOR ART [AGREED].......................62

4.3.3 LEVEL OF ORDINARY SKILL [AGREED]........................63

4.3.4 OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS) [AGREED]..............64

5. STANDARDS SETTING CLAIMS AND DEFENSES........................65

5.1 EQUITABLE ESTOPPEL [DISPUTED]........................................65

5.2 FRAUD [DISPUTED]..................................................................67

5.3 NEGLIGENT MISREPRESENTATION [DISPUTED]...................71

5.4 DAMAGES – FRAUD OR NEGLIGENT MISREPRESENTATION [DISPUTED]..........................................................75

5.5 DECEPTIVE TRADE PRACTICES [DISPUTED]........................77

6. DAMAGES - INFRINGEMENT........................................................80

6.1 COMPENSATORY DAMAGES IN GENERAL [AGREED]..........80

6.2 REASONABLE CERTAINTY [DISPUTED]................................81

6.3 ENTIRE MARKET VALUE RULE [AGREED]...........................83

6.4 REASONABLE ROYALTY AS A MEASURE OF DAMAGES [DISPUTED]..........................................................84

6.5 FACTORS FOR DETERMINING REASONABLE ROYALTY [AGREED]..........................................................86

6.6 LACHES [DISPUTED]................................................................88

6.7 CURATIVE INSTRUCTION [AGREED].....................................90

7. DELIBERATION AND VERDICT....................................................91

7.1 INTRODUCTION [AGREED].....................................................91

7.2 UNANIMOUS VERDICT [AGREED].........................................92

7.3 DUTY TO DELIBERATE [AGREED].........................................93

7.4 COURT HAS NO OPINION [AGREED].....................................94

1.    **GENERAL INSTRUCTIONS**

**1.1    INTRODUCTION [AGREED]**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

**Source:**    Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (March 1993) ("Uniform Instructions") § 1.1; *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 829 (D. Del. 1995); Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia Tech. Inc. v. Cisco Sys. Inc.*, 04-876-GMS (D.I. 343) § 1.1.

## 1.2    JURORS' DUTIES [AGREED]

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you and apply it to the facts. It is my job to instruct you about the law and about what the claims of the patent mean, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Source:**    Adapted from Uniform Instructions § 1.2; *CellPro*, 894 F. Supp. at 829; Miscellaneous Jury Instructions (GMS) Rev. 1/18/06; *Telcordia*, 04-876-GMS (D.I. 343) § 1.2.

## 1.3    BURDENS OF PROOF [DISPUTED]

**[PHILIPS' INSTRUCTION]**

This is a civil case in which the plaintiff, Philips, is charging the defendant, Kodak, with patent infringement. Philips alleges that Kodak has infringed the asserted claims of Philips' patent. Philips has the burden of proving patent infringement by a preponderance of the evidence. That means that Philips has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Philips claims is more likely true than not. To put it differently, if you were to put Philips' and Kodak's evidence relating to infringement on the opposite sides of a scale, the evidence supporting Philips' claims would have to make the scales tip somewhat on Philips' side.

Philips further alleges that Kodak's infringement has been willful. Philips has the burden of proving that the Kodak's infringement was willful by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Kodak is alleging that Philips' patent is invalid. A patent, however, is presumed to be valid. Accordingly, Kodak has the burden of proving that Philips' patent is invalid by clear and convincing evidence.

Kodak also contends that it had a license to practice the '075 patent for digital still imaging, and that Philips engaged in fraud, negligent misrepresentation, and deceptive trade practices, which Kodak has the burden of proving by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiff or defendant has met

3

its burden of proof.

**Source:**    Adapted from Uniform Instructions § 1.3; *CellPro*, 894 F. Supp. at 829; *Telcordia,* 04-876-GMS (D.I. 343) § 1.3.

**[KODAK'S OBJECTION]**

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

This is a civil case in which the plaintiff, Philips, is charging the defendant, Kodak, with patent infringement. Philips alleges that Kodak has infringed the asserted claims of the '075 patent. Philips has the burden of proving patent infringement by a preponderance of the evidence. That means that Philips has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Philips claims is more likely true than not. To put it differently, if you were to put Philips' and Kodak's evidence relating to infringement on the opposite sides of a scale, the evidence supporting Philips' claims would have to make the scales tip somewhat on Philips' side.

Philips further alleges that Kodak's infringement has been willful. Philips has the burden of proving that Kodak's infringement was willful by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true. Proof by clear and convincing evidence is thus a higher burden than proof by a

4

preponderance of the evidence.

In this case, Kodak alleges that the '075 patent is invalid. A patent, however, is presumed to be valid. Accordingly, Kodak has the burden of proving that the '075 patent is invalid by clear and convincing evidence.

Kodak also contends Philips engaged in fraud, negligent misrepresentation, and deceptive trade practices. Kodak further contends that the '075 patent is unenforceable against Kodak based on equitable estoppel, and that Philips' damages are limited by the legal doctrine of laches. Kodak has the burden of proving these claims and defenses by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiff or defendant has met its burden of proof.

**Source:**    Adapted from Uniform Instructions § 1.3; *CellPro*, 894 F. Supp. at 829; *Telcordia,* 04-876-GMS (D.I. 343) § 1.3.

## [PHILIPS' OBJECTION]

Philips objects to the inclusion of equitable estoppel and laches in the jury instructions, which are equitable issues for the Court to decide  *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50).

5

## 1.4    EVIDENCE DEFINED [AGREED]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was read to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed. Certain charts, summaries, and graphics have been used to illustrate testimony from witnesses. These charts, summaries, and graphics are not themselves evidence, and are only as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown had I admitted it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**Source:**    Uniform Instructions § 1.4; *CellPro*, 894 F. Supp. at 830; *Telcordia,* 04-876-GMS (D.I. 343) § 1.4.

## 1.5    CONSIDERATION OF EVIDENCE [AGREED]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Source:**    Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; Uniform Instructions § 1.5; *CellPro*, 894 F. Supp. at 830; *Telcordia,* 04-876-GMS (D.I. 343) § 1.5.

## 1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED]

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Source:**    Uniform Instructions § 1.6; *CellPro*, 894 F. Supp. at 830; Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia*, 04–876–GMS (D.I. 343) § 1.6.

## 1.7    CREDIBILITY OF WITNESSES [AGREED]

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

**Source:**    Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia,* 04-876-GMS
(D.I. 343) § 1.7.

## 1.8    NUMBER OF WITNESSES [AGREED]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**Source:**    Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; Uniform Instructions § 1.8; *CellPro*, 894 F. Supp. at 830-31; *Telcordia*, 04-876-GMS (D.I. 343) § 1.8.

## 1.9    EXPERT TESTIMONY [AGREED]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**Source:**    Miscellaneous Jury Instructions (GMS) Rev: 1/18/06; *Telcordia,* 04-876-GMS (D.I. 343) § 1.9.

## 2.    THE PARTIES' CONTENTIONS

### 2.1    THE PARTIES [AGREED]

The plaintiff and counterclaim defendant is U.S. Philips Corporation. U.S. Philips Corporation asserts that it owns United States Patent No. 4,901,075. The defendant and counterclaim plaintiff in this case is Eastman Kodak Company. For convenience, I will refer to the plaintiff and counterclaim defendant as Philips and the defendant and counterclaim plaintiff as Kodak. As I noted at the start of the trial, I will refer to the asserted patent by its last three numbers: the '075 patent.

**Source:**    Adapted from Uniform Instructions § 2.1; *Telcordia,* 04-876-GMS (D.I. 343) § 2.1.

## 2.2    PHILIPS' CONTENTIONS [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Philips contends that Kodak has infringed claims 3, 4, 7, 8, and 11 of Philips' '075 patent by making, using, selling and offering for sale image encoding products that fall within or perform methods falling within the scope of one or more of those claims, and by inducing and contributing to infringement by others.

Philips contends that Kodak's infringement of the '075 patent is willful.

Philips contends that it has been damaged by Kodak's infringement of the '075 patent, and that Philips is thus entitled to, among other things, an award of a reasonable royalty, as provided by statute.

Philips contends that none of the asserted claims of the '075 patent is invalid or unenforceable for any of the reasons alleged by Kodak.

Philips contends that Kodak's claims and defenses of negligent misrepresentation, fraud, and deceptive trade practices are not supported by the facts and should be rejected.

**Source:**    Adapted from Uniform Instructions § 2.2; *Telcordia*, 04-876-GMS (D.I. 343) § 2.2.

**[KODAK'S OBJECTIONS]**

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

Philips contends that Kodak has infringed claims 3, 4, 7, 8, and 11 of Philips' '075 patent by making, using, selling and offering for sale image encoding products that fall within or perform methods falling within the scope of one or more of those claims, and by inducing and contributing to infringement by others.

Philips contends that Kodak's infringement of the '075 patent was willful.

Philips contends that it has been damaged by Kodak's infringement of the '075 patent, and that Philips is thus entitled to, among other things, an award of a reasonable royalty.

Philips contends that none of the asserted claims of the '075 patent is invalid or unenforceable for any of the reasons alleged by Kodak.

Philips contends that Kodak's claims and defenses of fraud, equitable estoppel, negligent misrepresentation, deceptive trade practices and laches are not supported by the facts and should be rejected.

**Source:**      Adapted from Uniform Instructions § 2.2; *Telcordia,* 04-876-GMS (D.I. 343) § 2.2.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches in the jury instructions, which are equitable issues for the Court to decide. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1292 (Fed. Cir. 1992) (citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1028 (Fed.Cir. 1992)))); *Cox v. Keystone Carbon Co.,* 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson*

*v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (*citing Cox*, 894 F.2d at 649-50).

## 2.3    KODAK'S CONTENTIONS [DISPUTED]

### [PHILIPS' INSTRUCTION]

Defendant Kodak contends that it does not infringe any of the asserted claims of the '075 patent.

Kodak contends that it has not willfully infringed any claim of the '075 patent.

Kodak contends that the Philips' patent is invalid in view of the prior art.

Kodak contends that Philips engaged in deceptive trade practices, fraud, and negligent misrepresentation.

**Source:**    Adapted from Uniform Instructions § 2.3; *Telcordia,* 04-876-GMS (D.I. 343) § 2.3.

### [KODAK'S OBJECTIONS]

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's claim for damages based on Kodak's state law counterclaims. The Seventh Amendment guarantees a right to a jury trial for civil causes of action based on the common law. U.S. Const. Amend. VII; *Benjamin v. Traffic Executive Ass'n Eastern Railroads* 869 F.2d 107, 114 (2d Cir. 1989). Fraud and negligent misrepresentation "are claims at law which the Seventh Amendment right to a jury trial attaches." *In re Tou Houa Thao,* 2006 WL 3716055 at *2 (Bkrtcy.W.D. Mo. 2006). And the Seventh Amendment applies to statutory actions such as those brought under Delaware's Deceptive Trade Practices Act. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989). Kodak has a constitutional right to present its damages claims to the jury. Kodak has quantified those damages and Philips has not sought summary judgment on this issue. Therefore, Kodak is entitled to the instruction.

Kodak further objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak

18

acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

Kodak contends that it does not infringe any of the asserted claims of the '075 patent.

Kodak contends that the '075 patent is invalid in view of the prior art.

Kodak contends that Philips is not entitled to any damages for any alleged infringement.

Kodak contends that it has not willfully infringed any claim of the '075 patent.

Kodak contends that Philips engaged in fraud, negligent misrepresentation, and deceptive trade practices.

Kodak contends that it has been damaged by Philips' fraud and/or negligent misrepresentation and that Kodak is, without limitation, entitled to the costs associated with defending against Philips' claims.

Kodak contends that the '075 patent is unenforceable against Kodak based on equitable estoppel.

Kodak contends that any damages for which it may be found liable are limited to those occurring after Philips filed suit based on the doctrine of laches.

**Source:**     Adapted from Uniform Instructions § 2.3; *Telcordia,* 04-876-GMS (D.I. 343) § 2.3.

**[PHILIPS' OBJECTIONS]**

Philips objects to the inclusion of equitable estoppel and laches in the jury instructions, which are equitable issues for the Court to decide. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the

sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (*citing Cox*, 894 F.2d at 649-50).

Philips also objects to Kodak's proposed instruction that it is entitled to claim as damages under its fraud and negligent misrepresentation counterclaims the costs associated with defending against Philips' claims of infringement, which is contrary to the law. *See MBKS Co. Ltd. v. Reddy*, 924 A.2d 965, 977 (Del. Ch. 2007) (explaining that under the "American Rule" litigants generally bear their own costs of litigation); *Brice v. State Dept. of Correction*, 704 A.2d 1176, 1178 (Del. 1998) (same).

## 2.4    SUMMARY OF PATENT ISSUES [DISPUTED]

**[PHILIPS' INSTRUCTION]**

The following is a brief summary of the patent issues that you will be asked to decide:

1.    Whether Philips has proven by a preponderance of the evidence that Kodak's manufacture, use, sale and/or offer for sale of the accused products, or the methods practiced by the products, infringe any of the asserted claims of Philips' '075 patent.

2.    If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, whether Philips has established by clear and convincing evidence that Kodak's infringement was willful.

3.    If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, what amount of damages due to the infringement Philips has proven by a preponderance of the evidence.

4.    Whether Kodak has proven by clear and convincing evidence that any of the asserted claims of Philips' '075 patent are invalid.

5.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in deceptive trade practices.

6.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in fraud.

7.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in negligent misrepresentation.

**Source:**    Adapted from Uniform Instructions § 2.4; *CellPro*, 894 F. Supp. at 831; *Telcordia*, 04-876-GMS (D.I. 343) § 2.4.

21

**[KODAK'S OBJECTIONS]**

Kodak objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's claim for damages based on Kodak's state law counterclaims. The Seventh Amendment guarantees a right to a jury trial for civil causes of action based on the common law. U.S. Const. Amend. VII; *Benjamin v. Traffic Executive Ass'n Eastern Railroads* 869 F.2d 107, 114 (2d Cir. 1989). Fraud and negligent misrepresentation "are claims at law which the Seventh Amendment right to a jury trial attaches." *In re Tou Houa Thao,* 2006 WL 3716055 at *2 (Bkrtcy.W.D. Mo. 2006). And the Seventh Amendment applies to statutory actions such as those brought under Delaware's Deceptive Trade Practices Act. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989). Kodak has a constitutional right to present its damages claims to the jury. Kodak has quantified those damages and Philips has not sought summary judgment on this issue. Therefore, Kodak is entitled to the instruction.

Kodak further objects on the grounds that Philips' proposed instruction fails to include or mention Kodak's affirmative defenses of equitable estoppel and laches. Although Kodak acknowledges these are equitable issues, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

**[KODAK'S INSTRUCTION]**

The following is a brief summary of the patent issues that you will be asked to decide:

1.    Whether Philips has proven by a preponderance of the evidence that Kodak's manufacture, use, sale and/or offer for sale of the accused products, or the methods practiced by the products, infringe any of the asserted claims of Philips' '075 patent.

22

2.    If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, whether Philips has established by clear and convincing evidence that Kodak's infringement was willful.

3.    If you find that Kodak has infringed any of the asserted claims of Philips' '075 patent, what amount of damages due to the infringement Philips has proven by a preponderance of the evidence.

4.    Whether Kodak has proven by clear and convincing evidence that any of the asserted claims of Philips' '075 patent are invalid.

5.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in fraud.

6.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in negligent misrepresentation.

7.    If you find that Philips has engaged in fraud and/or negligent misrepresentation, what amount of damages has Kodak proven by a preponderance of the evidence.

8.    Whether Kodak has proven by a preponderance of the evidence that Philips engaged in deceptive trade practices.

9.    Whether the '075 patent is unenforceable against Kodak due to equitable estoppel.

10.    Whether Kodak has proven by a preponderance of the evidence that Philips' damages, if any, should be limited to those occurring before Philips filed suit based on laches.

**Source:**    Adapted from Uniform Instructions § 2.4; *CellPro*, 894 F. Supp. at 831; *Telcordia*, 04-876-GMS (D.I. 343) § 2.4.

23

[PHILIPS' OBJECTIONS]

Philips objects to the inclusion of equitable estoppel and laches in paragraphs 9 and 10, which are equitable issues for the Court to decide. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50).

Philips also objects to paragraph 7, which asks the jury to decide damages for Kodak's fraud and negligent misrepresentation counterclaims. Kodak claims as damages for its state law claims: (1) its litigation expenses in defending Philips infringement suit; and (2) whatever damages it may be required to pay for its infringement of Philips' patent. For those two theories, the Court, not the jury, must determine the amount of damages, because Kodak will not be able to prove until after trial the amount of any adverse damage award for which it is liable or its litigation expenses. The amount of damages for which Kodak is liable may be affected by decisions the Court must make if the jury were to find that Kodak willfully infringed Philips' patent, or if the Court were to find in favor of Kodak on its equitable defenses of equitable estoppel and laches. Likewise, the litigation expenses (even if Kodak were entitled to claim them as damages for its fraud and negligent misrepresentation counterclaims, which it is not) will not be quantifiable until after trial. *See TruePosition Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 465 (D. Del. 2007) (deferring alleged relief for fraud, based on possible infringement

24

damages and attorneys fees, for the Court's consideration after trial); *Acierno v. Goldstein*, No. Civ. A. 20056-NC, 2005 WL 3111993, at *6 (Del. Ch. Nov. 16, 2005) ("Delaware law does not permit the fact finder to supply a damages figure based on 'speculation or conjecture' where the plaintiff has failed to meet its burden of proof on damages." (citing *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1950))).

## 3.    INFRINGEMENT

### 3.1    CLAIM INFRINGEMENT [AGREED]

Before you can decide whether Kodak has infringed the '075 patent, you will have to understand the patent "claims." Patent claims define, in words, the boundaries of what Philips claims as its invention. The patent claims are the numbered paragraphs at the end of the patent. The patent claims at issue here are claims 3, 4, 7, 8, and 11 of the '075 patent, beginning at column 7, line 41 of the patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. The specification and drawings merely describe certain embodiments of the invention. Limitations of those embodiments may not be incorporated into the claims. Each of the claims must be considered individually, and to show infringement of a patent, Philips need only establish that one claim of the patent has been infringed.

**Source:**    Adapted from Uniform Instructions § 3.1; *CellPro*, 894 F. Supp. at 831-32; *Telcordia*, 04-876-GMS (D.I. 343) § 3.1.

26

## 3.2    CONSTRUCTION OF CLAIMS [AGREED]

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of the terms the Court construed. You must use the meaning that I give you for each patent claim to make your decisions as to whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or attorneys.

It may be helpful to refer to the copy of the '075 patent that you have been given as I discuss the claims at issue here. The claims of the '075 patent are toward the end, starting in column 7. The claims of the patent at issue are 3, 4, 7, 8, and 11.

1.    The term "coefficient" is construed to mean "a multiplication factor that results from transform coding."

2.    The term "zero coefficient" is construed to mean "a coefficient whose value is zero or approximately zero."

3.    The term "non-zero coefficient" is construed to mean "a coefficient whose possible magnitudes proceed through the natural numbers without the zero."

4.    The term "code word" is construed to mean "a sequence of bits assigned to represent a particular event or events in accordance with a predefined set of rules."

5.    The term "assigning a code word to represent said run length and said non-zero coefficient" is construed to have its plain and ordinary meaning.

6.    The term "Huffman codeword" is construed to mean "a sequence of bits assigned to represent a particular event or events in accordance with a predefined set of rules with the following characteristics: (i) the code words may be of different lengths; (ii) no code word is a prefix of another code word; and (iii) the predefined set of rules strives to minimize the average code word length by exploiting the distribution of event probabilities."

27

7. The term "Huffman codeword is independent of the sign of that nonzero coefficient" is construed to have its plain and ordinary meaning.

8. The term "the sign is coded by a separate bit" is construed to have its plain and ordinary meaning.

9. The term "event" is construed to mean "a run of zero coefficients and the value of the non-zero coefficient which immediately precedes or follows that run."

10. The term "run" is construed to mean "a sequence, of zero or more length, of successive identical particular values."

11. The term "run length" is construed to mean "the number, which can be zero, of identical particular values in a run."

12. The term "transform" is construed to mean "a mathematical operation which yields an alternative representation of a sequence or array of values."

13. The term "transforming" is construed to mean "performing a mathematical operation which yields an alternative representation of a sequence or array of values."

14. The term "a blockwise transform of pixels" is construed to mean "a mathematical operation which yields an alternative representation of a block of pixels."

15. The term "a sequence of coefficients which results after a blockwise transform of pixels of a video signal with subsequent quantization" is construed to have its plain and ordinary meaning.

16. The term "signal comprising a sequence of coefficients which results after a blockwise transform of pixels of a video signal" limits the claim in which it appears and is construed to have its plain and ordinary meaning.

17. The term "transforming said signal" is construed to mean "performing a

mathematical operation which yields an alternative representation of a sequence or array of values."

18.     The term "transforming said signal into a sequence comprising zero coefficients occurring in runs and non-zero coefficients" is construed to mean "performing a mathematical operation on a sequence or array of values that yields an alternative representation comprising zero coefficients occurring in runs and non-zero coefficients."

19.     The term "signal" is construed to mean "a sequence or array of values that represents information."

20.     The term "video signal" is construed to mean "a sequence of values that represents sequential and interdependent image frames that when rapidly displayed are capable of depicting movement."

21.     The term "for transmission at a reduced bit rate" is not a claim limitation and is construed to mean "for transmission with fewer bits per pixel."

22.     The term "for transmission at a reduced bandwidth" is not a claim limitation and is construed to mean "for transmission at fewer bits per second."

23.     The term "determining whether the run length of each event exceeds a predetermined run length" is construed to have its plain and ordinary meaning.

24.     The term "splitting said respective event into a plurality of sections" is construed to have its plain and ordinary meaning.

25.     The term "assigning a code word to each section" is construed to have its plain and ordinary meaning.

26.     The term "coding" is construed to have its plain and ordinary meaning.

**Source:**    Adapted from [Proposed] Uniform Jury Instructions for Patent Cases in The
United States District Court for the District of Delaware (2004) ("2004 Uniform
Instructions") § 3.3.2.

### 3.3    DEPENDENT AND INDEPENDENT CLAIMS [AGREED]

There are two different types of claims in the patent. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependant claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 3 is an independent claim. You know this because this claim mentions no other claim. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 4, on the other hand, is a dependent claim. Accordingly, the words of Claims 3 and 4 must be read together in order to determine what the dependent Claim 4, covers.

Some claims of the patent-in-suit are broader than other claims.. You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.

**Source:**        Adapted from Uniform Instructions § 3.3.

### 3.4    PATENT INFRINGEMENT—GENERALLY [AGREED]

A patent confers on its owner the right to exclude others from importing, making, using, selling or offering to sell the patented invention in the United States during the term of its patent. The patent owner may enforce this right by filing a lawsuit for patent infringement. Here, Philips, the patent owner, has sued Kodak and has alleged that certain of Kodak's products infringe claims 3, 4, 7, 8, and 11 of Philips' '075 patent.

Any person or business entity which imports, makes, uses, sells or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent. You must decide whether Philips has proven, by a preponderance of the evidence, that the defendant's products or methods infringe any of the asserted claims of the '075 patent.

There are three ways to infringe a patent. One may: (1) directly infringe a patent; (2) induce others to infringe a patent, in which case the inducer is liable for infringement as well as the direct infringer; or (3) contribute to the infringement of a patent by another by supplying a component specially designed for the patented invention, in which case both the direct infringer and the contributory infringer would be liable for patent infringement. Next, I will explain each type of infringement more completely.

**Source:**    Adapted from Uniform Instructions § 3.4; *CellPro*, 894 F. Supp. at 834; *Telcordia,* 04-876-GMS (D.I. 343) § 3.3.

### 3.5    DIRECT INFRINGEMENT [AGREED]

Kodak is liable for directly infringing Philips' '075 patent if you find that Philips has proven, by a preponderance of the evidence, that Kodak has imported, made, used, sold, or offered to sell the invention defined in any one or more of claims 3, 4, 7, 8, and 11 of Philips' '075 patent.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent. He may directly infringe even though in good faith he believes that what he is doing is not an infringement of any patent.

**Source:**    Adapted from Uniform Instructions § 3.5; *Telcordia*, 04-876-GMS (D.I. 343) § 3.4.

### 3.6    INDIRECT INFRINGEMENT [AGREED]

Philips asserts that Kodak indirectly infringes Philips' '075 patent.  There are two kinds of indirect infringement:  (1) inducement to infringe; and (2) contributory infringement.  Both types of indirect infringement require that Philips prove that someone other than Kodak directly infringes the patent claim by making, using, selling, offering for sale or importing a Kodak product in a way that includes all of the requirements of the asserted claims.  Kodak can be liable for indirect infringement only where its sale of a product results in a direct infringement.  Therefore, Kodak can only be liable for acts of indirect infringement stemming from specific instances of direct infringement.

**Source:**        Adapted from 2004 Uniform Instructions § 3.7; *Telcordia,* 04-876-GMS (D.I. 343) § 3.4.1.

### 3.6.1   INDUCING PATENT INFRINGEMENT [AGREED]

To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product or perform a method in a manner that you find infringes the asserted patent claims. For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that Kodak induced infringement of the '075 patent, Philips must prove by a preponderance of the evidence each of the following four things with respect to that patent and that Defendant:

1.    Kodak had knowledge of the patent;

2.    Kodak actively encouraged or instructed another person how to use a product [or perform a process] in a way you, the jury, finds infringes the patent claims;

3.    Kodak had an affirmative intent to cause the acts that constitute direct infringement and must have known or should have known that its action would cause direct infringement; and

4.    The induced person directly infringed a claim of the patent.

All four of these things must be proven by either direct or circumstantial evidence before you may find that Kodak induced patent infringement.

**Source:**    Adapted from 2004 Uniform Instructions § 3.8; *Telcordia,* 04-876-GMS (D.I. 343) § 3.5.

## 3.6.2   CONTRIBUTORY INFRINGEMENT [AGREED]

Kodak may also be infringing if they contribute to infringement by others. The elements of contributory infringement are:

1.     sale or supply by Kodak;

2.     of a material component of the patented invention, or a material component for use in practicing a patented process, that is not a staple article of commerce capable of substantial noninfringing use;

3.     with knowledge of the patent and with knowledge that the component was especially made or adapted for use in infringement of such invention.

A "staple" article is a commodity or product with substantial uses apart from a patented invention. In determining whether the component supplied by Kodak is a "staple article of commerce," you should take into account the quality, quantity, and efficiency of Kodak's suggested uses for its products.

Kodak can be liable for contributory infringement if a patent claim is directly infringed by one of its customers. Proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

**Source:**     Adapted from Uniform Instructions § 3.7; *Telcordia,* 04-876-GMS (D.I. 343) § 3.6.

36

### 3.7    LITERAL INFRINGEMENT [AGREED]

There are two ways in which a patent claim may be directly infringed. First, a claim may be literally infringed. Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

A patent claim is literally infringed if the defendant's product or method includes each and every component, or limitation, of that claim. If Kodak's products or methods include each and every limitation of any claim of the '075 patent, then Kodak infringes that claim. You must conduct this comparison for each asserted claim of the patent. Infringement may not be avoided simply by adding features or components or method steps not required by the claims. If Kodak's products or methods do not meet any single limitation of any asserted claim of the '075 patent, then there is no literal infringement. You must determine literal infringement with respect to each patent claim, and each product and method, individually.

**Source:**     Adapted from Uniform Instructions § 3.8; *Telcordia,* 04-876-GMS (D.I. 343) § 3.7.

### 3.8    DOCTRINE OF EQUIVALENTS [AGREED]

If you do not find literal infringement, you may consider infringement under the "doctrine of equivalents." You may find that Kodak's products and methods infringe a claim, even if not all of the components or method steps of the claim are literally present in Kodak's products. You may find infringement in such circumstances if the components or method steps of Kodak's products are equivalent to that claimed in at least one of the '075 patent claims. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalents is whether Kodak's products and components and methods involve no substantial differences from the inventions claimed in the '075 patent. One way to determine if the differences are substantial is to determine whether each component of Kodak's products, or each method step in Kodak's methods, perform substantially the same function in substantially the same way to produce substantially the same result as the corresponding component or method step claimed in the '075 patent. However, the doctrine of equivalents is applied on a limitation by limitation basis. Therefore, if any limitation is substantially different, there is no infringement under the doctrine of equivalents.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent

issued. The question of whether Kodak's products and/or methods and components are equivalent to that defined in Philips' claims is to be determined as of the time of the alleged infringement.

**Source:**     Adapted from Uniform Instructions § 3.9; *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1015-16 (Fed. Cir. 1998).

### 3.9    INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS [AGREED]

You may find that Kodak's accused products or methods represent an improvement over the invention defined in the '075 patent claims. You may have even seen and heard evidence that Kodak obtained patents on its products or methods. However, you are not to presume that this means that Kodak cannot infringe the '075 patent claims. As long as Kodak's accused products or methods include all of the elements of at least one of the '075 patent claims, or if Kodak's accused products or methods are found to be equivalent under the doctrine of equivalents, then the '075 patent claims are infringed by Kodak's products despite any improvements made or patents obtained by Kodak.

**Source:**      Adapted from Uniform Instructions § 3.16; *Telcordia,* 04-876-GMS (D.I. 343) § 3.10.

### 3.10    WILLFUL INFRINGEMENT [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Philips asserts that Kodak has willfully infringed Philips' '075 patent.  If you find that Kodak's products infringe at least one of Philips' '075 patent claims, you must further decide whether or not Philips has proven by clear and convincing evidence that Kodak's infringement was willful.

Willful infringement is established where Philips has proven 1) that Kodak was aware of the '075 patent, and 2) that Kodak infringed *despite an objectively high likelihood that its actions constituted infringements of a valid patent.

The law requires that a potential infringer having actual notice of another's patent has an affirmative duty to use due care.

In determining whether Kodak willfully infringed Philips' patent, you must consider the totality of the circumstances, which may include contribution of several factors.  These factors include but are not limited to:

(1)    Whether Kodak, when it learned of Philips' patent protection, investigated the scope of the patent and formed a good faith belief that the patent was invalid or unenforceable or that it was not infringed before Kodak started or continued any possible infringing activity;

**(2)    Whether Kodak, when it learned of the Philips' patent protection sought and obtained legal advice before continuing to engage in activity that may result in infringement.

(3)    Whether Kodak reasonably believed that it had a substantial defense to

infringement and reasonably believed that the defense would be successful if

litigated;

(4)    Whether Kodak made a good faith effort to avoid infringing the patent, for

example, by taking remedial action upon learning of the patent by ceasing

infringing activity or attempting to design around the patent; and

(5)    ***Whether Kodak previously had been licensed or offered a license.

In assessing these various factors and deciding whether or not Kodak willfully infringed

the patent, you need not find that all of the factors are present. In addition, no one or more of

these factors are determinative. Rather, you must decide, based on the evidence that is presented

to you, whether you find clear and convincing evidence that the alleged infringement was willful.

**Source:**    Adapted from Uniform Instructions § 3.18; *In re Seagate Tech.,LLC*, 497 F.3d
1360, 1371 (Fed. Cir. 2007); **Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96
F.3d 1409, 1414 (Fed. Cir. 1996); ***SRI Int'l, Inc. v. Advanced Tech. Labs.,
Inc.*, 127 F.3d 1462, 1464-66 (Fed. Cir. 1997) ; *Read Corp. v. Portec, Inc.*, 970
F.2d 816, 826-27 (Fed. Cir. 1992) (superseded on other grounds as recognized in
*Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)).

## [KODAK'S OBJECTIONS]

Philips' instruction is not consistent with the current case law. In particular, Philips'

inclusion of whether Kodak sought and obtained legal advice is contrary to the Federal Circuit's

holding in *Knorr-Bremse*. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,

383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc) ("[I]t is inappropriate to draw an adverse

inference that undisclosed legal advice for which attorney-client privilege is claimed was

unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to

consult counsel.").

Kodak's proposed instruction is adapted directly from the American Intellectual Property Law Association's 2007 Model Patent Jury Instructions which, contrary to Philips' assertion below, is post-*Seagate* and in fact cites the *Seagate* decision. The 2007 AIPLA instruction specifically notes that the factor of "'whether the Defendant relied on competent legal advice,' should only be included in the instruction if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement." AIPLA Model Patent Jury Instructions, No. 13 (2007). Kodak is not relying on advice of counsel as a defense to willful infringement and, therefore, Philips' instruction is contrary to current law.. The 2007 AIPLA Model Patent Jury Instructions are available at:

http://www.aipla.org/Content/Microsites117/Patent_Litigation1/Committee_Documents19/Repor ts19/AIPLA_Model_Patent_Jury_Instructions/CleanAIPLA2007ModelJuryInstructions.pdf

Finally, to the extent the Court finds that Philips' instruction is appropriate, Kodak requests that the jury be instructed that the law imposes "no affirmative obligation to obtain opinion of counsel." *In re Seagate Tech.,LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

**[KODAK'S INSTRUCTION]**

If you find by a preponderance of the evidence that Kodak infringed the '075 patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

1.    Kodak had actual knowledge of the '075 patent;

2.    A reasonable person, with knowledge of the '075 patent, would have concluded that: (a) Kodak's actions were highly likely to infringe the '075 patent, and (b) the '075 patent was highly likely to be valid; and

43

3.      Kodak acted even though Kodak knew, or it was so obvious that Kodak should have known, that Kodak's actions were highly likely to infringe the '075 patent.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include but are not limited to whether Kodak intentionally copied the claimed invention or product covered by the '075 patent and whether Kodak presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

**Source:**      ˙ Adapted from AIPLA Model Patent Jury Instructions, No. 13; *In re Seagate Technology, LLC,* 497 F.3d 1360, 83 U.S.P.Q.2d 1865 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

## [PHILIPS' OBJECTIONS]

Kodak relies on AIPLA Model Jury Instruction No. 13, dated February 2006, which interprets the *Knorr-Bremse* case. AIPLA's pre-*Seagate* instruction includes the advice of counsel as an optional factor, with the following footnote:

> This factor, "whether the Defendant relied on competent legal advice," should only be included if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement. "[I]t is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to consult counsel." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

AIPLA Model Patent Jury Instructions (Feb. 2006), available at

http://www.aipla.org/Content/ContentGroups/Publications1/Publications_available_for_viewing

1/MPJ_word_021006.doc, p. 46.

Contrary to the AIPLA Model Instructions' suggestion limiting the use of the legal advice instruction, *Knorr-Bremse* does not provide for completely removing the "opinion of counsel" factor from the jury's consideration, as Kodak did. This Court analyzed *Knorr-Bremse*

in a virtually identical context and held that "*Knorr-Bremse* left untouched the totality of the

circumstances standard that the jury may consider in its willful infringement analysis," noting

further that subsequent cases applying *Knorr-Bremse* have held that "[t]he fact that no opinion of

counsel on the issue of infringement was acquired by [the] defendant may be considered by the

trier of fact in its willful infringement analysis, but no inference may be drawn to suggest that

such an opinion, had it been acquired, would have been unfavorable to [the] defendant."

*Telcordia Tech., Inc. v. Lucent Tech., Inc.*, No. 1:04–cv–00875-GMS, slip op. at 9-10 (D. Del.

Apr. 24, 2007) (Sleet, J.) (citations omitted).  The Court allowed the plaintiff to introduce

evidence of the defendant's failure to obtain legal advice about the patent-in-suit.  *Id.* at 11.

In a more recent, post-*Seagate*, decision, this Court held that "nothing in *Seagate* forbids

a jury to consider whether a defendant obtained advice of counsel as part of the totality of the

circumstances in determining willfulness . . . ."  *Energy Transp. Group, Inc. v. William Demant

Holding A/S*, C.A. No. 05-422 GMS, 2008 WL 114861, at *1 (D. Del. Jan. 7, 2008).

Philips further objects to Kodak's introduction of "a reasonable person" in element 2 of

Kodak's instruction.  Nowhere has Kodak defined or provided a legal standard for determining

who a "reasonable person" is.

### 4.   VALIDITY DEFENSES

### 4.1   ANTICIPATION [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak contends that the invention defined in the claims of Philips' patent is not new or novel. Something that shows that a patent claim is not novel is said to anticipate that claim. Several different types of events may anticipate and invalidate a patent claim. Here, Kodak contends that the claims are anticipated by publications or patents which, if they meet certain requirements, may be "prior art." I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in Philips' patent for anticipation, Kodak must prove, by clear and convincing evidence for each claim, that each and every limitation of the claimed invention is found in a single piece of prior art. The absence from the single piece of prior art of even a single claim limitation negates anticipation. ~~Stated another way, Kodak may not rely on the evidence beyond the piece of prior art "self" such as testimony by the prior art's inventor's author, to supplement or fill gaps in the teachings of the prior art~~. To meet its burden, Kodak must prove by clear and convincing evidence that:

    1)    the material upon which it relies is "prior art" under the law;

    2)    if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

    3)    the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that Kodak has failed to meet its burden with respect to any of these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipates a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the

46

limitations of the claimed invention is found in a single piece of prior art. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. To prove that a limitation is inherent in a piece of prior art, Kodak must show, by clear and convincing evidence, that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art. Inherency may not be established by probabilities or possibilities. Thus, the allegedly inherent property must always be present. The mere fact that a certain thing may result from a given set of circumstances is not enough.

Accordingly, the claims of the '075 patent are anticipated if each and every element of the claimed invention was disclosed in a single prior art reference before September 11, 1986.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by Kodak. There are additional requirements that apply to each kind of anticipation that Kodak contends apply here, and I will discuss those further.

**Source:**     Adapted from Uniform Instructions § 4.2; *Telcordia*, 04-876-GMS (D.I. 343) § 4.3.

## [KODAK'S OBJECTIONS]

Philips instruction is inconsistent with the case law and the facts and evidence in the present case. Kodak has asserted that the Widcom VTC-56 machine (a product) is prior art to the '075 patent and anticipates the '075 patent. However, Philips jury instruction does not describe that a product (on sale or used) can be anticipatory prior art. The sentence that begins with "Accordingly" does not describe all of the events in which a piece of prior art is anticipatory prior art.

**[KODAK'S INSTRUCTION]**

Kodak contends that the invention defined in the claims of the '075 patent is not new or novel. Something that shows that a patent claim is not novel is said to anticipate that claim. Several different types of events may anticipate and invalidate a patent claim. Here, Kodak contends that the claims are anticipated by publications, patents or products which, if they meet certain requirements, may be "prior art." I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in the '075 patent for anticipation, Kodak must prove, by clear and convincing evidence for each claim, that each and every limitation of the claimed invention is found expressly or inherently in a single piece of prior art. The absence from the single piece of prior art of even a single claim limitation negates anticipation. To meet its burden, Kodak must prove by clear and convincing evidence that:

1.      the material upon which it relies is "prior art" under the law;

2.      if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

3.      the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that Kodak has failed to meet its burden with respect to any of these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipates a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the limitations of the claimed invention is found in a single piece of prior art. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. To prove that a limitation is inherent in a piece of

prior art, Kodak must show, by clear and convincing evidence, that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art. Inherency may not be established by probabilities or possibilities. Thus, the allegedly inherent property must always be present. The mere fact that a certain thing may result from a given set of circumstances is not enough.

Accordingly, the claims of the '075 patent are anticipated if: 1) each and every element of the claimed invention was disclosed in a single prior art reference ~~or in public use or on sale before September __, 1983. 2) each and every element was known or used by others or described in a printed publication before the invention thereof; or if the claimed invention was described in a patent granted on application for patent by another filed in the United States before the invention by Philips~~.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by Kodak. There are additional requirements that apply to each kind of anticipation that Kodak contends apply here, and I will discuss those further.

**Source:**    Adapted from Uniform Instructions § 4.4; *Telcordia*, 04-876-GMS (D.I. 343) § 4.3.

## [PHILIPS' OBJECTIONS]

Kodak has provided no support for deleting the third sentence in the second paragraph from the standard instruction (shown in grey background in Philips' instruction), which explains an important point and was used by this Court in April 2007 in the *Telcordia* case. If Kodak restores it, Philips will agree to Kodak's additions to the penultimate paragraph (shown in grey background in Kodak's instruction).

49

## 4.2    WHAT IS PRIOR ART [AGREED]

As previously discussed, for Kodak to prevail on an anticipation defense as to any asserted claim, Kodak must prove, by clear and convincing evidence, not only that the material relied upon contains each and every limitation of the claims of the '075 patent, but also that the material relied upon is legally available as prior art.  Because Kodak relies on different types of alleged prior art, I will discuss what is required for various categories of material to be legally available as prior art.  If you determine that any of the material or events on which Kodak relies is not prior art, then you must disregard that material or event, because it can have no effect on the validity of the patent.

**Source:**       *Telcordia*, 04-876-GMS (D.I. 343) § 4.4.

### 4.2.1   PRINTED PUBLICATIONS AS PRIOR ART [AGREED]

Kodak contends that claims 3, 4, 7, and 8 of the '075 patent were anticipated because the inventions defined by those claims were described in a printed publication. Kodak must prove this by clear and convincing evidence.

A printed publication may be prior art if it was sufficiently accessible to interested members of the public either more than one year before the U.S. filing date of the patent-in-suit (or the filing date of the parent application in the case of a reissued patent), or before the inventor made the invention. Books, periodicals, or newspapers of general circulation are common examples of printed publications. In the other extreme, information that can only be located in a person's private files or a company's private files is not a printed publication. Documents disseminated to a degree between these extremes may constitute printed publications under certain circumstances. Documents maintained in a library, for example, may constitute printed publications if the public could, by reference to a subject matter index, locate and access the document without restriction.

The existence or lack of confidentiality restrictions on the document is one factor to consider in determining whether the document was sufficiently accessible. The mere lack of a confidentiality label, however, does not compel the conclusion that the document constitutes a printed publication. Rather, there still must be clear and convincing evidence of actual dissemination.

Even if a reference meets the conditions I just discussed, it still will not qualify as invalidating prior art unless it meets the so-called "enablement" requirement. Enablement requires that the disclosure of the reference be sufficiently detailed to enable one skilled in the art to practice the reference's teachings without undue experimentation. This requirement ensures that the subject matter of the reference was truly put into the possession of the public, thereby

operating as a surrender of patent rights to that same subject matter. If a reference does not enable one skilled in the art to practice the reference's teachings without undue experimentation, then it cannot be used to invalidate a patent claim. Shortly, I will list various factors to consider when evaluating the issue of undue experimentation.

**Source:**      Adapted from Uniform Instructions § 4.8.1; *CellPro*, 894 F. Supp. at 840; *Telcordia*, 04-876-GMS (D.I. 343) § 4.4.1.

### 4.2.2   PRIOR UNITED STATES PATENT APPLICATION [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak contends that Claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was embodied in a prior patent application. A patent may be found invalid if the claimed invention was described in a patent granted on an application as filed by another in the United States before the invention was made by Plaintiff. *The filing of a patent application in Germany by Philips served as the invention date of the subject matter described in that patent application.

In order for the '075 patent to be anticipated by a prior United States patent application, Defendant must prove the following:

1.    There is another patent with inventors other than the named inventor;

2.    The application for that other patent was filed in the United States before September 13, 1986; and

3.    The other patent describes what the named inventor claimed in the '075 patent.

**Source:**    2004 Uniform Instruction § 4.6; *Hyde v. Boone*, 146 F.3d 1348 (Fed. Cir. 1998).

**[KODAK'S OBJECTION]**

Philips instruction is not consistent with the case law. In particular, the filing of the German patent application can only serve as an invention date for the '075 patent if the German patent application meets the requirements of best mode, written description and enablement which is not clearly stated in Philips instruction.

**[KODAK'S INSTRUCTION]**

Kodak contends that claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was embodied in a prior patent application. A patent may be found invalid if the claimed invention was described in a patent granted on an application as filed

by another in the United States before the invention was made by Plaintiff. The patent may be entitled to an earlier invention date based on a priority date.

The "priority date" of the '075 patent is the earliest date on which Philips filed with the German patent office an application containing a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

In order for the '075 patent to be anticipated by a prior United States patent application, Defendant must prove the following:

1.     There is another patent with inventors other than the named inventor;

2.     The application for that other patent was filed in the United States before the "priority date" of the '075 patent; and

3.     The other patent describes what the named inventor claimed in the '075 patent.

**Source:**     2004 Uniform Instruction § 4.6; *Hyde v. Boone,* 146 F.3d 1348 (Fed. Cir. 1998).

**[PHILIPS' OBJECTION]**

Philips objects to Kodak's proposed instruction to the extent it states contentions or theories that have not been adequately disclosed to Philips or are not supported by the evidence and/or expert testimony. Specifically, Philips objects to Kodak's removing the September 13, 1986, date from the instruction when Kodak has provided no support for its contention that the '075 patent is not entitled to the September 13, 1986 priority date, since Kodak's expert did not offer any opinion on the '075 patent's priority date.

Philips also objects to the paragraph defining the priority date of the '075 patent.

Kodak's instruction misstates the law, is not supported by case law, and will confuse the jury.

### 4.2.3    PRIOR PUBLIC USE/SALE [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak contends that Claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was publicly used prior to September 13, 1986.

The "public use" of a completed invention before September 13, 1986, invalidates the patent. An invention is publicly used when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor. Thus, a patent is not invalidated if the particular device, composition, or process is used by someone other than the inventor, under circumstances where it is not made accessible to the public.

If the prior public use was an experimental use that was performed to perfect or complete the invention to determine that it will work for its intended purpose, that use will not invalidate the patent.

**Source:**        2004 Uniform Instruction § 4.5.2.

**[KODAK'S OBJECTION]**

The '075 patent is not entitled to the September 13, 1986 priority date indicated in Philips' instruction.

**[KODAK'S INSTRUCTION]**

Kodak contends that claims 3, 4, 7, and 8 of the '075 patent were anticipated because the invention defined in those claims was publicly used prior to the "priority date" of the '075 patent.

The "public use" of a completed invention before the priority date, invalidates the patent. An invention is publicly used when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor. Thus, a patent

is not invalidated if the particular device, composition, or process is used by someone other than the inventor, under circumstances where it is not made accessible to the public.

If the prior public use was an experimental use that was performed to perfect or complete the invention to determine that it will work for its intended purpose, that use will not invalidate the patent.

**Source:**        2004 Uniform Instruction § 4.5.2.

**[PHILIPS' OBJECTION]**

Philips objects to Kodak's proposed instruction to the extent it states contentions or theories that have not been adequately disclosed to Philips or are not supported by the evidence and/or expert testimony.  Specifically, Philips objects to Kodak's removing the September 13, 1986, date from the instruction when Kodak has provided no support for its contention that "'075 patent is not entitled to the September 13, 1986 priority date," since Kodak's expert did not offer any opinion on the '075 patent's priority date.

### 4.2.4   REFERENCES DESCRIBING THE INVENTOR'S WORK [AGREED]

References describing the inventor's own work published less than one year before the United States application filing date are not prior art that will render the invention anticipated or obvious.  It does not matter whether the article was authored by the inventor or someone else.  So long as the article describes the inventor's own work, it cannot be used as prior art to invalidate the claimed invention.

**Source:**       *Telcordia,* 04-876-GMS (D.I. 343) § 4.4.2.

### 4.3    OBVIOUSNESS [AGREED]

Even though an invention claimed in Philips' patent is not anticipated by the prior art, the claimed invention may nevertheless be invalid if it would have been obvious to one of skill in the art at the time the invention was made.

In order to prove that the invention claimed in the claims of Philips' patent is invalid for obviousness, Kodak must prove, by clear and convincing evidence for each claim, that the differences between the subject matter of the claimed invention and the prior art are such that the subject matter of the claim taken as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the relevant art.

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining whether or not Kodak has established obviousness by clear and convincing evidence, you must consider the following factors:

1.    The scope and content of the prior art relied upon by Kodak;

2.    The differences between each claim of Philips' patent and the prior art;

3.    The level of ordinary skill in the pertinent art at the time the invention of Philips' patent was made; and

4.    Any objective indicia of non-obviousness.

I will now explain each of these factors.

**Source:**    Adapted from 2004 Uniform Instructions § 4.8; *CellPro*, 894 F. Supp. at 837; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.

### 4.3.1  SCOPE AND CONTENT OF THE PRIOR ART [AGREED]

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if, although in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have presented itself as worthy of an inventor's attention in considering his problem. Scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look at in solving a particular problem. Non-analogous, or non-pertinent art cannot render a patent claim obvious. The prior art includes the following:

1.  Prior patents that issued before the date of invention or more than one year before the filing date of the patent-in-suit;

2.  Prior publications having a publication date before the date of invention or more than one year before the filing date of the patent-in-suit;

3.  U.S. Patents that have a filing date prior to the date of invention of the patent-in-suit;

4.  Anything in public use or on sale in the United States more than one year before the filing date of the patent-in-suit;

5.  Anything that was publicly known or publicly used by others in this country before the date of invention of the patent-in-suit;

6.  Anything that was made or built or any process that was used in this country by another person before the date of invention of the patent-in-suit, where the thing

made or built or the process used was not abandoned, suppressed or concealed; and

7.    Anything that, although not publicly known at the time of the invention, existed before the claimed invention, but was not invented by any of the inventors of the patent-in-suit, was known to the inventor(s) prior to invention, and from which the named inventors derived the claimed invention.

As you did in considering Kodak's anticipation contentions, you must first determine whether the material or events relied on by Kodak are "prior art." If these materials or events are the same as those relied on by Kodak in alleging anticipation, your determination should be the same here. Thus, if you previously found that something did not qualify as "prior art" for anticipation purposes, it is likewise not prior art for the obviousness determination.

You must then consider what the qualifying prior art would have taught to one skilled in the art at the time of the invention.

**Source:**    Adapted from Uniform Instructions § 4.8.1, *CellPro*, 984 F. Supp. at 837; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.1.

### 4.3.2   DIFFERENCES OVER THE PRIOR ART [AGREED]

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

**Source:**        Adapted from Uniform Instructions § 4.8.2; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.2.

### 4.3.3   LEVEL OF ORDINARY SKILL [AGREED]

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  The issue of obviousness is determined entirely with reference to a hypothetical person having ordinary skill in the art.  It is only that hypothetical person who is presumed to be aware of all the pertinent prior art.  The actual inventor's skill is irrelevant to the inquiry.  A person of ordinary skill in the art is also presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

**Source:**     Adapted from Uniform Instructions § 4.8.3; *Telcordia*, 04-876-GMS (D.I. 343)
§ 4.5.3.

### 4.3.4    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS) [AGREED]

In deciding whether a claimed invention is obvious, you must consider the following objective evidence which may show that the claims at issue are not obvious:

1.    Commercial success of products covered by Philips' '075 patent. Evidence concerning commercial success may take the form of sales figures coupled with market share data, or sales figures alone. The commercial success may be shown through the sales of anyone practicing the claimed invention, including Kodak.

2.    A long-felt need in the art which was satisfied by the invention of the patent-in-suit;

3.    The failure of others to make the invention;

4.    Unexpected results achieved by the invention;

5.    Praise of the invention by those in the field;

6.    The taking of licenses under the patent by others; and

7.    Initial skepticism of the invention by those in the field.

There must be a connection between the evidence showing any of these factors and the claimed invention.

**Source:**    Adapted from Uniform Instructions § 4.8.4; *Telcordia*, 04-876-GMS (D.I. 343) § 4.5.4.

5.    STANDARDS SETTING CLAIMS AND DEFENSES

5.1    EQUITABLE ESTOPPEL [DISPUTED]

[KODAK'S INSTRUCTION]

Kodak contends that Philips is equitably estopped from asserting the '075 patent against Kodak.   A finding of equitable estoppel bars Philips from seeking relief for Kodak's infringement of the '075 patent.

To prevail on this defense, Kodak must prove, by a preponderance of the evidence, that:

1.    Philips, through misleading words, conduct, or silence, led Kodak to reasonably infer that Philips would not assert the '075 against the JPEG Standard.  Silence alone will not create an estoppel unless there was a duty to speak; and

2.    Kodak would be harmed if Philips is now permitted to proceed with its infringement claim.  This harm suffered by Kodak must be the result of Kodak's reliance on Philips' words, conduct or silence.

Source:    *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992); *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001); *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 775 (Fed. Cir. 1995).

[PHILIPS' OBJECTIONS]

Equitable estoppel is an issue for the Court to decide, not the jury.  *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, C.A. No. 2:06-CV-3814-LDD,

2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50). Philips does

not agree that equitable estoppel should be decided by the jury, and will oppose an advisory

verdict on this equitable issue.  If the Court were to permit an advisory jury, Philips reserves its

rights to object to this proposed instruction and to propose its own.

**[KODAK'S RESPONSE]**

    Although Kodak acknowledges this is an equitable issue, given the substantial factual and

evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with

all issues being presented before the jury for advisory verdicts would promote judicial economy.

Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

## 5.2    FRAUD [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak alleges that Philips committed fraud, causing damage to Kodak.  To prove that Philips committed fraud, for each accused product Kodak must prove, by a preponderance of the evidence, all five of the following elements:

1) Philips made a false representation of a fact that is important to another;

2) Philips knew or believed that this representation was false, or made it with reckless indifference to the truth;

3) Philips intended to induce Kodak to act on the false representation, or to decline to act;

4) Kodak acted, or declined to act, in justifiable reliance on the false representation; and

5) Kodak was damaged as a result of this reliance.

A false representation may be asserted by words or conduct.  A fact is important if it would cause a reasonable person to decide to act in a particular way, or if the maker of the misrepresentation knew another person would regard it as important.

Fraud may occur if Philips deliberately concealed facts important to a transaction, causing Kodak to rely on the deception to its detriment.  This concealment can occur by a person's silence in the fact of a duty to disclose the facts or by some action taken to prevent Kodak from discovering the facts important to the transaction. *Silence alone will not give rise to fraud unless there was a duty to speak.

If Kodak was aware of the true facts of the transaction, even if they were concealed by Philips, or if Kodak did not rely on the concealment of these facts, then there is no fraud.

67



**Source:**     Adapted from Delaware Superior Court Instructions §§ 16.1, 16.3, 16.4; *Rambus v. Infineon*, 318 F.3d 1081, 1096, 1102 (Fed. Cir. 2003); ** *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999).

## [KODAK'S OBJECTIONS]

Kodak objects to Philips' instruction on the grounds that the proposed language from *Rambus v. Infineon* is taken out of context and is misleading. The cited language relates to the Court's discussion regarding whether a member's plans or intentions to file or amend patent applications fell within the scope of the standards-setting committee's patent disclosure policy. *Rambus v. Infineon*, 318 F.3d 1081, 1102 (Fed. Cir. 2003). The Court was merely observing that if a standards-setting body intends its patent disclosure policy to require disclosure of future intentions, it could be drafted accordingly. *See id.* In the present case, Philips' failed to disclose an existing patent which clearly falls within all relevant policies.

Further, the cited language is misleading. In the same case, the Federal Circuit found that although the relevant patent disclosure policy statements did not impose any direct disclosure duty on members, "because [the] members treated the language … as imposing a duty," the court nevertheless found that a duty existed. *Rambus*, 318 F.3d at 1098. This finding contradicts the proposed language that Philips takes out of context.

Next, Kodak objects to Philips' proposed language set forth in the last paragraph of its proposed instruction. The cited case, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures*

*Indus., Inc.*, 508 U.S. 49 (1993), involves the issue of what constitutes "sham" litigation for purposes of establishing an exception to *Noerr* antitrust immunity. *Id.* at 51. Nothing cited by Philips supports the proposition that this language is in any way applicable to Kodak's fraud counterclaim. This instruction is simply inappropriate.

In addition, because this case involves misleading silence, it is appropriate that the listed elements in the beginning of the instruction include the appropriate language, which Philips' instruction omits.

Finally, Kodak objects to Philips' proposed language requiring Kodak to prove fraud "for each accused product." Philips provides no support for this language and it is inappropriate and confusing.

## [KODAK'S INSTRUCTION]

Kodak alleges that Philips committed fraud, causing damage to Kodak. To prove that Philips committed fraud, Kodak must prove, by a preponderance of the evidence, all five of the following elements:

1.    Philips made a false representation of an important fact either by affirmative conduct or misleading silence. Silence alone will not give rise to fraud unless there was a duty to speak;

2.    Philips knew or believed that this representation was false, or made it with reckless indifference to the truth;

3.    Philips intended to induce Kodak to act on the false representation, or to decline to act;

4.    Kodak acted, or declined to act, in justifiable reliance on the false representation; and

5.    Kodak was damaged as a result of this reliance.

A fact is important if it would cause a reasonable person to decide to act in a particular way, or if the maker of the misrepresentation knew another person would regard it as important.

Fraud may occur if Philips deliberately concealed important facts, causing Kodak to rely on the deception to its detriment.  This concealment can occur by a person's silence despite a duty to disclose the facts, or by some action taken to prevent Kodak from discovering the important facts.

If Kodak was aware of the true facts of the transaction, even if they were concealed by Philips, or if Kodak did not rely on the concealment of these facts, then there is no fraud.

**Source:**    Adapted from Delaware Superior Court Instructions §§ 16.1, 16.3, 16.4.

**[PHILIPS' OBJECTIONS]**

Philips is willing to agree to Kodak's instruction provided Kodak allows the insertion of the highlighted holdings from *Rambus v. Infineon* and *Prof'l Real Estate Iinvestors.*

### 5.3    NEGLIGENT MISREPRESENTATION [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak alleges that Philips committed negligent misrepresentation, causing damage to Kodak.  To prove that Philips committed negligent representation, for each accused product Kodak must prove, by a preponderance of the evidence, all four of the following elements:

(1) Philips had a particular duty to provide accurate information based on Kodak's pecuniary interest in that information;

(2) Philips supplied false information;

(3) Philips failed to exercise reasonable care in obtaining or communicating information; and

(4) Kodak suffered a pecuniary loss caused by justifiable reliance upon the false information.

*Silence alone will not give rise to negligent misrepresentation unless there was a duty to speak.  A standards-setting organization's policy that does not define clearly what, when, how, and to whom the members must disclose does not provide a firm basis for the disclosure duty necessary for a negligent misrepresentation verdict.

**Kodak claims that it was damaged by Philips' bringing and maintaining this infringement litigation.  In order to find that Kodak was damaged by Philips' bringing and maintaining this infringement litigation, you must find that Philips' claims of infringement were objectively baseless and were brought in an attempt to use the litigation to interfere directly with the business relationships of Kodak.

**Source:**        *Atwell v. Rhis, Inc.*, 2006 WL 2686532, at *1 (Del. Super. Ct. Aug. 18, 2006); *H.M. Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. 2003); *\*Rambus v. Infineon*, 318 F.3d 1081, 1096, 1102 (Fed. Cir. 2003); ** *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999).

**[KODAK'S OBJECTIONS]**

Kodak objects to Philips proposed construction on the grounds that it does not cover circumstances involving omitted material facts. A claim of negligent misrepresentation, or equitable fraud, requires proof of all of the elements of common law fraud except "that plaintiff need not demonstrate that the misstatement or <u>omission</u> was made knowingly or recklessly." *Williams v. White Oak Builders, Inc.*, No. Civ.A. 17556, 2006 WL 1668348, *7 (Del.Ch. June 6, 2006) (emphasis added); *Eames v. Nationwide Mut. Ins. Co.*, 412 F.Supp.2d 431, 437 (D.Del.,2006); *Those Certain Underwriters at Lloyd's London v. National Installment Ins. Services, Inc.* No. Civ.A. 19804-NC, 2007 WL 1207106, at *4 (Del.Ch.Feb. 8, 2007). Because negligent misrepresentation, like fraud, can be established with silence in the face of a duty to speak, Kodak's proposed language cures the deficiency in Philips' proposed instruction.

Kodak objects to Philips' instruction on the grounds that the proposed language from *Rambus v. Infineon* is taken out of context and is misleading. The cited language relates to the Court's discussion regarding whether a member's plans or intentions to file or amend patent applications fell within the scope of the standards-setting committee's patent disclosure policy. *Rambus v. Infineon*, 318 F.3d 1081, 1102 (Fed. Cir. 2003). The Court was merely observing that if a standards-setting body intends its patent disclosure policy to require disclosure of future intentions, it could be drafted accordingly. *See id.* In the present case, Philips' failed to disclose an existing patent which clearly falls within all relevant policies.

Further, the cited language is misleading. In the same case, the Federal Circuit found that although the relevant patent disclosure policy statements did not impose any direct disclosure duty on members, "because [the] members treated the language ... as imposing a duty," the court nevertheless found that a duty existed. *Rambus*, 318 F.3d at 1098. This finding contradicts the

proposed language that Philips takes out of context.

Next, Kodak objects to Philips' proposed language set forth in the last paragraph of its proposed instruction. The cited case, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993), involves the issue of what constitutes "sham" litigation for purposes of establishing an exception to *Noerr* antitrust immunity. *Id.* at 51. Nothing cited by Philips supports the proposition that this language is in any way applicable to Kodak's fraud counterclaim. This instruction is simply inappropriate.

Finally, Kodak objects to Philips' proposed language requiring Kodak to prove negligent misrepresentation "for each accused product." Philips provides no support for this language and it is inappropriate and confusing.

**[KODAK'S INSTRUCTION]**

Kodak alleges that Philips committed negligent misrepresentation, causing damage to Kodak. To prove that Philips committed negligent representation, Kodak must prove, by a preponderance of the evidence, all four of the following elements:

1.    Philips had a duty to provide accurate information based on Kodak's financial interest in that information;

2.    Philips supplied false information or omitted material facts;

3.    Philips failed to exercise reasonable care in obtaining or communicating the information or omitting material facts; and

4.    Kodak suffered a financial loss caused by justifiable reliance upon the false information or omission.

**Source:**    *Atwell v. Rhis, Inc.*, No. 02C-12-003WLW, 2006 WL 2686532, at *1 (Del. Super. Ct. Aug. 18, 2006); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch.

2003); *In re Medical Wind Down Holdings III, Inc.*, 332 B.R. 98, 102 (Bankr. D.Del. 2005).

**[PHILIPS' OBJECTIONS]**

The instruction with the asterisk in Philips' proposed instruction should be included to parallel the same duty referred to in the fraud instruction, based on *Rambus v. Infineon*, 318 F.3d 1081, 1096, 1102 (Fed. Cir. 2003). Kodak also does not include the obligation to prove that Philips' claims of infringement were objectively baseless and were brought in an attempt to use the litigation to interfere directly with the business relationships of Kodak, as required by *Prof'l Real Estate Investors*.

## 5.4    DAMAGES – FRAUD OR NEGLIGENT MISREPRESENTATION [DISPUTED] [KODAK'S INSTRUCTION]

If you find that Philips has committed fraud or negligent misrepresentation, then Kodak is entitled to damages that will put it in the same financial position that would have existed had Philips' representation been true.  In this case, Kodak would be entitled to be placed in the same financial position that would have existed if Philips had no patents applicable to the JPEG Standard.  Such damages may include costs Kodak has incurred associated with Philips' lawsuit and any damages associated with Kodak's alleged infringement of the '075 patent.

**Source:**    Adapted from Delaware Superior Court Instructions § 22.17.

### [PHILIPS' OBJECTIONS]

Philips objects to this instruction, because the jury cannot determine damages for Kodak's fraud and negligent misrepresentation counterclaims.  Kodak claims as damages for its fraud and negligent misrepresentation counterclaims: (1) its litigation expenses in defending Philips infringement suit; and (2) whatever damages it may be required to pay for its infringement of Philips' patent.  For those two theories, the Court, not the jury, must determine the amount of damages, because Kodak will not be able to prove until after trial the amount of any adverse damage award for which it is liable or its litigation expenses.  The amount of damages for which Kodak is liable may be affected by decisions the Court must make if the jury were to find that Kodak willfully infringed Philips' patent, or if the Court were to find in favor of Kodak on its equitable defenses of equitable estoppel and laches.  Likewise, the litigation expenses (even if Kodak were entitled to claim them as damages for its fraud and negligent misrepresentation counterclaims, which it is not) will not be quantifiable until after trial.  *See TruePosition Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 465 (D. Del. 2007) (deferring alleged relief for fraud, based on possible infringement damages and attorneys fees, for the Court's

consideration after trial); *Acierno v. Goldstein*, No. Civ. A. 20056-NC, 2005 WL 3111993, at *6

(Del. Ch. Nov. 16, 2005) ("Delaware law does not permit the fact finder to supply a damages

figure based on 'speculation or conjecture' where the plaintiff has failed to meet its burden of

proof on damages." (citing *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1950))).

Philips also objects to Kodak's proposed instruction that it is entitled to claim as damages

under its fraud and negligent misrepresentation counterclaims the costs associated with

defending against Philips' claims of infringement, which is contrary to the law. *See MBKS Co.

Ltd. v. Reddy*, 924 A.2d 965, 977 (Del. Ch. 2007) (explaining that under the "American Rule"

litigants generally bear their own costs of litigation); *Brice v. State Dept. of Correction*, 704 A.2d

1176, 1178 (Del. 1998) (same).

**[KODAK'S RESPONSE]**

Kodak's instruction is appropriate.  The Seventh Amendment guarantees a right to a jury

trial for civil causes of action based on the common law.  U.S. Const. Amend. VII; *Benjamin v.

Traffic Executive Ass'n Eastern Railroads*  869 F.2d 107, 114 (2d Cir. 1989).  Fraud and

negligent misrepresentation "are claims at law which the Seventh Amendment right to a jury trial

attaches." *In re Tou Houa Thao*, 2006 WL 3716055 at *2 (Bkrtcy.W.D. Mo. 2006).  And the

Seventh Amendment applies to statutory actions such as those brought under Delaware's

Deceptive Trade Practices Act.  *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).

Kodak has a constitutional right to present its damages claims to the jury.  Kodak has quantified

those damages and Philips has not sought summary judgment on this issue.  Therefore, Kodak is

entitled to the instruction.

### 5.5     DECEPTIVE TRADE PRACTICES [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Kodak alleges that Philips engaged in deceptive trade practices in violation of Delaware's Deceptive Trade Practices Act. To prove that Philips violated Delaware's Deceptive Trade Practices Act, for each accused product Kodak must prove, *by a preponderance of the evidence, all four of the following elements:

1) Philips caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2) Philips caused a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

3) Philips disparaged the goods, services, or business of another by false or misleading representation of fact; or

4) Philips engaged in any other conduct which similarly created a likelihood of confusion or of misunderstanding.

In determining whether a likelihood of confusion exists, you should consider the following factors:

1)  the degree of similarity between the marks;

2)  the similarity of products for which the name is used;

3)  the area and manner of concurrent use;

4)  the degree of care likely to be exercised by consumers;

5)  the strength of the plaintiff's mark;

6)  whether there has been actual confusion; and

7)  the intent of the party to palm off his products as those of another.

**Source:**     6 Del. C. § 2532(a)(2)-(a)(3), (a)(8), (a)(12); *Roberts v. Am. Home Warranty*, 514 A.2d 1132 (Del. Sup. Ct. 1986); *Draper Commc'ns, Inc. v. Delaware Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1290 (Del.Ch. 1985); *Copi of Delaware, Inc. v. Kelly*, 1996 WL 633302, at *7 (Del. Ch. Oct. 25, 1996).

## [KODAK'S OBJECTIONS]

Kodak objects to Philips proposed instruction on the grounds that it improperly imposes a requirement to establish four separate elements. Each element identified by Philips constitutes a stand alone violation of the Delaware Deceptive Trade Practices Act.

Kodak also objects to Philips language requiring Kodak to prove a violation of the Act for "each accused product." Philips provides no support for this language and it is inappropriate and confusing.

Kodak objects to Philips' proposed instruction as misleading on the grounds that Philips includes language from the statute relating to violations involving trademark actions. The Delaware Deceptive Trade Practices Act is not solely limited to trademark actions. The Act forbids disparagement of the business of another by false or misleading misrepresentations of fact. *EDIX Media Group, Inc. v. Mahani*, 2006 WL 3742595, 12 (Del.Ch. Dec. 12, 2006). Kodak's proposed instruction excludes Philips' unnecessary and misleading language and applies the statute appropriately.

## [KODAK'S INSTRUCTION]

Kodak alleges that Philips engaged in deceptive trade practices in violation of Delaware's Deceptive Trade Practices Act. To prove that Philips violated Delaware's Deceptive Trade Practices Act, Kodak must prove, by a preponderance of the evidence, that:

1.     Philips caused a likelihood of confusion or of misunderstanding as to the applicability of the '075 patent to Kodak's products that practice the JPEG standard by failing to disclose the '075 patent to the JPEG committees and failing to raise the patent

with Kodak before 2002;

2.      Philips caused a likelihood of confusion or of misunderstanding by attempting to

enforce the '075 patent against Kodak's products that practice the JPEG Standard;

3.      Philips disparaged the goods, services, or business of Kodak by false or

misleading representation of fact; or

4.      Philips engaged in any other conduct which similarly created a likelihood of

confusion or of misunderstanding.

**Source:**       6 Del. C. § 2532(a)(2)–(a)(3), (a)(8), (a)(12); *Roberts v. Am. Warranty Corp.*, 514
A.2d 1132 (Del. Sup. Ct. 1986); *Draper Commc'ns, Inc. v. Delaware Valley
Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1290 (Del.Ch. 1985); *Copi of
Delaware, Inc. v. Kelly*, No. 14529, 1996 WL 633302, at *7 (Del. Ch. Oct. 25,
1996).

## [PHILIPS' OBJECTIONS]

Kodak appears to be trying to rewrite the statute. Its changes to paragraph nos. 1 and 2

do not appear in the language of the statute. Kodak has provided no support for its changes.

Moreover, to the extent Kodak proposes to include a failure to disclose standard for deceptive

trade practices, it should at least parallel the failure to disclose standard set for fraud set forth

above regarding a duty to speak.

## 6.    DAMAGES - INFRINGEMENT

### 6.1    COMPENSATORY DAMAGES IN GENERAL [AGREED]

If you find that one or more of Kodak's products infringes at least one valid claim of the '075 patent, you must determine the amount of damages to be awarded to Philips for the infringement. By statute, the amount of those damages must be adequate to compensate Philips for the infringement, but in no event may it be less than a "reasonable royalty." Damages "adequate to compensate" means "full compensation for 'any damages' [Philips] suffered as a result of the infringement."

**Source:**        Uniform Instructions § 6.1; *Telcordia*, 04-876-GMS (D.I. 343) § 6.1.

## 6.2     REASONABLE CERTAINTY [DISPUTED]

**[PHILIPS' INSTRUCTION]**

Philips bears the burden of proving patent infringement damages by a preponderance of the evidence and is entitled to all damages that can be proven with "reasonable certainty." You may base your evaluation of reasonable certainty on opinion evidence. The amount of damages must not be the result of mere speculation or guess-work. Philips, however, does not need to prove its damages with absolute certainty.

███████████████████████████████████████████████
█████████████████████████

**Source:**     Adapted from Uniform Instructions § 6.3.

**[KODAK'S OBJECTIONS]**

Kodak objects to Philips' proposed instruction on the grounds that the last paragraph is vague as to the terms "any doubts" and "computation" and renders the entire instruction confusing and prejudicial to Kodak. This paragraph is also unnecessary because the instruction already indicates that Philips' is not required to prove its damages with absolute certainty. Finally, the Court recently struck a similar instruction. *See Telcordia Tech. Inc. v. Cisco Sys. Inc.*, 04-876-GMS (D.I. 343) § 6.2.

**[KODAK'S INSTRUCTION]**

Philips bears the burden of proving patent infringement damages by a preponderance of the evidence and is entitled to all damages that can be proven with "reasonable certainty." You may base your evaluation of reasonable certainty on opinion evidence. The amount of damages must not be the result of mere speculation or guess-work. Philips, however, does not need to prove its damages with absolute certainty.

**Source:**     Adapted from Uniform Instructions § 6.3.

**[PHILIPS' OBJECTIONS]**

Kodak has offered no support for its deletion of the last paragraph from this standard instruction, shown in grey background above. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("[W]hen the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.")

### 6.3    ENTIRE MARKET VALUE RULE [AGREED]

Under the "entire market value" rule, a patent owner may recover damages based on the value of an entire apparatus or product containing several features, even though only one feature is patented, where the unpatented components function together with the patented components in some manner to produce a desired end product or result.  A patent owner may also recover damages under the entire market value rule where the infringing component was the basis of customer demand for the product.

**Source:**    Adapted from Uniform Instructions § 6.4; *Telcordia*, 04-876-GMS (D.I. 343) § 6.4.

## 6.4    REASONABLE ROYALTY AS A MEASURE OF DAMAGES [DISPUTED] [PHILIPS' INSTRUCTION]

By statute, Philips is entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for any infringing sales.  A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms-length negotiation between Philips and Kodak, assuming that both parties were willing to enter into a license and with both operating under the assumption that the patent is valid and is being infringed.  While the date of the hypothetical negotiation is the date on which infringement began, all relevant business facts (even those after the date of the hypothetical negotiation) are deemed known to both parties.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of Kodak, and who was willing to take a license, would have known that Philips' patent was valid and enforceable, and infringed by Kodak.

In determining the damages award you can take into consideration that Kodak did not initially take a license and that litigation ensued.  However, you may not enhance damages due to the litigation.

**Source:**    35 U.S.C. § 284; adapted from Uniform Instructions § 6.10, *Telcordia*, 04-876-GMS (D.I. 343) § 6.5.


## [KODAK'S OBJECTIONS]

Kodak objects to the final paragraph in Philips' proposed instruction.  Philips' proposed language is not supported by 35 U.S.C. § 284,  Uniform Instruction § 6.10, nor the factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.* 318 F. Supp. 1116 (S.D.N.Y. 1970).  Further, Philips' proposed language is confusing and contradicts itself to the extent it instructs the jury to "take into consideration" that litigation ensued but to "not enhance" damages due to the litigation.

**[KODAK'S INSTRUCTION]**

By statute, Philips is entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for any infringing sales. A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms-length negotiation between Philips and Kodak, assuming that both parties were willing to enter into a license and with both operating under the assumption that the patent is valid and is being infringed. While the date of the hypothetical negotiation is the date on which infringement began, all relevant business facts (even those after the date of the hypothetical negotiation) are deemed known to both parties.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of Kodak, and who was willing to take a license, would have known that the '075 patent was valid and enforceable, and infringed by Kodak.

**Source:**     35 U.S.C. § 284; adapted from Uniform Instructions § 6.10; *Telcordia*, 04-876-GMS (D.I. 343) § 6.5.

**[PHILIPS' OBJECTIONS]**

Kodak has offered no support for departing form the instruction used in the *Telcordia* case in April 2007 by removing the last paragraph from the instruction shown in grey background above.

## 6.5    FACTORS FOR DETERMINING REASONABLE ROYALTY [AGREED]

In determining a reasonable royalty, some of the factors that may be considered are:

1.      the royalties received by the patentee for licensing others under the patent-in-suit;

2.      the rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

3.      the nature and scope of the license, as exclusive or non-exclusive, or as restricted or unrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.      the licensor's established policy and marketing program to maintain his patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.      the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.      the duration of the patent and the term of the licenses;

8.      the established profitability of the product made under the patent, its commercial success, and its current popularity;

9.      the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.    the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.    the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.    the opinion testimony of qualified experts; and

15.    any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Source:**    Uniform Instructions § 6.11; *Telcordia*, 04-876-GMS (D.I. 343) § 6.6.

### 6.6    LACHES [DISPUTED]

**[KODAK'S INSTRUCTION]**

Kodak contends that any damages should be limited based on the defense of laches. A finding of laches bars Philips from collecting any damages occurring prior to when Philips filed this lawsuit – in this case, April 18, 2006. To prove laches, Kodak must prove, by a preponderance of the evidence, that:

1.    Philips engaged in unreasonable delay in filing suit based on when Philips knew or should have known that Kodak was infringing the '075 patent; and

2.    Philips' unreasonable delay in filing suit resulted in material harm to Kodak. This harm can be either economic or evidentiary.

If you find that Philips delayed over 6 years from the time it knew or should have known of Kodak's alleged infringement, laches is presumed and must be found absent credible evidence that either Philips' delay was reasonable or Kodak was not harmed.

**Source:**    *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992).

**[PHILIPS' OBJECTIONS]**

Laches is an equitable issue for the Court to decide, not the jury. *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court." (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (*citing A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992)))); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649-50 (3d Cir. 1990) (explaining that claims for equitable relief do not give rise to a right to a jury trial); *Gibson v. Hartford Life and Accident Ins. Co.*, No. 2:06-CV-3814-LDD, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (citing *Cox*, 894 F.2d at 649-50). Philips does

not agree that equitable estoppel should be decided by the jury, and will oppose an advisory verdict on this equitable issue.  If the Court were to permit an advisory jury, Philips reserves its rights to object to this proposed instruction and to propose its own.

**[KODAK'S RESPONSE]**

Although Kodak acknowledges this is an equitable issue, given the substantial factual and evidentiary overlap with Kodak's state law counterclaims, Kodak believes a combined trial with all issues being presented before the jury for advisory verdicts would promote judicial economy. Kodak respectfully requests the opportunity to address this issue at the pretrial conference.

## 6.7    CURATIVE INSTRUCTION [AGREED]

The fact that I have instructed you regarding damages should not be construed as indicating any view of the Court as to which party is entitled to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Philips.

**Source:**        Uniform Instructions § 6.13; *Telcordia*, 04-876-GMS (D.I. 343) § 6.7.

.

## 7.    DELIBERATION AND VERDICT

### 7.1    INTRODUCTION [AGREED]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. After you hear the closing arguments of counsel, you will return to the jury room to begin your deliberations. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. The first thing you should do is select a foreperson. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages should normally be sent to me through your foreperson.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**Source:**    Adapted from Uniform Instructions § 7.1; *Telcordia*, 04-876-GMS (D.I. 343) § 7.1.

## 7.2     UNANIMOUS VERDICT [AGREED]

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence, to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

**Source:**        Uniform Instructions § 7.2.

92

### 7.3     DUTY TO DELIBERATE [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that -- your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**Source:**        Uniform Instructions § 7.3.

### 7.4    COURT HAS NO OPINION [AGREED]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

**Source:**        Uniform Instructions § 7.4.

# EXHIBIT I4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| U.S. PHILIPS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-251 (GMS) |
| | ) |
| EASTMAN KODAK COMPANY, | ) |
| | ) |
| Defendant. | ) |

## EXHIBIT I4:  PLAINTIFF PHILIPS' PROPOSED VERDICT FORM

Plaintiff U.S. Philips Corporation ("Philips") hereby submits its proposed verdict form as of March 3, 2008.  Philips may submit revisions to its Proposed Verdict Form after meeting and conferring with Defendant Eastman Kodak Company ("Kodak") on outstanding trial management issues, after receiving the Court's rulings on the parties' respective motions *in limine*, and as necessary to conform to the evidence presented at trial and the rulings of the Court.

## INFRINGEMENT

We, the jury, unanimously find as follows:

Question No. 1:

Do you find that Philips has proven, by a preponderance of the evidence, that Kodak has infringed any of the following claims of Philips' U.S. Patent No. 4,901,075, either directly or indirectly, either literally or under the doctrine of equivalents?

Answer "Yes" or "No".

|  | Yes (For Philips) | No (For Kodak) |
|---|---|---|
| Claim 3 |  |  |
| Claim 4 |  |  |
| Claim 7 |  |  |
| Claim 8 |  |  |
| Claim 11 |  |  |

**WILLFULNESS**

Question No. 2:

Do you find that Philips has proven, by clear and convincing evidence, that Kodak's infringement of any one of Claims 3, 4, 7, 8, or 11 of Philips' U.S. Patent No. 4,901,075 was willful?

Answer "Yes" or "No".

| Yes (For Philips) | No (For Kodak) |
|---|---|
|  |  |

## ANTICIPATION

Question No. 3(a):

Do you find that Kodak has proven, by clear and convincing evidence, that any of the following claims of Philips' U.S. Patent No. 4,901,075 are invalid because each and every element of the invention defined in the claim of Philips' patent was disclosed in a single item of prior art relied upon by Kodak?

Answer "Yes" or "No".

|  | No<br>(For Philips) | Yes<br>(For Kodak) |
|---|---|---|
| Claim 3 |  |  |
| Claim 4 |  |  |
| Claim 7 |  |  |
| Claim 8 |  |  |

Question No. 3(b):

If you answered "Yes" to Question 3(a) with respect to any claim, please identify each item of prior art that you find rendered that claim invalid.

| | |
|---|---|
| Claim 3 | |
| Claim 4 | |
| Claim 7 | |
| Claim 8 | |

**OBVIOUSNESS**

Question No. 4(a):

Do you find that Kodak has proven, by clear and convincing evidence, that any of the following claims of Philips' U.S. Patent No. 4,901,075 are invalid because the claimed invention described in the claim would have been obvious to persons of ordinary skill in the art in view of the prior art at the time of the invention?

Answer "Yes" or "No".

| | No (For Philips) | Yes (For Kodak) |
|---|---|---|
| Claim 3 | | |
| Claim 4 | | |
| Claim 8 | | |
| Claim 11 | | |

Question No. 4(b):

If you answered "Yes" to Question 4(a) with respect to any claim, please identify the prior art that you find rendered that claim invalid.

| | |
|---|---|
| Claim 3 | |
| Claim 4 | |
| Claim 8 | |
| Claim 11 | |

## MONETARY DAMAGES FOR INFRINGEMENT

Question No. 5:

If you have found one or more claims of Philips' U.S. Patent No. 4,901,075 to be valid and infringed by Kodak, please identify the amount of monetary damages that will compensate Philips for Kodak's infringement.

$_____

**FRAUD**

Question No. 6:

Do you find that Kodak has proven, by a preponderance of the evidence, that Philips has committed fraud?

Answer "Yes" or "No".

| No<br>(For Philips) | Yes<br>(For Kodak) |
|---|---|
|  |  |

## NEGLIGENT MISREPRESENTATION

Question No. 7:

Do you find that Kodak has proven, by a preponderance of the evidence, that Philips has committed negligent misrepresentation?

Answer "Yes" or "No".

| No<br>(For Philips) | Yes<br>(For Kodak) |
|---|---|
|  |  |

## DECEPTIVE TRADE PRACTICES

Question No. 8:

Do you find that Kodak has proven, by a preponderance of the evidence, that Philips has engaged in deceptive trade practices in violation of Delaware's Deceptive Trade Practices Act?

Answer "Yes" or "No".

| No<br>(For Philips) | Yes<br>(For Kodak) |
|---|---|
|  |  |

# EXHIBIT I5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT I5:**
**EASTMAN KODAK COMPANY'S PROPOSED VERDICT FORM**

Defendant and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") hereby

submits its proposed verdict form as of March 3, 2008. Kodak reserves the right to submit

revisions to its Proposed Verdict Form after meeting and conferring with Plaintiff U.S. Philips

Corporation ("Philips") on outstanding trial management issues, after receiving the Court's

rulings on the parties' respective motions *in limine*, and as necessary to conform to the evidence

presented at trial and the rulings of the Court.

1

**INFRINGEMENT**

We, the jury, unanimously find as follows:

Question No. 1:

Do you find that Philips has proven, by a preponderance of the evidence, that Kodak has infringed any of the following claims of Philips' U.S. Patent No. 4,901,075, either directly or indirectly, either literally or under the doctrine of equivalents?

Answer "Yes" or "No".

|  | Yes (For Philips) | No (For Kodak) |
|---|---|---|
| Claim 3 |  |  |
| Claim 4 |  |  |
| Claim 7 |  |  |
| Claim 8 |  |  |
| Claim 11 |  |  |

# ANTICIPATION

Question No. 2:

Do you find that Kodak has proven, by clear and convincing evidence, that any of the following claims of Philips' U.S. Patent No. 4,901,075 are invalid because each and every element of the invention defined in the claim of Philips' patent was disclosed in a single item of prior art relied upon by Kodak?

Answer "Yes" or "No".

|  | Yes (For Kodak) | No (For Philips) |
|---|---|---|
| Claim 3 |  |  |
| Claim 4 |  |  |
| Claim 7 |  |  |
| Claim 8 |  |  |

**OBVIOUSNESS**

Question No. 3:

Do you find that Kodak has proven, by clear and convincing evidence, that any of the following claims of Philips' U.S. Patent No. 4,901,075 are invalid because the claimed invention described in the claim would have been obvious to persons of ordinary skill in the art in view of the prior art at the time of the invention?

Answer "Yes" or "No".

|  | Yes (For Kodak) | No (For Philips) |
|---|---|---|
| Claim 3 |  |  |
| Claim 4 |  |  |
| Claim 8 |  |  |
| Claim 11 |  |  |

4

## MONETARY DAMAGES FOR INFRINGEMENT

Question No. 4:

If you have found one or more claims of Philips' U.S. Patent No. 4,901,075 to be valid and infringed by Kodak, please identify the amount of monetary damages that will compensate Philips for Kodak's infringement.

$ _____

_____

**WILLFULNESS**

Question No. 5:

Do you find that Philips has proven, by clear and convincing evidence, that Kodak's infringement of any one of Claims 3, 4, 7, 8, or 11 of Philips' U.S. Patent No. 4,901,075 was willful?

| Yes<br>(For Philips) | No<br>(For Kodak) |
| --- | --- |
|  |  |

**FRAUD**

Question No. 6(a):

Do you find that Kodak has proven, by a preponderance of the evidence, that Philips has committed fraud?

Answer "Yes" or "No".

| Yes<br>(For Kodak) | No<br>(For Philips) |
|---|---|
|  |  |

7

Question No. 6(b):

If you have answered "Yes" to Question 6(a), please identify the amount of monetary damages that will compensate Kodak for Philips' conduct.

$ _____

## NEGLIGENT MISREPRESENTATION

Question No. 7(a):

Do you find that Kodak has proven, by a preponderance of the evidence, that Philips has committed negligent misrepresentation?

Answer "Yes" or "No".

| Yes (For Kodak) | No (For Philips) |
|---|---|
|  |  |

Question No. 7(b):

If you have answered "Yes" to Question 7(a), please identify the amount of monetary damages that will compensate Kodak for Philips' conduct.

_____

$ _____

# DECEPTIVE TRADE PRACTICES

Question No. 8:

Do you find that Kodak has proven, by a preponderance of the evidence, that Philips has engaged in deceptive trade practices in violation of Delaware's Deceptive Trade Practices Act?

Answer "Yes" or "No".

| Yes<br>(For Kodak) | No<br>(For Philips) |
|---|---|
|  |  |

# EQUITABLE ESTOPPPEL

Question No. 9:

Do you find that Kodak has proven, by a preponderance of the evidence, that Philips' U.S. Patent No. 4,901,075 is unenforceable against Kodak due to equitable estoppel?

Answer "Yes" or "No".

| Yes<br>(For Kodak) | No<br>(For Philips) |
|---|---|
|  |  |

# EXHIBIT I6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXHIBIT I6: PHILIPS' PROPOSED VOIR DIRE

1.   Good morning, ladies and gentlemen, I am about to ask you a series of questions that we call voir dire.  The purpose of the voir dire examination is:

   (a)   to enable the court to determine whether or not any prospective juror should be excused for cause;

   (b)   to enable counsel for the parties to exercise their individual judgment with respect to peremptory challenges — that is, challenges for which counsel need not give a reason.

2.   If any of you answer "yes" to any of these questions, I would ask you to stand up and, upon being recognized by me, to state your name.  At the end of the questions, I will ask those who have responded "yes" to any of the questions to come to sidebar (that is, up to the bench next to me) with counsel for the parties to discuss your answers.

3.   This case is expected to take 7 days to try.  The schedule that I expect to maintain over those 7 days will be as follows:

   We will normally begin the day at 9:00 a.m. promptly.  We will go until 1:00 p.m. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 p.m.  There will be a fifteen minute break at 11:00 a.m. and another fifteen minute break at 3:15 p.m.  One exception to this schedule may occur when the case is submitted to those of you who are selected to serve as jurors for your deliberation.  On that day, the proceedings might last beyond 4:30 p.m.  We will post a copy of this schedule for the jury's convenience in the jury deliberation room.

   Does the length of this trial or the schedule contemplated by the court present a special problem to any member of the panel?

4.   This case is an action for patent infringement arising under the patent laws of the United States. The plaintiff in this case is U.S. Philips Corporation (or simply "Philips"). The defendant in this case is Eastman Kodak Company (or simply "Kodak").

For those of you selected to serve as jurors, I will give you more detailed instructions regarding the meaning of the word infringement once you are sworn in as jurors and again at the conclusion of the trial. For now, I will simply tell you that Kodak is accused by Philips of infringing Philips' patent-in-suit by importing, manufacturing, using, selling, and offering for sale certain digital cameras and other image encoding hardware and software products. Philips contends that Kodak's products infringed Philips' patent, and seeks damages for this alleged infringement. Kodak denies that it has infringed Philips' patent and contends that Philips' patent is not infringed, not valid, and not enforceable.

Has any member of the panel heard or read anything about this case?

5.   Have you or any member of your immediate family (spouse, child, parent or sibling) ever been employed by Philips or Kodak?

6.   Have you or any member of your immediate family ever owned stock in any of these companies?

7.   Have you or any member of your immediate family ever had a business relationship of any kind with any of these companies?

8.   To the best of your knowledge, have you or any member of your family had any negative or positive experience with the products of any of these companies?

9.   Have you or, to the best of your knowledge, any member of your immediate family, had any experiences with any of these companies that might keep you from being a fair and impartial juror?

10.  Do you possess any opinions about any of these companies that might keep you from being a fair and impartial juror?

11.  HAVE COUNSEL INTRODUCE THEMSELVES.

Does any member of the panel, or your immediate family, know any of the attorneys involved in the case or have you or any of your immediate family had any business dealings with or been employed by any of these attorneys or their respective law firms?

12.  HAVE COUNSEL IDENTIFY ALL POTENTIAL WITNESSES.

Does any member of the panel know or is any member of the panel familiar with any of the prospective witnesses?

13. Have you ever worked in the fields of data compression or digital imaging, or for a company that makes digital cameras, digital camcorders, or other digital imaging equipment?

14. Do you believe companies frequently try to infringe or violate the patent rights of other companies?

15. Have you or any member of your immediate family ever been employed by the United States Patent and Trademark Office or the United States Department of Commerce?

16. Do you hold any opinions about the U.S. Patent and Trademark Office or the U.S. Department of Commerce that might keep you from being a fair and impartial juror?

17. Do you have any opinions about the relationship between patents and the public interest that might keep you from being a fair and impartial juror?

18. Have you or anyone in your immediate family ever applied for or obtained a patent in the U.S. or abroad?

19. Have you or any member of your immediate family ever had an experience with patents or the patent system that has resulted in feelings that might keep you from being a fair and impartial juror?

20. Have you ever served as a juror in a criminal or a civil case or as a member of a grand jury in either a federal or state court?

21. Have you or has anyone in your immediate family ever participated in a lawsuit as a party or in any other capacity (such as a plaintiff, defendant, or witness)?

22. Is there any member of the panel who has any special disability or problem that would make serving as a member of the jury difficult or impossible?

23. Having heard the questions put to you by the court, does any other reason suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the court's instructions to you on the law?

# EXHIBIT I7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT I7:**
**EASTMAN KODAK COMPANY'S PROPOSED VOIR DIRE**

1.    Good morning, ladies and gentlemen, I am about to ask you a series of questions that we call voir dire.  The purpose of the voir dire examination is:

(a)    to enable the court to determine whether or not any prospective juror should be excused for cause;

(b)    to enable counsel for the parties to exercise their individual judgment with respect to peremptory challenges — that is, challenges for which counsel need not give a reason.

2.    If any of you answer "yes" to any of these questions, I would ask you to stand up and, upon being recognized by me, to state your name.  At the end of the questions, I will ask those who have responded "yes" to any of the questions to come to sidebar (that is, up to the bench next to me) with counsel for the parties to discuss your answers.

3.    This case is expected to take 7 days to try.  The schedule that I expect to maintain over those 7 days will be as follows:

We will normally begin the day at 9:00 a.m. promptly.  We will go until 1:00 p.m. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 p.m.  There will be a fifteen minute break at 11:00 a.m. and another fifteen minute break at 3:15 p.m.  One exception to this schedule may occur when the case is submitted to those of you who are selected to serve as jurors for your deliberation.  On that day, the proceedings might last beyond 4:30 p.m.  We will post a copy of this schedule for the jury's convenience in the jury deliberation room.

Does the length of this trial or the schedule contemplated by the court present a special problem to any member of the panel?

4.    This case is an action for patent infringement arising under the patent laws of the United States. The plaintiff in this case is U.S. Philips Corporation (or simply "Philips"). The defendant in this case is Eastman Kodak Company (or simply "Kodak").

For those of you selected to serve as jurors, I will give you more detailed instructions regarding the meaning of the word infringement once you are sworn in as jurors and again at the conclusion of the trial. For now, I will simply tell you that Kodak is accused by Philips of infringing Philips' patent-in-suit by importing, manufacturing, using, selling, and offering for sale certain digital cameras and other image encoding hardware and software products. Philips also seeks damages for this alleged infringement.

Kodak denies that it has infringed Philips' patent and asserts defenses to the charges of infringement. Specifically, Kodak asserts that the '075 patent is invalid and unenforceable against Kodak. Kodak also asserts defenses and counterclaims against Philips based on fraud, negligent misrepresentation, deceptive trade practices, equitable estoppel and laches.

Has any member of the panel heard or read anything about this case?

5.    Have you or any member of your immediate family (spouse, child, parent or sibling) ever been employed by Philips or Kodak?

6.    Have you or any member of your immediate family ever owned stock in any of these companies?

7.    Have you or any member of your immediate family ever had a business relationship of any kind with any of these companies?

8.    To the best of your knowledge, have you or any member of your family had any negative or positive experience with the products of any of these companies?

9.    Have you or, to the best of your knowledge, any member of your immediate family, had any experiences with any of these companies that might keep you from being a fair and impartial juror?

10.    Do you possess any opinions about any of these companies that might keep you from being a fair and impartial juror?

11.    COURT READS LIST OF COUNSEL

For Eastman Kodak Company: John Allcock, Sean Cunningham, Timothy Lohse, Richard Mulloy, John Kinton, Jesse Hindman, Nikki Wyll and Megan McCarthy of DLA Piper US LLP and Frank DiGiovanni of Connolly Bove Lodge & Hutz LLP.

For U.S. Philips Corporation: Thomas Winland, Steven Anzalone, Frank Decosta III, Kenneth Frankel, Joyce Craig and Matthew Levy of Finnegan, Henderson, Farabow, Garrett and Dunner LLP and Steven J. Balick and John Day of Ashby & Geddes.

Does any member of the panel, or your immediate family, know any of the attorneys involved in the case or have you or any of your immediate family had any business dealings with or been employed by any of these attorneys or their respective law firms?

12.    COURT READS LIST OF WITNESSES

Mr. Majid Rabbani, Dr. Joan Mitchell, Mr. Steve Stasson, Mr. Michael Nier, Dr. Touradj Ebrahimi, Mr. Andrew Evenski, Mr. Robert Wallace, Dr. Charles Neuhauser, Mr. Stanley Fralick, Mr. Istvan Sebestyen, Mr. Richard Clark, Mr. Peyton Watkins, Dr. Bernd Girod, Mr. Mark Peterson, Dr. Timothy Schoechle, Mr. Jack Slobod, Mr. Jan van der Meer, Dr. Peter Vogel, Mr. Kenneth Cho, Dr. John Morris, Mr. Norman Richards, Mr. Eric Schylander, Mr. Joachim Speidel, Mr. Susumu Tsugaru, and Mr. Simon Turner.

Does any member of the panel know or is any member of the panel familiar with any of the prospective witnesses?

13.    Have you ever worked in the fields of data compression or digital imaging, or for a company that makes digital cameras, digital camcorders, or other digital imaging equipment?

14.    Do you believe companies frequently try to infringe or violate the patent rights of other companies?

15.    Have you or any member of your immediate family ever been employed by the United States Patent and Trademark Office or the United States Department of Commerce?

16.    Do you hold any opinions about the U.S. Patent and Trademark Office or the U.S. Department of Commerce that might keep you from being a fair and impartial juror?

17.    Have you or anyone in your immediate family ever applied for or obtained a patent in the U.S. or abroad?

18.    Have you or any member of your immediate family ever had an experience with patents or the patent system that has resulted in feelings that might keep you from being a fair and impartial juror?

19.    Have you ever served as a juror in a criminal or a civil case or as a member of a grand jury in either a federal or state court?

20.    Have you or has anyone in your immediate family ever participated in a lawsuit as a party or in any other capacity (such as a plaintiff, defendant, or witness)?

21.    Is there any member of the panel who has any special disability or problem that would make serving as a member of the jury difficult or impossible?

22.    Having heard the questions put to you by the court, does any other reason suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the court's instructions to you on the law?

4

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT J1: PLAINTIFF PHILIPS'**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff U.S. Philips Corporation ("Philips") requests that the Court try all equitable issues separately during a bench trial, and that equitable issues should not be submitted to the jury. As such, Philips submits these preliminary proposed findings of fact and conclusions of law directed toward the equitable issues. Philips notes that Defendant Eastman Kodak Company ("Kodak") bears the burden of proving its equitable defenses and counterclaim, and Philips reserves the right to submit revisions or additions to its proposed findings of fact and conclusions of law after meeting and conferring with Kodak on outstanding trial management issues, after receiving proposed findings of fact and conclusions of law from Kodak, after receiving the Court's rulings on the parties' respective motions *in limine*, and after trying the equitable issues.

TABLE OF CONTENTS

I.   Proposed Findings of Fact Relating to Kodak's Equitable Defenses of
     Equitable Estoppel, Implied License, Waiver, Patent Exhaustion by License or
     Release, Unclean Hands, and Laches, and Counterclaim for Equitable
     Estoppel ..................................................................................................................1

     A.   Proposed Findings of Fact Relating to Relevant Standards Issues..........................1

          1.   Introduction...................................................................................................1

          2.   Relevant Standards-Setting Organizations and Standards .........................2

          3.   Patent Policies of Standards-Setting Organizations....................................3

          4.   Historical Committee Structure Relating to the Development of
               the JPEG Standard.........................................................................................7

          5.   Patent Policies Relevant to JPEG...............................................................11

          6.   Chronology of JPEG Standard Development ..............................................21

          7.   Philips' Employees' Inactive Role in JPEG Standard
               Development................................................................................................22

          8.   Philips' Disclosures and RAND Statements to Other
               ISO/CCITT Committees in which It Was Interested and
               Proposed Technology for Standardization ................................................25

          9.   ADCT Technology Found Its Way into JPEG ..........................................26

          10.  No Patent-Free or Royalty-Free JPEG Baseline Assured ........................30

          11.  Summary Findings of Fact on Standards Issues ......................................38

     B.   Proposed Findings of Fact Relating to Specific Equitable Defenses and
          Counterclaim .......................................................................................................41

          1.   Equitable Estoppel........................................................................................41

          2.   Waiver .........................................................................................................43

          3.   Implied License...........................................................................................43

          4.   Patent Exhaustion by License or Release Based on Implied
               License.........................................................................................................44

          5.   Unclean Hands ............................................................................................44

        6.      Laches ................................................................................. 44

II.   Proposed Conclusions of Law Relevant To Kodak's Equitable Defenses of
      Equitable Estoppel, Implied License, Waiver, Patent Exhaustion by License or
      Release, Unclean Hands, and Laches, and Counterclaim for Equitable
      Estoppel ................................................................................................... 49

      A.    Equitable Estoppel ......................................................................... 49

            1.      Legal Standards for Equitable Estoppel ............................... 49

            2.      Conclusions Regarding Equitable Estoppel ........................... 51

      B.    Waiver ............................................................................................ 52

            1.      Legal Standards for Waiver ................................................. 52

            2.      Conclusions Regarding Waiver ............................................ 52

      C.    Implied License .............................................................................. 53

            1.      Legal Standards for an Implied License ............................... 53

            2.      Conclusions Regarding Implied License ............................... 53

      D.    Patent Exhaustion by License or Release Based on Implied License ................... 54

            1.      Legal Standards for License or Release ............................... 54

            2.      Conclusions Regarding License or Release ........................... 54

      E.    Unclean Hands ............................................................................... 55

            1.      Legal Standards for Unclean Hands ..................................... 55

            2.      Conclusions Regarding Unclean Hands ................................ 55

      F.    Laches ............................................................................................ 56

            1.      Legal Standards for Laches ................................................. 56

            2.      Conclusions Regarding Laches ............................................ 60

I.      **Proposed Findings of Fact Relating to Kodak's Equitable Defenses of Equitable Estoppel, Implied License, Waiver, Patent Exhaustion by License or Release, Unclean Hands, and Laches, and Counterclaim for Equitable Estoppel**

A.      **Proposed Findings of Fact Relating to Relevant Standards Issues**

1.      **Introduction**

1.      Kodak's infringing products and services have practiced the international standard for still image coding that has become known as the "JPEG standard." More specifically, Kodak's infringing products and services have practiced a part of the JPEG standard that is known as "Baseline JPEG." (Testimony of Dr. Girod.)

2.      Philips's patent-in-suit, U.S. Patent No. 4,901,075 ("the '075 patent"), was essential to practicing Baseline JPEG until it expired on September 11, 2007. (PX 0001; Testimony of Dr. Girod.)

3.      Kodak bases its equitable defenses and counterclaim asserting unenforceability of the '075 patent due to equitable estoppel, implied license, waiver, and unclean hands on its allegations that Philips did not comply with alleged patent policies of certain standards-setting organizations in setting the JPEG international standard published in 1992 and 1994. (Answer ¶¶ 30, 32-34; Cclm. ¶¶ 1-10, 15-62, 84-107.)

4.      More specifically, Kodak contends that Philips was required to, but did not, bring the '075 patent to the attention of the standards-setting organizations in connection with the development and adoption of the JPEG standard. (Cclm. ¶¶ 15-62.)

5.      This Court finds, contrary to Kodak's contentions, that no such requirement applied to Philips, because Philips' employees did not propose any technology for the JPEG standard. Instead, Philips' employees complied with their obligations in the standards-setting organizations.

## 2.    Relevant Standards-Setting Organizations and Standards

6.    Three major Standards Setting Organizations ("SSOs") are relevant to this case: (1) the International Telecommunications Union ("ITU"), and its Comité Consultatif International Telegraphique et Telephonique ("CCITT") committee; (2) the International Organization for Standardization ("ISO"); and (3) the International Electrotechnical Commission ("IEC"). In the 1992-1994 timeframe, the CCITT was renamed the ITU Telecommunication Standardization Sector ("ITU-T"). (Testimony of Dr. Schoechle.)

7.    The JPEG standard was developed in a joint effort between the CCITT and ISO/IEC beginning in the late 1980s through a committee known as the Joint Photographic Experts Group, which led to the acronym "JPEG." (Testimony of Dr. Schoechle.)

8.    CCITT Recommendation T.81 was published on September 21, 1992, setting forth specific procedures for the encoding of images. (PX 0156.)

9.    ISO/IEC International Standard 10918 was published on February 15, 1994, setting specific procedures for the encoding of images. (PX 0296.)

10.    CCITT Recommendation T.81 and ISO/IEC International Standard 10918-1 set forth identical procedures for the encoding of images. Both are referred to as the JPEG standard. (PX 0156; PX 0296; Testimony of Dr. Schoechle.)

11.    The JPEG standard uses a lossy image compression algorithm that employs a block-wise DCT (Discrete Cosine Transform), followed by quantization and Huffman coding of the transform coefficients. The minimum capability of that algorithm is known as "Baseline JPEG." The functional specification for Baseline JPEG is set forth in Annex F of the JPEG standard. (PX 0156 at KODAK_012625; PX 0296 at KODAK_012962.)

12.    Any DCT-based JPEG decoder must support the Baseline JPEG standard. (Testimony of Dr. Girod.)

2

### 3. Patent Policies of Standards-Setting Organizations

#### a. General Structure and Practices

13.　　The ITU-T and CCITT before it, ISO, and IEC are all hierarchical organizations, with layers of governing committees, representing a taxonomy of technical topics. Within the ISO and IEC structures are committees called "Technical Committees" ("TC") and "Sub-Committees" ("SC"). In the ITU-T/CCITT, such committees are referred to as a "Study Groups" ("SG") and "Working Parties" ("WP"). The TCs and SCs of the ISO and IEC, along with the SGs and WPs of the ITU-T/CCITT, are all located at the top of the hierarchical organization chart. (Testimony of Dr. Schoechle.)

14.　　In the ISO and IEC, the TCs are divided downward into SCs and then further broken down into "Working Groups" ("WG"). In the ITU-T, this lowest level group is usually referred to as a "Rapporteur Group," identified by a "Question" the group addresses. The actual detailed technical work of considering and drafting standards takes place at the bottom level of the hierarchy, typically under a consensus process among technical experts. Usually, in the ISO structure, the WG level is the bottom, most specialized, level group. In the JPEG standard development process, however, the WG actually served as a plenary over several subgroups focusing on different technologies. (Testimony of Dr. Schoechle.)

15.　　Committee meetings above the bottom level are often referred to as "plenary" meetings, because they deal with broader management, policy, coordination, or oversight of the technical work. No technical work is performed in plenary meetings. Plenary meetings usually address administrative issues, which may include adoption of resolutions, approval of minutes, liaison paperwork, and other formalities, with formal votes. The bottom working level groups of technical experts, on the other hand, are not administrative bodies and do not, as a usual practice, vote on anything. (*E.g.* PX 0134.) Their meetings usually last several days, or a week or more,

3

and may be followed by or bracketed by a plenary meeting of the parent committee. Typically a working level group passes its work up to its parent committee to be presented and voted on at these plenary meetings. (*E.g.* PX 0115.) Technical experts in the working level groups often have little interest in arriving early or remaining to attend the parent's plenary meetings. Among the experts, plenary meetings are frequently regarded as perfunctory and not technically interesting, being mostly devoted to administrative issues. (Testimony of Dr. Schoechle.)

16.    TC and SC level meetings, and the WG meetings involved in JPEG standard development process, are formal, plenary in nature, attended by national body "delegates," and presided over by a chairperson appointed by a particular national body that has been awarded the "secretariat" function for that specific TC or SC. Plenary meetings typically do not take more than a single day or two half days. (Testimony of Dr. Schoechle.) In contrast, at the usual WG level, and at the sub-WG level in the JPEG standard development process, meetings are less formal, attendees are known as "experts," meetings are chaired by a "convener" elected by the parent SC plenary, and decisions are made by consensus and not by voting. (*E.g.*, Morris Deposition, pp. 81-82; Clark Deposition, p. 31; Mitchell Deposition, p. 80.) The same people may not always participate at both the plenary and working levels, even though the meetings may be contiguous. (Testimony of Dr. Schoechle; PX 0256; PX 0257; PX 0258.)

17.    When the WG level, or, in the present case, the sub-WG level JPEG group, has reached consensus on a document based on its own technical discussions, it advances the document up the ladder to its parent SC along with a recommended resolution to circulate the document as a Committee Draft ("CD") for ballot and comment among a wider range of member national bodies. (Testimony of Dr. Schoechle.)

18.    Representation and attendance in the ISO and IEC is by national body. These "national bodies" are usually a nationally delegated (government agency or non-governmental industrial association) standards body such as American National Standards Institute ("ANSI"), British Standards Institution ("BSI"), *Deutsche Institute für Normung* (DIN), etc. Selection of delegates to TC and SC meetings and of experts to WG meetings is made by the national body, but is usually open to any interested individual. In most cases, these individuals are employed by corporations or other organizations with an economic interest, but are frequently professional consultants or academics. Corporations cannot be members of ISO/IEC committees, unlike ITU-T committees. (Testimony of Dr. Schoechle.)

19.    In the ITU-T/CCITT, participation in SGs is not by standards bodies but is formally established by national governments as members, reflecting the traditional nationally-owned telephone operating companies. (Testimony of Dr. Schoechle.)

### b.    RAND Policy

20.    Requiring an offer to license patents on RAND ("Reasonable And Non-Discriminatory") terms has long been the centerpiece of standards body patent policy. Under this policy, if there is a known possibility of patent claims existing on the subject matter of a potential standard, the patent holder must simply declare its intention to agree to either free or reasonable royalty, non-discriminatory licensing of the patent to users of the standard. (Testimony of Dr. Schoechle.)

21.    Standards organizations do not define what is "reasonable" or "non-discriminatory," which is left to be negotiated or litigated outside of the standards development environment. (Testimony of Dr. Schoechle.)

### c.    Patent Search Obligations

22.    Standards committees generally do not conduct a patent search before finalizing a standard.  The primary reasons for not conducting a search are that searches are expensive and standards bodies do not have the legal resources, searches are not definitive, and standards organizations do not want to assume liability if something is missed in the course of the search. (Testimony of Dr. Schoechle; Mitchell Deposition, pp. 183-84, 204-05; Sebestyen Deposition, pp. 57-58.)

23.    As a general matter, it is not practical for corporations, especially large ones whose employees are involved in large numbers of standards committees, to conduct patent searches, even within their own organizations, for technology relating to numerous standards that their employees are involved in developing.  (Testimony of Dr. Schoechle; Sebestyen Deposition, pp. 57-58.)

24.    Consequently, there has been no duty established to conduct a patent search by either a standards committee or by any individuals in the committees or their employers. Instead, the obligations for disclosure of patents have been for the personal knowledge of individuals, with the recognition that an individual is not a walking encyclopedia of all knowledge of his or her employer.  (Testimony of Dr. Schoechle; Mitchell Deposition, pp. 183-84, 204-05; Sebestyen Deposition, pp. 57-58; PX 0143 at IBM 8710004710.)

### d.    ISO, IEC, and CCITT Application of General Principles

25.    Throughout the time period that the JPEG standard was being developed, from 1986 to 1990, and through its adoption in 1992 and 1994, the patent policies for the ISO, IEC, and CCITT/ITU-T remained essentially unchanged.  Although some concerns arose at the technical working levels, the top levels of these standards organizations held firm in their

policies and maintained the obligation to disclose patents only for those proposing technology

for standards. (Testimony of Dr. Schoechle; Sebestyen Deposition, p. 179.)

### 4. Historical Committee Structure Relating to the Development of the JPEG Standard

#### a. Working Group 8

26.     ISO Committee TC97/SC2/WG8, otherwise referred to as Working Group 8

("WG8"), *Coded representations of pictures*, formed in March 1983. (PX 0252.)

27.     The first WG8 meeting took place after WG8's parent committee, a sub-

committee of TC97 known as SC2, had decided to form a new sub-group to consider

standardization of communication of various picture formats. (PX 0044.)

28.     The initial proposed work program of WG8 included: (1) videotex; (2) broadcast

teletext; (3) computer graphics; (4) telewriting; (5) slow scan video; and (6) mixed-mode teletext

and facsimile. (PX 0044 at KODAK_184111, ¶ 6.)

29.     By 1985, SC2 broadened WG8's name to *Coded representation of picture and

audio information*, further expanding its work program, and elected Dr. Hiroshi Yasuda of

Nippon Telegraph and Telephone Corporation ("NTT") in Japan as Convener of WG8. (PX

0054 at IBM 8710049421.)

30.     Because of its broad scope of responsibilities, WG8 rapidly spun its work

program into additional sub-groups, referred to as *ad hoc* or *expert groups*. (PX 0115; PX 0081.)

31.     WG8 effectively served as a plenary, rather than a true "working group," handling

primarily administrative and management issues, logistics, and coordination of work groups and

liaisons. Technical working level groups met separately to handle the actual standardization

work, including evaluating proposals, deciding which technology to select, and drafting

standards. (PX 0115; Schylander Deposition, pp. 73-74, 93-94; Morris Deposition, p. 82.)

32.    When technical working level group meetings were held in conjunction with WG8 meetings, typically an opening WG8 plenary was held on the first day and a closing WG8 plenary was held on the last day, with the intervening days devoted to technical group meetings. (Schylander Deposition, pp. 73-74, 93-94; PX 0115.)

33.    WG8 met roughly every five months until August 1991, for a total of twenty meetings.  (PX 0256.)

### b.    CCITT SG VIII

34.    In the mid-1980s, the scope of SG VIII was terminals for telematics services—responsible for subjects ("Questions") relating to terminals for services such as facsimile, phototelegraphy, teleconferencing and videotex.  (PX 0300 at KODAK_076589-90; PX 0253.)

35.    The initial connection with ISO/IEC WG8 was through the newly formed CCITT SG VIII special rapporteur's group on *New Image Communication* ("NIC"), led by Istvan Sebestyen from Siemens Corporation.  This group originally was known in CCITT as Q.18/VIII (Question 18 of SG VIII), and later Q.16.  (PX 0063; PX 0300.)  By 1990, the name of the group was expanded to *Common components for image communication*.  (PX 0134; PX 0300.)

### c.    JPEG—a Joint Committee of the ISO and CCITT

36.    By 1984, a photographic *ad hoc* group, the *Photographic Experts Group* ("PEG"), was convened within WG8 and chaired by Graham Hudson of British Telecom.  (PX 0056; PX 0257.)

37.    At the July 1986 WG8 meeting, PEG reported that it had developed an active liaison exchange with the CCITT SG VIII *New Image Communication* group, led by Sebestyen. They said that a joint meeting was proposed for November 1986, where the possibility of a joint expert's group to evaluate compression techniques could be discussed.  (PX 0056.)

38.    In November 1986, the joint meeting occurred and the Joint Photographic Experts Group ("JPEG") replaced PEG as a sub-group under WG8, with Hudson as its first chairman. (PX 0064; PX 0253.) The new group continued to be administered under the ISO procedures as part of WG8, with some accommodation of the CCITT processes. (Testimony of Dr. Schoechle.)

39.    Due to the rapid pace of activity in the JPEG group, as well as various delays in other WG8 business, the JPEG group scheduled interim meetings between regularly scheduled WG8 meetings. (PX 0081 at KODAK_062444; PX 0080.)

> **d.    Philips' Employees Attended Three JPEG Group Meetings and None After May 1988, Did Not Vote, and Proposed No Technology for the JPEG Standard**

40.    Philips' employees attend only three of the 24 PEG or JPEG group meetings, attending the last in May 1988. (PX 0257.)

41.    Different Philips' employees attended the JPEG committee meetings: Simon Turner attended in March 1987; Norman Richards attended in January 1988; and Gerald Weth attended in May 1988. (PX 0257.) Turner and Richards were from Philips Research Laboratories in the UK, while Weth was from the Philips Kommunikation Industrie AG ("PKI") business unit in Germany. (Turner Deposition, pp. 9, 15; Richards Deposition, p. 10; Weth Deposition, pp. 10-11.)

42.    Philips' employees did not have any continuing or active role in the JPEG group. Turner and Weth both attended the JPEG group meetings. Turner and Richards served as experts in blind judging of the quality of pictures from the various technologies under consideration, and Weth was a listener. (Turner Deposition, pp. 50-52; Richards Deposition, pp. 40-41; Weth Deposition, pp. 68, 103.)

43. There is no evidence that Philips' employees voted on any proposed standard at any JPEG group meetings. (Weth Deposition, pp. 103-04.)

44. Philips' employees did not propose any technology for the JPEG standard. The JPEG group received twelve technical proposals for the JPEG standard, none of which came from Philips. (PX 0071 at KODAK_013128.) Sebestyen also testified that Philips never proposed any technology for the JPEG standard. (Sebestyen Deposition p. 144.)

### e. Reorganization of Committees

45. In 1986, the ISO and IEC formed JTC1, the new joint TC for Information Technology. By 1988, SC2 moved from ISO TC97 into the new JTC1, and WG8 acquired the designation ISO/IEC JTC1/SC2/WG8. (PX 0090; PX 0254.)

46. By 1990, the structure of WG8 had become quite cumbersome and its plenary nature was becoming unmanageable, with over 150 active members from 15 countries. (PX 0239 at PHLPSKD_00039844.) At the WG8 plenary meeting in July 1990, it was announced that JTC1 would move WG8 "up" to become a new SC under JTC1 later designated as SC29 *Coding of audio, picture, multimedia and hypermedia information.* (PX 0133 at KODAK_184596) The new SC29 was finalized in 1991. (PX 0144 at KODAK_184704.)

47. The new SC29 became the parent committee over:

- Working group 9 (WG9)—*Coding of bi-level images*

   aka BIG or JBIG (Bi-level Image coding experts Group)

- Working group 10 (WG10)—*Coding of photographic images*

   aka JPEG

- Working group 11 (WG11)—*Coding of moving picture images and associated audio*

   aka MPEG (Moving Picture image coding Experts Group)

- Working group 12 (WG12)—*Coding of multimedia and hypermedia information*
  aka MHEG

(Multimedia and Hypermedia coding Experts Group) (PX 0133 at KODAK_184611; PX 0255.)

### 5.    Patent Policies Relevant to JPEG

48.    As JPEG was a collaboration between the ISO WG8 and the CCITT SG VIII, the

patent policies of both parent organizations applied to JPEG. (PX 0134, ¶ 1.) Under both

policies, the proposers of technology for a standard were asked to disclose patents they

personally knew of that covered the proposed technology, and owners of those patents were

asked to submit patent statements agreeing to license their patents on RAND terms. (Testimony

of Dr. Schoechle.)

### a.    Patent Policy of ISO/JTC1

49.    The patent policy stated in the ISO Directives (1982 Edition) and distributed to

WG8 in March 1987 provided that the "member body" proposing technology for a standard

should identify any patents they knew about that covered the proposal: "[T]he member body

putting forward a proposal of such a kind should draw the technical committee's or sub-

committee's attention to any known patent and like rights on a world-wide basis or any known

pending applications . . . ." (PX 0068 at KODAK_184203 ¶ a.) In the ISO, a "member body" is

a national committee represented at meetings by a national delegation. If the proposal were

accepted on technical grounds, the Directives provided that the "proposing member body"

should then ask any known owner of such a patent to offer to negotiate licenses to the patent on

RAND terms. If such an offer were not provided, however, the technical committee was to

proceed with inclusion of that technology only if justified by exceptional circumstances. (PX

0068; PX 0066; Testimony of Dr. Schoechle.)

50.     Between 1989 and 1992, the ISO Directives were augmented with JTC1

Directives specific to information technology subject matter and processes, and used essentially

the same wording as the earlier ISO Directives: "the NB putting forward a proposal of such a

kind should draw JTC 1's or the SC's attention to any known patent and like rights on a world-

wide basis or any known pending applications . . . ." (PX 0158 at IBM 8710227874.)  The terms

"NB" (National Body) and "Member Body" are equivalent.  If the proposal were accepted on

technical grounds, any known patent owner would be requested to offer to negotiate licenses on

RAND terms; if the patent owner refused, then JTC1 was to proceed with the proposed

technology as a standard only if justified by exceptional circumstances.  (PX 0158 at IBM

8710227873-74; Testimony of Dr. Schoechle.)

51.     The relevant patents to be identified were those actually known by individuals in

the member body who proposed the technology.  No patent search was required.  (Testimony of

Dr. Schoechle; Mitchell Deposition, pp. 193-84, 204-05; Sebestyen Deposition, pp. 57-58.)

### b.     Patent Policy of CCITT

52.     The CCITT patent policy was very similar to the ISO and JTC1 policies.

According to a policy statement circulated at a meeting of SG Chairmen in December 1983, "it

was decided to adopt in principle the ISO/IEC rules for CCITT work . . . ." (PX 0047.)  The

chairmen were informed that the "rules stipulate that Study Group members should inform the

meeting if they know of any patent concerning a subject under study," with "the minimum

requirements" for the members to agree to offer licenses under RAND terms, and if they did not

agree, the draft Recommendation might be withdrawn.  (PX 0047.)

53.     The policy was stated more formally at the SG VIII meeting held in February

1988, and was attached to the meeting report as Annex 3: "the CCITT member organization

putting forward a proposal of this type should draw the CCITT's attention to any known patent

and similar rights on a world-wide basis or any known pending applications . . . ." (PX 0089 at KODAK_013217, ¶ 1.) The patent policy further provided that if any patents covering a standard were identified, the patent owner must provide a statement waiving its patent rights, offering to license the patent on RAND terms, or agreeing to neither. If the patent owner were not willing to waive its patent rights or offer to license on RAND terms for a patent essential to practicing a proposed standard technology, no CCITT standard would be established for that technology. (PX 0089 at KODAK_013217, ¶¶ 1, 2, 3.)

54.     The relevant patents to be identified were those actually known by individuals in the member organization who proposed the technology. No patent search was required. (Testimony of Dr. Schoechle; Mitchell Deposition, pp. 193-84, 204-05; Sebestyen Deposition, pp. 57-58.)

### c.    Patent Policy of JPEG

### (1)    JPEG Group Patent Policy—March 1987

55.     Implementing these policies in March 1987, the Chairman of the JPEG group, Hudson, distributed a memorandum stating that "[b]efore a photographic technique can be considered for standardization, the proposer must state if the technique is the subject of any patents." (PX 0068 at KODAK_184202.) He paraphrased the ISO policy asking for RAND declarations and attached a copy of the ISO Directives. (PX 0068 at KODAK_184202-203.)

56.     Participants in the JPEG group understood that only patents or patent applications that the person actually knew about were requested, and that no patent search was required. Mitchell testified that there never was any obligation to search for your own patents. (Mitchell Deposition, pp. 183-84, 204-05.) Sebestyen similarly testified that there was no obligation to perform a search for your own patents, and he did not have his company, Siemens, search for

13

patents. (Sebestyen Deposition, pp. 57-58.) Sebestyen explained that a search would be a real problem for large organizations that have a large patent portfolio. (Sebestyen Deposition, p. 58.)

**(2)    JPEG Group Patent Policy Questioned and Reaffirmed—May 1988-Aug. 1991**

57.    In May 1988, Yasuda, the Convener of WG8, wrote a memorandum to WG8 expressing concerns about the disclosure of patents in accordance with ISO and CCITT policy, and urged an initiative to ask each national member body to adopt a new patent policy with respect to JPEG that would go further. For example, Yasuda wrote that he "hope[d]" that the patent owners would commit to "free of charge" license terms. (PX 0093.) Mitchell testified that she "believe[d] this JPEG policy he wanted adopted was not the ISO policy . . . ." (Mitchell Deposition, p. 145.)

58.    In September 1988, Charles Touchton from IBM, who was Convener of an advisory sub-group within WG8 and an active participant in JPEG, wrote a memorandum in reaction to "numerous discussions within WG8 and its subgroups relating to the inclusion of patented technologies." (PX 0103 at KODAK_012370.) He reiterated the ISO patent policy and proposed that "this committee and its subgroups cease immediately any further deliberations relating to the existence of patents in connection with approaches under consideration for standardization" beyond what was necessary to determine whether the patent owner would refuse to waive its patent rights or agree to grant a license on RAND terms. (PX 0103 at KODAK_012371.) Touchton's memorandum explained that he had been advised that "it is totally inappropriate for a standards development body at the working group level to consider in any way the existence of patents as part of its deliberations," except to the extent necessary to determine whether the patent owner would refuse that waiver or provide a RAND license commitment. (*Id.*) He indicated that the reasons for his concern were the complexity of

licensing issues and potential antitrust exposure by the committee for discrimination against a

patent holder (*i.e.*, boycott).  (*Id.*)

59.    On October 18, 1988, Yasuda, as Convener of WG8, submitted a report to WG8's

parent, SC2, asking for guidance on discussion of patent issues.  Yasuda noted that in spite of

existing patent policies of the JPEG group's patent organizations, there were "heated discussions

in our group about how to discuss patent issues in standardization activities." (PX 0106 at

IBM 8710031701.)  Yasuda attached to his memorandum a copy of a RAND statement, along

with copies of both the ISO and CCITT patent policies.  (PX 0106 at IBM 8710031727-32.)

60.    SC2 responded to Yasuda's request by adopting Resolution 17.  That Resolution

told the bottom level working group to submit draft standards to the parent SC based solely on

technical considerations and to leave patent considerations to its parent:

> JTC1/SC2 affirms the ISO policy that working groups should submit to their
>
> parent sub-committee (SC) draft proposed standards based on technical considerations
>
> derived from the technical expertise of the members of the working groups.  Working
>
> groups should leave to such parent SC's any and all assessments of any patent
>
> considerations associated with the technical solutions underlying such proposed
>
> standards, other than such initial assessments as may be necessary to determine that any
>
> patents which working group believes may be applicable to any such technical solutions
>
> are, as required by ISO, available on reasonable and non-exclusive terms and conditions.

(PX 0105 at KODAK_184420.)

61.    On October 27, 1988, the SC2 sent Yasuda a fax reporting its decision on

Resolution 17.  The fax reaffirmed that the working group should confine itself to technical

analysis, including producing multiple alternative draft standards for situations complicated by patent questions, and leave all patent decisions to the parent SC.  (PX 0109 at IBM 8710026929.)

62.     On January 25, 1989, Yasuda sent a memorandum to WG8 in preparation for the upcoming meeting.  (PX 0109.)  He conveyed the text of Resolution 17, stating that it "clearly defines what we should do in WG level."  (PX 0109 at IBM 8710026926.)  He added his own concerns, however, about the scope and terms of possible licenses, and noted that "there are many difficulties to solve."  (PX 0109 at IBM 8710026927.)  He summarized the obligation at the WG level according to Resolution 17 and reaffirmed that the disclosure obligation was on the proposers of techniques: "all the techniques proposed as candidates for standardization should clarify its patent status and policy, so that members can understand and decide carefully."  (PX 0109 at IBM 8710026926.)

63.     On February 10, 1989, Touchton sent a memorandum to Gregory Wallace, the new Chairman of the JPEG group, expressing concern that new technical material has been introduced and that he had not seen patent declarations on it.  (PX 0112.)  He was concerned that the committee would get "well down the road on a given approach and suddenly learn that we have a patent problem."  (*Id.*)  His recommendation focused on proposers of technology for the standard:

> [A]ll the proposers of each approach or set of function [sic] still under consideration to restate the patent position which exists with respect to each such proposal, and where necessary, provide the committee with the required [RAND] statement from each patent holder.

(*Id.*)

16

64.     Subsequently in February 1989, WG8 and its sub-groups, including JPEG, met in Livingston, NJ. (PX 0108.) At that meeting, JPEG group Chairman Wallace followed the official policy and requested that "[a]ll Proposers of any Part of the JPEG algorithm being considered for Standardization" submit patent statements by June 5. (PX 0113 at KODAK_068817.) Wallace's request to the JPEG group was limited to proposers of technology for the standard, requesting identification of patents that the "Proposer believes would apply to his/her proposed part of the JPEG algorithm." (*Id.*) The request called for patents actually known by the individuals proposing the technology and did not require a patent search. (Mitchell Deposition, pp. 183-84, 204-05; Sebestyen Deposition, pp. 57-58.)

65.     Participants in the JPEG group understood that only proposers of technology were required to provide the patent disclosure. For example, Mitchell testified that it was her understanding that in this time period the disclosure obligation was on the proposer. (Mitchell Deposition, pp. 143-44, 173-74.) Sebestyen had the same understanding, testifying that the patent policy was that all proposers of a technology had to declare whether their technique proposed for standardization was covered by a patent. (Sebestyen Deposition, pp. 210-12.) JPEG group participant Richard Clark testified similarly. (Clark Deposition, pp. 179-80.)

66.     There is no evidence that any Philips' employees attended the February 1989 JPEG group meeting or learned of this request.

67.     On March 1, 1989, Touchton of IBM wrote to JPEG group Chairman Wallace regarding IBM's Q-coder patents on its arithmetic coding technology proposed for the JPEG standard, saying that IBM would offer RAND licensing terms but would not discuss royalty rate or other specific terms with the committee. (PX 0114.)

68.     On April 21, 1989, Wallace responded, expressing concern about IBM's possibly charging a royalty rate that would be volume-based and requesting further details about the license terms. (PX 0240 at KODAK_013241-42.)

69.     On April 28, 1989, IBM responded to Wallace with certain license terms, but not with the specific amount of the royalty. (PX 0240 at KODAK_013239.)

70.     On May 10, 1989, Wallace forwarded his correspondence with IBM to JPEG, noting that IBM's letter exceeded the requirements of the CCITT and the ISO, patent policies. (PX 0240.) Thus, the disclosure of all specific license terms was not required, and no requirement existed to give the specific amount of the royalty. (Testimony of Dr. Schoechle.)

71.     At the end of May and beginning of June 1989, the JPEG group received several responses to Wallace's February request for patent statements by proposers. (PX 0116; PX 0297; PX 0298; PX 0299.) These responses demonstrate how the JPEG group understood the request, and how it dealt with the patent issue in practice. First, the responses confirmed that the group understood the request to be for disclosures by technology proposers. The only people who responded were technology proposers, with the exception of Kodak. At that time, Kodak was actively participating in the JPEG group but had not yet proposed any technology (Kodak proposed technology in March 1990). (PX 0257; PX 0127.) On behalf of Kodak, Michael Nier responded that he understood the request to be addressed to "core" members of the JPEG group. (PX 0116 at KODAK_013290.) According to Clark's understanding, however, Nier did not need to respond, because Kodak had not proposed any technology. (Clark Deposition, pp. 179-80.) Second, there was much non-compliance with the request, for only about half of the technology proposers responded in any way (*i.e.,* IBM, Mitsubishi, NEC, ESPRIT 563 PICA (ADCT), DEC, ANT, and SAT). (PX 0116; PX 0297; PX 0298; PX 0299; PX 0118.) Third, the

responses from both Nier of Kodak and Wallace of Digital Equipment Corporation spoke in the first person, indicating that they understood the request to be for their personal knowledge, not the entire knowledge of their respective companies. (PX 0116 at KODAK_013285, 013290.) In addition, none of the responses provided disclosure of patent license rates, indicating that a royalty-free license was not needed. (PX 0116; PX 0297; PX 0298; PX 0299.)

72.      About two years later, in March 1991, the CCITT SG VIII/Q.16 committee issued a statement to the JPEG group proposing another effort to identify patents essential to practice the then current draft of the standard. (PX 0261 at KODAK_182082, KODAK_182115, and KODAK_182143.)

73.      On August 4, 1991, Wallace, as the Convener of the JPEG group (newly reorganized as SC2/WG10 at that time), sent a request to all persons on the JPEG group's mailing list. He asked for identification of any patents covering the draft standard that they knew about. Wallace explained that no patent search was required but rather identification of patents "you currently know of" that may be needed to practice the standard. (PX 0143 at IBM 8710004710.)

74.      No copy of this request was sent to any Philips employees, because none were on the JPEG group's mailing list at least as of March 1990. (PX 0129.) There is no evidence that any Philips' employees learned of this request.

75.      In a contemporaneous memorandum to the JPEG group, Wallace discussed his plan. He described his uncertainty as to the way in which to proceed:

There is an enormous number of patents in the world which concern some aspect of image compression technology. How should WG10 decide which patent holders in the

world should be contacted and requested to write a letter stating they will follow the

JTC1 rules?

* * *

I have consulted various officials within JTC1 and ANSI (the JTC1 Secretariat).

They have given me various suggestions, but have told me that it is up to us, as an ISO

WG, to decide for ourselves how to handle such practical matters.

(PX 0143 at IBM 8710004711-12.)  Wallace's solution was to write his letter to all JPEG group

participants on the mailing list, asking them to identify anybody's patents essential to

implementation of any of the standardized processes.  If a response were received, he, as

Convener, would solicit a RAND statement directly from the patent holder.  If no RAND

licensing statement were forthcoming, he would threaten to withdraw the standard.  (*Id.*)

76.    In his memorandum, Wallace acknowledged that his proposed solution was

different than what JPEG had been doing, but minimized it as a "slight formalization of what

we've already been practicing."  (PX 0143 at IBM 8710004712, ¶ 4.1.)  He did not call attention

to the difference that this request was addressed to all JPEG group participants on the mailing

list, not simply to technology proposers.  (PX 0143 at IBM 8710004712, ¶ 4.1; Mitchell

Deposition, p. 152.)  Nevertheless, JPEG participants recognized that although the call for patent

disclosures was broadened after the technology was selected, the obligation to disclose remained

on the technology proposers, since letters were received only from some proposers (*i.e.*, MEC,

IBM, Kodak, and KTAS (ESPRIT 563 PICA)).  (PX 0071 at KODAK_013128; PX 0141; PX

0147; PX 0081 at KODAK_062445; PX 0073.)  Wallace's request received little response.  Most

proposers did not respond at all.  Mitchell testified that most people did not respond because

their in-house lawyers would not say that no patents applied.  (Mitchell Deposition, p. 187.)

20

77.     The August 1991 request from Wallace to those persons then on the JPEG group's mailing list varied from the ISO/IEC and CCITT policies.  The policy of the parent organizations never changed during the relevant time period.  The parent committees within the ISO and CCITT placed the patent disclosure obligation on the proposers of the technology for standardization.  Wallace's August 1991 request was on his own initiative, without approval from the parent committee.  As a result, the 1991 request did not expand the patent disclosure obligation, which remained only on technology proposers.  (Testimony of Dr. Schoechle.)

> (3)     **Summary—Patent Disclosure Obligation Remained on Technology Proposers for Personal Knowledge of Essential Patents**

78.     The preceding facts and the historical context lead to two primary conclusions.  First, the obligation for disclosure of patents needed to practice technology incorporated in the JPEG standard rested only on proposers of technology for standardization.  The CCITT and ISO/IEC policies and obligations stayed the same throughout the time period of JPEG standardization.  Through 1991, the requests by the JPEG group were only to proposers of technology.  The 1991 request, directed at all JPEG participants who were on the mailing list, did not establish a new policy or obligation.  Requests by the JPEG group for additional policy or guidance from parent committees or from JTC1 received a reiteration of the original policy and a reluctance to make any changes.  Moreover, because only a few of the proposers responded, the JPEG group did not strictly comply with any obligation to provide patent disclosures.  (Testimony of Dr. Schoechle.)

79.     Second, the patent disclosure was to be based on the personal knowledge of individuals, and no obligation existed to conduct a patent search.  (Testimony of Dr. Schoechle.)

## 6.     Chronology of JPEG Standard Development

80.     Key dates in the development and adoption of the JPEG standard are as follows:

- November 1986—JPEG group formed (PX 0086 at KODAK_184270)

- March 1987—request for proposals; 12 methods proposed (PX 0086 at KODAK_184270)

- June 1987—pre-selection among 10 of the 12 methods proposed (2 withdrawn) (PX 0086 at KODAK_184270)

- January 1988—test among three top proposals: ADCT, arithmetic, and Japanese combined proposal; ADCT received highest marks; decision made to make ADCT top candidate and to refine ADCT (PX 0086 at KODAK_184270)

- July 1990—finalized technology at Porto meeting (PX 0015 at IBM 8810000570, Mitchell Deposition, p. 60)

- October 1991—CD had passed CD ballot phase in ISO and CCITT and was ready for approval as DIS (PX 0146 at KODAK_182153, KODAK_182181; PX 0150 at KODAK_183658)

- November 1991—CD released for ballot (PX 0150 at KODAK_183658)

- 1992—DIS passed (PX 0015 at IBM 8810000570)

- September 1992—Standard published by the CCITT (PX 0156)

- February 1994—Standard published by the ISO (PX 0296)

    **7.    Philips' Employees' Inactive Role in JPEG Standard Development**

    81.    Philips' employees were not active participants in the JPEG group. They attended a total of three JPEG meetings, and none after March 1988. In addition, as discussed earlier, they proposed no technology for potential use in the JPEG standard.

    82.    Out of 24 PEG and JPEG meetings, Philips' employees attended only three. Turner from the UK (Philips Laboratories) attended the March 1987 meeting, Richards from the

UK (Philips Laboratories) attended the January 1988 meeting, and Weth from Germany (PKI) attended the May 1988 meeting. (PX 0257.) The only substantive involvement by Philips' employees in any of these meetings was Turner's and Richards' serving on panels evaluating picture quality samples. (Turner Deposition, pp. 50-52; Richards Deposition, pp. 40-41.) There is no evidence of other substantive contributions or voting in any JPEG meeting by anyone employed by Philips.

83.    According to testimony by Sebestyen, a JPEG participant who led the JPEG group's immediate parent committee in CCITT, "Philips was never, never in the main stream of the JPEG development." Rather, "Philips representative[s were] in the situation where they had no information on what was going on, . . . on the peripheral . . . ." (Sebestyen Deposition, p. 189.) He viewed Philips as uninterested in the development of a still picture standard at the time. (Sebestyen Deposition, pp. 76-77.) Clark, a UK participant in the JPEG group, testified with respect to Turner's and Richards' participation: "I think they were in a fairly passive role. I don't recall them as having made any significant proposals." (Clark Deposition, p. 59.) Turner testified that he did not know which algorithm produced a particular picture. (Turner Deposition, p. 51.) Richards likewise testified that he "was not involved in the decision process in any way, apart from as an input to the blind evaluation of the images." (Richards Deposition, pp. 40-41; Clark Deposition, p. 31.) When asked about his role in the Ottawa meeting, Weth testified that he attended as a "listener" and did not vote on a draft JPEG standard. (Weth Deposition, pp. 68, 103.)

84.    Neither Mitchell nor Wallace listed Philips as a core member of the JPEG group. (Mitchell Deposition, p. 192; PX 0152 at PHLPSKD_00001299.)

85.    By 1990, Philips employees no longer were on the JPEG group's mailing list. (PX 0129.)

86.    Of the 22 WG8 and SC29 plenary meetings, Philips' employees attended 13. That attendance was distributed among six different individuals. The only Philips' employee who attended both JPEG and WG8 meetings was Weth, who attended a single JPEG meeting and a single WG8 meeting, both in Ottawa in May 1988. (PX 0256.)

87.    Attendance in WG8 plenary meetings did not imply attendance in JPEG sub-group meetings. WG8 meetings were of a plenary nature, while JPEG meetings consisted of actual technical work and decision-making. Attendance at WG8 plenary meetings provided participants with general, not specific, technical information about the draft JPEG standard. (Morris Deposition, p. 82.) For example, Eric Schylander, a former Philips' employee and delegate from The Netherlands, testified that "[t]here were no technical reports whatsoever in the plenary, no technical meetings or discussions in the plenary. So they were all related to practical things like logistics and project process." (Schylander Deposition, p. 74.)

88.    Similarly, CCITT SG VIII meetings, held on an annual basis, also were of a plenary nature, as the group oversaw various work, including fax imaging and collaboration with JPEG, rather than being involved with technical details. (Sebestyen Deposition, pp. 150-53; PX 0300 at KODAK_076589-90.) When asked, "If someone states that a person attending SG VIII sessions between February 8 and 19 . . . means that that person must have also attended a JPEG group meeting, that would be wrong, wouldn't it?", Sebestyen replied in the affirmative. (Sebestyan Deposition, pp. 152-53.)

89.    There is no evidence that any employees of Philips voted for or approved the JPEG standard at any JPEG group meeting, or at any parent committee's plenary meeting on

24

behalf of Philips. Measures passed at various plenary meetings are not indicative of the votes of any individual, because voting at plenary meetings is by national body, not by individual attendees. (Testimony of Dr. Schoechle.)

90.     None of the Philips' employees attending the JPEG group meetings knew about the application for the '075 patent or foreign counterparts when they attended. (Turner Deposition, pp. 143-45; Richards Deposition, pp. 58-59, 69-70; Weth Deposition, pp. 29-30.)

91.     There is no evidence that any of the Philips' employees attending plenary sessions of WG8, SC29, or CCITT SG VIII knew about the coverage of the proposed JPEG standard by the '075 patent or foreign counterparts, or applications for those patents, when they attended.

92.     Philips' employees were not interested in the JPEG standard at the time. (Testimony of Mr. van der Meer.)

### 8.     Philips' Disclosures and RAND Statements to Other ISO/CCITT Committees in which It Was Interested and Proposed Technology for Standardization

93.     In contrast, Philips was interested in other technologies for standards development, namely videoconferencing and motion picture imaging, where Philips' employees actively participated. They proposed technology for the standards and brought to those technical committee's attention Philips' patent rights covering those standards, including foreign patent applications corresponding to the application for the '075 patent, and offered to license the patents on RAND terms, as discussed below.

94.     Philips' employees were active participants in CCITT SG XV Working Party (*Specialists Group on Coding for Visual Telephony*), a committee that was studying video conferencing technology. (PX 0259.) They proposed technology to SG XV related to the H.261 Recommendation, and provided appropriate patent disclosures to SG XV in October 1986 and September 1988, and RAND licensing statements in October 1989. (PX 0058 at

25

KODAK_050446; PX 0100; PX 0122 at KODAK_184071, KODAK_184073.) They identified foreign applications by Philips for patents corresponding to the application for the '075 patent. (PX 0100.)

95.    Through a liaison between SG XV and WG8, SG XV notified WG8 of patents that had been disclosed relevant to videoconferencing. The convenor of WG8 circulated at least one such notification to WG8. (PX 0093.) It is likely that, through this liaison, SG XV notified WG8 of Philips' disclosure of the foreign applications for patents corresponding to the application of the '075 patent. (Testimony of Dr. Schoechle.)

96.    Philips was an active participant in MPEG, *Motion Picture Experts Group*, which formed as a sub-group under WG8 and later reorganized as JTC1/SC2/WG11. Philips' employees regularly participated in MPEG meetings, beginning with the initiation of the MPEG group in May 1988. (PX 0258.) They proposed technology for an MPEG standard, identified Philips' foreign patent application corresponding to the application for the '075 patent, and provided an appropriate RAND licensing statement in December 1990. (PX 0135; PX 0136; testimony of Mr. van der Meer.)

97.    If Philips had proposed technology for the JPEG standard, it would have similarly disclosed its foreign patent application corresponding to the application for the '075 patent and offered to license the patent on RAND terms. (Testimony of Mr. van der Meer.)

98.    A Kodak employee participated in the MPEG group and attended MPEG meetings and would have learned of Philips' disclosure of its foreign patent application corresponding to the application for the '075 patent. (PX 0258; PX 0135.)

### 9.    ADCT Technology Found Its Way into JPEG

99.    An implementation of patented technology from Philips found its way into the JPEG standard without the deliberate involvement of Philips. A logical path exists, which is a

consequence of the normal exchange of information between various research projects, where the origin of the technology became obscured to those that passed it on, ultimately, to the JPEG group. (Testimony of Dr. Schoechle.)

100.    Peter Vogel, the inventor for the '075 patent and a scientist at Philips' PKI unit in Nürnberg, Germany, was conducting research on videocoding related to television video signals in the mid-1980s. (Vogel Deposition, pp. 16-17, 19-20; Weth Deposition, pp. 30-32.) His work yielded advanced image compression and transmission technology that resulted in patent applications in Germany titled *Bitrate reduction by a two-dimensional coding table for encoding the quantizer indices in a hybrid coder*, filed on September 13, 1986, November 8, 1986, and May 23, 1987. (PX 0100.) Vogel did his work completely independently from the JPEG group. (Testimony of Dr. Schoechle.)

### a.    Vogel Disclosed Idea to COST 211bis Simulation Subgroup

101.    Vogel made a technical presentation to a research group known as *COST 211bis Simulation Subgroup*, titled *Block coding using a two-dimensional run-length table*, which was dated September 9, 1986. (Vogel Deposition, pp. 117-118; PX 0057.) COST 211 was a European collaborative research project among seven countries begun in the early 1970s to develop compression methods for videoconferencing. (PX 0241; Testimony of Dr. Schoechle.) COST 211bis was a later project focused on broadcast television video and video conferencing. (PX 0242; Testimony of Dr. Schoechle.)

### b.    ESPRIT

102.    ESPRIT, the *European Strategic Programme for Research and Development in Information Technology*, was an initiative to promote collaboration between European public and private companies with a view toward internationally accepted standards. (PX 0243 at

KODAK_058235; Testimony of Dr. Schoechle.) Partially funded by the Commission of the

European Communities, it acted as an umbrella for a number of unrelated projects, each bringing

together industrial, governmental, and academic members to work toward a narrowly-defined

goal. (PX 0243 at KODAK_058235; Testimony of Dr. Schoechle.)

### c.    Vogel's Idea Disclosed to ESPRIT 925 via PKI

103.    Vogel's work was also presented to an ESPRIT-funded collaborative research

project ESPRIT 925, of which PKI was a participant, working on compression techniques for

moving video and still picture coding for teleconferencing applications.  One goal of the group

was to allow the use of real-time transmission of moving images over a 64 kbit/s ISDN telephone

line.  (Vogel Deposition, pp. 113-14; Weth Deposition, pp. 31-34, 47-53.)

### d.    ESPRIT 563 PICA

104.    Another ESPRIT-funded collaborative research project, ESPRIT 563 PICA

(*Picture-Coding Algorithm for Photographic Videotex*), was working on ISDN transmission of

still images around the same time.  ESPRIT 563 PICA ("PICA") and ESPRIT 925 were two

unrelated research projects.  PICA was a 36-month project begun in January 1985 that included

among its seven participants BTRL (British Telecom Research Labs), CCETT (Centre Commun

d'Étudies De Télédiffusion et Télécommunications), Nixdorf, KTAS (Copenhagen Telephone

Company), PTT/DNL (Dr. Neher Labs)—all also active in JPEG.  The contact point for PICA

was Hudson of Brithish Telecom, who was also the original Convener of JPEG. (PX 0244.)

105.    Philips did not participate in PICA.  (PX 0244; Sebestyen Deposition, p. 138.)

106.    PICA submitted two compression algorithm proposals to JPEG, one of which was

the ADCT proposal that was later adopted as the Baseline standard.  (PX 0071 at

KODAK_013125.)  Alain Leger of CCETT, a participant in both PICA and JPEG, submitted the

ADCT proposal from PICA to JPEG without any mention of Vogel.  (PX 0070.)

e.    **Overlap Between Members of COST 211bis, ESPRIT
563 PICA, and JPEG**

107.    Substantial overlap existed between COST 211bis, PICA, and JPEG, in

organizations and people.  For example, Van Helden (PTT/DNL), and Nightingale (BTRL), were

in both PICA and COST 211bis, and CSELT (Centro Studi e Laboratori Telecommunicazioni,

SpA) was also represented in both groups.  (PX 0245 at PHLPSKD_00048474; PX 0246 at

KODAK_061300.)  A paper by Hudson about PICA listed BTRL, CCETT, PTT/DNL as

partners, and BT as the prime contractor.  (PX 0244.)  In addition, at the March 1987 meeting of

JPEG (PX 0071), Hudson, in his role as Chairman of PICA, presented a paper summarizing the

progress of PICA to the JPEG meeting, which he was also chairing.  (PX 0295.)  At the same

meeting, Leger (CCETT), a participant in both PICA and JPEG, submitted the ADCT proposal

on behalf of PICA.  (PX 0071 at KODAK_013125.)  Furthermore, a June 1987 WG8 document

from the "Rapporteur of the ADCT Ad-hoc Group" listed Leger (CCETT), Loscheller (ANT),

Haskell (AT&T), Yasuda (NTT), and Wallace (DEC), all JPEG participants, as "partners."  (PX

0247 at KODAK_061376.)  Also, in September 1987, Hudson distributed a paper to WG8 that

he had authored for an upcoming ESPRIT conference in Brussels titled *Photovideotex image*

*compression algorithms—towards international standardization.*  (PX 0246.)  This paper

acknowledged BTRL, KTAS, DNL, CSELT, Nixdorf, and CCETT, (PX 0246 ), all JPEG

participants.

f.    **COST 211bis, ESPRIT 925, and PKI Were
Contributing to CCITT SGXV**

108.    In the mid-1980s, CCITT SG XV/WP1, the Working Party on visual telephony,

was developing the H.261 Recommendation.  SG XV/WP1 received contributions from COST

211bis (PX 0248 at KODAK_052175; Vogel Deposition, p. 102; PX 0249; PX 0250) and from

ESPRIT 925.  (PX 0251 at KODAK_053173.)  It also received input directly from PKI, for

29

which Philips provided appropriate disclosures and RAND statements. (PX 0100.) This technology also made its way from PKI into MPEG, along with appropriate patent disclosures and RAND statements from Philips. (PX 0135; PX 0136.)

### g.    Summary—How ADCT Technology Found Its Way into JPEG

109.    The technology developed by Vogel diffused through overlapping organizations and people, who collaborated and shared a common interest. The lack of clarity with respect to the boundaries between these various groups and the confidentiality/disclosure agreements or constraints, if any, that existed at the time contributed to this flow of information. As a result, the attribution of the coding technique to Vogel in JPEG became lost, and apparently not through any deliberate design. (Testimony of Dr. Schoechle.)

### 10.    No Patent-Free or Royalty-Free JPEG Baseline Assured

110.    A royalty-free Baseline in the JPEG standard was not a central goal of the JPEG group and not a determining factor in JPEG's technical choice. The technical choices of the ADCT technology and the other JPEG standard technology options were based on technical performance issues and not patent or licensing issues. Consideration of patent and license issues followed later in time, after the technology choices had been well established. (Testimony of Dr. Schoechle.)

111.    If ADCT were not patent-free or royalty-free at the time of the development of the standard, the available technology alternatives would not have replaced ADCT, because of technical and other reasons. Furthermore, if technology choices in the JPEG group had been pre-empted on patent and licensing issues, that would have violated the organizational policies and the specific instructions of the JPEG's parent committee. (Testimony of Dr. Schoechle.)

**a.    Baseline Chosen in January 1988 on Technical
Grounds, Not Licensing Grounds**

112.    In its January 1988 algorithm evaluation in Copenhagen, the JPEG group found

ADCT to have significantly higher quality results than the next two top methods evaluated,

ABAC and GBTC/BSPC.  (PX 0082 at KODAK_184290; PX 0088 at KODAK_012338; PX

0300 at KODAK_076592.)  According to the meeting report: "In all the subjective testing

sessions, the ADCT technique had significantly higher results at all bit rates than the ABAC and

BSPC techniques. . . .  In view of the unequalled quality of ADCT the chairman asked delegates

to determine in the future if an ADCT technique can meet all JPEG requirements."  (PX 0082 at

KODAK_184290; PX 0088 at KODAK_012329; PX 0071 at KODAK_013128.)  The JPEG

group further agreed to switch from ADCT only if "any JPEG defined application cannot be

directly met by this ADCT technique, at the quality level shown at Copenhagen in January . . . ."

(PX 0082 at KODAK_184290.)  Nothing was said about patents or about switching if ADCT

were not royalty-free.  (PX 0082; PX 0088.)

113.    The evaluation and decision by the JPEG group to use ADCT was made in

January 1988.  (PX 0082 at KODAK_184290.)  By that time, the proposers of the ADCT

technology had indicated that licenses would be available on reasonable terms, as opposed to

"free" licenses.  All proposers, except for a Hierarchical Predictive Coding method (later

withdrawn), had indicated in or before the March 1987 JPEG meeting that they would license

any applicable patents on reasonable terms, but not free licenses.  (PX 0071 at

KODAK_013128.)  The JPEG group nevertheless proceeded with its evaluation and choice of

those technologies.  (PX 0071.)

### (1)    Technology Adoption Preceded Patent or License Discussion

114.    The formal adoption of ADCT as its proposed Baseline standard by the JPEG group in January 1988 occurred before any significant discussion of patent or licensing issues arose. That was before a search had been done by Wallace in May 1988 (PX 0094); before a patent disclosure request was made to proposers in February 1989 (PX 0108 at KODAK_064492); before patent disclosures were made by technology proposers in May 1989 (PX 0116); before the August 1991 request was sent to all WG10 participants on the JPEG mailing list (PX 0143 at IBM 8710004710); and before the mid-1991 disclosures by technology proposers (PX 0141; PX 0147).

### (2)    The Committee Proceeded Properly

115.    ADCT became the front-runner for adoption as the JPEG Baseline standard based on factors other than the lack or existence of applicable royalty and license fees. (PX 0082 at KODAK_184290.) Had the JPEG group based its technology choices on patent and royalty considerations, and particularly if it had chosen technologies that were of lower quality or performance because of such considerations, it would have violated the policy of the ISO and JTC1, as well as the explicit instructions of its parent, SC2. (Testimony of Dr. Schoechle.) The only patent assessment to be made by the JPEG group was an initial assessment to determine whether any patents believed to be applicable were available for licensing on RAND terms, as SC2 subsequently reaffirmed in Resolution 17 in October 1988. (PX 0105 at KODAK_184420.)

### (3)    Next-Best Alternatives Would Not Have Been Royalty-Free

116.    An alternative to ADCT, the ABAC proposal from IBM, would have been considered the second choice from a performance standpoint. By the time of the technical evaluation in January 1988, IBM indicated that ABAC was covered by IBM's patents and would

not be royalty-free. In 1989, IBM said that it would charge a royalty under RAND terms, but was reluctant to be specific. (PX 0116.) In 1991, IBM offered specific royalty-bearing license terms. (PX 0147.) The final version of ABAC adopted by the JPEG group was a combination of IBM and AT&T technology that was only settled between the two, as a unified U.S. position, after technical negotiations mediated by Majid Rabbani of Kodak. (Rabbani Deposition 10/11/06, pp. 248-49; Rabbani Deposition 10/12/06, pp. 32-34.) AT&T did not submit any patent statements or disclosures in 1989, even though AT&T proposed its Block List Transform technology to JPEG. (PX 0116; PX 0071 at KODAK_013126, KODAK_013128.)

117.    Kodak's expert, Dr. Ebrahimi, contends that another alternative to ADCT could have been a one-dimensional variable length coding ("1-D VLC") algorithm. (Testimony of Dr. Ebrahimi.) Further consideration of a 1-D VLC option was suggested as a possibility late in the process, in June 1988, when a JPEG group participant discovered a patent pertaining to two-dimensional variable length coding ("2-D VLC") algorithms. (PX 0099.) ADCT was a 2-D VLC algorithm. According to Dr. Ebrahimi, however, the 1-D VLC option offered a five percent lower performance penalty. (Testimony of Dr. Ebrahimi.) That would be a significant problem, given the committee's mandate to make the best technical choice. Also, there was no assurance that an implementation of a 1-D VLC process would not have had patent issues. (Testimony of Dr. Schoechle.)

118.    Other alternatives from Japanese proposers existed, but they also had patent issues. In 1989, Mitsubishi and NEC both provided royalty-bearing RAND statements. (PX 0116 at KODAK_013286-87.) In 1991, Mitsubishi provided another royalty-bearing RAND statement. (PX 0141.) The Japanese composite BSPC proposal was a combination of GBTC,

PCS, and CVQ, but their proposer had already indicated an intention that licenses would be available under reasonable terms—not free licenses. (PX 0071 at KODAK_013128.)

119.    Consequently, there is no evidence that a technically acceptable alternative existed that was completely free of patent or royalty issues. (Testimony of Dr. Schoechle.)

> **(4)    ADCT Would Have Remained the Baseline Method, if Philips Had Disclosed and Offered RAND in 1991**

120.    If Philips had disclosed and offered RAND license terms in mid-1991, when Wallace sent his request to all people then on the JPEG mailing list, it would have occurred after the technology had been finalized in July 1990 (Mitchell Deposition, pp. 30-31, 60), and after much work had been done on the standard in the 1988 to 1990 timeframe. In that time period, the JPEG group undertook the sizeable task of defining, documenting, simulating, testing, validating, and simply agreeing on the numerous details necessary for genuine interoperability and universality. (PX 0152 at PHLPSKD_00001285.) In addition, the committee draft of the standard was about to circulated for voting in a few months. (PX 0146 at KODAK_182153.) It is highly unlikely that the JPEG group, upon discovering that ADCT was not royalty-free, would have abandoned ADCT as the Baseline JPEG standard at that point and started over. (Testimony of Dr. Schoechle.)

> **b.    No Assurance of Patent-Free or Royalty-Free JPEG Baseline**

121.    Neither JPEG group participants, nor anyone else, were assured or could be assured that the JPEG Baseline would be free of patents or royalties. That simply would not have been a realistic expectation. A royalty-free technology may have been the wish of some in the JPEG group, yet the record shows repeated caveats, disclaimers, precautions, requests, and warnings on the issue of patents, searches, and royalties. (Testimony of Dr. Schoechle.)

**(1)    May 9, 1988 Wallace Communication to WG8—
Advised Patent Search Not Definitive**

122.    In a May 9, 1988, communication to WG8, Wallace told the committee that one could not be sure that no patents covered ADCT.  (PX 0094 at KODAK_074802, ¶ 3.)  Wallace reported that he had had a law firm do a patent search on the ADCT proposal, and it had not found any patents that appeared to claim ADCT.  But he warned that:

> it is impossible to PROVE that no one ever will come forward and claim to hold a patent
> which covers all or part of the ADCT.  But, this situation would hold no matter which
> proposal JPEG had selected for refinement.

(PX 0094 at KODAK_074802, ¶ 3.)

123.    The ISO would not take a position on whether a patent covered a standard.  If a party came forward during standards development process, ISO would ask the party to write a letter stating it would give license on RAND terms.  (PX 0094 at KODAK_074802, ¶ 3)  It left up to each company implementing the JPEG standard to make a decision as to whether a patent covered the implementation.  (PX 0094 at KODAK_074802, ¶ 3.)

**(2)    May 1988 JPEG Meeting—Wallace Advised
Patent Search Not Definitive**

124.    In a report of the May 9-13, 1988 JPEG group meeting in Ottawa, Chairman Hudson reported Wallace's patent search.  (PX 0095 at KODAK_013685.)  He advised that the search was not conclusive, having "so far not turned up any obviously applicable patents," and that others in the JPEG group should have their own searches done to determine whether they might infringe any patents by implementing the standards.  (PX 0095 at KODAK_013685; Mitchell Deposition, pp. 95-96.)

(3)    **March 1991 CCITT SG VIII WP VIII/3
         Meeting—Sebestyen Advised Patent List Not
         Definitive**

125.    A March 1991 memorandum on patent statements with respect to the JPEG

algorithm sent by Sebestyen, the Special Rapporteur for SG VIII Q.16, noted the importance of a

comprehensive document that identified all patents the JPEG group believed were required to

practice any part of the JPEG algorithm.  (PX 0261 at KODAK_182143.)  The memorandum

pointed out that such a document would not, however, be a definitive statement of all patents

required to practice the JPEG algorithm, "since it is questionable as to whether JPEG wants to

(or should!) position itself as being the 'absolute definer' of what patents are required, and which

are not."  (PX 0261 at KODAK_182143.)  Finally, the memorandum suggested that CCITT state

that "responsibility for determining what patents apply to any given implementation of any part

of the JPEG algorithm is solely that of the implementer, *i.e.,* any given implementer of the JPEG

algorithm is responsible for doing its own patent search."  (PX 0261 at KODAK_182143.)

(4)    **August 1991 Wallace Memorandum—Advised
         Patent List Not Definitive**

126.    In his August 4, 1991 memorandum to the JPEG group about identifying patents,

Wallace explained that neither JTC1, nor SC2, nor WG10 could give any information on whether

a particular patent is relevant to a proposed standard, and that none of the committees would do a

patent search.  (PX 0143 at IBM 8710004711.)  He noted that "[t]his is entirely up to individuals

and companies who are interested in implementing the proposed standard."  (PX 0143 at

IBM 8710004711.)  His contemporaneous request to those on the JPEG group's mailing list for

disclosure of patents they knew about further explained that his request was only for their own

personal current knowledge, and not a request for them to do a patent search.  (PX 0143 at

IBM 8710004710.)  A list of patents from personal knowledge would not be a definitive list of

all patents that may exist and could not ensure that no essential patents existed. (Testimony of Dr. Schoechle.)

### (5)  September 1992 CCITT Publication of JPEG Standard—Advised Patent List Not Definitive

127.  When it was published in September 1992, the CCITT Recommendation T.81 carried a number of caveats. (PX 0156.) The Introduction called attention to the possibility that for some of the coding processes specified in the standard, compliance with the standard may require use of an invention covered by a patent, and referred to patents listed in Annex L. (PX 0156 at KODAK_012538.) Annex L repeated the warning, calling attention to the possibility that for some of the coding processes in the Annexes, including Annex F, compliance with the specification may require use of an invention covered by patent rights, and that no position was taken with respect to any patent rights. (PX 0156 at KODAK_012717.) Annex F described the Baseline coding method. (PX 0156 at KODAK_012625.) Therefore, the public was told that the list of patents in Annex L was not definitive.

### (6)  February 1994 ISO Publication of JPEG Standard—Advised Patent List Not Definitive

128.  In February 1994, the ISO published its International Standard ISO/IEC 10918-1. (PX 0296.) The Foreword addressed patents and warned that the list included in the publication was not determinative:

> During the preparation of this part of ISO/IEC 10918, information was gathered on patents upon which application of this standard might depend. Relevant patents were identified as belonging to the patent holders listed in annex L. However, ISO/IEC cannot give authoritative or comprehensive information about evidence, validity, or scope of patent and like rights.

(PX 0296 at KODAK_012874.)

129.    Annex L contained the same statement as the CCITT Recommendation, calling

the user's attention to the possibility that some of the coding practices for the standard, including

those in Annex F, may require use of an invention covered by a patent.  (PX 0296 at

KODAK_013054.)  Annex F likewise described the Baseline, as in the CCITT version.  (PX

0296 at KODAK_012962.)  Again, the public was told that the list of patents in Annex L was not

definitive.

### c.    Summary and Conclusion About Patent-Free or Royalty-Free JPEG Baseline

130.    The history of the JPEG group and its parent committee proceedings reflects that

any desire for a patent or royalty-free Baseline on the part of some JPEG participants was simply

a desire.  It was not a policy that ever was in effect, it could not be achieved as a practical matter,

and it would have violated the instructions of the JPEG group's parent committee.  Any belief

that no patents covered the JPEG Baseline, or that if any did they would be licensed for free,

would not have been reasonable.  (Testimony of Dr. Schoechle.)

### 11.    Summary Findings of Fact on Standards Issues

131.    The clear and well established policies of both ISO/JTC1 and of CCITT/ITU-T,

according to their relevant directives, put any obligation to disclose patents and to provide a

statement regarding RAND licensing only on proposers of technology for a standard.  Philips

was at no point a proposer of technology for the JPEG standard, in any sense.  There is no

indication that Philips' technology found its way into the JPEG standard through any knowledge

or effort on the part of Philips.  Therefore, Philips had no obligation to disclose its '075 patent to

the JPEG group.  (Testimony of Dr. Schoechle.)

132.    Philips' employees also were not active in the JPEG group.  Three Philips

employees attended three out of 24 JPEG group meetings, relatively early on, and in one case

played a minor role as a judge in a blind performance evaluation. There is no evidence that any of those persons knew about the patent application for the '075 patent (or corresponding foreign applications) when they attended. Philips' employees did not attend any JPEG group meetings after March 1988. In particular, they did not attend the February 1989 or August 1991 meetings at which the requests were made for patent disclosures; no Philips' employees were on the JPEG mailing list when the request for disclosures was mailed to those on the list in August 1991; and there is no evidence that anyone employed by Philips received those requests. There is no reason to consider their roles in the JPEG group to have been active ones. Philips' employees' attendance at WG8 or SG VIII plenary meetings cannot be construed as participation in JPEG, due to the range of topics covered in WG8 and SG VIII and the plenary nature of those meetings. (Testimony of Dr. Schoechle.)

133.    Their interests lay in other indirectly related groups, such as standards for MPEG and videoconferencing, where Philips' employees focused their resources and met their obligations. They were active participants in the MPEG group and in SG XV, where they proposed technology and provided appropriate patent disclosures and RAND licensing statements. Philips' employees acted in good faith and fulfilled their obligations. (Testimony of Dr. Schoechle.)

134.    In spite of hopes on the part of some individual JPEG participants, there was no assurance and no real expectation of a patent-free technology or royalty-free license for the JPEG Baseline. The JPEG group and its parent committee were cautioned multiple times that there was no assurance that a patent would not emerge, or that if it did, that it would be royalty-free. JPEG group participants were told to take their own responsibility for any searches, if desired.

They also were warned that searches by committee participants and lists of patents published in the standard were not to be considered definitive. (Testimony of Dr. Schoechle.)

135.    There is no reason to believe, given the historical record, that the JPEG group would have switched from ADCT to another alternative in the 1989 timeframe if it had learned that Philips had a patent and was willing to offer a royalty-bearing RAND license. At that time, ADCT had been determined to be the best. The next best alternatives would also have been available for licensing on royalty-bearing RAND terms, and there was no guarantee that any other alternatives would have been royalty free. (Testimony of Dr. Schoechle.)

136.    Although some participants in JPEG may have wished for a royalty-free Baseline standard, the actions of the committee, its proposers, its leadership, and instructions from its parent committee indicate that there was virtually no likelihood that JPEG would have changed course, unless possibly, if Philips had refused RAND for JPEG. But that would have been inconsistent with Philips' offer of RAND licenses for MPEG and the H.261 Recommendation developed by SG XV. The parent committee had repeatedly reaffirmed the ISO and CCITT patent policy and instructed JPEG to focus on technical evaluation and to not be concerned with patents, other than to determine availability of RAND licenses for relevant patents. (Testimony of Dr. Schoechle.)

137.    If Philips had disclosed a patent in the August 1991 timeframe and provided a RAND statement for JPEG as it had for MPEG and H.261, in all likelihood JPEG would have accepted it and proceeded. By this time, the JPEG group had progressed well down the road, other alternatives were not royalty-free, and the parent committee likely would not have allowed the work to stop and start over with another technology simply because the license was not free. In addition, rejection of the technology on royalty grounds would have violated the policy set by

JPEG's parent committee.  The parent committee had already spoken on the issue more than once, and antitrust issues raised by Touchton could possibly have been implicated as well. (Testimony of Dr. Schoechle.)

## B.    Proposed Findings of Fact Relating to Specific Equitable Defenses and Counterclaim

The Proposed Findings of Fact set forth in Part I.A, above, supplement those set forth below, and are adopted and incorporated below.

### 1.    Equitable Estoppel

138.    Kodak has failed to prove that: (1) Philips engaged in material misleading conduct with respect to its intention to sue Kodak for infringement; (2) Kodak relied on any such conduct of Philips; and (3) because of such reliance, Kodak will be materially prejudiced if Philips is permitted to proceed with its infringement claims.

139.    Philips did not engage in any misleading conduct regarding the development and adoption of the JPEG standard, as discussed in Part I.A, above.

140.    Philips did not engage in any conduct regarding the development and adoption of the JPEG standard that led Kodak reasonably to infer that Philips did not intend to enforce its '075 patent against Kodak, as shown in Part I.A, above.

141.    Kodak has failed to prove its theories that: (1) Philips' employees were required to bring the '075 patent to the attention of the JPEG group responsible for developing the JPEG standard; (2) by not bringing the patent to the JPEG group's attention, Philips' employees led Kodak reasonably to believe that Philips had no patents that covered the proposed JPEG standard; and (3) had Philips' employees brought the patent to the JPEG group's attention and not offered to license it for free, the committee would have switched its recommendation to

41

different technology for the Baseline (i.e., basic) JPEG standard, and a different Baseline JPEG standard would have been adopted by the JPEG group's parent standards-setting organizations.

142.    Philips had no obligation to provide a patent statement regarding the '075 patent to the JPEG group, as discussed in Part I.A, above.

143.    Philips did not engage in any misleading conduct by not providing a patent statement to the JPEG group regarding the '075 patent, as discussed in Part I.A, above.

144.    Kodak has not proven that it was aware of Philips' role in the development and adoption of the JPEG standard.

145.    Kodak has not proven that it relied upon the lack of a patent statement by Philips to the JPEG group to conclude that Philips did not intend to enforce a patent against products or services that used the Baseline JPEG standard technology.

146.    Kodak has not proven that the majority of other participants in the JPEG group, and the majority of voting members of ISO and CCITT, relied upon the lack of a patent statement by Philips to the JPEG group to conclude that Philips did not intend to enforce a patent against products or services that used the Baseline JPEG standard technology.

147.    It would not have been reasonable for Kodak, other participants in the JPEG group, or voting members of ISO and CCITT, to rely upon the lack of a patent statement by Philips to the JPEG group to conclude that Philips did not intend to enforce a patent against products or services that used the Baseline JPEG standard technology, as discussed in Part I.A, above.

148.    Kodak has not proven that, in investing in and developing its digital imaging business, Kodak reasonably relied upon Philips' not disclosing the '075 patent to the JPEG group during the development and adoption of the JPEG standard.

149.    To compete in the marketplace, Kodak needed to offer digital still imaging products using the JPEG Baseline standard, because its primary competitors have offered digital still cameras using that standard, and the marketplace chose to standardize on the JPEG Baseline standard rather than other formats for digital still images.  (Testimony of Mr. Peterson.)

150.    Kodak contends that it believed that it did not infringe the '075 patent and that a court would hold the '075 patent invalid and/or unenforceable.  (PX 0225, p. 18.)

151.    Kodak has not proven that it was materially prejudiced by reasonably relying on Philips' not disclosing the '075 patent to the JPEG group during the development and adoption of the JPEG standard.

152.    Kodak has not proven that it would be materially prejudiced if Philips is permitted to proceed with its infringement claim.

153.    Philips proved at trial that Kodak willfully infringed the '075 patent.

### 2.    Waiver

154.    Philips did not intentionally relinquish its right to enforce its '075 patent against Kodak, or act so inconsistently with its right to enforce its patent so as to induce in Kodak a reasonable belief that it had relinquished that right, as discussed in Part I.A, above.

155.    Philips adopts and incorporates the Proposed Findings of Fact relating to estoppel in Part I.B.1, above.

### 3.    Implied License

156.    Philips did not engage in any conduct exhibited to Kodak from which Kodak could properly infer that Philips consented to Kodak's use of the '075 patent, as discussed in Part I.A, above.

157.    Kodak has not proven that, in investing in and developing its digital imaging business, Kodak reasonably relied upon Philips' not disclosing the '075 patent to the JPEG group during the development and adoption of the JPEG standard.

158.    Philips adopts and incorporates the Proposed Findings of Fact relating to estoppel in Part I.B.1, above.

### 4.    Patent Exhaustion by License or Release Based on Implied License

159.    Kodak asserts as a defense patent exhaustion by license or release based on an alleged implied license.

160.    Philips adopts and incorporates the Proposed Findings of Fact relating to estoppel and an implied license in Parts I.B.1 and I.B.3, above.

161.    Philips did not affirmatively grant its consent or permission to Kodak to practice Philips' '075 patent for digital still images.  (Testimony by Mr. Slobod.)

### 5.    Unclean Hands

162.    Philips followed the standard-setting organizations' rules in connection with their setting the JPEG standard, and did not engage in any unconscionable acts in relation to the '075 patent having an immediate and necessary relation to Philips' claim for relief from Kodak's patent infringement, as discussed in Part I.A, above.

163.    Philips proved at trial that Kodak willfully infringed the '075 patent.

### 6.    Laches

164.    Kodak has failed to show that either (1) Philips delayed filing suit for an unreasonable and inexcusable length of time after Philips knew or reasonably should have known of its claims against Kodak, or (2) any delay in Philips' commencement of litigation resulted in material prejudice or injury, either economic or evidentiary, to Kodak.

165.    Kodak contends that it first began to market and sell a professional digital still camera using the JPEG standard in the early 1990s and sold less than 1000 of them. (Sasson Deposition, pp. 36-37, 39.)

166.    As a regular practice, since at least the early 1990s, Kodak has conducted patent clearance searches for products that Kodak was considering commercializing, including, for example, digital still cameras and other still imaging products. (Sasson Deposition, pp. 42-43, 52; Watkins Deposition, pp. 32, 40-48, 57-66.)

167.    The '075 patent was issued and publicly available on February 13, 1990. (PX 0001.)

168.    Kodak contends that it first began to market and sell consumer digital cameras using the JPEG standard in approximately 1996 or 1997. (Sasson Deposition, pp. 57-58.)

169.    Kodak did not begin to sell substantial volumes of digital still cameras until 2000. (Testimony of Mr. Peterson.)

170.    In 2000, Philips began a licensing program for the technology claimed in the '075 patent and its foreign counterparts. (Testimony of Mr. Slobod.)

171.    Philips first had knowledge that Kodak infringed the '075 patent in the summer of 1999. (Cho Deposition, p. 181; Testimony of Mr. Slobod.)

172.    On December 6, 2000, the General Manager of Philips' Japanese business unit's Legal and Corporate Intellectual Property department in Japan, Mr. Tsugaru, wrote to the Legal Director of the Legal Department of Kodak's business unit in Japan, Mr. Sasaki. (PX 0170.) Mr. Tsugaru's letter drew attention to Philips' Japanese patent number JP 711,665, which, the letter explained, "covers the JPEG standard," and pointed out that Kodak was making or selling digital still picture cameras that practiced the JPEG standard. (*Id.*) JP 711,665 corresponds to

the Unites States '075 patent. (PX 0222 at PH_PAN 0175202.) The letter further explained that Philips would offer a license to Kodak to practice the JPEG standard under Philips' worldwide patent rights: "Philips is prepared to grant a non-exclusive license under this Philips patent and all of its foreign counterparts under reasonable terms and conditions." (*Id.*)

173.    On December 25, 2000, Kodak responded with a letter from Mr. Sasaki to Mr. Tsugaru. Mr. Sasaki explained that he had forwarded Philips' letter to Kodak's headquarters in the United States, which would contact Mr. Tsugaru. (PX 0171.) A copy of the letter was sent to, *inter alia*, Mr. J. J. Hawley, Assistant General Counsel and Divisional Vice President of Kodak in the United States. (*Id.*)

174.    Kodak did not further respond to Philips' letter. (Testimony of Mr. Slobod.)

175.    On June 20, 2002, Mr. Tsugaru wrote a similar letter to Chinon Industries, Inc. in Japan. (PX 0179.) The letter likewise drew Chinon's attention to Philips' Japanese patent number JP 711,665, which, the letter explained, "covers the JPEG standard," and pointed out that Chinon was making or selling digital still picture cameras that practiced the JPEG standard. (*Id.*) The letter further explained that Philips was prepared to grant a license to Chinon to practice the JPEG standard under Philips' patent rights on "reasonable terms and conditions." (*Id.*)

176.    Chinon manufactured digital still cameras that it supplied to Kodak. (PX 0182.)

**REDACTED**

177.    On June 28, 2002, ████████████████████████████████████

████████████████████████. (PX 0178 at KODAK_018208.)

178.    On June 28, 2002, ████████████████████████████████

████████████████████████████████████████

████████████████████████████████      **REDACTED**

████████████████████████████ (PX 0178 at

KODAK_018207.) ████████████████████████████



(Watkins Deposition, pp. 34, 122-24; PX 0178.)          REDACTED

179.   On July 15, 2002,

(PX 0181.)

REDACTED

(*Id.*)

180.   On July 19, 2002, Chinon wrote to Mr. Tsugaru that Kodak would assume the defense of this matter and that Philips should contact Mr. Close.  (PX 0182.)

181.   In response, on October 1, 2002, Jack Slobod, an attorney in Philips' Intellectual Property and Standards group in the United States, wrote to Mr. Close.  (PX 0187.)  Mr. Slobod

REDACTED

182.   Following this letter, Philips negotiated with Kodak for a substantial period of time but was not able to resolve the licensing issue.  (Testimony of Mr. Slobod.)

183.   Unable to reach agreement, Philips brought suit on April 18, 2006.  (Complaint.)

184.   Between 2000 and April 2006, Philips negotiated and entered into licenses for the '075 patent and foreign counterparts with          licensees.  (Testimony of Mr. Slobod;

REDACTED

██████████████████████████████████████

████████████████████████████ )  **REDACTED**

185.    Between 2000 and April 2006, Philips was engaged in litigation enforcing the '075 patent and foreign counterparts.  (Testimony of Mr. Slobod.)

186.    For its laches defense, Kodak asserts that Philips waited to bring suit in 2006 for alleged infringement of Philips' '075 patent, which issued in 1990, after notifying Kodak of infringement in 2002.  (Answer, ¶ 31.)

187.    The amount of time between issuance of the '075 patent, Philips' notifying Kodak about the '075 patent and its Japanese counterpart, and Philips' bringing suit against Kodak is comparable to the amount of time before Kodak recently brought suit for infringement of its patents allegedly covering digital still cameras.  Kodak did not bring suit for 16 years, from 1991 to 2007, for alleged infringement of a Kodak patent allegedly covering digital still cameras, after notifying the accused infringers of infringement in 2002; Kodak also did not bring suit for 15 years on a second patent, which issued in 1992.  On July 27, 2007, Kodak filed a patent infringement suit against Matsushita Electric Industrial Co., Ltd. ("Matsushita") and others in the E.D. of Texas for infringement.  (PX 0226.)  Kodak alleged that the infringing products were digital still and video camera products.  (*Id.*, ¶ 2.)  Kodak further alleged that Matsushita infringed, *inter alia*, Kodak's U.S. Patent No. 5,016,107, which issued May 14, 1991, and Kodak's U.S. Patent No. 5,164,831, which issued November 17, 1992.  (*Id.*, ¶¶ 12-13.)  Kodak alleged that Matsushita was on notice of the patents since at least January 2002.  (*Id.*, ¶ 17.)

188.    Philips did not wait an unreasonable or inexcusable amount of time before bringing suit against Kodak for infringement of the '075 patent.

189.    Kodak has not shown that it has suffered any material prejudice attributable to Philips' not bringing suit against Kodak for infringement of the '075 patent prior to April 2006.

190.    Kodak's continued infringement was based on business decisions and not a change in position because of any alleged delay by Philips. To compete in the marketplace, Kodak needed to offer digital still imaging products using the JPEG Baseline standard, because its primary competitors have offered digital still cameras using that standard, and the marketplace chose to standardize on the JPEG Baseline standard rather than other formats for digital still images. (Testimony Mr. Peterson.) Kodak thus would have marketed and sold digital still imaging products using the JPEG Baseline standard, even if Philips had sued earlier.

191.    Kodak contends that it believed that it did not infringe the '075 patent and that a court would hold the '075 patent invalid and/or unenforceable. (PX 0225, p. 18.)

192.    Kodak has failed to identify any loss of evidence that has caused it to suffer material prejudice in its defense.

193.    Philips proved at trial that Kodak willfully infringed the '075 patent.

## II.    Proposed Conclusions of Law Relevant To Kodak's Equitable Defenses of Equitable Estoppel, Implied License, Waiver, Patent Exhaustion by License or Release, Unclean Hands, and Laches, and Counterclaim for Equitable Estoppel

### A.    Equitable Estoppel

194.    Kodak asserts as its Fourth Affirmative Defense and Third Counterclaim that Philips' claims for relief are barred by equitable estoppel.

#### 1.    Legal Standards for Equitable Estoppel

195.    Equitable estoppel requires a defendant to prove that (1) the patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer, (2) the alleged infringer relied on

this conduct, and (3) due to the reliance, the alleged infringer will be materially prejudiced if the patent owner is allowed to proceed on its claim. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). The "conduct" may include specific statements, action, inaction, or silence when there was an obligation to speak. *Id.*

193.    The infringer must "show that [it] acted in reliance on supposed actions of [the patentee] rather than a business judgment." *Gasser Chair Co. v. Infanti Chair Mfg.*, 60 F.3d 770, 776 (Fed. Cir. 1995). The defense is product-specific. *See Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1425 (Fed. Cir. 1997).

194.    To invoke equitable estoppel by inaction, the patent owner's "inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Aukerman*, 960 F.2d at 1042. To support an estoppel, silence "must be sufficiently misleading to induce the alleged infringer to reasonably infer that the patentee has abandoned his patent claims." *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1574 (Fed. Cir. 1987). Ordinarily, "silence alone will not create an estoppel unless there was a clear duty to speak . . . or somehow the patentee's continued silence reinforces the [accused infringer]'s inference from the [patentee]'s known acquiescence that the [accused infringer] will be unmolested." *Aukerman*, 960 F.2d at 1043-44 (citation omitted).

195.    In order to support the defense of equitable estoppel, "[t]he accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." *Aukerman*, 960 F.2d at 1042-43; *see Gasser Chair*, 60 F.3d at 776 (accused infringer "totally failed to show that he acted in reliance on supposed actions of [the patentee] rather than a business judgment"). To establish that reliance, "the

infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead" with a change in economic position. *Aukerman*, 960 F.2d at 1043. "[F]or equitable estoppel, the alleged infringer cannot be unaware . . . of the patentee and/or its patent." *Id.* at 1042.

196.    An accused infringer's belief that the patent was invalid or not infringed negates a claim of reliance. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed. Cir. 2001); *Gasser Chair*, 60 F.3d at 776.

197.    In order to prove equitable estoppel, the accused infringer must establish material prejudice by showing evidentiary or economic injury, together with a nexus to the patentee's misleading conduct, in the same manner as these apply to the defense of laches. *See Aukerman*, 960 F.2d at 1043.

198.    Even when the elements of equitable estoppel have been established, a court must "take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." *Id.* Egregious conduct such as willful infringement must be considered. *See Schockley v. Arcan, Inc.*, 248 F.3d 1349, 1361 (Fed. Cir. 2001); *Gasser Chair*, 60 F.3d at 776; *Aukerman*, 960 F.2d at 1044 ; *Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed. Cir. 1986).

199.    Equitable estoppel must be established by a preponderance of the evidence. *Aukerman*, 960 F.2d at 1046.

### 2.    Conclusions Regarding Equitable Estoppel

200.    Kodak has failed to meet its burden to prove by a preponderance of the evidence that Philips is equitably estopped from recovering for infringement by Kodak of the '075 patent. *Aukerman*, 960 F.2d at 1046.

201.    Kodak has failed to show that the balance of equities weighs in its favor so that equitable estoppel should be applied to bar Philips' infringement claims.

202.    Kodak has failed to meet its burden to prove by a preponderance of the evidence that Philips' claims for relief are barred by equitable estoppel.

203.    Kodak may not assert this equitable defense, because Kodak acted with unclean hands in willfully infringing Philips' patent.

**B.      Waiver**

204.    Kodak asserts as its Seventh Affirmative Defense that Philips' claims for relief are barred by waiver.

**1.      Legal Standards for Waiver**

205.    To establish waiver, a defendant must prove that the patent owner, with full knowledge of the material facts, intentionally relinquish its right to enforce its patent or act so inconsistently with its right to enforce its patent so as to induce a reasonable belief that it had relinquished that right. *See Qualcomm Inc. v. Broadcom Corp.*, No. 05-CV-1958-B, 2007 U.S. Dist. LEXIS 28211, at *32-33 (S.D. Cal. Mar. 21, 2007).

206.    Waiver must be proved by clear and convincing evidence. *See id.* at *25-26.

207.    The Court may deny this equitable defense if Kodak has acted with unclean hands. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244-45 (1933); *Schockley*, 248 F.3d at 1361; *Aukerman*, 960 F.2d at 1033, 1043; *Bott*, 807 F.2d at 1576.

**2.      Conclusions Regarding Waiver**

208.    Philips has not waived any patent rights.

209.    For digital still images, Philips has not waived its right to enforce the '075 patent.

210.    Kodak has failed to meet its burden to prove by clear and convincing evidence that Philips' claims for relief are barred by waiver.

211.   Kodak may not assert this equitable defense, because Kodak acted with unclean hands in willfully infringing Philips' patent.

## C.   Implied License

212.   Kodak asserts as its Sixth Affirmative Defense and Fourth Counterclaim that Kodak has an implied license under the '075 patent for digital still images.

### 1.   Legal Standards for an Implied License

213.   To establish an implied license, a defendant must prove that: (1) the patent owner engaged in conduct exhibited to the defendant from which the defendant may properly infer that the patent owner consented to the defendant's use of the patent; and (2) the defendant reasonably relied upon that conduct in practicing the patent. *See De Forest Radio Tel. & Tel. Co. v. United States,* 273 U.S. 236, 241 (1927); *Wang Labs.,* 103 F.3d at 1580-81.

214.   An implied license may arise by acquiescence, conduct, equitable estoppel, or legal estoppel. *See Wang Labs.,* 103 F.3d at 1580.

215.   An implied license must be proved by a preponderance of the evidence. *See Lucent Techs., Inc. v. Newbridge Networks Corp.,* 168 F. Supp. 2d 181, 240 (D. Del. 2001) (citing jury instruction applying preponderance standard to implied license); *Hewlett-Packard Co. v. Pitney Bowes Corp.,* 46 U.S.P.Q.2D (BNA) 1595, 1998 U.S. Dist. LEXIS 10936, at *29 (D. Or. 1998).

216.   The Court may deny this equitable defense if Kodak has acted with unclean hands. *See Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 244-45 (1933); *Schockley,* 248 F.3d at 1361; *Aukerman,* 960 F.2d at 1033, 1043; *Bott,* 807 F.2d at 1576.

### 2.   Conclusions Regarding Implied License

217.   No equitable estoppel exists, as discussed in Part II.A, above.  Accordingly, no implied license can be based on those grounds.

218.    Kodak has failed to meet its burden to prove by a preponderance of the evidence that Philips' claims for relief are barred by an implied license.

219.    Kodak may not assert this equitable defense, because Kodak acted with unclean hands in willfully infringing Philips' patent.

**D.      Patent Exhaustion by License or Release Based on Implied License**

220.    Kodak asserts as its Sixth Affirmative Defense that Philips claims are barred by a license or release based on an implied license.

**1.      Legal Standards for License or Release**

221.    Philips adopts and incorporates the legal standard for an implied license set forth in Part II.C, above.

222.    A patent license allows a licensee access to the patented invention by providing immunity from an infringement suit, waiving the patent owner's right to sue. *See Intel Corp. v. Broadcom Corp.,* 173 F. Supp. 2d 201, 228 (D. Del. 2001).

223.    A license is "an affirmative grant of consent or permission to make, use, or sell . . . ." *Wang Labs.,* 103 F.3d at 1581.

224.    A license or release must be proved by a preponderance of the evidence. *See Oxy Metal Industries Corp. v. Roper Corp.,* 579 F. Supp. 664, 678 (D. Md. 1984).

**2.      Conclusions Regarding License or Release**

225.    Kodak has failed to meet its burden to prove by a preponderance of the evidence that Philips's claims are barred by a license or release based on an implied license or otherwise.

226.    Kodak may not assert this equitable defense, because Kodak acted with unclean hands in willfully infringing Philips' patent.

### E.    Unclean Hands

227.    Kodak asserts as its Eighth Affirmative Defense that Philips' claims are barred by unclean hands.

#### 1.    Legal Standards for Unclean Hands

228.    "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." *Keystone Driller*, 290 U.S. at 244 (internal quotation marks and citation omitted). The unclean hands doctrine applies "only where some unconscionable act of one coming for relief has an immediate and necessary relation" to the relief the party seeks. *Id.* at 245; *see Aptix Corp. v. Quickturn Design Systems, Inc.*, 269 F.3d 1369, 1376 (Fed. Cir. 2001).

229.    To establish the unclean hands defense, the party asserting the defense must show that the other party seeking relief "conducted [itself] as to shock the moral sensibilities of the judge," and was "offensive to the dictates of natural justice." *Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 398 F. Supp. 2d 305, 310 (D. Del. 2005), *aff'd*, 493 F.3d 1358 (Fed. Cir. 2007) (internal quotation marks and citations omitted).

230.    The Court may deny this equitable defense if Kodak has acted with unclean hands. *See Keystone Driller*, 290 U.S. at 244-45; *Schockley*, 248 F.3d at 1361; *Aukerman*, 960 F.2d at 1033, 1043; *Bott*, 807 F.2d at 1576.

231.    Unclean hands must be established by clear and convincing evidence. *See Aptix*, 269 F.3d at 1374; *Rixon, Inc. v. Racal-Milgo, Inc.*, 551 F. Supp. 163, 171 (D. Del. 1982).

#### 2.    Conclusions Regarding Unclean Hands

232.    Kodak has failed to meet its burden to prove by clear and convincing evidence that Philips' claims are barred by unclean hands.

233.    Kodak may not assert this equitable defense, because Kodak acted with unclean hands in willfully infringing Philips' patent.

**F.    Laches**

234.    Kodak asserts as its Fifth Affirmative Defense that Philips' claims are barred by laches.

### 1.    Legal Standards for Laches

235.    Where the equitable defense of laches is established, the patent owner's claim for damages before it brought suit may be barred. *See Aukerman*, 960 F.2d at 1028, 1041.

236.    To prove laches, the defendant must establish (1) that the plaintiff delayed filing suit an "unreasonable and inexcusable" length of time after the plaintiff "knew or reasonably should have known of its claim against the defendant," and (2) the delay resulted in "material prejudice or injury [to] the defendant." *Aukerman*, 960 F.2d at 1032-33; *see also Gasser Chair Co. v. Infanti Chair Mfg.*, 60 F.3d 770, 773 (Fed. Cir. 1995).

237.    Material prejudice may be either economic or evidentiary. *Aukerman Co.*, 960 F.2d at 1033.

238.    Once these factual premises are established, a court weighs the equities in order to assess whether laches should apply to bar damages that accrued prior to suit. *See Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993); *Aukerman*, 960 F.2d at 1033.

239.    35 U.S.C. § 286 permits recovery of damages only for infringement that takes place during the six-year period preceding the commencement of the lawsuit. A rebuttable presumption of laches arises upon proof that the patentee delaying filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringement. *Auckerman*, 960 F.2d at 1035-36. The plaintiff may eliminate the presumption of laches by

56

offering evidence either that the patentee's delay was reasonable, or that the defendant suffered no material prejudice as a result of the delay, or both. *Id.* at 1038. At all times, however, the ultimate burden of proof remains on the defendant asserting the laches defense. *Id.*

240.    Laches must be determined separately for each product in suit. *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1992), *overruled in part on other grounds*, *Aukerman*, 960 F.2d at 1038. "The application of laches with respect to one product would not, however, act as a bar to the assertion of a claim against a different product produced by the same manufacturer." *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1341 (Fed. Cir. 1998) (Rader, J., dissenting); *see also Spalding & Evenflo Cos. v. Accushnet Co.*, 718 F. Supp. 1023, 1050 & n.26 (D. Mass. 1989). "[T]he delays associated with periods of infringement by different machines do not 'tack' unless the nature of the alleged infringement remains substantially constant throughout the relevant time periods." *Intertech Licensing Corp. v. Brown & Sharpe Mfg. Co.*, 708 F. Supp. 1423, 1435 (D. Del. 1989).

241.    A patentee's mere suspicion of infringement does not provide sufficient notice to start the laches clock in the absence of constructive notice of an actual act of infringement. *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1297-98 (Fed. Cir. 2004). "Absent actual knowledge, the facts must support a duty of inquiry . . . ." *Advanced Cardiovascular Sys.*, 988 F.2d at 1162. However, any duty of policing imposed on a patentee must be "feasible and affordable and otherwise a reasonable burden to impose on the patentee." *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1465 (Fed. Cir. 1998).

242.    A court must consider whatever justification the plaintiff may offer for its delay in filing suit. *See Gasser Chair Co.*, 60 F.3d at 773-74; *Aukerman*, 960 F.2d at 1033. Among the justifications that a plaintiff may offer for its delay are ongoing license negotiations with the

defendant or third parties. *See id.* Another justification is waiting until the product is accepted in the marketplace. "[C]ommon experience proves that inventions which appear to be revolutionary are often not accepted by the public and never become a commercial success. A patentee is therefore justified in waiting to ascertain whether realizations equal expectations." *Aukerman*, 960 F.2d at 1041.

243.     To prove economic prejudice, an infringer must show a nexus between an investment in infringing products and the patentee's alleged delay. *Gasser Chair*, 60 F.3d at 775. Accordingly, "[t]he [defendant's claimed] change [in position] must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992); *see also Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371-72 (Fed. Cir. 2001) (hiring of new employees, modification of equipment, and engaging in sales and marketing activities related to the new product were merely damages normally associated with a finding of infringement or business decisions to capitalize on a market opportunity); *Hemstreet*, 972 F.2d at 1294 (delay cannot be "a deliberate business decision to ignore a warning, and to proceed as if nothing had occurred"). Conclusory assertions concerning expenditures are "not sufficient to show prejudice." *Meyers*, 912 F.3d at 1463.

244.     Courts are reluctant to find a nexus between a patentee's delay in filing suit and a defendant's expenditures when the patentee has made the defendant aware of the patentee's rights, especially if the defendant responds that a patent is invalid or is not infringed by the defendant's conduct. *See Hemstreet*, 972 F.2d at 1294; *Genzyme Corp. v. Atrium Medical Corp.*, 2003 U.S. Dist. LEXIS 12784 at *25 (D. Del. July 22, 2003). The court in *In re Cole Patent Litig.* found no prejudice when the defendant knew that it was likely to be involved in litigation

58

if it did not take a license.  558 F. Supp. 937, 958 (D. Del. 1983), *reversed in part on other grounds, RCA Corp. v. Applied Digital Data Sys., Inc.*, 730 F.2d 1440 (Fed. Cir. 1984).

245.    Evidentiary prejudice, such as the loss or destruction of records or witnesses' unavailability or lack of memory, is the type of prejudice which prevents the defendant from presenting a "full and fair defense of the merits" and undermines the "court's ability to judge the facts." *Aukeman Co.*, 960 F.2d at 1033.

246.    Conclusory assertions are not sufficient.  In *Meyers v. Asiacs Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992), the Federal Circuit rejected conclusory statements regarding missing witnesses and documents as insufficient because the defendant did not state "exactly what material prejudice it suffered from the absence of these witnesses or evidence."

247.    "A witness's failure to remember specific past events is not, in and of itself, indicative of evidentiary prejudice." *Genzyme*, 2003 U.S. Dist. LEXIS 12784 at *25; *see also Symbol Techs., Inc. v. Proxim Inc.*, 2004 U.S. Dist. LEXIS 14949 at *16 (D. Del. July 28, 2004) ("[T]he absence of a document that was once known to exist, without more, does not give rise to an inference of evidentiary prejudice."); *Bayer AG v. Sony Elecs., Inc.*, 229 F. Supp. 2d 332, 368 (D. Del. 2002) (Sony failed to identify any testimony that only the deceased witnesses could provide or why missing documents would have been important to its defense).

248.    The defendant's conduct, such as willful infringement, also is relevant.  "Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied." *Aukerman*, 960 F.2d at 1036. *See Schockley*, 248 F.3d at 1361; *Aukerman*, 960 F.2d at 1033, 1043; *Bott*, 807 F.2d at 1576.

249.    The defense of laches must be established by a preponderance of the evidence. *See Aukerman*, 960 F.2d at 1045.

## 2.    Conclusions Regarding Laches

250.    Kodak has failed to meet its burden to prove by a preponderance of the evidence that Philips' claims are barred by a laches.

251.    Kodak may not assert this equitable defense, because Kodak acted with unclean hands in willfully infringing Philips' patent.

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. PHILIPS CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>EASTMAN KODAK COMPANY,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)    Civil Action No. 06-251 (GMS)<br>)<br>)<br>)<br>)<br>)<br>) |

**EXHIBIT K:**
**HISTORY AND STATUS OF SETTLEMENT NEGOTIATIONS**

The parties discussed the possibility of settlement before the Complaint was filed in 2006, and have discussed the possibility of settlement during the litigation prior to the issuance of the Court's Claim Construction Order.

The parties do not appear close to reaching a settlement, but remain willing to negotiate.

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| U.S. PHILIPS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-251 (GMS) |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## EXHIBIT L: STATEMENT THAT EACH PARTY HAS COMPLETED DISCOVERY

### I.  PHILIPS' STATEMENT

Plaintiff U.S. Philips Corporation ("Philips") states that it has substantially completed discovery with the exception of limited information that Kodak has agreed to produce.

Philips reserves the right to seek leave of Court to conduct depositions and/or additional discovery in the event that Defendant Eastman Kodak Company designates trial witnesses who were not properly disclosed or made available to Philips during the discovery period.  Philips also reserves the right to take discovery regarding any evidence that Kodak seeks to use at trial that was not properly disclosed during the discovery period.

### II.  KODAK'S STATEMENT

Defendant and Counterclaim Plaintiff Eastman Kodak Company ("Kodak") states that it has substantially completed discovery with the exception of limited production of financial documents/information and limited supplementation of Mr. Wallace's expert report on damages.

Kodak reserves the right to seek leave of Court to conduct depositions and/or additional discovery in the event that Philips' designates trial witnesses who were not properly disclosed or

made available to Kodak during the discovery period. Kodak also reserves the right to take discovery regarding any evidence that Philips seeks to use at trial that was not properly disclosed.